1 | William M. Audet (SBN 117456)
Ryan M. Hagan (SBN 200850)
2 | Jason Baker (SBN 212380)
ALEXANDER, HAWES & AUDET, LLP
3 | 152 North Third Street, Suite 600
San Jose, CA 95112
4 | Telephone: 408.289.1776
Facsimile: 408.287.1776
5
Lester L. Levy
6 | Michele Fried Raphael
Renee L. Karalian (SBN 216260)
7 | WOLF POPPER LLP
845 Third Avenue
8 | New York NY 10022
Telephone: 212.759.4600
9 | Facsimile: 212.486.2093

10  *Attorneys for Plaintiffs and the Proposed Class*

11

12          UNITED STATES DISTRICT COURT

13    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14

| 15 | CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and | ) | CASE NO: 105CV046409 |
| 16 | HOWARD STERN, on behalf of themselves and all others similarly | ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| 17 | situated, | ) ) | |
| 18 | Plaintiffs, | ) ) | 1.   Breach of Contract |
| 19 | vs. | ) ) ) | 2.   Breach of Implied Covenant of Good Faith and Fair Dealing |
| 20 | GOOGLE, INC., | ) ) | 3.   Violation of California Bus. & Prof. Code §§ 17200 *et seq.* |
| 21 | Defendant. | ) ) | 4.   Violation of California Bus. & Prof. Code §§ 17500 *et seq.* |
| 22 | | ) ) | 5.   Unjust Enrichment |
| 23 | | ) | **JURY TRIAL DEMANDED** |

24          Plaintiffs, by their attorneys, allege the following upon information and belief, except for

25    those allegations that pertain to Plaintiffs, which are based upon Plaintiffs' personal knowledge:

26                          **NATURE OF THE ACTION**

27          1.      Plaintiffs bring this class action against Google, Inc. ("Google" or the

28    "Company") on behalf of themselves and other persons and entities that advertise pursuant to

---

1

**First Amended Class Action Complaint**

Dockets.Justia.com

1    Google's AdWords program ("AdWords") and have been charged more than their "daily budget"

2    for their advertising campaign (the "Class").

3        2.      Plaintiffs bring this action to enjoin Google from engaging in such wrongful

4    overbilling in connection with its AdWords program and to recover damages incurred.

5    **JURISDICTION AND VENUE**

6        3.      This Court has jurisdiction over this action pursuant to the Class Action Fairness

7    Act of 2005, 28 U.S.C. §1332(d)(2). The matter in controversy exceeds the jurisdictional

8    amount and there are members of the Class that are citizens of States different from the

9    Defendant's.

10       4.      The claims asserted will be governed by the laws of California. California has a

11   distinct nexus with the alleged harm and the Defendant. It is possible that the number of citizens

12   of California is substantially larger than the number of citizens from any other State.

13       5.      Defendant Google, a citizen of California, is the sole defendant from whom relief

14   is sought by members of the Class, and whose alleged conduct forms the basis for the claims

15   asserted by the Class.

16       6.      Venue is proper in this Court because a substantial part of the events or omissions

17   giving rise to the claims herein occurred in this County, and Google has at all relevant times been

18   doing business in this County and throughout California and maintains its principal executive

19   offices in Santa Clara County.

20       7.      The AdWords program terms state that the AdWords agreement is governed by

21   California law and any claims thereunder are to be adjudicated in Santa Clara County, California.

22   **THE PARTIES**

23       8.      Plaintiff CLRB Hanson Industries, LLC d/b/a Industrial Printing ("Industrial

24   Printing") is a limited liability corporation formed in the state of Minnesota. Industrial Printing

25   advertises on the Google network pursuant to AdWords.

26       9.      Plaintiff Howard Stern ("Stern") is a citizen of the state of New Jersey. Stern

27   advertises his business, homeworksolvers.net, on the Google network.

28       10.     Defendant Google is a Delaware corporation, with its principal place of business

2

1    located within Santa Clara County at 1600 Amphitheatre Parkway, Mountain View, California

2    94043.

3        11.    Google owns and operates the Internet search engine named Google and offers

4    advertising programs.  Internet users use the search engine to locate and access web sites.  Users

5    key in words in the search box on the Google search screen and Google locates and lists websites

6    containing those words and provides links thereto.  On the same page as the search results,

7    Google displays a box or boxes, above or to the right of, the search results which contain

8    "Sponsored Links" having 2-4 lines of text.  These "Sponsored Links" are links to the websites

9    of businesses that provide the services or sell the products concerning the search terms that had

10   been inputted.  These "Sponsored Links" are the ads of the advertisers who sign up for, and pay

11   for, Google's advertising program.  These ads could also appear in similar locations on the search

12   and content sites and products in the Google network.

13       12.    The Google network is the largest online advertising network in the United States

14   and includes thousands of third-party web sites.  The search sites include, for example, AOL,

15   Earthlink, AskJeeves, and Shopping.com; the content websites include, for example, The New

16   York Times, HGTV, and the Weather Channel.

17       13.    Google purports to be a global technology leader focused on improving the ways

18   people connect with information.  According to the Company's Form S-1 filed with the

19   Securities and Exchange Commission ("SEC") on April 29, 2004 in conjunction with its initial

20   public offering, the Company's:

21            [I]nnovations in web search and advertising have made our web
             site a top Internet destination and our brand one of the most
22           recognized in the world. We maintain the world's largest online
             index of web sites and other content, and we make this information
23           freely available to anyone with an Internet connection. Our
             automated search technology helps people obtain nearly instant
24           access to relevant information from our vast online index. We
             generate revenue by delivering relevant, cost-effective online
25           advertising. Businesses use our AdWords program to promote their
             products and services with targeted advertising.
26

27

28

3

## SUBSTANTIVE ALLEGATIONS

**The AdWords Program**

14.    AdWords is a global advertising program offered by Google.

15.    Google states that AdWords gives advertisers hands-on control over all elements of their ad campaigns.

16.    On the homepage for Google AdWords, under the heading "AdWords Advantages," Google touts "we pledge to help you meet your customer acquisition needs by enabling you to: . . . . Fully control your ad budget."

