1　Lester L. Levy (Admitted Pro Hac Vice)
　　Michele F. Raphael (Admitted Pro Hac Vice)
2　WOLF POPPER LLP
　　845 Third Avenue
3　New York NY 10022
　　Telephone: 212.759.4600
4　Facsimile: 212.486.2093
　　e-mail: llevy@wolfpopper.com
5　e-mail: mraphael@wolfpopper.com

6　William M. Audet (SBN 117456)
　　Ryan M. Hagan, Esq. (SBN 200850)
7　ALEXANDER, HAWES & AUDET, LLP
　　152 North Third Street, Suite 600
8　San Jose, CA 95112
　　Telephone: 408.289.1776
9　Facsimile: 408.287.1776
　　e-mail: waudet@alexanderlaw.com
10　e-mail: rhagen@alexanderlaw.com

11　*Attorneys for Plaintiffs and the
　　Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC.,<br><br>　　　　　　　Defendant. | CASE NO: C05-03649 JW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNJUST ENRICHMENT CLAIM**<br><br>Date:　March 13, 2006<br>Time:　9:00 a.m.<br>Place:　Courtroom 8<br>Judge:　Honorable James Ware |

---

**Plaintiffs' Opposition to Defendant's Motion to Dismiss Unjust Enrichment Claim**
**Case No: C05-03649 JW**

Doc. 151222

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ............................................................ 1

PROCEDURAL HISTORY .................................................................. 1

STATEMENT OF FACTS .................................................................... 2

      Google's AdWords Program ........................................................ 2

      The AdWords Agreement Allows Advertisers To Set A
      Daily Budget And To Pause Their Ad ........................................ 3

      Google Converts Every Daily Budget Into A Monthly Budget And Charges Advertisers
      Up To That Monthly Budget Amount Irrespective Of Whether Their Ad Was Paused .. 4

ARGUMENT ....................................................................................... 5

    I.    The Standards Of Proof On Defendant's Motion
         To Dismiss Plaintiffs' Unjust Enrichment Claim ................... 5

    II.   The Complaint States A Valid Cause Of Action For Unjust Enrichment . 6

CONCLUSION .................................................................................. 10

**TABLE OF AUTHORITIES**

Cases

*Accuimage Diagnostics Corp v. Terarecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*All World Professional Travel Services Inc. v. American Airlines, Inc.*,
 282 F. Supp. 2d 1611 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Balistreri v. Pacifica Police Dep't*,
 901 F.2d 696 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Berkla v. Corel Corp.*,
 302 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cognitim, Inc. v. Obayashi Corp.*,
 No. C-05-3747SC, 2005 U.S. LEXIS 30857 (N.D. Cal. Nov. 15, 2005) . . . . . . . . . . . . . 7

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Gorman v. Wolpoff & Abramson, LLP*,
 370 F. Supp. 2d 1005 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
 49 Cal. Rptr. 2d 191 (Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Keiser v. Lake County Superior Court*,
 No. C05-02310 MJJ, 2005 WL 3370006 (N.D. Cal. Dec. 12, 2005) . . . . . . . . . . . . . . . 6

*Molsbergen v. United States*,
 No. 84-1626, 1985 U.S. App. LEXIS 31271 (9th Cir. May 15, 1985) . . . . . . . . . . . . . . 6

*Moulton v. AmeriCredit Financial Services*,
 No. C 04-02485 JW, 2005 U.S. Dist. LEXIS 32185 6 (N.D. Cal. June 28, 2005) . . . . . . 6

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*,
 96 F.3d 1151 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Paulsen v. CNF, Inc.*,
 391 F. Supp. 2d 804 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Rader Co. v. Stone*,
 178 Cal. App. 3d 10 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robertson v. Dean Witter Reynolds, Inc.*,
 749 F.2d 530 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
 806 F.2d 1393 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sims v. First Consumers National Bank*,
 758 N.Y.S.2d 284 (N.Y. App. Div. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) .................................................... 6, 9

*Star Patrol Enters. v. Saban Entertainment*,
    No. 95-56534, 1997 U.S. App. LEXIS 29994 (9th Cir. Oct. 23, 1997) .............. 6

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................. 6, 9

*Williams v. Vidmar*,
    367 F. Supp. 2d 1265 (N.D. Cal. 2005) ........................................... 6, 9

