William M. Audet, Esq. (SBN 117456)
Jason Baker, Esq. (SBN 212380)
ALEXANDER, HAWES & AUDET, LLP
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

Lester L. Levy (Admitted Pro Hac Vice)
Michele Fried Raphael (Admitted Pro Hac Vice)
WOLF POPPER LLP
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

*Attorneys for Plaintiffs and the
Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE, INC., <br><br> Defendant. | CASE NO: 05-03649 <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **1.  Breach of Contract** <br> **2.  Breach of Implied Covenant of Good Faith and Fair Dealing** <br> **3.  Violation of California Bus. & Prof. Code §§ 17200 *et seq.*** <br> **4.  Violation of California Bus. & Prof. Code §§ 17500 *et seq.*** <br> **5.  Unjust Enrichment** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, by their attorneys, allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based upon Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Google, Inc. ("Google" or the "Company") on behalf of themselves and other persons and entities that advertise pursuant to

1    Google's AdWords program ("AdWords") and have been charged more than their "daily

2    budget" for their advertising campaign (the "Class").

3        2.      Plaintiffs bring this action to enjoin Google from engaging in such wrongful

4    overbilling in connection with its AdWords program and to recover damages incurred.

5                        **JURISDICTION AND VENUE**

6        3.      This Court has jurisdiction over this action pursuant to the Class Action Fairness

7    Act of 2005, 28 U.S.C. §1332(d)(2). The matter in controversy exceeds the jurisdictional

8    amount and there are members of the Class that are citizens of States different from the

9    Defendant's.

10       4.      The claims asserted will be governed by the laws of California. California has a

11   distinct nexus with the alleged harm and the Defendant. It is possible that the number of citizens

12   of California is substantially larger than the number of citizens from any other State.

13       5.      Defendant Google, a citizen of California, is the sole defendant from whom relief

14   is sought by members of the Class, and whose alleged conduct forms the basis for the claims

15   asserted by the Class.

16       6.      Venue is proper in this Court because a substantial part of the events or omissions

17   giving rise to the claims herein occurred in this County, and Google has at all relevant times

18   been doing business in this County and throughout California and maintains its principal

19   executive offices in Santa Clara County.

20       7.      The AdWords program terms state that the AdWords agreement is governed by

21   California law and any claims thereunder are to be adjudicated in Santa Clara County,

22   California.

23                              **THE PARTIES**

24       8.      Plaintiff CLRB Hanson Industries, LLC d/b/a Industrial Printing ("Industrial

25   Printing") is a limited liability corporation formed in the state of Minnesota. Industrial Printing

26   advertises on the Google network pursuant to AdWords.

27       9.      Plaintiff Howard Stern ("Stern") is a citizen of the state of New Jersey. Stern

28   advertises his business, homeworksolvers.net, on the Google network.

10.    Defendant Google is a Delaware corporation, with its principal place of business located within Santa Clara County at 1600 Amphitheatre Parkway, Mountain View, California 94043.

11.    Google owns and operates the Internet search engine named Google and offers advertising programs.  Internet users use the search engine to locate and access web sites.  Users key in words in the search box on the Google search screen and Google locates and lists websites containing those words and provides links thereto.  On the same page as the search results, Google displays a box or boxes, above or to the right of, the search results which contain "Sponsored Links" having 2-4 lines of text.  These "Sponsored Links" are links to the websites of businesses that provide the services or sell the products concerning the search terms that had been inputted.  These "Sponsored Links" are the ads of the advertisers who sign up for, and pay for, Google's advertising program.  These ads could also appear in similar locations on the search and content sites and products in the Google network.

12.    The Google network is the largest online advertising network in the United States and includes thousands of third-party web sites.  The search sites include, for example, AOL, Earthlink, AskJeeves, and Shopping.com; the content websites include, for example, The New York Times, HGTV, and the Weather Channel.

13.    Google purports to be a global technology leader focused on improving the ways people connect with information.  According to the Company's Form S-1 filed with the Securities and Exchange Commission ("SEC") on April 29, 2004 in conjunction with its initial public offering, the Company's:

> [I]nnovations in web search and advertising have made our web site a top Internet destination and our brand one of the most recognized in the world. We maintain the world's largest online index of web sites and other content, and we make this information freely available to anyone with an Internet connection. Our automated search technology helps people obtain nearly instant access to relevant information from our vast online index.  We generate revenue by delivering relevant, cost-effective online advertising. Businesses use our AdWords program to promote their products and services with targeted advertising.

3                                                    **Class Action Complaint**

**SUBSTANTIVE ALLEGATIONS**

**The AdWords Program**

14.    AdWords is a global advertising program offered by Google.

15.    Google states that AdWords gives advertisers hands-on control over all elements of their ad campaigns.

16.    On the homepage for Google AdWords, under the heading "AdWords Advantages," Google touts "we pledge to help you meet your customer acquisition needs by enabling you to: . . . . Fully control your ad budget."

