1    Lester L. Levy *(Admitted Pro Hac Vice)*
     Michele F. Raphael *(Admitted Pro Hac Vice)*
2    WOLF POPPER LLP
     845 Third Avenue
3    New York NY 10022
     Telephone: 212.759.4600
4    Facsimile: 212.486.2093
     e-mail: llevy@wolfpopper.com
5    e-mail: mraphael@wolfpopper.com

6    William M. Audet (SBN 117456)
     Jason Baker (SBN 212380)
7    ALEXANDER, HAWES & AUDET, LLP
     152 North Third Street, Suite 600
8    San Jose, CA 95112
     Telephone: 408.289.1776
9    Facsimile: 408.287.1776
     e-mail: waudet@alexanderlaw.com
10   e-mail: jbaker@alexanderlaw.com

11   *Attorneys for Plaintiffs and the Proposed Class*

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15   CLRB HANSON INDUSTRIES, LLC d/b/a   )   CASE NO: C05-03649 JW
     INDUSTRIAL PRINTING, and HOWARD     )
16   STERN, on behalf of themselves and all   )   **PLAINTIFFS' NOTICE OF MOTION**
     others similarly situated,          )   **AND MOTION FOR PARTIAL**
17                                        )   **SUMMARY JUDGMENT**
                        Plaintiffs,       )
18                                        )   Fed. R. Civ. P. 56
     vs.                                  )
19                                        )   Date:   November 6, 2006
     GOOGLE, INC.,                        )   Time:   9:00 a.m.
20                                        )   Dept.:  3
                        Defendant.        )   Judge:  Hon. James W. Ware
21                                        )

22

23   TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

24        PLEASE TAKE NOTICE that on November 6, 2006 at 9:00 a.m., or as soon thereafter as

25   the matter may be heard, in Courtroom 8 of the United States District Court for the Northern

26   District of California, San Jose Division, Plaintiffs will, and hereby do, move pursuant to Fed. R.

27   Civ. P. 56 for an Order granting Plaintiffs CLRB Hanson Industries LLC d/b/a Industrial

28

1   Printing and Howard Stern summary judgment on liability of their claims against Defendant for:

2   violation of California Business and Professions Code §17200 et seq., violation of California

3   Business and Profession Code § 17500 et seq., unjust enrichment, and injunctive relief.

4          Plaintiffs make this motion for partial summary judgment as there is no material issue of

5   fact as to how Defendant promoted its AdWords program, nor as to Defendant's actual billing

6   practices thereunder.  There is only the legal issue of whether these conflicting practices are

7   permissible.  As Defendant's business practices are false or misleading and as Defendant is

8   continuing this conduct, Plaintiffs seek an Order determining liability and enjoining Defendant

9   from continuing its improper business practices.

10          Plaintiffs' motion is based on this Notice of Motion, the Memorandum of Points and

11   Authorities, the Declarations of CLRB Hanson Industries, LLC, Howard Stern and Michele F.

12   Raphael, submitted herewith, and such other matters and arguments as may be presented to the

13   Court prior to, or at, the hearing on the motion.

14

15   Dated: September 29, 2006

16                                    **WOLF POPPER LLP**

17

18                           By:   /s/
19                               Michele F. Raphael (Admitted Pro Hac Vice)
                                 Lester L. Levy (Admitted Pro Hac Vice)
20                               845 Third Avenue
                                 New York NY 10022
21                               Telephone: 212.759.4600
                                 Facsimile: 212.486.2093
22
                                 ALEXANDER, HAWES & AUDET, LLP
23                               William M. Audet (SBN 117456)
                                 Jason Baker (SBN 212380)
24                               152 North Third Street, Suite 600
                                 San Jose, CA 95112
25                               Telephone: 408.289.1776
                                 Facsimile: 408.287.1776
26
                                 *Attorneys for Plaintiffs and the Proposed Class*
27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No: C05-03649 JW

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Advertisers Sign Up for the AdWords Advertising Program over the Internet . . . . . . . . 2

    Google Promotes AdWords as Allowing Advertisers to Set a Daily Budget
    to Control What They Pay Per Day and Without a Minimum Commitment . . . . . . . . . . 3

    Google Promotes AdWords as Allowing Advertisers to
    Pause Their Ad and Not be Charged While Their Ad is Paused . . . . . . . . . . . . . . . . . 8

    Google Bills Advertisers More Than Their Daily Budget
    and Converts Their Daily Budget Into a Monthly Budget . . . . . . . . . . . . . . . . . . . . . . 9

    Plaintiff Howard Stern was Charged More Than His Daily Budget and More
    Than His Daily Budget Multiplied by the Number of Days in a Month His
    Campaign was Active . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Plaintiff CLRB Hanson was Charged More Than its Daily Budget and More
    Than it Daily Budget Multiplied by the Number of Days in a Month its
    Campaign was Active . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.      SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
           AS TO LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.    The Undisputed Facts Demonstrate That Google Violated
               Business & Professions Code §§ 17500 And 17200, et seq. . . . 12

               1.     Google's Promotion of its AdWords
                       Program was False or Misleading . . . . . . . . . . . . . . . . . 12

               2.     Google Violated Cal. Bus. and Prof. Code §17200 . . . . 14

               3.     The FAQs Do Not Cure Google's Misleading Conduct . 16

          B.    The Undisputed Facts Demonstrate That Google
               Has Been Unjustly Enriched At Plaintiffs' Expense . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1                        TABLE OF AUTHORITIES

2                                 CASES

3   AccuImage Diagnostics Corp v. Terarecon, Inc.,
         260 F. Supp. 2d 941 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
4
    Anderson v. Liberty Lobby, Inc.,
5        477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6   Barnes v. United States,
         No. C 97-1361 SC, 1998 U.S. Dist. LEXIS 19615 (C.D. Cal. 1998) . . . . . . . . . . . . . . . 17
7
    Blakemore v. Superior Court,
8        129 Cal. App. 4th 36, 27 Cal. Rptr. 877 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

9   Celotex Corp. v. Catrett,
         477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
10
    Colgan v. Leatherman Tool Group, Inc.,
11       135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006)   . . . . . . . . . . . . . . 12, 13

