1  DAVID T. BIDERMAN, Bar No. 101577
   JUDITH B. GITTERMAN, Bar No. 115661
2  M. CHRISTOPHER JHANG, Bar No. 211463
   **PERKINS COIE LLP**
3  Four Embarcadero Center, Suite 2400
   San Francisco, CA  94111-4131
4  Telephone:  (415) 344-7000
   Facsimile:  (415) 344-7050
5  Email: DBiderman@perkinscoie.com
   Email: JGitterman@perkinscoie.com
6  Email: CJhang@perkinscoie.com

7  Attorneys for Defendant Google Inc.

8

9                 **UNITED STATES DISTRICT COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

11

12  CLRB HANSON INDUSTRIES, LLC d/b/a          CASE NO. C 05-03649 JW
    INDUSTRIAL PRINTING, and HOWARD
13  STERN, on behalf of themselves and all others   **MEMORANDUM OF POINTS AND**
    similarly situated,                         **AUTHORITIES IN SUPPORT OF**
14                                              **GOOGLE INC.'S MOTION FOR**
                        Plaintiffs,             **SUMMARY JUDGMENT, OR IN THE**
15                                              **ALTERNATIVE, FOR SUMMARY**
         v.                                     **ADJUDICATION**
16
    GOOGLE, INC.,                               Fed. R. Civ. P. 56
17
                        Defendants.             Date:     November 6, 2006
18                                              Time:     9:00 a.m.
                                                Place:    Courtroom 8
19                                              Judge:    Honorable James Ware
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.     INTRODUCTION / SUMMARY OF ARGUMENTS ........................................ 1

II.    STATEMENT OF UNDISPUTED FACTS ..................................................... 4

    A.    The AdWords Program and Sign Up Process. .................................... 4

    B.    The AdWords Agreement. ................................................................... 6

    C.    Overdelivery Credits. .......................................................................... 9

    D.    Plaintiffs' Claims and Testimony. ....................................................... 9

III.   ARGUMENT ................................................................................................ 11

    A.    Legal Standard For Summary Judgment. ......................................... 11

    B.    Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because Plaintiffs Cannot Establish Essential Elements Of This Claim. ......... 12

        1.    An Enforceable Contract Exists Between The Parties. ........ 12

        2.    Plaintiffs Cannot Establish That The Agreement Was Breached. ............................................................................. 13

            a.    Google Had a Contractual Right to Exceed the Number of Clicks Per Day by 20% of the Daily Budget and This Term Was Fully Disclosed to Plaintiffs. .......................................................... 13

            b.    The Agreement Provides that the Daily Budget is Calculated by Multiplying an Advertiser's Daily Budget by the Number of Days in the Month and There is No Exclusion for Paused Days. ........ 15

        3.    Plaintiffs Have Failed To Provide Any Evidence That They Were Damaged. ................................................................... 17

    C.    Plaintiffs' Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed. ........................................... 19

    D.    Plaintiffs Claims For Unfair Competition And Untrue And Misleading Advertising Should Be Dismissed. ................................. 20

    E.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ............ 22

    F.    Plaintiffs' Claims, And The Claims Of Putative Class Members, Should Be Limited To Claims Asserted Within 60 Days Of The Contested Charge. ........................................................................... 23

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION
Case. No. 05-03649

[41063-0023/BY062740.010]

1

IV.    CONCLUSION ....................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.,*
4
   477 U.S. 242 (1986) ........................................................................11

5

*Beeson v. Schloss,*
   183 Cal. 618 (1920) ........................................................................23
6

*Berkla v. Corel Corp.,*
7
   302 F.3d 909 (9th Cir. 2002) ........................................................22

8

*Bionghi v. Metropolitan Water Dist. of S. Cal.,*
9
   70 Cal. App. 4th 1358 (1999) ........................................................19

10

*Celador Int'l Ltd. v. Waltz Disney Co.,*
   347 F. Supp. 2d 846 (C.D. Cal. 2004) ........................................19
11

*Celotex Corp. v. Catrett,*
12
   477 U.S. 317 (1986) ........................................................................11

13

*Chaknova v. Wilbur-Ellis Co.,*
14
   69 Cal. App. 4th 962 (1999) ........................................................16

15

*Consol. World Inv., Inc. v. Lido Preferred Ltd.,*
   9 Cal. App. 4th 373 (1992) ........................................................13
16

*Fontenot v. Upjohn Co.,*
17
   780 F.2d 1190 (5th Cir. 1986) ........................................................12

18

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.,*
19
   41 Cal. App. 4th 1410 (1996) ........................................................22

20

*Kung v. FOM Inv. Corp.,*
   563 F.2d 1316 (9th Cir. 1977) ........................................................11
21

*Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.,*
22
   89 Cal. App. 4th 1042 (2001) ........................................................12

23

*Moreno v. Sanchez,*
   106 Cal. App. 4th 1415 (2003) ........................................................23
24

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.,*
25
   96 F.3d 1151 (9th Cir. 1996) ........................................................22

26

*Pfizer Inc. v. Super. Ct.,*
27
   141 Cal. App. 4th 290 (2006) ........................................................21

28

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION

*Reichert v. Gen. Ins. Co.,*
    68 Cal. 2d 822 (1968) ............................................................................12

*S. Cal. Gas Co. v. City of Santa Ana,*
    336 F.3d 885 (9th Cir. 2003) ...................................................................12

*Sicor Ltd. v. Cetus Corp.,*
    51 F.3d 848 (9th Cir. 1994) .....................................................................15

*Skrbina v. Fleming Cos.,*
    45 Cal. App. 4th 1353 (1996) ...................................................................12

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir. 1987) ...................................................................11

*Tebbets v. Fidelity & Cas. Co.,*
    155 Cal. 137 (1909) ...............................................................................23

*United States v. McKeon,*
    738 F.2d 26 (2d Cir. 1984) .......................................................................15

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.,*
    995 F. Supp. 1060 & n.6 (D. Ariz. 1997) ....................................................15

*Wal-Noon Corp. v. Hill,*
    45 Cal. App. 3d 605 (1975) ......................................................................22

*Ward v. System Auto Parks & Garages, Inc.,*
    149 Cal. App. 2d Supp. 879 (1957) ...........................................................23

**Statutes**

Cal. Civ. Proc. Code § 1856 .......................................................................16

Cal. Prop. 64, § 3 ....................................................................................20

Cal. Prop. 64, § 5 ....................................................................................20

Cal.ifornia Business & Professions Code § 17204 .....................................20, 21

California Business & Professions Code § 17535 .......................................20, 21

**Other Authorities**

Federal Rule of Civil Procedure 56 ..............................................................11

Federal Rule of Civil Procedure 56(c) ....................................................11, 24

Federal Rule of Civil Procedure 56(e) ..........................................................11

- iv -

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION

[41063-0023/BY062740.010]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION / SUMMARY OF ARGUMENTS

Plaintiffs CLRB Hanson Industries, LLC, d/b/a Industrial Printing, and Howard Stern ("Plaintiffs") allege that they and a putative class they seek to represent are or were advertisers in defendant Google Inc.'s ("Google") AdWords advertising program.  They claim they were overcharged because their "daily budget" charges were up to 120% of the amount specified.  As shown below, Plaintiffs' claims are without merit because they were charged in accordance with their advertising agreement with Google.

