# EXHIBIT E

Dockets.Justia.com

William M. Audet (CA 117456)
Ryan M. Hagan (CA 200850)
Jason Baker (CA 212380)
ALEXANDER, HAWES & AUDET, LLP
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

Lester L. Levy
Emily Madoff
Patricia I. Avery
Renee L. Karalian (CA 216260)
WOLF POPPER LLP
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

*Attorneys for Plaintiffs and the
Proposed Class*

**(ENDORSED)**
**FILED**

AUG 0 3 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
C. Del Rio

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA    105CV046409

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC.,<br><br>                Defendant. | CASE NO: _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.   **Violation of California Bus. & Prof. Code §§ 17200 *et seq.***<br>2.   **Breach of Contract**<br>3.   **Negligent Misrepresentation**<br>4.   **Unjust Enrichment**<br>5.   **Imposition of a Constructive Trust**<br>6.   **Breach of Implied Covenant of Good Faith and Fair Dealing**<br>7.   **Fraud – Promise without Intent to Perform**<br>8.   **Injunctive and/or Declaratory Relief**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, by their attorneys, allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based upon Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1.    Plaintiffs bring this class action against Google, Inc. ("Google" or the "Company") on behalf of themselves and advertisers who use Google's AdWords program

1    ("AdWords") and were or are being charged in excess of their set "daily budgets" for their

2    advertising campaigns (the "Class").

3        2.    Google is an Internet search engine. When a user of the Internet conducts a word

4    search through the Google search engine, Google provides search results with links to websites

5    that include those search terms. On the same pages as those search results, Google also typically

6    includes a box or boxes with "Sponsored Links" that have 2-4 lines of text which might appear

7    above or down the right side of the Internet search results. These "Sponsored Links" link to

8    websites of businesses that provide the services or sell the products involving the particular

9    search terms input by the customer using the Google search engine. In short, they are the ads of

10   the advertisers who sign up to use Google's advertising program. These ads could also appear in

11   similar locations on the search and content sites and products in the Google Network. (The

12   Google Network is the largest online advertising network in the United States and includes

13   thousands of third-party web sites. The search sites include, for example, AOL, Earthlink,

14   AskJeeves, and Shopping.com; the content websites include, for example, The New York Times,

15   HGTV, and the Weather Channel.)

16       3.    AdWords is Google's global advertising program. If an advertiser wants to

17   advertise on Google, the advertiser must sign up in an online AdWords application. The

18   advertiser goes to Google's Internet site, Google.com, and clicks on "Google Advertising

19   Programs," and then clicks on "For Advertisers: Google AdWords." To "Sign Up" with

20   AdWords, an advertiser simply clicks the "Sign Up Now" button and by scrolling or clicking on

21   the various linked pages, an advertiser, among other things: (i) chooses the geographic locations

22   it wants to target with its ad; (ii) creates its ad and selects (i.e., "purchases") keywords which will

23   trigger the ad to run when an Internet user inserts a search into the Google search engine which

24   includes those keywords; (iii) sets a maximum cost-per-click it wants to spend each time

25   someone clicks on the ad; and (iv) sets a daily budget, which Google defines in the AdWords

26   glossary as the amount the advertiser is willing to spend on a specific ad campaign each day.

27   The AdWords account is activated once the advertiser provides a valid credit card, and the ad

28   begins to run almost immediately. Google then charges an advertiser's credit card on a daily

Class Action Complaint

1    basis for the cost of the ads.

2        4.      Google's AdWords gives advertisers hands-on control over elements of their ad

3    campaigns.  Under AdWords, an advertiser can target its advertising campaign and limit the

4    appearance of the ad so that the ad only appears in response to searches conducted from specific

5    locales, by city, country, or regional area, or at particular times or upon other specified search

6    criteria.  When a Google user clicks on an ad, the advertiser is charged.

7        5.      A key feature of AdWords is that the advertiser sets a "daily budget."  Through

8    AdWords, Google allows an advertiser to manage advertising expenditures by setting a

9    maximum daily budget which limits the amount of money that will be charged to the advertiser

10   per day by Google.  In addition, an advertiser can change its daily budget as often as the

11   advertiser likes, according to Google's sign-up instructions for AdWords (although the

12   Frequently Asked Questions section of AdWords states that an advertiser may change a daily

13   budget for an ad campaign up to ten times per day).  An advertiser is also allowed to "pause" an

14   ad campaign at any time without limit.

