DAVID T. BIDERMAN, Bar No. 101577
JUDITH B. GITTERMAN, Bar No. 115661
M. CHRISTOPHER JHANG, Bar No. 211463
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050
Email: DBiderman@perkinscoie.com
Email: JGitterman@perkinscoie.com
Email: CJhang@perkinscoie.com

Attorneys for Defendant Google Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>  v.<br><br>GOOGLE, INC.,<br><br>            Defendants. | CASE NO. C 05-03649 JW<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Fed. R. Civ. P. 56<br><br>Date:    November 6, 2006<br>Time:   9:00 a.m.<br>Ctrm:   8<br>Judge:  Hon. James W. Ware |

1

**TABLE OF CONTENTS**

2  **Page**

3

4  I. INTRODUCTION ..................................................................................................................1

5  II. RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS........................................4

6  III. ARGUMENT ..........................................................................................................................4

7      A. Standard for Summary Judgment Motion. ......................................................4

8      B. Plaintiffs Cannot Establish the Elements of a Claim for False Advertising under Bus. & Prof. Code § 17500...............................................5

9

10     C. Plaintiffs Cannot Establish the Elements of a Claim under Bus. & Prof. Code § 17200 for Unfair, Deceptive or Unlawful Trade Practices..................................................................................................................6

11

12         1. There Were No Unfair or Deceptive Practices in the Promotion or Implementation of the AdWords Program .....................6

13             a. Google Had a Contractual Right to Exceed the Number of Clicks Per Day by 20% of the Daily Budget and This Term Was Fully Disclosed to Plaintiffs. ........................................................................................6

14

15

16             b. The Agreement Provides that the Daily Budget is Calculated by Multiplying an Advertiser's Daily Budget by the Number of Days in the Month and There is No Exclusion for Paused Days.................................8

17

18         2. The Emails Referenced by Plaintiff Support Google's Position that the 17200 Claim Cannot be Maintained.........................10

19

20         3. Plaintiffs are Without Standing to Pursue a 17200 Action.................11

21         4. Plaintiffs Cannot Prove Reliance, an Essential Element of a 17200 Claim ..........................................................................................11

22     D. Plaintiffs are Unable to Prove They Have Suffered Any Damages.................12

23     E. Plaintiffs May Not Recover Under an Unjust Enrichment Theory Because There is a Binding Contract Between the Parties and Google Has Not Been Unjustly Enriched.........................................................13

24

25 IV. CONCLUSION ....................................................................................................................14

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) .................................................................................. 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................. 4

*Chaknova v. Wilbur-Ellis Co.*,
   69 Cal. App. 4th 962 (1999) ..................................................................................... 9

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
   249 F.3d 1132 (9th Cir. 2001) ................................................................................... 4

*Fontenot v. Upjohn Co.*,
   780 F.2d 1190 (5th Cir. 1986) ................................................................................... 4

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
   41 Cal. App. 4th 1410 (1996) ................................................................................. 13

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ................................................................................... 13

*Pfizer Inc. v. Super. Ct.*,
   141 Cal. App. 4th 290 (2006) ................................................................................... 6

*S. Cal. Gas Co. v. City of Santa Ana*,
   336 F.3d 885 (9th Cir. 2003) ..................................................................................... 4

*Sicor Ltd. v. Cetus Corp.*,
   51 F.3d 848 (9th Cir. 1994) ....................................................................................... 8

*Skrbina v. Fleming Cos.*,
   45 Cal. App. 4th 1353, 1367 (1996) ....................................................................... 11

*United States v. McKeon*,
   738 F.2d 26 (2d Cir. 1984) ........................................................................................ 8

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
   995 F. Supp. 1060 (D. Ariz. 1997) ............................................................................ 8

*Wal-Noon Corp. v. Hill*,
   45 Cal. App. 3d 605 (1975) ..................................................................................... 13

1 | **Codes**

2 | Cal. Bus. & Prof. Code § 17204 ....................................................................................... 3, 11

