1  Lester L. Levy *(Admitted Pro Hac Vice)*
   Michele F. Raphael *(Admitted Pro Hac Vice)*
2  WOLF POPPER LLP
   845 Third Avenue
3  New York NY 10022
   Telephone: 212.759.4600
4  Facsimile: 212.486.2093
   e-mail: llevy@wolfpopper.com
5  e-mail: mraphael@wolfpopper.com

6  William M. Audet (SBN 117456)
   Jason Baker (SBN 212380)
7  ALEXANDER, HAWES & AUDET, LLP
   152 North Third Street, Suite 600
8  San Jose, CA 95112
   Telephone: 408.289.1776
9  Facsimile: 408.287.1776
   e-mail: waudet@alexanderlaw.com
10 e-mail: jbaker@alexanderlaw.com

11 *Attorneys for Plaintiffs and the Proposed Class*

12                    UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14 CLRB HANSON INDUSTRIES, LLC d/b/a      )  CASE NO: C05-03649 JW
   INDUSTRIAL PRINTING, and HOWARD        )
15 STERN, on behalf of themselves and all )  **PLAINTIFFS' MEMORANDUM OF**
   others similarly situated,             )  **POINTS AND AUTHORITIES IN**
16                                         )  **OPPOSITION TO DEFENDANT**
                                           )  **GOOGLE INC.'S MOTION FOR**
17                     Plaintiffs,         )  **SUMMARY JUDGMENT, OR IN THE**
                                           )  **ALTERNATIVE, FOR SUMMARY**
18 vs.                                     )  **ADJUDICATION**
                                           )
19 GOOGLE, INC.,                           )  Fed. R. Civ. P. 56
                                           )
20                     Defendant.          )  Date:   November 6, 2006
                                           )  Time:   9:00 a.m.
21                                            Dept.:  3
                                              Judge:  Hon. James W. Ware
22

23

24

25

26

27

28

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW**

Doc. 154679

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RESPONSE TO STATEMENT OF UNDISPUTED FACTS
AND COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.       GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT
            ON PLAINTIFFS' CLAIMS UNDER CAL. BUS. AND PROF.
            CODE §§ 17200 and 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.      GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
            PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT . . . . . . . . . . . . . . . . . . 12

    III.     GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
            PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT OR BREACH
            OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING . . . . . . . 13

         A.     There Is No Enforceable Agreement That Allows Google To Bill
               Plaintiffs Up To 20% Above Their Daily Budget And To Hold Them
               Liable Up To A Monthly Budget - Especially A Monthly Budget
               Calculated Using Paused Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         B.     Google Is Not Entitled To Summary Judgment On Plaintiffs' Claim
               For Breach Of The Covenant Of Good Faith And Fair Dealing . . . . . . . 17

    IV      CLAIMS OCCURRING MORE THAN 60 DAYS PRIOR TO THE
            FILING OF THE ORIGINAL COMPLAINT ARE NOT BARRED . . . . . . . . 18

    V.      PLAINTIFFS WERE DAMAGED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**
**Case No: C05-03649 JW**

Doc. 154679

i

TABLE OF AUTHORITIES

CASES

Cairo, Inc. v. Crossmedia Servs., Inc.,
    No. C 04-04825 JW, 2005 U.S. Dist. LEXIS 8450 (N.D. Cal. Apr. 1, 2005) . . . . . . . . . 14

Celador Int'l, Ltd. v. Walt Disney Co.,
    347 F. Supp. 2d 846 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Colgan v. Leatherman Tool Group, Inc.,
    135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kanner v. National Phoenix Industries, Inc.,
    203 Cal. App. 2d 757, 21 Cal. Rptr. 261 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Klussman v. Cross Country Bank,
    134 Cal. App. 4th 1283, 36 Cal. Rptr. 3d 728 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 13

Lane-Wells Co. v. Schlumberger Well Surveying Corp.,
    65 Cal. App. 2d 180 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lemm v. Stillwater Land & Cattle Co.,
    217 Cal. 474 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Marin Storage &Trucking, Inc. v. Benco Contracting and Eng'g, Inc.,
    89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 14

McKell v. Washington Mutual, Inc.,
    142 Cal. App. 4th 1457 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Microsoft Corp. v. Suncrest Enter.,
    No. C 03-5424 (HRL), 2006 U.S. Dist. LEXIS 32824 (N.D. Cal. May 16, 2006) . . . . . . 9

Nagel v. Twin Laboratories, Inc.,
    109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Nava v. Mercury Casualty Co.,
    118 Cal. App. 4th 803, (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Netscape v. Fed. Ins. Co.,
    No. C 06-00198 JW, 2006 U.S. Dist LEXIS 9569 (N.D. Cal. Feb. 22, 2006) . . . . . . . . 9

Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co.,
    69 Cal. 2d 33, 69 Cal. Rptr. 561 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pfizer Inc. v. Superior Court,
    141 Cal. App. 4th 290, 45 Cal. Rptr. 3d 840 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Powers v. Dickson, Carlson & Campillo,
    54 Cal. App. 4th 1102, 63 Cal. Rptr. 2d 261 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 16

Progressive West Ins. Co. v. Superior Court,
    135 Cal. App. 4th 263, 37 Cal. Rptr. 3d 434 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 8

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**
**Case No: C05-03649 JW**

Doc. 154679

ii

R & B Auto Center, Inc. v. Farmers Group, Inc.,
   140 Cal. App. 4th 327, 44 Cal. Rptr. 3d 426 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Skrbina v. Fleming Cos.,
   45 Cal. App. 4th 1353, 53 Cal. Rptr. 2d 481 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Specht v. Netscape Communs. Corp.,
   150 F. Supp. 2d 585 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Specht v. Netscape Communs. Corp.,
   306 F.2d 17 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.,
   281 F.3d 929 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. King Features Entertainment, Inc.,
   843 F.2d 394 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Waller v. Truck Ins. Exchange, Inc.,
   11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Windsor Mills, Inv.v. Collins & Aikman Corp.,
   25 Cal. App. 3d 987, 101 Cal. Rptr. 347 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES

Cal. Civ. Code § 1641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Civ. Code § 1653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Civ. Code § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Bus. & Prof. Code § 17200 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Cal. Bus. & Prof. Code § 17500 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 9

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION Case No: C05-03649 JW**

Doc. 154679                                                                iii

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

1
2       In order to ask this Court to grant summary judgment in its favor on each of Plaintiffs'
3   claims, Defendant Google, Inc. ("Google") presents its AdWords program through blinders -
4   focusing upon a couple of lines of text buried in a maze of hyperlinks which, if printed, amount
5   to 489 pages, and ignoring its AdWords promotions, tutorials and online help center. Moreover,
6   these few words Google relies upon, namely that it may deliver additional clicks but that an
7   advertiser will never be charged more than its daily budget times the number of days in a month,
8   neither on their face, nor as per Google's interpretation thereof, can reconcile Google's
9   promotion of its AdWords program with its actual billing practices thereunder. Google offers a
10  daily budget and the right to pause an ad without charge, but bills as per a monthly budget which
11  does not take into account days that an ad is paused. Google also tells advertisers that they will
12  not be billed more than their daily budget times the number of days their ad is active, but bills
13  them more.

