CLRB Hanson Industries, LLC et al v. Google Inc. Doc. 98

DAVID T. BIDERMAN, Bar No. 101577
JUDITH B. GITTERMAN, Bar No. 115661
M. CHRISTOPHER JHANG, Bar No. 211463
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: (415) 344-7000
Facsimile: (415) 344-7050
Email: DBiderman@perkinscoie.com
Email: JGitterman@perkinscoie.com
Email: CJhang@perkinscoie.com

Attorneys for Defendant Google Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE, INC.,

Defendants.

CASE NO. C 05-03649 JW

**GOOGLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Fed. R. Civ. P. 56

Date: November 6, 2006
Time: 9:00 a.m.
Ctrm: 8
Judge: Hon. James W. Ware

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1
[41063-0023/11932641_1.DOC]
Dockets.Justia.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' case can be distilled down to two claims: (1) Google was not allowed to exceed charges of an AdWords advertiser's daily budget in any given day; and (2) Google was not allowed to include paused days in calculating charges over the course of a month. However, the AdWords Agreement (the "Agreement") provides, as each plaintiff acknowledged at deposition, that Google may charge up to 20% more than the daily budget in a given day, and that the total charges for the month will not exceed the average daily budget times the number of days in the month. These terms are clearly set forth in the Frequently Asked Questions (the "FAQs"), which together with the AdWords Program Terms (the "Program Terms"), comprise the AdWords Agreement.

Plaintiffs argue that even though these terms are currently part of the AdWords Agreement and were in the Agreement at the inception of the contract, the terms apply to other AdWords advertisers but do not apply to them because: (1) they did not read the contract, and (2) they do not like the terms. These are not valid reasons for ignoring the express terms of the Agreement.

Plaintiffs' reasoning is flawed as well as inconsistent. They argue on the one hand that the AdWords Agreement is unenforceable, and on the other hand that the Agreement consists of only one term: "the contract is simply to be a sponsored link in exchange for paying one's own daily budget." This assertion is not supported by either the facts or the law. There is an enforceable contract permitting Google to charge up to 20% more than the daily budget on any given day, and to calculate an average daily budget over the course of a month that includes paused days. Plaintiffs are not entitled to unilaterally rewrite the contract.

Plaintiffs cannot prevail on a single one of their causes of action. Their breach of contract claim fails because Google has complied with the express terms of the Agreement. The contractual provisions that plaintiffs claim were breached are not part of the Agreement.

- 1 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1 [41063-0023/11932641_1.DOC]

Plaintiffs cannot point to any provision in the Agreement with which Google has failed to comply. Google is authorized by the Agreement to charge up to 120% of the daily budget in a day and to average daily charges out over the course of a month.

Plaintiffs' claims for false advertising and false and deceptive trade practices cannot succeed because plaintiffs cannot demonstrate that Google engaged in any false or misleading advertising or any unfair, deceptive or unlawful trade practice. Plaintiffs admit that they did not even read the screenshot from an online tutorial regarding daily budget (the "Screenshot") upon which they purport to base their claims until after their current litigation counsel showed it to them. They did not read it before signing up for the AdWords program. Moreover, the Screenshot is not misleading. Plaintiffs cannot base any UCL claim upon the FAQs since they testified that they never bothered to read the FAQs. Reliance is a key element of a UCL action and it is undisputed that plaintiffs did not rely on any of the statements in the Screenshot or FAQs they claim are deceptive.

As to the statements which plaintiffs contend "enticed" them to become AdWords advertisers, these statements were accurate and plaintiffs have not produced a scintilla of evidence to the contrary. First, it is true that there is a daily budget and it is clearly defined and explained in the FAQs. Second, it is correct that AdWords advertisers have the right to control their own costs, by among other things, logging onto their accounts and setting a daily budget. Third, it is true that AdWords advertisers have a right to set their own maximum: their charges will not exceed their daily budget averaged out over the course of each month. Fourth, the statement that AdWords advertisers do not accrue charges on days their ads are paused is true. When an ad is paused, it will not be shown and cannot be clicked. If an ad is not shown or clicked, the advertiser will not be charged.

