1  Lester L. Levy (*Admitted Pro Hac Vice*)
   Michele F. Raphael (*Admitted Pro Hac Vice*)
2  WOLF POPPER LLP
   845 Third Avenue
3  New York NY 10022
   Telephone: 212.759.4600
4  Facsimile: 212.486.2093
   e-mail: llevy@wolfpopper.com
5  e-mail: mraphael@wolfpopper.com

6  William M. Audet (SBN 117456)
   Jason Baker (SBN 212380)
7  ALEXANDER, HAWES & AUDET, LLP
   152 North Third Street, Suite 600
8  San Jose, CA 95112
   Telephone: 408.289.1776
9  Facsimile: 408.287.1776
   e-mail: waudet@alexanderlaw.com
10 e-mail: jbaker@alexanderlaw.com

11

   *Attorneys for Plaintiffs and the Proposed Class*

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN JOSE DIVISION

15

16  CLRB HANSON INDUSTRIES, LLC d/b/a )   CASE NO: C05-03649 JW
    INDUSTRIAL PRINTING, and HOWARD   )
17  STERN, on behalf of themselves and all )   **PLAINTIFFS' REPLY MEMORANDUM**
    others similarly situated,         )   **OF POINTS AND AUTHORITIES IN**
18                                      )   **SUPPORT OF PLAINTIFFS' MOTION**
                        Plaintiffs,    )   **FOR PARTIAL SUMMARY JUDGMENT**
19                                      )
    vs.                                 )   Fed. R. Civ. P. 56
20                                      )
    GOOGLE, INC.,                       )   Date:  November 6, 2006
21                                      )   Time:  9:00 a.m.
                        Defendant.      )   Dept.: 3
22                                      )   Judge: Honorable James W. Ware

23

24

25

26

27

28

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Partial Summary Judgment
Case No: C05-03649 JW**

Doc. 154851

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    THE UNDISPUTED FACTS DEMONSTRATE THAT GOOGLE VIOLATED CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 AND 17200 ET SEQ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Google's Promotion of its AdWords Program and Its Actual Billing System Thereunder Was False, Misleading, Unfair and Deceptive In Violation of Cal. Bus. & Prof. Code §§ 17500 and 17200 et seq. . . . . 3

        B.    There is No Factual Issue Nor Legal Defense to Prevent Granting Summary Judgment on Liability to Plaintiffs . . . . . . . . . . . . . . . 4

    II.    GOOGLE HAS NOT RAISED ANY FACTUAL OR LEGAL DEFENSE TO PLAINTIFFS' ENTITLEMENT TO SUMMARY JUDGMENT AS TO LIABILITY ON THEIR CLAIM FOR UNJUST ENRICHMENT . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851        i

# TABLE OF AUTHORITIES

## CASES

Aron v. U-Haul Co., of Cal.,
    No. B181756, 2006 Cal. App. LEXIS 1535 (Oct. 3, 2006) . . . . . . . . . . . . . . . . . . . . 4, 5, 7

Cortez v. Purolator Air Filtration Products Co.,
    23 Cal. 4th 163, 96 Cal. Rptr. 2d 518 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fleming v. Dollar Tree Stores, Inc.,
    No. C06-03409 MJJ, 2006 U.S. Dist. LEXIS 67749 (N.D. Cal. Sept. 15, 2006) . . . . . . . 6

Kasky v. Nike, Inc.,
    27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McKell v. Washington Mutual, Inc.,
    142 Cal. App. 4th 1457 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pfizer Inc. v. Superior Court,
    141 Cal. App. 4th 290, 45 Cal. Rptr. 3d 840 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

R & B Auto Center, Inc. v. Farmers Group, Inc.,
    140 Cal. App. 4th 327, 44 Cal. Rptr. 3d 426 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

## STATUTES

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 10

Cal. Bus. & Prof. Code § 17204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Bus. & Prof. Code § 17205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cal. Bus. & Prof. Code § 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 10

Cal. Bus. & Prof. Code § 17534.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Partial Summary Judgment
Case No: C05-03649 JW**

Doc. 154851                                              ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs submit this reply memorandum in support of their motion for partial summary judgment as to liability on their claims for false advertising; unfair, misleading and deceptive conduct; and unjust enrichment.

