1  Lester L. Levy (*Admitted Pro Hac Vice*)
   Michele F. Raphael (*Admitted Pro Hac Vice*)
2  WOLF POPPER LLP
   845 Third Avenue
3  New York NY 10022
   Telephone: 212.759.4600
4  Facsimile: 212.486.2093
   e-mail: llevy@wolfpopper.com
5  e-mail: mraphael@wolfpopper.com

6  William M. Audet (SBN 117456)
   Jason Baker (SBN 212380)
7  ALEXANDER, HAWES & AUDET, LLP
   152 North Third Street, Suite 600
8  San Jose, CA 95112
   Telephone: 408.289.1776
9  Facsimile: 408.287.1776
   e-mail: waudet@alexanderlaw.com
10 e-mail: jbaker@alexanderlaw.com

11 *Attorneys for Plaintiffs and the Proposed Class*

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16 | CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated, | CASE NO: C05-03649 JW |
|---|---|
17 | | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION** |
18 | Plaintiffs, | |
19 | vs. | |
20 | GOOGLE, INC., | |
21 | Defendant. | Date: November 20, 2006<br>Time: 9:00 a.m.<br>Dept.: 3<br>Judge: Honorable James W. Ware |

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE
TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**

Doc. 155022

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**

Plaintiffs submit this memorandum is support of continued federal jurisdiction over this purported nationwide class action. The Court's jurisdictional concern as to Mr. Stern's modest individual damages is misplaced. Not only do the claims raised by Plaintiffs affect hundreds of thousands of other AdWords advertisers, but the example put forth was not Mr. Stern's total damages. Rather, those damages were for one ad, for only two months, and served to exemplify clearly how Google, Inc. ("Google") actually bills advertisers under its AdWords program. While the manner that Mr. Stern is damaged from Google's improper billing is typical of the class of advertisers he seeks to represent, the totality of his damages are not (and need not be) equal to the damages suffered by other advertisers - many of whom run more than one ad and have vastly higher daily budgets. Google improperly bills its AdWords users, whether they be global enterprises or small, mom and pop advertisers. Naturally, advertisers with more ads and higher daily budgets suffer higher damages. All amounts charged in excess of each advertiser's daily budget, per day, per ad, for four years, is "the amount in controversy." Hence, as detailed below, given that more than 400,000 advertisers currently use the Google AdWords program, and that Google receives billions of dollars each year from its AdWords program (approximately $3.4 billion in 2005, alone), there can be no doubt that the amount in controversy over the class period is well in excess of $5,000,000. Dividing the five million dollars amongst the 400,000 current advertisers amounts to $12.50. Each advertiser need only have been overbilled by $12.50 over the course of four years. Most telling, Google would not have removed this case had it believed its exposure would be less than said amount. Surely, Google would not have overstated its own exposure nor filed a notice of removal without considering the amount in controversy.

Also notable, this case has been vigorously litigated in this jurisdiction. The Court has already decided Google's motion to dismiss and, in accordance with this Court's Case Management Order, both parties have already fully briefed cross motions for summary judgment on the basis of federal law. To remand at this time, when federal jurisdiction is amply supported,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE**
**TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**
Doc. 155022                                                                      1

1  would be a waste of the parties' and judicial resources, as well as improper.

## ARGUMENT

### THE JURISDICTIONAL AMOUNT IS SATISFIED

The "amount in controversy" is the amount put in controversy by the plaintiff's complaint. <u>Rippee v. Boston Market Corp.</u>, 408 F. Supp. 2d 982, 984-85 (S.D. Cal. 2005). Here, that "amount" is the aggregate of all charges above each advertiser's daily budget, each day, per ad, over the course of the class period.

If the complaint does not specify the amount of damages sought, removal is appropriate if it is "'more likely than not' that the amount in controversy satisfies the jurisdictional amount requirement." <u>Davis v. Chase Bank U.S.A., N.A.</u>, No. CV 06-04804 DDP (PJWx), 2006 U.S. Dist. LEXIS 68141, at *4-5 (C.D. Cal. Sept. 20, 2006) citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). "[The Court] may look to the notice of removal as well as to the complaint to determine jurisdiction." <u>Clean Air Council v. Dragon International Group</u>, No. 1: CV-06-0430, 2006 U.S. Dist. LEXIS 52292, at *9 n.2 (M.D. Pa. July 28, 2006) (citation omitted). A removing defendant must demonstrate federal jurisdiction under the Class Action Fairness Act ("CAFA"), (and otherwise), so as to prevent it from filing a notice of removal "without making any effort to calculate its maximum exposure." <u>Brill v. CountryWide Home Loans, Inc.</u>, 427 F.3d 446, 447 (7th Cir. 2005). Defendant Google's Notice of Removal, dated September 9, 2005, recognizes that the amount in controversy exceeds $5,000,000, explaining/calculating that:

