| | |
|---|---|
| 1 | KEKER & VAN NEST, LLP |
| 2 | DARALYN J. DURIE - #169825<br>DAVID J. SILBERT - #173128 |
| 3 | 710 Sansome Street<br>San Francisco, CA  94111-1704 |
| 4 | Telephone:  (415) 391-5400<br>Facsimile:  (415) 397-7188 |
| 5 | ddurie@kvn.com<br>dsilbert@kvn.com |
| 6 | |
| 7 | |
| 8 | Attorneys for Defendants<br>COMCAST CABLE COMMUNICATIONS LLC |
| 9 | and INSIGHT COMMUNICATIONS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA–SAN JOSE DIVISION

In re

ACACIA MEDIA TECHNOLOGIES CORPORATION

Case No. C-05-01114 JW

**ROUND 1 AND 2 DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF ('992 AND '275 PATENTS)**

The Round 1 and 2 Defendants[1] submit the following supplemental claim-construction brief at the request of the Court. See Tr. of June 15, 2006 Hrg. at 12:5-13.[2]

## I. INTRODUCTION

On the second day of the June claim-construction hearing, Acacia reversed its position on the meaning of the term "reception system" in claims 2 and 5 of the '275 patent, and stipulated that the "reception system" in these claims must be located at the head end of a cable television system. See Tr. of June 15, 2006 Hrg. at 6:17-25. Acacia flip-flopped on this issue to try to distinguish "reception system" from the indefinite term "*receiving* system," in a last-ditch effort to bestow some meaning on "receiving system." As set forth below, that attempt fails. Indeed, Acacia's reversal only further demonstrates that "receiving system" is indefinite.

## II. BACKGROUND

In the Round 1 and 2 Defendants' pre-hearing brief, we argued that the '992 and '275 patents use the term "receiving system" in such inconsistent, confusing, and contradictory ways that they render the term impossible to construe. (See Round 1 & 2 Defs.' Br. filed May 8, 2006 (Document 155) at 4-12.) We pointed out, for example, that the patents require the "receiving system" to be "at the remote location selected by the user" (such as the user's home or office), but at

---

[1] The following defendants join this brief: Comcast Cable Communications LLC, Insight Communications, Inc., Charter Communications, Inc., Echostar Satellite LLC, Echostar Technologies Corp., Armstrong Group, Block Communications, Inc., East Cleveland Cable TV and Communications LLC, Wide Open West Ohio LLC, Massillon Cable TV, Inc., Mid-Continent Media, Inc., US Cable Holdings LP, Savage Communications, Inc., Sjoberg's Cablevision, Inc., Loretel Cablevision, Arvig Communications Systems, Cannon Valley Communications, Inc., NPG Cable, Inc., Ademia Multimedia LLC, ACMP, LLC, AEBN, INC., Audio Communications, Inc., Club Jenna, Inc., Cyber Trend, Inc., Cybernet Ventures, Inc., Game Link, Inc., Global Avs, Inc., Innovative Ideas International, Lightspeed Media Group, Inc., National A-1 Advertising, Inc., New Destiny Internet Group LLC; Vs Media, Inc., Askcs.com, Inc., Coxcom, Inc. and Hospitality Network, Inc., Cable One, Inc.; Mediacom Communications Corporation; Bresnan Communications; Cequel III Communications I, LLC (dba Cebridge Connections), International Web Innovations, The DirecTV Group, Inc., and Offendale Commercial Limited BV

[2] Although it was Acacia's change in position midway through the claim-construction hearing that led the Court to ask for supplemental briefing, Acacia has said that it will not address the consequences of that change in the supplemental briefs filed today, and will only do so in its reply brief. The Round 1 and 2 Defendants respectfully request the opportunity to file a short response to Acacia's supplemental brief on "receiving system" after it is filed.

---

1

ROUND 1 AND 2 DEFS' SUPP. CLAIM CONSTR. BRIEF ('992 AND '275 PATENTS)
CASE NO. C-05-01114 JW

378342.01

the same, to be capable of storing information *far away* from that location, "at the head end of a cable television system"—requirements that defy logic, and that render the metes and bounds of a "receiving system" insolubly ambiguous. *Id.* Similarly, we pointed out that the patents require the "receiving system" to encompass an "intermediate storage device"—something which, by definition (and by Acacia's concession) lies *between* the transmission system and the "receiving system." *Id.* For these and other reasons set forth in our pre-hearing brief, the patents' disclosures of what a "receiving system" must comprise are irreconcilable—they simply make no sense.

