1  Lester L. Levy (admitted *pro hac vice*)
   Michele Fried Raphael (admitted *pro hac vice*)
2  WOLF POPPER LLP
   845 Third Avenue
3  New York, NY 10022
   Telephone: 212.759.4600
4  Facsimile: 212.486.2093

5  William M. Audet (SBN 117456)
   Audet & Partners, LLP
6  221 Main Street, Suite 1460
   San Francisco, CA 94105-1938
7  Telephone: 415.568.2555
   Facsimile: 415.568.2556
8
   *Attorneys for Plaintiffs*
9

10 David T. Biderman, Bar No. 101577
   Judith B. Gitterman, Bar No. 115661
11 M. Christopher Jhang, Bar No. 211463
   PERKINS COIE LLP
12 180 Townsend Street, 3rd Floor
   San Francisco, California 94107-1909
13 Telephone: 415.344.7000
   Facsimile: 415. 244-7050
14
   Attorneys for Defendant
15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                          SAN JOSE DIVISION

19

20 | CLRB HANSON INDUSTRIES LLC d/b/a         | CASE NO: C05-03649 JW
   | INDUSTRIAL PRINTING, and HOWARD
21 | STERN, on behalf of themselves and all
   | others similarly situated,                | **Joint Case Management Statement
22 |                                           | and Proposed Order Pursuant
   |                    Plaintiffs,            | to N.D. L.R. 16-9**
23 | vs.
   |
24 | GOOGLE, INC.,
   |                    Defendant.
25

26    The parties to the above-entitled action jointly submit this Case Management Statement and

27 Proposed Order.

28

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034

## DESCRIPTION OF THE CASE

### JURISDICTION AND SERVICE

This Court has jurisdiction over this action pursuant to the Class Action Fairness Act.

### FACTS/LEGAL ISSUES

This case concerns how Google bills advertisers under its AdWords Program. The facts have been set forth in the parties' competing motions for summary judgment and in this Court's Order thereon dated August 21, 2007 ("Summary Judgment Order"). In the Summary Judgment Order, this Court denied Google's motion for summary judgment on Plaintiffs' claims for breach of contract and violations of California's Unfair Competition Law, §§ 17200 and 17500, *et. seq.*, and granted Google's motion with respect to Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and unjust enrichment. The Court found a valid contract between the parties. The Court also denied Plaintiffs' motion for summary judgment as to liability on their Unfair Competition Law claims.

### MOTIONS

#### Plaintiffs' Description of Prior Motions

Defendant moved to dismiss Plaintiffs' claim for unjust enrichment. After being dismissed with leave to replead, said claim was upheld.

Defendant moved for summary judgment or summary adjudication as to all claims. As noted *supra*, its motion was denied in part and granted in part.

Plaintiffs moved for partial summary adjudication as to liability on their claims under California Unfair Competition Law and unjust enrichment. Their motion was denied.

Defendant also filed various motions to seal the papers it submitted in support of, and in opposition to, the competing summary adjudication motions (Plaintiffs had to so move as well given Defendant's confidential designations). Defendant unsuccessfully moved to have the Court withdraw and seal its Summary Judgment Order.

#### Google's Description of Prior Motions

In addition to the summary judgment motions, Google also filed various motions to seal the papers it submitted in support of, and in opposition to, the competing summary adjudication

motions. The Court granted these motions. Google moved to have the Court withdraw and seal its Summary Judgment Order and the Court denied this motion.

**Plaintiffs' Anticipated Future Motions**

Plaintiffs intend to file a motion for class certification.

Plaintiffs oppose defendant's attempts to reargue its summary judgment motion. Plaintiffs also oppose Defendant's attempt to carve up and otherwise delay this case.

**Google's Position on Future Motions**

Google will oppose plaintiffs' motion for class certification.

