DAVID T. BIDERMAN, Bar No. 101577
JUDITH B. GITTERMAN, Bar No. 115661
M. CHRISTOPHER JHANG, Bar No. 211463
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050
Email: DBiderman@perkinscoie.com
Email: JGitterman@perkinscoie.com
Email: CJhang@perkinscoie.com

Attorneys for Defendant Google Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendants. | CASE NO. C 05-03649 JW<br><br>**DEFENDANT GOOGLE INC.'S OPENING BRIEF REGARDING THE 120% RULE**<br><br>Hearing:   February 25, 2008<br>Time:      9:00 a.m.<br>Dept.:     Courtroom 8<br>Judge:     Honorable James Ware |

DEFENDANT GOOGLE INC.'S OPENING BRIEF REGARDING THE 120% RULE
Case. No. 05-03649
41063-0023/LEGAL13907045.1

Dockets.Justia.com

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ISSUE TO BE DECIDED | 1 |
| III. | STATUS OF PROCEEDINGS | 2 |
| IV. | STATEMENT OF FACTS | 3 |
| | A. Google's Advertising Program | 3 |
| | B. The Parties' Enforceable Agreement And AdWords Sign Up Webpage Provide That Google Can Deliver And Charge Up To 120% Of An Advertiser's Daily Budget On A Given Day. | 4 |
| | C. Plaintiffs Already Conceded That The 120% Alone Cannot Support A Claim For Relief. | 6 |
| V. | ARGUMENT | 7 |
| | A. Application Of The 120% Rule Alone Is Not A Breach of Contract. | 7 |
| | B. Application Of The 120% Rule Alone Does Not Violate Unfair Competition Laws. | 10 |
| VI. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*,
   290 F.Supp.2d 1034 (N.D.Cal. 2003) .................................................................... 10

*Bank of America v. Lamb Finance Co.*,
   145 Cal.App.2d 702 (1956) ........................................................................................ 9

*Consol. World Inv., Inc. v. Lido Preferred Ltd.*,
   9 Cal. App. 4th 373 (1992) ........................................................................................ 7

*Duffy v. Griffith Co.*,
   206 Cal.App.2d 780 (1962) ........................................................................................ 9

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ...................................................................................... 11

*Kashmiri v. Regents of University of California*,
   156 Cal.App.4th 809 (2007) .................................................................................... 10

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) .................................................................................... 10

*Powers v. Dickson, Carlson & Campillo*,
   54 Cal.App.4th 1102 (1997) ...................................................................................... 8

*R & B Auto Center, Inc. v. Farmers Group, Inc.*,
   140 Cal.App.4th 327 (2006) .............................................................................. 12, 13

*Reichert v. Gen. Ins. Co.*,
   68 Cal. 2d 822 (1968) ................................................................................................ 7

*Rowland v. PaineWebber Inc.*,
   4 Cal.App.4th 279 (1992) .......................................................................................... 9

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
   72 Cal.App.4th 861 (1999) ...................................................................................... 12

*Wayne v. Staples, Inc.*,
   135 Cal.App.4th 466 (2006) .................................................................................... 11

*Williams v. Gerber Products Co.*,
   439 F. Supp. 2d 1112 (2006) ................................................................................... 10

**Statutes**

Bus. & Prof. Code § 17200 ............................................................................................. 3, 10, 12

Bus. & Prof. Code § 17500 ................................................................................................. 3, 10

California Civil Code § 1641 .................................................................................................. 10

## I. INTRODUCTION

Plaintiffs seek to expand the scope of this case by challenging Google's ability to deliver ads up to 120% of the daily budget to account for prior shortfalls in traffic. In so doing, Plaintiffs attempt to assert a claim that they have not adequately pled, briefed, or argued during the past two years of this litigation, which includes two summary judgment proceedings. In fact, this claim was expressly waived in argument before this Court and ignores facts Plaintiffs conceded in deposition testimony. Plaintiffs' claim would expand this lawsuit to include an entirely new class: potentially every AdWords advertiser since the AdWords program began. Such an effort fails because, as this Court recognized in its August 21, 2007 ruling, Google's practice of making up for prior shortfalls (delivering and charging up to 120% of a daily budget) is fully disclosed in the AdWords contract. Instead of proceeding to address the narrow issue of whether Google's pausing feature constitutes an unfair business practice or breach of contract, which is what remains of this case following the summary judgment proceedings, Plaintiffs seek to introduce an entirely new issue that has no merit whatsoever. The Court should not allow this claim to proceed.

