LESTER L. LEVY (Admitted *Pro Hac Vice*)
MICHELE F. RAPHAEL (Admitted *Pro Hac Vice*)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
E-Mail: llevy@wolfpopper.com
E-Mail: mraphael@wolfpopper.com

WILLIAM M. AUDET (117456)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105-1938
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
E-Mail: waudet@audetlaw.com

MARC M. SELTZER (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
E-Mail: mseltzer@susmangodfrey.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>          vs.<br><br>GOOGLE, INC.,<br><br>                     Defendant. | Case No. C 05-03649 JW<br><br>**PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE THE COURT'S ORDER OF AUGUST 21, 2007**<br><br>Date:      February 25, 2008<br>Time:      9:00 a.m.<br>Place:     Courtroom 8<br>          Hon. James W. Ware |

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE THE COURT'S ORDER
OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS ....................................................................6

    A.  The AdWords Agreement Provides that the Daily Budget is the Maximum Charge Per Day, that Google Stays Within that Daily Budget Each Day, that the Advertiser Has the Right to Change His/Her Daily Budget and that Accordingly, the Advertiser Controls His/Her Costs................................6

    B.  Google Uses a Monthly Budget Instead of Adhering to the Daily Budget............11

III.  ARGUMENT .....................................................................................12

    A.  Google's Overdelivery Practice May Be Found To Violate the UCL and FAL ..........................................................................................12

    B.  Google's Overdelivery Practice May Be Found To Breach the AdWords Agreement ..............................................................................14

IV.  CONCLUSION ..................................................................................17

## <u>TABLE OF AUTHORITIES</u>

*Day v. AT&T Corp.,*
   63 Cal. App. 4th 325, 74 Cal. Rptr. 2d 55 (1998) ...............................................3, 5

*Gould v. American-Hawaiian Steamship Co.,*
   535 F.2d 761 (3d Cir. 1976) .................................................................................2, 3

*Kanner v. National Phoenix Industries, Inc.,*
   203 Cal. App. 2d 757, 21 Cal. Rptr. 857 (1962) ......................................................16

*Lane-Wells Co. v. Schlumberger Well Surveying Corp.,*
   65 Cal. App. 2d 180, 150 P.2d 251 (1944) .............................................................15

*Lemm v. Stillwater Land & Cattle Co.,*
   217 Cal. 474, 19 P.2d 785 (1933) .........................................................................15

*McKell v. Washington Mutual, Inc.,*
   142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006) ..............................................12

*Nagel v. Twin Laboratories, Inc.,*
   109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) ...............................................12

*Nava v. Mercury Casualty Co.,*
   118 Cal. App. 4th 803, 13 Cal. Rptr. 3d 816 (2004) ...............................................15

*Netscape Communs. Corp. v. Federal Insurance Co., No. C 06-00198 JW,*
   2006 U.S. Dist. LEXIS 9569 (N.D. Cal. Feb. 22, 2006) .........................................13

*Powers v. Dickson, Carlson & Campillo,*
   54 Cal. App. 4th 1102, 63 Cal. Rptr. 2d 261 (1997) ...............................................16

*R & B Automobile Center, Inc. v. Farmers Group, Inc.,*
   140 Cal. App. 4th 327, 44 Cal. Rptr. 3d 426 (2006) ...............................................14

*Smallwood v. Pearl Brewing Co.,*
   489 F.2d 579 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113
   (1974) .....................................................................................................................3

## STATUTES

Cal. Civ. Code § 1641 .............................................................................................15

Cal. Civ. Code § 1653 .............................................................................................16

Cal. Civ. Code § 1654 .............................................................................................16

Bus. & Prof. Code § 17200, *et seq* ..........................................................................2

## OTHER AUTHORITIES

*Corbin on Contracts*, § 24.27 ................................................................................16

Restatement (Second) Contracts, § 203 (1981) ........................................................15

Restatement (Second) Contracts, § 206 (1981) ........................................................16

# I.    INTRODUCTION

This is a case brought by plaintiffs CLRB Hanson Industries, LLC (Hanson) and Howard Stern (Stern) against Google, Inc. (Google) based upon the claim that plaintiffs were overbilled for advertising services sold by Google. Google provides an advertising service known as "AdWords." Advertisers use AdWords to place ads on Google's and its partners' websites. The ads appear when a user inputs a search containing certain specified key words.

