| | |
|---|---|
| 1 | DAVID T. BIDERMAN, Bar No. 101577 |
| | JUDITH B. GITTERMAN, Bar No. 115661 |
| 2 | M. CHRISTOPHER JHANG, Bar No. 211463 |
| | **PERKINS COIE LLP** |
| 3 | Four Embarcadero Center, Suite 2400 |
| | San Francisco, CA  94111-4131 |
| 4 | Telephone:  (415) 344-7000 |
| | Facsimile:  (415) 344-7050 |
| 5 | Email: DBiderman@perkinscoie.com |
| | Email: JGitterman@perkinscoie.com |
| 6 | Email: CJhang@perkinscoie.com |
| 7 | Attorneys for Defendant Google Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE, INC., <br><br> Defendants. | CASE NO. C 05-03649 JW <br><br> **DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE THE COURT'S ORDER OF AUGUST 21, 2007** <br><br> Hearing: February 25, 2008 <br> Time: 9:00 a.m. <br> Dept.: Courtroom 8 <br> Judge: Honorable James Ware |

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

## I. PRELIMINARY STATEMENT

The sole question before the Court is whether Google's fully disclosed practice of delivering and charging up to 120% of daily budget in a given day to account for Internet traffic fluctuations <u>by itself</u> can be a breach of contract or an unfair trade practice. Rather than address this issue, Plaintiffs' opening brief devotes multiple pages to quoting various portions of FAQs that use the term "daily budget," without acknowledging:

(a) that the 120% rule is disclosed in the FAQs <u>including</u> the FAQ defining "daily budget";

(b) that the 120% rule was set forth in conspicuous print on the AdWords sign-up page at the time Plaintiffs signed up for the program;

(c) that the 120% rule was repeatedly explained to Plaintiffs by Google customer service representatives throughout Plaintiffs' tenure as AdWords advertisers;

(d) that Plaintiffs themselves admitted in deposition that under the terms of the AdWords Agreement, Google could deliver and charge up to 120% daily budget in a given day, and that they continued to participate in the AdWords program <u>with</u> this knowledge; and,

(e) that Plaintiffs' counsel admitted in open court that there can be no harm or damage where the 120% rule is applied in a month the campaign runs every day.

Indeed, Plaintiffs' recitation of multiple provisions in the FAQs using the words "daily budget" is puzzling given their claim that they did not read <u>any</u> of the FAQs before signing up for AdWords. They steadfastly maintain that the term "daily budget" – <u>regardless of how it is defined and used in the parties' Agreement</u> – can only mean that Google could charge no more than the exact amount of an advertiser's daily budget on any single day.

Google fully disclosed that advertising campaigns could be delivered up to 120% of daily budget in a given day to account for Internet traffic fluctuations and that charges would not exceed an advertiser's daily budget over the course of a month. As a result, no claim for breach of

- 2 -

contract, unfair trade practice or false advertising may be predicated on charges of up to 120% of daily budget in a single day in a month when the ad campaign ran everyday.[1]

## II. RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

### A. The AdWords Agreement Discloses The 120% Rule.

The enforceable AdWords Agreement (the "Agreement"), which consists of the program Terms and Conditions and FAQs, specifically provides that daily budgets can be exceeded on any given day and that the Google system may deliver ads up to 20% in excess of a daily budget. Declaration of M. Christopher Jhang in support of Google's Motion for Summary Judgment ("Jhang Decl. ISO Google's MSJ"), Exhibit D (FAQs), p. 125 of 489 ("User traffic fluctuates from day to day. To make up for these fluctuations and to ensure that your campaigns reach their potential, <u>Google may allow up to 20% more clicks. . . in one day than your daily budget specifies</u>. . . .")(emphasis added), Exhibit D (FAQs), p. 84 of 489 ("On any single day, <u>the AdWords system may deliver up to 20% more ads than your daily budget calls for</u>. . . .") (emphasis added).[2]

Plaintiffs include in their "Statement of Facts" six pages of portions of FAQs that use the term daily budget. Plaintiffs' choice of FAQ excerpts is revealing. For example, their first reference is to a provision entitled "1. What is a daily budget?," from the Stern and Hanson FAQs. Plaintiffs fail to note that this provision is part of a FAQ, entitled "Account Set Up: Daily Budget," that has three parts. Immediately below the provision that Plaintiffs cite is the following:

