LESTER L. LEVY (Admitted *Pro Hac Vice)*
MICHELE F. RAPHAEL (Admitted *Pro Hac Vice*)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
E-Mail: llevy@wolfpopper.com
E-Mail: mraphael@wolfpopper.com

WILLIAM M. AUDET (117456)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105-1938
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
E-Mail: waudet@audetlaw.com

MARC M. SELTZER (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
E-Mail: mseltzer@susmangodfrey.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>   vs.<br><br>GOOGLE, INC.,<br><br>                   Defendant. | Case No. C 05-03649 JW<br><br>**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**<br><br>Date:    February 25, 2008<br>Time:   9:00 a.m.<br>Place:   Courtroom 8<br>           Hon. James W. Ware |

814697v1/010480

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. THE LEGALITY OF GOOGLE'S SYSTEMATIC PRACTICE OF BILLING ITS ADVERTISERS FOR OVERDELIVERY HAS ALWAYS BEEN A CLAIM IN THIS CASE..............................................................................................................2

III. NEITHER PLAINTIFFS NOR THEIR COUNSEL WAIVED THE OVERDELIVERY BILLING CLAIM. ......................................................................5

IV. GOOGLE'S OVERDELIVERY BILLING PRACTICE MAY BE FOUND TO VIOLATE THE UCL AND FAL.............................................................................8

V. GOOGLE'S OVERDELIVERY BILLING PRACTICE MAY BE FOUND TO BE A BREACH OF THE ADWORDS CONTRACT. ...............................................12

VI. CONCLUSION ...................................................................................................13

814697v1/010480　　　　　　　　　　　　　i

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF
RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

# TABLE OF AUTHORITIES

**Page**

*Freeman v. Time, Inc.*,
 68 F.3d 285 (9th Cir. 1995) ................................................................................................10

*Nagel v. Twin Laboratories, Inc.*,
 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) ..............................................................9

*Prata v. Superior Court*,
 91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296 (2001) ............................................................9

*R & B Automobile Center v. Farmers Group, Inc.*,
 140 Cal. App. 4th 327, 44 Cal.Rptr.3d 426 (2006) ..............................................................10

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
 72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301 (1999) ..........................................................9, 12

*Wayne v. Staples, Inc.*,
 135 Cal. App. 4th 466, 37 Cal.Rptr.3d 544 (2006) ..............................................................10

## I. INTRODUCTION

Plaintiffs CLRB Hanson Industries, LLC (Hanson) and Howard Stern (Stern) respectfully submit this memorandum in response to Defendant Google Inc.'s Opening Brief Regarding the 120% Rule, filed on January 29, 2008

Simply put, there is no 120% "rule." Whether defendant Google, Inc. (Google) may, under the terms of the AdWords contract, charge more than an advertiser's specified per day daily budget, so long as the advertiser advertises for a full month, and whether Google's statements to prospective advertisers about the ability to set a per day daily budget were misleading, are disputed by the parties. For the reasons set forth in Plaintiffs' Supplemental Submission Re the Court's Order of August 21, 2007, filed on January 29, 2008, plaintiffs believe that in its August 21, 2007 Order, the Court correctly decided that triable issues of fact were presented on plaintiffs' breach of contract claim and also correctly decided that Google's description of its billing practices could be found by the trier of fact to be misleading. In so ruling, the Court evidently found it unnecessary to decide whether billing for overdeliveries made to full month advertisers breached the AdWords contract because Google's practice of charging advertisers who paused or sought to advertise for less than a full month for overdeliveries could be found by the jury to breach the AdWords contract. The Court further ruled that it need not decide whether Google's overdelivery billing practices were deceptive as applied to advertisers who paused or advertised for less than a month, because those practices could be found to be deceptive as to those who advertised for a full month.

The existence of a very brief discussion of Google's overdelivery practices buried in just two of nearly 500 pages of frequently asked questions (FAQs) has never been disputed. Instead, the question in this case has always been whether that discussion operates to obliterate the multitude of references to the ability of an advertiser to set a per day daily budget. Plaintiffs maintain that the few snippets pulled from hundreds of pages of FAQs cannot be viewed in isolation — all of the representations and descriptions of an advertiser's rights under the AdWords contract, which were all drafted by Google, must be considered in context.

