1  David T. Biderman, Bar No. 101577
　　DBiderman@perkinscoie.com
2  David P. Chiappetta, Bar No. 172099
　　DChiappetta@perkinscoie.com
3  M. Christopher Jhang, Bar No. 211463
　　CJhang@perkinscoie.com
4  **PERKINS COIE LLP**
　　Four Embarcadero Center, Suite 2400
5  San Francisco, CA  94111-4131
　　Telephone:  415.344.7000
6  Facsimile:  415.344.7050

7  Attorneys for Defendant
　　GOOGLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,　　　　　　Plaintiffs,　　v.　GOOGLE INC.,　　　　　　Defendant. | CASE NO. C 05-03649 JW　**GOOGLE INC.'S DISCOVERY BRIEF**　Hearing:　July 8, 2008　Time:　10:00 a.m.　Dept.:　Courtroom 5　Judge:　Honorable Patricia Trumbull |

GOOGLE INC.'S DISCOVERY BRIEF
C05-03649 JW

## I. FACTUAL BACKGROUND

Plaintiffs CLRB Hanson Industries, LLC, d/b/a Industrial Printing, and Howard Stern (collectively "Plaintiffs") allege that they, and a putative class they seek to represent, are or were advertisers who were overcharged under defendant Google Inc.'s ("Google") AdWords advertising program. AdWords is a program that allows businesses, such as Plaintiffs, to post advertisements on the websites of Google or its syndication partners. All AdWords advertisers are required to accept the AdWords Agreement ("Agreement"), which includes the AdWords Program Terms ("Program Terms") and the AdWords Frequently Asked Questions ("FAQs"), prior to activating their ads on the AdWords program.

When an advertiser first creates an ad, the advertiser provides both the text that will serve as the ad ("ad text") and "keywords," which are words selected by the advertiser that trigger the delivery of the ad if they are used in a Google search query. Advertisers also specify the amount they are willing to pay each time a computer user clicks on their ad (*i.e.*, the cost-per-click or "CPC") and a "daily budget," which is the average daily amount the advertiser is willing to spend.

The AdWords system is designed to display ads until the advertiser has accrued clicks sufficient to meet the advertiser's daily budget. In so doing, the system is designed to look back over the prior days of the month to determine whether there was a "shortfall" in any of those days. If so, the system will try to make up for the shortfall by serving up to 120% of the daily budget on any given day (the "120% rule").

The AdWords Agreement expressly contemplates this system, by which delivery in excess of an advertiser's daily budget is made to account for shortfalls which occurred earlier in the month. The definition of "Daily budget" in the AdWords Agreement expressly provides that "[o]n any single day, the AdWords system may deliver up to 20% more ads than [an advertiser's] daily budget calls for." Moreover, when Plaintiffs signed up for AdWords, the sign up page informed them that the AdWords system would deliver up to 120% of their daily budget.

## II. PROCEDURAL AND DISCOVERY BACKGROUND

On May 4, 2006, Plaintiffs filed the operative Second Amended Complaint ("SAC"). On June 26, 2006, at the initial status conference, the Court ordered the parties to conduct limited discovery. The Court expressly limited the scope of discovery, ordering that "[t]he scope of discovery shall be limited to discerning (i) the terms and conditions of the agreement, if any, that existed between the parties relating to the AdWords advertising program [] and (ii) the parties' understanding of those terms and conditions." This limitation remained in effect for over two years, through June 16, 2008.

On August 16, 2006, and August 18, 2006, Plaintiffs were deposed about their understanding of the AdWords Agreement. The scope of these depositions were limited per the Court's order, and Plaintiffs' counsel objected to questions going beyond the scope of the order. Following these depositions, the parties submitted their initial round of summary judgment motions. On August 21, 2007, the Court granted Google's motion with respect to Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and unjust enrichment, it denied Google's motion on Plaintiffs' claims for breach of contract and violations of California's Unfair Competition Law, sections 17200 and 17500, *et seq.*, and it denied Plaintiffs' motion for partial summary judgment in its entirety. The Court also held that a valid advertising agreement exists between the parties, and that the agreement includes both the Terms and Conditions and the FAQs.

On November 6, 2007, the parties participated in private mediation at JAMS. At the mediation, Plaintiffs for the first time shifted their focus from claims by advertisers who paused their ad campaigns to a far broader contention that *any* charges accrued by an advertiser in excess of the exact amount of their daily budget on *any* given day constitutes a breach of contract and violation of unfair competition laws.[1] On December 3, 2007, at a subsequent case management conference, the Court ordered further briefing on this issue.

---

[1] Plaintiffs' counsel had previously represented to the Court that there was nothing wrong with Google's charging more than the daily budget on any given day, so long as it averaged out over the course of the month.

