DAVID T. BIDERMAN, Bar No. 101577
TIMOTHY J. FRANKS, Bar No. 197645
M. CHRISTOPHER JHANG, Bar No. 211463
FARSCHAD FARZAN, Bar No. 215194
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050
Email: DBiderman@perkinscoie.com
Email: TFranks@perkinscoie.com
Email: CJhang@perkinscoie.com
Email: FFarzan@perkinscoie.com

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>        Defendant. | Case No. C 05-03649 JW<br><br>**GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' "120% RULE" AND "PARTIAL MONTH" CLAIMS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: November 10, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 8<br>Judge: Honorable James Ware |

**Table of Contents**

Table of Authorities ..................................................................................................................... ii

Notice of Motion and Motion ....................................................................................................... 1

Memorandum of Points and Authorities ....................................................................................... 1

Statement of Facts ........................................................................................................................ 4

        A.     The AdWords Program, "Daily Budgets," the "120% Rule," and Pausing ............ 4

        B.     Plaintiffs' Advertising Campaigns .......................................................................... 5

Argument ...................................................................................................................................... 7

I.    Plaintiffs Have No Standing to Seek Restitution for Injury Due to Google's Occasional Delivery of Additional Clicks Under the 120% Rule ..................................... 7

        A.     Plaintiffs Have No Evidence that They Suffered an Injury in Fact Due to Being Charged up to 120% of their Daily Budget on Certain Days ....................... 8

        B.     As a Matter of Law, Lost Business Opportunities Do Not Constitute "Lost Money or Property" as Required by the UCL and FAA ....................................... 11

II.   At Minimum, Plaintiffs Suffered No Injury After They Knew that Google Would Charge Them Up to 120% of Their Daily Budget on Certain Days ................................ 13

III.  Plaintiffs Have No Evidence to Support Any Claim that Google Overcharged Them for "Partial Month" Campaigns ............................................................................. 14

Conclusion .................................................................................................................................. 15

## Table of Authorities

**Cases**                                                                                                                                   **Pages**

*Animal Legal Def. Fund v. Mendes*,
   160 Cal. App. 4th 136, 72 Cal. Rptr. 3d 553 (2008) .................................................................. 8

*Brown v. Bank of Am., N.A.*,
   457 F. Supp. 2d 82 (D. Mass. 2006) ............................................................................ 12, 13

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007) .................................................. 11, 12, 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................... 6

*Chavez v. Blue Sky Natural Beverage Co.*,
   503 F. Supp. 2d 1370 (N.D. Cal. 2007) ........................................................................ 7, 8, 9

*Chern v. Bank of Am.*,
   15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976) ............................................................................ 10

*Daro v. Superior Court*,
   151 Cal. App. 4th 1079, 61 Cal. Rptr. 3d 716 (2007) ......................................................... 7, 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ................................................................................................ 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) .................................................................... 10

*Kung v. FOM Inv. Corp.*,
   563 F.2d 1316 (9th Cir. 1977) .............................................................................................. 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................... 8

*MAI Sys. Corp. v. UIPS*,
   856 F. Supp. 538 (N.D. Cal. 1994) ...................................................................................... 12

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) ................................................................................ 11

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (Ct. App. 2008) .................................. 7, 8, 9, 12

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................................. 7

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................................... 10, 11

**Statutes and Rules** | **Pages**

Fed. R. Civ. P. 56(c) ............................................................................................................ 6

Fed. R. Civ. P. 56(e)(2) ...................................................................................................... 10

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ................................................................. 1, *passim*

Cal. Bus. & Prof. Code § 17204 ................................................................................ 3, *passim*

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ................................................................. 1, *passim*

Cal. Bus. & Prof. Code § 17535 ................................................................................ 3, *passim*

## Notice of Motion and Motion

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 10, 2008 at 9:00 a.m., or soon thereafter as the matter may be heard, in Court Room 8 of the United States District Court for the Northern District of California, San Jose Division, defendant Google Inc. ("Google") will, and hereby, does, move the Court for partial summary judgment dismissing Plaintiffs' claims that Google's policy of delivering "clicks" valued at up to 120% of a user's designated "Daily Budget" is a deceptive trade practice that violates California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 *et seq.* This motion is made on the ground that Plaintiffs lack standing to bring those claims because even if Google's policies were somehow deceptive (which Google denies), Plaintiffs suffered no injury in fact and lost no money or property as a result. For the same reasons, Google moves for partial summary judgment dismissing any claims that Plaintiffs overpaid for campaigns that were cancelled after a portion of a month ("partial month" campaigns).

