1    COUNSEL LISTED ON SIGNATURE PAGES

2

3

4

5

6

7              **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9                  **SAN JOSE DIVISION**

10

11                                          )    Case No. C 05-01114
                                             )    MDL No. 1665
12   In re:                                  )
                                             )
13   ACACIA MEDIA TECHNOLOGIES               )    **JOINT STIPULATION AND CASE**
     CORPORATION                             )    **MANAGEMENT STATEMENT**
                                             )
14                                           )    **DATE:  May 6, 2008**
                                             )    **TIME:  10:00 am**
15                                           )    **CTRM: Hon. James Ware**
                                             )
16                                           )
                                             )
17                                           )
                                             )
18   _____ )

19

20

21

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

## I.    JOINT INTRODUCTORY STATEMENT

Pursuant to the Court's March 12, 2008 Order Following Case Management Conference, which adopted the schedule proposed by Acacia, the Internet Defendants, and the Cable Defendants in the February 29, 2008 Joint Case Management Statement, the parties hereby submit this Joint Stipulation.

Through the exchange of the lists of defendants' proposed Section 112 motions, the lists of proposed motions to which Acacia opposes and does not oppose, and the lists of motions which defendants intend to make, it has become clear that the parties disagree as to the status of this matter and the procedures that should be followed in the future.

Accordingly, this Joint Stipulation is divided into two parts. The first part is submitted by Acacia only and sets forth Acacia's position. The second part is submitted by the defendants only and sets forth the position of all defendants.

## II.    ACACIA'S POSITION

Acacia has now stipulated to the invalidity of <u>all</u> of the patent claims at issue in this action as a result of and based only upon this Court's claim construction Orders. Judgment should be entered without delay in defendants' favor. Nonetheless, defendants now propose to file additional summary judgment motions on alternative invalidity theories. Not only is there no case or controversy relating to these alternative theories, but defendants' proposal would condemn the parties and Court to needlessly expend substantial time and expense to determine them. Even then, as a result of material factual disputes, the entry of summary judgment is at best unlikely and will only serve to delay the appeal of this matter.

Accordingly, the Court should enter summary judgment (on a motion to be brought by Acacia or on its own motion) that all of the asserted claims are invalid (for the reasons stated in Acacia's stipulation) and that the Court should dismiss defendants' counterclaims without prejudice. This judgment would be a final judgment, which Acacia could then appeal to the Federal Circuit without delay. No certification of any issue by this Court will be necessary.

Hennigan, Bennett & Dorman llp
LAWYERS
LOS ANGELES, CALIFORNIA

## A.       Factual Events Leading to this Joint Stipulation

In its March 12, 2008 Order, the Court adopted the schedule proposed by Acacia, the Internet Defendants, and the Cable Defendants whereby: (1) defendants would provide Acacia with a list of Section 112 motions that they would propose to make in this phase of the case; (2) Acacia would identify which of those proposed motions it would not oppose (and therefore agree to stipulate to invalidity); and (3) depending upon which motions Acacia would not oppose and the claims to which Acacia would stipulate as being invalid, defendants would identify which of its previously-identified Section 112 motions it would proceed to make (presumably withdrawing motions if the stipulations rendered moot any alternative grounds of invalidity).

At the Case Management Conference, Acacia made clear that, through this process of identifying motions and non-opposition by Acacia, this case could be in a position for entry of a final judgment and subsequent appeal, ***without any further motions for the Court to consider***:

> Mr. Dorman:          Speaking for myself only, I'm personally hopeful that we are going to be able to stipulate to enough that there may be no summary judgment motions before you.  That we're clearly going to get to, I believe, a circumstance where, where there's a complete final judgment.
>
> We may require certification, which under this circumstance, I think, would be absolutely appropriate in light of your MDL duties, but my own suspicion is that this entire case is going to be resolved subject to appeal just by this process that we're doing.  That's my view.

 (See, March 7, 2008 Transcript, 58:10-21; Exhibit 1, hereto).

On March 28, 2008, defendants provided Acacia with two separate lists of proposed motions.  The EchoStar defendants acting by themselves identified seven proposed motions (some with multiple subparts).  (Exhibit 2, hereto).  The remaining defendants identified thirty-five proposed motions, some of which also had multiple subparts (Exhibit 3 hereto).[1]

Acacia considered defendants' proposed lists of motions and, on April 4, 2008, responded by

---

[1] For example, proposed motion no. 14 has eight subparts seeking judgment that each asserted claim is invalid, because there is no written description or enablement for each element of the transmission system (i.e., there is no disclosure of an element capable of performing the functions described in the specification for that element).  (Exhibit 3, at 3-4).  Similarly, proposed motion no. 15 has seven subparts for the same issues with respect to the receiving system.  (Exhibit 3, at 4-5).

identifying nine motions which it would not oppose-two proposed motions from the EchoStar list and seven proposed motions from the other defendants' list (subject to Acacia's objections and its rights on appeal). (Exhibit 4, hereto). As a result of Acacia's non-opposition to these motions, all of the presently asserted patent claims against all defendants are rendered invalid for the reasons identified in defendants' proposed motions (which are based upon the Court's claims construction rulings), and, consistent with Acacia's statement of non-opposition, Acacia prepared and served a stipulation to this effect.[2] (Exhibit 5, hereto). This stipulation sets forth the claims and invalidity grounds to which Acacia has stipulated and states that, as a result, every asserted claim is invalid (subject to Acacia's objections and rights on appeal). *Id.* As to the remainder of the EchoStar defendants' five proposed motions and the other defendants' twenty-eight proposed motions, Acacia stated that it would oppose those motions if filed. (Exhibit 4, at 3).

Acacia advised defendants that, consistent with its representations to the Court at the Case Management Conference,[3] Acacia is prepared to enter into a stipulated summary judgment that each asserted claim is invalid, which can be entered by the Court as a final, appealable judgment. (Exhibit 4, at 2). Acacia also explained that, if defendants would not so stipulate, Acacia would bring its own motion for summary judgment requesting that the patent claims be held invalid for the reasons set forth in its stipulation.

The defendants refused Acacia's offer. The EchoStar defendants (now joined by DIRECTV) responded to Acacia by stating that they intend to file all six of their proposed motions opposed by Acacia. (Exhibit 6, hereto). The other defendants responded by stating that they intend to bring four

---

[2] Defendants complain that Acacia has not provided the Internet Defendants with a covenant not to sue as to Claims 1-18 of the '992 patent (See, Jt. Stip., at 21, fn. 27). Acacia has withdrawn those claims, as it informed the Court in its Opposition to the Internet Defendants' Motion for Summary Judgment re '702 Patent filed on October 19, 2004, and provided a covenant not to sue: "Since this past summer, Acacia has withdrawn claims 1-18 of the '992 patent from this case **and will not assert them against any defendant for any past, present, or future act**. (Fact 27, Defendants' Statement of Uncontroverted Facts; Dorman Decl. ¶ 7)." (Opposition, at 17:15-18; emphasis added).

[3] *See, e.g.,* March 7, 2008 Transcript, at 59:4-11; Exhibit 1.

"broadly-stated" motions and intend to bring additional motions (which Acacia opposes) on all claim terms which the Court identified as "arguably indefinite." (Exhibit 7, at 1-2 and n. 1). On April 14, 2008, Acacia informed defendants that there is no agreement as to how to proceed in this phase of the case, and therefore Acacia intends to provide the Court with Acacia's portion of the Joint Stipulation separately from that of the defendants. (Exhibit 8, hereto).

Although these defendants have attempted to re-package their motions to make it appear that they are not filing on all of the issues initially identified by them,[4] they clearly state that each of the issues raised in the twenty-eight proposed motions identified in their original letter will be included.[5] *Id.*

**B.    Acacia's Proposal Will Result in a Final, Appealable Judgment Requiring No Certification by the Court**

**1.    The Court Should Immediately Enter Summary Judgment of Invalidity and Should Dismiss Without Prejudice All of Defendants' Declaratory Judgment Counterclaims**

As a consequence of this Court's claim construction, Acacia agreed that it would not oppose nine (9) of defendants' proposed motions for summary judgment of invalidity and served a stipulation to that effect. As a result, there is no dispute that all of the patent claims are invalid for purposes of this litigation and, as a matter of law, cannot be infringed. Notwithstanding Acacia's admission of invalidity, defendants refuse to agree to the entry of judgment, insisting instead that they be allowed to protract this matter by filing motions for summary judgment on numerous alternative and disputed grounds also relating to invalidity. As there is no longer a case or controversy regarding invalidity, and to avoid the needless expenditure of time and expense, Acacia

---

[4] Defendants' re-packaging is contrary to the parties' schedule which the Court adopted. According to that schedule, defendants were to identify "which of its previously-identified § 112 motions it will proceed to make." (D.I. 267, at 3:1-4).