17.    Also on the homepage, under the heading "control," Google states:

> With all the great features listed below a Google AdWords account is fully customized for any advertiser.
>
> \*        \*        \*
>
> •    Daily budget you set, starting from 5 cents USD.
>
> And with no monthly minimum spending limit . . .

18.    AdWords gives advertisers the right to target their advertising campaign(s) and to limit the appearance of their ad(s) so that the ad(s) only appear in response to searches conducted from specific locales, at particular times or upon other specified search criteria.

19.    In order to advertise with Google, advertisers sign up for the AdWords program over the Internet.  The form agreement, found on-line, consists of a two-page document entitled Google Inc. AdWords Program Terms ("Terms") and 142 pages of "Frequently Asked Questions" ("FAQs") which further explains the program and can be accessed from Google's AdWords site (collectively, the "Agreement.").   The Terms incorporate the FAQs into the Agreement.  A copy of the Agreement (page-numbered for purposes of this Complaint), is annexed hereto as Exhibit A.  (Citations thereto are to "Agreement, ___.")

20.    An advertiser can access the FAQs by clicking on a link entitled "Program Details and FAQ" which then brings him/her to a maze of more than 100 pages of information concerning the AdWords program.

21.    Advertisers sign up for the AdWords program online through the "Advertising Programs" hyperlink on the Google.com Internet search engine site (Google's homepage).

4

Clicking on the "Advertising Programs" hyperlink brings up the Google page with the hyperlink for "Google AdWords," which, in turn, brings the prospective advertiser to the AdWords "sign up" or login page.

22.    By scrolling and clicking on the various linked pages, an advertiser, among other things: (i) creates its ad and selects (i.e., "purchases") keywords which will trigger the ad to run when an Internet user inserts a search into the Google search engine which includes those keywords; (ii) chooses the geographic locations it wants to target with its ad; (iii) sets a maximum cost-per-click it wants to spend each time someone clicks on the ad; and (iv) sets a daily budget, which Google describes in the sign up process as the "amount you're willing to spend on a specific campaign each day and can be changed as often as you like."

23.    After providing the afore-mentioned information, the advertiser creates an AdWords account by providing an email address and choosing a password.

24.    To activate the ad(s), the advertiser logs into the account he/she created and submits his/her billing information.

25.    The advertiser's ad(s) begins to run once valid billing information is submitted.

26.    Throughout the sign up process, advertisers can either click on form questions or search for help by entering terms they have questions about. By clicking on the form questions and by entering the help terms, Google brings to the screen responsive portions of the FAQs.

27.    AdWords allows advertisers to "pause" an ad campaign at any time without limit.

28.    The Company touts in its Form 10-K for the year ended December 31, 2004, filed with the SEC on March 30, 2005 (the "2004 Form 10-K") (as well as in its quarterly Form 10-Qs filed with the SEC) AdWords as an effective way "to deliver relevant ads targeted to search results or web content" and to "provide[ ] advertisers with a cost-effective way to deliver ads to customers across Google sites and through the Google Network."

29.    The Company emphasizes in its 2004 Form 10-K, that "AdWords gives advertisers hands-on control over most elements of their ad campaigns. Advertisers can specify the relevant search or content topics for each of their ads. Advertisers can also manage expenditures by setting a maximum daily budget and determining how much they are willing to

5

1  pay whenever a user clicks on an ad."

2

3  **Advertisers Set a "Daily" Budget and Are**
   **Supposed to Have the Right to Control What they Pay**

4      30.    A key feature of AdWords is that it allows the advertiser to set a "daily budget."

5      31.    As part of the sign up process, the advertiser sets a daily budget which limits the

6  amount of money that Google may charge per day. As stated by Google: "Your daily budget is

7  the amount you're willing to spend on a specific campaign each day and can be changed as often

8  as you like."

9      32.    The AdWords Agreement gives advertisers the right to set their own daily budget

10  as a method of cost control.

11      33.    Advertisers have the right to change their daily budget as often as they like. The

12  FAQs section provides that an advertiser may change a daily budget for an ad campaign up to ten

13  times per day.

14      34.    In the AdWords Agreement, Google represents, offers and agrees to the following

15  concerning the daily budget:

16          a.    How do I create an AdWords account?

17                      *        *        *

18          Step 4: Specify your **daily budget**.
            Your maximum **daily budget** helps determine your ad
            exposure (the number of times Google shows your ad in a
19          day). There is no minimum daily budget.

20          (Agreement, 019-20 ) (Emphasis added.)

21          b.    What are all the steps to creating an AdWords Account?

22                      *        *        *

            Choose **Daily Budget**
23          13.    A recommended **daily budget** will appear highlighted in the **daily**
                   **budget** box on the next page. This is the amount necessary for
24                 your ad to appear every time on your keyword. However, you can
                   increase or lower this amount by typing in your desired **daily**
25                 **budget**."
            *Note*: This amount controls how often your ad appears on Google;
26          we will spread the delivery of your ad throughout the day to stay
            within your alternative budget setting. Matching the recommended
27          **daily budget** helps ensure maximum exposure.

28          (Agreement, 020-21.) (Emphasis added.)