**STATUTES AND RULES**

California Business & Professional Code §§ 17200 *et seq.* ............................ 1

California Business & Professional Code §§ 17500 *et seq.* ............................ 1

Fed. R. Civ. P. 8(a) ................................................................. 7

Fed. R. Civ. P. 12(b)(6) ............................................................. 6

**PRELIMINARY STATEMENT**

Google, Inc. ("Google") has moved to dismiss only one of the five claims alleged against it in this action brought by advertisers using Google's AdWords advertising program. While Google offered and represented that its AdWords Program gives advertisers the rights to set and pay their own daily budget, to pause their ad, and to pay for only those days that their ad runs, Google converted (and continues to convert) each advertiser's daily budget into a monthly amount (by multiplying their daily budget times the number of days in the month) and in any given month, charged advertisers up to said "monthly" amount - - regardless of how many days their ad ran. For example, an advertiser who set a daily budget of $100 and ran their ad only 10 days in a 30 day month, amounting to actual charges of only $1000, was charged any amount up to $3000. Google overdelivered the ad on the days it ran, but would not provide any credit for overages if the total charge was within the "monthly" charge of $3000 - - even though the ad only ran 10 days. As alleged in Plaintiffs' First Amended Complaint (the "FAC"), such conduct constitutes breach of contract, breach of the implied covenant of good faith and fair dealing, a violation of California Business & Professional Code §§ 17200 *et seq.,* a violation of California Business & Professional Code §§ 17500 *et seq.,* and unjust enrichment. Without denying or otherwise disputing said practice, Google has moved to dismiss only the unjust enrichment claim on the grounds that it is inconsistent with the contract claim and is otherwise inadequately pleaded. Google's argument, while successful in delaying this action, is legally wrong. Plaintiffs are entitled to plead both unjust enrichment and breach of contract and have satisfied the applicable pleading standard.

**PROCEDURAL HISTORY**

Plaintiffs filed their original complaint on August 3, 2005, in the Superior Court of the State of California, County of Santa Clara, alleging causes of action for violation of California Business & Professional Code §§ 17200 *et seq.*, breach of contract, negligent misrepresentation, unjust enrichment, imposition of a constructive trust, breach of the implied covenant of good faith and fair dealing, fraud - promise without intent to perform and injunctive and/or declaratory relief. Service upon Defendant was effected on August 11, 2005. Defendant requested

1  additional time to respond and as per a Stipulation between counsel for the parties entered into
2  on or about September 13, 2005, Plaintiffs granted Google its requested 30 day extension, to
3  October 12, 2005.  Then, on or about September 16, 2005, Plaintiff received Google's Notice of
4  Removal of Action to Federal Court which, according to Defendant's affidavit, had been served
5  by mail on September 9, 2005.  Google purportedly served its Motion to Dismiss Plaintiffs'
6  Complaint and supporting documents, by mail on October 12, 2005.  On November 14, 2005,
7  Plaintiffs filed and served the FAC.  Google again requested additional time to respond.
8  Plaintiffs granted Google's request and on November 22, 2005, the parties stipulated that any
9  answer to the FAC was to filed and served by December 16, 2005, and any responsive motion
10  was to filed and served by January 3, 2006.   It was further stipulated that the parties would meet
11  and confer in December 2005 and file their Joint Case Management Statement on or before
12  January 9, 2006, in accordance with the Court's Case Management order dated September 12,
13  2005.  On December 22, 2005, when it was apparent and represented that Google would be filing
14  a motion to dismiss as opposed to an answer, the parties stipulated, for the sake of judicial
15  economy, to adjourn the-then January 9, 2006 Joint Case Management Statement deadline to
16  April 21, 2006, and the January 23, 2006 Case Management Conference to May 1, 2006.
17      On January 3, 2006, Google filed this Motion to Dismiss Plaintiffs' Unjust Enrichment
18  Claim.  By filing this limited and legally incorrect motion, Defendant has succeeded in delaying
19  this case an additional few months.  Had Plaintiffs been advised of the extremely narrow nature of
20  the motion, they would not have entered into the aforementioned Stipulation in the name of
21  judicial economy.
22                              **STATEMENT OF FACTS**
23  **Google's AdWords Program**
24      Google owns and operates the Internet search engine known as Google.  (¶ 11[1].)  Internet
25  users use the search engine Google to locate and access relevant web sites by typing key words in
26  the search box and the Google engine locates and list websites containing those words and
27  provides links thereto. (¶ 11.)  Along with the general search results, Google displays a box(es),
28

---

[1]References to " ¶ __" are to paragraphs in the FAC.