17.    Also on the homepage, under the heading "control," Google states:

> With all the great features listed below a Google AdWords account is fully customized for any advertiser.
>
> *        *        *
>
> •        Daily budget you set, starting from 5 cents USD.
>
> And with no monthly minimum spending limit . . .

18.    AdWords gives advertisers the right to target their advertising campaign(s) and to limit the appearance of their ad(s) so that the ad(s) only appear in response to searches conducted from specific locales, at particular times or upon other specified search criteria.

19.    In order to advertise with Google, advertisers sign up for the AdWords program over the Internet.  The form agreement, found on-line, consists of a two-page document entitled Google Inc. AdWords Program Terms ("Terms") and 142 pages of  "Frequently Asked Questions" ("FAQs") which further explains the program and can be accessed from Google's AdWords site (collectively, the "Agreement.").   The Terms incorporate the FAQs into the Agreement.  A copy of the Agreement (page-numbered for purposes of this Complaint), is annexed hereto as Exhibit A.  (Citations thereto are to "Agreement, ___.")

20.    An advertiser can access the FAQs by clicking on a link entitled "Program Details and FAQ" which then brings him/her to a maze of more than 100 pages of information concerning the AdWords program.

21.    Advertisers sign up for the AdWords program online through the "Advertising Programs" hyperlink on the Google.com Internet search engine site (Google's homepage). Clicking on the "Advertising Programs" hyperlink brings up the Google page with the hyperlink

1   for "Google AdWords," which, in turn, brings the prospective advertiser to the AdWords "sign

2   up" or login page.

3       22.    By scrolling and clicking on the various linked pages, an advertiser, among other

4   things: (i) creates its ad and selects (i.e., "purchases") keywords which will trigger the ad to run

5   when an Internet user inserts a search into the Google search engine which includes those

6   keywords; (ii) chooses the geographic locations it wants to target with its ad; (iii) sets a

7   maximum cost-per-click it wants to spend each time someone clicks on the ad; and (iv) sets a

8   daily budget, which Google describes in the sign up process as the "amount you're willing to

9   spend on a specific campaign each day and can be changed as often as you like."

10      23.    After providing the afore-mentioned information, the advertiser creates an

11  AdWords account by providing an email address and choosing a password.

12      24.    To activate the ad(s), the advertiser logs into the account he/she created and

13  submits his/her billing information.

14      25.    The advertiser's ad(s) begins to run once valid billing information is submitted.

15      26.    Throughout the sign up process, advertisers can either click on form questions or

16  search for help by entering terms they have questions about.  By clicking on the form questions

17  and by entering the help terms, Google brings to the screen responsive portions of the FAQs.

18      27.    AdWords allows advertisers to "pause" an ad campaign at any time without limit.

19      28.    The Company touts in its Form 10-K for the year ended December 31, 2004, filed

20  with the SEC on March 30, 2005 (the "2004 Form 10-K") (as well as in its quarterly Form 10-Qs

21  filed with the SEC) AdWords as an effective way "to deliver relevant ads targeted to search

22  results or web content" and to "provide[ ] advertisers with a cost-effective way to deliver ads to

23  customers across Google sites and through the Google Network."

24      29.    The Company emphasizes in its 2004 Form 10-K, that "AdWords gives

25  advertisers hands-on control over most elements of their ad campaigns. Advertisers can specify

26  the relevant search or content topics for each of their ads.  Advertisers can also manage

27  expenditures by setting a maximum daily budget and determining how much they are willing to

28  pay whenever a user clicks on an ad."

**Advertisers Set a "Daily" Budget and Are**
**Supposed to  Have the Right to Control What they Pay**

30.     A key feature of AdWords is that it allows the advertiser to set a "daily budget."

31.     As part of the sign up process, the advertiser sets a daily budget which limits the amount of money that Google may charge per day.  As stated by Google: "Your daily budget is the amount you're willing to spend on a specific campaign each day and can be changed as often as you like."

32.     The AdWords Agreement gives advertisers the right to set their own daily budget as a method of cost control.

33.     Advertisers have the right to change their daily budget as often as they like.  The FAQs section provides that an advertiser may change a daily budget for an ad campaign up to ten times per day.

34.     In the AdWords Agreement, Google represents, offers and agrees to the following concerning the daily budget:

    a.     How do I create an AdWords account?

               *       *       *
           Step 4: Specify your **daily budget**.
           Your maximum **daily budget** helps determine your ad
           exposure (the number of times Google shows your ad in a
           day).  There is no minimum daily budget.

           (Agreement, 019-20 ) (Emphasis added.)

    b.     What are all the steps to creating an AdWords Account?