12  Digital Theater Sys. V. Mintek Digital Inc.,
         No. SA CV 02-902 CJC (Anx), 2004 U.S. Dist. LEXIS 16832
13       (C.D. Cal. May 25, 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14  Intel Corp. v. Hartford Accident & Indem. Co.,
         952 F.2d 1551 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
15
    Lectrodryer v. SeoulBank,
16       77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17  Matsushita Elec. Industrial Co. v. Zenith Radio,
         475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
18
    McKell v. Washington Mutual, Inc.,
19       No. B176377, 2006 Cal. App. LEXIS 1436 (Cal. App. Sept. 18, 2006) . . . . . . . . . . 12, 13

20  Microsoft Corp. v. Suncrest Enter.,
         N. C 03-5424 (HRL), 2006 U.S. Dist. LEXIS 32824 (N.D. Cal. May 16, 2006) . . . . . . 14
21
    Nagel v. Twin Laboratories, Inc.,
22       109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

23  Netscape v. Fed. Ins. Co.,
         No. C 06-00198 JW, 2006 U.S. Dist LEXIS 9569 (N.D. Cal. Feb. 22, 2006) . . . . . . . . 14
24
    Sebastian Int'l, Inc. v. Russolillo,
25       186 F. Supp. 2d 1055 (C.D. Cal 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26  United States v. St. Luke's Subacute Hosp. & Nursing Ctr., Inc.,
         No. C 00-1976 MHP, 2004 U.S. Dist. LEXIS 25380 (N.D. Cal. Dec. 15, 2004) . . . . . . 11
27

28

Weaver v. City & County of San Francisco,
    No. C 03-1589 SI, 2006 U.S. Dist. LEXIS 62650 (N.D. Cal. Aug. 18, 2006) . . . . . . . . 11

STATUTES

Cal. Bus. & Prof. Code § 17200 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15, 18

Cal. Bus. & Prof. Code § 17500 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15, 18

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Restatement (First) of Restitution § 1 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

There is no dispute that Google, Inc. ("Google") offered Plaintiffs Howard Stern and CLRB Hanson Industries LLC, d/b/a/ Industrial Printing ("CLRB Hanson") an advertising program wherein they would have a "daily budget."  There is no dispute that Google exceeded each Plaintiff's daily budget on multiple days and that it is Google's policy and practice to do so. There is no dispute that the daily budget is not a daily budget, but a number used to calculate an advertiser's monthly budget and that such monthly budget does not take into account the days an ad is paused.  The legal dispute remaining is whether Google's conduct is deceptive, misleading and caused Google to be unjustly enriched.  Plaintiffs submit that it is and ask this Court to so find.

## FACTUAL BACKROUND

Advertisers use Google's AdWords to have a link to their website appear as a sponsored link on a Google search results page.  As promoted by Google, the key feature of Adwords is that it allows advertisers to control their own advertising costs by setting their own daily budget - the amount they are willing to pay for advertising each day.  (Advertisers are charged each time an internet user clicks through to their site.)  Google also represents AdWords as permitting advertisers to pause their ads and not to incur charges while their ads are paused, allowing them to control their costs as well as the demand for their products/services.  As per Google,  "Ad system ensures you never pay more than your daily budget multiplied by the number of days in a month your campaign was active."[1]  This is not what happens.

The daily budget is a sham.  Instead of giving effect to a daily budget, Google uses the daily budget to calculate a monthly budget (daily budget times 30/31) and bills advertisers up to said monthly amount for that "month" even if the ad did not run everyday.  Under this "monthly"

---

[1] See Exhibit A to the Declaration of Howard Stern submitted in support of Plaintiffs' Motion for Partial Summary Judgment ("Stern Decl.") and Exhibit A to the Declaration of CLRB Hanson Industries, LLC submitted in support of Plaintiffs' Motion for Partial Summary Judgment ("CLRB Hanson Decl.").

1   budget, Google exceeds a daily budget on the days an ad runs and uses the paused days

2   (including weekends and holidays when ads are often paused) as well as those days the ad ran,

3   but did not reach its daily budget (i.e., low click throughs or intraday pausing) to absorb the

4   excess charges.  For example, if an advertiser with a daily budget of $100 ran its ad only five

5   days in a 30 day period and Google delivered the ad so as to bill it $110 each day, Google will

6   charge $550, because it is within the $3000 "monthly" budget - albeit making the "daily" budget,

7   the right to pause without charge, and its assurance that charges will not exceed the daily budget

8   times the number of days the ad is active, false, misleading, deceptive and meaningless.

9        As Plaintiff Stern complained to Google, "My understanding of a 'daily budget' of $10 is

10  very simple: daily cost not to exceed $10.  I don't expect to pay more on some days to

11  compensate for days that had costs less than $10.  I'm not trying to meet a monthly target, rather

12  a daily target.  The extra traffic I might get from spending more than $10/day results in not being

13  able to meet the extra demand.  That's why I set the budget to $10. . .  I was overcharged every

14  day that my account exceeded my $10 daily budget.  It's that simple.  The way Adwords bills is

15  a misrepresentation of the daily budget that prominently appears on the Campaign management

16  screen and the set up screens that request budget information.  The Adwords home page

17  promises that: 'You have total control over every aspect of your campaign.'  Apparently not."

18  See Statement of Undisputed Facts, infra, ¶22

19                    **STATEMENT OF UNDISPUTED FACTS**

20  **Advertisers Sign Up for the AdWords Advertising Program over the Internet**

21        1.    AdWords is a global advertising program offered by Google.  (SAC ¶[2] 14; Ans. ¶[3]

22  14.)

23        2.    Advertisers sign-up for AdWords over the Internet.  (SAC ¶ 19; Ans. ¶ 19.)

24

25

26        [2]References to "SAC ¶" are to paragraphs in Plaintiffs' Second Amended Class Action
      Complaint, dated May 4, 2006.

27        [3]References to "Ans. ¶" are to paragraphs in Defendant's Answer to Plaintiffs' Second
28  Amended Class Action Complaint, dated July 12, 2006.

3.    Clicking on the "Advertising Programs" hyperlink on the Google.com Internet search engine site (Google's homepage) brings up the Google page with the hyperlink for "Google AdWords," which, in turn, brings up the AdWords "sign up" or login page.  (SAC ¶ 21; Ans. ¶ 21.)