AdWords is an online advertising program that allows advertisers to post advertisements on Google's websites or Google's syndication partners' websites.  When a computer user clicks on one of these ads, the user is linked to a uniform resource locator ("URL") determined by the advertiser (this process is called a "clickthrough").  An advertiser using AdWords is charged by Google based in part on the number of times its ad is posted on a website, cost-per-impression ("CPM"), or clicked upon by a user, cost-per-click ("CPC").

All advertisers are required, prior to activating their ads on the AdWords program, to accept the AdWords Agreement ("Agreement"), which consists of the AdWords Program Terms ("Program Terms") and the AdWords Frequently Asked Questions ("FAQs").  When an advertiser first creates an ad, the advertiser provides the text that will be displayed for the ad ("ad text") and "keywords," which are words selected by the advertiser that will trigger the delivery of the ad if they are used in a Google search query.  Advertisers also specify the amount they are willing to pay each time a computer user clicks on their ad (i.e., the CPC) and a "daily budget," which is the amount an advertiser is willing to spend on an ad each day.  The placement by AdWords of an advertiser's ad on a website is determined in part by the amount of the advertiser's CPC – the higher the CPC, the more likely that the ad will be displayed.

When creating an ad, advertisers also establish an "ad campaign," which can include multiple ads that all share common factors such as daily budgets, language and location targeting, and the date the ads will end.  Once an ad campaign has been established, it becomes

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION
Case. No. 05-03649

[41063-0023/BY062740.010]

1    active and remains active until the campaign is deleted or the term of the campaign has ended.

2    An advertiser has the option of "pausing" an ad campaign, which prevents the campaign from

3    being displayed and therefore prevents any clicks, impressions, or charges from accruing.

4    Plaintiffs allege that Google improperly charged advertisers more than their daily budgets

5    and that the terms of the Agreement misleads advertisers about how their charges accrue on a

6    monthly basis.  Their Second Amended Complaint ("SAC") asserts claims for breach of contract,

7    breach of implied covenant of good faith and fair dealing, unfair competition, untrue and

8    misleading advertising, and unjust enrichment.

9    Plaintiffs' contentions, however, are unsupported by the terms of the parties' Agreement.

10   The Agreement expressly states that "[o]n any single day, the AdWords system may deliver up

11   to 20% more ads than [an advertiser's] daily budget calls for" and that an advertiser will "never

12   be charged more than [his/her/its] average daily budget over the course of a month."  Declaration

13   of M. Christopher Jhang ("Jhang Decl."), Exhibit D (excerpts from FAQs printed August 14,

14   2006 ("FAQs"), p. 84 of 489).[1]  Another provision in the Agreement also provides that Google is

15   entitled to exceed an advertiser's daily budget by up to 20% on any given day and that an

16   advertiser's charges in a given billing period are based on the number of days in that month

17   multiplied by the advertiser's daily budget.  *Id.*, at Exhibit D (FAQs, p. 125 of 489).

18   The undisputed facts establish that Google billed Plaintiffs consistent with the express

19   language of their Agreement.  Google invoices show that Plaintiffs were not charged more than

20   120% of the daily budget on any given day or more than the number of days in a month

21   multiplied by the daily budget.  *See* Declaration of Michael Schulman ("Schulman Decl."), ¶¶

22   12-15, Exhibits 1-3 (Plaintiffs' invoices).  As a matter of undisputed fact, the allegations of

23   overcharges described in Plaintiffs' SAC are simply not borne out by the evidence.  Plaintiffs

24   even admit that Google's actions were in accordance with the terms of the contract.  Jhang Decl.,

25   Exhibit A (Deposition of plaintiff CLRB Hanson ("Hanson Dep."), 135:20 – 140:7, 169:16 –

26

27   [1] Plaintiffs refer to these FAQs as the "Current FAQs" in their Motion for Partial Summary Judgment and attach these FAQs in their entirety as Exhibit J to the Declaration of Michele F. Raphael in Support of Plaintiffs' Motion for Partial Summary Judgment.

28

170:15, 177:19 – 178:9), Exhibit B (Deposition of plaintiff Stern ("Stern Dep."), 65:8 – 66:14, 81:21 – 82:17, 124:12 – 124:19). Yet, they complain that they were overcharged because they were charged in excess of the daily budget, a circumstance fully contemplated and expressly disclosed by the Agreement. Recognizing that the daily budget is an advertiser's target, as opposed to its maximum, daily advertising spending, the AdWords system was designed to average out natural fluctuations in daily charges by permitting accrual of charges up to 120% of the daily budget in a day to offset prior shortfalls within that monthly billing period. *See id.*, at Exhibit D (FAQs, p. 84 of 489, p. 125 of 489). Plaintiffs have no valid cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing.

Their unfair competition and false advertising claims fail as well. Plaintiffs are unable to plead or prove any unlawful, unfair, or fraudulent business practice, or any unfair, deceptive, untrue or misleading advertising. The Agreement discloses the calculation of their advertising charges. Moreover, when an ad campaign is paused, there is no accrual of clicks or impressions, and thus, no accrual of charges. However, as long as the campaign remains active, advertisers' budgets are calculated based on the number of days in the month times the their daily budget and their daily budget may be exceeded by up to 20% on any given day. Plaintiffs' unfair competition and false advertising claims also fail because they cannot establish the existence of, or their reliance on, any false or misleading representations by Google or that there was any justification for their false expectations regarding the contract. Plaintiffs claim that they were only bound by their interpretation of the Agreement, but they cannot establish any basis for their interpretation because they admit they did not read the contract. Jhang Decl., Exhibit A (Hanson Dep., 45:18 – 46:2), Exhibit B (Stern Dep., 43:23 – 44:6, 57:5 – 57:25, 81:21 – 82:17).

Plaintiffs' unjust enrichment claim is without merit because there is a valid enforceable agreement between the parties and any benefit Google received from Plaintiffs was in accordance with the Agreement. Plaintiffs' claims are also barred in part by the limitations period in the Agreement, which limits advertisers' claims to those asserted within 60 days of the contested charge. Thus, any claims asserted by Plaintiffs, or the putative class members, for

alleged breaches occurring more than 60 days prior to the date the original complaint was filed,
August 3, 2005, are barred.

Despite their allegations of overcharges, both Plaintiffs continue to use the AdWords
program, both accruing charges and making payments as recently as last month.  Like all
AdWords advertisers, they are always free to adjust their daily budgets by simply logging into
their AdWords accounts.  They can easily lower their advertising expenditures at any time to any
level they choose.  Indeed, Plaintiffs acknowledge in their Motion for Partial Summary Judgment
that they were informed by Google that they are free to edit their daily budget and to change it to
whatever amount results "in the most appropriate return on investment."  *See* Plaintiffs' Motion
for Partial Summary Judgment, Memorandum of Points and Authorities, p. 6.

For these reasons, summary judgment should be entered in favor of Google.[2]

## II.    STATEMENT OF UNDISPUTED FACTS

**A.    The AdWords Program and Sign Up Process.**

Google's mission statement and guiding principle is to organize the world's information
and make it universally accessible and useful.  Schulman Decl., ¶ 2.  Google provides one of the
world's most-used search engines at www.google.com.  *Id*.  When a user enters a query,
Google's search engine returns relevant search results.  *Id*.

In 2000, Google launched its AdWords program.  *Id*., at ¶ 3.  Through its online
advertising program, AdWords, Google posts advertisers' sponsored ads on Google's websites or
Google's syndication partners' websites.  *Id*.