15       6.      Despite the fact that Plaintiffs' advertising campaigns were limited by their daily

16   budgets, Google has billed and continues to bill Plaintiffs and all other members of the Class in

17   excess of the daily budgets.

18       7.      Google engaged in wrongful conduct in connection with AdWords by (a) billing

19   for and allowing charges to exceed set daily advertising budgets, and (b) disputing complaints

20   from advertisers regarding this practice and failing to reimburse for the unlawful charges.

21       8.      As result of Google's misconduct, Plaintiffs and the Class have suffered and will

22   continue to suffer irreparable injury in that they have been and are continuing to be charged fees

23   in excess of their daily budgets.

24       9.      Plaintiffs bring this action to enjoin Google from engaging in wrongful conduct by

25   Google's practice of regularly exceeding daily budget limits set by advertisers using Google's

26   AdWords program and to recover damages incurred as a result of defendant's conduct.

27

28

---

3

**Class Action Complaint**

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action.  The matter in controversy exceeds the jurisdictional amount of the Court.

11.     The claims asserted will be governed by the laws of California.  California has a distinct nexus with the alleged harm and the defendant.  It is possible that the number of citizens of California is substantially larger than the number of citizens from any other State.

12.     Defendant Google, a citizen of California, is the sole defendant from whom relief is sought by members of the Class, and whose alleged conduct forms the basis for the claims asserted by the Class.

13.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims herein occurred in this county, and Google has at all relevant times been doing business in this county and throughout California and maintains its principal executive offices in Santa Clara County.

14.     The AdWords program terms state that the AdWords agreement is governed by California law and any claims thereunder are to be adjudicated in Santa Clara County, California.

## THE PARTIES

15.     Plaintiff CLRB Hanson Industries, LLC dba Industrial Printing ("Industrial Printing") is a limited liability corporation formed in the state of Minnesota.

16.     Plaintiff Howard Stern is a citizen of the state of New Jersey.

17.     Defendant Google is a Delaware corporation, with its principal place of business located within Santa Clara County at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google purports to be a global technology leader focused on improving the ways people connect with information.  According to the Company's Form S-1 filed with the Securities and Exchange Commission ("SEC") on April 29, 2004 in conjunction with its initial public offering, the Company's:

> [I]nnovations in web search and advertising have made our web site a top Internet destination and our brand one of the most recognized in the world. We maintain the world's largest online index of web sites and other content, and we make this information freely available to anyone with an Internet connection. Our

automated search technology helps people obtain nearly instant access to relevant information from our vast online index. We generate revenue by delivering relevant, cost-effective online advertising. Businesses use our AdWords program to promote their products and services with targeted advertising.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs bring this action as a class action pursuant to Cal. Civ. Proc. Code §382 on behalf of themselves and a nationwide Class of all persons in the United States who were or are being charged more than their set daily budgets for advertising clicks calculated daily. The Class is composed of numerous residents of California, as well as persons dispersed throughout the United States. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

19. Excluded from the Class is Google, any entity in which Google has a controlling interest, any employees, officers, directors of Google, and any legal representatives, heirs, successors, and assignees of Google.

20. Members of the Class are so numerous that joinder is impracticable. Plaintiffs believe that thousands of people have been damaged by Google's conduct. The names and addresses of the members of the Class are identifiable through documents maintained by Google and the members of the Class may be notified of the pendency of this action by published, mailed, and/or electronic notice.

21. There is a well-defined community of interest in the questions of law and fact involved in this case. The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include, among other things:

    a.    Whether Google overcharged for advertising pursuant to its AdWords program;

    b.    Whether Google knowingly and intentionally overcharged for advertising pursuant to its AdWords program;

    c.    Whether Google exceeded set daily budgets for advertising clicks;

    d.    Whether Google knowingly and intentionally exceeded set daily budgets for advertising clicks;

5

e.    The extent of damage sustained by the Class and the appropriate measure of damages;

f.    Whether the Class is entitled to an injunction requiring Google to cease and desist from collecting illegal and/or illegitimate advertising revenue; and

g.    Whether the Class is entitled to an injunction requiring Google to cease and desist from exceeding set daily budgets for advertising clicks.