3 | Cal. Bus. & Prof. Code § 17200 ........................................................................................ *passim*

4 | Cal. Bus. & Prof. Code § 17500 ........................................................................................ *passim*

5 | Cal. Civ. Proc. Code § 1856 .............................................................................................. 9

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs CLRB Hanson Industries, LLC, d/b/a Industrial Printing ("Hanson"), and Howard Stern ("Stern") have moved for partial summary judgment on their claims in the Second Amended Complaint ("SAC") for false advertising and false and deceptive trade practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 and 17500, and unjust enrichment. The motion should be denied. Plaintiffs are unable to point to any falsehoods or deceptions on the part of Google Inc. ("Google"). They admit that they did not even read the statements they now claim are false and misleading prior to bringing this suit, so they could not possibly have relied upon them. The only falsehood here is plaintiffs' claim that they were overcharged beyond their advertising budgets. Referencing their invoices, Google has shown plaintiffs that they were billed in accordance with the express terms of their Agreements. Moreover, plaintiffs had complete control over their advertising budgets at all times. Instead of simply lowering their advertising budgets if they wanted to spend less on advertising, which they could have easily done by logging into their accounts, they chose to bring this baseless lawsuit. The undisputed facts establish that plaintiffs cannot prevail on any of these claims, and that summary judgment should be issued for defendant Google on each of these and all other claims in the Second Amended Complaint ("SAC").

Plaintiffs' claim for false advertising under section 17500 is not supported by any evidence. Plaintiffs are unable to identify any false advertising or deceptive inducements which caused them to enter the AdWords Agreement (the "Agreement") with Google.[1] Plaintiffs can point to no representations that could be remotely considered advertisements. Instead they reference a tutorial screenshot regarding the daily budget which plaintiffs admit they did not even see until their counsel showed it to them. And here, there is nothing false or misleading about the screenshot (advertisers are not charged more than their daily budget multiplied by the

---

[1] The AdWords program is described in detail in Google's Motion for Summary Judgment, filed for hearing concurrently with Plaintiffs' Motion for Partial Summary Judgment. To avoid unnecessary repetition, Google does not reiterate this background information here.

- 1 -

**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

number of days in a month), and plaintiffs neither relied on the screenshot nor were damaged by it. In light of Proposition 64's changes to the standing requirements for a false advertising claim--a party bringing such a claim must suffer injury and lose money or property--plaintiffs are without standing. In addition, because the Agreement is fully integrated, plaintiffs are unable to rely as a matter of law on alleged representations extrinsic to the Agreement.

Plaintiffs' claims that Google engaged in unfair or deceptive practices in the AdWords billing process and made misrepresentations in the AdWords Agreement are also without support. Plaintiffs contend that Google improperly charged advertisers more than their daily budgets on some days and that the terms of the Agreement mislead advertisers about how their charges accrue on a monthly basis. The two specific billing practices that plaintiffs claim are unfair were fully described to them when they entered the Agreement and thereafter in multiple additional communications. First, the Agreement expressly provides that "[o]n any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily budget calls for" and that an advertiser will "never be charged more than [his/her/its] average daily budget over the course of a month." Plaintiffs' personal interpretation of the Agreement that each day's charges had to be limited to the daily budget is contrary to the express terms of the integrated, written Agreement and it is the Agreement which prevails over plaintiffs' misconstruction of the terms. Second, paused days are not excluded from the monthly calculation of average daily budget. Plaintiffs cannot cite to a single provision in the Agreement that supports their contention that the days they paused their ad campaigns should not be considered in determining the monthly AdWords charges.

Plaintiffs complain that they were misled by the FAQs that state that they could control their costs by controlling their own budget. There is nothing misleading here. Plaintiffs were free to change their daily budgets at any time simply by logging into their accounts. They were not required to maintain any minimum daily budget. Plaintiffs had complete control over their spending levels at all times. The FAQ statements are true and plaintiffs have failed to proffer any evidence to the contrary. Plaintiffs admitted in both their depositions and their declarations

filed in support of their Motion that they did not even read the frequently asked questions ("FAQs") before entering the Agreement. Plaintiffs did not rely upon the FAQs when they chose to sign up for the AdWords program. Reliance is an essential element of a 17200 claim and plaintiffs cannot prove reliance on any alleged misrepresentations.