14      A close examination of Google's motion reveals that its legal arguments are sparse and its
15  "undisputed facts" are actually arguments, mischaracterizations and inaccurate, paraphrased
16  testimony. Google makes self-serving statements and cites to pages which do not support its
17  propositions. Defendant also relies heavily upon the Declaration of its engineer, Michael
18  Shulman ("Schulman Decl."), who does not even attest to his responsibilities nor his dates of
19  employment with Google and whom Defendant refused to produce for his deposition. In the
20  same vein, it is also suspect that Google was able to produce (albeit past the Court ordered
21  deadline) seven boxes of supposed variations of the Frequently Asked Questions ("FAQs") since
22  2002, but was not able to produce the sign up screens in effect when Plaintiffs enrolled, which
23  screens would evidence whether or not they were required to accept any terms or conditions.

24      In the Joint Case Management Statement, Google euphemistically defended its billing
25  practice as, "maximizing" an advertiser's daily budget. Obviously wary that such "explanation"
26  will not prevent summary judgment in favor of Plaintiffs (Plaintiffs filed their motion for partial
27  summary judgment several days before Google filed its motion), Google now characterizes the
28  daily budget as "an advertiser's target, as opposed to its maximum, daily advertising spending."

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1    Irrespective of Google's mischaracterizations and strained definitions, as Plaintiff Howard Stern

2    stated, "a daily budget of $10 is very simple: daily cost not to exceed $10."

3         Google has failed to demonstrate that it is entitled to summary judgment or adjudication

4    as to its conduct underlying Plaintiffs' claims for violation of California Business & Professions

5    Code § 17200 and § 17500, unjust enrichment, breach of contract or breach of the implied duty

6    of good faith and fair dealing.  Google has not shown that it may exceed an advertiser's daily

7    budget by up to 20%.  Google has not shown that it may base an advertiser's charges in a billing

8    period on the number of days in that month multiplied by the advertiser's daily budget,

9    irrespective of days the ad did not run and/or did not reach the daily budget.  Google has not

10   shown that the claims of Plaintiffs and the putative class are barred for breaches occurring more

11   than 60 days prior to the date the original complaint was filed, August 3, 2005.

12        Whether viewed in a vacuum as presented by Defendant, or in the context of the

13   AdWords program, the snippets relied upon by Defendant do not warrant summary judgment in

14   its favor, on any claim or issue.  Google's motion should be denied in its entirety.

### RESPONSE TO STATEMENT OF UNDISPUTED FACTS
### AND COUNTER STATEMENT OF FACTS

17        Defendant's "Statement of Undisputed Facts" is a misnomer.  Rather than state facts,

     Defendant uses this section to present arguments and legal conclusions under the guise of facts.

18   A glaring example is the "statement" that "Advertisers are contractually bound by updated

19   Agreements.  *See* Jhang Decl., Exhibit C (Programs Terms, ¶ 2)."  Defendant's Memorandum of

20   Points and Authorities in Support of its Motion for Summary Judgment, or in the Alternative, for

21   Summary Adjudication ("Def.'s Moving Mem."), p. 7:5-6.[1]

22        In addition, instead of citing the actual testimony of Plaintiffs or the actual language from

23   the FAQs, Google (mis)characterizes both with blanket citations to various pages which do not

24

25   _____

26        [1]Given the improper manner of Defendant's presentation, Plaintiffs are compelled to
     dispute the jumble of arguments, legal conclusions, and alleged facts set forth by Defendant

27   therein and can agree only to the actual language of the current FAQs attached to the Declaration
     of Michele F. Raphael Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment

28   ("Raphael Decl.") as Exhibit J.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1    support its self-serving statements, and without acknowledging conflicting provisions.  For

2    example, in order to argue that an ad is "active" even when it is paused, Defendant states as a

3    fact: "Once an ad campaign has been established, it becomes active and remains active until the

4    campaign is deleted or the term of the campaign has ended.  *See* Jhang Decl., Exhibit D

5    ([Current] FAQs p. 86 of 489.)"  Def.'s Moving Mem., p. 5:15-17.  The portion on p. 86 of 489

6    marked by Defendant merely provides: "Campaign. A campaign consists of one or more Ad

7    Groups.  The ads in a given campaign share the same daily budget, language and location

8    targeting, end dates, and syndication options."  "Active" is not even mentioned.  Moreover,

9    Google does not acknowledge actual references to "active."  See, e.g., "The AdWords system

10   will always try to spend your entire daily budget during each calendar day that your ad is active,"

11   Current FAQs, p. 267 of 489, Declaration of Michele F. Raphael Submitted in Support of

12   Plaintiffs' Motion for Partial Summary Judgment ("Raphael Decl."), Ex. J[2]; "If you want to stop

13   your ads from running so you won't accrue additional costs, feel free to pause or delete your

14   campaigns at any time," Current FAQs, p. 127 of 489, Raphael Decl., Ex. J.

15          Google also inaccurately characterizes Plaintiffs' testimony.  For example, Defendant

16   states that Plaintiffs "admitted that they failed to review or did not recall any provisions

17   pertaining to pausing of their ad campaigns (including the on-line tutorials)."  Def.'s Moving

18   Mem., p. 21:12-14.  However, both Plaintiffs testified that they were well aware of the pausing

19   feature: "Q. And what made you believe that you would — that the days that your campaign was

20   paused would not be included in that calculation?  A. Well, for the simple reason that this is —

21   this AdWords is put forward as something that gives me complete control over my charges, so I

22   thought — thought it was reasonable to assume, if I'm not running my ads, why would I be

23   charged for days that I'm turning them off."  Stern Tr.[3], 92:11-21; "implicit in the way this is

24   _____

25         [2]Rather than resubmit the voluminous FAQs, Plaintiffs respectfully refer this Court to
26   their submissions in support of their motion for partial summary judgment.

27         [3]"Stern Tr." refers to the transcript of the deposition of Howard Stern taken under oath on
     August 16, 2006 and the pages cited herein are annexed as Ex. F to the Declaration of Lester L.
28   Levy in Opposition to Defendant Google's Motion for Summary Judgment, or in the Alternative,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**
**Case No: C05-03649 JW**

1   billed, you're billed day by day. If you don't have it on, you're not billed." <u>Stern Tr.</u>, 93:17-19;

2   "Q: Okay. The next line [in the FAQs when he enrolled], 'You can pause your ad at any time.