Plaintiffs cannot prevail on their unjust enrichment claim because Google was not unjustly enriched. Moreover, there can be no recovery under an unjust enrichment theory in this case because there is an enforceable agreement. Finally, all of plaintiffs' claims relating to

- 2 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1 [41063-0023/11932641_1.DOC]

charges incurred more than 60 days before the lawsuit was filed are barred by the contractual limitations period in the Agreement.

## II. RESPONSE TO COUNTERSTATEMENT OF FACTS

### A. Plaintiffs Agreed to the Program Terms and FAQs When They Entered the AdWords Agreement.

In order to create an AdWords account, advertisers must agree to the AdWords Agreement. The AdWords Agreement is accessible to the advertiser during the account sign-up process. Declaration of Heather Wilburn ("Wilburn Decl."), ¶ 3; Declaration of Michael Schulman ("Schulman Decl.") ¶ 10. This process was in place both in July 2002 and October 2003, when plaintiffs became AdWords advertisers. Wilburn Decl. ¶ 4; Schulman Decl. ¶ 10. Google periodically updates the terms of the AdWords Agreement. When this occurs, all advertisers are required to accept these new terms in order to continue advertising with AdWords. Advertisers have a limited amount of time (generally 30 days from the initial notification of the new terms) to log in and accept the new terms; otherwise, their accounts are paused (i.e., no ads are displayed) until the change has been made. Wilburn Decl. ¶ 5; Schulman Decl. ¶ 11.

### B. The Agreement Consists of the Program Terms and FAQs.

The AdWords Agreement consists of the AdWords Program Terms and the AdWords FAQs. Schulman Decl., at ¶ 10; Jhang Decl., Exhibit C (Google Inc. Advertising Program Terms printed on August 15, 2006). At the time Plaintiffs CLRB Hanson and Stern signed up for AdWords in July 2002 and October 2003, respectively, the Agreement consisted of the Standard Terms and Conditions, a predecessor to the current Program Terms, and the FAQs. *See* Declaration of Leslie Altherr ("Altherr Decl."), Exhibit 1 (July 2002 Standard Terms and Conditions), Exhibit 2 (October 2003 Standard Terms and Conditions). The Screenshot attached as Exhibit A to Stern's and Hanson's declarations is neither in the Program Terms nor in the FAQs, and is not part of the Agreement.

- 3 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1

[41063-0023/11932641_1.DOC]

## III. ARGUMENT

### A. The AdWords Agreement Has Not Been Breached.

In their opposition, plaintiffs do not provide any evidence of a breach of the Agreement by Google. As noted above, the Agreement does not preclude Google from exceeding the daily budget in a given day or averaging out daily charges over the number of days in the month. Far from precluding Google's billing practice, the Agreement expressly states that Google may deliver up to 120% of the daily budget in clicks on a given day, and confirms that Google will not charge more than the daily budget times the number of days in the month.

The FAQs provide: "On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for. . . . However, you'll never be charged more than your average daily budget over the course of a month." See, Exhibit D to Jhang Declaration, (FAQs, p. 84 of 489). The AdWords FAQs available to plaintiffs when they signed up for AdWords also provided a similar disclosure to advertisers. Altherr Decl., Exhibit 3 (July 2002 FAQs, p. GOOG-HN 20904 ("Traffic is not constant from day to day . . . To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies. If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for that month)), Exhibit 4 (October 2003 FAQs, p. GOOG-HN 20888 (same)). Plaintiffs' assertion that there was no monthly calculation in the Stern or Hanson FAQs is false.

Plaintiffs ignore the plain facts. Google has never argued that it can charge an AdWords advertiser 120% of the daily budget every single day of the month. Google complies with its expressly stated practice of never charging an advertiser more in any month than the daily budget times the number of days in the month. As is explained in the FAQs and in correspondence with plaintiffs, clicks may be delivered at 120% of the daily budget on some days to make up for shortfalls on other days in that month. Google designed this system to address the natural fluctuations in click traffic on the Internet and thereby permit advertisers to more closely meet

- 4 -

Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1 [41063-0023/11932641_1.DOC]

their targeted advertising goals. This is illustrated by a simple example: if an advertiser has a daily advertising budget of $10, and if only $8 worth of clicks are obtained on one day in January, the next day in January the system will permit up to $12 worth of clicks. The most this advertiser would spend in January in this example would be $310 ($10 daily budget times 31 days in January). If the advertiser received extra clicks that exceeded $12 in a day or $310 in the month, Google would not charge the advertiser for the benefit of those clicks. Instead, an over-delivery credit would appear on the advertiser's invoice. Google's system helps advertisers achieve their advertising goals without exceeding their budgets.