Google, Inc. ("Google") told advertisers that AdWords would allow them to control their own advertising costs, to set their own daily budgets - the maximum they want to pay each day, to pause their ads without charge, to pay only their daily budgets each day their ads ran, and assured them it would deliver their ads so as to stay within their daily budgets each day. <u>Plaintiffs' Statement of Undisputed Facts ("Pls.' Undisputed Facts")</u>, <u>Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Pls.'Moving Mem.")</u>, at 2-8.  Yet, Google admits that it bills advertisers up to 20% more than their daily budgets any day their ads run and that it holds them liable for monthly budgets which Google, itself, calculates by multiplying each daily budget by the number of days in a month - including both paused days and days their daily budgets are not reached.  The legal issues remaining for this Court are whether the statements Google disseminated about its AdWords program were false and/or misleading in violation of Cal. Bus. & Prof. Code § 17500 (and therefore, § 17200); whether Google's conduct in promoting AdWords and/or its billing thereunder, was unfair, misleading and/or deceptive in violation of Cal. Bus. & Prof. Code § 17200; and whether Google has been unjustly enriched at Plaintiffs' expense.[1]  The undisputed facts say yes.

Given these undisputed facts, Google, in order to try to avoid summary judgment for Plaintiffs, tries mightily to reconcile a few of its statements with its actual billing practices.[2]  For example, forced to address the Google screenshot submitted to this Court which clearly reads

---

[1] Google continues to disseminate statements which contradict its billing practices. <u>See</u> Pls.' Undisputed Facts.

[2] Google ignores the majority of its misrepresentations and omissions detailed by Plaintiffs and continues to look at this case through blinders, focusing upon one only of its (mis)statements.

Plaintiffs' Reply Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Partial Summary Judgment
Case No: C05-03649 JW

Doc. 154851

1  "Ad system ensures you never pay more than your daily budget multiplied by the number of
2  days in a month your campaign was active," <u>Pls.' Undisputed Facts</u>, ¶17, Google argues that an
3  ad is "active" even though it is paused (to try to justify inclusion of paused days in its monthly
4  calculation).  However, the campaign change history log submitted by Google clearly shows that
5  an ad is either paused or active - not both!  <u>Supplemental Declaration of Leslie Altherr in</u>
6  <u>Support of Google's Opposition to Plaintiffs' Motion for Partial Summary Judgement</u> (the
7  "Supp. Altherr Decl."), Ex. 1 ("status changed from Active to Paused" or "status changed from
8  Paused to Active").

9    Defendant even tries to shift the blame to Plaintiffs by faulting them for not having
10  lowered their daily budget, i.e., to leave room for the overbilling, and for continuing to use
11  Google, even though Google boasts that its search engine is "one of the world's most-used
12  search engines."  It is Defendant's conduct, not Plaintiffs' conduct, that is improper and
13  deceptive and must change.  Google must conform its billing practices to its representations or
14  *vice versa*.  It must also disgorge the excess revenues it has improperly received at Plaintiffs'
15  expense.  Google's operation of one of the most-used search engines (arguably, the most-used
16  search engine) does not give it *carte blanche* to act deceptively.  Indeed, its dominance
17  underscores the importance that it conduct its business fairly and in accordance with the law.

18  **REPLY STATEMENT OF UNDISPUTED FACTS**

19    Defendant Google does not take issue with any of Plaintiffs' Undisputed Facts - other
20  than to claim that Plaintiffs did not suffer damages because they were billed in accordance with
21  Google's proffered billing method.  Google's objections to the declarations of Plaintiffs are not
22  properly motions to strike and demonstrate Google's lack of a real defense to Plaintiffs' claims.
23  It is ironic that Google objects to these declarations given its submission and reliance upon the
24  declaration of engineer Schulman, which lacks any foundation for his alleged personal
25  knowledge as to what the sign up process required in 2002 and, curiously, lacks any supporting
26  documents.

27
28

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                                    2

# ARGUMENT

## I. THE UNDISPUTED FACTS DEMONSTRATE THAT GOOGLE VIOLATED CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 AND 17200 ET SEQ

### A. Google's Promotion of its AdWords Program and Its Actual Billing System Thereunder Was False, Misleading, Unfair and Deceptive In Violation of Cal. Bus. & Prof. Code §§ 17500 and 17200 et seq.