> Plaintiffs seek the disgorgement and restitution of Google's profits, revenues and benefits, and purport to represent a nationwide class of "thousands of people." [Complaint ¶¶ 20, 88].[1]  Plaintiffs alleged that U.S. sales from advertiser-paid search results [were] expected to grow 25 percent [in 2004] to $3.2 billion, up from $2.5 billion in 2003" and that paid-search advertising generates about 98 percent of Google's revenues. [Complaint, ¶¶ 27, 30.][2]

Indeed, even basing class wide damages upon Mr. Stern's damages for his one ad, with

---

[1] Those allegations are found in the Second Amended Complaint, at ¶¶ 70, 121.

[2] Those allegations are found in the Second Amended Complaint, at ¶¶ 39, 41.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**

Doc. 155022                                    2

1  his low daily budget, it is more likely than not that the $5,000,000 minimum is satisfied. When
2  the amounts Mr. Stern was overbilled each month are added together over the course of four
3  years, it becomes a sizeable amount - especially when aggregated. For example, taking the $3.25
4  Mr. Stern was overcharged in April, 2005, and multiplying that by 12 months, yields $39 for one
5  year or $156 for the four year class period.[3] Multiplying this $156 by only 400,000 current
6  advertisers (conservative because not accounting for advertisers who used AdWords over the
7  past four years, but are not current users),[4] yields aggregate damages of $62,400,000 - all based
8  upon Mr. Stern's overages of just a couple of dollars and for just one ad.

9        Looking at the Declaration of CLRB Hanson Industries d/b/a Industrial Printing ("CLRB
10 Hanson") submitted in Support of Plaintiffs' Motion for Partial Summary Judgment, with respect
11 to just one of its ad campaigns, in February, 2005, CLRB Hanson was overbilled $49.99 ($49.99
12 above its daily budget times the number of days the ad ran). Multiplying $49.99 by 12, yields a
13 yearly overrage of $599.88, or a four year overrage of $2,399.52 for just CLRB Hanson, for just
14 one ad. Multiplying that number by 400,000 advertisers (again, a conservative estimate), yields,
15 $959,808,000 - for only one ad campaign per advertiser.[5] See Paul v. Intel Corp. (In re Intel
16 Corp.), No. 05-1717-JJF, 2006 U.S. Dist. LEXIS 36716 (D. Del. May 22, 2006) (Defendants
17 showed that the amount in controversy exceeds $5,000,000 based upon U.S. Census data on
18 populations, U.S. Census data on computer ownership and purchases, Intel's share of the x86

---

[3] Information taken from the Declaration of Mr. Stern submitted in Support of Plaintiffs' Motion for Partial Summary Judgment, and the exhibits thereto.

[4] As per a research report issued by Susquehanna Financial Group, LLLP as of June 29, 2006, there are more than 400,000 AdWords advertisers. A copy of the report is annexed as Ex. A to the Declaration of Michele Fried Raphael submitted in Response to Order to Show Cause and in Support of Retention of Federal Jurisdiction ("Raphael Jurisdiction Decl.").

Lacking information from Google, as to, inter alia, the number of advertisers, the number of ads per advertiser, the average daily budget, and the average number of days paused, Plaintiffs looked to publicly available information and Plaintiffs' situations.

[5] Many advertisers, including CLRB Hanson, run more than one ad campaign using the AdWords program.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE**
**TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**
Doc. 155022                                     3

microprocessor market as alleged in plaintiffs' complaints, the average cost of personal computers containing x86 microprocessors and the relief requested in plaintiffs' complaint).

While CLRB Hanson is a substantially larger advertiser than Mr. Stern, having numerous ad campaigns with higher daily budgets, it still does not rise to the level of "global enterprise" which Google boasts as having as AdWords customers. See Google, Inc.'s webpage: ("Our customers are the hundreds of thousands of advertisers, from small businesses targeting local customers to many of the world's largest global enterprises, who use Google AdWords to reach millions of users around the world.") (A copy of this webpage is annexed as Ex. B to the Raphael Jurisdiction Decl.) The higher the daily budget and the more days an ad is paused or fails to accumulate enough clicks to reach its daily budget - the higher the damages. CLRB Hanson and Howard Stern both explained that they often pause their ads on weekends, so as not to incur advertising charges on days customers would not be looking for their services. Those days, alone, can amount to 8 days per month. As explained at length in the summary judgment papers submitted to this Court, both in support of Plaintiffs' own motion, and in opposition to Defendant's motion, Google improperly uses paused days and days that an ad does not reach its daily budget to absorb overrages from days the ad ran. Thus, even assuming Google goes no more than 20% above the daily budget on any given day, that 20% accounts for substantial amounts, per day, per month, per year, per advertiser, and most importantly, per ad. In addition, Plaintiffs also ask for injunctive relief. If Google is required to reconcile its billing practices with its promotional material, that value, too, must also be included - albeit unnecessary to reach the $5,000,000.