In addition, we pointed out that while the patents plainly use the term "receiving system" to mean something different from "reception system," nowhere do they explain what the difference is. To the contrary, they hopelessly confuse the issue by describing the "receiving system" inconsistently. For example, sometimes they suggest that a "receiving system" is a plurality of "reception systems," while other times they suggest that multiple "reception systems" are "connected to" a "receiving system" (and therefore could not *comprise* the "receiving system"), and still other times they suggest that a "reception system" transmits materials over airwaves to a "receiving system," the nature of which is completely undefined. *Id.*

Nor, we pointed out, can Acacia determine what a "receiving system" is. Acacia first asserted that "receiving system" keeps the same definition in both the '992 and '275 patents (as well-settled rules of claim construction dictate that it must). But then Acacia realized that the patents' contradictory disclosures make this impossible, so before it filed its opening brief, it changed its position and asserted that "receiving system" has *different* definitions in the two patents. Indeed, in an effort to salvage some meaning for "receiving system," Acacia asserted that "receiving system" and "reception system" *switch* definitions, so that "receiving system" in the '992 patent means the same thing as "reception system" in the '275 patent, and vice versa. *Id.* Acacia's own confusion about the meaning of "receiving system"—and its violation of the canon of claim construction that requires terms to be defined consistently—we argued, further demonstrates that the patents fail to give the public fair notice of the boundaries of the "receiving system," as the Patent Act requires. *Id.*

After the Round 1 and 2 Defendants filed our brief, Acacia shifted its positions several

2

ROUND 1 AND 2 DEFS' SUPP. CLAIM CONSTR. BRIEF ('992 AND '275 PATENTS)
CASE NO. C-05-01114 JW
378342.01

more times in an attempt to shore up some meaning for "receiving system." First, in its May 24 reply brief, it withdrew its infringement allegations for six claims that recite a "receiving system," and then on the morning of the June 14 hearing it withdrew two more such claims. *See* Tr. of June 14, 2006 Hrg. at 7:5-22. Acacia apparently hoped that, once it decided not to assert these claims, the Court could simply ignore their logically incoherent disclosures of what a "receiving system" must comprise. As set forth below, however, that hope is misplaced. Acacia cannot excise these disclosures from the patents, even though it might wish to.

Next, on the second day of the June hearing, Acacia stipulated with the Round 3 Defendants that the "reception system" in claims 2 and 5 of the '275 patent is located at the head end of the cable television system. *See* Tr. of June 15, 2006 Hrg. at 6:17-25. This was a reversal of its prior position—until the second day of the June hearing, Acacia had specifically argued that the "reception system" in these claims did *not* need to be located at the cable head end. *See* Acacia's Br. filed April 17, 2006 (Document 145-5) at 100:22-101:16. Indeed, Acacia denied that the statement in the prosecution history that it later cited as the purported basis for its stipulation even *applied* to claims 2 and 5. *See* Acacia's Br. filed May 24, 2006 (Document 173-1) at 57:22-58:13. And in its infringement contentions, it asserted that the "reception system" in claims 2 and 5 was a "set top box with DVR" at the user's home—far from the cable head end. *See* Acacia's Disclosure of Asserted Claims and Preliminary Infringement Contentions Re: '275 and '863 Patents To Comcast Cable Communications, LLC at 9, 12-13 (attached hereto as Exh. A to the Declaration of David J. Silbert ("Silbert Decl.")).

Thus, Acacia's stipulation was purely tactical. This is not a situation where Acacia changed its position in response to new information. Instead, it simply reversed course midway through the claim-construction hearing, in the hope that stipulating to a limitation on "reception system" that does not appear in the claims themselves could help give some meaning to "receiving system." "Receiving system," however, remains hopelessly indefinite.