In addition, depending upon the issues remaining in the case, Google would move to bifurcate any claims of whether delivery of up to 120 percent of an advertiser's daily budget - independent of pausing or termination of a campaign before the end of the month - is improper. As described below, this claim is entirely separate from claims that relate to pausing a campaign or terminating a campaign prior to the end of a month. This issue should be decided before any issues relating to pausing or terminating a campaign before the end of them month.

**AMENDMENT OF PLEADINGS**

The parties do not intend to add or dismiss parties, claims or defenses at this time.

**EVIDENCE PRESERVATION**

Since August, 2005, when this case was originally filed, Google has taken the following steps to preserve evidence relevant to the issues reasonably evident in this action - implementation of a litigation hold to preserve documents and data; search for and collection of relevant information, including but not limited to historic terms and conditions and FAQs, which have been produced to the plaintiffs.

Since August, 2005, when this case was originally filed, plaintiffs have preserved and produced to defendant, evidence in their possession relevant to the issues reasonably evident in this case.

**DISCLOSURE AND DISCOVERY**

**Discovery Taken to Date of Plaintiffs**

In or about March, 2006, Plaintiffs produced documents to Google as part of their Initial

1  Disclosures. They produced additional documents in August, 2007 in connection with their
2  depositions. Plaintiffs' production was mainly comprised of e-mail correspondence with Defendant
3  and charge card/ bank statements. Plaintiffs produced their documents in paper form.

4  Both Plaintiffs have been deposed. Defendant maintains that the depositions were limited to
5  the issue of the understanding of the contract and that they have not been deposed on class
6  certification issues. Plaintiffs maintain that the depositions went beyond the contract and oppose any
7  duplicative discovery.

8  **Discovery Taken to Date of Google**

9  Plaintiffs maintain that discovery of Defendant to date has been limited to that which was
10  directed by the Court in connection with the summary adjudication motions. As per this Court's
11  Case Management Order of June 27, 2006, Google produced thousands of pages primarily consisting
12  of Frequently Asked Questions ("FAQs") and Terms and Conditions. Everything was provided in
13  paper form. Plaintiffs maintain that no drafts nor internal e-mails were produced by Google.

14  As per the initial hearing on the competing motions for summary adjudication, and this
15  Court's following Order of February 8, 2007, three Google employees were deposed. Two of the
16  deponents were employees who had submitted affidavits in support of Google's summary judgment
17  motion. The third deponent was an engineer selected by Google. Google provided additional
18  documents in connection with the depositions. Again, the information was provided in paper form.

19  **SCOPE OF ANTICIPATED DISCOVERY**
20  **Clarification of the Issues Remaining in the Case**

21  While a private settlement mediation between the parties proved unsuccessful, it is apparent
22  therefrom that discovery (and any possible settlement) cannot proceed absent clarification by the
23  Court as to its Order of August 21, 2007. As detailed below, Google maintains that overdelivery
24  (delivery of up to 120% on any given day), independent of pausing or terminating a campaign before
25  the end of the month, is no longer an issue in the case. Plaintiff maintains that whether Defendant's
26  practice of overdelivery constitutes a breach of contract or unfair, misleading or deceptive conduct is
27  a factual question to be resolved by a jury.

28  **Plaintiffs' Position**

Initially, Plaintiffs point out that Defendant should not be permitted to reargue its summary judgment motion and/or to use a request to clarify as a means to re-brief, reargue and delay this case. All of the issues were extensively briefed and argued. Twelve (12) briefs in addition to supporting declarations and affidavits and exhibits were provided to the Court on the competing motions for summary judgment. Defendant even presented demonstrative poster boards with blown up of the portions of the FAQs it sought to rely upon. There has been no change - legal or factual - nor claim of misapplication of the law, to warrant reargument.

Moreover, Defendant's notion (or perhaps wish) that Plaintiffs conceded the issue of overdelivery is entirely without merit. Indeed, Plaintiffs repeatedly argued to the Court, both in person and in their memoranda, that Defendant should not be allowed to collect money from advertisers for services they did not order - especially when the advertisers had the right to change its order up to ten times per day.