## II. ISSUE TO BE DECIDED

The sole issue for the Court to clarify on this motion is whether Google's AdWords Agreement permits Google to deliver and charge up to 120% of an advertiser's daily budget on a given day to make up for prior shortfalls (the "120% rule"). This practice is disclosed in the AdWords Agreement and described in multiple sections of Google's AdWords contract. Importantly, this practice benefits advertisers by accounting for daily fluctuations in Internet traffic during a month, and thus, allows an advertiser to maximize the number of site visitors without exceeding the daily budget as averaged over the course of a month. The AdWords Agreement expressly defines this practice in plain language, and thus, the practice is neither a breach of the AdWords Agreement nor does it constitute unfair competition.

Plaintiffs have not previously challenged the 120% rule alone and, in fact, admitted the propriety of this practice in depositions and court hearings. Until now, Plaintiffs have challenged

<u>only</u> the propriety of Google's pausing feature, arguing that paused days should be excluded from the denominator (i.e., the total days in month) when averaging out the budget for the month. This issue was briefed, argued, and ruled upon, and will be tried regardless of the ruling on this motion. *See* August 21, 2007 Order ("Summary Judgment Order"), 15:20 – 16:11. Setting aside the number of days that should be in the denominator when averaging the budget for the month, the 120% rule in and of itself is not at issue in this lawsuit.

As Google demonstrates below, the 120% rule cannot support Plaintiffs' remaining claims for breach of contract and unfair competition. The practice is disclosed and specifically described in both the AdWords Agreement, which provides that "[o]n any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily budget calls for," and in AdWords sign up webpages. This Court's Summary Judgment Order acknowledged that charging 120% of the daily budget where there has been no pausing is proper. Plaintiffs now dispute that order.

Plaintiffs' new position strains any reasonable interpretation of the AdWords contract and appears to reflect nothing more than disappointment that their putative class consists of only those who paused their ads, rather than every single AdWords user from the beginning of AdWords until today. Accordingly, the Court should affirm, based on the undisputed facts, that Google's delivery of up to 120% of an advertiser's daily budget, by itself, cannot constitute a breach of contract or unfair competition.

### III.     STATUS OF PROCEEDINGS

Plaintiffs filed their original complaint on August 3, 2005. On September 12, 2005, Google removed the case to this Court. Plaintiffs filed an amended complaint on November 14, 2005 and the operative second amended complaint on May 4, 2006. At the initial status conference, the Court ordered the parties to conduct discovery and submit cross motions for summary judgment to clarify the agreement between the parties. Plaintiffs were deposed on August 16, 2006 and August 18, 2006. After an initial summary judgment hearing, the Court ordered further discovery. Google produced additional documentation and three witnesses for

deposition on the operation of the AdWords system and a further hearing was held on June 11, 2007.

On August 21, 2007, the Court issued its Summary Judgment Order granting Google's motion with respect to Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and unjust enrichment, denying Google's motion on Plaintiffs' claims for breach of contract and violations of California's Unfair Competition Law, sections 17200 and 17500, et seq., and denying Plaintiffs' motion for partial summary judgment in its entirety. Summary Judgment Order, 21:11-15. The Court also found that a valid advertising agreement exists between the parties, which includes both the Terms and Conditions and the FAQs. Summary Judgment Order, 15:17-19.

On November 6, 2007, the parties participated in private mediation at JAMS. The mediation proved unsuccessful in light of the parties' differing views on whether the 120% rule in and of itself is grounds for a breach of contract or an unfair competition claim. Google believes the issue was resolved by the August 21 ruling, but Plaintiffs argue otherwise. At the December 3, 2007 Case Management Conference, the Court ordered further briefing on this issue.