Google represents to advertisers that they have the ability to specify a "Daily Budget," *i.e.*, a per day dollar limit on advertising charges that can be imposed by Google. In fact, Google actually overdisplays ads for a given day by up to 20% (*i.e.*, overdelivers), and charges advertisers for such overdeliveries. Google's documents confirm that overdelivery is built into its systems. Google charges advertisers up to 120% of their Daily Budget amount on a given day and then determines at the end of the month whether the total amount to be charged for that month is more than the budgeted daily amount times the number of days in that month. If the charges exceed that total monthly amount, then Google issues an "overdelivery credit" for any charges incurred over the monthly maximum amount. For example, assume an advertiser specifies a Daily Budget amount of $10.00. On some days, Google will charge $12.00. So long as the total monthly amount does not exceed $300.00, *i.e.*, 30 days times $10.00, Google does not provide an overdelivery credit. In effect, although it informs advertisers that they can limit their advertising expense to a per day amount, in fact Google limits its charges by a total monthly amount derived by multiplying the daily budget set by advertisers by the total number of days in the month.

Plaintiffs claim that Google does not have the right to charge based on a total monthly amount, as distinct from the amount per day that the advertiser expressly specified as the per day amount he was willing to pay. Plaintiffs allege that, in effect, Google has improperly converted the term "Daily Budget" to mean the <u>average</u> daily amount that an advertiser can expect to pay per day, so long as an ad campaign runs for a full month, as opposed to the actual per day limit that the advertiser set.

Google argues that its interpretation of the contract is supported by the language found in the midst of hundreds of pages of Frequently Asked Questions (FAQs) that subscribers could access if they chose to click on form questions or search for help and happen to input the correct search term. The Court has determined that these Frequently Asked Questions form part of the contract in question.

In its Order of August 21, 2007, the Court ruled that Google was not entitled to summary judgment on plaintiffs' breach of contract claim because, as explained below, even if the FAQs can be read as permitting overdelivery charges to be imposed that do not exceed 120% of a given day's Daily Budget and the monthly maximum amount, Google may be found by the trier of fact to have overcharged those advertisers who advertised for less than one month if they were charged more, on average, than the monthly maximum amount for days on which they had ordered advertising. Order, August 21, 2007, at 16 and 21. In so ruling, the Court did not decide whether plaintiffs' claim for breach of contract as to those advertisers who advertised for a full month and who were not charged more than the monthly maximum amount could be adjudicated as a matter of law, evidently because it was not necessary to reach this issue.

Separate from the contract claim, plaintiffs also have viable claims under California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200, *et seq*, and California's False Advertising Law (FAL), Bus. & Prof. Code § 17500, *et seq*.

Because Google effectively buries the fact that it will overdeliver, reasonable advertisers would likely be deceived into believing that the term Daily Budget means just what it appears to mean, namely, that they can set a per day advertising budget that will not be exceeded. Google's reliance on the FAQs to dispel the misleading nature of Google's prominently displayed term "Daily Budget" as a way for advertisers to control their charges was determined by the Court to be misplaced. A fact, even if actually disclosed, will not cure the deceptive nature of the more prominently made disclosures, if that fact is buried deep in a long document. It has long been recognized under the law of fraud that it can be deceptive to place important information in a place where it is not apt to be read. In the seminal case of *Gould v. American-Hawaiian*

1  *Steamship Co.*, 535 F.2d 761 (3d Cir. 1976), the Court of Appeals held that it was not sufficient

2  to disclose important information interspersed throughout lengthy proxy materials because such

3  disclosures, though actually made, were "scattered through and effectively buried in the lengthy

4  proxy statement" and not given similar or equal emphasis to other related information. 535 F.2d

5  at 774. Under the related similar emphasis or equal prominence rate doctrine, a fact necessary to

6  make a literally true statement not misleading must be revealed with equal prominence to the

7  statement. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 603 (5th Cir.) ("[B]urying the facts,

8  or giving them less than significant emphasis, [may] deprive the shareholders of 'full and honest

9  disclosure'") (citation omitted), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

10  The cases that follow and apply this fundamental principle are legion. It is also a fundamental

11  principle of the law of fraud and applied in UCL cases that a literally true statement can be

12  couched in a manner that is likely to deceive. As was said in *Day v. AT&T Corp.*, 63 Cal. App.

13  4th 325, 332-33, 74 Cal. Rptr. 2d 55 (1998), "[a] perfectly true statement couched in such a

14  manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other

15  relevant information is actionable under [Bus. & Prof. Code §§ 17200 and 17500]."

16  Applied here to critically important information about what purchasers of ads would

17  consider most significant, namely, what they are going to be charged by Google, which can be

18  found only in Frequently Asked Questions that span hundreds of pages, these bedrock doctrines

19  show why the trier of fact might reasonably conclude that the manner of presentation of the

20  disclosure of Google's practice to systematically overdeliver ads made its description of the right

21  of advertisers to limit their exposure to advertising charges deceptive and therefore actionable.

22  Of course, as noted above, as the Court found that even if Google's interpretation of the

23  term "Daily Budget," based on the handful of quotes from the Frequently Asked Questions, is

24  correct, Google nonetheless may be found to have overcharged those AdWords customers who

25  purchased less than one month of advertising services. There are two categories of such

26  advertisers: those who only purchased advertising services for less than a month and those who

27  exercised their contractual right to "pause" their advertising campaigns for a portion of a month.