---

[1] Whether Google is entitled to summary judgment on the propriety of excluding paused days from the monthly calculation is not the subject of this motion. The court has stated that resolution of this issue requires a determination of questions of fact. *See* August 21, 2007 Order ("Summary Judgment Order"), 15:20 – 16:11. Nor is the question of whether a Google advertiser who terminated his campaign before the end of the month was charged more than the daily budget during the course of the month, before the Court on this motion. *Id.* Google asserts that the evidence will show that if an advertiser terminates a campaign before the conclusion of the month, advertisers are only charged their average daily budget times the number of days in the month the campaign was running. Thus, as a factual matter, Plaintiffs' claim on this subject will find no support.

[2] The AdWords FAQs available to Plaintiffs when they signed up for AdWords also provided a similar disclosure to advertisers. Declaration of Leslie Altherr in support of Google's Motion for Summary Judgment, Exhibit 3 (July 2002 FAQs), p. GOOG-HN 20904, Exhibit 4 (October 2003 FAQs), p. GOOG-HN 20888.

- 3 -

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

2. Why did I receive more clicks than my daily budget on a particular day?

> Traffic is not constant from day to day. For example, fewer people search the Web on weekends than during the week. To account for this and maximize the potential of your advertising, Google may allow up to 20% more clicks in one day than your daily budget specifies.
>
> If you budget $100 per day in a 30-day month, you may receive more than $100 in clicks on a given day, but the maximum you would pay is $3000 for that month. If we do overdeliver clicks, you will receive a credit, which is listed on your invoice as an "Overdelivery credit."

Declaration of Marc M. Seltzer in Support of Plaintiffs' Supplemental Submission Re The Court's Order of August 21, 2007 ("Seltzer Decl. ISO Plaintiffs' Supp. Submission"), Exhibit A (Stern FAQs), GOOG-HN 20888, Exhibit B (Hanson FAQs,) GOOG-HN 20904.

Similarly, Plaintiffs' second cited FAQ is the glossary definition of daily budget from the August 2006 FAQs. While Plaintiffs cite the first two paragraphs of this definition, they <u>leave out</u> the <u>third</u> paragraph, which provides:

> On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for. This helps make up for other days in which your daily budget is not reached. However, you'll never be charged more than your average daily budget over the course of a month. For example: if your daily budget is $10 and the month has 30 days, you might be charged up to $12 on any single day but your monthly charges will never exceed $300.

Seltzer Decl. ISO Plaintiffs' Supp. Submission, Exhibit D (August 2006 FAQs), p. 84 of 489.

Plaintiffs recite as No. 18 in their list of excerpts the FAQ entitled "How does Google keep my campaign below the daily budget?" Plaintiffs' Supplemental Submission Re The Court's Order Of August 21, 2007 ("Plaintiffs' Brief"), at 10:12-19. In the Stern FAQs, this provision is step 3 of the FAQ entitled "Account Set Up: Daily Budget." Seltzer Decl. ISO Plaintiffs' Supp. Submission, Exhibit A (Stern FAQs), GOOG-HN 20888. Again, Plaintiffs fail to mention that this provision is displayed <u>immediately below</u> the provision entitled "Why did I receive more clicks than my daily budget on a particular day?," which sets forth the 120% rule. In addition, Plaintiffs omitted from their excerpt No. 18, by using ellipsis, language that explains that a daily budget set to the recommended value "maximizes the number of clicks [an advertiser] receive[s]."

- 4 -

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

*Id.* This statement is fully consistent with the purpose of the 120% rule, set forth in the preceding FAQ[3], "to maximize the potential of [an advertiser's] advertising." *Id.*

**B.     The 120% Rule Was Disclosed In The Sign-up Process.**

The sign-up process in 2002 clearly disclosed the 120% rule. A web page that all AdWords advertisers were required to view during the sign-up process provided:

> Just enter what you'd like to spend per day in the "Daily budget" box, and Google will show your ad evenly throughout the day. *Your actual daily changes may fluctuate by 20% because of changing search volume*, but the maximum you will spend in a 30-day calendar month should be no more than 30 times your daily budget.

Declaration of Heather Wilburn in Support of Google Inc.'s Opening Brief Regarding the 120% Rule, ¶ 3, Exhibit A (sign up screen printout) (emphasis added).