814697v1/010480     1

Now that the Court has denied Google's motion for summary judgment, Google resorts to claiming that billing for overdeliveries, where an advertiser advertises for a full month, has never been part of plaintiffs' case, and that if it ever were a part of plaintiffs' case, plaintiffs waived any challenge thereto. This argument is directly contrary to the record in this case. The pleadings, the briefings, the arguments in open Court, plaintiffs' deposition transcripts, as well as the Court's August 21, 2007 Order, demonstrate that plaintiffs have always challenged, and continue to challenge, Google's practice of charging for ad deliveries that exceed an advertiser's specified per day daily budget and that that challenge was never waived.

Google also mistakenly characterizes its overdelivery billing practice as limited to occasions when Google overdelivers "to make up for prior shortfalls." However, as detailed at length in plaintiffs' papers in support of, and in opposition to, the parties' cross motions for summary judgment, and particularly in the submissions made by plaintiffs after they conducted very limited Court-ordered discovery of Google, Google systematically overdelivered on any given day, before a shortfall, and even on the first day an ad ran. Under the terms of the AdWords contract, an advertiser could change his or her daily budget (up to ten times a day) if he or she wanted to make up for a shortfall. Google, by systematically overdelivering and billing for overdelivered ads, imposed additional charges over and above advertisers' specified daily budgets.

For the reasons detailed herein, and in plaintiff's prior submissions and arguments, Google's practice of exceeding the daily budget is a breach of the AdWords agreement and Google deceptively presented the cost to an advertiser who decided to participate in the AdWords program.

## II. THE LEGALITY OF GOOGLE'S SYSTEMATIC PRACTICE OF BILLING ITS ADVERTISERS FOR OVERDELIVERY HAS ALWAYS BEEN A CLAIM IN THIS CASE.

Google's argument that plaintiffs have not previously challenged billing for overdeliveries made to advertisers who advertised for a full month is directly contrary to the record in this case. Plaintiffs' successive complaints, the summary judgment motions — including Google's own

814697v1/010480 2

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

motion and its opposition to plaintiffs' motion — and the transcripts of proceedings before the Court, show that plaintiffs have always challenged the propriety of this practice. In its own motion for summary judgment, Google said: "Plaintiffs allege that Google promised that it would not exceed the daily budget set by Plaintiffs and Class members and that Google 'breached the Agreement by charging Plaintiffs and the Class advertising fees in excess of their respective daily budgets.' SAC, ¶¶ 79, 83." Google Mot. for S.J. at 13. A few lines later on the same page of its memorandum, Google argued: "Google Had a Contractual Right to Exceed the Number of Clicks Per Day by 20% of the Daily Budget and This Term Was Fully Disclosed to Plaintiffs." *Id.* Clearly, Google would not have made that argument if overdelivery, regardless of pausing, were not an issue in the case. *See also* plaintiffs' first amended class action complaint (FAC), filed on November 15, 2005, and plaintiffs' second amended class action (SAC), filed on May 4, 2006.[1]