GOOGLE INC.'S DISCOVERY BRIEF
C05-03649 JW

On May 14, 2008, following briefing and a hearing, the Court granted Google's summary judgment motion "with respect to whether the practice of charging customers up to 120% of their 'Daily Budget,' in and of itself, constitutes a breach of the AdWords Agreement," but provided that "there remain triable issues of fact as to whether Google breaches the AdWords Agreement with respect to three groups of individuals: (1) customers running short-term ad campaigns, for less than one month; (2) customers running longer ad campaigns, where the final month of their campaign is a partial month; and (3) customers who pause their campaigns." The Court denied Google's motion with respect to Plaintiff's unfair competition claims, finding there are triable issues of fact as to whether Google's use of the term "daily budget," while charging up to 120% of an advertiser's daily budget on a given day, "constitutes false advertising in violation of California Unfair Competition Law."

On June 16, 2008, the Court conducted another case management conference and issued an Order setting a further case management conference on October 6, 2008, and a hearing on Plaintiffs' anticipated Motion for Class Certification on November 21, 2008. Plaintiffs stated that they would file their class certification motion in September 2008. The Court ordered that discovery "shall be opened immediately and shall not be bifurcated," but also ordered that "the parties shall meet and confer regarding a plan for class and merits discovery." The Court referred the parties to this Department to form a joint discovery plan.

### III. DISPUTED DISCOVERY ISSUES

**A.  Initial Disclosures**

As detailed above, at the November 6, 2007 mediation, Plaintiffs for the first time shifted their focus from claims relating to "pausing" to a broader attack on the "120% rule." The parties have not yet had an opportunity to meaningfully confer and provide initial disclosures with respect to the expanded scope of this litigation, and thus, supplemental initial disclosures should take place. Google intends to produce such disclosures to Plaintiffs within the next 60 days.

**B.  Discovery Topics, Timing, and Sequencing**

Although the Court has ordered that discovery shall not be bifurcated, it also ordered that the parties should agree on a "plan for class and merits discovery." Plaintiffs do not propose such

- 4 -

a plan. Instead, while setting an aggressive schedule by which their class certification motion will be filed and heard, Plaintiffs suggest full-blown discovery on all other issues simultaneously. It is not feasible to complete all discovery relating to class certification by in time for the class certification hearing if the parties' resources are diverted onto discovery issues that are not as timely (such as merits and damage related discovery). Proceeding as Plaintiffs propose would result in an insurmountable amount of data for the parties to process, which would hinder the parties' production and analysis of responsive discovery, thus precluding proper discovery on class certification issues. The parties should focus their initial discovery efforts on class certification discovery to prepare for the hearing.

### C. Electronic Documents

All Electronically Stored Information ("ESI") produced in this case will, at the election of the producing party, be produced either in the form in which it is ordinarily maintained or in a reasonably usable form.

### D. Discovery Limitations

Google agrees with the following discovery limits previously proposed by Plaintiffs regarding requests for admissions, interrogatories, fact depositions, and requests for production:

- Requests for Admission: 30 substantive requests for admission, plus an unlimited number of requests regarding authenticity and hearsay.
- Interrogatories: 45 per side.
- Fact Depositions: Twenty 7-hour non-expert depositions per side, including party and third-party depositions.[2]
- Requests for Production: No limits.

As indicated above, Google previously deposed each of the Plaintiffs on two narrow issues (circumscribed by the Court's order limiting the scope of discovery). In addition, Google intends to depose the named Plaintiffs on issues beyond the scope of their prior, limited

---

[2] For purposes of testimony provided *by a party* in response to one or more 30(b)(6) deposition notices, each seven hours of testimony, whether provided by one or more individuals and/or in response to one or more notices, should count as one of the twenty depositions for purposes of these limits.

- 5 -

GOOGLE INC.'S DISCOVERY BRIEF
C05-03649 JW

deposition.  These prior depositions shall not count toward the limits set forth in Plaintiffs'

proposal.  Further, Google does not believe that expert depositions should be limited in duration.

**E.      Class Definition**

Plaintiffs' alleged class definition is vague and overbroad, and will hinder the parties' ability to conduct class, merits, and damages discovery.  Among other things, there is no geographical or temporal limitation in the definition, and the putative class includes businesses with wholly different alleged claims.  In light of the aggressive deadlines proposed by Plaintiffs for class certification, Plaintiffs' class definition should immediately be narrowed and clarified to allow for meaningful discovery relating to this issue.

DATED:  July 2, 2008　　　　　　　　　　　　**PERKINS COIE LLP**

By: _____/S/_____
　　　David T. Biderman
　　Attorneys for Defendant Google Inc.

41063-0023/LEGAL14437196.1