Google's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declarations of Adam Samet and David T. Biderman, filed concurrently herewith, and the papers and records that are on file in this action, and such other matters and arguments as may be presented to the Court prior to or at the hearing on the motion.

## Memorandum of Points and Authorities

This is an action against Google by two participants in "AdWords," Google's online advertising program. The AdWords program allows advertisers to have ads displayed in response to particular search queries by internet users. A participating advertiser sets a "Daily Budget" to control its costs, which in most cases are determined by the number of users that "click" on its advertisement and are thus linked to that advertiser's designated website or sites. Because internet traffic and query volumes fluctuate significantly, Google's software delivers more clicks on some days to make up for other days when delivery is below the targeted level. In particular, as Google explains when advertisers sign up, the AdWords program may deliver additional clicks and charge advertisers up to 120% of their Daily Budget on a given day to make up for shortfalls.

This "120% Rule" ensures that advertisers' expenses in a given month equal, or nearly equal, their Daily Budget times the number of days in that month, without going over that limit.

In its previous orders on the parties' cross-motions for summary judgment, this Court granted summary judgment for Google on Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. *See* ECF Document No. 193 [Aug. 21, 2007 Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("ECF # 193")] at 16-17, 20; ECF Document No. 223 [May 14, 2008 Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment ("ECF # 223")] at 3-4. The Court also denied summary judgment on Plaintiffs' claims for (1) breach of contract; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq. See* ECF # 193 at 16, 19; ECF # 223 at 3-4, 8, 11. On Plaintiffs' breach of contract claim, this Court held that

> [u]nder the plain language of the AdWords Agreement, Google is not in breach of the "Daily Budget" provision if the following two things are true: (1) in any particular day in which a customer's ad campaign is running, Google charges that customer no more than 120% of his or her "Daily Budget;" and (2) in any particular month in which a customer's ad is running, Google charges a customer no more than his or her "Daily Budget" multiplied by the days in which the ad ran in the month. ***Accordingly, the Court finds that Google's practice of charging customers up to 120% of their "Daily Budget" does not, in and of itself, constitute a breach of the AdWords Agreement.***

ECF # 223 at 8 (emphasis added; footnotes omitted). On the other hand, the Court determined that a breach might exist if advertisers "were charged more than their 'Daily Budget' multiplied by the number of days in which their ad campaigns were running," potentially including customers running "partial month" campaigns and customers who "paused" their campaigns during the month. *See id.* at 15-16.

On Plaintiffs' UCL and FAL claims, this Court found that there were triable issues of fact as to whether a reasonable consumer would have been deceived by Google's use of the term "Daily Budget." *See* ECF # 193 at 19; ECF # 223 at 10-11. In addition to the "partial month"

and "pausing" issues described above, this Court suggested that confusion over the term "Daily Budget" may have injured advertisers who on certain days received more clicks than the targets that their Daily Budgets implied. ECF # 223 at 11, fn.10.

Unlike the potential injury from "partial month" and "pausing" issues, the potential injury from receiving more than the targeted number of clicks on particular days is *not* that advertisers paid more for clicks than they had agreed. *See id.* at 8 (holding that Google's application of the 120% Rule did not violate the AdWords Agreement). Rather, the Court indicated that such an injury might arise if an advertiser lost business opportunities to obtain new customers or retain old ones due to the delivery of clicks in excess of its Daily Budget on certain days. As the Court put it, "the system could result in 'overexposure' on certain days, which could create difficulties in meeting demand and maintaining customer satisfaction." *Id.* at 11, fn.10.

This motion focuses primarily on the purported injury caused by Google's occasional delivery of clicks above Plaintiffs' Daily Budget pursuant to the 120% Rule. As a matter of law, to have standing to assert UCL or FAL claims, a private plaintiff must allege and prove that (1) he suffered an injury in fact; and (2) he lost money or property as a result of the unfair competition or false advertising. Cal. Bus. & Prof. Code §§ 17204, 17535. As to the occasional delivery of clicks above their Daily Budgets, the named Plaintiffs cannot meet this standing requirement. *First*, Plaintiffs have no evidence that receiving more visitors to their websites on certain days caused them to lose any business or caused them any other injury. *Second*, even if Plaintiffs had such evidence, lost business opportunities do not qualify as "lost money or property" within the meaning of the UCL and FAL.