[5] In their portion of this Joint Stipulation, defendants contend that they have narrowed their lists of proposed motions. (See, Jt. Stip., at 28:6-7). The only narrowing by defendants was to remove from their lists the motions to which Acacia agreed to stipulate. The non-Satellite Defendants' letter specifically stated that their motions "will address all of the particular grounds itemized in [Mr. Benyacar's] March 28 letter that were not included in Acacia's stipulation." (Exhibit 7, at 1, n. 1). This is hardly narrowing.

will bring a motion for summary judgment on Acacia's claims and defendants' counterclaims asking the Court to adjudicate that all of the asserted claims are invalid as being indefinite, based on Acacia's stipulation, and, on that basis, asking the Court to dismiss without prejudice all of defendants' declaratory judgment counterclaims.[6] (See, Exhibit 4, at 2).

Such a stipulation will be a final judgment, as it will adjudicate all claims in the case. No certification by the Court under Rule 54(b) will be required. This is the most efficient manner for the Court to bring this case to a conclusion and to permit the Federal Circuit to consider Acacia's appeal.

Acacia's proposal to enter judgment of invalidity of all asserted and dismissal of all counterclaims without prejudice is legally correct and Federal Circuit-approved. According to the Federal Circuit, this Court has the power to dismiss, without prejudice, defendants' declaratory judgment counterclaims, including their non-infringement and unenforceability counterclaims (regardless of whether the claim is moot):[7]

> Second, the district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement. "We have previously held that a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement." *Phonometrics, Inc. v. N. Telecom Inc*., 133 F.3d 1459, 1468 (Fed. Cir. 1998). (citing *Nestier Corp. v. Menasha Corp.-Lewisystems Div*., 739 F.2d 1576, 1580-81 (Fed. Cir. 1984)). We note that the Supreme Court's decision in *Cardinal Chemical Co. v. Morton International, Inc.,* 508 U.S. 83, 124 L. Ed. 2d 1, 113 S. Ct. 1967 (1993), which prohibits us, as an intermediate court,

---

[6] The Court itself stated at the Case Management Conference that a motion that permits the Court to find that it has adjudicated the case on its merits would have "a great deal of value." (March 7, 2008 Transcript, at 56:11-18; Exhibit 1).

[7] The Court should be aware that there is only one counterclaim (called the Eighth Counterclaim), brought by some of the Internet defendants, which is not a declaratory judgment counterclaim related to patent invalidity, non-infringement, or unenforceability. The Eighth Counterclaim is for unfair trade practices (the Court may recall that it denied Acacia's motion to dismiss this claim, although the Court did dismiss the Ninth Counterclaim for abuse of process.) Acacia has asked the Internet defendants to stipulate to dismissal without prejudice of this claim to permit these MDL proceedings to be appealed. If the Internet defendants do not agree to such a stipulation, then Acacia shall also ask the Court in its motion for summary judgment to dismiss this counterclaim without prejudice.

from vacating a judgment of invalidity when we conclude that a patent is not infringed, does not preclude the discretionary action of a district court, in an appropriate case, in dismissing an invalidity counterclaim without prejudice when it concludes a patent is not infringed.

*See, Nystrom v. Trex Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003).[8]

Dismissing defendants' counterclaims without prejudice is the most efficient procedure for obtaining a final, appealable judgment without certification, especially in this MDL proceeding involving numerous defendants. In *Nystrom*, a judgment of non-infringement of all claims and invalidity of three of the asserted twenty claims was held to be non-appealable, because the district court had stayed the defendants' counterclaims for invalidity of the remaining claims and for unenforceability. *Nystrom*, 339 F.3d at 1349. The presence of these counterclaims meant that the judgment was not final. *Id.*

The Federal Circuit set forth the four options that were available to the district court in order to produce a final judgment where there are unresolved counterclaims:

1. The court could have proceeded to trial on the invalidity and unenforceability counterclaims or otherwise disposed of the issue on the merits.[9] *Id.*, at 1350;

---

[8] *See also, Z Trim Holdings, Inc. v. Fibergel Technologies, Inc.*, 2008 U.S. Dist. LEXIS 6086, *19 (D. Wis. 2008) ("For the same reason, defendant's counterclaims of invalidity and unenforceability must be dismissed. This court loses jurisdiction over these counterclaims once there is no longer an ongoing 'case or controversy.' [citations omitted]. The only "case or controversy" asserted by defendant is plaintiff's claim of patent infringement, which has been resolved."); *Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 458-459 (E.D. Va. 2002) ("The court exercises its discretion to grant Digital Privacy's motion for dismissal of the invalidity counterclaims as moot. 'Where, as here, noninfringement is clear and invalidity is not plainly evident, it is appropriate to treat only the infringement issue.' *Leesona Corp. v. United States*, 208 Ct. Cl. 871, 530 F.2d 896, 906 n.9 (Ct. Cl. 1976) (quoted by *Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998))"); *Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1362 (Fed. Cir. 2003).

[9] Defendants contend that *Nystrom* supports their contention that the Court could proceed with defendants' counterclaims for invalidity, infringement and unenforceability even though all of the asserted claims are invalid. (Jt. Stip., at 23:5-9). The facts of *Nystrom*, however, are different than those of this case. In *Nystrom*, the court held that all of the asserted claims were not infringed and some, but not all, of the claims were invalid. As discussed *supra* (Jt. Stip., at 13:4-7), a finding of infringement may not deprive the court of jurisdiction of invalidity because of public policy considerations applicable only to invalidity. Those policy considerations do not apply when the claims are invalid and the issue is infringement, i.e., infringement is mooted by invalidity, as defendants themselves told the Court, (Response to Satellite Statement, at 4:17-5:6, D.I., 269, quoted at 12:5-12). Additionally, and most applicable to the present issue, the Federal Circuit did not hold that the parties could proceed further on any *alternative ground of non-infringement* (there

6

2. As discussed above, the court could have dismissed the counterclaims without prejudice and entered judgment on the adjudicated claims; *Id.,* at 1351;

3. The court could have certified an appeal on fewer than all of the claims under Rule 54(b). *Id.*; or

4. The court have entered an immediately appealable interlocutory judgment under 28 U.S.C. § 1292(b).

*Nystrom*, 339 F.3d at 1350-51. Acacia proposes that the Court follow the second option set forth in *Nystrom* (quoted above). Here, defendants have pending counterclaims for non-infringement and unenforceability, which the Court can and should dismiss without prejudice so that the invalidity issue adjudicated by the Court can be appealed.

Defendants contend that Acacia's "approach is inefficient because it increases the potential for further proceedings in this Court and the need for serial appeals." (Jt. Stip., at 24:9-11). In *Nystrom,* the Federal Circuit stated that "piecemeal litigation is strictly precluded by the rule of finality for patent cases as it is for any other case," but the court nevertheless approved of the procedures proposed by Acacia here. *Nystrom*, 339 F.3d at 1350-51. Such procedures therefore do not result in piecemeal litigation, as defendants contend.[10], [11]

---

already being a finding of non-infringement of all claims).

[10] In *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005), the court dismissed as moot alternative grounds of invalidity and the parties appealed on only one ground of invalidity. The court reversed on that invalidity ground and thus remanded to the district court for further proceedings on the other invalidity grounds. *Invitrogen*, 424 F.3d at 1384 ("Finally, Stratagene asks this court to consider its affirmative defenses of enablement, anticipation, and obviousness, as alternate grounds for invalidity. Final judgment by the district court included an order that invalidated the '797 patent based on public use under § 102(b), and on no other ground. The district court declared moot the other invalidity claims and made no final judgment on them. Therefore, under 28 U.S.C. § 1295(a)(1) (final judgment rule), this court declines to assert jurisdiction to consider an appeal on these issues. This court reverses the trial court's judgment of invalidity due to public use . . . and remands for the case for further proceedings.")

[11] Defendants' reliance on *Surgical Laser Techs., Inc. v. Surgical Laser Products, Inc.*, 27 U.S.P.Q. 2d 1614, 1993 U.S. Dist. LEXIS 1062, at *11 (E.D. Pa. 1993) and *Chapperal Communications, Inc. v. Boman Indus.*, 798 F.2d 456, 459 (Fed. Cir. 1986), as demonstrating a disfavor for "piecemeal" litigation, is misplaced. (See, Jt. Stip., at 25:8-12 and 25:27-26:3). Both cases addressed requests under Rule 54(b) for certification of an appeal of less than all of the claims in the case. These cases are inapplicable here, because Acacia is not seeking certification under Rule

7

In any event, any decision by this Court on less than every conceivable issue that could have been tried has the risk of future appeals. While defendants' proposals include some additional issues, they would not resolve all issues in this case and will not eliminate the risk of future appeals on the many issues which still will not be resolved. Under Acacia's proposed procedure, there can be no further appeals if defendants are successful on appeal anyway. Here, any risk of future appeals associated with Acacia's position is substantially outweighed by the burdens placed upon the Court and parties should defendants be allowed to proceed on the numerous issues they raise.