6

c.    How does Google come up with a recommended budget?

We recommend **daily budgets** based on historical data for the same or similar keywords as you. We also consider additional factors-such as variations in language and location and Google Network activity.
The **daily budget** we recommend will ensure your ads appear for all relevant searches, increasing your visibility and reach to potential customers.
Remember, setting your **daily budget** to the amount we recommend is optional-you're always in full control of your AdWords account. You can edit your campaign's daily budget as often as you'd like, and to whatever amount results in the most appropriate return on investment for you.

(Agreement, 061.) (Emphasis added.)

d.    Why can't I see my ad?

                    *        *        *

2. 2. Check your **daily budget**. When you create your ads, we recommend a **daily budget** for maximum ad delivery. If your **daily budget** is set lower than the recommended amount, we spread the delivery of your ad throughout the day in order to stay within your budget. In that case your ad may not be showing when you look for it. To maximize your visibility, meet the recommended **daily budget** amount.

(Agreement, 036.) (Emphasis added.)

e.    What happens if my **daily budget** is lower than what the AdWords system recommends?

                    *        *        *

You may have received an email or a notification in your account stating that your ads have periodically stopped showing because one or more of your campaigns has reached its **daily budget**. This notification links to a tool you can use to edit your daily budget.
                    *        *        *
. . . Is this just a way to get me to pay more?
If you increase your **daily budget**, you won't necessarily spend it all. Remember, you only pay when people click your ads. And, of course, you're always in control of your account-you never have to pay more than you want.

(Agreement, 048-049.) (Emphasis added.)

f.    Is image ads pricing different than text ads pricing?

No. . . . Your **daily budget** can go as high as you like.

(Agreement, 062.) (Emphasis added.)

g.    Does it cost extra to show my ads on all of the Google Network sites?

There is no fee to run your ads on sites and products in the Google Network. . . . As with all Google advertising, you only pay for clicks on

7

your ads.  You control how much you spend by selecting a maximum cost-per-click (CPC) and **daily budget** that fit your advertising goals.

(Agreement, 062.) (Emphasis added.)

35.    The Agreement assures advertisers that Google will not go over their daily budget:

How does Google keep my campaign below my **daily budget**?
Google shows your ads evenly over time so that you reach your **daily budget** by the end of each day.  This keeps your ad from accumulating charges early on and then disappearing for the remainder of the day.
Once you've selected your keywords, you'll see a recommended **daily budget**.  If you set your **daily budget** to this value, you will maximize your ad's visibility and activity.  If your **daily budget** is lower than the recommended amount, Google will deliver your ads evenly throughout the day to keep your costs at or below your **daily budget.**

(Agreement, 062.) (Emphasis added.)

36.    The Agreement repeatedly refers to advertisers' ability to control the costs of their advertising and assures advertisers that they will not be billed more than they are "willing to pay":

a.    How much does AdWords cost?

In the Google AdWords program, the cost of your campaigns really depends on you -- **how much you are willing to pay** and how well you know your audience.  It all boils down to knowing your own goals and letting us know what they are.

There is a nominal, one-time activation fee for Google AdWords.  After that, you pay only for clicks on your AdWords ads, and you can control that by telling us **how much you are willing to pay** per click and per day.

(Agreement, 010.) (Emphasis added.)

b.    Top 5 Things I need to know to get started:

How much does AdWords cost?
There is a nominal, one-time activation fee for Google AdWords.  After that, **you pay only for clicks on your AdWords ads, and you can control that by telling us how much you are willing to pay per click per day.** For example, a new advertiser paying in USD can activate his/her AdWords account with just US$5.00, and can then choose a maximum cost-per-click (CPC) from US$0.05- US$100.  Daily budgets start as low as 5 cents up to whatever limit he or she is comfortable spending.

(Agreement, 010.) (Emphasis added.)

8

c.    Are there spending requirements, a minimum contract length, or other qualifying term?

There is **never a minimum spending commitment** when you sign up for AdWords. No minimum contract requirements or other "lock-in" rules apply. **You have complete control** over how long you participate in AdWords, and you control the maximum you want to spend per day.

(Agreement, 012.) (Emphasis added.)

d.    How much do image ads cost?

As with text ads, each advertiser determines the cost of their own image ad campaign. Your price depends on the keywords on which you choose to advertise, how much you bid, and how successfully you design your ads. You set your own **daily budget,** which will control your overall spending. There is a nominal one-time activation fee for Google AdWords, but there is never a minimum spending commitment.

(Agreement, 016.)

e.    AdWords billing & payments: AdWords account costs

How do I control the cost of my ads?
With cost-per-click advertising on AdWords, **the cost of your campaigns really depends on you - how much you are willing to pay** and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.
•    Set your own limits: There is a nominal activation fee for Google AdWords. After that, you tell us how much you are willing to pay per click and per day.

(Agreement, 059.) (Emphasis added.)

**Pausing an Ad**

37.    During the sign up process, Google explicitly tells prospective advertisers that they will only be billed for the days their ad runs:

Google AdWords

Daily Budget:

.    Daily budget is based on the keyword Traffic Estimator

.    Daily charges can fluctuate depending on clicks you receive

.    **Ad system ensures you never pay more than your daily budget multiplied by the number of days in a month your campaign was active**

A hard copy of this screen is annexed hereto as Exhibit B.

38.    The Agreement likewise gives advertisers the right to "pause" an ad campaign at

9

1    any time, without limit, and states that advertisers will not accrue charges for the period that their

2    ad is paused:

        a.    <u>Can I have my ads run at particular times of day?</u>

4                    *            *            *

5            **You can pause your ad campaign at any time. You**

6            **won't accrue charges while your ads are paused,** and
        they'll remain paused until you resume them.