**Plaintiffs' Opposition to Defendant's Motion to Dismiss Unjust Enrichment Claim**
**Case No: C05-03649 JW**

Doc. 151222                                    2

above, or to the right of, the search results containing "Sponsored Links" which are hyperlinks to the ads of those advertisers who sign up for, and pay for, Google's global advertising program, AdWords ("AdWords").  (¶¶ 11, 14.)

Google's revenue and viability are largely dependent upon its AdWords program.  (¶ 40.) According to a December 2, 2004 article on the CNNMoney website, "[p]aid-search advertising generates about 98 percent of Google's revenues."  (¶ 40.)  Google charges advertisers each time a Google user clicks on their ad. (*Passim.*)

As stated by Google in its Form 10-K for the year ended December 31, 2004, filed with the SEC on March 30, 2005 (2004 Form 10-K):

> Growth in our revenues from 2003 to 2004 and from 2002 to 2003, resulted primarily from growth in revenues from ads on our Google Network members' web sites and growth in revenues from ads on our web sites. The advertising revenue growth resulted primarily from increases in the total number of paid clicks and ads displayed through our programs, rather than from changes in the average fees realized.

(¶ 42.)

**The AdWords Agreement Allows Advertisers To Set A Daily Budget And To Pause Their Ad**

In order to join AdWords and have his/her website listed as a "Sponsored Link," (as opposed to just one website in the list of search results), an advertiser need only enter into the form agreement over the Internet which consists of  Google's Inc. AdWords Program Terms (2 pages) and 142 pages of "Frequently Asked Questions" ("FAQs," collectively,  the "Agreement.") (¶ 19.) An advertiser may (but is not required to) access the FAQs by clicking on a link entitled "Program Details and FAQ" which brings him or her to a maze of a more than 100 pages of information concerning the AdWords program.  (¶ 20.)

Specifically, to sign up for the AdWords program, a prospective advertiser goes to Google.com, clicks on the "Advertising Programs" hyperlink, which brings up the hyperlink for "Google AdWords," which, in turn, brings the prospective advertiser to the AdWords "sign up" or login page.  (¶ 21.)  Once clicking "sign up," a new advertiser scrolls and/or clicks on the various linked pages, and *inter alia*, (i) creates its ad and selects (i.e., "purchases") keywords which will trigger their ad to appear when someone using the  Google search engine inputs those same words; (ii) chooses the geographic locations it wants to target with its ad; (iii) sets a maximum cost-per-

click it wants to spend each time someone clicks on their ad; and (iv) sets a daily budget, which Google defines in the sign up process as the "amount you're willing to spend on a specific campaign each day and can be changed as often as you like." (¶ 22.) The AdWords account is activated, and the ad begins to appear as a "Sponsored Link" as soon as the advertiser provides an email address, chooses a password and submits billing information. (¶¶ 23-25.)

Throughout the sign up process and the AdWords Agreement, Google touts that its daily budget feature allows advertisers to set and control their own daily budget (¶ 34), and assures advertisers that Google will not go over their daily budget and that advertisers will not be billed more than they are willing to pay, (¶¶ 35-36). Google gives advertisers the right to change their daily budget as often as they like. (¶ 33.)

During the sign up process, Google explicitly tells prospective advertisers that they will only be billed for the days their ad runs:

> Google AdWords
>
> Daily Budget:
> .   Daily budget is based on the keyword Traffic Estimator.
> .   Daily charges can fluctuate depending on clicks you receive
> .   **Ad system ensures you never pay more than your daily budget multiplied by the number of days in a month your campaign was active**.

(¶ 37.) Google's Agreement similarly gives advertisers the right to "pause" an ad campaign at any time, without limit, and states that advertisers will not accrue charges for the period that their ad is paused. (¶ 38.)