               *       *       *
           Choose **Daily Budget**
           13.     A recommended **daily budget** will appear highlighted in the **daily
           budget** box on the next page.  This is the amount necessary for
           your ad to appear every time on your keyword.  However, you can
           increase or lower this amount by typing in your desired **daily
           budget**."
           *Note*: This amount controls how often your ad appears on Google;
           we will spread the delivery of your ad throughout the day to stay
           within your alternative budget setting.  Matching the recommended
           **daily budget** helps ensure maximum exposure.

           (Agreement, 020-21.) (Emphasis added.)

    c.     How does Google come up with a recommended budget?

We recommend **daily budgets** based on historical data for the same or similar keywords as you. We also consider additional factors-such as variations in language and location and Google Network activity. The **daily budget** we recommend will ensure your ads appear for all relevant searches, increasing your visibility and reach to potential customers.

Remember, setting your **daily budget** to the amount we recommend is optional-you're always in full control of your AdWords account. You can edit your campaign's daily budget as often as you'd like, and to whatever amount results in the most appropriate return on investment for you.

(Agreement, 061.) (Emphasis added.)

d.   Why can't I see my ad?

                    *        *        *

2. 2. Check your **daily budget**.  When you create your ads, we recommend a **daily budget** for maximum ad delivery. If your **daily budget** is set lower than the recommended amount, we spread the delivery of your ad throughout the day in order to stay within your budget. In that case your ad may not be showing when you look for it. To maximize your visibility, meet the recommended **daily budget** amount.

(Agreement, 036.) (Emphasis added.)

e.   What happens if my **daily budget** is lower than what the AdWords system recommends?

                    *        *        *

You may have received an email or a notification in your account stating that your ads have periodically stopped showing because one or more of your campaigns has reached its **daily budget**.  This notification links to a tool you can use to edit your daily budget.
                    *        *        *
. . . Is this just a way to get me to pay more?
If you increase your **daily budget**, you won't necessarily spend it all. Remember, you only pay when people click your ads. And, of course, you're always in control of your account-you never have to pay more than you want.

(Agreement, 048-049.) (Emphasis added.)

f.   Is image ads pricing different than text ads pricing?

No. . . . Your **daily budget** can go as high as you like.

(Agreement, 062.) (Emphasis added.)

g.   Does it cost extra to show my ads on all of the Google Network sites?

There is no fee to run your ads on sites and products in the Google Network. . . . As with all Google advertising, you only pay for clicks on your ads.  You control how much you spend by selecting a maximum cost-per-click (CPC) and **daily budget** that fit your advertising goals.

(Agreement, 062.) (Emphasis added.)

Doc. 152809                                                                    **Class Action Complaint**

35.    The Agreement assures advertisers that Google will not go over their daily budget:

How does Google keep my campaign below my **daily budget**?
Google shows your ads evenly over time so that you reach your **daily budget** by the end of each day.  This keeps your ad from accumulating charges early on and then disappearing for the remainder of the day.
Once you've selected your keywords, you'll see a recommended **daily budget**.  If you set your **daily budget** to this value, you will maximize your ad's visibility and activity.  If your **daily budget** is lower than the recommended amount, Google will deliver your ads evenly throughout the day to keep your costs at or below your **daily budget.**

(Agreement, 062.) (Emphasis added.)

36.    The Agreement repeatedly refers to advertisers' ability to control the costs of their advertising  and assures advertisers that they will not be billed more than they are "willing to pay":

a.    How much does AdWords cost?

In the Google AdWords program, the cost of your campaigns really depends on you -- **how much you are willing to pay** and how well you know your audience.  It all boils down to knowing your own goals and letting us know what they are.

There is a nominal, one-time activation fee for Google AdWords. After that, you pay only for clicks on your AdWords ads, and you can control that by telling us **how much you are willing to pay** per click and per day.

(Agreement, 010.) (Emphasis added.)

b.    Top 5 Things I need to know to get started:

How much does AdWords cost?
There is a nominal, one-time activation fee for Google AdWords.  After that, **you pay only for clicks on your AdWords ads, and you can control that by telling us how much you are willing to pay per click per day.** For example, a new advertiser paying in USD can activate his/her AdWords account with just US$5.00, and can then choose a maximum cost-per-click (CPC) from US$0.05- US$100.  Daily budgets start as low as 5 cents up to whatever limit he or she is comfortable spending.

(Agreement, 010.) (Emphasis added.)

c.    Are there spending requirements, a minimum contract length, or other qualifying term?

**Class Action Complaint**

There is **never a minimum spending commitment** when you sign up for AdWords.  No minimum contract requirements or other "lock-in" rules apply.  **You have complete control** over how long you participate in AdWords, and you control the maximum you want to spend per day.

(Agreement, 012.) (Emphasis added.)

d.      How much do image ads cost?

As with text ads, each advertiser determines the cost of their own image ad campaign. Your price depends on the keywords on which you choose to advertise, how much you bid, and how successfully you design your ads. You set your own **daily budget**, which will control your overall spending.  There is a nominal one-time activation fee for Google AdWords, but there is never a minimum spending commitment.