4.    During the sign up process, an advertiser creates an ad, selects keywords, chooses a geographic location to target, sets a maximum cost-per-click and sets a daily budget.  The advertiser also creates an AdWords account by providing an email address and choosing a password.  (SAC ¶ 22; Ans. ¶ 22.)  (Stern Tr., 34:20-24[4]: "You basically give the keywords; your daily budget; your cost per click, I believe; your credit card information; your mailing address; an e-mail, contact e-mail.")

5.    Google has not produced the sign-up screens in effect when  Plaintiffs Stern and CLRB Hanson enrolled in the AdWords program.

**Google Promotes AdWords as Allowing Advertisers to Set a Daily Budget to Control What They Pay Per Day and Without a Minimum Commitment**

6.    A key feature of AdWords is that it allows advertisers to set their own "daily budget."  (SAC ¶ 30; Ans. ¶ 30.)

7.    On an AdWords webpage entitled "AdWords Advantages" Google represents that it enables advertisers to "Fully control your ad budget." (SAC ¶ 16; Ans. ¶ 16.)

8.    The AdWords agreement[5]  states that it gives advertisers the right to set their own daily budget as a method of cost control.  (SAC ¶ 32; Ans. ¶ 32.)

9.    In its Form 10-K for the year ended December 31, 2004, and filed with the SEC on March 30, 2005 (the "2004 Form 10-K") Google represented with respect to Adwords, that:

---

[4]References to "Stern Tr." are to the deposition transcript of Plaintiff Howard Stern, who was deposed on August 16, 2006.  A copy of all pages cited from the Stern Tr. are contained in Ex. C to the Declaration of Michele F. Raphael in support of Plaintiffs' Motion for Partial Summary Judgment, dated September 29, 2006 ("Raphael Decl.").

[5]The term "agreement" has no legal significance.  Whether there is a valid contract between the parties is a legal question for this Court.

1    "[a]dvertisers can also manage expenditures by setting a maximum daily budget and determining

2    how much they are willing to pay whenever a user clicks on an ad."  (SAC ¶ 44; Ans. ¶ 44.)

3        10.    The ability to set and control their own daily budget caused Plaintiffs to sign-up

4    for AdWords.  (Stern Tr., 22:23-24: "I looked at if there were minimum charges, monthly

5    charges."; 174:12-18: "Q. . . . So why did you switch to Google from Yahoo? A. Because

6    Yahoo had a monthly minimum that I needed to pay, whether or not I even ran the ads. Q. And

7    Google? A. They had no minimum.";  Hanson Tr., 22:15-17[6]: "We controlled the daily budget.

8    And that's what intrigued me to the value proposition that Google offered at that time." )

9        11.    During the sign-up process, advertisers can click on form questions or search for

10    help by entering terms they have questions about.  By clicking on form questions and by entering

11    help terms, Google brings to the screen responsive portions of the Frequently Asked Questions

12    ("FAQs").  (SAC ¶ 26; Ans. ¶ 26.)  There are hundreds of pages of FAQs.[7]

13

---

14    [6]References to "Hanson Tr." are to the deposition transcript of Brett Hanson, produced by
15    CLRB Hanson, on August 18, 2006.  A copy of all pages cited from the Hanson Tr. are
      contained in Ex. D to the Raphael Decl.

16

17    [7]The 142 pages of FAQs which were retrieved from Google's website at the time the
      initial complaint in this action was filed and which are annexed to the SAC are referred to as the
18    "Complaint FAQs."  The Complaint FAQs are annexed as Ex. I to the Raphael Decl.
          At Plaintiff Stern's deposition, Defendant marked as Exs. 13 and 15, the Terms ("Stern
19    Terms") and FAQs ("Stern FAQs"), respectively, in effect when Plaintiff Stern enrolled in
      AdWords.  The  Stern Terms were produced at GOOG-HN 21575-21577.  The Stern FAQs are
20    comprised of GOOG-HN 20823-20826, 20867-20869, 20887-20888, 20905-20908, 20922-
      20932, 20969-20971, 20987-20988, 21005-21007, 21025-21026, 21070-21072, 21082-21084,
21    21146-21148, 21167-21170, 21187-21190, 21203-21205, 21230-21234, 21237-21238, 21245-
      21246, 21295-21299, 21331-21335. "GOOG-HN" denotes documents produced by Google in
22    this litigation.  The Stern Terms and Stern FAQs are annexed as Ex. G to the Raphael Decl.
          At Brett Hanson's deposition, Defendant marked as Exs. 22 and 23, the Terms ("Hanson
23    Terms") and FAQs ("Hanson FAQs"), respectively, in effect when Plaintiff CLRB Hanson
      enrolled in AdWords.  The Hanson Terms are comprised of  GOOG-HN 21572-21574.  The
24    Hanson FAQs are comprised of GOOG-HN 20835-20838, 20864-20866, 20903-20904, 20974-
      20975, 20991-20992, 21011-21013, 21033-21034, 21061-21063, 21118-21121, 21152-21154,
25    21195-21198, 21249-21250, 21303-21305, 21340-21343.  The Hanson Terms and Hanson FAQs
      are annexed as Ex. H to the Raphael Decl.
26        Defendant marked the FAQs in effect as of August 16, 2006 at the deposition of Plaintiff
27    Stern, as Ex. 21.   A copy of the current FAQs ("Current FAQs") are annexed as Ex. J to the

28

1    12.    "Daily budget" is mentioned 44 times in the Stern FAQs, 48 times in the Hanson

2    FAQs, and 94 times in the Complaint FAQs.[8]

3    13.    References to "daily budget" in the FAQs include:

4    A.    What is a daily budget?
         **A daily budget enables you to set a limit on the amount you spend**

5    **each day**. You set a separate daily budget for each of your campaigns.
         Since you only pay if someone clicks on your ads, you won't necessarily

6    reach the daily budget limit you set. . . . Google will show your ads evenly
         throughout the day at a frequency that falls within the budget you've set. [

7    ]
         There is no minimum daily budget requirement.

8    (Stern FAQs, GOOG-HN 20888; Hanson FAQs, GOOG-HN 20904.)
         (Emphasis added.)