An advertiser can sign up for the AdWords program on the Google website.  *Id*., at ¶ 4.
For advertisers like the Plaintiffs, the AdWords program works as follows: The advertiser goes
to the AdWords website on his or her computer, registers, provides Google with a credit card

---

[2] In the alternative, summary adjudication should be entered for Google on the following
issues of fact and law: (1) that Google is entitled, under the AdWords Agreement, to exceed an
advertiser's daily budget by up to 20% on any given day, (2) that Google may base an
advertiser's charges in a billing period on the number of days in that month multiplied by the
advertiser's daily budget, and (3) that Plaintiffs' claims, and the claims of the putative class
members, are barred for alleged breaches occurring more than 60 days prior to the date the
original complaint was filed, August 3, 2005.

number and a billing address, and sets up an account. *Id*. Advertisers have the option of selecting specific geographic locations to target with their ads and the currency for payments to Google. *Id*.

An AdWords advertisement has two components: the ad text, which is the words that are displayed when the advertisement appears on a computer user's screen, and the keywords, which are the search terms that are used to trigger the display of the advertisement. *Id*., at ¶ 5. When a user clicks on an advertiser's ad, the user is linked to a URL determined by the advertiser. *Id*. An advertiser using AdWords is charged by Google based in part on the number of times its ad is posted on a website or clicked upon by a user, which is called cost-per-impression ("CPM") or cost-per-click ("CPC"), respectively. *Id*.

When establishing an advertising account, an advertiser creates an ad campaign, which consists of groups of different ads that all share common factors such as their daily budget, language and location targeting, and the date the ads will end. *Id*., at ¶ 6. The advertiser also enters the ad text, provides Google with a display URL that appears in the ad, specifies a CPC, and selects keywords. *Id*. Once an ad campaign has been established, it becomes active and remains active until the campaign is deleted or the term of the campaign has ended. *See* Jhang Decl., Exhibit D (FAQs, p. 86 of 489).

The number of clicks an advertiser receives for a campaign can vary from day to day depending on the usage patterns of Internet users. Schulman Decl., at ¶ 7. An advertiser could receive very few clicks one day and a large number of clicks the next. *Id*. In addition, Google has a complex and confidential formula for determining which advertisements are displayed and the order in which advertisements are displayed on a website; the amount an advertiser is willing to pay as the CPC is one factor in determining the order in which the advertisement appears. *Id*., at ¶ 8.

In creating their ad campaigns, advertisers also select a "daily budget." The daily budget is described as "the amount you're willing to spend on a specific AdWords campaign each day" (*Id*., at ¶ 9; Jhang Decl., Exhibit D (FAQs, p. 84 of 489)), but Google also makes clear that "[o]n

1   any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily

2   budget calls for" and that an advertiser will "never be charged more than [his/her/its] average

3   daily budget over the course of a month." *Id*.  Recognizing that the daily budget is an

4   advertiser's target, as opposed to its maximum, daily advertising spending, the AdWords system

5   was designed to average out natural fluctuations in daily charges by permitting accrual of

6   charges up to 120% of the daily budget in a day if it is necessary to offset prior shortfalls within

7   that monthly billing period.  *See id.*, at Exhibit D (FAQs, p. 84 of 489, p. 125 of 489); Schulman

8   Decl., ¶ 9.

9         All advertisers who, like Plaintiffs, sign up online must also agree to the terms and

10  conditions of the AdWords Agreement before their accounts become active.  *Id*., at ¶ 10.  They

11  agree to the terms and conditions by clicking on a radio button on their account setup page when

12  they first access their AdWords account, which provides that they "agree to the above terms and

13  conditions" and is located immediately below a screen with the Google Inc. Advertising Program

14  Terms.  *Id*.  This is the same sign up procedure that was in place when Plaintiffs enrolled with

15  AdWords in July 2002 and October 2003.  *Id*.

16        Google periodically updates the terms of the AdWords Agreement.  *Id*., at ¶ 11; Jhang

17  Decl., Exhibit D (FAQs, p. 134 of 489).  When this occurs, all advertisers are required to accept

18  these new terms in order to continue advertising with AdWords.  Schulman Decl., at ¶ 11.

19  Advertisers have a limited amount of time (generally 30 days from the initial notification of the

20  new terms) to log in and accept the new terms; otherwise, their accounts are paused (i.e., no ads

21  are displayed) until the change has been made.  *Id*.

22  **B.       The AdWords Agreement.**

23        All advertisers who sign up for AdWords online are subject to the AdWords Agreement,

24  which consists of the AdWords Program Terms ("Program Terms") and the AdWords Frequently

25  Asked Questions ("FAQs").  *Id*., at ¶ 10; Jhang Decl., Exhibit C (Google Inc. Advertising

26  Program Terms printed on August 15, 2006 ("Program Terms")).  At the time Plaintiffs CLRB

27  Hanson and Stern signed up for AdWords in July 2002 and October 2003, respectively, the

28

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION                                          [41063-0023/BY062740.010]

1  Agreement consisted of the Standard Terms and Conditions, a predecessor to the current

2  Program Terms, and the FAQs.  *See* Declaration of Leslie Altherr ("Altherr Decl."), Exhibit 1

3  (July 2002 Standard Terms and Conditions), Exhibit 2 (October 2003 Standard Terms and

4  Conditions).

5    Advertisers are contractually bound by updated Agreements.  *See* Jhang Decl., Exhibit C

6  (Program Terms, ¶ 2).  The Program Terms provide that "Google may modify the [AdWords]

7  Program or these Terms at any time without liability and your use of the [AdWords] Program

8  after notice that Terms have changed indicates acceptance of the Terms."  *Id*.[3]

9    The Agreement specifies how advertisers will be charged for their advertising campaigns.

10  In particular, advertisers are informed that their accounts may accrue charges in excess of their

11  daily budgets by 20% on any given day, and that they will not be charged more than their

12  specified daily budgets multiplied by the number of days in the month in any monthly billing

13  period.  Jhang Decl., Exhibit D (FAQs, p. 84 of 489, p. 125 of 489).  A section of the FAQs

14  entitled "Why am I being charged for more than my daily budget on some days?" provides:

15     User traffic fluctuates from day to day.  To make up for these fluctuations
   and to ensure that your campaigns reach their potential, Google may allow
16     up to 20% more clicks (or impressions for site-targeted campaigns) in one
   day than your daily budget specifies.  We call this overdelivery.
17

18     However, our system makes sure that in a given billing period, you're
   never charged more than the number of days in that month multiplied by
   your daily budget.  That amount equals your monthly budget.
19

20     For instance, if you budget US$100 per day in a 30-day month, you may
   receive more than US$100 in clicks on a given day, but the maximum you
   would pay for that month is US$3,000.
21

22  _____

23   [3] The Agreements that were operative when Plaintiffs first signed up to become
   advertisers also contained a similar provision.  In July 2002, the Standard Terms and Conditions
24  provided that "[t]he FAQs contain many important policies and procedures.  Google may modify
   the FAQs at any time upon notice published on Google's Web Site."  Altherr Decl., Exhibit 1
25  (July 2002 Standard Terms and Conditions, ¶ 3).  In October 2003, the Standard Terms and
   Conditions provided "[y]ou acknowledge and agree that in order for Google to (among other
26  things) maintain the integrity and dynamic nature of the [AdWords] Program, your participation
   in the [AdWords] Program is subject to the FAQs, which are incorporated into these Terms and
27  Conditions by reference and may be modified by Google at any time to reflect changes in how
   Google makes the [AdWords] Program generally commercially available."  *Id*., at Exhibit 2
28  (October 2003 Standard Terms and Conditions, ¶ 3).