22.    Plaintiffs' claims are typical of the claims of each member of the Class, in that Plaintiffs, like every member of the Class, were and are being charged by Google for advertising under Google's AdWords program in excess of their daily budgets and have suffered and are continuing to suffer harm as a result. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

23.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they intend to prosecute this action vigorously. Plaintiffs have no interests which conflict with those of the Class. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

24.    Google has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the members of the Class. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

25.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

26.    As a provider of Internet space for advertisements, Google offers the AdWords program to advertisers whose ads will then appear alongside or above the results on Google.com search results pages. Additionally, ads could appear on the search and content sites and products in the Google Network. Advertisers then pay Google for each click on their advertisements pursuant to the terms of the AdWords program. With each click of a sponsored text link, Google

1  collects fees from advertisers, and then often shares that revenue with publishing partners that

2  display those ads.

3      27.    Unlike advertising in traditional media such as billboards and print publications,

4  cost-per-click Internet ads displayed with specific keyword searches have been promoted as a

5  definitive way for companies to gauge their exposure to potential customers.  As a result, U.S.

6  sales from advertiser-paid search results are expected to grow 25 percent this year to $3.2 billion,

7  up from $2.5 billion in 2003, according to research firm eMarketer.  From 2002 to 2003, the

8  market rose by 175 percent.

9      28.    Google's revenue is largely dependent on charges it bills through its AdWords

10  program and the revenue that Google receives from its AdWords program is critical to the

11  viability of Google.

12      29.    According to a December 2, 2004 article on the CNNMoney website:

13          Paid-search advertising generates about 98 percent of Google's
            revenues.  Red-hot demand for cost-per-click advertising doubled
14          Google revenues in the first three quarters of [2004] and paved the
            way for the company's blockbuster IPO in August.
15

16      30.    Indeed Google's latest Form 10-K for the year ended December 31, 2004, filed

17  with the SEC on March 30, 2005 (2004 Form 10-K), stated:

18          Growth in our revenues from 2003 to 2004 and from 2002 to 2003,
            resulted primarily from growth in revenues from ads on our Google
19          Network members' web sites and growth in revenues from ads on
            our web sites. The advertising revenue growth resulted primarily
20          from increases in the total number of paid clicks and ads displayed
            through our programs, rather than from changes in the average fees
21          realized. The increase in the number of paid clicks was due to an
            increase in the number of Google Network members, an increase in
22          aggregate traffic both on our web sites and those of our Google
            Network members and improvements in our ability to monetize
23          increased traffic on our web sites.

24      31.    In order to advertise on Google, advertisers enter into a form agreement over the

25  Internet that includes Google's Standard Terms and Conditions ("Terms") for participation in

26  Google's AdWords program.  The program is further explained in the "Frequently Asked

27  Questions" ("FAQs")  section of Google AdWords site.  Together, the more than 100 page Terms

28  and FAQs are collectively referred to by Google as the "Agreement," a copy of which is attached

7

**Class Action Complaint**

1    as Exhibit A.

2        32.      The process of signing up for the AdWords program is a straightforward 5-step

3 on-line process through the "Advertising Programs" hyperlink on the Google.com Internet search

4 engine site. Clicking on the "Advertising Programs" hyperlink brings up the Google page with

5 the hyperlink for "Google AdWords," which in turn results in the AdWords "sign up" or login

6 page. Before signing up with the program, the advertiser is able to click on a link entitled

7 "Program Details and FAQ" which exposes advertisers to a maze of a more than 100 page map

8 of information concerning the AdWords program.

9        33.      The initial step of the sign-up process requires the advertiser to choose the

10 languages, locations and countries he or she wants to target. Next, the advertiser creates the ad.

11 The advertiser then sets a maximum cost-per-click it wants to spend each time someone clicks on

12 the ad and specifies a daily budget. The advertiser then creates an AdWords account by

13 providing an email address and choosing a password. When the advertiser is ready to activate

14 the ads, he or she logs in to the new account and submits their credit card billing information.

15 The ads will begin to run soon after valid billing information is submitted.

16        34.      Advertisers set the daily budgets for their advertising campaigns and control the

17 timing for delivery of their ads under AdWords.

18        35.      Under AdWords, the advertiser is promised that it may set a daily budget as a

19 method of cost control.