As is the case with the 17500 claim, plaintiffs are without standing to pursue a 17200 action. Proposition 64 amended section 17204 and a plaintiff bringing an action for unfair, deceptive or unlawful trade practices must have suffered injury in fact and lost property and money as a result of the allegedly unfair, deceptive or unlawful practice. Here, plaintiffs have suffered no damage whatsoever. The undisputed facts show that were billed in accordance with express contract terms they agreed to when they became AdWords advertisers, and which they repeatedly confirmed each time they were required to review and accept new program terms.

The UCL claims are also subject to dismissal because plaintiffs have an adequate remedy at law—the contract fully addresses billing and calculation of the daily budget—and plaintiffs have pled (but failed to move on) a breach of contract claim. Plaintiffs cannot use the UCL as an end-run around matters that are fully covered by the contract itself. Injunctive relief is only available under the UCL if there is no adequate remedy at law. Plaintiffs are evidently fully aware that the contract governs their claims and that there has been no breach by Google. They have not only failed to move for summary judgment on their breach of contract and breach of implied covenant claims, they have not even attempted to argue that the contract is not binding or has not been fully complied with by Google, as there is no basis for such an argument. Indeed, they concede that the fully disclosed terms of the Agreement include Google's right to allow clicks to accrue up to 120% of the daily budget on any given day as well as Google's right to calculate the daily budget based on a monthly average.

Plaintiffs also cannot prevail on a theory of unjust enrichment. First, there is no evidence Google was unjustly enriched. Second, there can be no recovery for unjust enrichment where there is a valid, enforceable contract. Plaintiffs have failed to provide any evidence whatsoever that the parties' Agreement is not enforceable. While plaintiffs have testified that they either did

- 3 -

not read or do not like certain terms of the agreement, neither of these reasons affords a basis for voiding the agreement which governs the parties' rights and obligations.

Plaintiffs have not sustained their burden of proof on damages. Each example of advertising charges in the Stern and Hanson declarations is entirely consistent with Google's rights under the Agreement. In no instance have plaintiffs demonstrated that they were charged more than 20% of their daily budget in a single day or more than their average daily budget over the course of a month.

## II.   RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

To avoid repetition, Google incorporates by reference herein its Statement of Undisputed Facts as set forth in its Motion for Summary Judgment. Google further incorporates in full all supporting evidence filed with that motion.[2]

## III.   ARGUMENT

### A.   Standard for Summary Judgment Motion.

A moving party is required to establish beyond controversy every element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Where, as in this case, a plaintiff is unable to establish essential elements of his claims, the motion should be denied.

In considering cross-motions for summary judgment, the court will consider evidence submitted in support of and in opposition to both motions before ruling on either motion. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Google has submitted uncontroverted evidence in support of its motion for summary judgment and in opposition to plaintiffs' motion, demonstrating that that plaintiffs cannot meet the elements of their 17200 and 17500 claims, unjust enrichment claim or contract claims.

---

[2] Declaration of Michael Schulman ("Schulman Decl.") dated September 29, 2006; Declaration of Leslie Altherr ("Altherr Decl.") dated September 29, 2006, and Declaration of M. Christopher Jhang ("Jhang Decl.") dated October 2, 2006, and all Exhibits thereto.

- 4 -
**OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

1  Accordingly, upon considering all the evidence on the record, the Court may both deny

2  Plaintiffs' Motion and grant Google's Motion for Summary Judgment.

3  **B.    Plaintiffs Cannot Establish the Elements of a Claim for False Advertising under Bus. & Prof. Code § 17500.**

4

5  To prevail on their false advertising claim, plaintiffs are required to prove that Google

6  either (1) publicly disseminated advertising concerning property or services which it knew or

7  with the exercise of reasonable care should have known to be untrue or misleading, or (2)

8  publicly disseminated advertising with the intent not to sell its services at the price stated or as

9  advertised.  Cal. Bus. & Prof. Code § 17500.