3   You won't accrue charges while your ads are paused, and they will remain paused until you

4   resume them.' Was that your understanding of your agreement with Google? A: Yes. When you

5   activate the program, you unpause it and then, naturally, if you want to stop being charged you

6   pause it." <u>Stern Tr.</u>, 170:16-25; "No. I never thought that I'd be charged when my ad was

7   paused." <u>Stern Tr.</u>, 171:5-6; "Q. . . . And what — what caused you to use the pausing feature?

8   A. It's a unique selling feature allowing you to turn off and on your costs. Having more ability

9   to control the costs associated with your pay-for-click advertising. I thought that was an asset of

10   Google's that others did not have." <u>Hanson Tr.</u>, 70:2-9. Google also mischaracterizes Plaintiffs'

11   testimony by claiming that they "acknowledged that under their understanding of the Agreement,

12   Google may charge up to 20% more clicks on a given day than their daily budgets specify."

13   <u>Def.'s Moving Mem.</u>, page 10:12-15 and page 14:19-22. The cited testimony does not support

14   such proposition and Google does not mention that Mr. Stern, looking at the 20% language,

15   distinguished overdelivery and accrue, from "charge." <u>See.</u>, <u>e.g.</u>, <u>Stern Tr.</u>, 101:15-16

16   ("Accruing and being charged for [additional clicks] are two different things.")[4]

17       Another problem with Defendant's "undisputed facts" is its reliance upon the <u>Schulman</u>

18   <u>Decl.</u>, to say that Plaintiffs were required to agree to the terms and conditions of the AdWords

19   program when they enrolled in July 2002, and October 2003. The Declaration, submitted for

20   purposes of this motion, completely lacks dates of employment and job responsibilities; and, as

21   detailed in the <u>Declaration of Lester L. Levy in Opposition to Defendant Google's Motion for</u>

22   <u>Summary Judgment, or in the Alternative, for Summary Adjudication ("Levy Decl.")</u>, Defendant

23   ————————————————

24   for Summary Adjudication ("Levy Decl."). "Hanson Tr." refers to the transcript of the
deposition of CLRB Hanson by Brett Hanson taken under oath on August 18, 2006 and the pages

25   cited herein are annexed as Ex. G to the <u>Levy Decl</u>.

26       [4]Rather than fill this memorandum with each and every instance Defendant misstates

27   FAQs and testimony, Plaintiffs will focus upon the actual testimony of Plaintiffs and demonstrate
how and why, the language Google relies upon does not entitle it to any summary adjudication in

28   its favor.

1  refused to produce Mr. Schulman for his deposition. Defendant also failed to produce documents

2  which would contradict/support Mr. Schulman's bald assertions about the sign up process in

3  effect when Plaintiffs enrolled, particularly whether there was a button to click to accept. Such

4  document(s) should have been produced in the Fed. R. Civ. P. 26 disclosures, in response to the

5  directive by this Court to produce all relevant documents by July 17, 2006, and in response to

6  Plaintiffs' First Request for Production of Documents. The Terms and Conditions of the

7  AdWords program and the FAQs marked by Defendant's counsel at each Plaintiff's deposition as

8  having been in effect when each Plaintiff enrolled do not contain any radio button nor any other

9  evidence of an acceptance requirement. <u>Raphael Decl.</u>, Exs. G and H.[5] Plaintiffs' testimony is

10 consistent with the documents produced by Google. <u>Hanson Tr.</u>, 29:21 - 31:11 ("Q. And do you

11 recall . . . in connection with the sign-up process, you designated, signified electronically your

12 acceptance to the terms and conditions under which Google AdWords program operates? A. I

13 do not recall that. Q. And when you say you do not recall it, do you believe it didn't happen or

14 you just don't remember? A. I don't - - I remember it was a very simple process. It asked for not

15 more than three - - three or four items. And I don't recall that part of it. I remember just entering

16 . . . Q. And you remember after you did all that process, at some point in time you complete all

17 the information, there was a button that you clicked or somehow signified that you accepted

18 those terms and conditions? Mr. Levy: Wait. Is that a representation that button was there?

19 Because we haven't seen a screen that has that button on it. Mr. Biderman: I'm asking if he

20 remembers it. Mr. Levy: Okay. A. I do not recall a specific button. Q. And do you otherwise

21 recall in some manner signifying that you accepted the terms and conditions of the AdWords

22 program? A. I do not.")[6]

23      Based on the foregoing, if this Court finds any of Mr. Schulman's assertions necessary to

24 _____

25      [5]<u>See also</u> Declaration of Leslie Altherr in Support of Google's Motion for Summary

26 Judgment, Exs. 3-6, copies of the same Terms and Conditions and FAQS, *sans* cover sheets
   which demonstrate Google's disjunctive production of the documents to Plaintiffs.

27

28      [6] <u>See also</u> <u>CLRB Hanson Decl.</u>. ¶ 4 and <u>Stern Decl.</u> ¶ 4 (neither Plaintiff recalls having to
   accept the FAQs prior to joining the AdWords Program).

1    its determination of the competing summary judgment motions, Mr. Schulman should be directed

2    to appear at the  hearing on November 6, 2006, and be questioned by this Court (with Plaintiffs

3    having the right to examine).

4         Also problematic about Defendant's statement is that blatantly absent therefrom are the

5    multitude of references to, *inter alia*, a daily budget, the right to control your own costs, the right

6    to set your own maximum and the right to pause an ad without charge, from the various versions

7    of FAQs, the sign up process,[7] Google's own tutorials and Google's online help center.  See

8    Plaintiffs' Statement of Undisputed Facts ("Pls.' Undisputed Facts"),  ¶¶ 6-20, Plaintiffs'

9    Memorandum in Support of Partial Summary Judgment, ("Pls.' Moving Mem."), pp. 3-8.

10   Google also deceptively refers to the current FAQs and Terms it marked at Plaintiffs' depositions

11   in August, 2006, with only footnote references to the FAQs and Terms in effect when Plaintiffs

12   enrolled.  This is misleading because, *inter alia*, the FAQs in effect when each Plaintiff enrolled

13   do not contain the term "monthly budget."  Pls.' Undisputed Facts, Pls.' Moving Mem., ¶ 15.