The cases plaintiffs cite to support their theory that the AdWords Agreement is not enforceable because they did not read the FAQs are inapposite. In *Specht v. Netscape Communs. Corp.,* 306 F.3d 17 (2d Cir. 2002), there was no requirement that the user accept the terms of the agreement. Here, plaintiffs could not have advertised in the AdWords program without accepting the terms and conditions and the FAQs. Wilburn Decl., ¶¶ 3-4; Schulman Decl. ¶ 10. As noted by the court in *Specht*, "the few courts that have had occasion to consider click-wrap contracts have held them to be valid and enforceable. *See, e.g., In re RealNetworks Inc. Privacy Litigation*, No. 00C1366, 2000 WL 631341 (N.D. Ill. May 8, 2000); *Hotmail Corp. v. Van$ Money Pie, Inc.*, No. C 98-20064, 1998 WL 388389 (N.D. Cal. April 16, 1998)." See also, *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 at *5 (N.D. Cal. 2005), citing *Register.com v. Verio, Inc.*, 356 F.3d 393, 401-402 (2d Cir. 2004) (repeated use of web pages can form the basis of imputing knowledge of terms of service).

Plaintiffs assented to the AdWords Agreement, comprised of the Program Terms (previously Terms and Conditions) and FAQs when they first signed up and each time they renewed acceptance of the Agreement. Jhang Decl., Exhibit C (Program Terms). Altherr Decl."), Exhibit 1 (Hanson July 2002 Standard Terms and Conditions), Exhibit 2 (Stern October 2003 Standard Terms and Conditions). In each case, the Program Terms clearly state that the FAQs are incorporated in the Agreement. Plaintiffs' acceptance of the Program Terms included acceptance of the FAQs, which they could review prior to accepting the Program Terms. Their

- 5 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1 [41063-0023/11932641_1.DOC]

failure to read the contract does not nullify its binding effect. *Powers v. Dickson, Carlson & Campillo*, 54 Cal.App.4th 1102, 1109 (1997); *Rowland v. PaineWebber Inc.*, 4 Cal.App.4th 279, 287 (1992). The FAQs which plaintiffs now contest were also explained by Google in response to plaintiffs' emails on numerous occasions. Indeed, the plaintiffs acknowledged the FAQs at their depositions, and their contention that "acknowledgement of the words clearly lacks any legal significance" is without merit. (Plaintiffs' Opposition at 15:1).

Plaintiffs' attempt to introduce into evidence the Screenshot attached to their Declarations is not proper. It is outside the parties' integrated Agreement, and it cannot be considered in interpreting the contract. *See* Cal. Civ. Proc. Code § 1856. *Chaknova v. Wilbur-Ellis Co.*, 69 Cal. App. 4th 962, 968 (1999) ("[m]atters extrinsic to an integrated contract will not be considered to modify the unambiguous language of those contracts"). Moreover, the Screenshot has no bearing on the plaintiffs' decision to join the AdWords program since they did not see it. Under the undisputed facts, plaintiffs do not have a cause of action for breach of contract.

**B. There Has Been No Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiffs' claim for breach of the implied covenant is identical to their contract claim, and fails for the same reason. *Bionghi v. Metropolitan Water Dist. of S. Cal.*, 70 Cal.App.4th 1358, 1370 (1999). Plaintiffs did not lose the benefit of the bargain. Their unfounded expectations that clicks would never exceed the daily budget in a single day, and that paused days should be excluded when multiplying daily budget times the days in the month, were not reasonable because they conflict with the written agreement. *Celador Int'l. Ltd. V. Walt Disney Co.*, 347 F.Supp.2d 846, 852 (C.D. Cal. 2004).