As detailed in approximately 10 pages of text quoting Google's (mis)representations, Pls.' Undisputed Facts, Pls.' Moving Mem., at 2-11, Google disseminated statements about AdWords which were contrary to its actual billing thereunder.  For example, Google represented and/or admitted that: during the sign up process, an advertiser sets a daily budget, Pls.' Undisputed Facts, ¶ 4; setting your own "daily budget" is a key feature of AdWords, Pls.' Undisputed Facts, ¶ 6; an AdWords webpage entitled "AdWords Advantages" represents that AdWords enables advertisers to "Fully control your ad budget," Pls.' Undisputed Facts, ¶ 7; "a daily budget enables you to set a limit on the amount you spend each day. . . . Google will show your ads evenly throughout the day at a frequency that falls within the budget you've set," Pls.' Undisputed Facts, ¶ 13. A; "It all boils down to knowing your own goals and letting us know what they are. . . . [Y]ou pay only for clicks on your AdWords ads, and you can control that by telling us how much you are willing to pay per click and per day," Pls.' Undisputed Facts, ¶ 13 C; Google will "deliver your ads evenly throughout the day to keep your costs [clicks] at or below your daily budget," Pls.' Undisputed Facts, ¶ 13,  "No minimum contract requirements or other 'lock-in' rules apply. . . you control the maximum you want to spend per day." Pls.' Undisputed Facts, ¶ 16.b; "you never pay more than your daily budget multiplied by the number of days in a month your campaign was active," Pls.' Undisputed Facts, ¶ 17,  "You can also pause your campaigns completely at any time. You won't accrue charges while your ads are paused," Pls.' Undisputed Facts, ¶¶18 a and b, 19.  "Monthly budget" was not even mentioned in the FAQs in effect when Plaintiffs Stern and CLRB Hanson enrolled in AdWords.  Pls.' Undisputed Facts, ¶ 15.  Yet, in reality, Google locks advertisers into  monthly budgets and uses the days they pause their ads and the days their ads do not reach their daily budgets to absorb overages from the days the ads ran - making its statements and its conduct, false, misleading and

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                    3

1  deceptive. The semantic games Google plays to try to justify its billing, i.e., claiming that an ad
2  is "active" when it is "paused;" telling advertisers that they will not "accrue" charges while their
3  ads are paused when Google uses the paused days to "absorb" excess charges; and claiming that
4  paused days are included in Google's (already suspect) monthly budget because they are not
5  explicitly excluded, even though advertisers have the right to pause their ads, only serve to
6  further demonstrate that Google's statements are misleading and deceptive. "'A perfectly true
7  statement couched in such a manner that it is likely to mislead or deceive the consumer, such as
8  by failure to disclose other relevant information, is actionable.'" Aron v. U-Haul Co., of Cal.,
9  No. B181756, 2006 Cal. App. LEXIS 1535, at *15-16 (Oct. 3, 2006) (citations omitted).

### B. There is No Factual Issue Nor Legal Defense to Prevent Granting Summary Judgment on Liability to Plaintiffs

As anticipated in Pls.' Moving Mem., and as set forth in great detail in Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Google Inc.'s Motion for Summary Judgment, or in the Alternative, for Summary Adjudication (Pls.' Opp. Mem.), the one snippet buried within hundreds of pages of FAQs and upon which Defendant exclusively relies,[3] does not take away Plaintiffs' entitlement to summary judgment as to liability on their claims under §§ 17200 and 17500 - neither on its face nor especially when considered in context. Pls.' Opp. Mem., at 10-12, 15-17. The words simply do not say what Defendant would like this Court to hold they say, namely, that Google can bill more than the daily budget and not account for paused days. Moreover, if the FAQ were to be interpreted as Google wishes, it would contradict every other representation (see p. 3, supra), so that Google's conduct would still be unfair, misleading and deceptive and its promotions would still be false and misleading.

---

[3] Why did I receive more clicks than my daily budget on a particular day? Traffic is not constant from day to day. For example, fewer people search the Web on weekends than during the week. To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies. If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for that month.
(Hanson FAQs, GOOG-HN 20904; Stern FAQs, GOOG-HN 20888.)