The examples and calculations, above, make clear that the proposed class, as a whole, has sustained damages that well exceed the jurisdictional minimum. CAFA allows aggregation of claims for the purposes of determining the jurisdictional amount, 28 U.S.C. § 1332(d), and the Legislature specifically contemplated including all forms of relief sought, including injunctive relief. Yeroushalmi v. Blockbuster Inc., No. CV 05-2550 AHM (RCx), 2005 U.S. Dist. LEXIS 39331 (C.D. Cal. Jul. 11, 2005).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**
Doc. 155022                                   4

1   As an alternative to extrapolating class-wide damages from Plaintiffs' experiences,
2   another way to look at this jurisdictional issue is to start with the $5,000,000 jurisdictional
3   requirement. Dividing the $5,000,000 minimum by the 400,000 advertisers (conservatively,
4   using only the current AdWords users and without accounting for past advertisers), each
5   advertiser need only have been overbilled by $12.50 over the course of the entire class period in
6   order for this action to meet the jurisdictional requirement. Hence, the jurisdictional minimum
7   would be satisfied even if the whole class had one ad and a low budget, as did Mr. Stern.

8   Also notable, Google realizes billions of dollars from its AdWords program. Revenue
9   from AdWords - links from Google's own website(s) - is reported separately from the revenue
10  Google receives from its partner sites through the AdSense program (links appearing on other
11  advertisers' sites). See Elinor Mills, Google Sees Revenue Rise, Beats Expectation, c/net
12  news.com, Apr. 20, 2006, http://news.com.com/2100-1030_3-6063390.html, (commenting on
13  first quarter 2006 results, George Reyes, chief financial officer of Google, explained that Google
14  saw increased revenue from ad sales on its own Web site through its AdWords keyword search
15  advertising platform and on publisher partner sites through its AdSense contextual ad platform).
16  (A copy of this article is annexed as Ex. C to the Raphael Jurisdictional Decl.)  As per Google,
17  (i) for the year ended December 31, 2005 "revenue from Google sites increased . . to $3.77
18  billion"; (ii) for the quarter ended December 31, 2005, "Google-owned sites generated revenues
19  of $1.098 billion"; (iii) for the first quarter of 2006, "Google-owned sites generated revenues of
20  $1.30 billion"; (iv) for the second quarter of 2006, "Google-owned sites generated revenues of
21  $1.43 billion" ; and (v) for the third quarter of 2006, "Google-owned sites generated revenues of
22  $1.63 billion." (A copy of these earnings releases are annexed in Ex. D to the Raphael
23  Jurisdictional Decl.) Given these numbers, and the aforementioned analyses, it is beyond
24  question that the amount in controversy, more likely than not, satisfies the jurisdictional amount.

## CONCLUSION

26  For the reasons set forth herein, Plaintiffs' simple illustration of Mr. Stern's damage for
27  one ad, for two months, does not defeat, but supports, federal jurisdiction over this matter.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE
TO ORDER TO SHOW CAUSE AND IN SUPPORT OF RETENTION OF FEDERAL JURISDICTION**

Doc. 155022                     5

Indeed, considering the hundreds of thousands of advertisers, the millions of ads affected, the number of years that this improper billing/promotion has been promulgated (and is still ongoing), and the billions of dollars that Google receives from its AdWords program, there can be no question that the amount in controversy well exceeds five million dollars. This Court has jurisdiction over this action and to decide the summary judgment motions which have been fully briefed.

Dated: November 8, 2006

**WOLF POPPER LLP**

/s/
Lester L. Levy (Admitted Pro Hac Vice)
Michele F. Raphael (Admitted Pro Hac Vice)
845 Third Avenue
New York NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

and

ALEXANDER, HAWES & AUDET, LLP
William M. Audet (SBN 117456)
Jason Baker (SBN 212380)
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

Attorneys for Plaintiffs and the Proposed Class