## III. ARGUMENT

**A. Acacia's reversal on "reception system" does not address the patents' inconsistent and incoherent disclosures about "receiving system"**

As noted, in the Round 1 and 2 Defendants' pre-hearing brief, we explained that the '992 and '275 patents use the term "receiving system" in inconsistent and incoherent ways, requiring it to comprise things that it could not possibly comprise, and making its boundaries impossible to determine. We *also* noted that while "receiving system" must mean something different from "reception system," the patents do not explain to the contrary, they hopelessly confuse what the difference is. Acacia's eleventh-hour stipulation is an effort to cure only this second problem (albeit an effort that falls short) by agreeing that, from now on, the "reception system" in claims 2 and 5 must be at a cable head end, whereas the "receiving system" may be elsewhere. The stipulation does not, however, address the patents' numerous inconsistent and contradictory disclosures about "receiving system" that render the term insolubly ambiguous.

For example, claim 19 of the '992 patent provides that the receiving system is at "the remote location selected by the user." '992:22:37-40. The claim then requires "storing a complete copy of the received information in the receiving system at the selected remote location . . . ." '992:22:40-47. Thus the "receiving system" of Claim 19 appears to exist at a location the user has selected to which information can be sent. But claim 23, which depends from claim 19, requires that the step of storing also "includes the step of storing the received information at the head end of a cable television reception system." '992:23:5-8. Thus, according to claim 23, the "receiving system" *cannot* be a system at the location the user has selected. The stipulation does not address this contradiction.

Further, the specification also describes the "reception system" and the "receiving system" such that each system performs dramatic role reversals. For instance, portions of the specification describe a reception system that is transmitting over airwave channels to receiving systems. See '992:4:52-57, 4:61-63. Elsewhere, the specification suggests the opposite, by stating that "received information" (i.e. received by the receiving system) is "played back to the reception system of the user." '992:19:30-36. The stipulation does not solve (or even address) this

4
ROUND 1 AND 2 DEFS' SUPP. CLAIM CONSTR. BRIEF ('992 AND '275 PATENTS)
CASE NO. C-05-01114 JW

378342.01

issue.

Instead, Acacia apparently hopes that the Court will ignore the contradictions. To that end, after the Round 1 and 2 Defendants filed their pre-hearing brief, it withdrew eight claims that use the term "receiving system" from the case. But asserted or not, those claims remain an integral part of the patents, and the Court *must* consider them in trying to understand what the patents mean by the term "receiving system." *See, e.g., Hormone Research Found. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990)("Claim interpretation involves a review of . . . the claims (including unasserted as well as asserted claims) . . ."). And when the Court considers the withdrawn claims, the inconsistencies and paradoxes inherent in the Yurt patents' usage of the term "receiving system" are reinforced: For instance, Claim 47 recites a "receiving system" that is "at one of the remote locations selected by the user" and which includes a "memory means." '992:25:47-48, 54-55. But dependent claims 49 through 52 require that the same memory means of claim 47 include a "means for receiving information at the head end of a cable television reception system." '992:26:7-10. Thus, the patents dictate that a "receiving system" must be at the user's selected location, but must still somehow be capable of receiving information at the head end of a cable television reception system.

Further, the stipulation actually worsens the contradictions surrounding the term "receiving system." Claim 3 of the '275 patent, recites a "receiving system" that comprises "decompressing means, coupled to the receiver format conversion means, and located at a head end of a cable television system, for decompressing the copy of the formatted data." '275:21:26-30. But under the terms of the stipulation, Acacia attempts to locate the reception system at the cable head end–playing to the receiving system at the selected remote location. The plain language of the claims requires a distinction between the "receiving system" and the "reception system" but Acacia's stipulation would have them be the same or co-extensive.

Moreover, as we noted in our opening brief, any definition of "receiving system" must be capable of encompassing *all* of the features of a "receiving system" disclosed in *all* of the patents' claims. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1327-29 (Fed. Cir. March 23, 2006). Acacia has wrongly cited *Wilson* for the proposition that "[i]f a claim term

5

is used differently in different claims, this fact means that that term may have different meanings in each of the claims." *See* Acacia's Br. filed May 24, 2006 (Document 173-1) at 14:10-25. In fact, *Wilson* holds exactly the *opposite*: that "[u]nder [Federal Circuit] case law, the same terms appearing in different claims in the same patent . . . should have the *same* meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Id.* at 1330 (emphasis added; internal quotation marks omitted). In *Wilson*, some claims recited a "gap," while others recited a "gap" that was "annular." *Id.* The Court held that the "annular" limitation in some of the claims must inform the definition of "gap" in *all* the claims—in other words, whatever a "gap" is, it must be capable of being "annular," since the term "gap" must have the same definition in all of the claims.