As to the merits of Defendant's request for clarification/reargument, Defendant's undisputed practice of overdelivering an ad by up to 120% of a daily budget remains a viable element of Plaintiffs' breach of contract and UCL claims.

In denying summary judgment to Defendant on the breach of contract claim, the Court stated "there exists triable issues of material fact whether Google's overdelivery and pre-September 2006 pausing practices constitute a breach of contract." Summary Judgment Order, p. 16. This language clearly contradicts Defendant's expansive reading of the Court's Order. Moreover, Plaintiffs recognize that the Order cannot be read so broadly as to have disposed of Plaintiff's overdelivery allegations when the Court did not even consider the contract interpretation arguments advanced by Plaintiffs to be used in the event that it found a valid contract. For example, in Defendant's best case, any mention of overdelivery in the FAQs creates an ambiguity given the plethora of references to "daily budget" and Google's promises to stay within said daily budget, and said ambiguity must be construed against Google, the undeniable drafter - leaving the daily budget as the maximum Google may charge an advertiser on any given day. Given that Plaintiffs did not move for judgment on this claim the Court did not have to consider the multitude of Plaintiffs interpretive arguments once it denied summary judgment to Google.

The Court's references to two situations wherein customers would be charged, on average, more than their Daily Budget - campaigns less than a full month and pausing - is not said to be exhaustive. Had the Court sought to eliminate overdelivery from the breach of contract claim, it would have done so,

As per the Court's Summary Judgment Order, the overdelivery issue also remains in the case with respect to Plaintiffs' unfair competition law claims. Defendant's practice of overdelivery is at the heart of the Court's ruling that it "declines to find as a matter of law that members of the public would not be deceived by Google's use of the term 'Daily Budget' to refer to the average amount that an advertiser can expect to pay per day, so long as it runs an ad campaign for a full month." Summary Judgment Order, p. 19. The daily budget can only refer to the "average amount that an advertiser can expect to pay per day " when, and if, Google overdelivers an ad beyond the daily budget.

Lastly, while Plaintiffs maintain that Defendant's references to bifurcating these claims of overdelivery and pausing is unnecessary and a red herring to scare Plaintiffs' into dropping their overdelivery claim, if, and to the extent, the Court deems these two facets of Plaintiffs' breach of contract and UCL claims, cannot be maintained together, subclasses can be drawn.

**Google's Position**

Google maintains the Court's Order recognizes that Google's delivery of up to 120% of daily budget in a single day is an express contract term, and the only *potential* claim related to the 120% delivery relates to advertisers who: (1) run a campaign for less than a month or terminate the campaign prior to the end of the month[1] or (2) pause during the course of the advertiser's campaign. See Summary Judgment Order, page 16 lines 1 through 11. The Court stated that there was a question whether in those situations the advertiser would be charged more than this his or her average daily budget times the number of days that campaign ran in the month. *Id.* The Court's Order does not suggest that there is an issue of fact about whether Google has liability simply for

---

[1] Google asserts that the evidence will show that if an advertiser terminates a campaign before the conclusion of the month, advertisers are only charged their average daily budget times the number of days in the month the campaign was running, so that as a factual matter, this claim will find no support.

1  charging 120% of the daily budget on a given day (this practices is fully and repeatedly disclosed in
2  the FAQ's which form part of the contract) - unless the advertisers pauses or terminates the
3  campaign before the end of the month. Thus 120% delivery in a single day is only a remaining
4  issues in this case when an advertiser pauses one or more days in the month or when the advertiser
5  terminates a campaign before the end of the month. Conversely, there is no remaining claim based
6  solely on delivery of 120% daily budget on any given day in a month where the advertiser did not
7  pause or where the advertiser did not terminate the campaign before the end of the month.[2]

8  As noted, Google also requests that the Court clarify this issue for the parties as such a
9  clarification will greatly affect the scope of discovery and the claims remaining in the case. Google
10 would move to bifurcate any claim that delivery of up to 120% was improper independent of pausing
11 or terminating a campaign before the end of a month, because that claim involves an entire separate
12 class of plaintiffs than claims based on pausing or terminating a campaign before the end of the
13 month.