## IV. STATEMENT OF FACTS

**A.    Google's Advertising Program.**

The Court's Summary Judgment Order clearly describes the operation of the AdWords system. These facts are not in dispute, but for purposes of clarity, Google describes the key elements of its system below:

Google's online advertising program, AdWords, posts advertisers' sponsored ads on Google's websites or Google's syndication partners' websites. Summary Judgment Order, 2:6-10; Statement of Undisputed Facts ("SUF"), ¶¶ 1, 2. Advertisers sign up for the AdWords program online and, during the registration process, an advertiser: creates its ad text (the text of the advertisement that will appear with the search result); selects keywords that will trigger the

display of the ad; selects geographic locations to target; and sets a maximum cost-per-click to spend when someone clicks on the ad. Summary Judgment Order, 2:11-15; SUF, ¶¶ 4, 6, 9.

Advertisers also set a "daily budget," which is described as "the amount you're willing to spend on a specific AdWords campaign each day." Summary Judgment Order, 2:15, 3:21 – 4:6; Declaration of M. Christopher Jhang in support of Google's Motion for Summary Judgment ("Jhang Decl. ISO Google's MSJ"), Exhibit D (FAQs), p. 84 of 489. Google also makes clear that "[o]n any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily budget calls for" because this "helps make up for other days in which [the advertiser's] daily budget is not reached." *Id*. Google's system is designed to allow delivery of advertisements in excess of daily budgets in order to address the natural fluctuations in traffic on the Internet in order to ensure that advertisers meet their advertising goals for a monthly billing period. Summary Judgment Order, 4:7-24; Supplemental Declaration of M. Christopher Jhang in support of Google's Supplemental Brief in support of Summary Judgment Motion ("Supp. Jhang Decl. ISO Google's MSJ"), Exhibit A (Wilburn Dep.), 67:22 – 68:20.

**B.  The Parties' Enforceable Agreement And AdWords Sign Up Webpage Provide That Google Can Deliver And Charge Up To 120% Of An Advertiser's Daily Budget On A Given Day.**

All advertisers who sign up for AdWords online are subject to the AdWords Agreement, which consists of the AdWords Program Terms ("Program Terms") and the AdWords Frequently Asked Questions ("FAQs"). Summary Judgment Order, 15:17-19; Jhang Decl. ISO Google's MSJ, Exhibit C (Google Inc. Advertising Program Terms printed on August 15, 2006 ("Program Terms")). As this Court held, Plaintiffs are subject to the AdWords Agreement and the Agreement is a valid and enforceable contract. Summary Judgment Order, 15:17-19.

The Agreement specifies how Google will deliver ads and how advertisers will be charged for their advertising campaigns. The Agreement expressly provides that advertisers' accounts may accrue charges in excess of their daily budgets by 20% on any given day, and tells advertisers that the AdWords system is designed to deliver up to 120% of an advertiser's daily

budget in order to account for fluctuations in advertising traffic.  Summary Judgment Order, 3:21 – 4:6; Jhang Decl. ISO Google's MSJ, Exhibit D (FAQs), pp. 84 of 489, 125 of 489.

An FAQ entitled "Why am I being charged for more than my daily budget on some days?" states:

> User traffic fluctuates from day to day.  To make up for these fluctuations and to ensure that your campaigns reach their potential, Google may allow up to 20% more clicks (or impressions for site-targeted campaigns) in one day than your daily budget specifies.  We call this overdelivery.

Jhang Decl. ISO Google's MSJ., Exhibit D (FAQs), p. 125 of 489.

The same FAQ also spells out how the 120% rule works with the established daily budget:

> However, our system makes sure that in a given billing period, you're never charged more than the number of days in that month multiplied by your daily budget.  That amount equals your monthly budget.
>
> For instance, if you budget US$100 per day in a 30-day month, you may receive more than US$100 in clicks on a given day, but the maximum you would pay for that month is US$3,000.
>
> If Google overdelivers your ads, resulting in more clicks than your monthly budget allows, you'll receive a credit to your account.  Credits for clicks in excess of your monthly budget are listed on your Advertising costs page (accessible from your Billing Summary) as an Overdelivery credit.