28

Indeed, until September 2006, Google treated advertisers who paused for a full day as having an "under-delivered day" which was made up for by overdeliverying on another day, despite Google's representation to advertisers that "You won't accrue charges while your ads are paused." Thus, advertisers who advertised for less than a month were charged more than the average daily amount that an advertiser would be charged who advertised for a full month.

On August 21, 2007, the Court denied Google's motion for summary judgment as to plaintiffs' claims for breach of contract and violation of the Unfair Competition Law and the False Advertising Law.

The Court ruled:

> "[D]espite the existence of a valid written contract, Google is not entitled to summary judgment on Plaintiff's breach of contract claim for two reasons. First, Google defined the term "Daily Budget" in pertinent part as "[t]he amount you're willing to spend on a specific AdWords campaign each day." However, Google's overdelivery of ads left open the possibility that two groups of customers would be charged, on average, more than their daily Budget: (1) customers running short-term ad campaigns, for less than one month and (2) customers running longer ad campaigns, where the final month of their campaign is a partial month. Second, with respect to Google's pausing feature, Google represented: "you can also pause your ads completely at any time. You won't accrue charges while your ads are paused, and they'll remain paused until you resume them." Despite this representation, Google's system considered paused days as underdelivered days until September 2006; this allowed Google to overdeliver on other days and charge advertisers more. Accordingly, the Court cannot find as a matter of law that Google did not breach its representation that advertisers would not "accrue charges while [their] ads were paused." The Court finds that there exists triable issues of material fact whether Google's overdelivery and pre-September 2006 pausing practices constitute a breach of contract.

Order, August 21, 2007, at 15-16.

As noted above, the Court did not rule that plaintiffs could not pursue a claim for breach of contract based on overdelivery for customers who advertised for a full month without any pausing. Having denied summary judgment on plaintiffs' breach of contract claim, it was not necessary to reach this issue. With respect to the Unfair Competition Law claim, the Court noted that Hanson had never reviewed the Frequently Asked Questions that the Court determined were part of the contract. Order, August 21, 2007, at 19. Instead, the Court noted Hanson's deposition testimony established that he relied solely on the term "Daily Budget" in deciding to register for

811540v1/010480

4

AdWords. *Id.* The Court denied Hanson's motion for summary judgment based on its determination that there were triable issues of material fact as to his reliance. *Id.* The Court noted that Stern testified that he also relied solely on the term "Daily Budget" in deciding to register for AdWords. However, the Court also noted that his testimony left open the possibility that he reviewed and relied on the Frequently Asked Questions. *Id.* Based on these determinations, the Court therefore held that there exist triable issues of material fact as to whether Stern relied on portions of the Frequently Asked Questions and accordingly denied his motion for summary judgment. *Id.*

The Court went on to say that it could "not find as a matter of law that members of the public would not be deceived by Google's use of the term "Daily Budget" to refer to the average amount that an advertiser can expect to pay per day, so long as the advertiser runs an ad campaign for a full month." Order, August 21, 2007, at 19. In so ruling, the Court decided, we believe correctly, that the manner of presenting and disclosing to advertisers that Google intended to and would overdeliver by construing "Daily Budget" to mean not a per day amount but a monthly maximum amount could be found to be deceptive by the trier of fact.

Of course, that ruling would apply also to those advertisers who were charged, in total, more than the average daily amount for the days of the month for which they actually ordered advertising, such as those who only bought ads for less than a month or who paused. However, the Court held that "in light of [its] finding [that the use of the term "Daily Budget" could be found deceptive in light of Google's overdelivery practices in general], "the Court need not consider whether Google's descriptions of its overdelivery and pre-September 2006 pausing practices are adequate to satisfy the requirements of Sections 17200 and 17500." Order, August 21, 2007, at 19 & n.14. The Court accordingly denied Google's motion for summary judgment as to plaintiffs' FAL and UCL claims.

On this record, the Court plainly, and we submit correctly, determined that there are genuine issues of fact as to the meaning and use of the term "Daily Budget" and whether Google's billing practices were deceptive.

## II.    STATEMENT OF FACTS

### A.    The AdWords Agreement Provides that the Daily Budget is the Maximum Charge Per Day, that Google Stays Within that Daily Budget Each Day, that the Advertiser Has the Right to Change His/Her Daily Budget and that Accordingly, the Advertiser Controls His/Her Costs.

In its FAQs, Google represented and asked and answered:[1]

### 1.    What is a daily budget?

A daily budget enables you to set a limit on the amount you spend each day.  You set a separate daily budget for each of your campaigns.  Since you only pay if someone clicks on your ads, you won't necessarily reach the daily budget you set. . . . Google will show your ads evenly throughout the day at a frequency that falls within the budget you've set. [   ] There is no minimum daily budget requirement.
(Stern FAQs, GOOG-HN 20888; Hanson FAQs, GOOG-HN 20904.)