**C.     Plaintiffs Admitted That The 120% Rule Was Disclosed In The Agreement And Explained To Them By Google Representatives.**

Plaintiffs conceded in deposition that under their understanding of the terms of the Agreement, Google may allow up to 20% more clicks per day than is specified in their daily budget. Jhang Decl. ISO Google's MSJ, Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, Exhibit B (Stern Dep.), 65:8 – 66:14, 81:21 – 82:17.

Brett Hanson, plaintiff CLRB Hanson's representative, admitted that as early as March 2005, he was informed by a Google representative that Google tries "to keep your daily cost fluctuation to no more than 20% above your daily budget." *Id.*, at Exhibit A (Hanson Dep.), 135:20 – 137:15, 169:16 – 170:15, 177:19 – 178:9. Likewise, plaintiff Stern admitted that as early as October 2003, he was informed by email that "it is possible that [he] may accrue charges above or below [his] set [daily budget] limit." *Id.*, at Exhibit B (Stern Dep.), 99:17 – 100:15.

Plaintiffs also admitted that they continued to use the AdWords program after the 120% rule was explained to them in email correspondence with Google representatives. *Id.*, at Exhibit A (Hanson Dep.), 135:20 – 137:15, 177:19 – 178:9, Exhibit B (Stern Dep.), 99:17 – 100:15, 101:4 – 101:9. They admitted as well, in their original complaint, that they were informed by Google

---

[3] The preceding FAQ is entitled "Why did I receive more clicks than my daily budget on a particular day?".

- 5 -

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

that "[i]n general, we try to keep your daily cost fluctuation to no more than 20% above your daily budget." *Id.*, at Exhibit E (Plaintiffs' original Complaint filed August 3, 2005), ¶ 44.

**D.  Plaintiffs' Counsel Admitted That Plaintiffs Have No Viable Claim Based on the 120% Rule Alone.**

Plaintiffs' counsel conceded during oral argument that Plaintiffs were <u>not</u> arguing that the 120% rule in and of itself was improper.  He stated in response to the Court's question regarding the 120% rule:

> It works if you don't pause your ad.  If you run your ad for the 30 days. And, and they charge you 20 percent more in any given day.  *At the end of that month you're not hurt because the most they'll charge you is the 30 days time your daily budget.*  So you haven't been charged for that extra 20 percent.  The way people get hurt is they pause their ads. . ."

Declaration of M. Christopher Jhang in Support of Google Inc.'s Opening Brief Regarding the 120% Rule, Exhibit A (Reporter's Transcript of June 21, 2007 hearing), 44:1-9 (emphasis added).

### III.  ARGUMENT

**A.  The Presentation Of The Disclosed 120% Rule Is Not Misleading.**

Plaintiffs concede that the 120% rule was disclosed in the parties' Agreement.  They assert, however, that even though it was disclosed, the "manner of presentation" was such that advertisers could be misled.  Plaintiffs' Brief, at 3:19-21.

Plaintiffs compare Google's disclosure of the 120% rule to the practice of burying important information in proxy statements, citing *Gould v. American-Hawaiian Steamship Co.*, 535 F.2d 761 (3d Cir. 1976) and *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 603 (5th Cir.1974).  These decisions are inapposite.  Google disclosed the 120% rule up front in the sign-up process as well as in key FAQs defining daily budget and explaining charges.  Moreover, Plaintiffs' contention that these disclosures were buried in hundreds of printed pages is inaccurate. AdWords is an online advertising program, and thus, these disclosures are readily accessible through hyperlinks and search functions within the program.

Nor is the 120% rule "couched in a manner that is likely to deceive."  The Agreement sets forth in plain language that "[o]n any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily budget calls for.  This helps make up for other days in which

- 6 -

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

your daily budget is not reached. However, you'll never be charged more than your average daily budget over the course of a month." Likewise, the sign-up pages contain similar disclosures.