---

[1] The following paragraph numbers refer to the FAC and the SAC unless otherwise indicated: (¶1 Plaintiffs bring this class action against Google, Inc. ("Google" or the "Company") on behalf of themselves and other persons and entities that advertise pursuant to Google's AdWords program ("AdWords") and have been charged more than their "daily budget" for their advertising campaign (the "Class")."; ¶ 49 "In contrast to Google's representations concerning setting a daily budget to allow an advertiser to control its advertising costs, Google routinely overdelivers ads to allow advertisers' accounts to go over their daily budget."; ¶ 50 "Google will not provide credits for charging advertisers more than their daily budget on any given day as long as those overages do not cumulatively exceed the calculated 'monthly' budget (daily budget times 30/31) in any given month"; ¶ 57 "Despite this set daily budget, Google routinely exceeded the daily budget set by Plaintiff Industrial Printing, Google did not credit Industrial Printing for all such charges over its daily budget, and Google continues to charge it for advertising in excess of its daily budget."; ¶ 64 "Despite having set a daily budget of $10, Google routinely exceeds the daily budget set by Plaintiff Stern." ; ¶ 71, common questions include: " b. Whether Google routinely exceeded the daily budgets set by advertisers"; "h. Whether the Class is entitled to an injunction requiring Google to cease and desist from exceeding set daily budgets for advertising clicks" ; "i. Whether Google was unjustly enriched by charging advertisers more then their daily budget"; and "j. Whether Google's conduct of charging advertisers more than their daily budget violated California's unfair competition law"; ¶ 79 "Google repeatedly represented and promised that it would not exceed the daily budget set by Plaintiffs and Class members"; ¶ 80 "The Agreement prohibits Google from exceeding Plaintiffs' and the Class members' daily budgets, and explicitly states that Google will deliver Plaintiffs' and the Class members' ads at, or below, their daily budgets"; ¶82 FAC [¶ 83 SAC] "Google breached the Agreement by charging Plaintiffs and the Class advertising fees in excess of their respective daily budgets"; ¶92 FAC [¶98 SAC] "Google wrongfully bills advertisers more than their daily budget on any given day. Google also overdelivers ad(s) in order to best ensure that it will charge advertisers up to the monthly budget which it wrongfully creates from advertisers' daily budgets."; and ¶112 "Google's advertisements and marketing representations and omissions concerning the cost of the AdWords program, including but not limited to, allowing advertisers to control the costs of their advertising limiting such to the daily budget set by advertisers, allowing advertisers to pause their ads at no charge, are false, misleading, and deceptive as set forth more fully above.")

Plaintiffs, in their motion for summary judgment, argued, "In reality, Google exceeds the daily budget set by the advertiser" and plaintiff Stern complained that: "My understanding of a 'daily budget' of $10 is very simple: daily cost not to exceed $10." Pltffs. Mot. for S.J., at 13 and 15.

At the first hearing on the parties' cross-motion for summary judgment held on January 22, 2007, plaintiffs' counsel argued: "This delivery of ads, that's something that Google [does] to maximize their revenue. But the way they promote [AdWords] to the advertiser is: You are in charge of your own budget. You are in charge of your own costs. And if you want to be charged - - run your ad one day a month and your budget is $100; there is no way you should be charged more than $100. And they say they can charge you $120. There's no way to justify that today, your honor." Jan. 22, 2007 Tr., at 49. Supplemental Declaration of Marc M. Seltzer in Support of Plaintiffs' Brief in Response to Google, Inc.'s Opening Brief Re The Court's Order of August 21, 2007 ("Supp. Seltzer Decl."), Ex. A.

At the second hearing on the summary judgment motions held on June 21, 2007, plaintiffs' counsel again argued: "We believe that, [that] you should only be charged your daily budget, what you expect and what you told them you want to be charged." June 21, 2007 Tr., 37-38; "[Plaintiffs are] looking at it as a daily budget and if you [Defendant] go beyond the budget the day [sic] you set you [Plaintiffs] should not be charged for it." *Id.* at 39. Supp Seltzer Decl., Ex. B.

Hence, Google's claim that this claim was never made and presented is completely unfounded.

Google describes its practice of charging for overdelivery as compensating for a <u>prior</u> daily shortfall within a month. Yet, as noted above, Google's description ignores that its own witnesses and documents acknowledge that overdelivery occurs "on any given day" including the

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF
RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

first day.[2] Nor is the practice of overdelivery necessary to benefit advertisers, as Google would have this Court believe. Rather, it benefits Google by allowing it to collect higher ad revenues. Advertisers were told they had the right to change their own daily budget up to ten times a day and thus they could compensate for any prior shortfalls — but only if they so chose. As plaintiffs have maintained since the inception of this case, Google had no right to usurp the advertiser's freedom of choice and override the per day daily budget set by its advertisers.

### III. NEITHER PLAINTIFFS NOR THEIR COUNSEL WAIVED THE OVERDELIVERY BILLING CLAIM.

Given that overdelivery was always a part of this case, Google also resorts to arguing that plaintiffs somehow waived the claim that overdelivery was improper for advertisers who advertised for a full month. In order to do so, Google has ignored the twelve briefs submitted on the cross summary judgment motions (all of which were submitted after plaintiffs' depositions) and pluck statements made by plaintiffs' counsel at oral argument and at plaintiffs' depositions out of context.