At a minimum, even if Plaintiffs could show an injury in fact and a loss of money or property from an occasional increase of clicks and traffic to their websites, Plaintiffs have no standing to seek restitution of that money or property for the period after they learned that Google delivered clicks and charged advertisers up to 120% of their Daily Budgets on some days. Standing under the UCL and FAL requires a causal nexus between the acts of unfair competition or false advertising and a plaintiff's injury. Once Plaintiffs had the 120% Rule explained to them, any previous confusion was moot and could no longer cause them compensable injury.

Finally, Plaintiffs also cannot maintain any claim that they were injured and lost money or property as a result of running "partial month" campaigns. As discussed below, the evidence is clear and indisputable: neither Plaintiff was ever charged more than its Daily Budget multiplied by the number of days in which its advertising campaign ran in any month. The only claims on which Plaintiffs can conceivably proceed to trial are their "pausing" claims.

## Statement of Facts

### A. The AdWords Program, "Daily Budgets," the "120% Rule," and Pausing

Under the AdWords program, Google posts "sponsored link" ads on its websites or its syndication partner websites. ECF # 193 at 2; ECF # 223 at 2; ECF Document No. 88 [Declaration of Michael Schulman in Support of Motion for Summary Judgment ("Schulman Decl.")], ¶3. When an internet user clicks on a sponsored link, he or she is sent to the website or sites designated by the advertiser that purchased the advertisement. ECF # 193 at 2; ECF # 223 at 2; Schulman Decl., ¶ 5. Google generally charges advertisers based on the number of times their ads are clicked on by users, using a methodology called cost-per-click ("CPC"). Schulman Decl., ¶5.

In creating their AdWords campaigns, advertisers set a Daily Budget. ECF # 193 at 2-3; ECF # 223 at 3; Schulman Decl., ¶ 9. Through their Daily Budget, advertisers can control the charges they incur over the course of a month. ECF # 193 at 2-3; ECF # 223 at 3; Schulman Decl., ¶ 9; ECF Document No. 90 [Declaration of M. Christopher Jhang in Support of First Motion for Summary Judgment ("Jhang Decl.")], Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489).

The number of clicks that an advertiser receives for a campaign can vary from day to day depending on the usage patterns of internet users. Schulman Decl., ¶ 7. To account for this fluctuation, and to make up for days when the number of clicks delivered is below the targeted amount and advertisers accordingly are charged less than their Daily Budget, the AdWords program may deliver more clicks and charge advertisers up to 120% of their Daily Budget on other days in the same month. ECF # 193 at 4, 6-7; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489); ECF Document No. 206-12, Ex. F [Deposition of

Heather Wilburn ("Wilburn Depo.")] at 67:22-68:20. Over the course of a month, this "120% Rule" is designed to make an advertiser's charges equal or come as close as possible to its Daily Budget times the number of days in that month—but never exceed that amount. ECF # 193 at 4; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489); Wilburn Depo. at 67:22-68:20. If an advertiser's daily charges ever exceed 120% of its Daily Budget or its monthly charges exceed its Daily Budget times the number of days in that month, Google provides the advertiser an "overdelivery credit." ECF #193 at 3; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489).

At all times, an AdWords advertiser has the option of "pausing" its campaign to stop its ads from being displayed. ECF # 193 at 3, 7; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 261 of 489). No charges accrue to an advertiser when its campaign is paused. ECF # 193 at 7; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 261 of 489). Advertisers may "un-pause" their campaigns when and if they wish to resume delivery of clicks. Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 261 of 489).