In their portion of this Stipulation, defendants contend that the Court retains jurisdiction to decide defendants' claims for attorneys' fees under 35 U.S.C. § 285, including deciding whether the patents are unenforceable for inequitable conduct. Defendants cite *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242-43 (Fed. Cir. 2008). In *Monsanto*, the court stated that, although the plaintiff's covenant not to sue divested the court of Article III jurisdiction over the patent-related counterclaims, the court nevertheless retained jurisdiction to decide a request for attorneys' fees pursuant to Section 285 (which can be proven with a finding of inequitable conduct).[12],[13] *Monsanto*, 514 F.3d at 1242. A request for attorneys' fees (which must be brought within 14 days after entry of judgment)[14], however, does not ripen until after a judgment on the underlying claims has been entered (and thus a prevailing party is determined). Acacia only asks

---

54(b); rather, it is asking for entry of a final judgment on all claims and dismissal without prejudice of defendants' counterclaims. Defendants also make reference in their portion of this stipulation to that fact that Acacia previously sought a judgment on the claims of the '702 patent. (See, Jt. Stip., at 19, fn. 24). Acacia's request, which the Court denied, was made under Rule 54(b) and sought certification of an appeal on less than all of the claims. That request is also irrelevant to the present issues.

[12] Unlike *Monsanto,* there is no finding in this case of inequitable conduct. Not every defendant in these MDL proceedings has plead an affirmative defense or counterclaim for inequitable conduct.

[13] Another Federal Circuit case held that an appeal of a claim for inequitable conduct was mooted by a ruling of patent invalidity. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1320 (Fed. Cir. 2001) ("Our ruling affirming patent invalidity moots the cross-appeals of inequitable conduct and liability for inducement of infringement by Pioneer.") Here, there is a stipulation that all asserted claims are invalid.

[14] See, Fed.R.Civ.P. 54(d)(2)(B)(i); Civil L.R. 54-6.

that defendants' unenforceability counterclaims be dismissed without prejudice. If the appeals court reverses, then defendants can re-assert their counterclaims in the remanded proceedings.

Defendants' proposed motions for summary judgment do not include any motions for attorneys' fees or inequitable conduct anyway. Thus, even under defendants' proposed procedure, the issues of attorneys fees and inequitable conduct will not be decided by the Court prior to appeal and, if any pending counterclaim were to remain after defendants' motions are decided, it will have to be dismissed without prejudice so that a final judgment can be entered. Whether or not the Court has jurisdiction over the issues of attorneys' fees or inequitable conduct has nothing to do with the issue of jurisdiction of patent invalidity issues.

> **2.** **The Court Should Not Permit Defendants To File Any Section 112 Summary Judgment Motions On Alternative Invalidity Grounds, As Such Motions Are Mooted By Acacia's Stipulation that All Asserted Claims are Invalid And the Court Has No Further Jurisdiction**

The Court should not waste its resources adjudicating the numerous Section 112 summary judgment motions that defendants' seek to file. Acacia has already stipulated to the invalidity of each asserted claim, and thus the issues raised by these motions are moot.

Pursuant to Article III, § 2 of the U.S. Constitution, a district court has no authority to issue "advisory opinions" upon moot questions. *See, Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1337-1338 (Fed. Cir. 2007) ("Similar to the ripeness doctrine and based on the same constitutional 'controversy' requirement is the Court's prohibition against advisory opinions. Under this doctrine, federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it.'"), *quoting*, *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367, 80 S. Ct. 391, 4 L. Ed. 2d 373 (1960); *See also, Spectronics Corp. v. H.B. Fuller Co*., 940 F.2d 631, 635 (Fed. Cir. 1991) ("The exercise of judicial power under Article III depends at all times on the existence of a case or controversy."); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 2003 U.S. Dist. LEXIS 26356, at * 6 (C.D. Cal. 2003) ("Article III, § 2 confines the federal judicial power to 'cases or

controversies.'  A federal court has no authority to give opinions upon moot questions."), *citing*,

Tashima, Wagstaffe, *Federal Civil Procedure Before Trial*, § 2:1267.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Caraco Pharm. Laboratories, Ltd. v. Forest Laboratories, Inc.*, 2008 U.S. App. LEXIS 6838, *44-45 (Fed. Cir. 2008), *quoting*, *Powell v. McCormack*, 395 U.S. 486, 496-97 (1969).  "The mootness doctrine requires that the requisite personal stake that is required for a party to have standing at the outset of an action must continue to exist throughout all stages of the action."  *Caraco*, 2008 U.S. App. LEXIS 6838, *44, *citing*, *United States Parol Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

In their portion of this Stipulation, defendants admit that the Court has discretion to dismiss defendants' claims based on "prudential mootness."  (Jt. Stip., at 23:10-24:1).  While Acacia believes that the Court is deprived of Article III jurisdiction of defendants' claims based on "jurisdictional mootness,"[15] even if the Court were to disagree with Acacia, the Court can still dismiss defendants' claims based on "prudential mootness," which, in those circumstances, it should do to avoid the inefficiencies, waste, and significant delay of defendants' numerous motions and to promote judicial economy of an immediate appeal.  Defendants cannot be heard to complain to the appellate court if this Court were to dismiss based on "prudential mootness," as they concede the Court has such discretion.

---

[15]  Defendants contend that there is a difference between "jurisdictional" and "prudential" mootness and therefore Acacia is only asking that the Court exercise its discretion in the interests of judicial economy, not that the Court is deprived of jurisdiction under Article III.  As a result of all asserted claims being invalid (as stipulated by Acacia based on the Court's claim construction rulings): (1) the Court has no Article III jurisdiction to adjudicate any other ground of invalidity (this claim having been adjudicated in defendants' favor, thereby rendering moot any other ground of invalidity (not yet adjudicated) (See, cases cited in Acacia's portion at 11:3-12 and fn. 17)), (2) the Court has no Article III jurisdiction over defendants' infringement claims, as defendants previously admitted (See, Response to Satellite Statement, at 4:17-5:6, D.I., 269, quoted at 12:5-12; and cases cited in Acacia's portion at 13, fn. 20), and, (3) whether the Court has Article III jurisdiction over defendants' unenforceability counterclaim is irrelevant, because no defendant contends that the Court should adjudicate that claim in this phase of the case, so defendants would presumably agree that this claim should be dismissed without prejudice (it would have to be for there to be a final judgment for an appeal even if the Court followed the defendants' proposal and ruled on their motions for summary judgment).

Acacia's stipulation that all of the asserted claims are invalid, by itself, moots any alternative ground of invalidity.[16]  Many courts have held that, once a patent claim is invalid on any ground, any motion pertaining to any alternative ground of invalidity should be declared moot.  *See, Invitrogen,* 424 F.3d at 1384 ("Finally, Stratagene asks this court to consider its affirmative defenses of enablement, anticipation, and obviousness, as alternate grounds for invalidity.  Final judgment by the district court included an order that invalidated the '797 patent based on public use under § 102(b), and on no other ground. The district court declared moot the other invalidity claims and made no final judgment on them.  Therefore, under 28 U.S.C. § 1295(a)(1) (final judgment rule), this court declines to assert jurisdiction to consider an appeal on these issues."); *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1084 (N.D. Ia. 2006) ("[A] determination that patents-in-suit are invalid on at least one ground does moot other invalidity and infringement issues.").[17], [18], [19]

---

[16] The fact that the invalidity of Acacia's asserted claims is, at the present time, evidenced in a stipulation by Acacia, rather than in a judgment by the Court, should be irrelevant.  By stipulating to the invalidity of all claims, Acacia is precluded from asserting these claims against any defendant (or any other third party for that matter), unless and until the Court of Appeals reverses this Court's claim construction rulings.

[17] *See also*, *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 531 F. Supp. 2d 629 (D. Del. 2008) ("In light of the court's determination, below, that Rexam is entitled to summary judgment of the remaining claim at issue, claim 14 of the '826 patent, the court need not address the parties arguments concerning Rexam's alternative invalidity theories.  Those theories are, therefore, denied as moot."); *International Automated Systems, Inc. v. Digital Persona, Inc.*, 2008 U.S. Dist. LEXIS 445, *79 (D. Utah 2008) ("The Court has now construed all the disputed claims in the '474 Patent and has ruled on all pending motions. The Court finds that Defendants' Motion for Summary Judgment of Invalidity Under the Definiteness Requirement of 35 U.S.C. § 112 is moot, and Defendants' Motion for Summary Judgment of Invalidity Under the Written Description, Enablement, and 'Regards as Invention' Requirements of 35 U.S.C. § 112 is granted."); *Liebel-Flarsheim Co. v. Mallinckrodt, Inc.,* 481 F.3d 1371, 1383 (Fed. Cir. 2007) ("Because we affirm the district court's conclusion that the asserted claims of the patents at issue are invalid, we need not reach Medrad's cross-appealed issues concerning infringement and inventorship, the latter actually being an alternative ground for a holding of invalidity, not a proper basis for a cross-appeal.")