7            (Agreement, 026.)  (Emphasis added.)

8            b.    <u>If I pause or delete my campaign, when do I get billed?</u>

9            **After you pause or delete all of your campaigns, you don't accrue**

10           **any additional charges to your Google AdWords account.** However,
        because the AdWords program bills on a 30-day billing cycle, you may
        receive a charge up to 30 days after you have paused or deleted your

11           campaigns. **You will be charged for any activity that occured [sic]**
        **before you pause or delete a campaign.**

12

13           (Agreement, 070. )  (Emphasis added.)

14       39.    Unlike advertising in traditional media such as billboards and print publications,

15   cost-per-click Internet ads displayed with specific keyword searches have been promoted as a

16   definitive way for companies to gauge their exposure to potential customers.  As a result, U.S.

17   sales from advertiser-paid search results are expected to grow 25 percent this year to $3.2 billion,

18   up from $2.5 billion in 2003, according to research firm eMarketer.  From 2002 to 2003, the

19   market rose by 175 percent.

20       40.    Google's revenue is largely dependent upon its AdWords program.  The revenue

21   that Google receives from its AdWords program is critical to the viability of Google.

22       41.    According to a December 2, 2004 article on the CNNMoney website:

23           Paid-search advertising generates about 98 percent of Google's
        revenues.  Red-hot demand for cost-per-click advertising doubled

24           Google revenues in the first three quarters of [2004] and paved the
        way for the company's blockbuster IPO in August.

25       42.    Google's latest 2004 Form 10-K stated:

26           Growth in our revenues from 2003 to 2004 and from 2002 to 2003,
        resulted primarily from growth in revenues from ads on our Google

27           Network members' web sites and growth in revenues from ads on
        our web sites. The advertising revenue growth resulted primarily

28           from increases in the total number of paid clicks and ads displayed

10

1   through our programs, rather than from changes in the average fees
    realized. The increase in the number of paid clicks was due to an
2   increase in the number of Google Network members, an increase in
    aggregate traffic both on our web sites and those of our Google
3   Network members and improvements in our ability to monetize
    increased traffic on our web sites.

4

5   43.     In its 2004 Form 10-K and quarterly Form 10-Qs filed with the SEC, Google

6   boasts that AdWords is an effective way "to deliver relevant ads targeted to search results or web

7   content" and to "provide[ ] advertisers with a cost-effective way to deliver ads to customers

8   across Google sites and through the Google Network."

9   44.     Google also reiterated in its 2004 Form 10-K that advertisers can manage

10  expenditures by setting a maximum daily budget and determining how much they are willing to

11  pay whenever a user clicks on an ad.

12  **Google Wrongfully and Misleadingly Charges**
    **Advertisers More Than Their Daily Budget**

13  45.     Despite the fact that throughout the sign up process and the Agreement, Defendant

14  Google plainly and repeatedly states that advertisers set their own "daily" budget to control costs

15  and set limits, Google wrongfully and misleadingly commits advertisers to a monthly budget, in

16  an amount up to their daily budget times 30 or 31, with no exception made for days their ad is

17  paused.

18  46.     Defendant does not deny that it converts the daily budgets set by advertisers into

19  monthly budgets. For example (and as detailed below), when Plaintiff Stern complained about

20  having been billed more than his daily budget, Defendant responded by telling him that Google is

21  allowed to bill advertisers up to the the number of days in the billing period (30 or 31 days)

22  times said advertiser's daily budget.

23  47.     Even though the Agreement plainly and repeatedly states that advertisers will not

24  be charged during periods that their ad is paused or deleted, Google does not exclude those days

25  when it calculates an advertiser's monthly charge (daily budget times 30/31).

26  48.     In stark contrast to the daily budget advertised, offered and agreed to, by Google,

27  and set by advertisers, the Agreement refers to monthly budgets in the context of Google's

28  Jumpstart and Budget Optimizer Features, and expressly distinguishes such "monthly" budgets

11

1   from an advertiser's "daily" budget:

2            a.    Will my Google Budget Optimizer (TM) target budget replace my current

3                    daily budget and CPC?

4                   The target budget you set when you enable the Google Budget
Optimizer tool will replace your campaign's previous keyword
CPCs and daily budget. However, the AdWords system will store

5                   your keyword CPCs and daily budget in case you'd like to restore
these values after you disable the Budget Optimizer.

6        (Agreement, 034.)

7

8            b.    If you used Jumpstart to create your AdWords campaign, you were asked
to specify a monthly budget.

9        (Agreement, 063.)

10      49.    In contrast to Google's representations concerning setting a daily budget to allow

11  an advertiser to control its advertising costs, Google routinely overdelivers ads to allow

12  advertisers' accounts to go over their daily budget.

13      50.    Google will not provide credits for charging advertisers more than their daily

14  budget on any given day as long as those overages do not cumulatively exceed the calculated

15  "monthly" budget (daily budget times 30/31) in any given month.

16      51.    In a simple example, if an advertiser has a $100 daily budget, Google may run the

17  advertiser's ad so that the daily cost goes up to 20% (or more) over the $100 daily budget on any

18  given day. If this advertiser only wants to advertise on Mondays – 4 out of 30 days, at $100 per

19  day, and the ad goes 20% over budget on all four days, or $120 per day, Google will charge $480.

20  Even though Google has exceeded the advertiser's "daily budget" by $80, Google deems the full

21  charge to be within budget because the total of $480 is less than $3000 (or $100 per day times 30

22  days).