**Google Converts Every Daily Budget Into A Monthly Budget And Charges Advertisers Up To That Monthly Budget Amount Irrespective Of Whether Their Ad Was Paused**

Although the Agreement plainly and repeatedly states that advertisers have a "daily budget" to control costs and set limits, Google AdWords misleadingly commits all advertisers to a monthly budget which it calculates by multiplying their daily budget times 30 or 31 - - with no exception made for days their ad is paused. (¶¶ 45, 47.) Defendant does not deny that it converts the daily budgets set by advertisers into monthly budgets. For example, when Plaintiff Stern complained about having been billed more than his daily budget, Google responded by telling him that it is allowed to bill advertisers up to the number of days in the billing period (30 or 31 days) times an

1  advertiser's daily budget. (¶ 46.)  Indicative of Google's deceptive and otherwise improper
2  conversion of a daily budget into a monthly budget, in its Agreement, Google explicitly
3  distinguishes the daily budget feature from a monthly budget which is used in connection with its
4  Jumpstart and Budget Optimizer features. (¶ 48 "Will my Google Budget Optimizer (TM) target
5  budget replace my current daily budget and C[ost] P[per] C[licks]?  The target budget you set
6  when you enable the Google Budget Optimizer tool will replace your campaign's previous
7  keyword CPCs and daily budget.  However, the AdWords system will store your keyword CPCs
8  and daily budget in case you'd like to restore these values after you disable the Budget
9  Optimizer.")

10  In order to best ensure that it will charge advertisers as much as possible, Google routinely
11 overdelivers ads to allow advertisers' accounts to go over their daily budget on any day that their
12 ad runs. (¶ 49.)   Google will not provide credits for charging advertisers more than their daily
13 budget on any given day as long as those overages do not cumulatively exceed the "monthly"
14 budget (daily budget times 30/31) created by Google.  (¶ 50.)  For example, if an advertiser has a
15 $100 daily budget, Google may overdeliver the ad by 20% (or more) on each day the ad runs.
16 Thus, if the advertiser only runs his ads on Mondays – 4 out of 30 days, at $100 per day, and
17 Google goes over the daily budget by 20% on all four days, Google will charge the advertiser $480
18 for the month ($120 per day).  Even though Google has exceeded the advertiser's "daily budget"
19 by $80, it deems the charge to be within budget because $480 is still less than $3000 (or $100 per
20 day times 30 days).  (¶ 51.)

## ARGUMENT

**I.     The Standards Of Proof On Defendant's Motion
        To Dismiss Plaintiffs' Unjust Enrichment Claim**

"The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Moulton v. AmeriCredit Financial Services*, No. C 04-02485 JW, 2005 U.S. Dist. LEXIS 32185, * 6 (N.D. Cal. June 28, 2005) quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *Paulsen v. CNF, Inc.,* 391 F. Supp. 2d 804, 807 (N.D. Cal. 2005). Such a motion must not be granted "'unless it appears beyond doubt that the plaintiff can prove no

1  set of facts in support of his claim which would entitle him to relief.'" *Gilligan,* 108 F.3d at 249

2  (citation omitted); *Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005, 1008 (N.D. Cal.

3  2005). Dismissal pursuant to Fed. R. Civ. P.12(b)(6) is proper only when the plaintiff has failed to

4  assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory.

5  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996);

6  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter*

7  *Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). A Court should not dismiss any claim for relief

8  unless the plaintiff cannot prove any set of facts in support of the claim that would entitle him or

9  her to relief. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

10       On a motion to dismiss a complaint for failure to state a claim, all allegations in the

11  complaint are assumed to be true and the complaint is to be liberally construed in favor of the

12  plaintiff. *Paulsen,* 391 F. Supp. 2d at 807; *Star Patrol Enters. v. Saban Entertainment*, No. 95-

13  56534, 1997 U.S. App. LEXIS 29994, at *2 (9th Cir. Oct. 23, 1997) ("Rule 12(b)(6) does not

14  establish a high threshold for pleadings . . . . 'allegations must be liberally construed and taken as

15  true, and all inferences must be drawn in favor of the plaintiff.'") (citation omitted); *Williams v.*

16  *Vidmar*, 367 F. Supp. 2d 1265, 1269 (N.D. Cal. 2005) ("[t]he court 'must presume all factual

17  allegations of the complaint to be true and draw all reasonable inferences in favor of the

18  nonmoving party.'") (citation omitted). Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal must be

19  denied if, from the pleading's four corners, factual allegations are discerned which taken together

20  manifest any cause of action cognizable at law. *Keiser v. Lake County Superior Court*, No. C05-

21  02310 MJJ, 2005 WL 3370006, at *8 (N.D. Cal. 2005).