(Agreement, 016.)

e.      AdWords billing & payments: AdWords account costs

How do I control the cost of my ads?
With cost-per-click advertising on AdWords, **the cost of your campaigns really depends on you - how much you are willing to pay** and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.
•        Set your own limits: There is a nominal activation fee for Google AdWords. After that, you tell us how much you are willing to pay per click and per day.

(Agreement, 059.)  (Emphasis added.)

**Pausing an Ad**

37.     During the sign up process, Google explicitly tells prospective advertisers that they will only be billed for the days their ad runs:

Google AdWords

Daily Budget:

.       Daily budget is based on the keyword Traffic Estimator

.       Daily charges can fluctuate depending on clicks you receive

.       **Ad system ensures you never pay more than your daily budget multiplied by the number of days in a month your campaign was active**

A hard copy of this screen is annexed hereto as Exhibit B.

38.     The Agreement likewise gives advertisers the right to "pause" an ad campaign at any time, without limit, and states that advertisers will not accrue charges for the period that their ad is paused:

**Class Action Complaint**

    a.     <u>Can I have my ads run at particular times of day</u>?

                *         *         *

**You can pause your ad campaign at any time. You won't accrue charges while your ads are paused,** and they'll remain paused until you resume them.

(Agreement, 026.)  (Emphasis added.)

    b.     <u>If I pause or delete my campaign, when do I get billed</u>?

**After you pause or delete all of your campaigns, you don't accrue any additional charges to your Google AdWords account**.  However, because the AdWords program bills on a 30-day billing cycle, you may receive a charge up to 30 days after you have paused or deleted your campaigns.  **You will be charged for any activity that occured [sic] before you pause or delete a campaign.**

(Agreement, 070. )  (Emphasis added.)

39.     Unlike advertising in traditional media such as billboards and print publications, cost-per-click Internet ads displayed with specific keyword searches have been promoted as a definitive way for companies to gauge their exposure to potential customers.  As a result, U.S. sales from advertiser-paid search results are expected to grow 25 percent this year to $3.2 billion, up from $2.5 billion in 2003, according to research firm eMarketer.  From 2002 to 2003, the market rose by 175 percent.

40.     Google's revenue is largely dependent upon its AdWords program.  The revenue that Google receives from its AdWords program is critical to the viability of Google.

41.     According to a December 2, 2004 article on the CNNMoney website:

Paid-search advertising generates about 98 percent of Google's revenues.  Red-hot demand for cost-per-click advertising doubled Google revenues in the first three quarters of [2004] and paved the way for the company's blockbuster IPO in August.

42.     Google's latest 2004 Form 10-K stated:

Growth in our revenues from 2003 to 2004 and from 2002 to 2003, resulted primarily from growth in revenues from ads on our Google Network members' web sites and growth in revenues from ads on our web sites. The advertising revenue growth resulted primarily from increases in the total number of paid clicks and ads displayed through our programs, rather than from changes in the average fees realized. The increase in the number of paid clicks was due to an increase in the number of Google Network members, an increase in aggregate traffic both on our web sites and those of

our Google Network members and improvements in our ability to monetize increased traffic on our web sites.

43.     In its 2004 Form 10-K and quarterly Form 10-Qs filed with the SEC, Google boasts that AdWords is an effective way "to deliver relevant ads targeted to search results or web content" and to "provide[ ] advertisers with a cost-effective way to deliver ads to customers across Google sites and through the Google Network."

44.     Google also reiterated in its 2004 Form 10-K that advertisers can manage expenditures by setting a maximum daily budget and determining how much they are willing to pay whenever a user clicks on an ad.

**Google Wrongfully and Misleadingly Charges**
**Advertisers More Than Their Daily Budget**

45.     Despite the fact that throughout the sign up process and the Agreement, Defendant Google plainly and repeatedly states that advertisers set their own "daily" budget to control costs and set limits, Google wrongfully and misleadingly commits advertisers to a monthly budget, in an amount up to their daily budget times 30 or 31, with no exception made for days their ad is paused.

46.     Defendant does not deny that it converts the daily budgets set by advertisers into monthly budgets. For example (and as detailed below), when Plaintiff Stern complained about having been billed more than his daily budget, Defendant responded by telling him that Google is allowed to bill advertisers up to the the number of days in the billing period (30 or 31 days) times said advertiser's daily budget.

47.     Even though the Agreement plainly and repeatedly states that advertisers will not be charged during periods that their ad is paused or deleted, Google does not exclude those days when it calculates an advertiser's monthly charge (daily budget times 30/31).

48.     In stark contrast to the daily budget advertised, offered and agreed to, by Google, and set by advertisers, the Agreement refers to monthly budgets in the context of Google's Jumpstart and Budget Optimizer Features, and expressly distinguishes such "monthly" budgets from an advertiser's "daily" budget:

a.     Will my Google Budget Optimizer (TM) target budget replace my current daily budget and CPC?