9
10    B.    How do I create an AdWords account?
                     *        *        *

11    Step 4: Specify your **daily budget**.
         Your maximum **daily budget** helps determine your ad exposure

12    (the number of times Google shows your ad in a day).  There is no
         minimum daily budget.

13    (Complaint FAQs, 019-20; Stern FAQs, GOOG-HN 21297, Hanson
         FAQs, GOOG-HN 21304 [entitled "How do I get started?"; listed as Step

14    3].)  (Emphasis added.)

15    What are all the steps to creating an AdWords Account?
                     *        *        *

16    Choose **Daily Budget**
         A recommended **daily budget** will appear highlighted in the **daily budget**

17    box on the next page. . . . [Y]ou can increase or lower this amount by
         typing in your desired **daily budget**.

18    *Note*: This amount controls how often your ad appears on Google; we will
         spread the delivery of your ad **throughout the day** to stay within your

19    alternative budget setting.  Matching the recommended **daily budget**
         helps ensure maximum exposure.

20    (Complaint FAQs, 020 -21.)  (Emphasis added.)

21    (See Current FAQs, 59, "Choose Daily Budget[.]  First select your billing
         currency - the currency you'll use to pay for your AdWords Account.

22    Then enter **the amount you're willing to spend on this ad campaign
         each day.**"])  (Emphasis added.)

23    C.    What does it cost and how do I pay?
         In the Google AdWords Program, the cost of your campaigns really

24    depends on you—how well you know your audience, and how much
         you're willing to pay to reach them. Based on your advertising goals and

25    budget, you choose what you want to pay per click on your ad, from 5
         cents to $50. **You also control your overall spending by setting a daily**

26

27    Raphael Decl.

28
         [8]Results obtained from a computer search of the documents.

1  **budget (how much you want to pay per day)**. There is just a $5
   activation fee to get started and **no monthly minimum** spending
2  commitment.
   (Stern FAQs, GOOG-HN 20906.) (Emphasis added.)
3
   How much does AdWords cost?
4  In the Google AdWords program, the cost of your
   campaigns really depends on you -- **how much you are**
5  **willing to pay** and how well you know your audience.  It
   all boils down to knowing your own goals and letting us
6  know what they are. . . . [Y]ou pay only for clicks on your
   AdWords ads, and **you can control that by telling us how**
7  **much you are willing to pay per click and per day.**
   (Complaint FAQs, 010.)  (Emphasis added.)
8
   How much does AdWords cost?
9  There is a nominal, one-time activation fee for Google AdWords.  After
   that, you pay only for clicks on your . . . AdWords ads . . . . You can
10 control your costs by selecting **how much you are willing to pay per**
   **click or per impression and by setting a daily budget for spending in**
11 **your account**.
   **Daily budgets** start as low as 1 cent up to whatever limit the advertiser is
12 comfortable spending.
   (Current FAQs, 49-50.)  (Emphasis added.)
13
       D.   How does Google come up with a recommended daily budget?
14          Remember, setting your **daily budget** to the amount we recommend is
            optional-you're always in full control of your AdWords account. You can
15          edit your campaign's daily budget as often as you'd like, and to whatever
            amount results in the most appropriate return on investment for you.
16          (Complaint FAQs, 061.)  (Emphasis added.)

17     E.   Why can't I see my ad?
                      *        *        *
18          Check your **daily budget**. . . . If your **daily budget** is set lower than the
            recommended amount, **we spread the delivery of your ad throughout**
19          **the day in order to stay within your budget**.
            (Stern FAQs, GOOG-HN 21188;  Hanson FAQs, GOOG-HN 21119;
20          Complaint FAQs, 036.)  (Emphasis added.)

21     F.   What happens if my **daily budget** is lower than what the AdWords system
            recommends?
22                    *        *        *
            How do I make this change?
23          **You may have received an email or a notification in your account**
            **stating that your ads have periodically stopped showing because one**
24          **or more of your campaigns has reached its daily budget**.  This
            notification links to a tool you can use to edit your **daily budget**.
25                    *        *        *
            Is this just a way to get me to pay more?
26          If you increase your **daily budget**, you won't necessarily spend it all.
            Remember, you only pay when people click your ads. And, of course,
27          you're always in control of your account-you never have to pay more than
            you want.
28          (Complaint FAQs, 048 - 049.)  (Emphasis added.)

1    (See also Current FAQs, 160, "If you select a daily budget lower then the recommended amount, our system will not show your ad every time searches are run on your keywords. It will spread the delivery of your ad throughout the day so you don't exceed your budget.") (Emphasis added.)

2

3

4    G.    **[Y]ou control how much you spend by selecting [choosing] a maximum cost-per-click (CPC) and daily budget that fit your advertising goals.**
5    (Stern FAQs, GOOG-HN 21169; Complaint FAQs, 062; Current FAQs, 151.) (Emphasis added.)
6

7    H.    How does Google keep my campaign below my [the] **daily budget**?
**Google shows your ads evenly over time so that you reach your daily budget by the end of each day.** This keeps your ad from accumulating charges [clicks] early on and then disappearing for the remainder of the day.
8

9    Once you've selected your keywords, you'll see a recommended **daily budget**. If you set your **daily budget** to this value, you will maximize your ad's visibility[.] . . . If your **daily budget** is lower than the recommended amount, **Google will deliver your ads evenly throughout the day to keep your costs [clicks] at or below your daily budget.**
10

11

12    (Stern FAQs, GOOG-HN 20906, 20888; Hanson FAQs, GOOG-HN 20904; Complaint FAQs, 062.) (Emphasis added.)
13

14    I.    AdWords billing & payments: AdWords account costs
How do I control the cost of my ads?
15    With cost-per-click advertising on AdWords, **the cost of your campaigns really depends on you - how much you are willing to pay** and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.
16

17    •    **Set your own limits**: There is a nominal activation fee for Google AdWords. After that, **you tell us how much you are willing to pay per click and per day.**
18    (Complaint FAQs, 059.) (Emphasis added.)

19    15.    "Monthly budget" is not mentioned in the Stern FAQs nor in the Hanson FAQs.