> If Google overdelivers your ads, resulting in more clicks than your monthly budget allows, you'll receive a credit to your account.  Credits for clicks in excess of your monthly budget are listed on your Advertising costs page (accessible from your Billing Summary) as an Overdelivery credit.

*Id.*, at Exhibit D (FAQs, p. 125 of 489).[4]

In addition, the Agreement defines the term "daily budget."  The FAQs describe a daily budget as:

> The amount you're willing to spend on a specific AdWords campaign each day.
>
> AdWords displays your ad as often as possible while staying within your daily budget.  When the budget limit is reached, your ads will typically stop showing for that day.  How quickly your ads are shown during a given day is determined by your ad delivery setting.
>
> On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for.  This helps make up for other days in which your daily budget is not reached.  However, you'll never be charged more than your average daily budget over the course of a month.  For example: if your daily budget is $10 and the month has 30 days, you might be charged up to $12 on any single day but your monthly charges will never exceed $300.

Jhang Decl., Exhibit D (FAQs, p. 84 of 489).

The examples provided in the FAQs and definition of "daily budget" also demonstrate that advertisers' monthly budgets are based on the number of days in the month, not the number of advertised days in a month.  *Id.*, at Exhibit D (FAQs, p. 84 of 489, p. 125 of 489).  This

---

[4] The FAQs that were operative when Plaintiffs first signed up for AdWords also disclosed the calculation of the daily budget.  In a section entitled "Why did I receive more clicks than my daily budget on a particular day?", advertisers were told:

> Traffic is not constant from day to day.  For example, fewer people search the Web on weekends than during the week.  To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies.
>
> If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for that month.

Altherr Decl., Exhibit 3 (July 2002 FAQs, p. GOOG-HN 20904), Exhibit 4 (October 2003 FAQs, p. GOOG-HN 20888).

- 8 -

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION

[41063-0023/BY062740.010]

1   calculation applies to all advertisers like Plaintiffs, including advertisers who pause their ad

2   campaigns, as long as their campaign is active.  *See id*.  A campaign remains active until it is

3   deleted or the term of the campaign has ended.  *See id*., at Exhibit D (FAQs, p. 86 of 489).

4        Google's system allows for the delivery of advertisements in excess of daily budgets in

5   order to ensure that advertisers meet their targeted advertising budget in a monthly billing period.

6   Google fully discloses this practice to its advertisers.  *See id*., at Exhibit D (FAQs, p. 125 of 489

7   ("User traffic fluctuates from day to day.  To make up for these fluctuations and to ensure that

8   your campaigns reach their potential, Google may allow up to 20% more clicks (or impressions

9   for site-targeted campaigns) in one day than your daily budget specifies.")); *see also id*., at

10  Exhibit D, (FAQs, p. 84 of 489 ("On any single day, the AdWords system may deliver up to 20%

11  more ads than your daily budget calls for.  This helps make up for other days in which your daily

12  budget is not reached.")).

13  **C.    Overdelivery Credits.**

14       Google gives "overdelivery credits" to offset any charges that would otherwise exceed

15  the limits set forth in the Agreement.  An overdelivery credit reflects extra clicks or impressions

16  that an advertiser benefited from but for which the advertiser is not charged.  *Id*., at Exhibit D

17  (FAQs, p. 97 of 489).  These credits are automatically issued to advertisers and are listed in their

18  invoices.  *Id*.  Thus, advertisers are not billed in excess of the limits set forth in their AdWords

19  Agreement.

20       Advertisers receive overdelivery credits when they accrue clicks or impressions that

21  would amount to charges in excess of 120% of their daily budget in a single day or more than

22  their daily budget times the number of days in that billing period.  *See id*., at Exhibit D (FAQs, p.

23  84 of 489, p. 97 of 489, p. 125 of 489).

24  **D.    Plaintiffs' Claims and Testimony.**

25       Plaintiffs claim, despite the express disclosures in the Agreement, that an advertiser's

26  account cannot accrue charges that exceed the exact amount of the advertiser's daily budget each

27  day, that Google wrongfully and misleadingly commits advertisers to a monthly budget, and that

28

- 9 -

1    Google improperly exceeded the budgets of advertisers who paused their ads within a month.

2    SAC, ¶¶ 45, 47, 49.  Based on these allegations, Plaintiffs assert claims for breach of contract,

3    breach of implied covenant of good faith and fair dealing, unfair competition, untrue and

4    misleading advertising, and unjust enrichment.  *Id.*, at ¶¶ 76 - 125.  They purport to sue on behalf

5    of a class of persons "who were charged by Google more than their set daily budgets for their

6    advertising campaign(s)."  *Id.*, at ¶ 69.

7        In their depositions, Plaintiffs acknowledged that they enrolled in the AdWords program

8    with little or no review of the terms and conditions of the Agreement.  Jhang Decl., Exhibit A

9    (Hanson Dep., 45:18 – 46:2), Exhibit B (Stern Dep., 43:23 – 44:6, 57:5 – 57:25, 81:21 – 82:17).

10   They admitted that they renewed their acceptance of the Agreement in order to continue

11   advertising under the AdWords program.  *Id.*, at Exhibit A (Hanson Dep., 42:6 – 43:10), Exhibit

12   B (Stern Dep., 142:7 – 143:25).  In addition, Plaintiffs acknowledged that under their

13   understanding of the Agreement, Google may charge up to 20% more clicks on a given day than

14   their daily budgets specify.  *Id.*, at Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 – 170:15),

15   Exhibit B (Stern Dep., 65:8 – 66:14, 81:21 – 82:17).

16       Plaintiffs contend that they are subject to only select portions of the Agreement, but have

17   admitted that they failed to communicate to Google that they did not intend to be bound by some

18   of the terms of the Agreement when entering into the Agreement.  *Id.*, at Exhibit A (Hanson

19   Dep., 25:5 – 26:16, 42:6 – 43:10, 177:19 – 178:9), Exhibit B (Stern Dep., 123:19 – 124:16,

20   142:11 – 143:25, 166:15 – 168:7).  They also admitted that they continued to use the AdWords

21   program after they were directly informed by Google that they may be charged up to 20% above

22   their daily budgets on a given day and that they would not be charged in a billing period more

23   than their daily budget times the number of days in that billing period.  *Id.*, at Exhibit A (Hanson

24   Dep., 135:20 – 137:15, 177:19 – 178:9), Exhibit B (Stern Dep., 99:17 – 100:15, 101:4 – 101:9).

25       Plaintiffs allege specific amounts by which they contend they were overcharged in

26   February, March, and April 2005.  SAC, ¶¶ 58-60, 65.  Plaintiffs admitted, however, that they

27   made only limited attempts to review their invoices in order to determine their charges and that

28

- 10 -

1   they have never calculated whether they were overcharged in any billing period more than their

2   daily budget times the number of days in that billing period.  Jhang Decl., Exhibit A (Hanson

3   Dep., 120:11 – 121:6, 126:5 – 126:22, 173:22 – 174:2), Exhibit B (Stern Dep., 76:18 – 78:19,

4   94:8 – 96:21).  In fact, Plaintiffs' invoices (discussed in section III., B., 3., below) demonstrate

5   that Plaintiffs were charged in accordance with the parties' Agreement.