20        36.      The Company touts in its 2004 Form 10-K (as well as in its quarterly Form 10-Qs

21 filed with the Securities and Exchange Commission) AdWords as an effective way "to deliver

22 relevant ads targeted to search results or web content" and to "provide[ ] advertisers with a

23 cost-effective way to deliver ads to customers across Google sites and through the Google

24 Network."

25        37.      The Company also emphasizes in its 2004 Form 10-K, that "AdWords gives

26 advertisers hands-on control over most elements of their ad campaigns. Advertisers can specify

27 the relevant search or content topics for each of their ads. Advertisers can also manage

28 expenditures by setting a maximum daily budget and determining how much they are willing to

1    pay whenever a user clicks on an ad."

2       38.     On the homepage for Google AdWords, under the heading "**AdWords**

3   **Advantages**,"Google states "we pledge to help you meet your customer acquisition needs by

4   enabling you to:

5            •    Fully control your ad budget.

6       39.     Also on the homepage for Google AdWords, under the heading "**control**," Google

7   states:

8           With all the great features listed below a Google AdWords account
            is fully customized for any advertiser.

9

10                  *      *      *

            •     Daily budget you set, starting from 5 cents USD.

11

12           And with **no monthly minimum spending limit** or time
          comment . . . (emphasis added)

13       40.     The AdWords Agreement contains several additional references to the advertisers'

14   ability to control the costs of their advertising, and assures advertisers that they will not be billed

15   more than they are "willing to pay":

16

17          **How much does AdWords cost?**
         In the Google AdWords program, the cost of your campaigns really

18          depends on you -- how much you are willing to pay and how well
         you know your audience. It all boils down to knowing your own

19          goals and letting us know what they are.

20          There is a nominal, one-time activation fee for Google AdWords.
         After that, you pay only for clicks on your AdWords ads, and you

21          can control that by telling us how much you are willing to pay per
         click and per day.

22                  *      *      *

23          **How do I control the cost of my ads?**

24          In the Google AdWords program, the cost of your campaigns really
         depends on you – how much your are willing to pay and how well

25          you know your audience. It all boils down to knowing your own
         goals and letting us know what they are.

26

27

28

**Class Action Complaint**

- **Set your own limits:** There is a nominal activation fee for Google AdWords. After that, you tell us <u>how much you are willing to pay</u> per click and per day. (Emphasis added.)

41.    In the AdWords Agreement, Google also makes the following specific statements concerning a daily budget:

<u>How do I create an AdWords account?</u>
There are five easy steps involved in creating and activating a Google AdWords account.

. . . .

**Step 3: Specify your daily budget.**
Your maximum daily budget helps determine your ad exposure (the number of times Google shows your ad in a day). There is no minimum daily budget.

42.    The AdWords Agreement also states: "A recommended daily budget will appear highlighted in the daily budget box on the next page. This is the amount necessary for your ad to appear every time on your keyboard. However, you can increase or lower this amount by typing in your desired daily budget."

43.    The AdWords Agreement further assures advertisers that they will not go over budget:

<u>How does Google keep my campaign below my daily budget?</u>

Google shows your ads evenly over time so that you reach your daily budget by the end of each day. This keeps your ad from accumulating clicks early on and then disappearing for the remainder of the day.

Once you've selected your keywords, you'll see a recommended daily budget. If you set your daily budget to this value, you will maximize your ad's visibility. This maximizes the number of clicks you receive. If your daily budget is lower than the recommended amount, **Google will deliver your ads evenly throughout the day to keep your clicks at or below your daily budget.** [Emphasis added.]

*         *         *

You can pause your ad campaign at any time. You won't accrue charges while your ads are paused, and they'll remain paused until you resume them.

44.    Google also states:

In general, we try to keep your daily cost fluctuation to no more than 20% above your daily budget, and we make sure that within the 30/31 day billing period (a month), you are never charged more than the number of days in that billing period times your daily budget. This ensures that over time, you maximize your advertising budget.

45.    Although the Agreement plainly and repeatedly states that advertisers have a "daily budget," to control costs and set limits, Google AdWords misleadingly commits advertisers to a monthly budget, that is, the daily budget times 30 or 31.

46.    Google thus converts the "daily" budget created by the advertiser into a monthly budget, even though Google bills clients on a daily basis.