10  Plaintiffs have no evidence of any false or misleading advertising.  The statement they

11  reference repeatedly in their motion is neither false nor misleading.  Each plaintiff has attached

12  as Exhibit A to his declaration a document they claim is a screenshot from an AdWords tutorial

13  that states:  "Ad system ensures you never pay more than your daily budget multiplied by the

14  number of days in a month your campaign was active."  This statement is accurate.  The FAQs

15  also state that the average daily budget is calculated based on the number of days in the month,

16  and the FAQs are part of the Agreement.  *See* Jhang Decl. filed in Support of Google's Motion

17  for Summary Judgment, at Exhibit D (FAQs, p. 84 of 489).

18  In addition, neither Stern nor Hanson has standing for a false advertising claim based on

19  the screenshot.  Proposition 64 changed the standing requirements for section 17500 claims.  As

20  a result of the amendment to section 17535, an individual or claim may only be brought by a

21  person "who has suffered injury in fact and has lost money or property as a result of a violation

22  of this chapter."  Since Stern and Hanson have admitted that they never saw Exhibit A until their

23  attorneys showed it to them in the course of this litigation, they cannot have suffered injury or

24  lost money or property as a result of alleged untrue or misleading statements in the screenshot.

25  Jhang Decl., Exhibit A (Hanson Dep., 45:24 – 46:2), Exhibit B (Stern Dep., 92:11 – 94:7, 97:3 –

26  97:13).  Indeed, as discussed below, Stern and Hanson do not have evidence they have suffered

27  *any* damages whatsoever, as a result of Google's conduct.

28

- 5 -

**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

1    The 17500 claim also fails because, as a result of Proposition 64, private enforcement
2    under unfair competition and false advertising laws now requires that each plaintiff "actually
3    *relied* on the false or misleading misrepresentation or advertisement in entering into the
4    transaction in issue." *Pfizer Inc. v. Super. Ct.*, 141 Cal. App. 4th 290, 296 (2006). Certainly
5    plaintiffs cannot contend they relied upon something they never read. Under the undisputed
6    facts and as a matter of law, plaintiffs cannot recover on a false advertising claim.

**C.    Plaintiffs Cannot Establish the Elements of a Claim under Bus. & Prof. Code § 17200 for Unfair, Deceptive or Unlawful Trade Practices.**

Just as plaintiffs cannot succeed on their false advertising claim brought under Cal. Bus. & Prof. Code § 17500, they are unable to meet the requirements for a claim of unfair, deceptive or unlawful trade practices under Cal. Bus. & Prof. Code § 17200.

**1.    There Were No Unfair or Deceptive Practices in the Promotion or Implementation of the AdWords Program**

**a.    Google Had a Contractual Right to Exceed the Number of Clicks Per Day by 20% of the Daily Budget and This Term Was Fully Disclosed to Plaintiffs.**

The Agreement specifically provides that daily budgets can be exceeded on any given day and that the Google system may overdeliver ads up to 20% in excess of a daily budget, so long as the average daily budget is not exceeded over the course of a month. Jhang Decl., Exhibit D (FAQs, p. 125 of 489 ("User traffic fluctuates from day to day. To make up for these fluctuations and to ensure that your campaigns reach their potential, <u>Google may allow up to 20% more clicks. . . in one day than your daily budget specifies</u>. . . . However, our system makes sure that in a given billing period, <u>you're never charged more than the number of days in that month multiplied by your daily budget</u>. . . . If Google overdelivers your ads, resulting in more clicks than your monthly budget allows, you'll receive a credit to your account.") (emphasis added)), Exhibit D (FAQs, p. 84 of 489 ("On any single day, <u>the AdWords system may deliver</u>