14        Plaintiffs respectfully refer this Court to Pls.' Undisputed Facts at pp. 2- 11 in Pls.'

15   Moving Mem., to the extent not reiterated herein.  Plaintiffs, with direct citations to Plaintiffs'

16   testimony, Defendant's representations on its website, and Defendant's FAQs (including those in

17   effect when Stern enrolled, CLRB Hanson enrolled, those in effect when the initial complaint

18   was filed and those marked and used at Plaintiffs' depositions), detail and substantiate that: (i)

19   Advertisers Sign Up for the AdWords Advertising Program over the Internet; (ii) Google

20   Promotes AdWords as Allowing Advertisers to Set a Daily Budget to Control What They Pay

21   Per Day and Without a Minimum Commitment; (iii) Google Promotes AdWords as Allowing

22   Advertisers to Pause Their Ad and Not be Charged While Their Ad is Paused; (iv) Google Bills

23   Advertisers More Than Their Daily Budget and Converts Their Daily Budget Into a Monthly

24   Budget; (v) Plaintiff Howard Stern was Charged More Than His Daily Budget and More Than

25   His Daily Budget Multiplied by the Number of Days in a Month His Campaign was Active; and

26   _____

27        [7]It is noteworthy that Google can testify as to the Terms and FAQs that were on its
     website at any point in time, but have not provided the sign-up screens in effect when Plaintiffs
28   enrolled.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1   (vi) Plaintiff CLRB Hanson was Charged More Than its Daily Budget and More Than its Daily

2   Budget Multiplied by the Number of Days in a Month its Campaign was Active.  Pls.'

3   Undisputed Facts, Pls.' Moving Mem., pp. 2-11.  Plaintiffs also refer this Court to the Stern

4   Decl., the CLRB Hanson Decl. and the Raphael Decl., together with the exhibits thereto,

5   submitted in support of Plaintiffs' Motion for Partial Summary Judgment as well as to the Levy

6   Decl. and the exhibits thereto, submitted herewith.

7                                           **ARGUMENT**

8   **I.      GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
             CLAIMS UNDER CAL. BUS. AND PROF. CODE §§ 17200 and 17500**

9

10          Google claims that it is entitled to summary judgment on these claims because there is an

11  enforceable agreement which allows it to bill advertisers above their daily budget and to bill on a

12  monthly basis without taking paused days into account.  Defendant is legally, as well as factually,

13  wrong.  Legally, an enforceable contract between Plaintiffs and Google, irrespective of its

14  provisions, is not a *per se* defense to Plaintiffs' deception claims.  R & B Auto Center, Inc. v.

15  Farmers Group, Inc., 140 Cal. App. 4th 327, 44 Cal. Rptr. 3d 426 (2006).  In R & B Auto, the

16  plaintiff, a car dealer, purchased lemon law insurance and when it made a claim thereunder was

17  told the insurance does not cover used vehicles.  As aptly stated therein: "Whether the insurance

18  contract provided for lemon law coverage for used car sales was a question of law that the court

19  readily answered by reviewing that contract.  But the fact that the insurance contract limited

20  lemon law coverage to new car sales hardly proves that [defendant insurer] does not engage in

21  unfair business practices in the sale of its new car lemon coverage to used car dealerships.  The

22  court erred in disposing of the unfair business practices cause of action just because it held that

23  the insurance contract did not provide coverage for the [plaintiff's lemon law] litigation."  Id. at

24  356.

25          Cal. Bus. and Prof. Code § 17500 prohibits a business entity from disseminating any

26  statement regarding its product or performance "which is untrue or misleading, and which is

27  known, or which by the exercise of reasonable care should be known, to be untrue or

28  misleading."  Nagel v. Twin Laboratories, Inc., 109 Cal. App. 4th 39, 51, 134 Cal. Rptr. 2d 420

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW**

1  (2003). "To prevail on a false advertising claim, a plaintiff need only show that members of the

2  public are likely to be deceived . . . A 'reasonable consumer' standard applies when determining

3  whether a given claim is misleading or deceptive," Colgan v. Leatherman Tool Group, Inc., 135

4  Cal. App. 4th 663, 682, 38 Cal. Rptr. 3d 36 (2006) (citations omitted); McKell v. Washington

5  Mutual, Inc., 142 Cal. App. 4th 1457 (2006); Progressive West Ins. Co. v. Superior Court, 135

6  Cal. App. 4th 263, 284, 37 Cal. Rptr. 3d 434 (2005) (plaintiff only has to show that the conduct

7  was likely to deceive the public). "In determining whether a statement is misleading under the

8  statute, 'the primary evidence in a false advertising case is the advertising itself.' The

9  'misleading character' of a given representation 'appears on applying its words to the facts.'"

10  Colgan, 135 Cal. App. 4th at 679 (citations omitted). A statement can be true, yet still be

11  misleading under §17500. Nagel, 109 Cal. App. 4th 39 at 51; McKell, 142 Cal. App. 4th at 1471

12  ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the

13  consumer, such as by failure to disclose other relevant information, is actionable [under these

14  sections].") (citation omitted).[8] Cal. Bus. & Prof. Code § 17200 similarly prohibits "any

15

---

16   [8]McKell was decided after Pfizer Inc. v. Superior Court, 141 Cal. App. 4th 290, 296, 45

17  Cal. Rptr. 3d 840 (2006). Although not discussed by Defendant, whether or not reliance is an
    element of claim under § 17200 is the subject of much controversy in the California Courts.

18  There is a split in the Appellate Courts and Pfizer is on appeal. In any event, reliance is not an
    issue on this motion because there is sufficient evidence of Plaintiffs' reliance. See, e.g., Stern

19  Decl., ¶ 2 ("In October, 2003, I signed up for the Google AdWords Program. What enticed me to

20  the program and what I relied on was the fact that Google represented that I would control my
    costs by setting a daily budget and per click charges, and there was no minimum charge.");

21  CLRB Hanson Decl., ¶ 2 ("What enticed CLRB [and its predecessor, Industrial Printing], to the

22  AdWords program and what CLRB relied on was the fact that Google represented that CLRB
    would control its costs by setting a daily budget and per click charges, and there was no

23  minimum charge.") Irrespective of whether there was an actual agreement and the parameters
    thereof, Defendant's conduct, including its sign-up and tutorials are relevant to these claims.

24  Plaintiffs having been billed more than their daily budget on given days and more than their daily

25  budget times the number of days their ad ran, satisfies any injury requirement. See Stern Decl., ¶
    6, Ex. B; CLRB Hanson Decl, ¶ 6, Ex B.