- 6 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1

[41063-0023/11932641_1.DOC]

### C. The UCL Claims Cannot Survive Google's Summary Judgment Motion.

#### 1. Plaintiffs Cannot Prevail on Their False Advertising Claim or Unfair Trade Practices Claim Because They Do Not Have Standing and Cannot Prove Reliance.

Neither Stern nor Hanson has standing for a false advertising claim based on the Screenshot. Proposition 64 changed the standing requirements for Bus. & Prof. Code § § 17200 and 17500 claims. As a result of the amendments, an individual or representative claim may only be brought by a person "who has suffered injury in fact and has lost money or property as a result of a violation of this chapter." Both Stern and Hanson have admitted that they never saw the Screenshot they attached as Exhibit A to their declarations until their attorneys showed it to them in the course of this litigation. Plaintiffs cannot have suffered injury or lost money or property as a result of allegedly untrue or misleading statements in something they had never even seen prior to this lawsuit. Jhang Decl., Exhibit A (Hanson Dep., 45:24 – 46:2), Exhibit B (Stern Dep., 92:11 – 94:7, 97:3 – 97:13).

Since they did not see the Screenshot before entering the AdWords Agreement, neither Stern nor Hanson relied upon it in entering the Agreement. Reliance by *each plaintiff* is required for a section 17200 or 17500 claim, as a result of the Proposition 64 amendments to the statute. *Pfizer Inc. v. Super. Ct.*, 141 Cal. App. 4th 290, 296 (2006).[1] Plaintiffs would like to ignore the holding of *Pfizer*, and claim that it is contrary to the holding in *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457 (2006). However, *McKell* is not on point. *McKell* was decided on demurrer and the issue before the court was whether the claim was properly pled with general allegations of ultimate fact rather than evidentiary facts. *Id.* at 1469. The question of whether the plaintiffs actually relied was not before the court.

In *Pfizer*, the plaintiffs brought an action under sections 17200 and 17500 claiming that Pfizer advertised Listerine mouthwash in a misleading manner by indicating the use of Listerine

---

[1] Plaintiffs incorrectly state that *Pfizer* is on appeal. Although a petition for review to the California Supreme Court was filed, it has not (as of Ocotber 20, 2006) been granted.

- 7 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication** [41063-0023/11932641_1.DOC]
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1

can replace the use of dental floss in reducing plaque and gingivitis. The court held that a plaintiff "would have had to read Pfizer's label . . . or some similar statement and relied thereon in buying Listerine." *Pfizer*, at 306. Here, notwithstanding that neither the Screenshot or FAQs are misleading, because they failed to read the Screenshot or the FAQs, plaintiffs cannot prove reliance upon them in entering the transaction, an essential element of their claim.

**2. Plaintiffs Cannot Prevail on Their Unfair Trade Practices Claim Because They Cannot Point to Any Unfair, Unlawful, Deceptive or False Statement.**

**a. There is a Daily Budget and it is Clearly Defined and Explained in the FAQs.**

Plaintiffs' unfair trade practices claim also fails because they cannot point to any unfair, unlawful, deceptive or false statement. There is nothing misleading about the daily budget and the use of a daily budget is not an unfair trade practice. The daily budget is described as "the amount you're willing to spend on a specific AdWords campaign each day." Schulman Decl., ¶ 9; Jhang Decl., Exhibit D (FAQs, p. 84 of 489). The FAQs further state that:

> AdWords displays your ad as often as possible while staying within your daily budget. When the budget limit is reached, your ads will typically stop showing for that day. How quickly your ads are shown during a given day is determined by your ad delivery setting.
>
> On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for. This helps make up for other days in which your daily budget is not reached. However, you'll never be charged more than your average daily budget over the course of a month. For example: if your daily budget is $10 and the month has 30 days, you might be charged up to $12 on any single day but your monthly charges will never exceed $300.

See also, Exh. D to Jhang Decl., FAQs, p. 125 of 489. Given the clear explanation of the daily budget and monthly averaging, there is nothing false or misleading about it.