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                4

1    Defendant's references to a contract, enforceable or otherwise, are a red herring. As
2 detailed in Pls.' Opp. Mem., at 7, the (non)existence of an enforceable agreement between the
3 parties is irrelevant to false advertising and deceptive conduct claims. R & B Auto Center, Inc.
4 v. Farmers Group, Inc., 140 Cal. App. 4th 327, 44 Cal. Rptr. 3d 426 (2006). See also Aron v. U-
5 Haul Co., of Cal., 2006 Cal. App. LEXIS 1535 (upholding § 17200 claim while dismissing
6 breach of contract claim). Notable, however, referring to the tutorial screen, Google argues
7 "[g]iven that plaintiffs did not know about [it], it could not have formed part of the parties'
8 Agreement." Opposition to Plaintiffs' Motion for Partial Summary Judgment, ("Def.'s Opp."),
9 at 10. Hence, Google agrees with Plaintiffs' point they could not possibly be bound to the afore-
10 mentioned, now-famous, FAQ snippet. Defendant's claim that Plaintiffs acknowledged this
11 same FAQ was part of their "Agreement" is factually and legally wrong. Plaintiffs merely
12 acknowledged the existence of this FAQ within the voluminous document when defense counsel
13 referred them directly thereto.[4] The (non)existence of a binding agreement and the terms thereof
14 is necessarily a legal determination to be made by a court. Moreover, the fact that the Google
15 AdWords team used similar, if not the exact language from this one FAQ in their e-mail
16 responses to Plaintiffs' complaints is irrelevant.[5] Plaintiffs never denied Google's position, and,
17 in fact, brought this lawsuit because they disagreed with it and were unable to obtain redress
18 from Google.
19    Defendant also fails to establish any bar to the otherwise appropriate grant of summary
20 judgment to Plaintiffs on the basis of the remedy sought and/or available. The remedies under

---

[4] Plaintiffs, did not agree to Defendant's interpretation thereof. Stern Tr., 120:16::121:10 "Q. And is it your position that, notwithstanding that language, if Google delivers and charges you for $11 worth of advertising on a day in which you have a daily budget of 10, that even though that is less than 120 percent of your daily budget, it is your position today that Google has violated the terms and conditions of its relationship with you? A. Yes. For two reasons. One is, delivering isn't the same as charging. And the second is, under 'What is a daily budget,' the very first sentence is really clear to me, a daily budget enables you to set a limit on the amount you spend each day. So if I have a $10 daily budget, I would think that is the amount I'm going to be spending that day. 11 is more than 10, 11 shouldn't be allowed."

[5] This is the language Defendant refers to as having been in Plaintiffs' initial complaint.

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                            5

1 Section 17200 and 17500 are "cumulative to each other and to the remedies or penalties
2 available under all other laws of this state." Cal. Bus. & Prof. Code §§ 17205 and 17534.5;
3 <u>Cortez v. Purolator Air Filtration Products Co.</u>, 23 Cal. 4th 163, 96 Cal. Rptr. 518 (2000).
4 Plaintiffs seek restitution, and "[r]estitution, including restitutionary disgorgement, of profits, is
5 a proper relief under § 17200." <u>Fleming v. Dollar Tree Stores</u>, No. C06-03409, 2006 U.S. Dist.
6 LEXIS 67749, at *22 (N.D. Cal. Sept. 15, 2006) (J. Jenkins); <u>Cortez</u>, 23 Cal. 4th 163 at 173 ("A
7 UCL action is an equitable action by means of which a plaintiff may recover money or property
8 obtained . . . through unfair or unlawful business practices."); <u>Kasky v. Nike, Inc.</u>, 27 Cal. 4th
9 939, 950, 119 Cal. Rptr. 2d 296, 304 (2002) (in "an action for violation of the false advertising
10 law . . . the remedies available to a successful private plaintiff include restitution and injunctive
11 relief.")
12 Plaintiffs also seek injunctive relief, requiring Google to conform its billing practices to its
13 promotion of its AdWords program, which Google tellingly, does not address.
14       With respect to Google's insistence that Plaintiffs have not suffered any damage, Google
15 puts the cart before the horse by arguing that Plaintiffs were not damaged because they were
16 billed in accordance with Google's billing practices albeit, above their daily budget and without
17 accounting for paused days.  Thus, if, and once, Google, is adjudged to have acted improperly in
18 so billing, Plaintiffs have been damaged.  Although raised by Google, any discrepancy in paused
19 days in CLRB Hanson's March 2005 charge for its Contract Decorating Campaign, is irrelevant.
20 As is evident from Exhibit B to the <u>Declaration of CLRB Hanson Industries, LLC in Support of</u>
21 <u>Plaintiffs' Motion for Partial Summary Judgment ("CLRB Hanson Decl.")</u>, which Defendant
22 does  not dispute, there were 17 days in the month when the campaign received no clicks.
23 Irrespective of whether the ad was paused Or whether it simply failed to receive any clicks, those
24 days may not be used to absorb excess and improper charges from days the ad did run, given
25 Google's representations, including, "you won't accrue charges while your ad is paused," <u>Pls.'</u>
26 <u>Undisputed Facts</u>, ¶ 18 a. and b., 19; and  "you only pay if someone clicks on your ads," <u>Pls.'</u>
27 <u>Undisputed Facts</u>, ¶ 13.A.
28