Likewise, the definition of "receiving system" must be the same in all the claims of the '992 and '275 patents, and it must be capable of encompassing *all* of the features that the patents attribute to a "receiving system." Acacia cannot simply eliminate portions of the patent that concern "receiving system" by withdrawing claims from this case. But as set forth above and in the Round 1 and 2 Defendants' pre-hearing brief, when all of the disclosures about "receiving system" are considered, they are impossible to reconcile. The patents use the term inconsistently and incoherently, thus rendering it insolubly ambiguous.

**B.      Acacia's stipulation fails to supply any meaning for "receiving system"**

Even for the problem that Acacia tried to solve by its mid-hearing reversal in position—defining the difference between the "receiving system" and the "reception system" in the patents—its stipulation accomplishes nothing. First, while Acacia has decided to agree to a new limitation on "reception system" that does not appear in the claims, this cannot substitute for the requirement that the patents themselves give the public fair notice of the boundaries of the alleged invention. *See Wilson*, 442 F.3d at 1330 ("To sustain claims so indefinite as not to give the notice required by the [Patent Act] would be in direct contravention of the public interest which Congress therein recognized and sought to protect." (internal quotation marks omitted)). Acacia itself argued strenuously against the limitation that it has now decided to embrace, asserting that the prosecution-history statement at issue does not even apply to claims 2 and 5, and pointing out

6

ROUND 1 AND 2 DEFS' SUPP. CLAIM CONSTR. BRIEF ('992 AND '275 PATENTS)
CASE NO. C-05-01114 JW
378342.01

that where other claims in the '275 patent required the "reception system" to be at a cable head end (such as claims 1 and 4), they say so explicitly. *See Janssen Pharmaceutica v. Eon Labs Mfg.*, 134 Fed. Appx. 425, 428 (Fed. Cir. 2005) (claims should be construed "so that no term is superfluous."). The public would likely draw the same conclusion that Acacia initially did. Merely stipulating to limitations on the record, as Acacia has done, does nothing to clarify the fundamental confusion that the patents create.

Moreover, even if Acacia's stipulation were part of the patent, that stipulation does nothing to make "receiving system" more definite. Acacia has merely agreed to add a limitation to claims 2 and 5 requiring that the "reception system" be at a cable head end. It has changed the *definition* of a "reception system" (which must be the same in all the claims in which that term appears), nor in any way clarified how the definition of a "reception system" differs from the definition of a "receiving system," though Acacia admits that they must differ somehow. Nor can the distinction that Acacia has tried to add to claims 2 and 5 – placing the "receiving system" and "reception system" in different locations – replace the patents' numerous other, conflicting disclosures which, for example, sometimes suggest that the "receiving system" is a collection of "reception systems," while other times suggesting that "receptions systems" are "connected to" a receiving system. *See* Round 1 & 2 Defs.' Br. filed May 8, 2006 (Document 155) at 8-9. When the Court considers all of these disclosures about the "receiving system," as it must do, it is apparent that the patents use the term inconsistently and incoherently, rendering it impossible to construe.

## CONCLUSION

As the Supreme Court has observed, "[t]he public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. . . . It seems to us that nothing can be more just and fair, both to the patentee and to the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent." *Merrill v. Yeomans*, 94 U.S. 568, 573-74 (1876).

The Yurt patentees failed to associate any consistent meaning with the term "receiving system," and instead used that term haphazardly, in confusing and self-contradictory ways. For the reasons set forth above, as well as in the Round 1 and 2 Defendants' pre-hearing brief and at

7

the June hearing, the Court should declare the term "receiving system" to be indefinite.

Dated: August 4, 2006           KEKER & VAN NEST, LLP

                                By:  /s/ David J. Silbert
                                     DAVID J. SILBERT
                                     Attorneys for Defendants
                                     COMCAST CABLE COMMUNICATIONS, LLC
                                     and INSIGHT COMMUNICATIONS, INC.