14 Google believes that court addressed this issue in its Order but in light of plaintiffs'
15 contention that the issue has not been decided, is prepared to submit further briefing on the issue.
16 Google requests a further Case Management Conference after the Court has clarified its Order.

17 Google maintains that the Court's statement that a breach of contract may lie when
18 advertisers pause their ad or run a campaign for less than a complete month defines the claims still in
19 the case following the Court's Summary Judgment Order.

20 Google contends that the Court only raised the issue of whether Google's practice of
21 overdelivery up to 120% of daily budget may be found to be misleading, deceptive and/or unfair in
22 conjunction with pausing or in the case of an advertiser who terminates a campaign prior to the end
23 of a month.

**Plaintiffs' Position on Merits Discovery**

25 Plaintiffs will seek discovery regarding pausing and overdelivery. This will include all
26 public representations (including drafts, comments). Given Plaintiffs' unfair competition law

---

[2] Google asserts that plaintiffs conceded this position in their arguments before and are now revisiting an issue that they did not raise as a basis for liability in their motions.

1  claims, as well as their contract interpretation arguments, this will include the FAQs, as well as set
2  up screens, tutorials, help center screens and all other representations made publicly available since
3  2002. Plaintiffs will also seek internal communications. Plaintiffs will seek relevant discovery
4  concerning Ad Scheduling. Plaintiffs will request that all documents be produced, as maintained,
5  presumably in electronic format with metadata. (With respect to the documents previously produced
6  to Plaintiffs, Plaintiffs will request that they be reproduced in electronic format, as they were
7  maintained by Google, and with metadata.)
8  Once documents are received, Plaintiffs will determine who, if anyone, should be deposed.

9  **Google's Position on Merits Discovery**
10 Google contends that any discovery is premature until the scope of the Court's ruling on the
11 motions for summary judgment is clarified.
12 Google contends that any merits discovery is premature until (1) the court has clarified the
13 issues remaining in the case and (2) until class certification issues have been heard. Google will take
14 third party discovery relating to class certification issues discussed below. Google will also depose
15 plaintiffs regarding class certification issues. Google opposes merits discovery prior to
16 determination of the certification issues.

17 **Plaintiffs' Position on Discovery as to Damages**
18 In addition to merits discovery, Plaintiffs will seek information pertaining to damages so that
19 they will be able to settle the case, if possible. This will include information from advertisers'
20 campaigns, as well as analyses of pausing, for full days and partial days. Plaintiffs anticipate that
21 this will likely require the retention of experts and access to Google's computerized records.

22 **Google's Position on Discovery as to Damages**
23 Google opposes damages discovery until the court has clarified the issues remaining in the
24 case, until class certification has gone forward on whatever issues remain, and until merits discovery
25 on the remaining issues has been concluded.

26 **Bifurcation**
27 **Plaintiffs' Position**
28 Defendant wants to "trifurcate" class, merits, and damage discovery, and to bifurcate merits

discovery into overdelivery and pausing. Such parsing serves only to increase discovery costs and delay any resolution of this action.

Hence. Plaintiffs oppose all bifurcation of discovery by merits and class, or otherwise.

Defendant's attempt to bifurcate overdelivery and pausing is without merit. Nothing, other than delay and unnecessary litigation as to whether each document request concerns overdelivery or pausing, or both, will ensue from such bifurcation. Defendant readily admits that it bills all AdWords advertisers up to 120% of their daily budget and that it does not account for partially paused days and only began accounting for fully paused days in September, 2006. Defendant may even stipulate to such practices and reduce the scope of discovery. Discovery as to damages is necessary, not only to prepare for trial, but to create a basis for settlement discussions.