*Id*.

The definition of "daily budget" in the Agreement also includes a description of the 120% rule.  "Daily budget" is defined as:

> The amount you're willing to spend on a specific AdWords campaign each day.
>
> AdWords displays your ad as often as possible while staying within your daily budget.  When the budget limit is reached, your ads will typically stop showing for that day.  How quickly your ads are shown during a given day is determined by your ad delivery setting.
>
> On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for.  This helps make up for other days in which your daily budget is not reached.  However, you'll never be charged more than your average daily budget over the course of a month.  For example: if your daily budget is $10 and the month has 30 days, you might

- 5 -

be charged up to $12 on any single day but your monthly charges will
never exceed $300.

Summary Judgment Order, 3:21 – 4:6; Jhang Decl. ISO Google's MSJ, Exhibit D (FAQs), p. 84 of 489.

In addition, one of the webpages in the AdWords sign up process in 2002 clearly disclosed the 120% rule. It provided:

> Just enter what you'd like to spend per day in the "Daily budget" box, and Google will show your ad evenly throughout the day. *Your actual daily changes may fluctuate by 20% because of changing search volume*, but the maximum you will spend in a 30-day calendar month should be no more than 30 times your daily budget.

Declaration of Heather Wilburn in Support of Google Inc.'s Opening Brief Regarding the 120% Rule ("Wilburn Decl."), ¶ 3, Exhibit A (sign up screen printout) (emphasis added).

### C. Plaintiffs Already Conceded That The 120% Alone Cannot Support A Claim For Relief.

Plaintiffs acknowledged in their depositions that the terms regarding Google's right to allow up to 20% more clicks per day are part of their Agreement with Google. Jhang Decl. ISO Google's MSJ, Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, Exhibit B (Stern Dep.), 65:8 – 66:14, 81:21 – 82:17. They acknowledged that not only was this expressly stated in the Agreement, but that Google representatives confirmed that these terms are part of the contract. *Id.*, at Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9, Exhibit B (Stern Dep.), 99:17 – 100:15.

In particular, Brett Hanson, plaintiff CLRB Hanson's representative, admitted that as early as March 2005 he was informed by a Google representative that Google tries "to keep your daily cost fluctuation to no more than 20% above your daily budget." *Id.*, at Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9. Likewise, plaintiff Stern admitted that as early as October 2003 he was informed by email that "it is possible that [he] may accrue charges above or below [his] set [daily budget] limit." *Id.*, at Exhibit B (Stern Dep.), 99:17 – 100:15. In fact, Plaintiffs acknowledged that under their understanding of the Agreement, Google may charge up to 20% more clicks on a given day than their daily budget specifies. *Id.*,

at Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, Exhibit B (Stern Dep.), 65:8 – 66:14, 81:21 – 82:17.

Plaintiffs also admitted that they continued to use the AdWords program after they were directly informed by Google that they may be charged up to 20% above their daily budgets on a given day. *Id.*, at Exhibit A (Hanson Dep.), 135:20 – 137:15, 177:19 – 178:9, Exhibit B (Stern Dep.), 99:17 – 100:15, 101:4 – 101:9. They admitted, in their original complaint, that they were informed by Google that "[i]n general, we try to keep your daily cost fluctuation to no more than 20% above your daily budget." *Id.*, at Exhibit E (Plaintiffs' original Complaint filed August 3, 2005), ¶ 44.

Moreover, when the parties briefed cross motions for summary judgment, Plaintiffs focused entirely on pausing. Plaintiffs' counsel conceded during oral argument that Plaintiffs were <u>not</u> arguing that the 120% rule in and of itself was improper. He stated in response to the Court's question regarding the 120% rule:

> It works if you don't pause your ad. If you run your ad for the 30 days. And, and they charge you 20 percent more in any given day. *At the end of that month you're not hurt because the most they'll charge you is the 30 days time your daily budget.* So you haven't been charged for that extra 20 percent. The way people get hurt is they pause their ads. . ."