### 2.    Daily Budget

The amount you're willing to spend on a specific AdWords campaign each day.

---

[1] At Howard Stern's deposition, Google identified the Terms and FAQs in effect when Stern enrolled in AdWords (respectively, "Stern Terms" and "Stern FAQs").  The Stern Terms were produced at GOOG-HN 21575-21577 and the Stern FAQs are comprised of GOOG-HN 20823-20826, 20867-20869, 20887-20888, 20905-20908, 20922-20932, 20969-20971, 20987-20988, 21005-21007, 21025-21026, 21070-21072, 21082-21084, 21146-21148, 21167-21170, 21187-21190, 21203-21205, 21230-21234, 21237-21238, 21245-21246, 21295-21299, 21331-21335.  "GOOG-HN" denotes documents produced by Google in this action.  The Stern Terms and Stern FAQs are annexed as Ex. A to the Declaration of Marc M. Seltzer in Support of Plaintiffs' Supplemental Submission Re The Court's Order of August 21, 2007, dated Jan. 29, 2008 (the "Seltzer Decl.").

At Brett Hanson's deposition, Defendant identified the Terms and FAQs in effect when Plaintiff CLRB Hanson enrolled in AdWords (respectively, the "Hanson Terms" and "Hanson FAQs").  The Hanson Terms are comprised of GOOG-HN 21572-21574.  The Hanson FAQs are comprised of GOOG-HN 20835-20838, 20864-20866, 20903-20904, 20974-20975, 20991-20992, 21011-21013, 21033-21034, 21061-21063, 21118-21121, 21152-21154, 21195-21198, 21249-21250, 21303-21305, 21340-21343.  The Hanson Terms and Hanson FAQs are annexed as Ex. B to the Seltzer Decl.

The 142 pages of FAQs which were retrieved from Google's website at the time the initial complaint was filed (August, 2005) and which are annexed to the Second Amended Complaint ("SAC") were previously referred to as the Complaint FAQs and are hereinafter referred to as the "Aug. 2005 FAQs."  The Aug. 2005 FAQs are annexed as Ex. C to the Seltzer Decl.

Google marked the FAQs in effect as of August 16, 2006 at the deposition of Stern.  These were previously referred to as the Current FAQs and are hereinafter referred to as the "Aug. 2006 FAQs".  The Aug. 2006 FAQs are annexed as Ex. D to the Seltzer Decl.

AdWords displays your ad as often as possible while staying within your daily budget. When the budget is reached, your ads will typically stop showing for that day.
(Aug. 2006 FAQs, 84. [Glossary section])

3.    Is there a minimum spending commitment?

You can create an account for only a $5 activation fee. You have complete control over how much you spend and how you spend it. You choose the maximum cost-per-click (CPC) and the daily budget that fit your advertising goals.
(Stern FAQs, GOOG-HN 20825; Hanson FAQs, GOOG-HN 20837, 21120.)

4.    Are there spending requirements, a minimum contract length, or other qualifying terms?

There is never a minimum spending commitment when you sign up for AdWords. No minimum contract requirements or other "lock-in" rules apply. You have complete control over how long you participate in AdWords, and **you control the maximum you want to spend per day.** This is the same no matter how you choose to pay for your advertising.
(Aug. 2005 FAQs, 012.) (Emphases added.)

5.    What does it cost and how do I pay?

**In the Google AdWords Program, the cost of your campaigns really depends on you—how well you know your audience, and how much you're willing to pay to reach them.** Based on your advertising goals and budget, you choose what you want to pay per click on your ad, from 5 cents to $50. **You also control your overall spending by setting a daily budget (how much you want to pay per day).** There is just a $5 activation fee to get started and **no monthly minimum** spending commitment.
(Stern FAQs, GOOG-HN 20906.) (Emphases added.)

6.    How much does AdWords cost?

**In the Google AdWords program, the cost of your campaigns really depends on you -- how much you are willing to pay and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.** There is a nominal, one-time activation fee for Google Adwords. After that, **you pay only for clicks on your AdWords ads, and you can control that by telling us how much you are willing to pay per click and per day.**
(Aug. 2005 FAQs, 010.) (Emphases added.)

7.    How much does AdWords cost?

**In the Google AdWords program, the cost of your campaigns really depends on you -- how much you are willing to pay and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.** There is a nominal, one-time activation

fee for Google AdWords. After that, you pay only for clicks on your key word targeted AdWords ads or for impressions on your site-targeted AdWords ads. **You can control your costs by selecting how much you are willing to pay per click or per impression and by setting a daily budget for spending in your account.** Daily budgets start as low as 1 cent up to whatever limit the advertiser is comfortable spending. (Aug. 2006 FAQs, 49-50.) (Emphasis added.)