**B.    Application Of The 120% Rule Alone Is Not A Breach Of Contract.**

When the plain language of an agreement contradicts the breach of contract allegations of a plaintiff, the defendant is entitled to a dismissal of the plaintiff's claim as a matter of law. *See Consol. World Inv., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

Plaintiffs' citations to basic tenets of contract interpretation do not support their arguments. Courts are to interpret the written provisions of a contract together, "so as to give effect to every part...." Civ. Code § 1641; *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 834 (2007). The AdWords Agreement should be read as a whole, including the 120% rule. Plaintiffs cannot manufacture a breach of contract by ignoring select terms of the Agreement and asserting an unsupported, literal definition of the term "daily budget." The 120% rule is plainly and prominently disclosed to all advertisers, not only in the FAQs but in the sign-up pages for the AdWords program.

Moreover, Plaintiffs admitted in their depositions that they did not review any FAQs before signing up for AdWords. If Plaintiffs chose to enter a contract without reading its terms, they cannot subsequently fault Google for enforcing a practice fully disclosed in the Agreement. The admitted failure to read provisions of a contract does not negate the force and effect of those provisions. *Powers v. Dickson, Carlson & Campillo*, 54 Cal.App.4th 1102, 1109 (1997).

**C.    Application Of The 120% Rule Alone Is Not An Unfair Trade Practice Or False Advertising.**

A clearly disclosed term or practice is not deceptive as a matter of law. *Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 483-84 (2006) (upholding trial court's conclusion that alleged ambiguity in order form over whether amount charged includes surcharge was not misleading or deceptive because of clear disclosure of charge to customers). *See also, Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (plaintiffs failed to show that promotional materials likely to deceive recipient into believing he had won sweepstakes, where the promotions expressly and repeatedly state the conditions which must be met in order to win, and the court held "None of the

- 7 -

Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007
Case No. C05-03649 JW
41063-0023/LEGAL13956855.1

qualifying language is hidden or unreadably small. The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it.").

"'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, <u>acting reasonably in the circumstances</u>, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003) (emphasis added). Here, AdWords advertisers were advised at sign-up that they may be charged up to 120% of their daily budget on a given day and that they would not be charged more than their daily budget over the course of the month. This practice was also described in full in the Agreement to which they consented in order to participate in the AdWords program. If advertisers had questions, there were hyperlinks in the Agreement to additional information. Advertisers also had the option of contacting Google representatives, as Plaintiffs did. It is unreasonable for an advertiser to completely disregard the plain meaning of terms of a contract the advertiser has assented to and demand the adoption of the advertiser's own contrary meaning.[4]

In essence, Plaintiffs' unfair practice and false advertising claims regarding the 120% rule boil down to their claim that they were misled by FAQs they did not read. In order to assert a 17200 cause of action, the plaintiff must show an injury in fact and that the plaintiff lost money or property as a result of the defendant's alleged unfair practice. Bus. & Prof. Code § 17204. If Plaintiffs did not read the Agreement, they could not be misled or harmed by it. Further, any reasonable consumer reading the FAQs and the sign-up pages would see the disclosure describing the 120% practice. Plaintiffs cannot represent a class of unnamed advertisers when, as their counsel acknowledged, they themselves were not harmed by the 120% rule. Bus. & Prof. Code § 17203 (to bring a representative action under the UCL, a plaintiff must meet the standing requirements of section 17204 – injury in fact and loss of money or property – as well as meet the

---

[4] In addition, Plaintiffs' claim that the daily budget is misleading because it is applied as a monthly budget is unmerited. If Plaintiffs were held to a monthly budget, their budgets could theoretically be exhausted at any time in a given month. Under the Agreement, Plaintiffs agreed to a daily budget (with credits calculated over the span of a month), which may be exceeded by up to 20% on any single day, to account for fluctuations in internet traffic.

- 8 -

**Google's Response To Plaintiffs' Supplemental Submission Re Court's Order Of Aug 21, 2007**
**Case No. C05-03649 JW**
41063-0023/LEGAL13956855.1

requirements for bringing a class action). A false advertising claim brought under Cal. Bus. & Prof. Code § 17500 carries the same prerequisites. *See* Bus. Prof. Code § 17535.

## IV. CONCLUSION

For all of the reasons set forth above and in Google's Opening Brief Regarding The 120% Rule, Google respectfully requests that the Court find, as a matter of law, that the 120% rule by itself is proper and cannot be the basis for Plaintiffs' breach of contract or unfair competition claims.

DATED: February 11, 2008.

**PERKINS COIE LLP**

By     /S/
    DAVID T. BIDERMAN
Attorneys for Defendant Google Inc.