First, there was no waiver of this claim by plaintiffs' counsel at the hearing held on June 21, 2007. Rather, plaintiffs' counsel repeatedly argued that overdelivery, regardless of pausing, breached the AdWords agreement and violated the UCL and FAL because the advertiser set a daily budget. *See, e.g.*, June 21, 2007 Tr., at 37-38: "Okay. We believe that, that, you should only be charged your daily budget, what you expect and what you told them you want to be charged."; *Id.* at 39: " . . . I'm looking at it as a daily budget and if you go beyond the budget

---

[2] *See, e.g.*, Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment dated May 7, 2007, Supplemental Statement of Undisputed Facts, at 12-15 (citing, *inter alia*, Dep. Tr. of Heather Wilburn, at 42:21-24, "Q: Will Google overdeliver an ad up to 20 percent above a daily budget on any given day? A: Potentially, yes."; *Id.* at 67:1-13 "The Witness: Due to web fluctuations, it is possible to accrue clicks, charges beyond 20 - - up to 20 percent beyond that daily budget limit . . . Q: Does that accrual apply to any given day in the billing cycle? Mr. Biderman: Objection; vague. The Witness: Accrual being any time the ad is active."; Dep. Tr. of Michael Schulman, at 62:1-11. "Q: . . . What's your understanding of what's meant by 'hang on to it any longer'? A: . . .Let's say on the first day, by chance they served $104.50 . . . [w]e won't charge them for that 4.50. What we will do is keep it in what I like to call limbo. And in that - - if, say, on the next day, they only served $90 . . . then that $4.50 is then used to fill in that gap. The cited pages from the Wilburn and Schulman Transcripts are attached as Exhibits C and D to the Supp. Seltzer Decl.

814697v1/010480 5

the day you set [sic] you should not be charged for it." Supp. Seltzer Decl., Ex. B.

Then, the argument turned to the pausing issue, and examples were given of how advertisers are harmed by pausing. Plaintiffs' counsel focused on that issue and Google has capitalized on that focus to now claim that plaintiffs waived an overdelivery claim for those advertisers who did not pause. Google Br., at 7, 9.[3] Plaintiffs' counsel did not say, nor intend to say, that advertisers who did not pause their ad were not harmed or that they did not have a claim. Indeed, plaintiffs have always maintained that advertisers who do not pause, but are billed more than their daily budget on any given day, are harmed. The harm occurs when Google imposes the cost of the overage onto another day. For example, if an advertiser with a daily budget of $1000 runs his ad for all 30 days of a calendar month, and Google charges $1200 one day, and for two days the ad charges reach $900, if Google imposes that $200 excess onto the $900 days, the advertiser is damaged in the amount of $200. Absent Google's charging for overdelivery, the advertiser would, and should, be charged $29,800. Instead, Google charges him $30,000.

Plaintiffs' counsel was simply reiterating the argument plaintiffs have made since the beginning of this case — that the two FAQ snippets which say that Google may allow clicks to accrue up to 120% of a daily budget, but that Google will not charge more than the daily budget times the number of days in the month — can be read consistently with the FAQs if it is limited to those advertisers who run their ad every day <u>and reach their daily budget each day</u>. *See, e.g.*, Pltffs.' Opp to Google's Mot. for S.J., at 15 ("With respect to the latter snippet, the words 'monthly' cycle and/or budget, make perfect sense when applied to advertisers who ran their ad each day up to its daily budget, and must therefore be read in that context, alone."); Pltffs.' Supp. Mem. in Supp. of S.J., at 18-19 ("This language, like Ms. Wilburn's explanation of the monthly budget, makes perfect sense, if, and when, an advertiser runs its ad everyday and reaches its daily budget every day."). Indeed, as previously argued by plaintiffs, if the advertiser runs his ad each

---

[3] The Court's remarks confirm that the pausing issue was being discussed at that juncture of the argument. June 21, 2007 Tr., 44:17-21 ("Your opponent says show me in the document where it says you can use pausing to control your, control your daily budget and I, I quoted the language that I thought, I thought was as close as I could get to it. . .").