**B.     Plaintiffs' Advertising Campaigns**

Plaintiff CLRB Hanson Industries, LLC is an industrial printing business that began running campaigns with Google's AdWords program in July 2002. ECF # 223 at 2; Declaration of David T. Biderman in Support of Google Inc.'s Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims ("Biderman Decl."), ¶2, Ex. A [Deposition of CLRB Hanson representative Brett R. Hanson ("Hanson Depo.")] at 20:10-15. Plaintiff Howard Stern runs a homework-solving business called "homeworksolver.net" and began running AdWords campaigns in October 2003. *See* ECF # 223 at 2; Biderman Decl., ¶3, Ex. B [Deposition of Howard Stern ("Stern Depo.")] at 20:10-17.

Plaintiffs were sometimes charged more than 100% of their Daily Budgets on particular days, but only when Google delivered additional clicks to offset shortfalls occurring during the same month. Declaration of Adam Samet in Support of Google Inc.'s Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims ("Samet Decl."), ¶ 11. Consistent with Google's policy, neither Plaintiff was ever charged more than 120% of its

Daily Budget on a given day. *Id.* Moreover, Plaintiffs' monthly charges never exceeded their Daily Budgets multiplied by the number of days in each month. *Id.* When either Plaintiff canceled an advertising campaign after only part of a month, Google did not charge that Plaintiff more than its Daily Budget times the number of days that its campaign was running in that month. *Id.*

Both Plaintiffs testified that they paused their AdWords campaigns when they did not want to receive clicks. Hanson Depo. at 72:18-25, 82:5-13; Stern Depo. at 75:19-76:11. Brett Hanson, the representative of CLRB Hanson, paused CLRB Hanson's advertising campaigns when there was "[l]ack of capacity within the plant" to take on additional work. Hanson Depo. at 72:18-25. Hanson also paused the campaigns when CLRB Hanson "met [its] targeted return on investment at that point and there [was] no need to continue expending money" on clicks. *Id.* Hanson paused CLRB Hanson's campaigns on weekends as well. *Id.* at 82:5-13. For his part, Plaintiff Stern testified that he paused his campaigns "on the weekends because I don't think people are going to be responding, and I'm not available to work on these problems on the weekends" and when he was "out of [his] home on vacation." Stern Depo. at 75:19-76:11.

Both Plaintiffs sent emails to Google complaining about being charged more than their Daily Budget on certain days. Hanson Depo. at 132:19-134:4, 137:23-138:20, 174:3-17; Stern Depo. at 99:17-24, 104:2-16. In both cases, Google employees responded to these emails by explaining the 120% Rule. Hanson Depo. at 135:20-137:15, 169:16-170:15, 177:19-178:9; Stern Depo. at 99:17-100:15, 104:2-105:24. Specifically, Google informed Brett Hanson in March 2005 of its practice of sometimes charging advertisers up to 120% of their Daily Budget. Hanson Depo. at 135:20-137:15, 169:16-170:15, 177:19-178:9. Google explained to Hanson: "In general, we try to keep your daily cost fluctuation to no more than 20 percent above your daily budget. And we make sure that within the 30-day billing period you are never charged more than the number of days in that billing period times your daily budget." *Id.* at 135:20-136:6. Google likewise informed Stern in October 2003—the same month he began running AdWords campaigns—that he might accrue charges up to 120% of his Daily Budget on any given day. Stern Depo. at 99:17-100:15, 104:2-105:24. Google told Stern that "[i]n general, we try to keep

your daily cost fluctuation to no more than 20 percent above your daily budget" [*id.* at 105:11-24], but "[a]s traffic is never constant from day to day, it is possible that you may accrue charges above or below your set limit" [*id.* at 99:17-100:15], and that Google's "system makes sure that in a given billing period, you are never charged more than the number of days in that month multiplied by your daily budget" *Id.*

Both Plaintiffs have continued to participate in the AdWords program after Google explained the 120% Rule to them. Hanson Depo., at 62:22-63:4, 81:20-83:5, 99:6-17, 121:7-13, 185:8-17; Stern Depo. at 101:4-9.

## Argument

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, Plaintiffs bear the burden of proof to establish their standing to bring UCL and FAL claims. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1554, fn.18 (9th Cir. 1990) ("For all standing questions, the burden of proof is on the plaintiff"). As shown below, neither named Plaintiff has standing to complain about Google's 120% Rule or treatment of "partial month" campaigns because there is no evidence that either suffered an injury in fact and no evidence that either lost money or property as a result.