[18] Defendants also cite *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 996-99 (Fed. Cir. 2008) and *Liebel-Flarshiem Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007) for the proposition that courts have ruled on multiple alternate counterclaims of invalidity.  In both *Sitrick*, and *Liebel-Flarshiem,* unlike the present case, the court was not considering a motion on alternative grounds of invalidity after the claims had already been adjudicated to be invalid.  Many other courts, as cited herein in this Section, have held that a subsequent motion on alternative grounds of infringement is mooted by a prior finding of invalidity.

For the same reasons, all issues of infringement are rendered moot when a patent claim is determined to be invalid, as the Internet and Cable defendants recently successfully argued to the Court. These defendants should not be heard to complain that their proposed motions for summary judgment on alternative invalidity grounds are similarly moot:

> It is axiomatic that a claim that has been found (or held to be) invalid can not be infringed. *Richdel, Inc., v. Sunspool Corp*., 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid, there is nothing to be infringed.") ***Consequently, any determination that a claim is invalid precludes a finding of infringement, thereby rendering moot any issues of infringement***. *See, e.g., Princeton Biochems., Inc. v. Beckman Coulter, Inc*., 411 F.3d 1332, 1339-40 (Fed. Cir. 2005) ("Because [the asserted] claim [] is invalid for obviousness, this court need not reach the issues of prior invention and infringement."); *Medrad, Inc. v. MRI Devices Corp*., 401 F.3d 1313, 1322 (Fed. Cir. 2005) ("Because we have sustained the judgment that [the] asserted claims are invalid, th[e] [infringement] issue is moot."); *Lough v. Brunswick Corp*., 86 F.3d 1113, 1123 (Fed. Cir. 1996) ("No further public interest is served by our resolving an infringement question after a determination that the patent is invalid.").

(Response to Satellite Statement in Joint Case Management Statement, at 4:17-5:6, D.I. 269;

---

[19] In their portion of this stipulation, defendants mischaracterize the holding in *Maytag*. Defendants contend that in *Maytag*, the "court ruled that all the asserted claims were invalid for lack of written description and then still ruled that *some of the those claims were also not enabled*." (Jt. Stip., at 22:7-8). This was not the case at all. In *Maytag*, at the summary judgment hearing, the court asked the parties to focus only on their written description and enablement contentions, and then found (at the same time) that the patents were invalid on both grounds. *Maytag*, 448 F. Supp. 2d at 1083-84. Having found invalidity on these two grounds, the court went on to hold that any other ground of invalidity (which had been raised in already-pending motions for summary judgment, which the court said were likely precluded by genuine issues of material fact) is mooted by this finding. *Id*., at 1084.

Defendants make the same assertion with respect to *International Automated Systems*, 2008 U.S. Dist LEXIS 445 (cited in footnote 29 on page 22, *supra*). In that case, the court had before it two invalidity summary judgment motions, one for indefiniteness and one for "written description, enablement, and 'Regard as Invention.'" The court granted the second motion for invalidity, but denied the first motion, as being mooted by the ruling on the second motion.

Interestingly, in both cases, no further work was necessary by any of the parties to permit the Court to adjudicate the alternative invalidity issues, as those motions had already been fully briefed, yet the court in both cases refused to even rule on the motions, on the ground that they were moot. Arguments of efficiency could have been made for the court to rule on those motions, so that the court's rulings on those motions could also be appealed together with its other ruling, but they were not.

emphasis added).[20]

Defendants' contention that a district court does not automatically lose jurisdiction over one counterclaim simply because it rules on another, citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005), is wrong. The *Fort James* case is readily distinguishable. In *Fort James* the Court held that the disposition of infringement does not deprive the court of jurisdiction over validity because of public policy considerations applicable to patent validity. 412 F.3d at 1348, *citing*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). The *Fort James* case did not hold and does not support the conclusion that a determination of invalidity does not deprive the trial court of jurisdiction over other potential invalidity arguments. Here, unlike *Fort James*, the asserted patent claims would be invalid per Acacia's stipulation.

Defendants reliance *Computer Docking Station Corp. v. Dell, Inc.,* 2006 U.S. Dist. LEXIS 74421 (W.D. Wis. 2006) is similarly misplaced. In *Computer Docking*, unlike the present case, the court's construction caused an issue as to infringement (not invalidity), specifically, which of defendants' accused computers do not infringe under the court's construction. It was clear that some of the accused computers did not infringe under the court's construction, but unclear whether all of defendants' accused computers did not infringe. As the parties had not yet conducted discovery on the defendants' accused computers, the parties could not agree on the scope of the final judgment (i.e, which accused computers to include). Because the parties agreed that at least some of the computers did not infringe (thereby meaning that there was an appealable issue on this particular

---

[20] *See also, Z Trim Holdings*, 2008 U.S. Dist. LEXIS 6086, *19 ("Next, aside from its motion for summary judgment for noninfringement, defendant has filed a separate motion for summary judgment on the issue of invalidity. Because defendant's motion for summary judgment will be granted on the basis of noninfringement, defendant's motion for summary judgment of invalidity will be denied as moot."); *Chamberlain Group, Inc. v. Interlogix, Inc.*, 2002 U.S. Dist. LEXIS 14113, *12-13 (N.D. Ill. 2002) ("Interlogix also moves for summary judgment on the invalidity of the '364 patent. This motion is rendered moot based on the court's determination of non-infringement."); *Aspex Eyewear*, 2003 U.S. Dist. LEXIS 26356, at * 6 ("Defendant's motion for summary judgment of invalidity (filed October 20, 2003) follows on the heels of the court's finding of noninfringement of the '545 patent (issued August 3, 2003). The court's grant of summary judgment of noninfringement made moot the current motion for summary judgment of invalidity. *Nystrom*, 339 F.3d at 1351.")

JOINT STIPULATION AND CASE MANAGEMENT STATEMENT

counterclaim), the court decided to resolve the parties' dispute over the scope of the judgment by deciding which, if any, of defendants' accused computers did not infringe before entering the final judgment.[21]   In the present case, there is no infringement issue; the issues of invalidity to be appealed are clear and are stipulated to by Acacia on all asserted claims and any other invalidity ground is disputed.

It should be noted that, in *Computer Docking,* the Court did not hold that it would also have to decide all of the invalidity and unenforceability issues raised by defendants' counterclaims so that the litigation would not result in another appeal on those issues.  *Id.* (e.g., "In the first instance [reversal of both claim constructions], the chances are high that the court of appeals will see the case again, but this is true whenever it reverses the trial court.").  *Computer Docking* also did not address the issue presented here; namely, whether the Court retained jurisdiction or would otherwise decide alternative invalidity challenges where the patent was already determined to be invalid.

### C.    There Is No Doubt That There Will Be Issues of Material Fact Precluding Summary Judgment On Defendants' Proposed Enablement and Written Description Motions

Defendants contend that their motions for summary judgment "will not involve any factual disputes" (Jt. Stip., at 26:18-19) thereby implying that these motions will be simple for the Court to grant in defendants' favor and implying that Acacia is acting improperly by even opposing these motions.  Acacia has every right to oppose defendants' motions, not only because it will need to develop a record for appeal on all of the disputed issues, but also because Acacia believes that, when the Court sees the evidence, it will determine there are material fact disputes and will not grant summary judgment.[22]   Indeed, the Court specifically instructed the parties at the outset of the Case

---

[21] Interestingly, almost one and a half years later, the very same judge (Judge Barbara Crabb) ruled that a motion for summary judgment of invalidity would be denied as moot and counterclaims of invalidity and unenforceability would be dismissed as moot where the court had granted motion for summary judgment of non-infringement.  *See, Z Trim Holdings*, 2008 U.S. Dist. LEXIS 6086, *19-20.

[22] In their portion of this Stipulation, defendants address only two of their many proposed motions. The first is their proposed motion "limited to showing that claim 4 of the '720 patent, which uses the phrase 'responsive to' rather than 'in response to,' is also invalid for the same reasons as Claims 8 and 14" (written description and enablement).  (Jt. Stip., at 26:18-27:3).  Acacia has already

Management Conference that it did not want the parties to stipulate to any motions unless the

following standards were met:

> But I don't want you to do it [stipulate] unless you believe that there is a
> strong possibility that, that there would be a basis for the Court holding
> undisputed facts that a claim is either valid or invalid. . . . The standards are
> high and therefore, it has to meet that high standard. And more often than not
> I think of that issue as one that requires evidence, expert opinion evidence.
> And it is very difficult, unless the parties agree on what that expert opinion
> evidence is, to see a circumstance where the Court would, would take that
> away from the jury and make a finding."