23      52.    Google has a substantial financial interest in increasing the charges for AdWords

24  advertising.

25      53.    The information necessary to demonstrate the extent of injury to each named

26  plaintiff and every other advertiser is in Google's sole possession.

27      54.    As set forth in Paragraph 5 of the Terms portion of the Agreement, " Payment.    .

28  Charges are solely based on Google's click measurements. Refunds (if any) are at the discretion

1   of Google and only in the form of advertising credit for Google Properties." (Agreement, 002.)

2       55.     Within the FAQ portion, the Agreement further provides: "We make

3   extraordinary efforts to provide accurate reports. For that reason, no measurements other than

4   those maintained by Google shall be accepted for reporting or payment purposes." (Agreement,

5   0109.)

6   **Defendant's Wrongful Conduct With Respect to Plaintiffs**

7       56.     In July, 2002, plaintiff Industrial Printing entered into a contract with Google to

8   advertise using the AdWords program and specified a daily budget.

9       57.     Despite this set daily budget, Google routinely exceeded the daily budget set by

10  Plaintiff Industrial Printing, Google did not credit Industrial Printing for all such charges over its

11  daily budget, and Google continues to charge it for advertising in excess of its daily budget.

12      58.     Plaintiff Industrial Printing ran an advertising campaign, Contract Decorating,

13  during the month of February 2005 for 27 days with a $50 daily budget and was charged a total

14  of $1495.33, or $55.38. The same campaign was run in March 2005, for 17 days with a daily

15  budget of $50. On each day the campaign ran in that billing cycle, Google overdelivered the ad,

16  charging Industrial Printing from 121% to 162% above its $50 daily budget, for an average of

17  141% over the applicable daily budget. Plaintiff was billed $1,197.79 in March 2005 ($70.45 per

18  day) instead of the $850 it contracted for, and was "willing to pay."

19      59.     Similarly, in connection with another campaign, Mousepads, also with a $50 daily

20  budget, in February 2005 Plaintiff Industrial Printing ran the add 9 days and was charged

21  $462.23, or $51.35 per day. In March 2005, the campaign, still with a daily budget of only $50,

22  ran only 2 days and Industrial Printing was charged $118.10, or $59.05 per day.

23      60.     With respect to yet another campaign, Team, also with a $50 daily budget, in

24  February, 2005, Google charged Industrial Printing $1443.11 for said campaign which ran only

25  27 days, or $53.44 per day. In March, 2005, Industrial Printing was charged $1126.08 even

26  though the ad ran only 17 days, or $66.24 per day.

27      61.     Google charged Industrial Printing's credit card for said amounts and did not

28  provide credits therefore.

13

1   **Defendant's Wrongful Conduct With Respect to Plaintiff Stern**

2       62.    In October, 2003, Plaintiff Stern entered into a contract with Google to advertise

3   using the AdWords program.  He set his daily budget at $10.

4       63.    Plaintiff Stern's daily budget has consistently been $10.

5       64.    Despite having set a daily budget of $10, Google routinely exceeds the daily

6   budget set by Plaintiff Stern.

7       65.    For example, on April 5, 2005, Plaintiff Stern was charged $16.78; on April 12,

8   2005, he was charged $19.34; on April 12, 2005 he was charged $11.59; and on April 25, 2005

9   he was charged $16.10.

10      66.    Plaintiff Stern complained about the overbilling.

11      67.    When Plaintiff Stern complained to Google, Google (in violation of the

12  Agreement) said that it only provides credit for charges above 30/31 times his daily budget in a

13  monthly billing cycle.

14      68.    Plaintiff Stern has never been credited for the overages.

15              **CLASS ACTION ALLEGATIONS**

16      69.    Plaintiffs bring this action as a class action pursuant to Fed. P. Civ. Proc. 23 on

17  behalf of themselves and all persons who were charged by Google more than their set daily

18  budgets for their advertising campaign(s).

19      70.    Numerosity (FRCP 23 (a)(1)):  Members of the Class are so numerous that joinder

20  is impracticable.  Plaintiffs believe that thousands of people have been damaged by Google's

21  conduct.  The names and addresses of the members of the Class are identifiable through

22  documents maintained by Google and the members of the Class may be notified of the pendency

23  of this action by published, mailed, and/or electronic notice.

24      71.    Common Questions of Fact and Law (FRCP 23(a)(2)):  The questions of law and

25  fact common to the members of the Class which predominate over questions which may affect

26  individual Class members include, but are not limited to:

27          a.    Whether Google routinely overcharged for advertising pursuant to its
                  AdWords program;

28

b.   Whether Google routinely exceeded the daily budgets set by advertisers;

c.   Whether Google breached its uniform Agreement by overcharging for AdWords advertisements;

d.   Whether Google breached the duty of good faith and fair dealing inherent in the Agreement;

e.   Whether the Agreement is to be construed against its drafter, the Defendant;

f.   Whether Google's nondisclosures are material;

g.   Whether advertisers were damaged and the appropriate measure of damages;

h.   Whether the Class is entitled to an injunction requiring Google to cease and desist from exceeding set daily budgets for advertising clicks;

i.   Whether Google was unjustly enriched by charging advertisers more then their daily budget;

j.   Whether Google's conduct of charging advertisers more than their daily budget violated California's unfair competition law;

k.   Whether Google's representations in its AdWords Agreement and/or during the sign up process were, and are, misleading;

l.   Whether Google's nondisclosures in the AdWords Agreement and/or the sign up process made the AdWords Agreement and/or the sign up process misleading and/or deceptive; and

m.   Whether Google's representations in its AdWords Agreement and/or during the sign up process were, and are, deceptive.