22  **II.     The Complaint States A Valid Cause Of Action For Unjust Enrichment**

23       Google's motion erroneously argues that Plaintiff cannot allege both an unjust enrichment

24  claim and a breach of contract claim because the former is based upon a quasi-contract theory.

25       "The Federal Rules of Civil Procedure . . . explicitly authorize litigants to present

26  alternative and inconsistent pleadings." *Molsbergen v. United States*, No. 84-1626, 1985 U.S.

27  App. LEXIS 31271, at *5 (9th Cir. May 15, 1985). "Pursuant to Rule 8(e)(2), '[a] party may set

28  forth two or more statements of a claim or defense alternatively or hypothetically.' . . . '[a] party

1 may also state as many separate claims or defenses as he has regardless of consistency.'" *Id*. *See*
2 *also Cognitim, Inc. v. Obayashi Corp.*, No. C-05-3747SC, 2005 U.S. Dist. LEXIS 30857, at *14
3 (N.D. Cal. Nov. 15, 2005) (a plaintiff may set forth inconsistent theories); Fed. R. Civ. P. 8(a)
4 ("relief in the alternative or of several different types may be demanded").  As such, plaintiffs
5 routinely allege causes of action for breach of contract, on one hand, and unjust enrichment or
6 other equitable remedies, on the other. *See, e.g., Cognitim*, 2005 U.S. Dist. LEXIS 30857, at * 8
7 (plaintiff allowed to plead both express contract claim and an implied contract claim concerning
8 the same subject matter); *All World Professional Travel Services Inc. v. American Airlines, Inc.*,
9 282 F. Supp. 2d 1161, 1165 (C.D. Cal. 2003) (plaintiff alleged breach of contract and unjust
10 enrichment).

11 Plaintiffs are not required to elect one remedy at the pleading stage. *Rader Co. v. Stone*,
12 178 Cal. App. 3d 10, 29 (1986) ("[W]here the exact nature of the facts is in doubt, or where the
13 exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the
14 plaintiff, the pleading may properly set forth alternative theories in varied and inconsistent
15 counts.")  It is necessarily premature to identify at the pleading stage whether Plaintiffs' breach of
16 contract claim or unjust enrichment claim will survive to judgment.  Undoubtedly, Defendant will
17 deny liability for breach of contract (as well as unjust enrichment) when it answers the FAC.
18 Hence, plaintiffs may prosecute both claims until it can be determined on which one recovery will
19 be based.  As explained by the Supreme Court of New York, Appellate Division, First Department
20 in denying a defendant's motion to dismiss plaintiff's implied duty claim as duplicative of contract
21 claim, "the issues in the instant case are still undeveloped in this pre-answer stage, both claims at
22 this stage should stand." *Sims v. First Consumers National Bank*, 758 N.Y.S.2d 284, 286 (N.Y.
23 App. Div. 2003).

24 Notably, the cases Google relies upon in support of dismissal of plaintiffs' unjust
25 enrichment claim at this time, were not decided at the pleading stage.  To the contrary, *Paracor*
26 *Finance Inc., v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1167 (9th Cir. 1996), was an appeal of a
27 summary judgment motion wherein the Court upheld dismissal of an unjust enrichment claim only
28 after the validity and enforceability of the purported agreement between the parties was established

and only after the rights and obligations of the parties thereunder were fully considered. Similarly, in *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 49 Cal. Rptr. 2d 191, 197-98 (Ct. App. 1996), the appellate court reversed the trial court's finding of quantum meruit damages after trial and decision because of factual findings - - "In light of these factual findings, it was error for the trial court then to rule that [defendant] nevertheless had an equitable implied-in-law duty to pay money to [plaintiff]. The legal ruling is inconsistent with the factual findings." Notably, and relevant to the issue at bar, the *Hedging* Court further opined that if a court does not find a valid contract governing the dispute, it may fashion an equitable remedy. *Id.* at 198 n.8. Hence, both claims must be sustained at the pleading stage.