1
2
3

> The target budget you set when you enable the Google Budget Optimizer tool will replace your campaign's previous keyword CPCs and daily budget. However, the AdWords system will store your keyword CPCs and daily budget in case you'd like to restore these values after you disable the Budget Optimizer.

4

(Agreement, 034.)

5
6

b.    If you used Jumpstart to create your AdWords campaign, you were asked to specify a monthly budget.

7

(Agreement, 063.)

8

49.    In contrast to Google's representations concerning setting a daily budget to allow

9

an advertiser to control its advertising costs, Google routinely overdelivers ads to allow

10

advertisers' accounts to go over their daily budget.

11

50.    Google will not provide credits for charging advertisers more than their daily

12

budget on any given day as long as those overages do not cumulatively exceed the calculated

13

"monthly" budget (daily budget times 30/31) in any given month.

14

51.    In a simple example, if an advertiser has a $100 daily budget, Google may run the

15

advertiser's ad so that the daily cost goes up to 20% (or more) over the $100 daily budget on any

16

given day. If this advertiser only wants to advertise on Mondays – 4 out of 30 days, at $100 per

17

day, and the ad goes 20% over budget on all four days, or $120 per day, Google will charge

18

$480. Even though Google has exceeded the advertiser's "daily budget" by $80, Google deems

19

the full charge to be within budget because the total of $480 is less than $3000 (or $100 per day

20

times 30 days).

21

52.    Google has a substantial financial interest in increasing the charges for AdWords

22

advertising.

23

53.    The information necessary to demonstrate the extent of injury to each named

24

plaintiff and every other advertiser is in Google's sole possession.

25

54.    As set forth in Paragraph 5 of the Terms portion of the Agreement, " Payment.  .

26

Charges are solely based on Google's click measurements. Refunds (if any) are at the discretion

27

of Google and only in the form of advertising credit for Google Properties."  (Agreement, 002.)

28

55.    Within the FAQ portion, the Agreement further provides: "We make

extraordinary efforts to provide accurate reports. For that reason, no measurements other than

1  those maintained by Google shall be accepted for reporting or payment purposes." (Agreement,

2  0109.)

3  **Defendant's Wrongful Conduct With Respect to Plaintiffs**

4      56.    In July, 2002, plaintiff Industrial Printing entered into a contract with Google to

5  advertise using the AdWords program and specified a daily budget.

6      57.    Despite this set daily budget, Google routinely exceeded the daily budget set by

7  Plaintiff Industrial Printing, Google did not credit Industrial Printing for all such charges over its

8  daily budget, and Google continues to charge it for advertising in excess of its daily budget.

9      58.    Plaintiff Industrial Printing ran an advertising campaign, Contract Decorating,

10  during the month of February 2005 for 27 days with a $50 daily budget and was charged a total

11  of $1495.33, or $55.38.  The same campaign was run in March 2005,  for 17 days with a daily

12  budget of $50.  On each day the campaign ran in that billing cycle, Google overdelivered the ad,

13  charging Industrial Printing from 121% to 162% above its $50 daily budget, for an average of

14  141% over the applicable daily budget.  Plaintiff was billed $1,197.79 in March 2005 ($70.45

15  per day) instead of the $850 it contracted for, and was "willing to pay."

16      59.    Similarly, in connection with another campaign, Mousepads, also with a $50 daily

17  budget, in February 2005 Plaintiff Industrial Printing ran the add 9 days and was charged

18  $462.23, or $51.35 per day.  In March 2005, the campaign, still with a daily budget of only $50,

19  ran only 2 days and Industrial Printing was charged $118.10, or $59.05 per day.

20      60.    With respect to yet another campaign, Team, also with a $50 daily budget, in

21  February, 2005, Google charged Industrial Printing $1443.11 for said campaign which ran only

22  27 days, or $53.44 per day.  In March, 2005, Industrial Printing was charged $1126.08 even

23  though the ad ran only 17 days, or $66.24 per day.

24      61.    Google charged Industrial Printing's credit card for said amounts and did not

25  provide credits therefore.

26  **Defendant's Wrongful Conduct With Respect to Plaintiff Stern**

27      62.    In October, 2003, Plaintiff Stern entered into a contract with Google to advertise

28  using the AdWords program.  He set his daily budget at $10.

63.     Plaintiff Stern's daily budget has consistently been $10.

64.     Despite having set a daily budget of $10, Google routinely exceeds the daily budget set by Plaintiff Stern.

65.     For example, on April 5, 2005, Plaintiff Stern was charged $16.78; on April 12, 2005, he was charged $19.34; on April 12, 2005 he was charged $11.59; and on April 25, 2005 he was charged $16.10.

66.     Plaintiff Stern complained about the overbilling.

67.     When Plaintiff Stern complained to Google, Google said that it only provides credit for charges above 30/31 times his daily budget in a monthly billing cycle.