20    16.    Google represented that there is no minimum spending commitment for Adwords:

21    a.    Is there a minimum spending commitment?
You can create an account for only a $5 activation fee. You have complete control over how much you spend and how you spend it. You choose the maximum cost-per-click (CPC) and the daily budget that fit your advertising goals.
22

23    (Stern FAQs, GOOG-HN 20825; Hanson FAQs, GOOG-HN 20837, 21120.)
24

25    b.    Are there spending requirements, a minimum contract length, or other qualifying terms?
26    There is never a minimum spending commitment when you sign up for AdWords. No minimum contract requirements or other "lock-in" rules apply. You have complete control over how long you participate in AdWords, and **you control the maximum you want to spend per day.**
27

28    (Complaint FAQs, 012.) (Emphasis added.)

1

2

**Google Promotes AdWords as Allowing Advertisers to
Pause Their Ad and Not be Charged While Their Ad is Paused**

3  17.  Google's AdWords Demos & Guides[9], *Bidding and Ranking,* provides:

4  Google AdWords

Daily Budget:

5  .  Daily budget is based on the keyword Traffic Estimator
.  Daily charges can fluctuate depending on clicks you receive

6  .  **Ad system ensures you never pay more than your daily budget
multiplied by the number of days in a month your campaign was**

7  **active**

(Raphael Decl., Ex. A.)  (Emphasis added.)

8

9  18.  Online at the AdWords Help Center Google represents:

10  a.  **Can I  have my ads run at particular times of day?**
. . .You can also pause your campaigns completely at any time. **You won't
accrue charges while your ads are paused, and they'll remain paused**

11  **until you resume them.**
(Raphael Decl., Ex. B.)  (Emphasis added.)

12  b.  Pause Campaign

13  **Pause your ad campaign at any time. Your ads will not accrue charges
while they are paused**, and they will remain paused until you resume

14  them.
(Raphael Decl., Ex. B.)  (Emphasis added.)

15  19.  Google likewise represents in the FAQs:

16

17  **You can pause your ad campaign at any time. You won't accrue charges
while your ads are paused,** and they'll remain paused until you resume them.
(Complaint FAQs, 026.)  (Emphasis added.)

18  (See also Current FAQs, 261, "You can also pause your campaigns completely at

19  any time.  You won't accrue charges while your ads are paused, and they'll
remain paused until you resume them.")

20  20.  Plaintiffs understood that they would not be billed when their ad was paused.

21  (Hanson Tr., 70:2 - 9: "Q.  . . . And what — what caused you to use the pausing
feature?  A.  It's a unique selling feature allowing you to turn off and on your

22  costs.  Having more ability to control the costs associated with your pay-for-click
advertising.  I thought it was an asset of Google's that others did not have.";

23  Stern Tr., 92:11-21: "Q.  And what made you believe that you would — that the
days that your campaign was paused would not be included in that calculation?

24  A.  Well, for the simple reason that this is — this AdWords is put forward as
something that gives me complete control over my charges, so I thought —

25  thought it was reasonable to assume, if I'm not running my ads, why would I be
charged for days that I'm turning them off.")

26

27  _____

28  [9]AdWords Demos are narrated lessons that show you how to make the most of your
AdWords account. (Current FAQs, 60.)

**Google Bills Advertisers More Than Their Daily Budget**
**and Converts Their Daily Budget Into a Monthly Budget**

21.    In the Joint Case Management Statement Google admits:

"To make sure that an advertiser's ads obtain the maximum available click throughs in a monthly billing period, Google will deliver advertisements in excess of a specified daily budget, so long as the monthly total does not exceed the daily budget times the number of days in the month."

22.    Google admitted to Mr. Stern:

"In general, we try to keep your daily cost fluctuation to no more than 20% above your daily budget, and we make sure that within the 30/31 day billing period (a month), you are never charged more than the number of days in the billing period times your daily budget. This ensures that over time, you maximize your advertising budget." (Raphael Decl., Ex. E, P-0129[10].)

Mr. Stern responded to Google:

"My understanding of a 'daily budget' of $10 is very simple: daily cost not to exceed $10. I don't expect to pay more on some days to compensate for days that had costs less than $10. I'm not trying to meet a monthly target, rather a daily target. The extra traffic I might get from spending more than $10/day results in not being able to meet the extra demand. That's why I set the budget to $10." (Raphael Decl., Ex. E, P-0128, GOOG-HN 00358, 00361D.)

"I was overcharged every day that my account exceeded my $10 daily budget. It's that simple. The way Adwords bills is a misrepresentation of the daily budget that prominently appears on the Campaign management screen and the set up screens that request budget information. The Adwords home page promises that: You have total control over every aspect of your campaign. Apparently not. I would simply want my campaign to automatically pause once my daily budget is reached. Considering the impressive technology built into the Adwords system that shouldn't be an insurmountable problem. Letting it run unchecked results in gross overexposure (on 11/18 I was charged $23.18, over 130% more than my $10 daily budget). Later on in the month I'll have gross underexposure when the system tries to even things out. It happened last month." (Raphael Decl., Ex. E, P-0139, GOOG-HN 00349-350.)

23.    When CLRB Hanson complained about charges above its daily budget, "Tina" at Google acknowledged that "your accounts have accrued more clicks in a day than your daily budgets allow." (Raphael Decl., Ex. F, GOOG-HN 00246-247.)

a.    "Tina" at Google, admitted:

"I understand that you accrued charges over your daily budget again yesterday. I apologize for any inconvenience caused by this overdelivery. At this time, please feel free to reduce your daily budgets in order to decrease the overall charges you accrue this week."

---

[10]Documents designated "P" were produced by Plaintiffs in this litigation.

1                (Raphael Decl., Ex. F, GOOG-HN 00249.)

2          b.    "Bethanie," at Google, explained to CLRB Hanson:

3          "When you set the daily budget for your account, you tell our system how much you are willing to pay per day within the context of a billing period.

4          A billing period can either be a 30 day period (monthly 'budget') or can be reset by a change in your daily budget setting."

5

6          "When we bill your account if we have overdelivered your ad, within the context of the billing period more than we have 'undelivered' it, we will credit your account back with an 'overdelivery credit.'"

7          (Raphael Decl., Ex. F, GOOG-HN 00286.)