6                          **III.   ARGUMENT**

7   **A.    Legal Standard For Summary Judgment.**

8        Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if

9   the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

11  party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v.*

12  *Catrett*, 477 U.S. 317, 322-23 (1986).  To meet its burden on a summary judgment motion, a

13  defendant need only show that the plaintiff does not have evidence from which a jury could find

14  an essential element of the plaintiff's claim.  *Id.*

15       The mere existence of "a scintilla of evidence" in support of the opposing party's position

16  is insufficient.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986) (internal

17  quotation marks and citation omitted).  If the moving party meets its initial burden, the burden

18  then shifts to the non-moving party to set forth "specific facts showing that there is a genuine

19  issue for trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

20  Cir. 1987) (citing Fed. R. Civ. P. 56(e)).  The existence of some alleged factual dispute will not

21  defeat an otherwise properly supported motion; to defeat the motion, the non-moving party must

22  affirmatively set forth facts showing there is a genuine issue.  *Anderson*, 477 U.S. at 248-49.

23  Conclusory allegations are insufficient to avoid summary judgment.  *See Kung v. FOM Inv.*

24  *Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977).

25       Summary judgment for a defendant is appropriate if the movant demonstrates the absence

26  of substantial evidence in support of an essential element of the plaintiff's claim.  *See Celotex*

27  *Corp.*, 477 U.S. at 325.  "[A] complete failure of proof concerning an essential element of the

28

- 11 -

1    nonmoving party's case necessarily renders all other facts immaterial." *Id*., at 322-23.

2    Additionally, establishment beyond peradventure all of the elements of an affirmative defense

3    warrants judgment for the defendant. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888

4    (9th Cir. 2003); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

5    **B.    Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because Plaintiffs**
       **Cannot Establish Essential Elements Of This Claim.**
6

7         The essential elements of a cause of action for breach of contract are: an enforceable

8    contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach of the

9    contract, and resulting damages to the plaintiff. *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830

10   (1968). An enforceable contract exists between the parties; however, Plaintiffs cannot establish

11   that the Agreement was breached, nor have they provided any evidence demonstrating that they

12   were damaged.

13         **1.    An Enforceable Contract Exists Between The Parties.**

14         Plaintiffs are bound by the terms of the AdWords Agreement. All advertisers who sign

15   up online, including Plaintiffs, must agree to the terms and conditions of the Agreement in order

16   to activate their accounts. Schulman Decl., ¶ 10. Plaintiffs allege in their SAC that they entered

17   into these Agreements with Google and predicate their claims and allegations on this contention.

18   *See* SAC, ¶¶56, 62, 77. Moreover, both Plaintiffs admitted in their depositions that they renewed

19   their acceptance of the Agreement in order to continue advertising under the AdWords program.

20   Jhang Decl., Exhibit A (Hanson Dep., 42:6 – 43:10), Exhibit B (Stern Dep., 142:7 – 143:25).

21         Plaintiffs' claim that they are subject to only select portions of the Agreement is without

22   merit. *See* Jhang Decl., Exhibit A (Hanson Dep., 177:19 – 178:9), Exhibit B (Stern Dep., 123:19

23   – 124:16, 142:11 – 143:25, 166:15 – 168:7). A party to an agreement cannot pick and choose

24   select terms of the Agreement without informing the other party that it does not intend to be

25   bound by some of its terms. *See Skrbina v. Fleming Cos.,* 45 Cal. App. 4th 1353, 1367 (1996)

26   ("If [plaintiff] signed the release on the mere unspoken belief that the release did not encompass

27   such claims, despite express language in the release to the contrary, he may not now rely on his

28   unspoken intention not to waive these claims in order to escape the effect of the release."); *see*

- 12 -

1   *also Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th

2   1042, 1049 (2001) ("ordinarily one who signs an instrument which on its face is a contract is

3   deemed to assent to all its terms").  Accordingly, Plaintiffs are subject to the AdWords

4   Agreement, in its entirety.

5              **2.      Plaintiffs Cannot Establish That The Agreement Was Breached.**

6         Plaintiffs allege that Google "promised that it would not exceed the daily budget set by

7   Plaintiffs and Class members" and that Google "breached the Agreement by charging Plaintiffs

8   and the Class advertising fees in excess of their respective daily budgets."  SAC, ¶¶ 79, 83.

9   These contentions, however, are contrary to the express terms of the AdWords Agreement.

10        When the plain language of an agreement contradicts the breach of contract allegations of

11  a plaintiff, the defendant is entitled to a dismissal of the plaintiff's claim, as a matter of law.  *See*

12  *Consol. World Inv., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992) (nonsuit granted

13  to defendant on contract claims because plaintiff's interpretation of contract "flatly

14  contradict[ed] the terms of the agreement").

15              **a.      Google Had a Contractual Right to Exceed the Number of
                         Clicks Per Day by 20% of the Daily Budget and This Term
16                       Was Fully Disclosed to Plaintiffs.**

17        Here, the Agreement specifically provides that daily budgets can be exceeded on any

18  given day and that the Google system may overdeliver ads up to 20% in excess of a daily budget,

19  so long as the average daily budget is not exceeded over the course of a billing period.  Jhang

20  Decl., Exhibit D (FAQs, p. 125 of 489 ("User traffic fluctuates from day to day.  To make up for

21  these fluctuations and to ensure that your campaigns reach their potential, <u>Google may allow up

22  to 20% more clicks. . . in one day than your daily budget specifies</u>. . . .  However, our system

23  makes sure that in a given billing period, <u>you're never charged more than the number of days in

24  that month multiplied by your daily budget</u>. . . .  If Google overdelivers your ads, resulting in

25  more clicks than your monthly budget allows, you'll receive a credit to your account.")

26  (emphasis added)), Exhibit D (FAQs, p. 84 of 489 ("On any single day, <u>the AdWords system

27

28
                                    - 13 -

1  may deliver up to 20% more ads than your daily budget calls for. . . .  However, you'll never be

2  charged more than your average daily budget over the course of a month.") (emphasis added)).[5]

3      Plaintiffs acknowledged in their depositions that the above-referenced terms and FAQs,

4  regarding Google's right to allow up to 20% more clicks per day, are part of their Agreement

5  with Google.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 – 170:15), Exhibit

6  B (Stern Dep., 65:8 – 66:14, 81:21 – 82:17).  They acknowledged that not only was this

7  expressly stated in the Agreement, but that Google representatives also confirmed that these

8  terms are part of the contract.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 –

9  170:15, 177:19 – 178:9), Exhibit B (Stern Dep., 99:17 – 100:15).  Brett Hanson, plaintiff CLRB

10  Hanson's representative, admitted that as early as March 2005 he was informed by a Google

11  representative that Google tries "to keep your daily cost fluctuation to no more than 20% above

12  your daily budget" and that it "make[s] sure that within the 30-day billing period you are never

13  charged more than the number of days in that billing period times your daily budget."  Jhang

14  Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9).  Likewise,

15  plaintiff Stern admitted that as early as October 2003 he was informed by email that "it is

16  possible that [he] may accrue charges above or below [his] set [daily budget] limit" and that

17  "[Google's] system makes sure that in a given billing period, [he] [is] never charged more than

18  the number of days in that month multiplied by [his] daily budget."  Jhang Decl., Exhibit B

19  (Stern Dep., 99:17 – 100:15).  In fact, Plaintiffs acknowledged that under their understanding of

20  the Agreement, Google may charge up to 20% more clicks on a given day than his daily budget

21  specifies.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 – 170:15), Exhibit B

22  (Stern Dep., 65:8 – 66:14, 81:21 – 82:17).