47.    Despite Google's strict representations concerning establishing a set daily budget to control costs, Google intentionally allows the advertisers accounts to routinely go over budget. Google misleadingly states that "charges accrued over 20% of your set daily budget will be credited to your account at the end of the month." Thus, rather than adhering to the daily budget agreed to by the advertisers, Google Google routinely allows advertisers to run in excess of the daily budget.

48.    Since the AdWords program allows advertisers to pause their ads, change their daily budget up to ten times a day and discontinue the ad at any time, Google's monthly calculation belies the entire billing system represented by Google to the advertisers.

49.    In a simple example, if an advertiser has a $100 per day daily budget, Google may run the advertiser's ad so that the daily cost goes up to 20% over the advertiser's set daily budget on any given day. If this advertiser only wants to advertise on Mondays – 4 out of 30 days, at $100 per day, and the ad goes 20% over budget on all four days, or $120 per day, the total will be $480. Thus, the advertiser has exceeded its "daily budget" by $80, but Google deems it to be within budget because the total of $480 is less than $3000 (or $100 per day times 30 days).

50.    Plaintiff CLRB Hanson Industries, for example, ran an advertising campaign during the month of March 2005 for 17 days for one client with a daily budget of $50. On each day of the campaign, Google ran from 121% to 162% of the $50 daily budget, for an average of 141% over the applicable daily budget. Plaintiff was billed $1,197.79 instead of the $850 it

1  contracted for and was "willing to pay."

2     51.    In light of the fact that Google has a substantial financial interest in increasing the

3  market and cost of its AdWords advertising, Google, contrary to its representations about daily

4  budgets, routinely exceeds the daily advertising budgets set by their customers, including

5  Plaintiffs.

6     52.    Despite the fact that Plaintiffs preset their daily advertising budgets, Google

7  routinely exceeds Plaintiffs' set daily budgets, violating the agreed-upon advertising costs,

8  including exceeding even the 20% cushion which Google allows itself to exceed the daily

9  budgets.

10  **Defendant's Wrongful Conduct With Respect to Plaintiff Industrial Printing**

11     53.    Plaintiff Industrial Printing entered into a contract with Google to advertise using

12  the AdWords program, which contract specified a daily budget.

13     54.    Despite this daily budget limit, Google routinely exceeds the daily budget set by

14  Plaintiff Industrial Printing, did not credit Industrial Printing for all such charges over its daily

15  budget, and continues to charge it for advertising in excess of its daily budget.

16  **Defendant's Wrongful Conduct With Respect to Plaintiff Stern**

17     55.    Plaintiff Stern entered into a contract with Google to advertise using the AdWords

18  program, which contract specified a daily budget.

19     56.    Despite this daily budget limit, Google routinely exceeds the daily budget set by

20  Plaintiff Stern.  Google did not credit Stern for daily charges over his daily budget and continues

21  to charge him for advertising in excess of his daily budget.

22                              **FIRST CAUSE OF ACTION**

23                                 **[Unfair Competition]**

24           **[Violation of California Bus. & Prof. Code §§ 17200 *et seq.*]**

25     57.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

26  herein.

27     58.    Plaintiffs, who have suffered injury in fact and have lost money or property as a

28  result of such unfair competition, bring this cause of action on behalf of themselves and on

                                        12
                              **Class Action Complaint**

1  behalf of all other similarly injured Class Members, pursuant to Business & Professions Code

2  §§ 17200 *et seq.*

3      59.    Google has engaged in unfair, unlawful or fraudulent business acts and practices

4  as set forth above.  Google maintains its headquarters and principal places of operations in

5  California.  The unfair, unlawful or fraudulent business acts and practices of defendant set forth

6  above emanate from Google's California headquarters.  Google's wrongful conduct originated

7  from and thus occurred inside California.

8      60.    Beginning on a date unknown to Plaintiffs and continuing to the present, Google

9  has engaged in, is engaged in, and proposes to engage in unfair competition, as that term is

10  defined in Business and Professions Code § 17200.

11      61.    As used in this Complaint and in § 17200, "unfair competition" means (1) an

12  unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading

13  advertising; and/or (3) an act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of

14  Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to

15  Business and Professions Code §§ 17200 and 17203.

16      62.    In engaging in conduct which constitutes unfair competition, Google has engaged

17  in conduct which injured members of the general public, including Plaintiffs.  It is impossible for

18  the Plaintiffs to determine the exact extent of the injury without a detailed review of Google's

19  books and records.