- 6 -
**OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

1   up to 20% more ads than your daily budget calls for. . . .  However, you'll never be charged more
2   than your average daily budget over the course of a month.") (emphasis added)).[3]
3         Plaintiffs acknowledged in their depositions that the above-referenced terms and FAQs
4   establishing Google's right to bill up to 20% more than the daily budget in any given day are part
5   of their Agreement with Google.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16
6   – 170:15), Exhibit B (Stern Dep., 65:8 – 66:14, 81:21 – 82:17).  They acknowledged that not
7   only was this expressly stated in the Agreement, but that Google representatives also confirmed
8   that these terms are part of the contract.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15,
9   169:16 – 170:15, 177:19 – 178:9), Exhibit B (Stern Dep., 99:17 – 100:15).  Brett Hanson,
10  plaintiff CLRB Hanson's representative, admitted that as early as March 2005 he was informed
11  by a Google representative that Google tries "to keep your daily cost fluctuation to no more than
12  20% above your daily budget" and that it "make[s] sure that within the 30-day billing period you
13  are never charged more than the number of days in that billing period times your daily budget."
14  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9).
15  Likewise, plaintiff Stern admitted that as early as October of 2003, he was informed by email
16  that "it is possible that [he] may accrue charges above or below [his] set [daily budget] limit" and
17  that "[Google's] system makes sure that in a given billing period, [he] [is] never charged more
18  than the number of days in that month multiplied by [his] daily budget."  Jhang Decl., Exhibit B
19  (Stern Dep., 99:17 – 100:15).  In fact, plaintiffs acknowledged that they understood that their
20  Agreement with Google permits Google to charge up to 20% more clicks on a given day than his
21  daily budget specifies.  Jhang Decl., Exhibit A (Hanson Dep., 135:20 – 137:15, 169:16 –
22  170:15), Exhibit B (Stern Dep., 65:8 – 66:14, 81:21 – 82:17).

---

[3] The AdWords FAQs available to Plaintiffs when they signed up for AdWords also provided a similar disclosure to advertisers.  Altherr Decl., Exhibit 3 (July 2002 FAQs, p. GOOG-HN 20904 ("Traffic is not constant from day to day . . .  To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies.  If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for that month)), Exhibit 4 (October 2003 FAQs, p. GOOG-HN 20888 (same)).  Plaintiffs are therefore incorrect in their representation at "fact 15" of their Motion (p. 7:19), that the monthly budget is not in the Stern or Hanson FAQs.

- 7 -
**OPPOSITION TO PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

Plaintiffs even admitted in their original complaint that they were informed by Google that "[i]n general, we try to keep your daily cost fluctuation to no more than 20% above your daily budget, and we make sure that within the 30/31 day billing period (a month), you are never charged more than the number of days in that billing period times your daily budget. This ensures that over time, you maximize your advertising budget." Jhang Decl., Exhibit E (plaintiffs' original Complaint filed August 3, 2005, ¶ 44). Plaintiffs deleted this reference from their first and second amended complaints. However, their prior statement is a judicial admission. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1994).[4]

Indeed, even the exhibit plaintiffs attached to their SAC demonstrates that Google was entitled to exceed advertisers' daily budgets. SAC, Exhibit A, p.049 ("Though it may sometimes appear that your daily budget is being exceeded, that usually isn't the case. Here's why: Our system works to deliver enough ads to fully satisfy your daily budget over the course of each month. (That is, your daily budget times the total number of days in the month.) Because page views fluctuate from day to day, we may overdeliver ads on a given day to make up for potential shortfalls later in the month. For instance, if you budget US$100 per day in a 30-day month, you may receive more than US$100 in clicks on a given day, but the maximum you would pay is US$3,000 for that month.").

        **b.**        **The Agreement Provides that the Daily Budget is Calculated by Multiplying an Advertiser's Daily Budget by the Number of Days in the Month and There is No Exclusion for Paused Days.**

Plaintiffs' contention that paused days should be excluded from the calculation of advertisers' monthly budgets (determined by multiplying an advertiser's daily budget by the number of days in the month) is contrary to the terms of the Agreement. *See* SAC, ¶¶ 45, 47.