26      See also R & B Auto, 140 Cal. App. at 30 (Reinstating the cause of action, the appellate

27  court also acknowledged that by alleging it paid premiums for illusory coverage and that it had to
    make payment on a lemon law claim, plaintiff, in conformity with Proposition 64, alleged "loss

28  caused by the purported misrepresentations concerning the scope of coverage. The standing

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**
**Case No: C05-03649 JW**

1  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

2  advertising and any act prohibited by § 17500." <u>Microsoft Corp. v. Suncrest Enter.</u>, No. C 03-

3  5424 (HRL), 2006 U.S. Dist. LEXIS 32824, at *23 (N.D. Cal. May 16, 2006) (J. Fogel) ("The

4  Legislature intended this sweeping language to include anything that can properly be called a

5  business practice and that at the same time is forbidden by law.") (citations omitted); <u>Netscape</u>

6  <u>Communs. Corp. v. Fed. Ins. Co.</u>, No. C 06-00198 JW, 2006 U.S. Dist LEXIS 9569, at *10

7  (N.D. Cal. Feb. 22, 2006) (J. Ware) ("pattern of conduct which disregarded common law

8  doctrine and misled consumers constituted 'unfair business practices'") (citation omitted).

9      Factually, Google ignores its inducements and representations in its FAQs and elsewhere

10  on its website concerning a daily budget, the right to pause without being charged, the right to

11  control your own advertising costs, its assurance that it will distribute an ad throughout the day

12  so as not exceed the daily budget, and the right to be billed no more than your daily budget times

13  the number of days your ad is active, <u>Pls.' Undisputed Facts</u>, <u>Pls.' Moving Mem.</u>, pp. 2-8, all of

14  which are false or misleading in light of Google's admitted billing practices.  The deceptive

15  effect was best articulated by Mr. Stern in his e-mails to Google:

16      My understanding of a 'daily budget' of $10 is very simple: daily cost not to
        exceed $10.  I don't expect to pay more on some days to compensate for days that

17      had costs less than $10.  I'm not trying to meet a monthly target, rather a daily
        target.  The extra traffic I might get from spending more than $10/day results in

18      not being able to meet the extra demand.  That's why I set the budget to $10.

19      I was overcharged every day that my account exceeded my $10 daily budget.  It's that
        simple.  The way Adwords bills is a misrepresentation of the daily budget that

20      prominently appears on the Campaign management screen and the set up screens that
        request budget information.  The Adwords home page promises that: 'You have total

21      control over every aspect of your campaign.'  Apparently not.

22  (Raphael Decl., Ex. E).  <u>See also</u> Hanson Tr., 29:5-12 ("A. . . . I remember being attracted to the

23  value proposition of controlling my daily budget, controlling my clicks per day, controlling my

24  cost per click.  Having the ability to turn off and on the campaign.  And those were the selling

25  features that brought me and convinced me to use Google."); Stern Tr., 174:12-21 ("Q. . . . So

26  why did you switch to Google from Yahoo?  A.  Because Yahoo had a monthly minimum that I

27  

28  requirement is met.")

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION Case No: C05-03649 JW**

1   needed to pay, whether or not I even ran the ads.  Q.  And Google? A.  They had no minimum. Q.

2   And, in fact, they told you they had no minimum; correct?  A.  Right.").

3        Mr. Stern ran his ad only four days in September 2005 with a daily budget of $10, but

4   was billed more than $40.  See Stern Decl.[9]

5        Google does not even claim that it explicitly tells advertisers that they are going to be

6   charged and will have to pay up to their daily budget + 20% on any and every day their ad runs,

7   that they will be charged for days their ad is paused, that they will be charged more than their

8   daily budget times the number of days their ad is active, i.e., not paused, nor that Google is going

9   to use the paused days as well as days the daily budget is not reached to absorb the +20% on each

10   day the ad runs.  Instead, Google found snippets buried in the 489 pages of linked FAQs, from

11   which to argue that it made the aforementioned disclosures.  The leap is too great.

12        First, the words are buried in a maze of FAQs which may be accessed by clicking on

13   various links and it is undisputed that accessing the FAQS was not mandatory to the sign-up

14   process.  This is in stark contrast to the sign-up page which all AdWords advertisers necessarily

15   saw, and which indisputably required advertisers to set a "daily" budget in order to control their

16   own costs.

17        Second, the words do not say what Google would have this Court rule they say.  The

18   Current FAQs read: "Google **may allow** up to 20% more clicks . . . in one day than your daily

19   budget specifies," p. 125 of 489; and "AdWords system **may deliver** up to 20% more ads than

20   your daily budget calls for," p. 84 of 489.  Def's Moving Mem., pp.7-8.  (Emphasis added.)  The

21   FAQs in effect when Plaintiffs enrolled read: "Google **may allow** up to 20% more clicks in one

22   day than your daily budget specifies."  Stern FAQs, GOOG-HN 20888, Raphael Decl., Ex. G;

23   Hanson FAQs, GOOG-HN 20904, Raphael Decl., Ex. H,  (emphasis added).  "May allow" and

24   "may deliver" do not, as a matter of law, mean, nor can they be deemed to be understood by a

25   reasonable advertiser to mean, that Google is going to charge them for those extra clicks in an

26   amount up to 20% above their daily budget on any and every day their ad runs.  "Accruing and

27

28        [9]As detailed in the CLRB Hanson Decl., Plaintiff CLRB Hanson was also overcharged.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1    being charged for [additional clicks] are two different things." <u>Stern Tr.</u>, 101:15-16.  Any

2    effective disclosure would necessarily require the words "Google will bill daily budget + 20%,"

3    "Google will charge daily budget +20%," or "you will pay daily budget +20%."  Moreover, the

4    remainder of the 489 pages are full of references to a daily budget, not "daily budget +20%."

5          Adding to the deception, Google uses the very words "charge" and "pay" in the next

6    sentence, telling advertisers that they are "**never charged** more than the number of days in that

7    month multiplied by your daily budget." <u>Current FAQs</u>, p. 125 of 489, <u>Raphael Decl.</u>, Ex. J.

8    (Emphasis added.)  "If you budget $100 per day in a 30-day month, you may receive more than

9    $100 in clicks on a given day, but the **maximum you would pay** is $3,000 for that month."

10    <u>Stern FAQs</u>, GOOG-HN 20888, <u>Raphael Decl.</u>, Ex. G; <u>Hanson FAQs</u>, GOOG-HN 20904,

11    <u>Raphael Decl.</u>, Ex. H.  (Emphasis added.)  This latter snippet, misleadingly and deceptively

12    omits to tell advertisers that they are liable for, and that they will be billed up to, that monthly

13    amount, even if their ad is paused during the period and/or their ad does not reach its daily

14    budget on all days.