**b. AdWords Advertisers Have the Right to Control Their Own Costs and Have a Right to Set their Own Maximum.**

AdWords advertisers have the ability to control their own costs and set a maximum, by selecting the cost per click and their daily budget. Schulman Decl., ¶¶ 5-7. Advertisers are not charged more than the daily budget times the number of days in the month. Any amount charged

- 8 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1 [41063-0023/11932641_1.DOC]

in excess of that number is credited back in an overdelivery credit, and this credit reflects extra clicks or impressions that an advertiser received but for which the advertiser is not charged. Jhang Decl., at Exhibit D (FAQs, p. 97 of 489). Advertisers also receive overdelivery credits when they accrue clicks or impressions that would amount to charges in excess of 120% of their daily budget in a single day. *See id.*, at Exhibit D (FAQs, p. 84 of 489, p. 97 of 489, p. 125 of 489). The credits are automatically issued to advertisers and are listed in their invoices. *Id.* Thus, advertisers are not billed in excess of the limits set forth in their AdWords Agreement.

**c. AdWords Advertisers Do Not Accrue Charges on Days their Ads are Paused.**

No charges accrue during a paused period because no ads are displayed and therefore no clicks or impressions accrue. *See* Jhang Decl., Exhibit D (FAQs, p. 261 of 489). However, pausing does not change the number of days in a month, which is the number used to calculate the maximum an advertiser will be charged in a month (i.e., daily budget times number of days in the month). Nothing in the Agreement or FAQs suggests that pausing affects maximum monthly charges.

**D. Plaintiffs May Not Recover Under an Unjust Enrichment Theory Because There is a Binding Contract Between the Parties and Google Has Not Been Unjustly Enriched.**

Plaintiffs are unable to establish an unjust enrichment claim. The Ninth Circuit has held that "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). "'There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.'" *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) quoting *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975); *see also Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996).

The AdWords Agreement is an enforceable, binding contract. Plaintiffs have provided no authority for disregarding the Agreement just because they do not like some of the terms.

Plaintiffs could not have advertised on the AdWords system without agreeing to the AdWords Agreement. Wilburn Decl., ¶ 3-4. Moreover, both plaintiffs admitted that they renewed their acceptance of the AdWords Agreement in order to continue advertising under the AdWords program. Jhang Decl., Exhibit A (Hanson Dep., 42:6 – 43:10), Exhibit B (Stern Dep., 142:7 – 143:25). Since a valid and enforceable agreement governs the parties, plaintiffs cannot recover for unjust enrichment and summary judgment should be entered against plaintiffs on this claim.

**E. The Contractual Limitations Period in the Agreement is Enforceable.**

Under California law, an agreement that provides a shorter limitations period will be enforced so long as the shorter period is reasonable. *See Beeson v. Schloss*, 183 Cal. 618, 622-23 (1920). The 60 days limitation period in the AdWords Agreement is reasonable, particularly given that Plaintiffs acknowledged their invoices were available to them for review of the charges through their AdWords accounts. They received invoices either after 30 days, or when they reached their credit limit, whichever came first for each invoice. Jhang Decl., Exhibit D (FAQs, p. 126 of 489). Plaintiffs had ample time to contest charges within the 60 day period.

## IV. CONCLUSION

For all of the reasons stated herein and in its memorandum of points and authorities in support of its motion, Google respectfully requests that the Court grant its motion for summary judgment as to each of plaintiffs' claims, or in the alternative, summary adjudication on the following issues of fact and law: (1) that Google is entitled, under the AdWords Agreement, to exceed an advertiser's daily budget by up to 20% on any given day, (2) that Google may base an advertiser's charges in a billing period on the number of days in that month multiplied by the advertiser's daily budget, and (3) that Plaintiffs' claims, and the claims of the putative class members, are barred for alleged breaches occurring more than 60 days prior to August 3, 2005.

DATED: October 23, 2006. **PERKINS COIE LLP**

By /S/
David T. Biderman
Attorneys for Defendant Google Inc.

- 10 -

**Google's Reply in Support of Motion for Summary Judgment or in the Alternative, Summary Adjudication**
Case No. C05-03649 JW
41063-0023/LEGAL11932641.1
[41063-0023/11932641_1.DOC]