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                        6

1    Defendant's arguments with respect to Proposition 64 and Pfizer Inc. v. Superior Court,
2 141 Cal. App. 4th 290, 296, 45 Cal. Rptr. 3d 840 (2006) are also in vain.  Plaintiffs undeniably
3 have standing to maintain this suit.  Proposition 64, codified in § 17204, changed the general
4 standing provision so as to prevent a member of the public from bringing a claim on behalf of
5 others if he, himself, did not experience the alleged harm.  Cal. Bus. & Prof. Code § 17204,
6 Notes, 2004 Amendment.  Plaintiffs have amply demonstrated that they, themselves, suffered
7 economic injury as a result of Defendant's unfair practices.  Absent Google's deceptive and
8 misleading and unfair conduct of advertising AdWords one way, and billing another, Plaintiffs
9 would not have been damaged.  Had Google billed Plaintiffs as it represented it would, namely,
10 for actual clicks up to their daily budgets on days their ads ran, they would not have suffered any
11 economic loss.  R & B Auto, 140 Cal. App. 4th at 360 (By alleging payment of premiums for
12 illusory coverage and that it had to make payment on a lemon law claim, plaintiff, in conformity
13 with Proposition 64, alleged "loss caused by the purported misrepresentations concerning the
14 scope of coverage.  The standing requirement is met."); Aron v. U-Haul Co., of Cal., 2006 Cal.
15 App. LEXIS 1535, at *6 (citations omitted) (by claiming he had to purchase excess fuel because
16 U-Haul had no method of accurately measuring fuel upon return of the vehicle, Plaintiff, as
17 required by Proposition 64, alleged an "injury in fact" and "set forth a basis for a claim of actual
18 economic injury as a result of an unfair and illegal business practice").
19    With respect to any reliance requirement, while not discussed by Defendant, it is
20 currently the subject of much controversy in the California Courts.  There is a split in the
21 Appellate Courts and Pfizer is on appeal.  Indeed, both Aron v. U-Haul Co., of Cal., 2006 Cal.
22 App. LEXIS 1535, at *15, upholding plaintiff's claim because he  "alleged facts sufficient to
23 show that U-Haul's representations would be misleading to a reasonable consumer," and
24 McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1471 (Sept.18, 2006),  holding that
25 "[t]he determination as to whether a business practice is deceptive is based on the likely effect
26 such practice would have on a reasonable consumer," were decided after Pfizer Inc. v. Superior
27 Court, 141 Cal. App. 4th 290, 296, 45 Cal. Rptr. 3d 840 (2006).  In any event, Plaintiffs satisfy
28 any conceivable reliance requirement.  As per Google's undeniable request and requirement,

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                    7

1  Plaintiffs set daily budgets and, as any reasonable advertiser, expected to be billed as Google
2  represented, namely, no more than their daily budgets times the number of days that their ads
3  ran.  Pls.' Undisputed Facts, ¶ 22 (Mr. Stern complained to Google: "My understanding of a
4  'daily budget' of $10 is very simple: daily cost not to exceed $10 . . . . **The way AdWords bills**
5  **is a misrepresentation of the daily budget that prominently appears on the Campaign**
6  **management screen and the set up screens that request budget information.  The AdWords**
7  **home page promises that: you have total control over every aspect of your campaign.**
8  **Apparently not**.") (emphasis added.);  Pls.' Undisputed Facts, ¶ 23 (CLRB Hanson complaining
9  to Google: " **I don't understand the logic the platform GOOGLE allows you and a selling**
10 **feature allows you to adjust your daily budget to allow you to control costs that is what we**
11 **do. Now you are saying its monthly, I respectfully disagree."**) (emphasis added.).  Plaintiffs
12 also relied on the right to pause without charge, which was both explicit and implicit,  Pls,'
13 Undisputed Facts, ¶ 23, and used AdWords because Google represented that it gave them the
14 ability to set and control their own daily budgets,  Pls.' Undisputed Facts, ¶ 10 (quoting
15 transcripts).  See also Declaration of Howard Stern in Support of Plaintiffs' Motion for Partial
16 Summary Judgment, ¶ 2 ("In October, 2003, I signed up for the Google AdWords Program.
17 What enticed me to the program and what I relied on was the fact that Google represented that I
18 would control my costs by setting a daily budget and per click charges, and there was no
19 minimum charge."); CLRB Hanson Decl., ¶ 2 ("What enticed CLRB [and its predecessor,
20 Industrial Printing], to the AdWords program and what CLRB relied on was the fact that Google
21 represented that CLRB would control its costs by setting a daily budget and per click charges,
22 and there was no minimum charge.")  The screen from Google's tutorial (annexed a Exhibit B to
23 the Second Amended Complaint, and as Exhibit A to the Declarations of Stern and CLRB
24 Hanson) confirms Plaintiffs' understanding at the sign up process - "Ad system ensures you
25 never pay more than your daily budget multiplied by the number of days in a month your
26
27
28