As to bifurcation of class and merits discovery, the facts needed to prove that Plaintiffs' claims are typical of those of the members of the class and that there are common issues of fact and law alleged in the Complaint are also relevant to the merits. Any attempt to separate these material facts and pigeon-hole them into a "class certification" box or a "merits" box will give rise to duplicative discovery, delay, wasted judicial resources and higher litigation expenses. The issues are inextricably intertwined. Bifurcation leads to numerous and unnecessary discovery disputes. For example, information concerning whether, and how many, other advertisers had their affirmatively paused days used to absorb overrages from other days; whether and how many, advertisers were billed more than their daily budget on any given day, and whether the AdWords FAQs were designed more to obfuscate Google's billing practices, rather than enlighten AdWords advertisers, are relevant to both merits and class.

Bifurcation leads to unnecessary delay and litigation.

**Google's Position on Bifurcation**

Google believes that bifurcation is necessary for orderly determination of the issues and for judicial economy. First, the class members must be ascertained. If the 120% issue remains in the case irrespective of pausing, the putative class claims must be bifurcated from those of the pausing class. A class of all advertisers who ever received overdelivery up to 120% daily budget in a single day would consist of virtually all AdWords advertisers, whereas the pausing class would be a much

1  smaller number of advertisers, as discussed below. Thus in the unlikely event both claims remain in
2  the case, the class claims should be bifurcated for both discovery and trial. Second, merits discovery
3  and trial should precede any damages discovery and trial.

4  **CLASS ACTION**

5  Plaintiffs' Position Regarding Class Certification

6        Plaintiffs will move to certify a class. Since they are requesting both injunctive relief and
7  damages, class certification is proper under both Rule 23(b)(2) and Rule 23(b)(3). Even with Ad
8  Scheduling, partially paused days are still being used to absorb overrages from other days
9  (unbeknownst to advertisers) and Google is currently under no obligation to continue Ad
10 Scheduling's feature of excluding fully paused days (days paused 24 hours in advertiser's time zone)
11 from its monthly budget calculation.

12       Prior to filing their motion, Plaintiffs will require class discovery in order to support
13 numerosity, commonality, typicality, adequacy and predominance. If Defendant stipulates to a class,
14 and/or certain prerequisites thereof, the discovery can be tailored to address only the contentious
15 issues.

16       Plaintiffs intend to seek certification of the plaintiff class defined in the Second Amended
17 Complaint which is all persons who were charged by Google more than their set daily budgets for
18 their advertising campaign(s). The Class will be from January 2002 through the present (only
19 damages resultant from fully paused days are likely to end as of September, 2006).

20       Clearly Defendant's argument that any class should be limited to persons who "did not want
21 to meet their budget goal of daily budget times the number of days in the month" is without merit. If
22 advertisers do not want to join the class they will exercise their right to opt out.

23       With respect to timing of their motion, Plaintiffs propose filing their motion after class
24 discovery concludes. As noted class discovery can be limited if Defendant sets forth what under
25 Rule 23 it intends to dispute and the bases therefor.

26       Also with respect to timing, Plaintiffs acknowledge that certification of a class with respect to
27 their unfair competition law claims is affected by whether the California Supreme Court holds that
28 Proposition 64 added reliance as an additional substantive element of said claims. While Plaintiffs

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034
9

maintain that even if reliance is an element a class should still be certified the analysis is definitely different and simpler if the California Supreme Court does not find reliance to be an element of the claims. The California granted review of the issue in the *Tobacco II* case ( <u>In re Tobacco II Cases</u>, 142 Cal. App. 4th 891, 903 [Cal. Ct. App. 2006]) on November 1, 2006.

There is no reliance requirement as to Plaintiffs' breach of contract claim.