Declaration of M. Christopher Jhang in Support of Google Inc.'s Opening Brief Regarding the 120% Rule ("Jhang Decl."), Exhibit A (Reporter's Transcript of June 21, 2007 hearing), 44:1-9 (emphasis added).

## V.     ARGUMENT

**A.     Application Of The 120% Rule Alone Is Not A Breach of Contract.**

The essential elements of a cause of action for breach of contract are: an enforceable contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach of the contract, and resulting damages to the plaintiff. *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968). When the plain language of an agreement contradicts the breach of contract allegations of a plaintiff, the defendant is entitled to a dismissal of the plaintiff's claim as a matter of law. *See Consol. World Inv., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992) (nonsuit

granted to defendant on contract claims because plaintiff's interpretation of contract "flatly contradict[ed] the terms of the agreement").

Here, the Court held that an enforceable contract exists between the parties. There is no ground for breach based solely on delivery and charges of up to 120% of daily budget in a day, because the terms set forth in the Agreement expressly provide for this. The Agreement specifically provides that daily budgets can be exceeded on any given day and that the Google system may deliver ads up to 20% in excess of a daily budget. Jhang Decl. ISO Google's MSJ, Exhibit D (FAQs, p. 125 of 489 ("User traffic fluctuates from day to day. To make up for these fluctuations and to ensure that your campaigns reach their potential, <u>Google may allow up to 20% more clicks. . . in one day than your daily budget specifies</u>. . . .") (emphasis added)), Exhibit D (FAQs, p. 84 of 489 ("On any single day, <u>the AdWords system may deliver up to 20% more ads than your daily budget calls for</u>. . . .") (emphasis added)).[1] There is nothing in the Agreement supporting Plaintiffs' literal interpretation of the contractual term "daily budget" to mean any clicks above 100% of daily budget in a day were free, and that the contractual provision regarding the calculation of charges over the course of a month should be ignored. In fact, as set forth in the Summary Judgment Order, Plaintiffs acknowledged in the Statement of Undisputed Facts that they would receive an overdelivery credit for any charges <u>greater than</u> 120% of the daily budget. Summary Judgment Order, 3:1-3, SUF, ¶ 15. For Plaintiffs to now claim that they did not know they could be charged up to 120% daily budget in a day is disingenuous.

Any alleged failure to review the Agreement does not nullify its binding effect. *Powers v. Dickson, Carlson & Campillo*, 54 Cal.App.4th 1102, 1109 (1997); *Rowland v. PaineWebber*

---

[1] The AdWords FAQs available to Plaintiffs when they signed up for AdWords also provided a similar disclosure to advertisers. Declaration of Leslie Altherr in support of Google's Motion for Summary Judgment ("Altherr Decl. ISO Google's MSJ"), Exhibit 3 (July 2002 FAQs, p. GOOG-HN 20904 ("Traffic is not constant from day to day . . . To account for this and maximize the potential of your advertising, <u>Google may allow up to 20% more clicks in one day than your daily budget specifies</u>."), Exhibit 4 (October 2003 FAQs, p. GOOG-HN 20888 (same)).

DEFENDANT GOOGLE INC.'S OPENING BRIEF REGARDING THE 120% RULE
Case. No. 05-03649
41063-0023/LEGAL13907045.1

*Inc.*, 4 Cal.App.4th 279, 287 (1992) (*disapproved on other grounds*, 14 Cal.4th 394 (1996)). As the Court found, Plaintiffs' assent to the Agreement included acceptance of the FAQs, which they had full opportunity to review prior to accepting the Agreement. Summary Judgment Order, 15:17-19.

Moreover, Plaintiffs acknowledged in their depositions the Agreement's terms regarding the 120% rule and that the 120% rule was further disclosed to them by Google's customer service representatives. They also conceded that they continued to use the AdWords program after customer service representatives reminded them of the Agreement's terms. *See* Section IV.C, above.