8.    How much does participation in the ad network cost?

**. . . You pay only when users click on your ad, regardless of how many times it appears, and you control how much you spend by choosing the maximum cost-per-click (CPC) and the daily budget that fit your advertising goals.** (Stern FAQs, GOOG-HN 21169; Aug. 2005 FAQs, 062 [questioning cost on Google network sites]) (See also Aug. 2006 FAQs, 151 [**"You control how much you spend on your keyword-targeted campaign by selecting a maximum cost-per-click [CPC] and daily budget that fit your advertising goals.**].) (All emphases added.)

9.    How do I create an AdWords account?

Step 4: Specify your daily budget.
Your maximum daily budget helps determine your ad exposure (the number of times Google shows your ad in a day).
(Stern FAQs, GOOG-HN 21297; Hanson FAQs, GOOG-HN 21304 [entitled "How do I get started?" and quoted language is listed as Step 3]; Aug. 2005 FAQs, 019-20.)

10.    Where are all the steps to creating an AdWords Account?

Choose Daily Budget
    13.    A recommended daily budget will appear highlighted in the daily budget box on the next page. . . . [Y]ou can increase or lower this amount by typing in your desired daily budget.

    *Note:* This amount controls how often your ad appears on Google; we will spread the delivery of your ad throughout the day to stay within your alternative budget setting. Matching the recommended daily budget helps ensure maximum exposure.
(Aug. 2005 FAQs, 020-21.)

11.    What are all the steps to creating an AdWords account?

    Choose Daily budget. First select your billing currency - the currency you'll use to pay for your AdWords Account. Then enter the amount you're willing to spend on this ad campaign each day."
(Aug. 2006 FAQs, 59.)

12.    How does Google come up with a recommended daily budget?

. . .    **Remember, setting your daily budget to the amount we recommend is optional-you're always in full control of your AdWords account. You can edit your campaign's daily budget as often as you'd**

like, and to whatever amount results in the most appropriate return on investment for you.
(Aug. 2005 FAQs, 061.)  (Emphasis added.)

13.    How does Google keep my campaign below my [the] daily budget?

**Google shows your ads evenly over time so that you reach your daily budget by the end of each day.**  This keeps your ad from accumulating clicks early on and then disappearing for the remainder of the day.  Once you've selected your keywords, you'll see a recommended daily budget.  If you set your daily budget to this value, [your ad should appear every time someone searches for your keywords] you will maximize your ad's visibility.  This maximizes the number of clicks you receive.  **If your daily budget is lower than the recommended amount, Google will deliver your ads evenly throughout the day to keep your clicks at or below your daily budget.**
(Stern FAQs, GOOG-HN 20906, 20888; Hanson FAQs, GOOG-HN 20904 [bracketed material included and underlined words excluded].)

14.    How does Google keep my campaign below my [the] daily budget?

**Google shows your ads evenly over time so that you reach your daily budget by the end of each day.**  This keeps your ad from accumulating clicks early on and then disappearing for the remainder of the day.  Once you've selected your keywords, you'll see a recommended daily budget.  If you set your daily budget to this value, you will maximize your ad's visibility and activity.  If your daily budget is lower than the recommended amount, **Google will deliver your ads evenly throughout the day to keep your clicks at or below your daily budget.**
(Aug. 2005 FAQs, 062.)

15.    What happens if my daily budget is lower than what the AdWords System recommends?
\*    \*    \*

How do I make this change?
**You may have received an email or a notification in your account stating that your ads have periodically stopped showing because one or more of your campaigns has reached its daily budget.**  This notification links to a tool you can use to edit your daily budget.
\*    \*    \*

Is this just a way to get me to pay more?
**If you increase your daily budget, you won't necessarily spend it all.**  Remember, you only pay when people click your ads.  **And, of course, you're always in control of your account-you never have to pay more than you want.**  (Aug. 2005 FAQs, 048- 49.)  (Emphases added.)

(See also Aug. 2006 FAQs, 160, **"If you select a daily budget lower then the recommended amount, our system will not show your ad every time searches are run on your keywords.  It will spread the delivery of your ad throughout the day so you don't exceed your budget.")**
(Emphasis added.)

16. Why can't I see my ad?

          \*      \*      \*

Check your daily budget. . . . If your daily budget is set lower than the recommended amount, **we spread the delivery of your ad throughout the day in order to stay within your budget.**
(Stern FAQs, GOOG-HN 21188; Hanson FAQs, GOOG-HN 21119; Aug. 2005 FAQs, 036.) (Emphasis added.)