814697v1/010480  6
**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

1  day and his budget is reached each day, the advertiser will not be billed for the excess 20%, as
2  Google represented. Plaintiffs' counsel's statement should be viewed in the context of that
3  argument. By reading the 20% and qualifying monthly maximum to apply only to those
4  advertisers who run their ad for an entire month and reach their budget each day, effect is given to
5  all of the contractual provisions, including, *inter alia,* the term "daily budget" and Google's
6  promises not to charge more than the daily budget. On the other hand, as explained below, to
7  read that same language so as to allow Google to take overdelivery from one day and charge for it
8  on other days — be they fully paused days, partially paused days, or days on which the daily
9  budget is not reached —would allow Google to charge more than the per day daily budget.

    Nor did plaintiffs themselves waive the overdelivery issue. To the contrary, throughout
10 their depositions, plaintiffs consistently testified that overdelivery, irrespective of pausing, was
11 wrong.[4] Tellingly, in order to argue waiver, Google paraphrases testimony, rather than quote the

---

[4] *See, e.g.*, Dep. Tr. of Howard Stern, Aug. 12, 2006 (95:3-11 "Q. Right. And you believe you were overcharged because you were charged more than 120 percent of your daily budget; correct? A. Partially correct. I was charged over my daily budget, which is often not over 20 percent, but over the budget. So I definitely was charged both over my budget and 20 percent over my budget."; 96: 15-18 "On a day-by-day calculation, which is the way I view this charging to occur, I was charged more than my daily budget. I wasn't calculating things on a monthly basis. This whole thing was presented as a daily budget, and daily calculation is what was important."; 120:16-25 "Q. And is it your position that, notwithstanding that language, if Google delivers and charges you for $11 worth of advertising on a day in which you have a daily budget of 10, that even though that is less than 120 percent of your daily budget, it is your position today that Google has violated the terms and conditions of its relationship with you? A. Yes." . . .; 129:10-18 "Q. . . . is it your position that after that correspondence you continued to believe that your agreement with Google was that Google would never charge you on a daily basis more than your daily budget? A. Yes. I still believe it as I'm sitting here today, and it's still in the FAQ's that every day should have a daily budget that wouldn't be exceeded." 130:10-21 "Q. Can you tell me, sir, every reason why you believe that Google is violating the terms and conditions of its agreement with you when it charges more than your daily budget? A. Well, the first is that they present themselves as allowing you to set a, quote, daily budget. And you would think or at least I think, and still think today, that that's the most you're going to be charged that day. So when I get charged more than that I feel it's a violation." ; 131: 10-20 "Q. <u>What you personally key in on? A. What I believe is the whole point of this AdWords program is that it's a daily type of complete-control advertising scheme, where you have very find control over your charges down to the daily level, and that's what they present as - - as the main feature of their program. And yet they, on the back end at the end of the month, they sort of throw that out and just charge you monthly</u>." (Emphasis added.) [*See* Exhibit E to the Supp. Seltzer Decl.]

Similarly plaintiff Hanson testified at its deposition 31: 12-23"Q. And in your mind, whether you have that recollection or not, did you understand that by signing on to the AdWords program that you were accepting the terms and conditions by which the AdWords program operated? A. In my mind, I was accepting the terms and conditions that controlled my daily

actual words that were spoken. Moreover, the testimony Google cites was largely plaintiffs' simple acknowledgment that the words Google relies upon on pages 84 and 125 of 489 FAQs were in fact in the document Google's counsel handed to them, and on the pages Google's counsel pointed them to and asked them to read.[5]

## IV. GOOGLE'S OVERDELIVERY BILLING PRACTICE MAY BE FOUND TO VIOLATE THE UCL AND FAL.

In denying Google's motion for summary judgment on the UCL and FAL claims, the Court has already determined that overdelivery, absent pausing, may be found to violate both statutes. ("Lastly, at this time, the Court declines to find as a matter of law that members of the public would not be deceived by Google's use of the term 'Daily Budget' to refer to the average amount that an advertiser can expect to pay per day, as long as it runs an ad campaign for a full month."). Aug. 21, 2007 Order, at 19.