### I. PLAINTIFFS HAVE NO STANDING TO SEEK RESTITUTION FOR INJURY DUE TO GOOGLE'S OCCASIONAL DELIVERY OF ADDITIONAL CLICKS UNDER THE 120% RULE

Following the California electorate's 2004 passage of Proposition 64, a private plaintiff has standing to assert UCL or FAL claims only if he or she "has suffered injury in fact and has lost money or property as a result of [the unlawful acts of unfair competition or false advertising]." Cal. Bus. & Prof. Code §§ 17204, 17535; *see also Peterson*, 164 Cal. App. 4th at

1590; *Chavez v. Blue Sky Natural Beverage Co.*, 503 F. Supp. 2d 1370, 1373 (N.D. Cal. 2007).[1] Courts have construed the prerequisites of an "injury in fact" and "lost money or property" as meaning that "[a] private plaintiff must make a twofold showing." *Peterson*, 164 Cal. App. 4th at 1590; *see also Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1098 (2007) (similar).

As shown below, Plaintiffs' complaint about Google's 120% Rule fails both parts of the UCL and FAL standing requirement.

### A. Plaintiffs Have No Evidence that They Suffered an Injury in Fact Due to Being Charged up to 120% of their Daily Budget on Certain Days

California courts have defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized …; and (b) actual or imminent, not conjectural or hypothetical." *Peterson*, 164 Cal. App. 4th at 1590 (internal quotations omitted).[2] An injury in fact must be "distinct and palpable." *Id.* Further, it must entail an economic loss. *See Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008).

Plaintiffs cannot satisfy the injury in fact requirement by merely contending that they would not have paid to participate in the AdWords program but for their alleged confusion over the term "Daily Budget." Courts rejected the same type of argument in *Peterson* and *Chavez*.

In *Peterson*, the plaintiffs alleged that the defendant violated the UCL by selling insurance for cell phones despite having no license to do so. 164 Cal. App. 4th at 1586. The plaintiffs contended that they would not have purchased the insurance if they had known about the defendant's lack of a license, but they did not allege that "they paid more for the insurance due to defendant's collecting a commission" or that "they could have bought the same insurance for a

---

[1] This standing requirement applies regardless of whether the UCL or FAL claims are brought in an individual or representative capacity. *See* Cal. Bus. & Prof. Code §§ 17203, 17535; *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008).

[2] Federal courts apply the same definition of an "injury in fact" in determining whether a party has established Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535 (Historical and Statutory Notes) ("It is the intent of the California voters in enacting [Proposition 64] to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact **under the standing requirements of the United States Constitution**.") (emphasis added).

lower price." *Id.* at 1586, 1591. "Absent such an allegation," the Court of Appeal held, the "plaintiffs have not shown they suffered actual economic injury. ***Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price.***" *Id.* at 1591 (emphasis added). Because the plaintiffs failed to allege facts showing an injury in fact, the court sustained the defendant's demurrer based on lack of standing. *Id.* at 1593.

In *Chavez*, plaintiff alleged that the defendant, a beverage company, falsely represented that some of its beverages were manufactured in New Mexico. 503 F. Supp. 2d at 1371-72. The plaintiff, a New Mexico native, contended that he would not have purchased the defendant's beverages if he had known they had been manufactured outside the state. *Id.* at 1372. But as the court reasoned, the "[p]laintiff did not pay a premium for [the d]efendants' beverages because the drinks purportedly originated in Santa Fe, New Mexico." *Id.* at 1374. Because the plaintiff had sustained no injury as a result of the alleged misrepresentation, the UCL and FAL claims had to be dismissed for lack of standing. *Id.*

In this case, the Court has recognized that "Google's practice of charging customers up to 120% of their 'Daily Budget' does not, in and of itself, constitute a breach of the AdWords Agreement." ECF # 223 at 8. To the contrary, because the 120% Rule merely makes up for days when an advertiser did not meet its Daily Budget, the rule does not cause an advertiser's monthly charges to exceed the amount it agreed to pay per month. *Id.*; *see also* Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489). In fact, over the course of a month, Google never charged either Plaintiff more than its Daily Budget times the number of days in that month. Samet Decl. ¶ 11. Moreover, Plaintiffs do not contend that they paid a premium for any click or that they paid for any click that Google did not actually supply. Thus, as was the case in *Peterson* and *Chavez*, Plaintiffs received the "benefit of their bargain" under the AdWords Agreement. Plaintiffs' injury in fact must therefore be something ***other than*** the charges Plaintiffs incurred that on some days totaled up to 120% of their Daily Budgets. Instead,