(March 7, 2008 Transcript, at 7:1-17; Exhibit 1)

      The issues of enablement and written description raised by defendants are fact-intensive and,

if defendants' bring summary judgment motion on these issues, the Court will be required to

consider numerous factual matters. For instance, enablement requires a determination by the Court

as to whether "one of ordinary skill in the art could make and use the claimed invention without

undue experimentation." *Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326,

---

stipulated that claim 4 of the '720 patent is invalid on the grounds that that the Court stated that the
phrase "means, responsive to the compressed, digitized data, for transmitting" lacks sufficient
structure in the specification (Exhibit 5). Acacia believed that this stipulation had resolved the
written description and enablement issues and therefore no stipulation on these additional grounds of
invalidity was necessary. However, in order to eliminate one issue from this stipulation, Acacia
shall not oppose defendants' motion that claim 4 of the '720 patent is also invalid on written
description and enablement grounds. Acacia notes that defendants admit that Acacia agreed that
claim 8 of the '720 patent is invalid for lack of written description and enablement, however, the
Satellite Defendants' April 11 letter states that they still intend to bring a motion on this issue. (See,
Exhibit 6, at 2, motion no. 3). The Satellite Defendants need to remove that motion from their list of
proposed motions.

The second motion relates to the phrase "to at a plurality of subscriber receiving stations" of claim
17 of the '863 patent. (Jt. Stip., at 27:4-10). The parties addressed this issue during the claim
construction phase of this case (with defendants contending then, as they do now, that this phrase is
indefinite; Acacia opposed defendants' contentions of indefiniteness), but the Court did not construe
this phrase (or hold it to be indefinite) in any of its claim construction orders. In its Fourth Claim
Construction Order (dated March 2, 2007), the Court stated that there were words and phrases
submitted for construction which were not addressed in any Order and the Court invited any party to
submit a request for construction for such term. (4th CCO, at 28:13-16; D.I. 220). No defendant
made any such request, and defendants have stated that "[o]n this record, all parties agree: that the
Court's claim construction duties are complete." (D.I. 269, Response to Satellite Statement in Joint
Case Management Statement.) Defendants had the opportunity to raise this issue earlier, but they
did not, and therefore they themselves have demonstrated that there is no urgency for the Court to
decide this issue.

1337 (Fed. Cir. 2005). Whether undue experimentation is needed is determined by examining a number of factors (known as the "Wands" factors):

> Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations.' *Wands*, 858 F.2d at 737. Some of these considerations, commonly referred to as "the Wands factors," include "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.*; *see also Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991) (stating that the Wands factors "are illustrative, not mandatory" and that what is relevant to an enablement determination depends upon the facts of the particular case).

*Warner-Lambert*, 418 F.3d at 1337.

In view these many factors, it was not surprising that the court in *Warner-Lambert* reversed the district court's grant of summary judgment of non-enablement. *Id.*

Similarly, the issue of compliance with the written description requirement, which requires the court to answer the question of "whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter,'" is also fact-based and will be expert intensive. *Vas-Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1563 (Fed. Cir. 1991) ("Our cases also provide that compliance with the 'written description' requirement of § 112 is a question of fact, to be reviewed under the clearly erroneous standard.") Again, summary judgment is inappropriate where resolution of what a patent conveyed to those skilled in the art requires examination of experts, demonstrations and exhibits. *Vas-Cath*, 935 F.2d at 1566-67 (reversing district court's grant of summary judgment on written description where expert testimony on behalf of the patentee established genuine issue of material fact as to what patent disclosed to persons of ordinary skill in the art), *citing*, *Hesston Corp. v. Sloop*, 1988 U.S. Dist. LEXIS 1573, *13 (D. KS. 1988) ("summary judgment on § 112 'written description' issue inappropriate where resolution of what parent disclosure conveyed to those skilled in the art may require examination of experts, demonstrations and exhibits").

### D.  Acacia's Conclusion

The Court should adopt Acacia's proposal that the Court enter judgment of invalidity of all claims asserted by Acacia for the reasons stated in Acacia's stipulation and dismiss without prejudice defendants' counterclaims.  This procedure for obtaining a final appealable judgment has been expressly approved by the Federal Circuit and therefore it will not result in the impermissible "piecemeal" litigation that defendants fear.  It also will not cause the Court to exceed its subject matter jurisdiction by considering the thirty-four additional Section 112 motions on alternative invalidity grounds proposed by defendants, which motions are mooted by Acacia's stipulation of invalidity of all of its asserted claims.

## III.  DEFENDANTS' POSITION

Defendants propose that, consistent with the parties' agreement and the Court's order to effectively and efficiently handle the next phase of this case, the Court consider motions and briefing regarding § 112 invalidity of the asserted claims.  Acacia, on the other hand, now seeks to vitiate the parties' agreement and wants to move for summary judgment against itself, arguing that the Court lacks jurisdiction to hear the Defendants' motions, that such motions are inefficient, and that the motions might raise disputed issues of material fact.  Acacia is wrong on all counts.  This Court has subject matter jurisdiction to hear the Defendants' invalidity motions.  Further, Acacia's proposal to appeal immediately to the Federal Circuit on a small, limited number of issues is inefficient, unnecessarily delays resolution of this case, and wastes judicial resources.  The Defendants' motions will not create factual issues and will promote judicial efficiency by packaging a *substantial collection* of the Court's disputed claim constructions, along with the § 112 invalidity grounds on which the asserted claims are invalid, for appeal to the Federal Circuit.  These arguments have the further benefit of collectively affecting each of the asserted claims.  Accordingly, the Defendants request that the Court direct the parties to proceed with the § 112 invalidity briefing schedule already in effect pursuant to the Court's March 12 Scheduling Order.

**IV.    BACKGROUND**

On February 13, 2008, the Court issued its sixth claim construction order.  (D.I. 266.)  In that order, the Court directed the parties to file a joint statement on February 29 addressing how the case should next proceed.  *All* parties agreed in that joint statement that the next stage of the case should include § 112 motions to address invalidity positions created by the Court's claim construction orders.  (D.I. 267.)  The parties also agreed on a process and schedule that contemplated that there would be motions to which Acacia would stipulate but that there would also be motions that would be decided by the Court.  Specifically, Acacia stated that "in the interest of judicial economy" the parties should address the Defendants' motions "so that the invalidity of the asserted claims on these grounds *can be stipulated to or adjudicated*."  (D.I. 267 at 2:12-17 (emphasis added).)[23]

Notably, in a supplemental paper filed on March 5, 2008, Acacia reiterated that position, stating that in addition to the invalidity grounds on which the parties agreed, "[i]f the Court rules in favor of defendants on any of their other 112 motions for written description or enablement that they contemplate bringing under our proposed procedure, then the Court can include those rulings in its Final Judgment."  (D.I. 270 at 3:5-8.)  In other words, Acacia argued that a final judgment entered in this case would include the Court's rulings on the Defendants' written description and enablement motions — in addition to any stipulated grounds of invalidity.  As Acacia made clear at the March 7, 2008, hearing, simply stipulating to invalidity was "the approach that Plaintiffs preferred" but that "the Defendants then said . . . let's get as many issues up that we can get up . . . that bear on not only indefiniteness but enablement issues, [and] written description issues . . . .  *Now, we're amenable to that and that's included in this proposal*."  (Ex. 1 at 12-13 (emphasis added).)

The Court agreed that the proposed § 112 motions would more efficiently allow the parties to address remaining issues in the case:

---

[23] In addition, the Satellite Defendants argued that non-infringement should be included with the dispositive motions.  Acacia and the other Defendants disagreed, and the Court determined that non-infringement should not be heard in this next phase.  All of the Defendants reserve their rights to bring other summary judgment motions on grounds not addressed in this round, if necessary.

> I'm persuaded that the joint proposal of what I would call the
> plaintiffs and the cable defendants and others, the nonsatellite
> defendants has a great deal of merit both in terms of judicial economy
> and in terms of how the issues in the case would be framed.

(Ex. 1 at 55:25-56:6.)  Accordingly, the Court adopted the schedule proposed by Acacia and the other Defendants.  (D.I. 272.)

Pursuant to this schedule, the Defendants provided Acacia with their proposed § 112 motions on March 28.  (Exs. 2 & 3, March 28, 2008, Letters to Acacia from D. Benyacar and M. Kreeger.)  Acacia responded to these letters on April 4 by claiming *for the first time* that given Acacia's stipulation to the invalidity of the asserted claims on certain narrow, limited grounds, *no* § 112 motions were appropriate.  (Ex. 4, April 4, 2008, Letter to Defendants from A. Block.)  In response, the Defendants provided their lists of proposed motions and requested that Acacia follow the March 12 Court-ordered briefing schedule for their § 112 invalidity motions.  (Exs. 6 & 7, April 11, 2008, Letters to Acacia from D. Benyacar and M. Kreeger.)  Acacia rebuffed Defendants' efforts to reach a compromise, responding on April 14 that it would file a separate statement from the Defendants, disputing the Court's ability to consider any contested § 112 motions and requesting an immediate appeal to the Federal Circuit.  (Ex. 8, April 14, 2008, E-mail to Defendants from A. Block.)  This Joint Statement followed.[24]

Acacia's entire section of this Joint Statement attempts to repudiate its agreement and intentionally confuses "the approach that Plaintiff preferred" with what Acacia actually agreed to, namely that Defendants' motions to which Acacia refused to stipulate would be addressed by the Court.  A different quote from Acacia at the March 7 hearing than the one selectively put forth by Acacia (in Section II.A) makes clear this distinction:

---

[24] This is not the first time that Acacia has tried to obtain an entry of judgment against itself.  Acacia previously tried to obtain an entry of judgment in connection with the '702 patent (D.I. 120).  These efforts were opposed by the Defendants (D.I. 125) and rejected by the Court at a hearing on February 24, 2006.  Subsequent efforts were made by Acacia in discussions with Defendants.  Yet despite these previous efforts, as noted above, Acacia abandoned such positions and explicitly agreed to a process whereby the Court would have an opportunity to rule on motions to which Acacia refused to stipulate.