72.   <u>Typicality (FRCP 23(a)(3))</u>: Plaintiffs' claims are typical of the claims of each member of the Class, in that Plaintiffs, as every member of the Class, were charged by Google for advertising under Google's AdWords program in excess of their daily budgets. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

73.   <u>Adequacy (FRCP 23(a)(4))</u>: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they intend to prosecute this action vigorously. Plaintiffs have no interests which conflict with those of the Class. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

15

74.    Google has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the members of the Class. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

75.    Superiority (FRCP 23(b)(3)):  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of geographically diverse individual members of the Class is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the members of the Class now may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual actions;

c.    When defendant's liability has been adjudicated, claims of all members of the Class can be determined by the court and administered efficiently in a manner which is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action; and

f.    This class action will assure uniformity of decisions among members of the Class.

## FIRST CAUSE OF ACTION

### [Breach of Contract]

76.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77.    Plaintiffs and Google entered into the Agreement that included Google's Standard Terms and Conditions for participation in Google's AdWords program.

78.    The Agreement gives Plaintiffs and the Class the ability to control their own advertising cost by setting their own daily budget.

79.    Google repeatedly represented and promised that it would not exceed the daily budget set by Plaintiffs and Class members.

16

1    80.    The Agreement prohibits Google from exceeding Plaintiffs' and the Class

2    members' daily budgets, and explicitly states that Google will deliver Plaintiffs' and the Class

3    members' ads at, or below, their daily budgets.

4    81.    In the Agreement, Google promises that Plaintiffs and Class members will not be

5    charged for periods when their ads are paused.

6    82.    Plaintiffs and the Class performed all conditions, covenants and promises required

7    to be performed by Plaintiffs and the Class in accordance with the terms of the Agreement.

8    83.    Google breached the Agreement by charging Plaintiffs and the Class advertising

9    fees in excess of their respective daily budgets.

10    84.    Google's breach of the Agreement and continued breach of the Agreement has

11    benefitted, and continues to benefit, Google, and has damaged, and continues to damage

12    Plaintiffs and the Class.

13    85.    There is no adequate remedy at law.

14    ### SECOND CAUSE OF ACTION

15    **[Breach of Implied Covenant of Good Faith and Fair Dealing]**

16    86.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

17    herein.

18    87.    The Adwords Agreement includes the implied covenant of good faith and fair

19    dealing.

20    88.    Defendant has a duty not to commit acts which would improperly deprive

21    Plaintiffs and Class Members of the benefit of the Agreement.

22    89.    A principal benefit for which Plaintiffs and the Class contracted was the ability to

23    control their advertising cost by setting a daily budget and to be charged no more than their daily

24    budget for each day their ad runs.

25    90.    The implied covenant prevents Google from charging Plaintiffs and the Class

26    more than their respective daily budgets.  By charging Plaintiffs and the Class more than their

27    respective daily budgets, Google breached the implied covenant of good faith and fair dealing.

28    91.    The implied covenant prevents Google from converting each advertiser's daily

17

1    budget into a monthly budget and holding each advertiser liable up to that amount per month,

2    irrespective of whether he/she/it pause their ad.

3         92.    As a result of Google's wrongful conduct, Plaintiffs and Class Members have

4    suffered and continue to suffer economic losses and other general and specific damages, all in an

5    amount to be determined according to proof at time of trial.

6                              **THIRD CAUSE OF ACTION**

7                                   **Unfair Competition**
     **[Violation of California Bus. & Prof. Code §§ 17200 *et seq.*]**
8

9         93.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

10   herein.

11        94.    By engaging in the above-described acts and practices, Defendant has committed

12   one or more acts of unfair competition within the meaning of Business and Professions Code §§

13   17200 *et seq.*  As used in this Complaint and in § 17200, "unfair competition" means (1) an

14   unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading

15   advertising; and/or (3) an act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of

16   Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to

17   Business and Professions Code §§ 17200 and 17203.

18        95.    Beginning on a date unknown to Plaintiffs and continuing to the present, Google

19   has engaged in, and continues to engage in, such unfair competition.  Defendant's acts or

20   practices are wrongful, arbitrary, without justifiable basis, unethical, oppressive, and have caused

21   substantial injuries to Plaintiffs and other members of the Class.

22        96.    Defendant's unlawful business acts and practices are described herein and include,

23   but are not limited to, using and employing unconscionable commercial practices, deception and

24   concealment, suppression, and omission of material facts concerning the cost of advertising with

25   its AdWords program.

26        97.    Members of the public are likely to be deceived by the Agreement and the sign up

27   process which states that advertisers can control their advertising costs by setting a daily budget.

28        98.    Defendant's conduct, as described above, is unlawful and  unfair and deceptive  in