Plaintiffs do, however, recognize that <u>pleading</u> claims for breach of contract and unjust enrichment is necessarily distinct from <u>recovery</u> under both and do not claim to be entitled to duplicative recovery. If, and when, the breach of contract claim is upheld and the facts developed demonstrate that recovery will be had under the contract claim or defendant admits liability thereunder, then steps can be taken to dismiss the unjust enrichment claim. Nevertheless, Defendant relies upon *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002), which involved a post-trial appeal wherein plaintiff was deemed unable to recover on his quasi-contractual breach of confidence claim because he was found to be entitled to recovery on his express contract claim, arising out of the same facts. However, relevant to the issue before this Court, the *Berkla* Court, like the *Hedging* Court, opined that while plaintiff was not permitted to recover under both causes of action, "this is not to say that a party will necessarily plead itself out of court if, in the face of a breach of an express [non disclosure agreement], it elects also to assert a [quasi-contractual theory] arising out of a common nucleus of fact." *Id.* at 918 n. 9. Hence, Plaintiffs' unjust enrichment must be sustained at this pleading stage.

In addition to being allowed to plead both a contract claim and an unjust enrichment claim, the allegations in the FAC are sufficient to state a cause of action for unjust enrichment. Under California law, to state a claim for unjust enrichment, a plaintiff must allege receipt of a benefit, and unjust retention of the benefit at the expense of plaintiff. *Accuimage Diagnostics Corp v.*

1 *Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003).  "Benefit" has been interpreted so as to "denote any form of advantage." *Id.*

Applying the above, it is clear that the FAC, both from its express allegations and from the four corners thereof, adequately pleads a cause of action for unjust enrichment.  Plaintiffs claim that "Google has been unjustly enriched through unlawful overcharging and collecting advertising fees in excess of advertiser's daily budget times the number of days their ad runs, to the detriment of Plaintiffs and each member of the Class." (¶ 117).   Plaintiffs further allege that Google has unjustly benefitted from its unlawful overcharging and continues to benefit, at the expense of, and to the detriment of, Plaintiffs and each member of the Class" (¶118), and that "Google has voluntarily accepted and retained these profits and benefits which it derived from Plaintiffs and Class Members with the full knowledge and awareness that they result from its own wrongful, routine and systematic overcharging for advertising." (¶ 119).   Such allegations, on their face and construed in favor of the Plaintiffs, are sufficient to support a claim for unjust enrichment.  *See Steckman*, 143 F.3d at 1295; *SmileCare Dental Group*, 88 F.3d at 782; *Williams*, 367 F. Supp. 2d at 1265.

Google's argument that this claim should be dismissed because Plaintiffs have failed to expressly state that there is no legally binding contract that governs the parties' respective rights, *(see Defendant's Memorandum of Points and Authorities*, at 3), does not warrant dismissal of this claim.  The FAC addresses all of the necessary elements of an unjust enrichment claim and provides sufficient notice to defendant.  However, if and to the extent, this Court deems the pleading wanting, Plaintiffs should be given the opportunity to address the Court's concerns. "[L]eave to amend should be granted unless the court determines that  the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Obviously wary of the strength of its motion, Defendant preemptively claims that Plaintiffs should not be allowed to amend, because to do so, and allow them to allege that there was no contract, would be in violation of Rule 11 given their other claims and allegations.  To the contrary, as detailed above, allowing

**Plaintiffs' Opposition to Defendant's Motion to Dismiss Unjust Enrichment Claim**
**Case No: C05-03649 JW**

Doc. 151222                                                9

1  Plaintiffs to assert the prerequisites of an unjust enrichment claim, even if they are inconsistent
2  with other claims or facts would not be a violation of Rule 11.

## CONCLUSION

For the reasons set forth herein and the allegations in Plaintiffs' First Amended Complaint, Defendant Google Inc.'s Motion to Dismiss Plaintiffs' Unjust Enrichment Claim should be denied and this case should proceed to an adjudication on its merits.

Dated: February 2, 2006

**WOLF POPPER LLP**

By: /s/ Michele F. Raphael
Lester L. Levy (Admitted Pro Hac Vice)
Michele F. Raphael (Admitted Pro Hac Vice)
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

ALEXANDER, HAWES & AUDET, LLP
William M. Audet
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

*Attorneys for Plaintiffs and the Proposed Class*