68.     Plaintiff Stern has never been credited for the overages.

## CLASS ACTION ALLEGATIONS

69.      Plaintiffs bring this action as a class action pursuant to Fed. P. Civ. Proc. 23 on behalf of themselves and all persons who were charged by Google more than their set daily budgets for their advertising campaign(s).

70.     <u>Numerosity (FRCP 23 (a)(1))</u>:  Members of the Class are so numerous that joinder is impracticable.  Plaintiffs believe that thousands of people have been damaged by Google's conduct.  The names and addresses of the members of the Class are identifiable through documents maintained by Google and the members of the Class may be notified of the pendency of this action by published, mailed, and/or electronic notice.

71.     <u>Common Questions of Fact and Law (FRCP 23(a)(2))</u>:  The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include, but are not limited to:

        a.     Whether Google routinely overcharged for advertising pursuant to its AdWords program;

        b.     Whether Google routinely exceeded the daily budgets set by advertisers;

        c.     Whether Google breached its uniform Agreement by overcharging for AdWords advertisements;

        d.     Whether Google breached the duty of good faith and fair dealing inherent in the Agreement;

e.    Whether the Agreement is to be construed against its drafter, the Defendant;

f.    Whether Google's nondisclosures are material;

g.    Whether advertisers were damaged and the appropriate measure of damages;

h.    Whether the Class is entitled to an injunction requiring Google to cease and desist from exceeding set daily budgets for advertising clicks;

i.    Whether Google was unjustly enriched by charging advertisers more then their daily budget;

j.    Whether Google's conduct of charging advertisers more than their daily budget violated California's unfair competition law;

k.    Whether Google's representations in its AdWords Agreement and/or during the sign up process were, and are, misleading;

l.    Whether Google's nondisclosures in the AdWords Agreement and/or the sign up process made the AdWords Agreement and/or the sign up process misleading and/or deceptive; and

m.    Whether Google's representations in its AdWords Agreement and/or during the sign up process were, and are, deceptive.

72.    Typicality (FRCP 23(a)(3)):  Plaintiffs' claims are typical of the claims of each member of the Class, in that Plaintiffs, as every member of the Class, were charged by Google for advertising under Google's AdWords program in excess of their daily budgets.  Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

73.    Adequacy (FRCP 23(a)(4)): Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they intend to prosecute this action vigorously.  Plaintiffs have no interests which conflict with those of the Class.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

74.    Google has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the members of the Class. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

75.    <u>Superiority (FRCP 23(b)(3))</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

      a.    The joinder of thousands of geographically diverse individual members of the Class is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

      b.    The individual claims of the members of the Class now may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual actions;

      c.    When defendant's liability has been adjudicated, claims of all members of the  Class can be determined by the court and administered efficiently in a manner which is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

      d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

      e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action; and

      f.    This class action will assure uniformity of decisions among members of the Class.

## FIRST CAUSE OF ACTION

### [Breach of Contract]

76.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77.    Plaintiffs and Google entered into the Agreement that included Google's Standard Terms and Conditions for participation in Google's AdWords program.

78.    The Agreement gives Plaintiffs and the Class the ability to control their own advertising cost by setting their own daily budget.

79.    Google repeatedly represented and promised that it would not exceed the daily budget set by Plaintiffs and Class members.

80.    The Agreement prohibits Google from exceeding Plaintiffs' and the Class members' daily budgets, and explicitly states that Google will deliver Plaintiffs' and the Class members' ads at, or below, their daily budgets.

**Class Action Complaint**

81.     In the Agreement, Google promises that Plaintiffs and Class members will not be charged for periods when their ads are paused.

82.     Plaintiffs and the Class performed all conditions, covenants and promises required to be performed by Plaintiffs and the Class in accordance with the terms of the Agreement.

83.     Google breached the Agreement by charging Plaintiffs and the Class advertising fees in excess of their respective daily budgets.

84.     Google's breach of the Agreement and continued breach of the Agreement has benefitted, and continues to benefit, Google, and has damaged, and continues to damage Plaintiffs and the Class.

85.     There is no adequate remedy at law.

## SECOND CAUSE OF ACTION

### [Breach of Implied Covenant of Good Faith and Fair Dealing]

86.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

87.     The Adwords Agreement includes the implied covenant of good faith and fair dealing.

88.     Defendant has a duty not to commit acts which would improperly deprive Plaintiffs and Class Members of the benefit of the Agreement.

89.     A principal benefit for which Plaintiffs and the Class contracted was the ability to control their advertising cost by setting a daily budget and to be charged no more than their daily budget for each day their ad runs.

90.     The implied covenant prevents Google from charging Plaintiffs and the Class more than their respective daily budgets.  By charging Plaintiffs and the Class more than their respective daily budgets, Google breached the implied covenant of good faith and fair dealing.