8          c.    CLRB Hanson responded:

9          "Hello Bethanie, I don't understand that logic the platform GOOGLE allows you and a selling feature allows you to adjust your daily budget to

10         allow you to control costs that is what we do.  Now your saying its monthly, I respectfully disagree.  I would like you to immediately issue a

11         credit for all the daily overcharges by ad campaign from January 2004 thats 2004 to today.  If that is not going to happen immediately call me

12         and I will have our attorney get involved unfortunately this has come to this I fell [sic] we are [sic] valued advertiser and we are just not being

13         treated as such and will not continue to be taken advantage of GOOGLE need to address this today.  Thank you."

14         (Raphael Decl., Ex. F, GOOG-HN00287.)

15     24.    In the Joint Case Management Statement, Defendant claims that it "fully

16  discloses its practice of maximizing an advertiser's potential click throughs per month" and *sans*

17  dates or pages, states that the FAQs provide:

18         "Though it may sometimes appear that your daily budget is being exceeded, that usually isn't the case.  Here's why: Our system works to deliver enough ads to

19         fully satisfy your daily budget over the course of each month.  (That is, your daily budget times the total number of days in the month.)  Because page views

20         fluctuate from day to day, <u>we may over-deliver ads on a given day to make up for potential shortfalls later in the month</u>.  For instance, if you budget US$100 per

21         day in a 30-day month, you may receive more than US$100 in clicks on a given day, but the maximum you would pay is US$3,000 for that month."

22

23         "At the end of the month our system automatically recognizes any charges in excess of your total monthly budget.  When this happens, you won't be billed for those excess charges.  Instead, you'll see an over-delivery credit for those charges

24         on your Advertising Costs page. . .

25         "Over time, this system ensures that you maximize your advertising opportunities while protecting you from being billed in excess of your daily budget."

26

27

28

**Plaintiff Howard Stern was Charged More Than His Daily Budget and More Than His**
**Daily Budget Multiplied by the Number of Days in a Month His Campaign was Active**

25.    Plaintiff Stern ran his campaign four days in September 2005 and two days in December 2005, having a daily budget of $10.  He was charged in excess of his daily budget and in excess of his daily budget multiplied by the number of days in the month(s) his campaign was active.  See Stern Decl.

**Plaintiff CLRB Hanson was Charged More Than its Daily Budget and More Than its**
**Daily Budget Multiplied by the Number of Days in a Month its Campaign was Active**

26.    Plaintiff CLRB Hanson ran a campaign for twenty-seven days in February 2005 and seventeen days in March 2005, having a daily budget of $50.  It was charged in excess of its daily budget and in excess of its daily budget multiplied by the number of days in the month(s) its campaign was active.  See CLRB Hanson Decl.

**ARGUMENT**

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  If summary adjudication of an entire claim is not possible, a court can grant partial summary judgement so as to reduce the number of factual issues to be resolved at trial.  United States v. St. Luke's Subacute Hosp. & Nursing Ctr., Inc., No. C 00-1976 MHP, 2004 U.S. Dist. LEXIS 25380, at *8 (N.D. Cal. Dec. 15, 2004).  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."  Celotex Corp.v. Catrett, 477 U.S. 317, 323 (1986).  "The mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment is appropriate if the "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991), citing Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); see also Weaver v. City & County of San Francisco, No. C 03-1589 SI, 2006 U.S. Dist. LEXIS 62650, at *2-3 (N.D. Cal. Aug. 18, 2006) (relying upon statements made

1    in the Joint Case Management Statement & Proposed Order to grant plaintiff's motion for

2    summary judgment).

3    **II.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO LIABILITY**

4         There is no genuine issue of material fact as to Google's liability.  Google admits that it

5    charges advertisers more than their daily budget on any given day and that it holds advertisers

6    liable up to a monthly budget - irrespective of how many days their ad was active.  The facts that

7    Google advertised, offered and required advertisers to set a daily budget and that it represented

8    that advertisers would not be charged for days that their ad did not run nor more than their daily

9    budget times the number of days their ad ran, are also indisputable.  The only issue for trial is the

10   amount of damages.

11        **A.     The Undisputed Facts Demonstrate That Google Violated Business & Professions Code §§ 17500 And 17200, et seq.**

12

13            **1.     Google's Promotion of its AdWords Program was False or Misleading**

14        Cal. Bus. and Prof. Code § 17500 prohibits a business entity from disseminating, in any

15   manner or means whatever, any statement regarding its product or performance  "which is untrue

16   or misleading, and which is known, or which by the exercise of reasonable care should be

17   known, to be untrue or misleading." Nagel v. Twin Laboratories, Inc., 109 Cal. App. 4th 39, 51,

18   134 Cal. Rptr. 2d 420 (2003) ("A claim for false advertising requires proof that the defendant, in

19   connection with the sale of a product or service, made an untrue or misleading statement

20   regarding the product or service.")  "To prevail on a false advertising claim, a plaintiff need only

21   show that members of the public are likely to be deceived. . . A 'reasonable consumer' standard

22   applies when determining whether a given claim is misleading or deceptive," Colgan v.

23   Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 682, 38 Cal. Rptr. 3d 36, 48 (2006)

24   (citations omitted); McKell v. Washington Mutual, Inc., No. B176377, 2006 Cal. App. LEXIS

25   1436, (Cal. App. Sept. 18, 2006).  The determination can be made as a matter of law.  Colgan at

26   682-83 (no reasonable consumer would expect that parts of a product stamped "Made in U.S.A."

27   had been manufactured abroad).  "In determining whether a statement is misleading under the

28   statute, 'the primary evidence in a false advertising case is the advertising itself.'  The

1    'misleading character' of a given representation 'appears on applying its words to the facts.'"

2    Colgan, 135 Cal. App. 4th at 679 (citations omitted).  A statement can be true, yet still be

3    misleading under §17500.  Nagel, 109 Cal. App. 4th 39 at 51; McKell, 2006 Cal. App. LEXIS

4    1436, at *17 ("A perfectly true statement couched in such a manner that it is likely to mislead or

5    deceive the consumer, such as by failure to disclose other relevant information, is actionable

6    [under these sections].") (citation omitted).