23

24  _____

25      [5] The AdWords FAQs available to Plaintiffs when they signed up for AdWords also
provided a similar disclosure to advertisers.  Altherr Decl., Exhibit 3 (July 2002 FAQs, p.

26  GOOG-HN 20904 ("Traffic is not constant from day to day . . .  To account for this and
maximize the potential of your advertising, Google may allow up to 20% more clicks in one day

27  than your daily budget specifies.  If you budget $100 per day in a 30-day month, you may
receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for

28  that month)), Exhibit 4 (October 2003 FAQs, p. GOOG-HN 20888 (same)).

1    Plaintiffs even admitted in their original complaint that they were informed by Google

2    that "[i]n general, we try to keep your daily cost fluctuation to no more than 20% above your

3    daily budget, and we make sure that within the 30/31 day billing period (a month), you are never

4    charged more than the number of days in that billing period times your daily budget.  This

5    ensures that over time, you maximize your advertising budget."  Jhang Decl., Exhibit E

6    (Plaintiffs' original Complaint filed August 3, 2005, ¶ 44).  Plaintiffs deleted this reference from

7    their first and second amended complaints.  However, their prior statement is a judicial

8    admission.  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1994).[6]

9    Indeed, even the exhibit Plaintiffs attached to their SAC demonstrates that Google was

10   entitled to exceed advertisers' daily budgets.  SAC, Exhibit A, p.049 ("Though it may sometimes

11   appear that your daily budget is being exceeded, that usually isn't the case.  Here's why: Our

12   system works to deliver enough ads to fully satisfy your daily budget over the course of each

13   month.  (That is, your daily budget times the total number of days in the month.)  Because page

14   views fluctuate from day to day, we may overdeliver ads on a given day to make up for potential

15   shortfalls later in the month.  For instance, if you budget US$100 per day in a 30-day month, you

16   may receive more than US$100 in clicks on a given day, but the maximum you would pay is

17   US$3,000 for that month.").

18         **b.    The Agreement Provides that the Daily Budget is Calculated
              by Multiplying an Advertiser's Daily Budget by the Number of
19            Days in the Month and There is No Exclusion for Paused Days.**

20   Plaintiffs' contention that paused days should be excluded from the calculation of

21   advertisers' monthly budgets (determined by multiplying an advertiser's daily budget by the

22   number of days in the month) is not supported by the terms of the Agreement.  *See* SAC, ¶¶ 45,

23   47.  The Agreement clearly provides that monthly charges are based on the <u>number of days in the</u>

24   _____

25         [6] Plaintiffs have not asserted that their prior allegations were false or a justifiable mistake,
      or provided any other explanation why they should not be bound by them.  *Valdiviezo v. Phelps
26   Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065-66 & n.6 (D. Ariz. 1997); *United States v.
      McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party. . . cannot advance one version of the facts in
27   its pleadings, conclude that its interests would be better served by a different version, and amend
      its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of
28   the change in stories.").

month.  Jhang Decl., Exhibit D (FAQs, p. 84 of 489, p. 125 of 489).  Nowhere in the Agreement is there an exception for calculating the monthly budgets of advertisers who have paused their advertising campaigns.  No charges accrue during a paused period because no ads are displayed and therefore no clicks or impressions accrue.  *See id.*; *see also id.*, at Exhibit D (FAQs, p. 261 of 489).  However, this does not affect advertisers' monthly budgets, which is calculated based on the number of days in the month times advertisers' daily budget, as long as the campaign is active (i.e., not deleted and the term of the campaign has not ended).

Plaintiffs' attempt to enter as evidence a "screen shot" from an on-line tutorial that describes the daily budget in support of their pausing allegations is improper.  *See SAC*, Exhibit B.  This document is outside the parties' integrated Agreement and should not be considered.  *See* Cal. Civ. Proc. Code § 1856; *Chaknova v. Wilbur-Ellis Co.*, 69 Cal. App. 4th 962, 968 (1999) ("[m]atters extrinsic to an integrated contract will not be considered to modify the unambiguous language of those contracts").  The Program Terms include the following integration provision:

> The Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes and replaces any other applicable agreements, terms and conditions applicable to the subject matter hereof.  Any conflicting or additional terms contained in additional documents (e.g. reference to a purchase order number) or oral discussions are void.

Jhang Decl., Exhibit C (Program Terms, ¶ 9).[7]

The screen shot is also not relevant to Plaintiffs' claims because both Plaintiffs have admitted at deposition that they had not seen the screen shot prior to this litigation.  Jhang Decl., Exhibit A (Hanson Dep., 45:24 – 46:2), Exhibit B (Stern Dep., 92:11 – 94:7, 97:3 – 97:13).

---

[7] The operative Standard Terms and Conditions when Plaintiffs first signed up for AdWords included a similar provision.  In July 2002, the Standard Terms and Conditions provided: "This constitutes the entire agreement between the parties with respect to the subject matter hereof.  Any modifications to this Agreement must be made in a writing executed by both parties."  Altherr Decl., Exhibit 1 (July 2002 Standard Terms and Conditions, ¶ 15).  In October 2003, the Standard Terms and Conditions provided: "This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and any non-Google purchase order, invoice or other document relating to the subject matter hereof and any additional terms contained therein shall be null and void."  *Id.*, at Exhibit 2 (October 2003 Standard Terms and Conditions, ¶ 15).

- 16 -

[41063-0023/BY062740.010]

Given that Plaintiffs did not know about the screen shot, it could not have formed part of the parties' Agreement and it could not have been relied upon by the Plaintiffs in interpreting the Agreement. The express terms of the AdWords Agreement establish that Google is entitled to exceed advertisers' daily budget by up to 20% on any given day, provided that the total charges in any given month, divided by the number of days in that month, does not exceed the daily budget. Thus, Plaintiffs cannot establish that the Agreement was breached and their contract claim should be dismissed as a matter of law.

### 3. Plaintiffs Have Failed To Provide Any Evidence That They Were Damaged.

Plaintiffs identify in their SAC specific time periods and campaigns where they purportedly incurred overcharges under the AdWords program. However, the AdWords invoices for these time periods disprove Plaintiffs' allegations and demonstrate that Plaintiffs were charged in accordance with the terms and conditions of the Agreement.

Plaintiff CLRB Hanson claims it ran an advertising campaign, Contract Decorating, in February 2005, with a daily budget of $50.00, and was charged $1,495.33 for the month. SAC, ¶ 58. However, plaintiff CLRB Hanson's invoices for this month demonstrate that this plaintiff was charged only $1,399.99 for the month. Schulman Decl., ¶ 13, Exhibit 1 (plaintiff CLRB Hanson's February 2005 invoices). Under the Agreement, the most plaintiff CLRB Hanson could have been charged was $1,400.00 (for a daily budget of $50 in a 28 day month). Plaintiff CLRB Hanson also claims it was charged, in the following month, for the same campaign, a total of $1,197.79. SAC, ¶ 58. Again, the alleged monthly charge total is incorrect. Plaintiff CLRB Hanson's invoices for this month demonstrate that this plaintiff was charged only $1,019.90 for the month. Schulman Decl., ¶ 14, Exhibit 2 (plaintiff CLRB Hanson's March 2005 invoices). Under the terms of the Agreement, the most plaintiff CLRB Hanson could have been charged for this month was $1,550.00 (for a daily budget of $50.00 in a 31 day month), which is well above the amount this plaintiff was actually charged.