20      63.    Specifically, Google has engaged in, is engaged in, and proposes to engage in

21  unlawful, unfair, or fraudulent business acts and practices, each of which independently

22  constitute Unfair Competition:

23          a.    Google's knowing sale of a service when contract terms were knowingly

24                 dishonored, and without informing purchasers of such fact, is unfair
because the harm to Plaintiffs and the General Public from this practice
outweighs any benefits, and threatens an incipient violation of California's

25                 consumer protection laws;

26          b.    The conduct described above is unlawful pursuant to California Civil

27                 Code §§ 1770(a)(5), (7), (9), (14) and (16) by way of Google's:

                  i.    Representing that services have characteristics, uses, or benefits

28                        which they do not have (Civil Code § 1770(a)(5));

**Class Action Complaint**

ii.  Representing that services are of a particular quality if they are of another (Civil Code § 1770(a)(7));

iii.  Advertising services with intent not to sell them as advertised (Civil Code § 1770(a)(9));

iv.  Representing that a transaction confers or involves rights or remedies which it does not have or involve (Civil Code § 1770(a)(14)); and

v.  Representing that services have been supplied in accordance with a previous representation when they have not (Civil Code § 1770(a)(16). For those reasons, it is also an unlawful business act and/or practice pursuant to Business and Professions Code §§ 17200 *et seq.*; and

c.  Members of the Class were and are likely to be misled by Google's conduct, including Google's representations regarding the offered services, when the true facts which Google has concealed show otherwise. For that reason, Google's conduct constitutes a fraudulent business act and/or practice pursuant to Business and Professions Code §§ 17200, *et seq.*, and §§ 17500, *et seq.*

64.  Pursuant to Business and Professions Code § 17203, the Court may impose injunctive relief against any conduct found to constitute unfair competition pursuant to Business and Professions Code § 17200. The court may also make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

65.  By engaging in the above-described acts and practices, Google has committed one or more acts of unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq.*

66.  Plaintiffs, who have suffered injury in fact and have lost money or property as a result of such unfair competition, on behalf of themselves and the Class seek relief allowed under §§ 17200, *et seq.*

## SECOND CAUSE OF ACTION

### [Breach of Contract]

67.  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

14

1   herein.

2       68.    Plaintiffs and Google entered into the Agreement that included Google's Standard

3   Terms and Conditions for participation in Google's AdWords program.

4       69.    One of the principal benefits for which Plaintiffs and the Class contracted was the

5   ability to effectively and efficiently advertise via set daily budgets.

6       70.    In entering into the Agreement with Plaintiffs and the Class, Google promised that

7   it would not exceed Plaintiffs' and the Class members' set daily budgets.

8       71.    Under the Agreement, Plaintiffs and the members of the Class set their daily

9   budgets, the amounts that they were willing to pay per click and per day.

10      72.    Under the Agreement, Google was prohibited from exceeding Plaintiffs' and the

11  Class members' set daily budgets, and explicitly represented that Google would deliver

12  Plaintiffs' and the Class members' ads at or below their daily budgets.

13      73.    Plaintiffs and the Class performed all conditions, covenants and promises required

14  to be performed by Plaintiffs and the Class in accordance with the terms of the Agreement,

15  except those that Plaintiffs and the class were prevented or legally excused from performing and

16  those as to which their performance was waived.

17      74.    Google breached the Agreement by charging Plaintiffs and the class advertising

18  fees in excess of their daily budgets.

19      75.    Google's breach of the Agreement and continued breach of the Agreement has

20  benefitted and continues to benefit Google and irreparably injured and continues to irreparably

21  injure Plaintiffs and the class.

22              **THIRD CAUSE OF ACTION**

23              **[Negligent Misrepresentation]**

24      76.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

25  herein.

26      77.    Google had an absolute duty to disclose the true facts regarding its AdWords

27  program and resulting charges from such program.

28      78.    Google made representations regarding its advertising service and charges for

1  such service with no reasonable ground for believing them to be true, and did so without accurate

2  or sufficient information concerning their representations.  Google was further aware that,

3  without such information, it could not accurately make such representations.

4      79.    Google made such representations to Plaintiffs and the class, who in turn

5  reasonably relied on those representations regarding Google's advertising service and resulting

6  charges.