---

[4] Plaintiffs have not asserted that their prior allegations were false or a justifiable mistake, or provided any other explanation why they should not be bound by them. *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065-66 & n.6 (D. Ariz. 1997); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party. . . cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.").

- 8 -

OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

1   The Agreement clearly provides that monthly charges are based on the <u>number of days in the</u>
2   <u>month</u>. Jhang Decl., Exhibit D (FAQs, p. 84 of 489, p. 125 of 489). Nowhere in the Agreement
3   is there an exception for calculating the monthly budgets of advertisers who have paused their
4   advertising campaigns. No charges accrue during a paused period because no ads are displayed
5   and therefore no clicks or impressions accrue. *See id*.; *see also id*., at Exhibit D (FAQs, p. 261 of
6   489). However, this does not affect advertisers' monthly budgets, which is calculated based on
7   the number of days in the month times advertisers' daily budget.

8   Plaintiffs' attempt to enter as evidence the screenshot attached at Exhibit A to their
9   declarations in support of their pausing allegations is improper. This document is outside the
10  parties' integrated Agreement and cannot be considered in interpreting the contract. *See* Cal.
11  Civ. Proc. Code § 1856. *Chaknova v. Wilbur-Ellis Co.*, 69 Cal. App. 4th 962, 968 (1999)
12  ("[m]atters extrinsic to an integrated contract will not be considered to modify the unambiguous
13  language of those contracts"). The Program Terms include the following integration provision:

> The Agreement constitutes the entire agreement between the parties with
> respect to the subject matter hereof, and supersedes and replaces any other
> applicable agreements, terms and conditions applicable to the subject
> matter hereof. Any conflicting or additional terms contained in additional
> documents (e.g. reference to a purchase order number) or oral discussions
> are void.

18  Jhang Decl., Exhibit C (Program Terms, ¶ 9).[5]

19  As discussed *supra* in section III.B., the screenshot is also not relevant to plaintiffs'
20  claims because both plaintiffs have admitted at deposition that they had not seen the screen shot
21  prior to this litigation. Jhang Decl., Exhibit A (Hanson Dep., 45:24 – 46:2), Exhibit B (Stern

---

[5] The operative Standard Terms and Conditions when Plaintiffs first signed up for AdWords included a similar provision. In July 2002, the Standard Terms and Conditions provided: "This constitutes the entire agreement between the parties with respect to the subject matter hereof. Any modifications to this Agreement must be made in a writing executed by both parties." Altherr Decl., Exhibit 1 (July 2002 Standard Terms and Conditions, ¶ 15). In October 2003, the Standard Terms and Conditions provided: "This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and any non-Google purchase order, invoice or other document relating to the subject matter hereof and any additional terms contained therein shall be null and void." *Id*., at Exhibit 2 (October 2003 Standard Terms and Conditions, ¶ 15).

- 9 -

**OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

Dep., 92:11 – 94:7, 97:3 – 97:13). Given that plaintiffs did not know about the screen shot, it could not have formed part of the parties' Agreement and it could not have been relied upon by the plaintiffs in interpreting the Agreement. The express terms of the AdWords Agreement establish that Google is entitled to exceed advertisers' daily budget by up to 20% on any given day, provided that the total charges in any given month, divided by the number of days in that month, does not exceed the daily budget. Because there was full disclosure in the very terms of the Agreement that the AdWords advertising charge calculation is done on a monthly basis without excluding paused days, plaintiffs cannot succeed in their claim that this is an unfair trade practice.