15          This "maximum" language is fully and fairly applicable to advertisers who run their ad

16    each day of the billing cycle <u>and</u> do so up to their daily budget each day - even if Google

17    overdelivers their ad, they will not have to pay for it.  This language is also consistent with, and

18    similar to, Google's *Bidding and Ranking* tutorial which tells advertisers that "Ad system ensures

19    you never pay more than your daily budget multiplied by the number of days in a month your

20    campaign was active." <u>Raphael Decl.</u>, Ex. A.  Given this consistency, and that both statements

21    are contrary to Google's practice of including paused days in its monthly calculation, Google

22    tries to redefine "active" so as to include paused days.  Specifically, Google attempts to create an

23    ambiguity to the ordinary term "active" by stating that all ad campaigns are active until deleted or

24    the term of the campaign has ended - including when it is paused.  However, this makes no sense.

25    Indeed, Google treats paused (and deleted) ad campaigns as inactive for billing purposes.  <u>See</u>,

26    <u>e.g.</u>, Current FAQs, p. 167 of 489, "How do I close my account? . . . you can immediately stop

27    the delivery of your ads by <u>pausing</u> or <u>deleting</u> all campaigns (or Ad Groups) within your

28    account."  Apparently, defense counsel agrees with Plaintiffs.  <u>Stern Tr.</u>, 88:4-9, "A. . . . So it just

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1  gives me a ballpark idea of just how many days my campaign was actively running.  Q.  You

2  mean, how many days it was unpaused?  A.  Unpaused, yes, exactly."  Under Google's current

3  attempted definition of "active," even if an advertiser paused all of its campaigns, they would

4  still be deemed active and the advertiser could never close its account (at least not until Google

5  creates a new definition for "close" in its reply).

6       In sum, these few sentences, either considered in a vacuum, or in the relevant context,

7  cannot, as a matter of law, entitle Google to summary adjudication on Plaintiffs' claims for

8  unfair, deceptive and misleading conduct and false advertising.  Google must conform its billing

9  to its disclosures or *vice versa*.

10 **II.   GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
         PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT**

11

12      Defendant claims that it is entitled to summary judgment on this claim because, it argues,

13  there is an enforceable agreement between Plaintiffs and Google which allows it to bill as it does

14  and the invoices "demonstrate that any benefit Google received from Plaintiffs was properly

    within the scope of the parties' agreement."  Def.'s Moving Mem., p. 22:20-21.[10]  As detailed in
15
    the contract discussion, infra, these competing motions for summary judgment make it perfectly
16
    clear that there was no meeting of the minds as to what Plaintiffs were to pay for having their
17
    website appear as a sponsored link.  Absent an "Agreement," interpreted as Defendant argues on
18
    this motion, Defendant has no claim that the money it received was "within the scope of the
19
    parties' agreement."  By promoting and offering a daily budget and the right to pause without
20
    being charged, but charging more than the daily budget and allowing paused days to absorb the
21
    excess delivery charges, Google has been unjustly enriched at Plaintiffs' expense.  Moreover, as
22
    detailed in the deception discussion, supra (and in the breach of contract discussion, infra), even
23
    if there was an "Agreement," and even if it contained the snippets Google relies upon, those
24
    words do not give Google the right to bill Plaintiffs up to their daily budget + 20% any or every
25
    day their ad ran, nor to hold them liable up to a monthly budget, with or without, considering the
26

27  _____

28       [10] Tellingly, Defendant never defines "Agreement" and interchanges use of the
    capitalized, defined term, with the general, lower case term.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

Doc. 154679                                    12

1    paused days. Thus, the amounts shown on the invoices were not amounts "properly within the

2    scope of the parties' agreement."

3    **III.    GOOGLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
         CLAIMS FOR BREACH OF CONTRACT OR BREACH OF THE IMPLIED
4         DUTY OF GOOD FAITH AND FAIR DEALING**

5         **A.    There Is No Enforceable Agreement That Allows Google To Bill
             Plaintiffs Up To 20% Above Their Daily Budget And To Hold
6             Them Liable Up To A Monthly Budget - Especially A Monthly
             Budget Calculated Using Paused Days**

7         Google, relying upon the Declaration of the engineer it refused to produce for deposition,

8    claims that as part of the sign-up process, Plaintiffs agreed to linked terms and conditions. This

9    is contradicted by Plaintiffs who testified that they do not recall having had to click any button to

10   agree to any terms (Response to Statement of Undisputed Facts And Counter Statement of Facts,

11   supra), and it is unsupported by any documentary evidence.

12        Defendant is obviously aware of, and is trying to avoid by any means, the governing law

13   which provides that Plaintiffs cannot be deemed to have consented to that which they did not

14   know. The Second Circuit, in an action governed by California law, and analogous to the case at

15   bar, refused to hold an internet offeree to terms which it had not been required to accept nor even

16   view before accepting the offer (to download a free plug-in program). Specht v. Netscape

17   Communs. Corp., 306 F.3d 17 38-39 (2d Cir. 2002) citing (Windsor Mills, Inc. v. Collins &

18   Aikman Corp., 25 Cal. App. 3d 987, 101 Cal. Rptr. 347, 351 (1972)). Netscape, as the case at

19   bar, involved a browsewrap agreement, in that the user may, but need not, view terms of use and

20   is not required to accept any terms. As aptly stated by the trial court in the Netscape action,

21   "[m]utual assent is the bedrock of any agreement to which the law will give force. Defendants'

22   position, if accepted, would so expand the definition of assent as to render it meaningless."

23   Specht v. Netscape Communs. Corp., 150 F. Supp. 2d 585, 596 (S.D.N.Y. 2001). The Second

24   Circuit and this Court have acknowledged that internet offerees cannot be bound by terms they

25   did not see. See also Klussman v. Cross Country Bank, 134 Cal. App. 4th 1283, 1299-1300, 36

26   Cal. Rptr. 3d 728 (2005) (affirming refusal to bind internet contractor to inconspicuously

27   hyperlinked information buried in a "linguistic labyrinth . . . available only to the most diligent

28

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW**

1   consumer who Theseus-like must wind through a large number of rules and procedural

2   requirements . . .")  Compare with Cairo, Inc. v. Crossmedia Servs., Inc., No. C 04-04825 JW,

3   2005 U.S. Dist. LEXIS 8450, at *4 (N.D. Cal. Apr. 1, 2005) (J. Ware) (plaintiff bound by forum

4   selection cause because "[o]nce a user clicks on the link, a user sees the full...Terms of Use.").[11]

5        Moreover, even if there had been a button to click to accept terms, given the indisputable

6   maze of hyperlinks, Plaintiffs cannot be deemed to have assented to everything within the

7   hundreds of pages of FAQs, particularly snippets that are ambiguous and/or contradict each

8   other.  Accordingly, any subsequent requirement to click to accept the myriad of terms and/or

9   FAQs would be equally ineffective at binding Plaintiffs (and are certainly not retroactive to

10  overcharges before the click acceptance).