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of**
**Plaintiffs' Motion for Partial Summary Judgment**
**Case No: C05-03649 JW**

Doc. 154851                                    8

campaign was active." Google does not deny that this screen accurately evidences how Google promoted(s) the billing for the AdWords program.[6]

## II. GOOGLE HAS NOT RAISED ANY FACTUAL OR LEGAL DEFENSE TO PLAINTIFFS' ENTITLEMENT TO SUMMARY JUDGMENT AS TO LIABILITY ON THEIR CLAIM FOR UNJUST ENRICHMENT

As detailed in Pls.' Moving Mem., Google (i) solicited advertisers to use its AdWords program by offering them the ability to control their advertising costs, (ii) allowed, and required, advertisers to set daily budgets, (iii) represented that an ad could be paused without accruing charges, (iv) represented that they would not be billed more than their daily budget times the number of days their ad ran, yet billed Plaintiffs more than their daily budgets, overdelivering their ads when they ran and used a monthly billing cycle so that the paused days, including weekends and holidays, would absorb the overage, thereby receiving a benefit, directly from Plaintiffs and at Plaintiffs' expense, in the form of excess revenue.

Rather than dispute this, Defendant baldly argues that because there is an enforceable contract, there can be no unjust enrichment claim. However, notably absent from Defendant's argument is its offer, Plaintiffs' acceptance, the consideration, and the precise terms of the contract.[7] As detailed in Pls.' Opp Mem., at 13-15, given these competing motions, it appears that there was no meeting of the minds as to the term daily budget. Similarly, even if, at some point after Plaintiffs enrolled, Defendant changed its practice so as to require Plaintiffs to click something in order to keep their ad running, given the contradictory myriad of terms and FAQs, within hundreds of printed pages, any such subsequent click requirement is ineffective (and is not retroactive).

---

[6] In another attempt to reconcile this statement with its actual billing, Google argues, "there is nothing false or misleading about the screenshot (advertisers are not charged more than the number of days in a month)." Def.'s Opp., at 1-2. Tellingly, Google does not quote the actual language (a common practice throughout Defendant's papers), and it misleadingly omits the word "active" from its paraphrase. Pls.' Undisputed Facts, ¶ 17.

[7] Google argues that its interpretation of the AdWords Agreement allows it to charge Mr. Stern $300 for running his ads for four days with a daily budget of $10 a day. Quite reasonably, Mr. Stern does not agree.

Plaintiffs' Reply Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Partial Summary Judgment
Case No: C05-03649 JW

Doc. 154851                               9

# **CONCLUSION**

For the reasons herein, in Plaintiffs' Memorandum in Support of Plaintiffs Motion for Partial Summary Judgment, together with the supporting declarations and the exhibits thereto, and in Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Google Inc.'s Motion for Summary Judgment, or in the Alternative, for Summary Adjudication, and the supporting declarations and exhibits thereto, Plaintiffs respectfully request that this Court grant them summary judgment as to Google's liability on Plaintiffs' claims for violation of California Business & Professions Code § 17200 et seq., violation of California Business and Professions Code § 17500 et seq., and unjust enrichment. It is also respectfully requested that this Court either enjoin Google's current billing practices that contradict Google's promotion of how AdWords advertisers will be billed, or direct Google to correct its misleading promotion of the AdWords billing.

Dated: October 23, 2006

WOLF POPPER LLP

/s/
Lester L. Levy (*Admitted Pro Hac Vice*)
Michele F. Raphael (*Admitted Pro Hac Vice*)
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

and

ALEXANDER, HAWES & AUDET, LLP
William M. Audet (SBN 117456)
Jason Baker (SBN 212380)
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

*Attorneys for Plaintiffs and the Proposed Class*

**Plaintiffs' Reply Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Partial Summary Judgment
Case No: C05-03649 JW**

Doc. 154851                                10