**Google's Position Regarding Class Certification**

Google maintains that there is no viable class or class claim based upon delivery of over 100% of daily budget (but less than 120% of a daily budget) in a single day. As to the putative pausing class, it could include only those advertisers who did not want to meet their budget goal of daily budget times the number of days in the month. Further, class certification would be improper because there are core questions of knowledge and reliance unique to each advertiser. There is no commonality given the disparities in what each advertiser knew, relied upon, or expected in regard to the effect of pausing. Nor is there typicality, as Google has evidence that most advertisers wanted to reach their budget over the course of a month, and only plaintiffs complained about paused days being included. Numerosity is also not satisfied where the class is limited to advertisers who did not want to reach their budget goals. Plaintiff Hanson's is not an adequate representative of the class and discovery as to adequate representation would be required.

In regard to the factors set forth in Rule 23(b), class issues do not predominate over individual issues, and a class proceeding is not a superior method for proceeding. Defendant disagrees that any class could be maintained under Rule 23(b) (2). No injunctive relief can be obtained to require Google to exclude paused days from calculation of advertising charges, because paused days have been excluded since the introduction of Ad Scheduling in September 2006.

Google agrees with plaintiffs that the issues before the California Supreme Court regarding reliance as prerequisite to bringing a claim will affect class certification issues and agree that class certification motions should not proceed until that issue has been clarified by the California Supreme Court.

**RELATED CASES**

The parties are unaware of any related cases.

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034                                           10

## RELIEF

### Plaintiffs' Position

With respect to the contract claim, Plaintiffs seek the contract measure of damages - the difference between what Plaintiffs and advertisers paid and the amounts they would have been paid had the AdWords agreement been followed. With respect to the unfair competition claims, Plaintiffs seek restitution - the return of the difference between what Plaintiffs and advertisers paid and the amounts they would have been paid had Google billed them in accordance with its representations.

Plaintiffs also seek injunctive relief. Defendant is still using partially paused days to absorb overdelivery from days an ad runs. Defendant must be ordered to stop the practice or to effectively disclose that paused days are going to be used in that manner. In addition, even though Defendant claims that Ad Scheduling, which it instituted in September, 2006, has stopped overdelivery from being applied to fully (24 hour) paused days, Defendant should be required to maintain this new practice (prevent it from going back to its old ways without disclosing that paused days are going to be used to absorb overdelivery). In addition, Defendant should either stop exceeding to an advertiser's daily budget on any given day, or amend its disclosures so that it is clear to advertisers that they are going to be billed, and have to pay, in excess of their daily budget on any given day.

### Google's Position Regarding Relief Sought By Plaintiffs

Google contends that plaintiffs are entitled to no relief. If, however, plaintiffs were to succeed on the pausing claim, the recovery for plaintiffs and the putative class under either the contract claim or the unfair trade practices claim would be limited to the difference between what the advertisers were charged including paused days in calculation of average daily budget times the number of days in the month, and what the advertisers would have been charged had the paused days been excluded. Google disagrees that the inclusion of partially paused days in the number of days of the month provides a basis for any cause of action whatsoever. Plaintiffs are not entitled to injunctive relief. Google has not included paused days in calculating charges since Ad Scheduling was implemented in September 2006, and no injunction lies where the complained of activity has

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034                                                   11

1 ceased.

**SETTLEMENT AND ADR**

The parties participated in an ADR phone conference pursuant to which they agreed that mediation would be the best ADR method. Plaintiffs need discovery as to damages in order to be in a position to negotiate a resolution.

**CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

**OTHER REFERENCES**

The parties participated in an ADR phone conference pursuant to which they agreed that mediation would be the best ADR method.

The parties participated in a one day mediation before Judge Ronald Sabraw at JAMS on November 6, 2008. As noted, the parties concluded that given the different interpretations of the Court's order, that further mediation efforts would not be fruitful until the issues associated with the Court's order had been clarified. Plaintiffs maintain that discovery as to damages is necessary before there can be a successful mediation.