Plaintiffs' turnabout position at this time is suspect, given that Plaintiffs' counsel admitted in open court that the 120% rule by itself is not at issue in this case. *Id*. Counsel's admission in open court is binding on Plaintiffs. *Duffy v. Griffith Co.*, 206 Cal.App.2d 780, 793 (1962) (counsel's admission in court of employment relationship with co-defendant had effect of abandoning scope of authority argument and was binding on defendant); *Bank of America v. Lamb Finance Co.*, 145 Cal.App.2d 702, 708 (1956) ("In the absence of fraud, the admissions of an attorney in open court are binding upon the client. [Citations omitted.] The effect of this admission was to eliminate from the case any issue of the company's liability on the note."). Plaintiffs' new position is nothing more than a transparent attempt to create an inflated class that would encompass virtually every advertiser using the AdWords program.

In sum, the Agreement expressly provides for delivery of up to 120% of daily budget on any single day and the AdWords system was designed to deliver advertisements in accordance with this contractual term. Plaintiffs' literal interpretation of "daily budget" contradicts the terms of the Agreement and the operation of the AdWords system, and is unsupported by their own testimony and their prior positions taken in this litigation. Indeed, Plaintiffs seize upon the two words "daily budget" and impose their own meaning on it while completely ignoring the actual terms of the Agreement, including the very definition of daily budget, which includes by reference the 120% rule. Under well established principles of contract interpretation, courts are

to interpret the written provisions of a contract together, "so as to give effect to every part...." Civ. Code § 1641; *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 834 (2007).[2]

Accordingly, the Court should find that the 120% rule by itself cannot form the basis for a breach of contract claim as a matter of law.

**B.      Application Of The 120% Rule Alone Does Not Violate Unfair Competition Laws.**

A violation of unfair competition laws requires an unlawful, unfair, or fraudulent business act or practice, or an unfair, deceptive, untrue or misleading advertising. Bus. & Prof. Code §§ 17200, 17500. A "reasonable consumer" standard applies when determining whether a given claim is misleading or deceptive, and if the alleged misrepresentation would not mislead a reasonable consumer, the allegation may be dismissed. *Williams v. Gerber Products Co.*, 439 F. Supp. 2d 1112, 1115-16 (2006) (representation that product "made with real fruit juice and other all natural ingredients" not likely to deceive reasonable consumer even though product consisted mostly of corn syrup and sugar). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003).

*See also, Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 290 F.Supp.2d 1034, 1041 (N.D.Cal. 2003), in which the court granted summary judgment to the defendant ink cartridge manufacturer, holding that when a business practice alleged to violate California unfair competition and false advertising statutes is targeted to sophisticated purchaser, question whether practice is misleading to public will be viewed from vantage point of members

---

[2] Cal. Civil Code § 1641 provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

- 10 -

of targeted group, not others to whom it is not primarily directed.  Here, the targeted group consists of AdWords advertisers, all of whom must accept the terms of the AdWords contract, including the 120% rule, in order to participate in the advertising program.

A clearly disclosed term or practice is not deceptive as a matter of law.  *Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 483-84 (2006) (upholding trial court's conclusion that alleged ambiguity in order form over whether amount charged includes surcharge was not misleading or deceptive because of clear disclosure of charge to customers).  *See also, Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (plaintiffs failed to show that promotional materials likely to deceive recipient into believing he had won sweepstakes, where the promotions expressly and repeatedly state the conditions which must be met in order to win: "None of the qualifying language is hidden or unreadably small.  The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it.").

Here, the 120% rule is clearly disclosed to advertisers *during the sign up process*, and thus, cannot be deceptive to the reasonable consumer.  *See* Wilburn Decl., ¶ 3, Exhibit A (sign up screen printout).  Plaintiffs' reliance on the literal meaning of "daily budget" to mean that only 100% of daily budget in a day is permitted is a myopic view of the term in a vacuum, with no context whatsoever, when that term is expressly defined in the parties' Agreement and the definition specifically includes delivery and charges up to 120%.  Plaintiffs' literal interpretation is unreasonable given the disclosure of the 120% rule in the sign up process.