17. I have seen my ad before, but I can't anymore.

Daily Budget
When you create your ads and select your keywords or target sites, we recommend a daily budget for maximum ad delivery on Google. If your daily budget is set lower then the recommended amount, we may slow or even stop the delivery of your ad for that day in order to stay within your budget. Depending on the delivery option you've set, your ad delivery may be spread out over the day or your ad may stop showing earlier in the day as soon as your budget is reached. To maximize your ad visibility, consider changing your daily budget to meet the recommended amount.
(Aug. 2006 FAQs, p. 145)

18. **How does Google keep my campaign below my [the] daily budget?**

**Google shows your ads evenly over time so that you reach your daily budget by the end of each day.** This keeps your ad from accumulating charges [clicks] early on and then disappearing for the remainder of the day.
Once you've selected your keywords, you'll see a recommended daily budget. If you set your daily budget to this value, you will maximize your ad's visibility[.] . . . **If your daily budget is lower than the recommended amount, Google will deliver your ads evenly throughout the day to keep your costs [clicks] at or below your daily budget.**
(Stern FAQs, GOOG-HN 20906, 20888; Hanson FAQs, GOOG-HN 20904; Aug. 2006 FAQs, 062.) (Emphasis added.)

19. AdWords billing & payments: AdWords account costs
How do I control the cost of my ads?

With cost-per-click advertising on AdWords, the cost of your campaigns **really depends on you - how much you are willing to pay and how well you know your audience. It all boils down to knowing your own goals and letting us know what they are.**
      • **Set your own limits:** There is a nominal activation fee for Google AdWords. After that, **you tell us how much you are willing to pay per click and per day.**
(Aug. 2005 FAQs, 059.) (Emphases added.)

20. How often can I change my daily budget?

Over the course of a single day, you may change your daily budget for each campaign in your account a maximum of ten times.
(Aug. 2006 FAQs, p. 160.)

21. **If you want to increase the number of clicks your ads receive on your current list of keywords, <u>increase</u> your daily budget to an amount you're comfortable with.** If you don't want to increase your daily budget, you may consider refining your keyword list to better qualify clicks on your ads.
(Aug. 2006 FAQs, pp. 160-61.) (Emphasis added.)

22. An internal document produced by Google provides:

Another way to control the costs associated with your Adwords account is the daily budget. The daily budget is the maximum amount per day you are willing to pay for your advertising for each campaign.

GOOG-HN 021817, marked as Exh. 3 at the deposition of Michael Schulman on March 6, 2007 (Seltzer Decl., Ex. E.)

**B. <u>Google Uses a Monthly Budget Instead of Adhering to the Daily Budget</u>**

1. Google account executive Heather Wilburn admitted:

Whatever the number of days are in that month, multiplied by whatever the daily budget was during that time frame, is the amount that **we're assuming the advertiser wanted to spend** during that time frame.
So if it's a $10 daily budget in a 30-day month, that advertiser is telling us they want to spend $300 in that month.
(Wilburn Tr., 67:22-68:4; Seltzer Decl., Ex. F) (Emphasis added.)

2. "Daily budget" is mentioned 44 times in the Stern FAQs, 48 times in the Hanson FAQs, and 93 times in the Aug. 2005 FAQs.[2]

3. "Monthly budget" is not mentioned even once in the Stern FAQs, nor in the Hanson FAQs.[3]

4. Google relies upon the following language (or substantially similar language) which is found only once in hundreds of pages (twice in the Aug. 2006 FAQs which numbers 489 printed pages):

---

[2] Results obtained from a computer search of the documents.

[3] The Aug. 2005 and Aug. 2006 FAQs discuss monthly budget in the context of the Jumpstart, Budget Optimizer and Starter Edition which require advertisers to set a monthly budget. <u>See</u>, <u>e.g</u>., Aug. 2006 FAQs, p. 79 of 489, "If you choose to disable the budget Optimizer, you're asked to set a daily budget rather than a monthly budget."; p. 154-5 of 489 "The Budget Optimizer is ideal for advertisers who ... have set monthly budgets."

Why did I receive more clicks than my daily budget on a particular day? Traffic is not constant from day to day. For example, fewer people search the Web on weekends than during the week. To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies. If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3,000 for that month.

(Hanson FAQs, GOOG-HN 20904; Stern FAQs, GOOG-HN 20888; See also Aug. 2005 FAQs, p.49; Aug. 2006 FAQs, pp. 84 and 125.)

## III.    ARGUMENT

### A.    Google's Overdelivery Practice May Be Found To Violate the UCL and FAL

As noted above, the Court ruled, in denying Google's summary judgment motion, as follows: "Lastly, at this time, the Court declines to find as a matter of law that members of the public would not be deceived by Google's use of the term 'Daily Budget' to refer to the average amount that an advertiser can expect to pay per day, as long as it runs an ad campaign for a full month." Order, August 21, 2007, at 19. The Court further ruled that "In light of this finding, the Court need not consider whether Google's descriptions of its overdelivery and pre-September 2006 pausing practices are adequate to satisfy the requirements of Sections 17200 and 17500." *Id.* at n.14. Order, August 21, 2007, at 19.