---

(… cont'd)
budget. I controlled my cost per click. I could turn off and on my campaign, and I would not be charged more than my daily budget or my daily cost per click."; "47: 12-25" "Q. And just one question while we're getting a document. With respect to the daily budget, how– what is your understanding of how a daily budget works on the Google AdWords program? A. That whatever our budget is we'll not be charged more than that certain amount. Q. Okay. And how did you come to that understanding? A. That's what was presented to me by Google. Q. In what form? A. The online page." . . .; 96: 8-22 " A. I believe I was asked by CLRB at the time why the budgets were over, and"–"and I think I wanted to show counsel that there was just a continual"– "you know, no matter what we set the budget at, it always went over. I didn't matter if I set it at $1, $100. Would go over. Whatever the budget was, it went over. It seemed to be. And it was frustrating to convey that to the client, when the client says, I want to spend $100 and the client pulls up a report and it's $121 or it's always consistently over. I mean, it looks like I don't have a clue what's going on."; 139-140: 3-25 1-3 "Q. Right. I understand. Is it fair to say that at some time in the second quarter of 2004 you came to the understanding that it was Google's practice under the AdWords program to charge up to 20 percent above the specified daily budget amount for a given day? A. No, sir. No, sir. Q. Okay. You did come to that understanding at some point in time; right? A. That wasn't the question you asked me. Q. Okay. Okay. Have you ever come to an understanding that Google's policy and practice under the AdWords program is to charge up to 120 percent of the daily budget? A. As recently as– I've kind of caved in and gave in that that's how Google's going to treat their advertisers, is going to screw them by 20 percent in the last, let's say, last June, 2005. Because I wasn't getting anywhere with asking them for, you know, why this is happening. It didn't matter what I changed my daily budget to, it always went over." [See Exhibit F to Supp. Seltzer Decl.]

[5] Google also refers to its explanations in response to plaintiffs' complaints. Defendant previously and similarly twisted this e-mail exchange between the parties in order to say "[P]laintiffs even admitted in their original complaint that they were informed by Google." Google Mot. for S.J., at 15. Plaintiffs have never denied Google's AdWords Team's responses, given <u>after</u> the contract was entered into and <u>after</u> plaintiffs complained about the overdelivery.

814697v1/010480
8
**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

Nevertheless, Google persists in arguing that it clearly disclosed its overdelivery practice and therefore, is not liable under the FAL or the UCL. Putting aside the fact that Google is attempting to reargue what has already been decided, in order to make out this defense, Google would be required to demonstrate that its disclosures were so clear and conspicuous in form, content, and context that no reasonable consumer could have been misled, which it cannot do. *See, e.g., Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 51, 134 Cal. Rptr. 2d 420 (2003) (statement can be literally true, yet still be misleading under the FAL); *Prata v. Superior Court*, 91 Cal.App.4th 1128, 1143, 111 Cal.Rptr.2d 296 (2001) (reversing dismissal of UCL claim in case where plaintiffs alleged defendant falsely advertised credit program as "Same as Cash" without advising consumers that the program required minimum monthly payments and distinguishing *South Bay*, noting that there is no evidence that the consumers who participated in the "Same-As-Cash" financing program 'knew, understood, agreed and expected' that the program was not really the "Same-As-Cash"). Google must also demonstrate that its conduct was not unfair, which it also failed to do. Indeed, in order for this Court to now dismiss overdelivery claims for advertisers who advertised for a full month, Google must show that no reasonable consumer could have been misled by its use of the term "daily budget," its representation that advertisers could set a daily budget, or its many statements that advertisers could stay within their pre-set daily budget, into believing that they would not have to pay more than their per day daily budget on any day their ad ran. We respectfully submit that the Court plainly ruled to the contrary, and correctly so. ("In light of this finding, the Court need not consider whether Google's descriptions of its overdelivery and pre-September 2006 pausing practices are adequate to satisfy the requirements of Sections 17200 and 17500.") Aug. 21, 2007 Order at 19 & n.14.

As more fully set forth in plaintiffs' supplemental submission, filed herein on January 29, 2008, Google's representations about the right of advertisers to set a "daily budget," describing the daily budget as a "per day" limit and maximum, and Google's assurances to stay within the daily budget each day were false, misleading and deceptive in light of Google's actual billing practices, and therefore violated the FAL and the UCL. Indeed, as detailed in plaintiffs'

supplemental submission, any purported disclosure of the overdelivery was ineffective, and violated both the buried facts doctrine and the equal prominence rule.