Plaintiffs must show how increased traffic to their websites from the additional clicks on those days caused them to suffer distinct economic injury.[3]

Plaintiffs' own testimony belies any argument that they lost business or suffered any other injury from occasionally receiving more clicks than targeted by their Daily Budgets. CLRB Hanson paused its advertising campaigns when its plant was at capacity, when it had achieved its targeted return on investment and did not wish to pay for additional clicks, and on weekends. Hanson Depo. at 72:18-25; 82:5-13. Plaintiff Stern paused his campaigns on weekends and during vacations because he was unavailable to speak with potential clients at these times. Stern Depo. at 75:19-76:11. Thus, the only times when Plaintiffs might have conceivably lost business due to increased traffic to their websites were the times when Plaintiffs, by their own admission, paused their campaigns so that Google would supply no clicks. The delivery of clicks above their Daily Budgets could only have occurred at times when Plaintiffs *were* available to interact with customers and handle more work.[4]

Because Plaintiffs have no evidence that they suffered an injury in fact due to receiving more clicks on certain days, they lack standing to bring any claim based on the 120% Rule as a matter of law.

---

[3] Notably, Plaintiffs' counsel previously admitted at oral argument that an advertiser's payment for extra clicks under the 120% Rule does not actually injure that advertiser. *See* ECF Document No. 191 [Transcript of June 21, 2007 Hearing] at 43:22-44:8 ("THE COURT: What do you make of the 20 percent overage at all? What, what accounting do you think that, that should have in, in the, in the billing? MR. LEVY: It works if you don't pause your ad. If you run your ad for the 30 days. And, and they charge you, 20 percent more in any given day. *At the end of that month you're not hurt because the most they'll charge you is the 30 days times your daily budget.* So you haven't been charged for that extra 20 percent.") (emphasis added).

[4] In an October 2003 email to Google, Plaintiff Stern offered a conclusory assertion that "[t]he extra traffic I might get from spending more than [a Daily Budget of $10] results in not being able to meet the extra demand." ECF Document No. 81-5. Neither Plaintiff, however, has "set out specific facts," supported by admissible evidence, to show that its business was unable to meet customer demand on any day when Google delivered clicks in excess of their Daily Budgets. Fed. R. Civ. P. 56(e)(2); *see also Kung v. FOM Inv. Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977) (stating that "[c]onclusory allegations, unsupported by factual data" are insufficient to avoid summary judgment).

## B. As a Matter of Law, Lost Business Opportunities Do Not Constitute "Lost Money or Property" as Required by the UCL and FAL

Under the UCL and FAL, a showing of "lost money or property" requires that a private plaintiff establish that he or she had "either prior possession or a vested legal interest in the money or property allegedly lost." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("[R]estitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest."). Critically, a mere "'expectancy' or contingent interest is *not* a 'vested interest' for purposes of the UCL." *Walker*, 474 F. Supp. 2d at 1173 (citing *Korea Supply*, 29 Cal. 4th at 1149, 131 Cal. Rptr. 2d at 42) (emphasis added). This is because the only monetary relief available to private plaintiffs under the UCL or FAL is *restitution*; compensatory damages are *not* available. *See, e.g., Korea Supply*, 29 Cal. 4th at 1144 ("A UCL action is equitable in nature; damages cannot be recovered."); *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976) ("Plaintiff's cause of action to recover damages for false or misleading statements [under the FAL] was ... properly dismissed. The applicable statutes do not authorize recovery of damages by private individuals."). "Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the requirement [of a loss of money or property] is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817 (2007).