> [T]he legal effect of what you've done in those six claim construction matters is to render indefinite as a matter of law, and, therefore, invalid every claim we're currently asserting against every defendant in this case. I believe that's correct, okay.
>
> If I were tomorrow to file a motion that says a motion to dismiss, to enter judgment of invalidity on these bases and dismiss everything else without prejudice because, because there is no longer a case or controversy, I believe that would be a legally correct motion to bring because we can all agree that you cannot infringe a claim that is invalid.
>
> If I'm correct that the legal effect of your rulings to date have been that all of these are invalid because they're indefinite, then this case would be over and, and we wouldn't have a basis, you wouldn't have a constitutional basis to consider further motions for summary judgment.
>
> *What we have done is, I haven't brought that motion because I'm content rather than to fight that motion practice, if there is some additional invalidity section 112 arguments that are -- that can be further developed based upon your rulings, because this is an MDL proceeding and it made sense to do that.*

(Ex. 1 at 51-52 (emphasis added).)

For all the following reasons, the Court should hold Acacia to its agreement and proceed with the § 112 briefing schedule.

## V. THIS COURT RETAINS JURISDICTION TO RULE ON THE DEFENDANTS' § 112 INVALIDITY MOTIONS.

Acacia argues that as a result of its stipulations, all asserted claims are invalid and that, therefore, the Court no longer has jurisdiction to decide other issues in this case, including any invalidity grounds beyond the minimum number strategically selected by Acacia. Acacia asserts that any rulings by the Court on these issues would amount to an impermissible "advisory opinion." Acacia is wrong.

Numerous Defendants have pleaded counterclaims for declaratory judgment that the Acacia patents are invalid, not infringed, and unenforceable.[25] These claims remain pending. Moreover,

---

[25] Acacia states that not all of the Defendants have asserted unenforceability counterclaims. Acacia takes nothing by this statement. Many Defendants have asserted unenforceability due to inequitable conduct and the time has not yet passed by which the remainder can add such a defense.

some of the Internet Defendants have pending claims against Acacia for unfair competition. Thus, regardless of the outcome of the § 112 motions, the Court retains independent jurisdiction to decide the Defendants' counterclaims, including their claims for attorney fees as the prevailing parties in an "exceptional case" under 35 U.S.C. § 285, including deciding whether the patents are unenforceable for inequitable conduct. *See Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242-43 (Fed. Cir. 2008).[26] This is true even if the patent holder has covenanted not to sue the alleged infringers.[27] *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006).

In addition, a district court does not automatically lose jurisdiction over one counterclaim simply because it rules on another. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005). Indeed, there are innumerable patent cases where a district court exercises its discretion to rule on multiple, alternative counterclaims of invalidity. *See, e.g., Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 996-99 (Fed. Cir. 2008) (reviewing a district court's grant of summary judgment of invalidity under § 112, paragraphs 1 and 2, each of which independently disposed of all asserted claims); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007) (reviewing a lower court's grant of summary judgment of invalidity for one family of patents on alternative grounds of §§ 102 and 112). A patent holder *may* render counterclaims for declaratory relief moot where the patent holder covenants not to sue the alleged infringer. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058-59 (Fed. Cir. 1995); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.*, No. 2007-1404, 2008 U.S. App. LEXIS 6838, at *48-49 (Fed. Cir. April 1, 2008) (finding proffered covenant insufficient). Here, however, Acacia

---

[26] In trying to distinguish *Monsanto*, Acacia appears to agree that the Court retains jurisdiction over the Defendants' claims of inequitable conduct and request for attorney fees under § 285. Acacia's only quibble is that judgment has not yet been entered and that a prevailing party has not been determined. Plainly, if all of the Yurt claims are invalid, as Acacia freely admits, then the Defendants would be the prevailing parties and entitled to seek attorney fees under § 285 and their inequitable conduct allegations.

[27] Notably, Acacia has not provided the Internet Defendants with a covenant not to sue as to Claims 1-18 of the '992 patent — claims the Court and the parties expended considerable effort to construe and on which the Internet Defendants moved for summary judgment prior to this case being transferred by the multi-district litigation panel.

has neither covenanted not to sue the Defendants nor dismissed its claims with prejudice. The opposite is true — Acacia explicitly seeks to reserve all its rights to pursue infringement claims should it prevail on appeal.[28]

Moreover, many of the cases on which Acacia relies actually support Defendants' position, as the courts did the opposite of what Acacia proposes. For example, Acacia cites *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1084 (N.D. Iowa 2006), for the proposition that courts have held that "once a patent claim is invalid *on any ground, any motion pertaining to any alternative ground* of invalidity should be declared moot." (Acacia Stmt. at 11:2-3 (emphasis added).) But the *Maytag* court ruled that all the asserted claims were invalid for lack of written description but still ruled that *some of those same claims were also not enabled. Id.* at 1084. Similarly, in *International Automated Systems, Inc. v. Digital Persona, Inc.*, No. 2:06-CV-72, 2008 U.S. Dist. LEXIS 445 (D. Utah Jan. 2, 2008), which Acacia cites for the same proposition, the court found that the asserted patent was invalid on *at least two independent grounds.*[29] *Id.* at *71-74. Under Acacia's reasoning, neither of these courts would have had the authority to make alternative findings of invalidity.

Likewise, the Federal Circuit cases Acacia cites do not support its assertion that district courts are prohibited from ruling on alternative invalidity grounds. *See Liebel-Flarsheim*, 481 F.3d at 1383 (determining that it "need not reach" alternative ground of invalidity in light of affirmance of a single ground); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (declining to rule on additional invalidity grounds where no final ruling on those grounds had been made by district court); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1320 (Fed. Cir. 2001) (finding it "unnecessary" to address additional invalidity argument in light of affirmance of invalidity on the ground of prior invention). Further, what is clear from these cases is that since,

---

[28] While Acacia has in the past dropped claims (*see, e.g.,* D.I. 265), there are still 65 claims pending over the five Yurt patents. Acacia has refused to narrow the case further.

[29] The court found that the claims were independently invalid on written description *and* enablement grounds. *Int'l Automated Sys.*, 2008 U.S. Dist. LEXIS 445, at *72-73.

except in rare circumstances, the Federal Circuit serves as the ultimate arbiter on patent matters, when it has already found no liability against the alleged infringer on one ground it can exercise its discretion not to rule on additional grounds since its ruling is "statistically unlikely" to be subject to review, much less overturned on any appeal to the Supreme Court. *See Lough v. Brunswick Corp.*, 86 F.3d 1113, 1123 (Fed. Cir. 1996). This is quite different from a district court decision, which is always reviewed on appeal by the Federal Circuit.

*Nystrom*, which Acacia cites extensively, reiterated the Federal Circuit's policy against piecemeal appeals and specifically stated that it was within the trial court's discretion to rule on the remaining invalidity counterclaims, even after the lower court held that all asserted claims were not infringed and additional claims were invalid. *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350-51 (Fed. Cir. 2003).[30]

Acacia's statements confuse and conflate mootness in the Article III sense (*i.e.*, jurisdictional mootness) and prudential mootness. Jurisdictional mootness deprives a court of jurisdiction and requires a court to dismiss the action. *Powell v. McCormack*, 395 U.S. 486, 496 n.7 (1969) (explaining that court lacks jurisdiction to consider the merits of a moot case). Prudential mootness, on the other hand, is where a court, having already decided one dispositive issue, *chooses* not to address another equally dispositive issue. This latter type of mootness results from a court's "discretion in matters of remedy and judicial administration," and *not* jurisdictional considerations. *See Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980); *see also Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (explaining the difference between prudential mootness and jurisdictional mootness); *Fischer & Porter Co. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1574,1581-82 (Fed. Cir. 1987) (patent issues mooted by affirmance of no injury in proceeding under 19 U.S.C. § 1337). At best, Acacia is requesting the Court to exercise its

---

[30] Like *Nystrom*, district court cases that Acacia cites also emphasize that trial courts have discretion to rule on alternative counterclaims. *See, e.g., Aspex Eyewear Inc. v. Miracle Optics, Inc.*, No. CV 01-10396, 2003 U.S. Dist. LEXIS 26356, at *6 (C.D. Cal. Nov. 25, 2003); *Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 458 (E.D. Va. 2002).

discretion in the interest of judicial economy. As discussed herein, judicial economy is better served by the Court's consideration of alternative grounds of invalidity — a point to which Acacia readily agreed in the Case Management Statement and at the March 7 hearing.