---

                                   18

1   that Defendant wrongfully binds advertisers to a monthly budget of their daily budget times
2   30/31, even if their ad does not run each day. Google wrongfully bills advertisers more than their
3   daily budget on any given day. Google also overdelivers ad(s) in order to best ensure that it will
4   charge advertisers up to the monthly budget which it wrongfully creates from advertisers' daily
5   budgets.
6        99.    Defendant's act and practices described herein are unlawful in violation of §
7   17200 and constitute, *inter alia*, breach of contract and unjust enrichment.
8        100.   Defendant's acts and practices alleged herein are unfair in violation of § 17200.
9   Defendant's acts and practices alleged herein constitute a violation of § 17200 in that members of
10  the public are likely to be deceived concerning the cost of its AdWords program.
11       101.   Plaintiffs and members of the Class have been injured by Defendant's conduct.
12  They have been charged in excess of their daily budget.
13       102.   Defendant's acts and practices alleged herein constitute unfair, deceptive, untrue
14  or misleading advertising in violation of § 17200 in that members of the public are likely to be
15  deceived by Defendant concerning the cost of its AdWords program and their ability to control
16  their costs.
17       103.   Plaintiffs and members of the Class have been injured by Defendant's conduct.
18       104.   As set forth in the following cause of action, Defendant's acts and practices also
19  constitute a violation of § 17500.
20       105.   Plaintiffs have suffered injury in fact and have lost money or property as a result
21  of this unfair competition and bring this cause of action on behalf of themselves and on behalf of
22  all other similarly injured Class members, pursuant to Business & Professions Code §§ 17200 *et*
23  *seq.*
24       106.   Google maintains its headquarters and principal places of operations in California.
25  The unfair, unlawful or fraudulent business acts and practices of defendant set forth above
26  emanate from Google's California headquarters. Google's wrongful conduct originated from and
27  thus occurred inside California.
28       107.   Pursuant to Business and Professions Code §17200, *et seq.*, Plaintiffs

19

1    on behalf of themselves and all others similarly situated, seek relief as prayed for below.

2         108.   It is impossible for the Plaintiffs to determine the exact extent of the injury

3    without a detailed review of Google's books and records.

4

### FOURTH CAUSE OF ACTION

5

**Untrue and Misleading Advertising**
6    **[Violation of California Bus. & Prof. Code §§ 17500 *et seq.*]**

7         109.   Plaintiffs reallege and incorporate the above allegations as though fully set forth

8    set forth herein.

9         110.   Beginning on a date unknown to Plaintiffs (but prior to the dates Plaintiffs entered

10    into the AdWords Agreement) and continuing to the present, Google advertised its AdWords

11    program throughout the United States, including California, and the world as a way to advertise

12    on the Google network while controlling their own cost.

13         111.   Google has engaged in the false and misleading marketing alleged herein with an

14    intent to induce advertisers to enter into the AdWords Agreement.

15         112.   Google's advertisements and marketing representations and omissions concerning

16    the cost of the AdWords program, including but not limited to, allowing advertisers to control the

17    costs of their advertising limiting such to the daily budget set by advertisers, allowing advertisers

18    to pause their ads at no charge, are false, misleading, and deceptive as set forth more fully above.

19         113.   At the time it made and disseminated the statements and made the material

20    omissions as alleged herein, Google knew or should have known that the statements were

21    deceptive, untrue, and/or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500

22    *et seq.*

23         114.   Google concealed the true cost of the AdWords program and that it does not limit

24    advertisers' charges to their respective daily budgets.

25         115.   Plaintiffs, on behalf of themselves individually and the Class, seek damages

26    and/or injunctive relief, and other relief allowable under §§ 17500 *et seq.*

27

28

1

**FIFTH CAUSE OF ACTION**

2

**[Unjust Enrichment]**

3    116.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

4    herein.

5    117.    To the detriment of Plaintiffs and each member of the Class, Google has been, and

6    continues to be, unjustly enriched through unlawful overcharging and collecting advertising fees

7    in excess of advertiser's daily budget times the number of days their ad runs.

8    118.    Google has unjustly benefitted through its unlawful overcharging and continues to

9    benefit, at the expense of, and to the detriment of, Plaintiffs and each member of the Class.

10    119.    Google has voluntarily accepted and retained these profits and benefits which it

11    derived from Plaintiffs and Class members with the full knowledge and awareness that they

12    result from its own wrongful, routine, and systematic overcharging for advertising.

13    120.    By virtue of the conduct alleged in this Complaint, Google has been unjustly

14    enriched at the expense of the Plaintiffs and Class Members, who are equitably entitled to, and

15    hereby seek, the disgorgement and restitution of Google's profits, revenue, and benefits to the

16    extent, and in the amount, deemed appropriate by the Court.  Specifically, the additional sums of

17    money charged to Plaintiffs and all other similarly situated individuals for advertising which was

18    improper must be refunded.  These amounts of money constitute money which, in equity and

19    good conscience, should be returned by Google to Plaintiffs and members of the Class pursuant

20    to the equitable doctrine of restitution/unjust enrichment.

21    121.    Accordingly, Plaintiffs and each member of the Class seek restitution of the full

22    value of all benefits and enrichment Google has obtained, and continues to obtain, at the expense

23    of Plaintiffs and each member of the Class.

24

**PRAYER FOR RELIEF**

25    WHEREFORE, Plaintiffs and the members of the Class pray for relief as follows:

26    1.    For an order certifying the proposed Class herein and appointing Plaintiffs and

27    their undersigned counsel of record to represent the Class;

28    2.    For restitution of the full value of all benefits and enrichment Google has

21

1    obtained, and continues to obtain, at the expense of Plaintiffs and each member of the Class;

2         3.    For the entry of preliminary and permanent injunctive relief against Google,

3    directing Google not to charge the members of the Class more than their daily budgets;

4         4.    For the return of all money unlawfully charged Plaintiffs and the Class Members

5    by Google in the form of advertising fees together will all accumulation thereon;

6         5.    For the imposition of a constructive trust on all advertising fees improperly

7    charged Plaintiffs and the members of the Class by Google's failure to follow the daily budgets

8    together with all accumulation thereon;

9         6.    For declaratory relief setting forth the rights and obligations of the parties with

10   respect to the Agreement;

11        7.    For general damages in excess of the jurisdictional minimum of this Court;

12        8.    Compensatory damages in excess of the jurisdictional minimum of the Court,

13   according to proof;

14        9.    Consequential damages in excess of the jurisdictional minimum of the Court,

15   according to proof;

16        10.   Attorneys' fees, expenses, and costs of this action;

17        11.   Prejudgment interest; and

18        12.   Such further relief as this Court deems necessary, just, and proper.