91.     The implied covenant prevents Google from converting each advertiser's daily budget into a monthly budget and holding each advertiser liable up to that amount per month, irrespective of whether he/she/it pause their ad.

92.     As a result of Google's wrongful conduct, Plaintiffs and Class Members have suffered and continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof at time of trial.

### THIRD CAUSE OF ACTION

**Unfair Competition**
**[Violation of California Bus. & Prof. Code §§ 17200 *et seq.*]**

93.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

94.     By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code §§ 17200 *et seq.*  As used in this Complaint and in § 17200, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code. This conduct is actionable pursuant to Business and Professions Code §§ 17200 and 17203.

95.     Beginning on a date unknown to Plaintiffs and continuing to the present, Google  has engaged in, and continues to engage in, such unfair competition.  Defendant's acts or practices are wrongful, arbitrary, without justifiable basis, unethical, oppressive, and have caused substantial injuries to Plaintiffs and other members of the Class.

96.     Defendant's unlawful business acts and practices are described herein and include, but are not limited to, using and employing unconscionable commercial practices, deception and concealment, suppression, and omission of material facts concerning the cost of advertising with its AdWords program.

97.     Members of the public are likely to be deceived by the Agreement and the sign up process which states that advertisers can control their advertising costs by setting a daily budget.

98.     Defendant's conduct, as described above, is unlawful and  unfair and deceptive in that Defendant wrongfully binds advertisers to a monthly budget of their daily budget times 30/31, even if their ad does not run each day.  Google wrongfully bills advertisers more than

1 their daily budget on any given day.  Google also overdelivers ad(s) in order to best ensure that

2 it will charge advertisers up to the monthly budget which it wrongfully creates from

3 advertisers' daily budgets.

4        99.    Defendant's act and practices described herein are unlawful in violation of §

5 17200 and constitute, *inter alia*, breach of contract and unjust enrichment.

6        100.   Defendant's acts and practices alleged herein are unfair in violation of § 17200.

7 Defendant's acts and practices alleged herein constitute a violation of § 17200 in that members

8 of the public are likely to be deceived concerning the cost of its AdWords program.

9        101.   Plaintiffs and members of the Class have been injured by Defendant's conduct.

10 They have been charged in excess of their daily budget.

11        102.   Defendant's acts and practices alleged herein constitute unfair, deceptive,

12 untrue or misleading advertising in violation of § 17200 in that members of the public are

13 likely to be deceived by Defendant concerning the cost of its AdWords program and their

14 ability to control their costs.

15        103.   Plaintiffs and members of the Class have been injured by Defendant's conduct.

16        104.   As set forth in the following cause of action, Defendant's acts and practices also

17 constitute a violation of § 17500.

18        105.   Plaintiffs have suffered injury in fact and have lost money or property as a result

19 of this unfair competition and bring this cause of action on behalf of themselves and on behalf

20 of all other similarly injured Class members, pursuant to Business & Professions Code

21 §§ 17200 *et seq*.

22        106.   Google maintains its headquarters and principal places of operations in

23 California.  The unfair, unlawful or fraudulent business acts and practices of defendant set

24 forth above emanate from Google's California headquarters.  Google's wrongful conduct

25 originated from and thus occurred inside California.

26        107.   Pursuant to Business and Professions Code §17200, *et seq*., Plaintiffs

27 on behalf of themselves and all others similarly situated, seek relief as prayed for below.

28

108.    It is impossible for the Plaintiffs to determine the exact extent of the injury without a detailed review of Google's books and records.

### FOURTH CAUSE OF ACTION

**Untrue and Misleading Advertising**
**[Violation of California Bus. & Prof. Code §§ 17500 *et seq*.]**

109.    Plaintiffs reallege and incorporate the above allegations as though fully set forth set forth herein.

110.    Beginning on a date unknown to Plaintiffs (but prior to the dates Plaintiffs entered into the AdWords Agreement) and continuing to the present, Google advertised its AdWords program throughout the United States, including California, and the world as a way to advertise on the Google network while controlling their own cost.

111.    Google has engaged in the false and misleading marketing alleged herein with an intent to induce advertisers to enter into the AdWords Agreement.

112.    Google's advertisements and marketing representations and omissions concerning the cost of the AdWords program, including but not limited to, allowing advertisers to control the costs of their advertising limiting such to the daily budget set by advertisers, allowing advertisers to pause their ads at no charge, are false, misleading, and deceptive as set forth more fully above.

113.    At the time it made and disseminated the statements and made the material omissions as alleged herein, Google knew or should have known that the statements were deceptive, untrue, and/or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*

114.    Google concealed the true cost of the AdWords program and that it does not limit advertisers' charges to their respective daily budgets.