7         Google's inducements and  representations concerning a daily budget, the right to pause

8    without being charged, the right to control your own advertising costs, Google's distribution of

9    an ad throughout the day so as not exceed the daily budget, and the right to be billed no more

10   than your daily budget times the number of days your ad is active, (see Undisputed Facts, supra)

11   are all false or misleading in light of its billing practices.  In reality, Google: exceeds the daily

12   budget set by the advertiser[11]; converts the daily budget into a monthly budget; penalizes

13   advertisers for days their ad is paused; and charges advertisers more than their daily budgets

14   times the number of days their ad runs.  Google massages the advertiser's budget (which Google

15   promotes as the way the advertiser can completely control his costs) improperly to create a

16   monthly budget.  Then, Google will overdeliver an ad on any given day in order to "compensate"

17   the advertiser for any day that the daily budget was not reached, and will use any and all paused

18   days to absorb excess charges - in order to reach the "monthly budget" (or monthly revenue) (the

19   daily budget times 30/ 31 days) it calculated.  Not only does this billing practice contradict the

20   daily budget, and the right to pause and not "accrue" charges, but it also contradicts Google's

21   own tutorial which tells advertisers: "Ad system ensures you never pay more than your daily

22   budget multiplied by the number of days in a month your campaign was active."  Thus,

23   Google's representations are false or misleading.  Mr. Stern ran his ad only four days in

24

25

26   _____

27        [11]Google's false and misleading use of the term "daily" is compounded by its explicit use
     of the term "monthly" budget in the context of its Budget Optimizer and Jumpstart programs,

28   which are offered as alternatives to the "daily budget."  (Raphael Decl., Ex. I, Complaint FAQs,
     032-034.)

1   September, 2005 with a daily budget of $10, but was billed more than $40.  See Stern Decl.[12]

2   Even if his ad only reaches $8 of its $10 daily budget on a given day, Google, as per its

3   description of the AdWords program, does not have the right to "compensate," or to recoup its

4   own lost revenue by overdelivering the ad and charging Plaintiff Stern, or any advertiser $12 the

5   next day.  Indeed, an advertiser may pause its ad intraday on a Monday (due to demand or

6   otherwise), and may not be able to meet the excess demand from Google's overdelivery on

7   Tuesday, which is what  Mr. Stern explained to Google.  See Statement of Undisputed Facts,

8   supra, ¶22.

9   　　　In sum, by comparing Google's promotions and advertising to its actual billing practices,

10  none of which is disputed, it is clear that Google is engaging in false and deceptive conduct and

11  profiting thereby.  Google's efforts to defend its billing practices, i.e.: characterizing its billings

12  as "mak[ing] sure that an advertiser's ads obtain the maximum available click-throughs in a

13  monthly billing period," serves only to demonstrate that Google is fully aware of the discrepancy

14  between its advertisement of AdWords and its billing thereunder.

15  　　　　　　　　**2.    Google Violated Cal. Bus. and Prof. Code §17200**

16  　　　Cal. Bus. and Prof. Code § 17200 prohibits "any unlawful, unfair or fraudulent business

17  act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

18  § 17500."  "'The Legislature intended this sweeping language to include anything that can

19  properly be called a business practice and that at the same time is forbidden by law.'"  Microsoft

20  Corp. v. Suncrest Enter., No. C 03-5424 (HRL), 2006 U.S. Dist. LEXIS 32824, at *23 (N.D. Cal.

21  May 16, 2006) (J. Fogel) (granting summary judgment to plaintiff) (citation omitted);  Netscape

22  Communs. Corp. v. Fed. Ins. Co., No. C 06-00198 JW, 2006 U.S. Dist LEXIS 9569, at *10

23  (N.D. Cal. Feb. 22, 2006) (J. Ware) ("pattern of conduct which disregarded common law

24  doctrine and misled consumers constituted 'unfair business practices'") (citation omitted).

25  　　　As demonstrated above, Google's conduct violates §17500.  Hence, it violates § 17200 as

26  well.  Indeed, a practice that is misleading is also deceptive and  "[a] practice which is deceptive

27  ───────────────

28  　　　　[12]Plaintiff CLRB Hanson was similarly overcharged by Google.  See CLRB Hanson
    Decl.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No: C05-03649 JW                    14

1   is necessarily unfair." <u>Blakemore v. Superior Court</u>, 129 Cal. App. 4th 36, 49, 27 Cal. Rptr. 877,

2   888 (2005) (footnote omitted).  <u>Digital Theater Sys. v. Mintek Digital, Inc.</u>, No. SA CV 02-902

3   CJC (ANx), 2004 U.S. Dist. LEXIS 16832, at *22-24 (C.D. Cal. May 25, 2004) (granting partial

4   summary judgment to plaintiff on its § 17200 and § 17500 claims because public likely to be

5   deceived by defendant's sale of products with plaintiffs' trademarks).  The <u>Blakemore</u> Court

6   reversed the trial court and held that plaintiffs had stated a claim for violation of the unfair and

7   fraudulent prongs based upon their allegations that: Avon represented that it would ship and

8   charge only for ordered products, and representatives could return unordered products for full

9   credit, when in actuality Avon shipped unordered products and refused to grant credit for

10  returned products, "thus deceiving its sales representatives into accepting and paying for

11  unordered products with the expectation that their accounts would be credited in the future."  <u>Id.</u>

12  at *49.

13          In this case, as discussed, *supra*, Google's statements in promoting AdWords were false

14  or misleading and deceived advertisers as to the true cost of the Adwords program.  The

15  deceptive effect was best articulated by Mr. Stern in his e-mails to Google:

16          My understanding of a 'daily budget' of $10 is very simple: daily cost not to
        exceed $10.  I don't expect to pay more on some days to compensate for days that
17      had costs less than $10.  I'm not trying to meet a monthly target, rather a daily
        target.  The extra traffic I might get from spending more than $10/day results in
18      not being able to meet the extra demand.  That's why I set the budget to $10.

19          I was overcharged every day that my account exceeded my $10 daily budget.  It's that
        simple.  The way Adwords bills is a misrepresentation of the daily budget that
20      prominently appears on the Campaign management screen and the set up screens that
        request budget information.  The Adwords home page promises that: 'You have total
21      control over every aspect of your campaign.'  Apparently not.

22  (Raphael Decl.,  Ex. E)

23          Not only were AdWords advertisers overcharged, but Google's furtive monthly billing

24  practice and misleading inducements to join the AdWord program are ongoing.  Google should

25  be required to adhere to the daily budget and to charge each advertiser no more than said amount

26  on days their ad runs.  Alternatively, Google should be enjoined from marketing and promoting

27  AdWords as allowing advertisers to control their costs by setting a daily budget, and allowing

28  advertisers to pause their ads without charge.