The invoices for plaintiff CLRB Hanson's other two campaigns also demonstrate that Plaintiffs have misstated their charges. This plaintiff alleges that in February and March 2005, it

was charged $462.23 and $118.10, respectively, for its advertising campaign, Mousepads (SAC, ¶ 59); however, the invoices reflect totals of $455.85 and $117.27 for these periods (Schulman Decl., ¶¶ 13-14, Exhibits 1-2). Plaintiff also alleges that in February and March 2005, it was charged $1,443.11 and $1,126.08, respectively, for its advertising campaign, Team (SAC, ¶ 60); however, the invoices demonstrate totals of $1,385.51 and $1,018.60 for these periods (Schulman Decl., ¶¶ 13-14, Exhibits 1-2).

The AdWords invoices also demonstrate that Plaintiffs received overdelivery credits for clicks that would have resulted in charges in excess of 120% of their daily budget in a single day. In the SAC, plaintiff Stern identified four days in April 2005 on which he claims he was overcharged. Specifically, plaintiff Stern alleges that he was charged $16.78 on April 5, $19.34 on April 12, $11.59 on April 12, and $16.10 on April 25, pursuant to a daily budget of $10 for each day. SAC, ¶ 65. Under the terms of the Agreement, plaintiff Stern would be entitled to an overdelivery credit for any charges in excess of $12 on these days (120% of his alleged daily budget of $10), resulting in a total credit of $16.72. Plaintiff Stern's invoices for this time period reflect that he received overdelivery credits totaling $17.23 (the extra $0.51 is an overdelivery credit for a day from the prior month). Schulman Decl., ¶ 15, Exhibit 3 (plaintiff Stern's April 2005 invoices). Thus, Plaintiffs' claim that he was overcharged for this period is false.

Although their invoices are readily available to Plaintiffs through their AdWords accounts, Plaintiffs appear to have made virtually no effort to reconcile their monthly charges with the amounts by which they claim they were overcharged. In fact, Plaintiffs admitted in their depositions that they made only limited attempts to review their invoices in order to determine their charges. Jhang Decl., Exhibit A (Hanson Dep., 126:5 – 126:22, 173:22 – 174:2), Exhibit B (Stern Dep., 76:18 – 78:19). A review of their invoices would have shown that Plaintiffs were charged and received overdelivery credits in accordance with the express terms of the Agreement. Accordingly, Plaintiffs have failed to produce any evidence that they have been damaged under the AdWords system, and thus, their breach of contract claim should be dismissed.

**C.    Plaintiffs' Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed.**

A breach of the implied covenant of good faith and fair dealing involves unfair dealing in the form of a conscious and deliberate act that unfairly frustrates the agreed common purpose of the contract and disappoints the reasonable expectations of the other party to the contract. *Celador Int'l Ltd. v. Waltz Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004). If a claim for breach of the implied covenant of good faith and fair dealing does not go beyond the statement of a breach of the express contractual terms and seeks the same relief sought in a breach of contract claim, it is simply superfluous to the contract claim. *Bionghi v. Metropolitan Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999).

Plaintiffs allege, on behalf of themselves and their purported class, that Google was obligated to charge them "no more than their daily budget for each day their ad runs" under its implied duty of good faith and fair dealing. SAC, ¶¶ 89-91. They claim Google breached this covenant by exceeding their daily budgets. *Id.* The claim does nothing more than reiterate the same basic allegations asserted in their breach of contract claim, and appears to seek the same relief.[8] Thus, this claim is superfluous to their breach of contract claim and fails for the same reason Plaintiffs' breach of contract claim fails. *Bionghi*, 70 Cal. App. 4th at 1370.

Moreover, given that the agreement expressly provides that Google may exceed Plaintiffs' daily budgets, as long as the monthly average does not exceed the daily budget amount, Plaintiffs cannot establish any "conscious and deliberate act that unfairly frustrates the agreed common purpose of the contract," nor can they show that their "reasonable" expectations were disappointed. *Celador Int'l Ltd.*, 347 F. Supp. 2d at 852 (internal quotation and citation omitted). Rather, these facts demonstrate that Plaintiffs' expectations were unreasonable. Accordingly, their implied covenant claim must be dismissed as a matter of law.

---

[8] Plaintiffs' claim for relief under each cause of action is uncertain because they fail to allege prayers specific to each cause of action in their SAC.

**D.    Plaintiffs Claims For Unfair Competition And Untrue And Misleading Advertising Should Be Dismissed.**

Plaintiffs base their unfair competition and untrue and misleading advertising claims on allegations that material facts concerning the cost of advertising under the AdWords program were omitted or concealed, that members of the public are likely to be deceived concerning the cost of the of the AdWords program, that advertisers are charged more than their daily budgets on any given day, and that advertisers are bound to a monthly budget of their daily budget times 30/31 even if their ads do not run each day.  SAC, ¶¶ 93-115.  Plaintiffs' claims must be dismissed, however, because Plaintiffs cannot establish that there was any unlawful, unfair, or fraudulent business practice, or any unfair, deceptive, untrue or misleading advertising, since the Agreement fully discloses the calculation of the daily budget.

Advertisers are informed that they may be charged up to 20% in excess of their daily budgets on a given day and that their charges in a billing period are based on the number of days in that month.  This language in the Agreement demonstrates that Google's practices are neither unlawful, unfair, or deceptive.

Nor are Plaintiffs able to plead or prove that they actually relied on false or misleading representations when entering into the Agreement or that the reliance they allege was justified.  Proposition 64, approved by the California voters in November 2004, amended unfair competition and false advertising laws to require a transactional nexus between the plaintiff and the defendant's business practice.  Cal. Prop. 64, §§ 3, 5; Cal. Bus. & Prof. Code §§ 17204, 17535.[9]  Private enforcement under unfair competition and false advertising laws now requires that each plaintiff have "actually *relied* on the false or misleading misrepresentation or advertisement in entering into the transaction in issue."  *Pfizer Inc. v. Super. Ct.*, 141 Cal. App.

---

[9] Specifically, unfair competition laws were amended to provide that "[a]ctions for any relief pursuant to [the unfair competition] chapter shall be prosecuted. . . by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."  Cal. Prop. 64, § 3; Cal. Bus. & Prof. Code § 17204.  Similarly, Proposition 64 amended false advertising laws to provide that "[a]ctions for injunction under this section may be prosecuted. . . by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter."  Cal. Prop. 64, § 5; Cal. Bus. & Prof. Code § 17535.

- 20 -

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION

[41063-0023/BY062740.010]

4th 290, 296 (2006) (emphasis in original).  Moreover, "[p]ersons who have not suffered any 'injury in fact' and who have not lost money or property as a result of an alleged fraudulent business practice or false advertising (§§ 17204, 17535) cannot state a cause of action based merely on the 'likelihood' that members of the public will be deceived." *Id.*, at 304.