7      80.    Despite making such representations about material facts, Google concealed from

8  Plaintiffs and the class Google's lack of information to support such representations, and

9  intended to induce Plaintiffs' and the class' reliance on such representations in order to cause

10  them to purchase Google's advertising through its AdWords program.

11      81.    Google falsely represented to Plaintiffs and the class the costs of its advertising

12  service when in fact Plaintiffs and the class would, with Google's knowledge, be overcharged for

13  advertising.

14      82.    At all times relevant hereto, Plaintiffs and the Class were ignorant of the falsity of

15  Google's representations, reasonably believed them to be true, relied on said representations, and

16  signed up to advertise pursuant to Google's AdWords program as a result.  Had Plaintiffs and the

17  Class known the actual facts, they would not have paid the amounts they did for Google's

18  service.  Plaintiffs' and the members of the Class' reliance upon Google's representations was

19  justified because Google appeared to be in a position to know the true facts.

20      83.    As a direct, proximate, and foreseeable result of Google's acts, each Plaintiff and

21  member of the Class has been and will continue to be injured through the negligent actions of

22  Google, thus warranting injunctive relief.

### FOURTH CAUSE OF ACTION

### [Unjust Enrichment]

25      84.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

26  herein.

27      85.    To the detriment of Plaintiffs and each member of the Class, Google has been, and

28  continues to be, unjustly enriched through unlawful overcharging and collection of advertising

1    fees.

2        86.    Google has unjustly benefitted through the unlawful overcharging and collection,

3    and continues to benefit at the detriment and expense of Plaintiffs and each member of the Class.

4        87.    Google has voluntarily accepted and retained these profits and benefits, derived

5    from Plaintiffs and Class Members, with full knowledge and awareness that, as a result of

6    Google's wrongful conduct, Plaintiffs and Class Members were routinely and systematically

7    overcharged and/or over-billed for advertising.

8        88.    By virtue of the conduct alleged in this Complaint, Google has been unjustly

9    enriched at the expense of the Plaintiffs and Class Members, who are entitled in equity, and

10    hereby seek, the disgorgement and restitution of Google's profits, revenue, and benefits, to the

11    extent, and in the amount, deemed appropriate by the Court. Specifically, the additional sums of

12    money charged to Plaintiffs and all other similarly situated individuals for advertising which was

13    improper must be refunded. These amounts of money constitute money which, in equity and

14    good conscience, should be returned by Google to Plaintiffs and members of the Class pursuant

15    to the equitable doctrine of restitution/unjust enrichment.

16        89.    Accordingly, Plaintiffs and each member of the Class seek restitution of the full

17    value of all benefits and enrichment Google has obtained, and continues to obtain, at the expense

18    of Plaintiffs and each member of the Class.

19                                **FIFTH CAUSE OF ACTION**

20                            **[For Imposition of a Constructive Trust]**

21        90.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

22    herein.

23        91.    Google unlawfully charged Plaintiffs and each member of the Class for

24    advertising and thereby unlawfully collected money belonging to Plaintiffs and each member of

25    the Class. Google gained access to such money through the wrongful acts described herein and

26    had no lawful right thereto.

27        92.    Accordingly, Google is an involuntary trustee of such money, pursuant to

28    California Civil Code § 2224, and holds such money, and the accumulation thereon, for the

---

                                            17
                                **Class Action Complaint**

1    benefit of Plaintiffs and each member of the Class.

2        93.    Google wrongfully acquired such money without the knowledge and consent of

3    Plaintiffs and each member of the Class, thereby warranting the imposition of an involuntary

4    constructive trust.

5        94.    Plaintiffs and each member of the Class pray for specific recovery of such money,

6    and all accumulation thereon, by imposition of a constructive trust.

7                              **SIXTH CAUSE OF ACTION**

8            **[Breach of Implied Covenant of Good Faith and Fair Dealing]**

9        95.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

10   herein.

11       96.    The contracts between Plaintiffs and Class Members and Google include a duty of

12   good faith and fair dealing by Google to Plaintiffs and Class Members.  As an implied covenant

13   in the contracts, Google had a duty not to commit acts which would improperly deprive Plaintiffs

14   and Class Members of the benefit of those contracts and has a duty to do everything that the

15   contracts presupposes each of the parties would do to accomplish the purpose or purposes of the

16   contracts.