**2.  The Emails Referenced by Plaintiff Support Google's Position that the 17200 Claim Cannot be Maintained**

In their Motion, plaintiffs assert that the false and deceptive "effect" of Google's statements is articulated by plaintiff Stern when he wrote in an email dated November 20, 2003 that "I was overcharged every day that my account exceeded my $10 daily budget." Plaintiffs' Motion, 15:16-22; Raphael Decl., Ex. E (p. 0139). However, Stern admitted in his deposition that the terms of the parties' Agreement expressly state, and stated at the time he entered the AdWords agreement, that "Google may allow up to 20% more clicks in one day than your daily budget specifies." This language also appears in the Hanson FAQs. Altherr Decl., Exhibit 3 (Hanson FAQs, GOOG-HN 20904); *id.*, Exhibit 4 (Stern FAQs, GOOG-HN 20888); Jhang Decl., Exhibit B (Stern Dep., 65:8 – 66:14).

In the same email which plaintiffs quote in their statement of facts at no. 22 (Plaintiffs' Motion, 9:6-20; Raphael Decl., Ex. E (p. 0129)), the 20% issue was explained to Stern by Google. Similarly, the monthly calculation was explained to Hanson in emails including the one cited by plaintiffs at their fact no. 23 (Plaintiffs' Motion, 10:2-7; Raphael Decl., Ex. F (GOOG-HN 00286-87)). Despite the clear terms of the contract and repeated instances when these terms were explained by Google, plaintiffs persist in their position that they did not like the terms and for that reason the terms should not apply to them.

- 10 -
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

There is nothing false, deceptive or misleading about explicit contract terms and Google's compliance with them. Plaintiffs want to disavow the express terms of the Agreement apparently because they do not like these terms. A party cannot enter an agreement and later decide to accept only some of the contract terms he likes and ignore others. *See Skrbina v. Fleming Cos.,* 45 Cal. App. 4th 1353, 1367 (1996). Stern and Hanson continued to advertise through the AdWords program with full knowledge of the billing process and calculation of charges. They cannot now complain that these practices were deceptive or unfair.

Plaintiffs' claim for deceptive or unfair trade practices is without merit, and summary judgment should be entered for Google on this claim.

### 3.     Plaintiffs are Without Standing to Pursue a 17200 Action

Plaintiffs are unable to specify any act or conduct by Google in the promotion or implementation of the AdWords program that was unfair or deceptive. Each of the practices identified by plaintiffs is fully disclosed and part of the AdWords Agreement. Cal. Bus. & Prof. Code section 17204 as amended by Proposition 64, provides that a plaintiff may not bring an individual or class action of unfair, deceptive or unlawful practices if he or she has not suffered injury in fact and lost property and money as a result of the allegedly unfair, deceptive or unlawful practice. Plaintiffs cannot demonstrate damage as a result of any unfair and deceptive practice, and therefore are without standing.

### 4.     Plaintiffs Cannot Prove Reliance, an Essential Element of a 17200 Claim

Plaintiffs' 17200 claim also fails because they did not rely on the allegedly unfair or deceptive practices in entering the agreement. Plaintiffs admitted in their depositions that they failed to review any provisions in the FAQs pertaining to daily budgets when they first enrolled. Jhang Decl., Exhibit A (Hanson Dep., 47:12 – 48:2), Exhibit B (Stern Dep., 43:23 – 44:6, 59:7 – 59:17, 62:11 – 63:7). They repeat this admission in their declarations. Declaration of Howard Stern ("Stern Decl."), ¶ 4; Declaration of CLRB Hanson ("Hanson Decl."), ¶ 4. As plaintiffs testified, they based their understanding of the calculation of their daily budgets on nothing more

than a review of the AdWords homepage or their *own* interpretation of the phrase "daily budget." Jhang Decl., at Exhibit A (Hanson Dep., 47:12 – 48:2), Exhibit B (Stern Dep., 62:11 – 62:18).

**D.      Plaintiffs are Unable to Prove They Have Suffered Any Damages.**

Plaintiffs identify in their declarations specific time periods and campaigns where they purportedly incurred overcharges under the AdWords program. However, the AdWords invoices for these time periods disprove plaintiffs' allegations and demonstrate that plaintiffs were charged in accordance with the terms and conditions of the Agreement.