11       Rather than look to relevant legal authority to bind Plaintiffs to this maze of hyperlinks,

12  Defendant, again, resorts to characterizing Plaintiffs' testimony, i.e.: "[Plaintiffs] acknowledged

13  that not only was this expressly stated in the Agreement, but that Google representatives also

14  confirmed that these terms are part of the contract. Jhang Decl., Exhibit A (Hanson Dep., 135:20-

15  137-:15, 169:16-170:15, 177:19-178:9), Exhibit B (Stern Dep., 99:17-100:15.)" Def.'s Moving

16  Mem., p. 14:6-9.  However, looking at all the transcript pages referenced, there is not even any

17  mention of an "Agreement."[12]  Defendant also fails to acknowledge that at both depositions, its

18  counsel explicitly pointed Plaintiffs to the subject language within the voluminous FAQs (which

19  it also represented was in effect when each Plaintiff enrolled), and asked them to read what was

20  written thereby leaving them no choice but to acknowledge the existence of such sentences.

21  _____

22       [11] Rather than address the aforementioned relevant cases, Defendant cites Skrbina v.
23  Fleming Cos., 45 Cal. App. 4th, 1353, 53 Cal. Rptr. 2d 481 (1996), for the proposition that
    "express language" in an unrefuted agreement controls, and Marin Storage & Trucking, Inc. v.
24  Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001)  for the
    proposition that "'ordinarily' one who signs an instrument which on its face is a contract is
25  deemed to assent to all of its terms."

26       [12]These statements are Google's responses to complaints from Plaintiffs.  Defendant
27  twists this e-mail exchange to say "[P]laintiffs even admitted in their original complaint that they
    were informed by Google." Def.'s Moving Mem., p. 15.   Plaintiffs have never denied Google's
28  AdWords Team's responses.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1    Plaintiffs' acknowledgment of the words clearly lacks any legal significance. Plaintiffs brought

2    this case claiming, and continue to maintain, that: Google's practices are deceptive and Google

3    improperly bills in excess of the daily budget and penalizes advertisers when they pause their ad.

4           Thus, even if Plaintiffs can be found to have entered into an enforceable contract with

5    Google, the contract is simply to be a sponsored link in exchange for paying one's own daily

6    budget. "[T]he fundamental goal of contract interpretation is to give effect to the mutual intent

7    of the parties as it existed at the time of contracting." United States Cellular Inv. Co. of L.A.,

8    Inc. v. GTE Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted). Given the

9    competing motions and admissions, it is clear that there was no meeting of the minds as to a

10   monthly billing process. Google offered and asked, and Plaintiffs accepted and set, a daily

11   budget. That is what they reasonably understood to be the agreement.

12          Black letter contract law prevents the few lines relied upon by Google from being

13   enforced and/or interpreted so as to allow Google to bill more than a daily budget and more than

14   the daily budget times the number of days the ad runs. As detailed above in the context of

15   deception, the language that Google may allow up to 20% more clicks in one day, simply does

16   not convey the right to charge an advertiser up to 20% more than its daily budget on any given

17   day - especially given the multitude of references to daily budget. Obviously, you can accrue

18   additional clicks without being charged therefore. With respect to the latter snippet, the words

19   "monthly" cycle and/or budget, make perfect sense when applied to advertisers who ran their ad

20   each day up to its daily budget, and must therefore be read in that context, alone. Construction of

21   a contract containing no ambiguity or uncertainty must be derived solely from its language and

22   effect must be given to all parts of the writing. Lane-Wells Co. v. Schlumberger Well Surveying

23   Corp., 65 Cal. App. 2d 180, 184, 150 P.2d 251 (1944); Lemm v. Stillwater Land & Cattle Co.,

24   217 Cal. 474, 480, 19 P.2d 785 (1933) (meaning is to be obtained from the entire contract, and

25   not from any one or more isolated portions thereof); Nava v. Mercury Casualty Co., 118 Cal.

26   App. 4th 803, 806-07, 13 Cal. Rptr. 3d 816, 818 (2004) (same); Cal. Civ. Code § 1641 (same).

27          To the contrary, Google's interpretation of the terms, so as to allow it to charge 20% more

28   than a daily budget and to calculate a monthly budget which does not take into account paused

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1  days, creates an ambiguity within the contract (whatever its parameters), and creates ambiguities

2  as to daily budget and the right to pause.  See, e.g.,  Current FAQs, 261, "You can also pause

3  your campaigns completely at any time.  You won't accrue charges while your ads are paused,

4  and they'll remain paused until you resume them."  Defendant attempts to coordinate this

5  undeniable right to pause with its monthly budget that does not take into account paused days, by

6  stating that the right to pause "does not affect advertisers' monthly budgets, which is calculated

7  based on the number of days in the month times advertisers' daily budget, as long as the

8  campaign is active (i.e., not deleted and the term of the campaign has not ended)" Def.'s Moving

9  Mem., p. 16:5-7.  Such statement/conclusion is simply incredible.  Indeed, recognizing that

10  paused days must be excluded from the monthly budget calculation in order to be consistent with

11  the right to pause, Defendant adds the phrase "as long as the campaign is active" (which is not

12  even in its own citations to the FAQs) and then relies upon its new and contorted definition of

13  "active" as including paused days.

14       Irrespective of Defendant's strained efforts, given that Google is the undeniable drafter,

15  hornbook law prohibits acceptance of its own, defensive interpretation. Cal. Civ. Code § 1654

16  ("In cases of uncertainty . . . the language of a contract should be interpreted most strongly

17  against the party who caused the uncertainty to exist."); Powers v. Dickson, Carlson & Campillo,

18  54 Cal. App. 4th 1102, 1112, 63 Cal. Rptr. 2d 261(1997) (same); Kanner v. National Phoenix

19  Industries, Inc., 203 Cal. App. 2d 757, 760-61, 21 Cal. Rptr. 857 (1962) (same). See also Cal.

20  Civ. Code § 1653 (2006) Inconsistent words rejected ("Words in a contract which are wholly

21  inconsistent with its nature, or with the main intention of the parties, are to be rejected.").[13]

22  Furthermore, to the extent Google argues for an interpretation that creates an ambiguity, extrinsic

23  evidence, namely, Google's own AdWords tutorials and promotions, detailed in Plaintiffs'

24  moving papers, may be looked at, and they clearly do not support Defendant's position.  "The

25

26       [13]Albeit indicative of Google's sly contracting, Defendant cannot rely on its statement in
27  the AdWords terms that the contract should be interpreted as if both parties drafted it.  Not only
    are Plaintiffs not bound to the Terms, but such a provision, in a prototypical contract of adhesion,
28  one where the other party does not even see all the terms, is unconscionable and unenforceable.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION Case No: C05-03649 JW**

1    test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not

2    whether it appears to the court to be plain and unambiguous on its face, but whether the offered

3    evidence is relevant to prove a meaning to which the language of the instrument is reasonably

4    susceptible." <u>Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.</u>, 69 Cal. 2d 33,

5    37, 69 Cal. Rptr. 561, 442 P.2d 641 (1968) (in banc); <u>United States v. King Features</u>

6    <u>Entertainment, Inc.</u>, 843 F.2d 394, 398 (9th Cir. 1988).  Ironically, Google admonishes Plaintiffs

7    for testifying that they were bound by some FAQs and not others, when Plaintiffs – non-lawyers

8    – were correct, unknowingly articulating hornbook contract law that inconsistent provisions

9    cannot be enforced.