**NARROWING OF ISSUES**

The parties respectfully refer the Court to the section on discovery and the need for clarification with respect to overdelivery.

**EXPEDITED SCHEDULE**

Summary adjudication motions have already been made on an expedited basis.

**TRIAL**

The parties agree that it is premature to estimate a date for trial or the length of a trial at this time.

**DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

One of the Plaintiffs, CLRB Hanson Industries LLC, is a limited liability company. Brett Hanson is the member thereof.

**OTHER MATTERS TO FACILITATE A JUST,
SPEEDY AND INEXPENSIVE DISPOSITION**

Plaintiffs request that once there has been discovery as to damages this case should be sent to mediation under the auspices of this Court.

DATED: November 26, 2007

          **AUDET & PARTNERS, LLP**
          221 Main Street, Suite 1460
          San Francisco, CA 94105-1938
          Telephone: 415.568.2555
          Facsimile: 415.568.2556

          **WOLF POPPER LLP**

By: /s/_____
      Lester L. Levy (admitted *pro hac vice*)
      Michele F. Raphael (admitted *pro hac vice*)
      845 Third Avenue
      New York, NY 10022
      Telephone: 212.759.4600
      Facsimile: 212.486.2093

      Attorneys for Plaintiffs

      **PERKINS COIE**

By: /s/_____
      David T. Biderman
      Judith B. Gitterman
      M. Christopher Jhang
      425 Market Street
      San Francisco, CA 94105
      Telephone: 415.268.7000
      Facsimile: 415.268.7522

      Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br>vs.<br>GOOGLE, INC.,<br>　　　　　　　　　　　Defendant. | CASE NO: C05-03649 JW |

**<u>PLAINTIFFS' [PROPOSED] CASE MANAGEMENT ORDER</u>**

This Court, having conducted a Case Management Conference on December 3, 2007, it is hereby Ordered that:

(1)　Defendants shall promptly advise Plaintiffs which prerequisites to class certification they intend to oppose so that class discovery may proceed;

(2)　In order to conduct meaningful settlement discussions, Plaintiffs are entitled to discovery now as to damages;

(3)　Class and merits discovery shall proceed; and

(4)　The next Case Management Conference will be held on _____.

Dated:

_____
United States District Court Judge

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034                                    14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br>vs.<br><br>GOOGLE, INC.,<br>                      Defendant. | CASE NO: C05-03649 JW |

### **DEFENDANT GOOGLE INC.'S [PROPOSED] CASE MANAGEMENT ORDER**

This Court, having conducted a Case Management Conference on December 3, 2007, it is hereby Ordered that:

(1)    The Court will enter an Order specifying whether, pursuant to the August 21, 2007 Order on the parties' motions for summary judgment and partial summary judgment, plaintiffs' claim that Google's delivery of up to 120% daily budget on any given day in a month is a claim in a month where the advertiser had not paused or terminated a campaign prior to the end of the month ("the Further Order on Motions for Summary Judgment");

(2)    Any further briefing to enable the court to make a ruling on Further Motions for Summary Judgment order shall be submitted by January 14, 2008. Each side shall file simultaneous briefs on that day and the Court will notify the party if it desires a hearing. There shall be no further briefing following the January 14 briefs;

(3)    A further case management conference shall be held after the Court has rendered the Further Order on Motions for Summary Judgment;

(4)    No discovery shall proceed until the Court has issued the Further Order on Summary Judgment;

1      (5)    The parties reserve the right to seek bifurcation of certain issues for trial depending on the Further Order on Summary Judgment; and

    (6)    No merits or damages discovery shall proceed until after any hearings on the class certification.

Dated:

_____
United States District Court Judge

JOINT CASE MANAGEMENT STATEMENT
(CASE NO: C05 03649)
Doc. 159034

16