Moreover, Google's representation of "daily budget" consisted not only of the term itself but the description of that term provided in the Agreement.  An AdWords advertiser who has reviewed the entire representation would understand that the term "daily budget" includes delivery of advertisements up to 120% of the set daily budget.

Plaintiffs do not dispute that daily budget is defined in the Agreement and that the AdWords system charges advertisers in accordance with the rules described in this definition. Summary Judgment Order, 3:21 – 4:6, 12:1-3.  There are no laws prohibiting the delivery of an advertisement up to 120% of daily budget.  Thus, this practice cannot be an untrue or unlawful

DEFENDANT GOOGLE INC.'S OPENING BRIEF REGARDING THE 120% RULE
Case. No. 05-03649
41063-0023/LEGAL13907045.1

act upon which Plaintiffs' unfair competition claims are based.  Nor is the practice unfair because the delivery in excess of the daily budget is fully disclosed and consistent with the Agreement, and the disclosures are available to all AdWords advertisers.

In addition, the same practice at issue here is widely used throughout the industry.  Both Microsoft and Yahoo! have similar billing practices.  *See* Jhang Decl., ¶¶ 3, 4, Exhibit B (Yahoo! advertising program printout), Exhibit C (Microsoft advertising program printout).  Plaintiffs each admitted in deposition that they had previously used Yahoo!'s online advertising program. Jhang Decl., Exhibit D (Hanson Dep.), 19:25 – 20:9, 51:14 – 52:1, Exhibit E (Stern Dep.), 21:3-12.  Where a customer has knowledge of a billing practice, and the practice is shown to be used widely throughout the industry, there can be no section 17200 violation.  *See South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 887-88 (1999) (court of appeal affirmed trial court's ruling that "365/360" method for computing interest used by lender was neither unlawful, unfair, or fraudulent where there was no state or federal law against the practice, there was substantial evidence car dealership entered the loan agreement with knowledge of the practice, and the practice was found to be widespread in the industry).

The principal case Plaintiffs advanced in their summary judgment briefs to support their unfair competition claims is unavailing.  In *R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327 (2006), a used car dealership sued an insurance company when the company denied coverage for a lemon law claim because the policy only applied to the sale of new vehicles.  An appellate court reversed a granting of nonsuit in favor of the insurance company regarding the dealership's misrepresentation cause of action, based on the dealership's claim that it was misled by the insurance agents' assurances that the insurance package would include lemon law coverage for the dealership's business.  *Id*. at 334-35.  This is readily distinguishable from case before the Court.  Here, Plaintiffs were informed by Google that their advertising campaigns may be delivered up to 120% of their daily budgets and do not claim that they received misrepresentations from Google's agents.  Jhang Decl. ISO Google's MSJ, Exhibit A

(Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9, Exhibit B (Stern Dep.), 99:17 – 100:15.³

In sum, Google's representation of the "daily budget" includes delivery of up to 120% of an advertiser's set daily budget. Plaintiffs' reliance on only the literal meaning of this term is unreasonable and cannot form the basis for an unfair competition claim. The Court should find that 120% delivery cannot form the basis for an unfair competition claim, as a matter of law.

## VI. CONCLUSION

For the reasons set forth above, Google respectfully requests that this Court find that the 120% rule by itself is proper and cannot form the basis for Plaintiffs' breach of contract of unfair competition claims, as a matter of law.

DATED: January 29, 2008.   **PERKINS COIE LLP**

By _____/S/_____
DAVID T. BIDERMAN
Attorneys for Defendant Google Inc.

---

³ Moreover, *R & B Auto Center* supports the dismissal of Plaintiffs' breach of contract claim. The appellate court in that case upheld the dismissal of the plaintiff's breach of contract claim as a matter of law, holding that the express language in the policy provided lemon law coverage for new cars, and not used cars. *Id*. at 337, 349-50.