Thus, overdelivery, Google's vehicle for converting a Daily Budget into a de facto monthly budget and for converting the set per day maximum budget into an average amount per day is still very much in this case — irrespective of whether a plaintiff exercised pausing rights.

The Court's decision fully comports with the applicable law. The FAL prohibits a business entity from disseminating any statement regarding its product or performance "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 51, 134 Cal. Rptr. 2d 420 (2003). A statement can be literally true, yet still be misleading under the FAL. *Id.; McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471, 49 Cal. Rptr. 3d 227 (2006) ("A perfectly true statement couched in such a manner that it is likely to mislead or

deceive the consumer, such as by failure to disclose other relevant information, is actionable [under these sections].") (citation omitted). The UCL similarly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by § 17500." *Microsoft Corp. v. Suncrest Enter.*, No. C 03-5424 (HRL), 2006 U.S. Dist. LEXIS 32824, at *23 (N.D. Cal. May 16, 2006) (Fogel, J.) ("The Legislature intended this sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law.") (citations omitted); *Netscape Communs. Corp. v. Fed. Ins. Co.*, No. C 06-00198 JW, 2006 U.S. Dist LEXIS 9569, at *10 (N.D. Cal. Feb. 22, 2006) (Ware, J.) ("pattern of conduct which disregarded common law doctrine and misled consumers constituted 'unfair business practices'") (citation omitted).

Here, Google's statements as to the right of advertisers to specify a "Daily Budget" and impose "per day" advertising charge limits, detailed *supra*, are misleading given Google's systematic practice of overdelivering advertising and its monthly billing practice. In addition to requiring advertisers to set a daily budget, Google, throughout its FAQs, reinforced the right of advertisers to control their own advertising costs and assured them that it would distribute an ad throughout the day so as not exceed the Daily Budget, *see* Statement of Facts, *supra*, which, too, are misleading in light of Google's actual billing practices. The deceptive nature of these practices effect was articulated by Mr. Stern in his e-mail to Google:

> My understanding of a 'daily budget' of $10 is very simple: daily cost not to exceed $10. I don't expect to pay more on some days to compensate for days that had costs less than $10. I'm not trying to meet a monthly target, rather a daily target. The extra traffic I might get from spending more than $10/day results in not being able to meet the extra demand. That's why I set the budget to $10. I was overcharged every day that my account exceeded my $10 daily budget. It's that simple. The way Adwords bills is a misrepresentation of the daily budget that prominently appears on the Campaign management screen and the set up screens that request budget information. The Adwords home page promises that: 'You have total control over every aspect of your campaign.' Apparently not.

(Seltzer Decl., Ex. G.) *See also* Hanson Tr., 29:5-12; Seltzer Decl., Ex. H ("A. . . . I remember being attracted to the value proposition of controlling my daily budget, controlling my clicks per day, controlling my cost per click. Having the ability to turn off and on the campaign. And those were the selling features that brought me and convinced me to use Google."); Stern Tr., 174:12-

811540v1/010480

13

21; Seltzer Decl., Ex. I ("Q. . . . So why did you switch to Google from Yahoo? A. Because Yahoo had a monthly minimum that I needed to pay, whether or not I even ran the ads. Q. And Google? A. They had no minimum. Q. And, in fact, they told you they had no minimum; correct? A. Right.").

Mr. Stern ran his ad only four days in September 2005 with a daily budget of $10, but was billed more than $40. *See* Stern Decl., filed on September 29, 2006[4]

Adding to the deceptive and misleading nature of Google's description of the cost of the AdWords program, the term "monthly budget" is found in the FAQs in the context of the Jumpstart and Budget Optimizer features where it is explicitly distinguished from the daily budget. Mr. Stern explained at his deposition he switched to Google because he did not want to be liable for a monthly amount. Yet, by overdelivering and creating a monthly construct, Mr. Stern was given a monthly amount.

Whether or not the Court ultimately determines that Google's overdelivery practices may be found to be a breach of the AdWords contract is independent of its findings on these UCL claims. *See R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 356, 44 Cal. Rptr. 3d 426 (2006) ("The court erred in disposing of the unfair business practices cause of action just because it held that the insurance contract [was not breached].").

**B.      Google's Overdelivery Practice May Be Found To Breach the AdWords Agreement**

This Court denied Google's motion for summary judgment on plaintiffs' contract claim because Google's treatment of advertisers who did not run campaigns for a full month, either because they only sought to advertise for less than a month or exercised their right to pause during a month, may be found to be a breach of the AdWords agreement. No further findings were necessary. Indeed, the Court denied Google's motion without having to consider the contract principles set forth by plaintiffs in their opposition papers.