Ironically, Google accuses plaintiffs of having a "myopic view of the term [daily budget] in a vacuum, with no context whatsoever." Defs. Br., 11:16-17. Google, however, ignores that it asked advertisers to set a "daily" budget, and the common English language meaning of "daily." Google ignores the fact that it buried its purported disclosure of charging for overdelivery in just two pages among hundreds of pages of FAQs, and that the term "monthly budget" was nowhere to be found in the FAQs when plaintiffs signed up. Indeed, Google ignores everything except what it deems to support its position — just like it assumes the existence of a so-called 120% rule.

Defendant also ignores the host of case law cited by plaintiffs in their summary judgment briefs. Plaintiffs relied, and continue to rely on *R & B Auto Center v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 44 Cal.Rptr.3d 426 (2006), for the proposition that their UCL and FAL claims are viable irrespective of their breach of contract claim.[6]

The Court already ruled that plaintiffs may maintain their UCL and FAL claims (and breach of contract claim) regardless of whether they read the FAQs. The Court found "[a]t the time they registered with AdWords, both plaintiffs took their understanding of Google's billing practices from the term 'Daily Budget' itself. (Hanson Dep. at 47:12-48; Stern Dep. at 43:23-44:6)" Aug. 21, 2007 Order at 19. Unwilling to accept the Court's ruling, Google now offers, for the first time on this motion for clarification, an undated sheet of paper which it now claims was

---

[6] The cases cited by Google present fact patterns where courts found no claim for deception because the disclosures in question were clear and conspicuous. The disclosures at issue in those cases were not buried in hundreds of pages of FAQs, nor contradicted by other language in the contract. Thus, in *Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995), relied on by Google, the court found that: "The promotions expressly and repeatedly state the conditions which must be met in order to win. None of the qualifying language is hidden or unreadably small. The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it. In *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 37 Cal.Rptr.3d 544 (2006), also relied on by Google, plaintiffs claimed Staples was liable because the price it charged them for shipping insurance, as an agent of UPS, included a mark-up over UPS' charge. Plaintiffs did not challenge Staples' disclosure of the price they paid, which was exactly as represented.

814697v1/010480　　　　　　　　　　　　　10

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT GOOGLE, INC.'S OPENING BRIEF RE THE COURT'S ORDER OF AUGUST 21, 2007**
CASE NO. C 05-03649 JW

displayed to prospective advertisers as part of the sign-up process in 2002.[7] This sheet of paper, which is not offered by anyone with a personal knowledge as to its actual use, does not alter the Court's determination and may not be properly considered on this motion. *See* F.R.Civ.P. 56(e).[8]

The document in question is plainly inadmissible. The fact that Ms. Wilburn declares that she "believe[s]" that the information was on the screen sometime in 2002 cannot be used to support a summary judgment motion. Credibility is of concern in this case given Google's prior reliance upon the Declaration of Michael Schulman, also for the contents of what was disclosed during the sign up process in 2002, when it was later revealed pursuant to the Court-ordered deposition of Mr. Schulman, that he was not even employed by Google at the relevant time. Further suspect, at Ms. Wilburn's deposition, she identified a sheet of paper, which she claimed evidenced the set up process in 2002 — and this was not the sheet of paper she identified.

Google's resort to printouts from Yahoo's and Microsoft's 2008 websites likewise offers nothing in the way of a defense to the FAL and UCL claims. The Microsoft document actually exemplifies how and why Google's representations violated the FAL and UCL. In Exhibit C to the Jhang Decl., a page from Microsoft's website as of January 28, 2008, Microsoft discusses both a daily budget and a monthly budget option and with respect to the daily budget, explicitly warns "Please note that the daily budget is a target." In stark contrast, as detailed in plaintiffs' supplemental submission, Google represented that its daily budget was the maximum charge. Moreover, irrespective of the current practices of other web search providers, plaintiffs testified that they switched to Google because, unlike its competitors, Google offered a daily budget and did not have a minimum advertising charge, monthly or otherwise. (Stern Tr., 174:12-21 "Q.