In *Walker v. USAA*, for example, the plaintiff, an auto repair shop, made the defendant, an insurance company, sign estimates it had prepared for proposed body repair work. 474 F. Supp. 2d at 1170. During subsequent negotiations, the insurance company refused to pay the charges listed in the estimates, and the repair shop agreed to do the repair work for less than stated in the estimates. *Id.* at 1170-71. The court dismissed the plaintiff's UCL claim against the insurance company for lack of standing, after determining that the repair shop had no vested legal interest in any money or property allegedly lost. *Id.* at 1173. Because the estimates were not binding, "any interest Plaintiff may have as a result of preparing an estimate is not a vested interest for purposes

GOOGLE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLFS' "120% RULE" AND            -11-            CASE NO. C 05-03649 JW
"PARTIAL MONTH" CLAIMS

of the UCL." *Id.* Moreover, the repair shop was seeking to recover for ***proposed*** work, not actual work performed that entitled it to payment. *Id.*

The same is true here. Plaintiffs cannot point to a single customer with whom they had a binding contract and whom they then lost as a result of their participation in the AdWords program. Nor do Plaintiffs claim that they performed actual work for customers, but were not paid as a result of the AdWords program. Instead, Plaintiffs' interest in business opportunities and profits from clicks relies on ***potential*** customers who, after visiting Plaintiffs' websites, contact Plaintiffs and decide to purchase Plaintiffs' services. But an interest "dependent upon an uncertain future event" is "contingent," not vested. *See Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003) (distinguishing "contingent" and "vested" interests under California law). Lost profits sometimes can be recovered as compensatory damages, but that relief is not available under the limited restitution remedy that the UCL and FAL provide. *See id.* at 1080-82 (granting summary judgment on UCL claim for defendants on damages where plaintiffs' "experts estimated Plaintiffs' lost profits" and plaintiffs "essentially [sought] to recover expectation damages"); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994) ("Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims. [This] claim for monetary relief is accordingly barred by the rule limiting recovery under [the UCL] to restitution and injunctive relief.") (citation omitted). Accordingly, even if Plaintiffs had evidence to show that Google's occasional delivery of up to 20% more clicks than their Daily Budgets implied caused them to lose potential business (which they do not), Plaintiffs still suffered no cognizable loss of money or property because they had no legal vested interest in lost business opportunities.

Plaintiffs' payment to participate in the AdWords program does not constitute a loss of money or property within the meaning of the UCL or FAL, either. As the court in *Peterson* explained, a loss of money or property does not occur for "every purchase or transaction where a person pays with money." 164 Cal. App. 4th at 1592. To the contrary, where a person receives something of comparable value in exchange for his money, he suffers no loss. *Id.* Here, although Plaintiffs paid to participate in the AdWords program, they received clicks in return. As set forth

above, Plaintiffs have no evidence showing that the clicks allegedly delivered over their Daily Budget had less value than the clicks fitting within that budget. In fact, Plaintiffs' testimony that they paused their ads campaigns when they were unavailable to interact with potential customers or to take on additional work contradicts any such notion.

## II. AT MINIMUM, PLAINTIFFS SUFFERED NO INJURY AFTER THEY KNEW THAT GOOGLE WOULD CHARGE THEM UP TO 120% OF THEIR DAILY BUDGET ON CERTAIN DAYS

As noted above, standing under the UCL and FAL requires an injury in fact and loss of money or property "*as a result*" of the acts of unfair competition or false advertising. Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added). Thus, to establish UCL standing, "there must be a causal connection between the harm suffered and the unlawful business activity." *Daro*, 151 Cal. App. 4th at 1099; *see also Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82, 89 (D. Mass. 2006) (holding that the UCL requires a showing of "loss causation").

The court's analysis in *Buckland* is instructive. The plaintiff purchased the defendant's skin cream suspecting that the cream contained a misbranded or mislabeled drug. 155 Cal. App. 4th at 804-05, 807. In fact, the plaintiff only purchased the cream in order to create standing to bring suit. *Id.* The claim failed, however, because the court held that she lacked standing to bring UCL or FAL claims. *See id.* at 814-19. Because the plaintiff suspected, at the time of her purchase, that that defendant's cream had been misbranded and mislabeled, she could not show that she suffered an injury in fact or loss of money or property *as a result* of unfair competition or false advertising. *Id.*; *see also Brown*, 457 F. Supp. 2d at 89 (granting summary judgment for defendants on UCL claim where proposed class representatives could not establish that defective fee notices posted on automatic teller machines (ATMs) caused them to suffer any injury; in addition to the posted fee notices, "each ATM [had been] equipped with a 'click-through' screen that notifie[d] the user that he or she [would] be charged a fee and require[d] that the user consent before the transaction will proceed ... [thus] ensur[ing] that every class member knows about the fee before it is assessed.").