In short, this Court has jurisdiction to hear the Defendants' motions for invalidity.

## VI. ACACIA'S PROPOSAL IS INEFFICIENT, PROMOTES DELAY, AND WASTES JUDICIAL RESOURCES.

Acacia proposes an immediate appeal to the Federal Circuit on invalidity flowing from only a small, limited number of the Court's claim constructions, despite the fact that Acacia clearly disputes many of the remaining constructions, which also lead to findings of invalidity. Acacia's piecemeal approach is inefficient because it increases the potential for further proceedings in this Court and the need for serial appeals.

*Computer Docking Station Corp. v. Dell Inc.*, No. 06-C-0032-C, 2006 U.S. Dist. LEXIS 74421 (W.D. Wis. Oct. 11, 2006), illustrates the inefficiencies of Acacia's proposal. In that case, the plaintiff conceded that according to one of the court's claim constructions, *all* the asserted claims in suit were not infringed. *Id.* at *1-2. Based on that claim construction, the parties stipulated to non-infringement of the asserted claims. They could not, however, agree regarding whether the case should proceed immediately to the Federal Circuit or to non-infringement motions based on a second of the court's claim constructions. Like Acacia, the plaintiff in that case argued that given the parties' stipulation, all remaining issues were moot because the plaintiff had no viable infringement case and that the district court lacked jurisdiction to hear additional motions. *Id.* The defendants opposed entry of judgment on the first claim construction because they wanted to present non-infringement motions on the second claim construction. *Id.* at *2-3.

The court in that case rejected the same argument Acacia makes here. It agreed with the defendants, finding that "it would be premature to enter final judgment before a determination" on infringement under the second claim construction was made. *Id.* at *3. Evaluating the parties' competing allegations of efficiency and delay, it found that "[t]he primary consideration is whether the court of appeals would have to review the case twice." *Id.* According to the court,

> If the case were to be appealed now, the court of appeals would have three options. It could reverse both of the critical claim constructions or it could reverse only one of them. In the first instance, the chances are high that the court of appeals will see the case again, but this is true whenever it reverses the trial court. If the appellate court chose a second option and reversed only the [second] construction, the case would be over because of plaintiff's concession that none of defendants' devices include the [first] limitation. The problem comes if the appellate court reverses only the [first] construction, making additional litigation necessary to determine which devices infringe this limitation of the '645 patent and whether defendants are entitled to judgment on any of their counterclaims. If the litigation resulted in another appeal, the appellate judges would be required to familiarize themselves all over again with the meaning of [the second construction] before determining the application of the term to the accused devices. *This is the kind of unnecessary work that the final judgment rule is intended to avoid.*

*Id.* at * 3-4 (emphasis added); *see also Surgical Laser Techs. Inc., v. Surgical Laser Prods., Inc.*, 27 U.S.P.Q.2d (BNA) 1614, No. 90-7965, 1993 U.S. Dist. LEXIS 1062, at *11 (E.D. Pa 1993) ("Granting Rule 54(b) certification creates the possibility that the Court of Appeals for the Federal Circuit would have to acquaint itself with [plaintiff's] two-piece laser delivery system a second time.").

The same reasoning applies here. Were Acacia to prevail on any of the grounds it wants to appeal now, the parties would be back before this Court litigating some or all of the same motions that the Defendants are prepared to bring now. Those proceedings would inevitably lead to yet another appeal, at which point the Federal Circuit would also be required to familiarize itself all over again with the Yurt patents and the Court's claim construction orders.

Given the effort the Court and the parties have expended over the years, it makes little sense to send the case to the Federal Circuit to review so few issues, especially when resolving the Defendants' invalidity motions would not meaningfully delay what has been a lengthy, complex litigation process. It is far more efficient to resolve the pending disputes according to the Court's March 12 schedule. The parties can then send to the Federal Circuit a comprehensive package of issues that more accurately reflects the issues in the case and the orders to date. More specifically, the Federal Circuit can hear disputes regarding a *substantial number* of the Court's claim construction decisions, along with the § 112 motions to which those constructions naturally lead

(and which collectively affect every asserted claim), rather than a select number of constructions that Acacia wants to appeal now. *See Chaparral Commn'cs Inc. v. Buman Indus., Inc.*, 798 F.2d 456, 459 (Fed. Cir. 1986) (finding that "policy against piecemeal appeals" "clearly outweighed" plaintiff's 54(b) motion to hear ruling on unenforceability of design patent when infringement of utility patent remained pending).

## VII. THE DEFENDANTS' INVALIDITY MOTIONS WILL NOT LEAD TO FACTUAL DISPUTES.

Acacia also professes concern over "factual issues" that the Defendants' motions will allegedly create. This argument is meritless. Acacia itself cites cases that found claims invalid on summary judgment for indefiniteness, lack of written description, and lack of enablement. *See, e.g., Int'l Automated Sys.*, 2008 U.S. Dist. LEXIS 445, at *72-73; *Maytag*, 448 F. Supp. 2d at 1084.[31]

Moreover, the Defendants do not propose to bring motions for summary judgment on all of their invalidity contentions and have never implied that Acacia is "acting improperly" in opposing them. Instead, they have chosen targeted invalidity motions that rely primarily on the intrinsic evidence and the Court's claim constructions to show that there is no support or enabling disclosure for certain claim terms. In accordance with the Court's scheduling order, the Defendants provided Acacia with a final list of their proposed motions, which are attached as Exhibits 6 and 7.[32] These motions are not overly complicated, will require limited briefing, and will not involve any factual disputes.

For example, Acacia has already agreed that under the Court's construction of the term "in response to," as used in Claim 14 of the '863 and Claim 8 of the '720 patents, there is no written

---

[31] Acacia argues that lack of enablement is particularly inappropriate for summary judgment. Lack of enablement is appropriate for summary judgment and has been granted, including in this district. *See, e.g., Use Techno Corp. v. Kenko USA, Inc.,* 515 F. Supp. 2d 1086 (N.D. Cal. 2007).

[32] Exhibit 7 is a letter on behalf of the Cable and Internet Defendants setting forth their contemplated motions. Exhibit 6 is a letter sent on behalf of the Satellite Defendants setting forth their contemplated motions. Both letters were sent on April 11th consistent with the Court's order. (D.I. 272.)

description or enablement of the term in the specification. Thus, one of the Defendants' proposed motions will be limited to showing that Claim 4 of the '720 patent, which uses the phrase "responsive to" rather than "in response to," is also invalid for the same reasons as Claims 8 and 14. The briefing on this issue will be short and will not involve factual disputes because the Court has *already found* that the phrases mean the same thing.[33] (4th CCO at 18.)

Similarly, the Defendants plan to file a motion that an error in Claim 17 of the '863 patent renders that claim, along with its dependent claims, indefinite. The error in Claim 17, which includes the phrase "to at a plurality of subscriber receiving stations," makes it impossible to determine the claim's scope — a fact that Acacia's counsel specifically admitted to this Court at the September 2006 *Markman* hearing on this claim. This issue is one of law, and the Defendants' motion will follow up on briefing already submitted by the Round 3 Defendants as part of the *Markman* briefing schedule.[34]

Of course, should Acacia believe that there is a *material* factual dispute with respect to any particular motion, it can argue that position before the Court. However, it is improper to preclude the Defendants from making a motion simply because Acacia raises the specter of a factual dispute. Acacia's argument should be rejected.

## VIII. IT WILL NOT BE A BURDEN ON THE COURT TO CONSIDER THE DEFENDANTS' MOTIONS.

In an effort to make it look burdensome for the Court to proceed with consideration of Defendants' motions, Acacia complains that the Defendants initially identified 35 motions that they contemplated bringing in their March 28 letters.[35] A simple review of these letters indicates that this

---

[33] Acacia now states in its section of this statement that it will not oppose the invalidity of Claim 4 on written description and enablement grounds. Of course, Defendants will not bring a motion on Claim 4 of the '720 patent if Acacia agrees not to oppose it and includes it in the stipulation.

[34] Acacia argues that the Defendants have waived this issue, which makes little sense. Defendants' indefiniteness motion is exactly the type of motion the Court's § 112 schedule anticipates.

[35] While Acacia is correct that two different letters including two different lists were sent, the letter sent by Mr. Benyacar included all of the motions identified by Mr. Kreeger.

is a red-herring. First, at least 6 of these motions relate to terms where the Court indicated that the claims were "arguable indefinite," and several others address terms the Court otherwise identified as potentially invalid. As the Court made clear at the March 7 hearing, it wanted to have these issues resolved: "And I found things that are arguably indefinite and so far of what I would also wish to have in the process is an opportunity to have, to have -- to lay those matters to rest." (Ex. 1 at 12-13.) Second, in its April 4 letter, Acacia stipulated to another five of these motions and acknowledged that for two additional motions "Acacia will not oppose" the motions. (Ex. 4 at 1, 3.) Third, as set forth in Defendants' April 11 letters, the remaining issues condense down to just a handful of motions.