19

20

21

22

23

24

25

26

27

28

Document: 150460   Version: 1   Client / Matter: 3168 : 1707   **First Amended Class Action Complaint**

1

## JURY TRIAL DEMAND

2    Plaintiffs demand trial by jury on all issues so triable.

3

4    Dated: November 14, 2005

ALEXANDER, HAWES & AUDET, LLP

5

6

7    Ryan M. Hagan
     William M. Audet

8    Jason Baker
     152 North Third Street, Suite 600

9    San Jose, CA 95112
     Telephone: 408.289.1776

10   Facsimile: 408.287.1776

11   WOLF POPPER LLP
     Lester L. Levy

12   Michele F. Raphael
     Renee L. Karalian (SBN 216260)

13   845 Third Avenue
     New York NY 10022

14   Telephone: 212.759.4600
     Facsimile: 212.486.2093

15

16   *Attorneys for Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

23

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California; my business address is 152 N. 3rd Street, Suite 600, San Jose, CA 95112; I am over the age of 18 and not a party to the within action. On this date I served the following document(s):

**FIRST AMENDED CLASS ACTION COMPLAINT**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| David T. Biderman | Lester L. Levy |
| Judith B. Gitterman | Michele F. Raphael |
| Lisa A. Delehunt | Renee L. Karalian |
| PERKINS COIE LLP | WOLF POPPER LLP |
| 180 Townsend Street, 3rd Floor | 845 Third Avenue |
| San Francisco CA 94107-1909 | New York NY 10022 |
| Telephone: 415.344.7000 | Telephone: 212.759.4600 |
| Facsimile: 415.344.7050 | Facsimile: 212.486.2093 |

☐ (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the above-referenced documents were transmitted, the transmission was reported as complete and without error and the report was properly issued.

☒ (BY MAIL) I am readily familiar with the firm's practice for the processing of mail; on this date, the above-referenced documents were placed for collection and delivery by the U.S. Postal Service following ordinary business practices.

☐ (BY OVERNIGHT DELIVERY) I am readily familiar with the firm's practice for the processing of documents for delivery services; on this date, the above-referenced documents were placed for collection and delivery following ordinary business practices.

☒ (BY ELECTRONIC FILING) On this date I provided the documents(s) listed above electronically through the Court's electronic filing service provider pursuant to the instructions on that website.

☐ (BY E-MAIL) On this date, the above-referenced documents were converted to Adobe files and e-mailed to the addresses shown.

☐ (BY PERSONAL SERVICE) I caused the above documents to be delivered by hand pursuant to CCP § 1011.

☒ Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

☐ State: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this ___14th___ day of ___November___, 2005, at San Jose, California.

_(signature)_

24

1

**JURY TRIAL DEMAND**

2      Plaintiffs demand trial by jury on all issues so triable.

3

4   Dated: November 14, 2005                    ALEXANDER, HAWES & AUDET, LLP

5

6                                                  _____/s/_____
7                                              Ryan M. Hagan
                                               William M. Audet
8                                              Jason Baker
                                               152 North Third Street, Suite 600
9                                              San Jose, CA 95112
                                               Telephone: 408.289.1776
10                                             Facsimile: 408.287.1776

11                                             WOLF POPPER LLP
12                                             Lester L. Levy
                                               Michele F. Raphael
13                                             Renee L. Karalian (SBN 216260)
                                               845 Third Avenue
14                                             New York NY 10022
                                               Telephone: 212.759.4600
15                                             Facsimile: 212.486.2093

16                                             *Attorneys for Plaintiffs and the Proposed*
                                               *Class*

17

18

19

20

21

22

23

24

25

26

27

28

23

**First Amended Class Action Complaint**

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California; my business address is 152 N. 3rd Street, Suite 600, San Jose, CA 95112; I am over the age of 18 and not a party to the within action. On this date I served the following document(s):

**FIRST AMENDED CLASS ACTION COMPLAINT**

on the interested parties in this action addressed as follows:

David T. Biderman                          Lester L. Levy
Judith B. Gitterman                        Michele F. Raphael
Lisa A. Delehunt                           Renee L. Karalian
PERKINS COIE LLP                           WOLF POPPER LLP
180 Townsend Street, 3rd Floor             845 Third Avenue
San Francisco CA 94107-1909                New York NY 10022
Telephone: 415.344.7000                    Telephone: 212.759.4600
Facsimile: 415.344.7050                    Facsimile: 212.486.2093

☐ (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the above-referenced documents were transmitted, the transmission was reported as complete and without error and the report was properly issued.

☒ (BY MAIL) I am readily familiar with the firm's practice for the processing of mail; on this date, the above-referenced documents were placed for collection and delivery by the U.S. Postal Service following ordinary business practices.

☐ (BY OVERNIGHT DELIVERY) I am readily familiar with the firm's practice for the processing of documents for delivery services; on this date, the above-referenced documents were placed for collection and delivery following ordinary business practices.

☒ (BY ELECTRONIC FILING) On this date I provided the documents(s) listed above electronically through the Court's electronic filing service provider pursuant to the instructions on that website.

☐ (BY E-MAIL) On this date, the above-referenced documents were converted to Adobe files and e-mailed to the addresses shown.

☐ (BY PERSONAL SERVICE) I caused the above documents to be delivered by hand pursuant to CCP § 1011.

☒ Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

☐ State: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this ___14th___ day of __November__, 2005, at San Jose, California.

_____/s/_____
Bonnie Hoy

24