115.    Plaintiffs, on behalf of themselves individually and the Class, seek damages and/or injunctive relief, and other relief allowable under §§ 17500 *et seq.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CAUSE OF ACTION

### [Unjust Enrichment]

116.    Plaintiffs incorporate by reference paragraphs 1-55, 57-61, 63-70, 71a., b., f. - m., 72-75, 94-98, 100-108, 110-115, as if fully set forth herein.

117.    As set forth in paragraph 37, *supra*, Google represented that its "Ad System ensures you [advertisers] never pay more than your daily budget multiplied by the number of days in a month your campaign was active."

118.    To the detriment of Plaintiffs and each member of the Class, Google has been, and continues to be, unjustly enriched through unlawful overcharging and collecting advertising fees in excess of advertiser's daily budget times the number of days their ad runs.

119.    Google has unjustly benefitted through its unlawful overcharging and continues to benefit, at the expense of, and to the detriment of, Plaintiffs and each member of the Class.

120.    Google has voluntarily accepted and retained these profits and benefits which it derived from Plaintiffs and Class members with the full knowledge and awareness that they result from its own wrongful, routine, and systematic overcharging for advertising.

121.    By virtue of the conduct alleged in this Complaint, Google has been unjustly enriched at the expense of the Plaintiffs and Class Members, who are equitably entitled to, and hereby seek, the disgorgement and restitution of Google's profits, revenue, and benefits to the extent, and in the amount, deemed appropriate by the Court.  Specifically, the additional sums of money charged to Plaintiffs and all other similarly situated individuals for advertising which was improper must be refunded.  These amounts of money constitute money which, in equity and good conscience, should be returned by Google to Plaintiffs and members of the Class pursuant to the equitable doctrine of restitution/unjust enrichment.

122.    Accordingly, Plaintiffs and each member of the Class seek restitution of the full value of all benefits and enrichment Google has obtained, and continues to obtain, at the expense of Plaintiffs and each member of the Class.

1    123.    Alternatively, if, and to the extent, the parties are found to have entered into an

2    express contract governing the claims herein, plaintiffs are still entitled to restitution benefits.

3    Such contract is voidable and otherwise unenforceable given Google's material

4    misrepresentations that advertisers may pause their ad without being charged for those days,

5    and that advertisers would not be billed more than their daily budget for those days that their

6    ad runs.  These material misrepresentations were, and are, contrary to Google's billing

7    practices.

8    124.    Plaintiffs are seeking an injunction because Google continues with its

9    misrepresentations and improper billing practices.

10    125.    There is no adequate remedy at law.

11    ### PRAYER FOR RELIEF

12    WHEREFORE, Plaintiffs and the members of the Class pray for relief as follows:

13    1.    For an order certifying the proposed Class herein and appointing Plaintiffs and

14    their undersigned counsel of record to represent the Class;

15    2.    For restitution of the full value of all benefits and enrichment Google has

16    obtained, and continues to obtain, at the expense of Plaintiffs and each member of the Class;

17    3.    For the entry of preliminary and permanent injunctive relief against Google,

18    directing Google to correct its misrepresentations and to not charge the members of the Class

19    more than their daily budgets and to not bill advertisers for days that their ad is paused;

20    4.    For the return of all money unlawfully charged Plaintiffs and the Class

21    Members by Google in the form of advertising fees together will all accumulation thereon;

22    5.    For the imposition of a constructive trust on all advertising fees improperly

23    charged Plaintiffs and the members of the Class by Google's failure to follow the daily budgets

24    together with all accumulation thereon;

25    6.    For declaratory relief setting forth the rights and obligations of the parties with

26    respect to the Agreement;

27    7.    For general damages in excess of the jurisdictional minimum of this Court;

28

1      8.      Compensatory damages in excess of the jurisdictional minimum of the Court,

2   according to proof;

3      9.      Consequential damages in excess of the jurisdictional minimum of the Court,

4   according to proof;

5      10.     Attorneys' fees, expenses, and costs of this action;

6      11.     Prejudgment interest; and

7      12.     Such further relief as this Court deems necessary, just, and proper.

8                            **JURY TRIAL DEMAND**

9   Plaintiffs demand trial by jury on all issues so triable.

10

11  Dated: May 4, 2006

12                                    ALEXANDER, HAWES & AUDET, LLP

13

14                                       /s/
                                      William M. Audet  (SBN 117456)
15                                    Jason Baker (SBN 212380)
                                      152 North Third Street, Suite 600
16                                    San Jose, CA 95112
                                      Telephone: 408.289.1776
17                                    Facsimile: 408.287.1776

18
                                      WOLF POPPER LLP
19                                    Lester L. Levy (Admitted Pro Hac Vice)
                                      Michele F. Raphael (Admitted Pro Hac Vice)
20                                    845 Third Avenue
                                      New York NY 10022
21                                    Telephone: 212.759.4600
                                      Facsimile: 212.486.2093
22
                                      *Attorneys for Plaintiffs and the Proposed Class*
23

24

25

26

27

28