1        **3.      The FAQs Do Not Cure Google's Misleading Conduct**

2          Plaintiffs anticipate, as per Google's statements in the Joint Case Management Statement,

3    its representations to Plaintiffs, and its focus at Plaintiffs' depositions, that it will try to defend

4    its actions based upon the following language buried within the FAQs:

5          Why did I receive more clicks than my daily budget on a particular day?
           Traffic is not constant from day to day. For example, fewer people search the
6          Web on weekends than during the week.  To account for this and maximize the
           potential of your advertising, Google may allow up to 20% more clicks in one day
7          than your daily budget specifies.

8          If you budget $100 per day in a 30-day month, you may receive more than $100
           in clicks on a given day, but the maximum you would pay is $3,000 for that
9          month.

10   (Hanson FAQs, GOOG-HN 20904;  Stern FAQs, GOOG-HN 20888.)

11         This language, even if seen by advertisers, does not cure the aforementioned misleading

12   statements, and is, itself, misleading.  As detailed, *supra,* the maze of FAQs are accessed by

13   clicking on various links, which was not mandatory to the sign-up process.  In contrast, the sign-

14   up page, which all AdWords advertisers necessarily saw, allowed advertisers to set a daily

15   budget.  In any event, this language does not advise advertisers that Google is going to bill them

16   more than daily budget, by 20% or otherwise, on any and/or every day that their ad runs.  The

17   fact that Google may allow additional clicks is obviously not the same as telling advertisers that

18   Google is going to charge them more than their daily budget on any given day.  Nor do these

19   words warn advertisers that they will be billed for days that their ad is paused, which is the clear

20   result of the "billing cycle" - paused days and days that the daily budget is not reached are used

21   to absorb the excess charges from other days in the "cycle."  The only time this so-called

22   monthly budget or billing cycle can be fairly applied is when an advertiser runs its ad each day

23   of the billing cycle and does so up to its daily budget each day.  In sum, these few sentences

24   which Google has found to rely upon, contradict other FAQs and Google's representations and

25   references to a daily budget, the right to pause an ad without charge, and the right to pay no more

26   than your daily budget times the number of days your ad is active.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    The Undisputed Facts Demonstrate That Google
Has Been Unjustly Enriched At Plaintiffs' Expense**

To establish an unjust enrichment claim under California law, a plaintiff must prove (1)

receipt of a benefit and (2) unjust retention of the benefit at the expense of another.  Lectrodryer

v. SeoulBank, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000);  AccuImage

Diagnostics Corp v. Terarecon, Inc., 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003).  "Benefit" has

been interpreted so as to "denote any form of advantage."  Id. at 958.  See Restatement (First) of

Restitution § 1 (1937).  See also Sebastian Int'l, Inc. v. Russolillo, 186 F. Supp. 2d 1055 (C.D.

Cal. 2000) (claim for unjust enrichment stated by plaintiff alleging that defendant benefitted, to

its detriment, from sales of counterfeit Sebastian hair spray.)  "Whether an enrichment is unjust

depends on policy and equity considerations, and particularly the knowledge of the person

unjustly enriched."  Barnes v. United States, No. C 97-1361 SC, 1998 U.S. Dist. LEXIS 19615

(N.D. Cal. Dec. 15, 1998) (granting summary judgment on plaintiffs' unjust enrichment claim

against all three sibling heirs because the two siblings who had received their share of the estate

less their portion of the tax payment were aware that the third sibling had not paid the taxes.)

As detailed above, Google (i) solicited advertisers to use its AdWords program by

offering them the ability to control their advertising costs, (ii) allowed, and required, advertisers

to set a daily budget, (iii) represented that an ad could be paused without accruing charges, (iv)

represented that they would not be billed more than their daily budget times the number of days

their ad ran, yet billed Plaintiffs more than their daily budget, overdelivering their ads when they

ran and used a monthly billing cycle so that the paused days, including weekends and holidays,

would absorb the overrage.  By so doing, Google undeniably received a benefit, directly from

Plaintiffs, and at Plaintiffs' expense in the form of excess advertising revenue.  Google's

retention of the benefit is  unjust.  Google was undeniably aware of both its advertisements and

its contradictory billing practices.  Indeed, when Plaintiffs complained, Google tried to justify

the overcharges and refused to correct them.  However, as explained by Plaintiff Stern, if an

advertiser wanted additional delivery of its ad it would have increased its own daily budget.

Google's monthly billing scheme, including overdelivering to make up for underdelivering, and

1  billing advertisers more than daily budget times the number of days their ad ran, served only to

2  meet Google's revenue goals.  Google was not an innocent recipient of the excess revenue.

3  Google continues to be unjustly enriched each time it charges (and receives) from AdWords

4  advertisers amounts in excess of their daily budgets on the days their AdWords campaigns are

5  active.

6                                    **CONCLUSION**

7         For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary

8  judgment on the issue of Google's liability for Plaintiffs' claims for violation of California

9  Business & Professions Code § 17200, et seq., violation of California Business and Professions

10  Code § 17500, et seq., for unjust enrichment, and to either enjoin Google's current billing

11  practices that contradict Google's promotion of how AdWords advertisers will be billed, or

12  correct the misleading promotion of the AdWords billing.

13  Dated: September 29, 2006

14

15                                    WOLF POPPER LLP

16                                    ___/s/_____
                                      Lester L. Levy (*Admitted Pro Hac Vice*)
17                                    Michele F. Raphael (*Admitted Pro Hac Vice*)
                                      845 Third Avenue
18                                    New York NY 10022
                                      Telephone: 212.759.4600
19                                    Facsimile: 212.486.2093

20                                         and

21                                    ALEXANDER, HAWES & AUDET, LLP
                                      William M. Audet  (SBN 117456)
22                                    Jason Baker (SBN 212380)
                                      152 North Third Street, Suite 600
23                                    San Jose, CA 95112
                                      Telephone: 408.289.1776
24                                    Facsimile: 408.287.1776

25                                    *Attorneys for Plaintiffs and the Proposed Class*

26

27

28