Here, the evidence demonstrates that neither plaintiff actually relied on any of the alleged misrepresentations that they claim pertained to their charges under the AdWords program. Plaintiffs admitted in their depositions that they failed to review any provisions in the FAQs pertaining to daily budgets when they first enrolled.  Jhang Decl., Exhibit A (Hanson Dep., 47:12 – 48:2), Exhibit B (Stern Dep., 43:23 – 44:6, 59:7 – 59:17, 62:11 – 63:7).  They stated that they based their understanding of the calculation of their daily budgets on nothing more than a review of the AdWords homepage or their own interpretation of the phrase "daily budget."  *Id.*, at Exhibit A (Hanson Dep., 47:12 – 48:2), Exhibit B (Stern Dep., 62:11 – 62:18).  Plaintiffs also admitted that they failed to review or do not recall reviewing any provisions pertaining to the pausing of their ad campaigns (including the on-line tutorials).  *Id.*, at Exhibit A (Hanson Dep., 45:18 – 46:2), Exhibit B (Stern Dep., 177:19 – 179:3).  Thus, Plaintiffs were admittedly unaware of any representations in the Agreement pertaining to the calculation of the daily budget when they entered into the Agreement.

Plaintiffs' failure to review these provisions also prohibits them from establishing that they suffered any "injury in fact" as a result of the alleged misrepresentations.  *See Pfizer Inc.*, 141 Cal. App. 4th at 305-06 ("A consumer who was unaware of, or who did not rely upon, [the alleged misrepresentation] did not suffer any 'injury in fact' as a result of the alleged fraudulent business practice or false advertising.").  Without injury in fact, Plaintiffs' claim that members of the public are likely to be deceived concerning the cost of the AdWords program cannot stand. *See id.* at 304.

Plaintiffs' claim that they relied on a representation that "advertisers can control their advertising costs by setting a daily budget" also lacks merit.  In essence, Plaintiffs contend that their ability to "control" a daily budget should include the ability to set a budget that violates the

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION

[41063-0023/BY062740.010]

1    express terms of the parties' Agreement.  Plaintiffs' contention is untenable in light of the

2    disclosures in the Agreement.

3    Accordingly, Plaintiffs cannot establish that they relied on false or misleading

4    representations when entering into the Agreement or that the reliance they allege was justified,

5    and thus, their unfair competition and untrue and misleading advertising claims must be

6    dismissed as a matter of law.

7    **E.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

8    The Ninth Circuit has held that "[u]nder both California and New York law, unjust

9    enrichment is an action in quasi-contract, which does not lie when an enforceable, binding

10   agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. Gen. Elec. Capital*

11   *Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  "'There cannot be a valid, express contract and an

12   implied contract, each embracing the same subject matter, existing at the same time.'" *Berkla v.*

13   *Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (quoting *Wal-Noon Corp. v. Hill*, 45 Cal. App.

14   3d 605, 613 (1975)); *see also Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.

15   App. 4th 1410, 1419 (1996).

16   Here, an enforceable, binding agreement exists between Plaintiffs and Google.  Plaintiffs

17   could not have advertised on the AdWords system without agreeing to the terms and conditions

18   of the Agreement and both Plaintiffs admitted that they renewed their acceptance of the

19   Agreement in order to continue advertising under the AdWords program.  Moreover, the

20   invoices submitted in support of this motion demonstrate that any benefit Google received from

21   Plaintiffs was properly within the scope of the parties' agreement; thus, Plaintiffs' overcharge

22   allegations are unsupported.

23   Accordingly, Plaintiffs' claim that Google was "unjustly enriched" through the AdWords

24   program "does not lie" and should be dismissed as a matter of law.  *See Paracor Finance, Inc.*,

25   96 F.3d at 1167.

26

27

28

**F.    Plaintiffs' Claims, And The Claims Of Putative Class Members, Should Be Limited To Claims Asserted Within 60 Days Of The Contested Charge.**

The Agreement states that advertisers are not entitled to assert claims for charges that they have incurred beyond 60 days.  Specifically, the Program Terms provide that "[t]o the fullest extent permitted by law, [an advertiser] waives all claims relating to charges unless claimed within 60 days after the charge."  Jhang Decl., Exhibit C (Program Terms, ¶ 7).[10]

Under California law, an agreement that provides a shorter limitations period will be enforced so long as the shorter period is reasonable.  *See Beeson v. Schloss*, 183 Cal. 618, 622-23 (1920) ("It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statue of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way."); *see also Tebbets v. Fidelity & Cas. Co.*, 155 Cal. 137, 139 (1909) (upholding a contractual provision shortening the time to file suit to six months).  Courts have explained that a shorter period is "reasonable" if it provides sufficient time to effectively pursue a judicial remedy.  *See Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003); *see also Ward v. System Auto Parks & Garages, Inc.*, 149 Cal. App. 2d Supp. 879 (1957) (three month period for claims relating to damage to parked vehicle not unreasonably short).

Here, Plaintiffs acknowledged that their invoices were available to them through their AdWords accounts and that they could review their charges on a regular basis.  Jhang Decl., Exhibit A (Hanson Dep., 69:2 – 69:18), Exhibit B (Stern Dep., 132:11 – 133:14).  Moreover, AdWords advertisers are invoiced either after 30 days, or when they reach their credit limit, whichever comes first.  Jhang Decl., Exhibit D (FAQs, p. 126 of 489).  Thus, the 60 day period is

---

[10] The Standard Terms and Conditions that were operative when Plaintiffs enrolled for AdWords contained a similar disclosure: "If you dispute any charge made under the [AdWords] Program, you must notify Google in writing within sixty (60) days of any such charge; failure to so notify Google shall result in the waiver by you of any claim relating to any such disputed charge."  Altherr Decl., Exhibit 1 (July 2002 Standard Terms and Conditions, ¶11), Exhibit 2 (October 2003 Standard Terms and Conditions, ¶12).

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION

[41063-0023/BY062740.010]

1  reasonable because it provides advertisers with sufficient time to review and contest any charges

2  that they have incurred.

3          Accordingly, any claims asserted by Plaintiffs, or their putative class, for alleged

4  breaches occurring more than 60 days prior to the date the original complaint was filed, August

5  3, 2005, are barred.

6                                    **IV.  CONCLUSION**

7          For the foregoing reasons, Google respectfully requests that this Court grant its motion

8  for summary judgment, or in the alternative, for summary adjudication, and that judgment is

9  entered in favor of Google and against Plaintiffs on Plaintiffs' claims, and the claims of the

10 putative class members, for breach of contract, breach of implied covenant of good faith and fair

11 dealing, unfair competition, untrue and misleading advertising, and unjust enrichment, pursuant

12 to Federal Rule of Civil Procedure 56(c).  In the alternative, Google requests summary

13 adjudication on the following issues of fact and law: (1) that Google is entitled, under the

14 AdWords Agreement, to exceed an advertiser's daily budget by up to 20% on any given day, (2)

15 that Google may base an advertiser's charges in a billing period on the number of days in that

16 month multiplied by the advertiser's daily budget, and (3) that Plaintiffs' claims, and the claims

17 of the putative class members, are barred for alleged breaches occurring more than 60 days prior

18 to August 3, 2005.

19

20 DATED:  October 2, 2006.                **PERKINS COIE LLP**

21

22 By _____ /S/
                    David T. Biderman
23                  Attorneys for Defendant Google Inc.

24

25

26

27

28

MEMO OF P'S AND A'S IN SUPPORT OF GOOGLE INC.'S MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR
SUMMARY ADJUDICATION                                    [41063-0023/BY062740.010]