17       97.    One of the principal benefits for which Plaintiffs contracted was the ability to

18   effectively and efficiently advertise via set daily budgets.

19       98.    The implied covenant obligated Google to refrain from exceeding Plaintiffs' daily

20   budgets.  In failing to do so, Google breached the implied covenant of good faith and fair dealing

21       99.    As a result of Google's wrongful conduct, Plaintiffs and Class Members have

22   suffered and continue to suffer economic losses and other general and specific damages, all in an

23   amount to be determined according to proof at time of trial.

24                            **SEVENTH CAUSE OF ACTION**

25              **[Fraud – Promise without Intent to Perform]**

26       100.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

27   herein.

28       101.   In entering into the Agreement with Plaintiffs, Google promised that it would not

---

18

Class Action Complaint

1    exceed Plaintiffs' set daily budgets.

2        102.    Google made these promises without any ability whatsoever of fully performing

3    them. Indeed, Google intended to violate these promises from the start of their contractual

4    relationship with Plaintiffs.

5        103.    Google's false promises were made with scienter, as Google made them to induce

6    Plaintiffs to enter into the Agreement and to enable Google's fraudulent scheme.

7        104.    Plaintiffs relied on Google's false promises, as they never would have entered into

8    an agreement with Google had they known of Google's true intentions.

9        105.    As a direct result of Google's false and fraudulent promises, Google has

10    benefitted, and Plaintiffs have been damaged in an amount to be proven at trial.

11              **EIGHTH CAUSE OF ACTION**

12              **[Injunctive and/or Declaratory Relief]**

13        106.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

14    herein.

15        107.    The members of the Class have no adequate remedy at law, rendering injunctive

16    and other equitable relief appropriate in that damages cannot adequately compensate Plaintiffs

17    and the members of the Class for the injuries suffered and threatened.

18        108.    Plaintiffs and each member of the Class are persons who are interested under a

19    contract and who desire a declaration of their rights or duties with respect to one another. An

20    actual controversy relating to the legal rights and duties of the respective parties has arisen

21    between Plaintiffs and each member of the Class and Google.

22        109.    Accordingly, Plaintiffs and the Class request classwide equitable relief of the

23    Court's determination of the rights of Plaintiffs and the Class.

24              **PRAYER FOR RELIEF**

25        WHEREFORE, Plaintiffs and the members of the Class pray for relief as follows:

26        1.    For an order certifying the proposed Class herein and appointing Plaintiffs and

27    their undersigned counsel of record to represent the Class;

28        2.    For restitution of the full value of all benefits and enrichment Google has

1    obtained, and continues to obtain, at the expense of Plaintiffs and each member of the Class;

2        3.        For the entry of preliminary and permanent injunctive relief against Google,

3    directing Google not to charge the members of the Class more than their daily budgets;

4        4.        For the return of all money unlawfully charged Plaintiffs and the Class Members

5    by Google in the form of advertising fees, and all accumulation thereon, by imposition of a

6    constructive trust;

7        5.        For the by imposition of a constructive trust on all fees improperly charged

8    Plaintiffs and the members of the Class by Google's failure to follow the daily budgets;

9        6.        For general damages in excess of the jurisdictional minimum of this Court;

10        7.        Compensatory damages in excess of the jurisdictional minimum of the Court,

11    according to proof;

12        8.        Consequential damages in excess of the jurisdictional minimum of the Court,

13    according to proof;

14        9.        Punitive and exemplary damages;

15        10.        Attorneys' fees, expenses, and costs of this action; and

16        11.        Such further relief as this Court deems necessary, just, and proper.

17                    **JURY TRIAL DEMAND**

18        Plaintiffs demand trial by jury on all issues so triable.

19

20    Dated: August 3, 2005                    ALEXANDER, HAWES & AUDET, LLP

21

22                                                        Ryan M. Hagan

23

24                                        William M. Audet
                                        Jason Baker
25                                        ALEXANDER, HAWES & AUDET, LLP
                                        152 North Third Street, Suite 600
26                                        San Jose, CA 95112
                                        Telephone: 408.289.1776
27                                        Facsimile: 408.287.1776

28

---

20

**Class Action Complaint**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lester L. Levy
Emily Madoff
Patricia I. Avery
Renee L. Karalian
WOLF POPPER LLP
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

*Attorneys for Plaintiffs and the Proposed Class*

Class Action Complaint

28A