Plaintiff Hanson ran an advertising campaign, Contract Decorating, in February 2005, with a daily budget of $50.00, and was charged $1,399.99 for the month. Hanson Decl., ¶ 6; Schulman Decl., ¶ 13, Exhibit 1 (plaintiff CLRB Hanson's February 2005 invoices). Under the Agreement, the most Hanson could have been charged was $1,400.00 (for a daily budget of $50 in a 28 day month).

Hanson also claims it was charged in March 2005 for the same campaign a total of $1,063.35 and received $177.85 in overdelivery credits. Hanson Decl., ¶ 6. Under Hanson's calculations, the charges for March 2005 were therefore $885.50. Under the terms of the Agreement, the most Hanson could have been charged for this month was $1,550.00 (for a daily budget of $50.00 in a 31 day month), which is well above the amount this plaintiff was actually charged. Moreover, Hanson's claim in paragraph 6 of Brett Hanson's declaration that the Contract Decorating campaign was paused for 14 days is incorrect. The Campaign Change History Log for March 2005 for the Contract Decorating Campaign shows that the campaign was only paused for 4 of the 31 days in March. Supplemental Declaration of Leslie Altherr ("Supp. Altherr Decl."), ¶ 3, Ex. 1.[6] Thus even under plaintiffs' incorrect argument that paused days should not be counted in calculation of the daily budget, Google could have charged $1350 for the month ($50 daily budget times 27 days).

---

[6] The spreadsheet Hanson created and attached as Exhibit B to the Hanson Decl. is inadmissible, and any reference to "paused" in that document must be disregarded. *See* Evidentiary Objections to Declaration and Exhibits of CLRB Hanson, filed herewith.

- 12 -
**OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**
Case No. C05-03649 JW
41063-0023/LEGAL11775280.1

Stern states in his declaration that he ran his campaign for only four days in September 2005 with a daily budget of $10, and he was charged $43.25 for the month. Stern Decl., ¶ 6. Under the terms of the Agreement, Stern could have been charged $300 for the month. Stern claims he ran his campaign for two days in December 2005 with a daily budget of $10 and he was charged $21.28 for the month. *Id.* Under the terms of the Agreement, Stern could have been charged $310 for the month.

Accordingly, plaintiffs have failed to produce any evidence that they have been damaged under the AdWords system and no claim under Cal. Bus. & Prof. Code §§ 17200 or 17500 is sustainable.

### E. Plaintiffs May Not Recover Under an Unjust Enrichment Theory Because There is a Binding Contract Between the Parties and Google Has Not Been Unjustly Enriched.

Plaintiffs are unable to establish an unjust enrichment claim. The Ninth Circuit has held that "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). "'There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.'" *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (quoting *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975); *see also Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996).

Here, an enforceable, binding agreement exists between plaintiffs and Google. Plaintiffs have not presented any evidence to the contrary. Plaintiffs could not have advertised on the AdWords system without agreeing to the terms and conditions of the Agreement. Schulman Decl., ¶ 10. Both plaintiffs admitted that they renewed their acceptance of the Agreement terms in order to continue advertising under the AdWords program. Jhang Decl., Exhibit A (Hanson Dep., 42:6 – 43:10), Exhibit B (Stern Dep., 142:7 – 143:25). Plaintiffs cannot recover under an unjust enrichment theory and summary judgment should be entered against plaintiffs on this claim.

- 13 -

## IV. CONCLUSION

The undisputed facts support a finding that plaintiffs cannot establish the elements of their claims under Cal. Bus. & Prof. Code §§ 17200 and 17500, and for unjust enrichment. The undisputed facts further support a finding that summary judgment should be entered for Google on each of the causes of action in the Second Amended Complaint. Google respectfully requests that the Court enter Summary Judgment in its favor.

DATED: October 16, 2006.    **PERKINS COIE LLP**

By _____/S/_____
David T. Biderman (State Bar No. 101577)

**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050

Attorneys for Defendant Google Inc.