10         In sum, even if there were an enforceable contract, and even if the enforceable contract

11    included the snippets relied upon by Google, such words both, on their face and as per Google's

12    interpretation thereof, do not entitle Google to summary judgment on Plaintiffs' breach of

13    contract claim nor to summary adjudication on any issue underlying same.

14    **B.     Google Is Not Entitled To Summary Judgment On Plaintiffs' Claim For**
        **Breach Of The Covenant Of Good Faith And Fair Dealing**

15

16         The covenant of good faith and fair dealing, implied by law in every contract, prevents

17    one contracting party from unfairly frustrating the other party's right to receive the benefits of the

18    agreement actually made.  <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal. 4th 1, 36, 44 Cal. Rptr. 2d

19    370 (1995); <u>Celador Int'l, Ltd. v. Walt Disney Co.</u>, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004).

20    Assuming there were valid, enforceable terms, this would be a prototypical case of a breach of

21    the duty of good faith and fair dealing.  For example, even if the consensual terms of the contract

22    - becoming a sponsored link in exchange for payment of a "daily budget" - were not breached,

23    Google's actions cannot be said, as matter of law, to have neither frustrated the benefit of the

24    contract to advertisers nor the reasonable expectations of same.  Google does not deny that it

25    offered Plaintiffs the right to set a daily budget for advertising in order to control their costs.

26    However, Google unreasonably prevented Plaintiffs from receiving such benefit via its monthly

27    billing scheme which does not account for paused days.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

Doc. 154679           17

IV.    **CLAIMS OCCURRING MORE THAN 60 DAYS PRIOR TO THE
FILING OF THE ORIGINAL COMPLAINT ARE NOT BARRED**

The language relied upon by Defendant, in para. 7 of the Current Terms, "[t]o the fullest extent permitted by law, Customer waives all claims relating to charges unless claimed within 60 days after the charge . . .", does not cut-off Plaintiffs', nor class members', claims to 60 days prior to filing a lawsuit. First, for the reasons set forth in the contract discussion, supra, Plaintiffs cannot be deemed bound to terms of which they were not aware. Defendant makes no representation that the terms appeared on the screen at any time, nor does it indicate how the terms could have been accessed. Advertisers cannot be deemed to waive their right without proper notice thereof. See Point III, supra.

Second, and most importantly, the language, "waives all claims relating to charges unless claimed within 60 days after the charge," does not mean filing a lawsuit. Google's interpretation is made of whole cloth. As evidenced by e-mail correspondence between Plaintiffs and Google (including those referred to by Google), Plaintiffs repeatedly complained to Google promptly after the overcharges were received and months before they were compelled to file a suit to obtain the relief to which they and the other class members are entitled. See Levy Decl., ¶ 9 and Ex. E; Raphael Decl., Exs. 6 and 7 (copies of e-mail correspondence between Howard Stern and Google, and CLRB Hanson and Google, respectively.)

Lastly, the 60-day limitation is unreasonable. Google may not even provide credits within sixty days of the overage. See Def.'s Moving Mem., p. 18 (deciphering Mr. Stern's invoice, "the extra $0.51 is an overdelivery credit for a day from the prior month.") Google's statements as to Plaintiffs' review of their invoices are equally disingenuous. As this Court can see from the exhibits to the Stern Decl., the CLRB Hanson Decl., and the Schulman Decl., Google does not present its billing to advertisers in a readily comprehensible format.

V.    **PLAINTIFFS WERE DAMAGED**

As detailed in the Stern Decl. and the CLRB Hanson Decl., and the exhibits thereto, Plaintiffs were damaged. The extent of which is not before this Court on this motion. Relevant to this motion, Google does not deny that it billed Plaintiffs more than their daily budget on

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE
INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION
Case No: C05-03649 JW

1    given days, nor that it billed them more than their daily budget times the number of days their ad

2    ran.  Rather, Defendant argues Plaintiffs were not damaged because they were billed according to

3    Google's interpretation of "the Agreement"– meaning the total charges were within the so-called

4    monthly budget albeit without taking into account paused days, which is the heart of this case.  If

5    Google's position is not accepted by this Court, Plaintiffs were damaged.

6                                    **CONCLUSION**

7            For the reasons set forth herein, and in the Declaration of Lester L. Levy in Opposition to

8    Defendant's Motion for Summary Judgment, or in the Alternative, For Summary Adjudication

9    and in all of the other documents referred to herein, Defendant Google's Motion for Summary

10   Judgment, or in the Alternative, Summary Adjudication, should be denied in its entirety.  Google

11   is not entitled to judgment on Plaintiffs' claims.  Nor is Google entitled to summary adjudication

12   on its claims that it may exceed an advertiser's daily budget by 20% on any given day under any

13   AdWords agreement; that it may base an advertiser's charges in a billing period on the number of

14   days in that month multiplied by the advertiser's daily budget; and that claims occurring more

15   than 60 days prior to the date of the original complaint are barred.

16   Dated: October 16, 2006

17                                    WOLF POPPER LLP

18                                    _____/s/_____
                                     Lester L. Levy (*Admitted Pro Hac Vice*)
19                                    Michele F. Raphael (*Admitted Pro Hac Vice*)
                                     845 Third Avenue
20                                    New York NY 10022
                                     Telephone: 212.759.4600
21                                    Facsimile: 212.486.2093

22                                    and

23                                    ALEXANDER, HAWES & AUDET, LLP
                                     William M. Audet  (SBN 117456)
24                                    Jason Baker (SBN 212380)
                                     152 North Third Street, Suite 600
25                                    San Jose, CA 95112
                                     Telephone: 408.289.1776
26                                    Facsimile: 408.287.1776

27
                                     *Attorneys for Plaintiffs and the Proposed Class*
28

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**
**Case No: C05-03649 JW**