---

[4] As detailed in the CLRB Hanson Decl. filed on September 29, 2006, Plaintiff CLRB Hanson was also overcharged.

However, Google contends that the Court determined this issue adversely to plaintiffs. Thus, the question is whether it can be determined as a matter of law that the Adwords agreement gives Google the right to charge for overdelivery in excess of the advertisers' set daily budget.

Plaintiffs respectfully submit that the AdWords agreement cannot be read as a matter of law to replace the daily budget with a monthly budget. The AdWords agreement is replete with references to daily budget, the daily budget as the maximum charge per day and Google's promise to stay within the daily budget each day. The term "monthly budget" was not even in the FAQs when plaintiffs enrolled.

While full discovery has not yet been had on the contract claim (*i.e.*, no internal interpretive documents nor e-mails nor drafts nor metadata were produced),[5] plaintiffs maintain that the snippets of FAQ language repeatedly cited by Google as to the 20% and the maximum monthly charge should not be read to nullify the more prominently described Daily Budget. Even if Google may allow up to 20% more clicks in one day, that should not give it the contractual right to charge an advertiser up to 20% more than its specified per day daily budget. Clearly, Google could allow additional clicks without charging advertisers for those clicks. Absent admissible extrinsic evidence, a written contract should be construed solely based on its language and effect must be given to all parts of the writing. *Lane-Wells Co. v. Schlumberger Well Surveying Corp.*, 65 Cal. App. 2d 180, 184, 150 P.2d 251 (1944); *Lemm v. Stillwater Land & Cattle Co.*, 217 Cal. 474, 480, 19 P.2d 785 (1933) (meaning is to be obtained from the entire contract, and not from any one or more isolated portions thereof); *Nava v. Mercury Casualty Co.*, 118 Cal. App. 4th 803, 806-07, 13 Cal. Rptr. 3d 816, 818 (2004) (same); Cal. Civ. Code § 1641 (same). As it should, plaintiffs' reading gives full effect to the term "Daily Budget" and the other representations and promises made in the FAQs. Restatement (Second) Contracts, § 203 (1981)

---

[5] Summary judgment may also be properly denied on this basis alone. By not producing the AdWords agreements in electronic format, Google deprived plaintiffs of the opportunity to review the agreement metadata. When it produced the Adwords agreements, Google did so only in paper form — which is undoubtedly not how they are maintained by Google. Additionally, discovery may reveal extrinsic evidence that Google purposely used the words "may allow" and chose to bury the purported monthly billing disclosure, in order to dupe advertisers into believing they were contracting for a per day daily budget instead of a maximum monthly budget.

("In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:  (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

Moreover, Google was the sole draftsman of the AdWords agreement, and any ambiguity must be read against Google.  Cal. Civ. Code § 1654 ("In cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1112, 63 Cal. Rptr. 2d 261(1997) (same); *Kanner v. National Phoenix Industries, Inc.*, 203 Cal. App. 2d 757, 760-61, 21 Cal. Rptr. 857 (1962) (same).  *See also* Cal. Civ. Code § 1653 (Inconsistent words rejected); Restatement (Second) Contracts, § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").  This *contra proferentem* device is especially applicable in the case at bar in that it exists to aid persons such as the AdWords advertisers, who had less bargaining power than the draftsperson.  *Corbin on Contracts*, § 24.27 (Interpretation *Contra Proferentem* — Against the Party Who Chose the Words).  The doctrine is often invoked in cases of standardized contracts and contracts of adhesion, like the AdWords Agreement.  *See* Restatement (Second) Contracts, § 206, comment a.  Plaintiff advertisers had no bargaining power and no role in preparing the contract.  Google, alone, chose the unique FAQ format for its contract.  Google, alone, chose the terms and terminology of the contract.  In so choosing, Google undoubtedly looked out for its own interests by prominently and repeatedly referring to a "daily" budget and promising advertisers that it would stay within their own set daily budget — while obscuring any possible reference to overdelivery.  Indeed, given Google's choice to embody its contract in a maze of hundreds of pages of FAQs and to obscure its billing practices from its advertisers, a jury's finding against Google is extremely compelling on this issue.

811540v1/010480

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

IV.    **CONCLUSION**

For the reasons set forth above, as well as in plaintiffs' papers submitted on the parties' respective summary judgment motions, plaintiffs respectfully submit that overdelivery, irrespective of pausing, remains a basis for plaintiffs' claims for breach of contract and violation of the UCL and FAL.

Dated:  January 29, 2008.

Respectfully submitted,
LESTER L. LEVY
MICHELE F. RAPHAEL
WOLF POPPER LLP

WILLIAM M. AUDET
AUDET & PARTNERS, LLP

MARC M. SELTZER
SUSMAN GODFREY L.L.P.


By____/s/ Marc M. Seltzer_____
Marc M. Seltzer
Attorneys for Plaintiff