---

[7] According to Google, the document reads "Your actual daily changes [sic] may fluctuate by 20% . . . ." The word "changes" appears to be a typographical error. If so, it raises the obvious question whether Google actually had a screen on its website with such an error? Furthermore, the sheet, on its face, fails to inform its readers that Google plans to systematically overdeliver their ads on some days and charge them for that excess by charging for the overrun on days on which the per day daily budget is not reached — due to either pausing or lack of demand, contrary to Google's claim that the document "clearly disclosed" the "120% rule" "during the sign-up process."

[8] Plaintiffs are filing concurrently herewith an objection to the consideration of this newly proffered evidence under F.R.Civ.P. 56(e).

814697v1/010480

11

1  Okay. So why did you switch to Google from Yahoo? A. Because Yahoo had a monthly minimum that I needed to pay, whether or not I even ran the ads. Q. And Google? A. They had no minimum. Q. And, in fact, they told you they had no minimum; correct? A. Right."; Hanson Tr., 22:15-17 "We controlled the daily budget. And that's what intrigued me to the value proposition that Google offered at that time.") [Supp. Seltzer Decl., Exs. E and F].[9]

In light of the Court's Aug. 21, 2007 Order, plaintiffs' supplemental submission and the summary judgment briefing, Google's representations as to the ability of an advertiser to limit his charges by specifying a daily budget may be found by the trier of fact to be deceptive in violation of both the UCL and the FAL.

## V. GOOGLE'S OVERDELIVERY BILLING PRACTICE MAY BE FOUND TO BE A BREACH OF THE ADWORDS CONTRACT.

As detailed in plaintiffs' opening brief, the Court did not rule whether overdelivery, absent pausing, could be found by the jury to breach the AdWords agreement because it did not have to reach this issue in order to deny Google's summary judgment motion. Plaintiffs had not moved for summary judgment on this claim and the Court did not have to delve into the contract analysis set forth in their papers. The fact that anyone who paused their ad or who ran their ad for only a partial month could have been overbilled, was enough to give rise to triable issues of material fact and require defendant's motion to be denied.

In any event, Google's argument ignores the law of contract interpretation, which was detailed in plaintiffs' opening papers. Google was the sole author of its contract. Plaintiffs had no bargaining power whatsoever. And, as noted above and throughout this case, the language in the FAQs relied upon by Google to qualify its promises to stay within the advertiser's daily

---

[9] Google's reliance upon *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 85 Cal.Rptr.2d 301 (1999), is also misplaced. In that case, GMAC was held to be entitled to judgment <u>after a full-blown trial</u>, because the evidentiary record <u>at trial</u> demonstrated that plaintiff fully understood and authorized GMAC's method of interest calculation before it entered into a relationship with GMAC. The Court of Appeal held that the evidence showed, *inter alia*, that plaintiff's "business manager knew" GMAC's method of calculating interest, that the GMAC staff "explained" the billing to plaintiff, that plaintiff "agreed and understood" the practice, that the contracts "authorized" the practice, and that plaintiffs' own expert agreed that GMAC's documents explained the practice. Here, there has not even been full discovery, much less a trial on the merits and there is no comparable testimony from the plaintiffs in this case.

budget can be reconciled — when, and if, it is limited to when an ad runs every day of the month and reaches its budget each day.

Google's self-serving interpretation of the contract language it authored to allow it to charge an additional 20% on any given day at the very least presents questions of fact. Plaintiffs submit that Google's repeated assurances that advertisers could stay within their own daily budget each day would be rendered meaningless by its interpretation of the contract. Google does not even attempt to reconcile its proffered interpretation with the rest of the FAQs.

## VI. CONCLUSION

In light of this Court's order on August 21, 2007, and the prior proceedings, testimony and briefing had herein, plaintiffs respectfully submit that Google's practice of systematically overdelivering and charging advertisers for those overdeliveries, irrespective of pausing, remains a valid basis for plaintiffs' claims for breach of contract and violation of the UCL and FAL.

Dated: February 11, 2008.

Respectfully submitted,

LESTER L. LEVY (Admitted *Pro Hac Vice*)
MICHELE F. RAPHAEL (Admitted *Pro Hac Vice*)
WOLF POPPER LLP

WILLIAM M. AUDET
AUDET & PARTNERS, LLP
MARC M. SELTZER
SUSMAN GODFREY L.L.P.


By\_\_\_\_/s/ Marc M. Seltzer_____
     Marc M. Seltzer
    Attorneys for Plaintiffs