In this case, there is no dispute that at some point after Plaintiffs signed up for the AdWords program, Google employees informed Plaintiffs, through direct email communication,

GOOGLE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLFS' "120% RULE" AND                -13-                CASE NO. C 05-03649 JW
"PARTIAL MONTH" CLAIMS

that Google may charge them up to 120% of their Daily Budget on any given day. Hanson Depo. at 135:20-137:15, 169:16-170:15, 177:19-178:9; Stern Depo. at 99:17-100:15, 104:2-105:24. Both Plaintiffs received personal attention from Google on this issue because of their complaints about being charged more than their Daily Budget. Hanson Depo. at 132:19-134:4, 137:23-138:20, 174:3-17; Stern Depo. at 99:17-24, 104:2-16. Google informed CLRB Hanson in March 2005, at the latest, of its practice of sometimes charging advertisers up to 120% of their Daily Budget. Hanson Depo. at 135:20-137:15, 169:16-170:15, 177:19-178:9. As for Stern, Google informed him about the 120% Rule in October 2003, the very same month he began participating in the AdWords program. Stern Depo. at 99:17-100:15, 104:2-105:24. Nevertheless, both Plaintiffs continued to use the AdWords program thereafter. Hanson Depo. at 62:22-63:4, 81:20-83:5, 99:6-17, 121:7-13, 185:8-17; Stern Depo. at 101:4-9.

To the extent that Plaintiffs paid up to 120% of their Daily Budget *after* they had been directly informed of and knew about Google's 120% Rule, Google could not have obtained such payments as the result of unfair competition or false advertising. After March 2005 for CLRB Hanson and October 2003 for Stern, Plaintiffs undeniably realized that Google could and would charge them 120% of their Daily Budget on certain days. At a minimum, then, Plaintiffs lack standing to seek restitution of any payments made pursuant to the 120% Rule after they admittedly learned of that rule. *See* Cal. Bus. & Prof. Code §§ 17204, 17535.[5]

### III. PLAINTIFFS HAVE NO EVIDENCE TO SUPPORT ANY CLAIM THAT GOOGLE OVERCHARGED THEM FOR "PARTIAL MONTH" CAMPAIGNS

Under the Court's earlier rulings, the Plaintiffs might have a triable breach of contract claim if they ran a campaign for only part of a month and Google charged them more than their Daily Budget multiplied by the number of days in which their campaign ran during the month.

---

[5] Google continues to contend that Plaintiffs were on notice of the 120% Rule from the very beginning of their relationship with the AdWords program. The Court need not go that far, however, to grant the relief requested in this motion.

*See* ECF # 193 at 15-16; ECF # 223 at 8. It is not clear whether Plaintiffs are still pursuing such "partial month" claims. Even if they do, however, Google is entitled to summary judgment.

Even when Plaintiffs discontinued advertising campaigns after a partial month, Google never charged either Plaintiff more than their Daily Budget multiplied by the number of days that the campaign ran during that month. Samet Decl. ¶ 11. Under the Court's previous rulings, Google cannot be liable for breach of contract. And under the law discussed above, Plaintiffs' statutory claims must fail because they cannot show any injury or loss of money or property. If Plaintiffs have any triable claim, it must be limited to their "paused" campaigns.

## Conclusion

Plaintiffs have no evidence showing that the increased internet traffic they received from Google's occasional delivery of clicks above the target set by their Daily Budget caused them to suffer an injury in fact or resulted in the loss of money or property. Plaintiffs therefore have no standing under the UCL or FAL to seek restitution based on Google's application of the 120% Rule, and that portion of their claims should be dismissed. At minimum, the Court should hold that Plaintiffs suffered no injury in fact or loss of money or property as the result of the 120% Rule after they knew about that rule. At the latest, CLRB gained such knowledge in March 2005, while Stern gained such knowledge in October 2003. Finally, the Court should dismiss any "partial month" claims that Plaintiffs continue to press because there is no evidence that Google ever charged either Plaintiff more than its Daily Budget times the number of days in the month that its advertising campaign ran.

DATED: September 5, 2008

PERKINS COIE LLP

By: _____/S/_____
David T. Biderman

Attorneys for Defendant Google Inc.