Acacia fails to mention that the initial April 4 lists of proposed motions were for Acacia's benefit. Defendants went through the time and effort to break down the various independent bases for their motions to give Acacia the benefit of Defendants' thinking, as well as to make it easier for Acacia to stipulate to a particular ground of invalidity, which Acacia appeared to indicate at the CMC hearing was also its expectation:

> What we are then going to do is look at that proposal, that list proposal and meet with them and say, you know, we agree with you that based upon what the court has done, that's going to be the result so there's no need to file a motion on this. That that's going to be, based upon this court's ruling, this is invalid for this reason.
>
> *And we think there's going to be a large number of issues that are listed in that joint statement that are going to be the subject of stipulation in that regard.*

(Ex. 1 at 57:16-58:1.) As demonstrated by Acacia's actions, Defendants need not have bothered as Acacia did not engage in this process in good faith.

## IX. CONCLUSION

In light of the success of the phased approach in this case, Acacia's agreement to a schedule, this Court's ability to continue to retain jurisdiction (despite Acacia's protestations to the contrary), the efficiency in comprehensively addressing claim construction, and the ability of this Court to decide these motions without any additional factual inquiry, the Defendants respectfully request that

///

1  the Court adhere to the adopted schedule and proceed with consideration of the Defendants' § 112

2  motions.

3                                   Respectfully submitted,

4

5  Dated:  April 18, 2008                    RODERICK G. DORMAN (CA SBN 96908)
                                            ALAN P. BLOCK (CA SBN 143783)
6                                           KEVIN I. SHENKMAN (CA SBN 223315)
                                            HENNIGAN, BENNETT & DORMAN LLP
7                                           601 South Figueroa Street, Suite 3300
                                            Los Angeles, California 90017
8

9                                           By_____/s/ Roderick G. Dorman_____
10                                                         Roderick G. Dorman
                                            Attorneys for Plaintiff
11                                          ACACIA MEDIA TECHNOLOGIES CORPORATION

12 Dated:  April 18, 2008                    VICTOR G. SAVIKAS (CA SBN 145658)
                                            KEVIN G. McBRIDE (CA SBN 195866)
13                                          LOUIS TOUTON (CA SBN 102380)
                                            MARSHA E. MULLIN (CA SBN 93709)
14                                          JAMES E. GLORE (CA SBN 215933)
                                            JONES DAY
15                                          555 South Flower Street, Fiftieth Floor
                                            Los Angeles, California 90071
16

17

18                                          By_____/s/ Victor G. Savikas_____
                                                         Victor G. Savikas
19                                          Attorneys for Defendant
                                            THE DIRECTV GROUP, INC.
20

21 Dated:  April 18, 2008                    HAROLD J. McELHINNY (CA SBN 66781)
                                            RACHEL KREVANS (CA SBN 116421)
22                                          MATTHEW I. KREEGER (CA SBN 153793)
                                            JASON A. CROTTY (CA SBN 196036)
23                                          DAVID M. HYMAS (CA SBN 226202)
                                            MORRISON & FOERSTER LLP
24                                          425 Market Street
                                            San Francisco, California  94105-2482
25

26                                          By_____/s/ Rachel Krevans_____
27                                                         Rachel Krevans

28
   Case No. 05-CV-01114 JW                JOINT STIPULATION AND CASE MANAGEMENT STATEMENT
   MDL No. 1665

Attorneys for Defendants
ECHOSTAR SATELLITE LLC and ECHOSTAR
TECHNOLOGIES CORPORATION

Dated: April 18, 2008

DARALYN J. DURIE (CA SBN 169825)
DAVID J. SILBERT (CA SBN 173128)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California 94111-1704


By_____/s/ David Silbert_____
                    David Silbert
Attorneys for Defendant
COMCAST CABLE COMMUNICATIONS, LLC
INSIGHT COMMUNICATIONS, INC.

Dated: April 18, 2008

ANNAMARIE A. DALEY (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402

RICHARD R. PATCH (CA SBN 88049)
J. TIMOTHY NARDELL (CA SBN 184444)
COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213


By_____/s/ Annamarie A. Daley_____
                    Annamarie A. Daley
Attorneys for Defendants
COXCOM, INC., HOSPITALITY NETWORK, INC.,
and CABLE AMERICA CORPORATION

Dated: April 18, 2008

BRADFORD LYERLA (*pro hac vice*)
KEVIN HOGG (*pro hac vice*)
JEFFREY DEAN (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357

MORGAN W. TOVEY (CA SBN 136242)
WILLIAM R. OVEREND (CA SBN 180209)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111


By _____ /s/ Jeffrey Dean _____
                              Jeffrey Dean
Attorneys for Defendant
CHARTER COMMUNICATIONS, INC., WIDE OPEN
WEST OHIO LLC, ARMSTRONG GROUP,
MASSILON CABLE TV, INC., EAST CLEVELAND
CABLE TV AND COMMUNICATIONS LLC, MID-
CONTINENT MEDIA, INC., CANNON VALLEY
COMMUNICATIONS, INC., US CABLE HOLDINGS,
LP, ARVIG COMMUNICATIONS SYSTEMS,
SJOBERG'S CABLEVISION, INC., LORETEL
CABLEVISION, INC., NPG CABLE, INC., BLOCK
COMMUNICATIONS, INC.; SAVAGE
COMMUNICATIONS, INC.

DATED:  April 18, 2008          JUANITA R. BROOKS
                                TODD G. MILLER
                                FISH & RICHARDSON P.C.
                                12390 El Camino Real
                                San Diego, California 92130-2081


By _____ /s/ Todd G. Miller _____
                              Todd G. Miller

Attorneys for Defendants
ADEMIA MULTIMEDIA, LLC; .ACMP, LLC; AEBN,
INC.; AUDIO COMMUNICATIONS, INC.; CYBER
TREND, INC.; CYBERNET VENTURES, INC; GAME
LINK, INC.; GLOBAL AVS, INC.; INNOVATIVE
IDEAS INTERNATIONAL; LIGHTSPEED MEDIA
GROUP, INC.; NATIONAL A-1 ADVERTISING,
INC.; NEW DESTINY INTERNET GROUP, LLC, VS
MEDIA, INC.

DATED: April 18, 2008          WILLIAM J. ROBINSON
                               VICTOR DE GYARFAS
                               FOLEY & LARDNER
                               2029 Century Park East, 35th Floor
                               Los Angeles, California 90067


                               By_____/s/ Victor de Gyarfas_____
                                            Victor de Gyarfas
                               Attorneys for Defendants
                               International Web Innovations, Inc.

DATED: April 18, 2008          GARY A. HECKER
                               JAMES M. SLOMINSKI
                               THE HECKER LAW GROUP
                               1925 Century Park East, Suite 2300
                               Los Angeles, California 90067


                               By_____/s/ James M. Slominski_____
                                            James M. Slominski
                               Attorneys for Defendant
                               OFFENDALE COMMERCIAL BV, LTD.

DATED: April 18, 2008        MITCHELL D. LUKIN
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana
Houston, Texas 77022

JEFFREY D. SULLIVAN
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112

STEPHEN E. TAYLOR
TAYLOR & CO. LAW OFFICES, INC.
One Ferry Building, Suite 355
San Francisco, California 94111


By          /s/ Mitchell D. Lukin
              Mitchell D. Lukin
Attorneys for Defendant
MEDIACOM COMMUNICATIONS CORPORATION,
and CEQUEL III COMMUNICATIONS I, LLC (d/b/a
CEBRIDGE CONNECTIONS)

DATED: April 18, 2008        MITCHELL D. LUKIN
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana
Houston, Texas 77022

JEFFREY D. SULLIVAN
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112


By          /s/ Mitchell D. Lukin
              Mitchell D. Lukin
Attorneys for Defendants
CABLE ONE, INC., and BRESNAN
COMMUNICATIONS

DATED: April 18, 2008

DAVID S. BENYACAR
DANIEL REISNER
KAYE SCHOLER, LLP
425 PARK AVENUE
NEW NORK, NY 10022-3598


By_____/s/ David S. Benyacar_____
            David S. Benyacar
Attorneys for Defendant
TIME WARNER CABLE, INC.


DATED: April 18, 2008

BENJAMIN HERSHKOWITZ
JOHN PETRSORIC
GOODWIN PROCTER LLP
599 LEXINGTON AVE
NEW YORK, NY 10022


By_____/s/ Benjamin Hershkowitz_____
            Benjamin Hershkowitz
Attorneys for Defendant
CSC HOLDINGS, INC.