United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB Hanson Industries, LLC, et al., | NO. C 05-03649 JW |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' "120% RULE" AND "PARTIAL MONTH" CLAIMS** |
| v. | |
| Google, Inc., | |
| Defendant. | |

## I. INTRODUCTION

CLRB Hanson Industries, LLC ("Hanson") and Howard Stern ("Stern") (collectively, "Plaintiffs") bring this putative class action against Defendant Google, Inc. ("Google"), alleging, *inter alia*, violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. Plaintiffs allege that Google's practice of charging customers up to 120% of an advertising "Daily Budget" constitutes unfair competition.

Presently before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims. (hereafter, "Motion," Docket Item No. 234.) The Court conducted a hearing on December 1, 2008. Based on the papers submitted to date and oral argument, the Court DENIES Defendant's Motion for Partial Summary Judgment.

## II. BACKGROUND

A detailed outline of the facts of this case and Google's technology may be found in the Court's prior orders. (See August 21, 2007 Order, hereafter, "August 21 Order," Docket Item No. 193; May 14, 2008 Order, hereafter, "May 14 Order," Docket Item No. 223.) The Court reviews the

relevant facts, as well as the conclusions in its May 14 Order, to the extent they implicate the present Motion.

**A.     Factual History**

Google provides a widely used Internet search engine service located at http://www.google.com. (May 14 Order at 2.) Plaintiffs are customers of Google, who ran advertising campaigns using Google's ad service ("AdWords"), starting in 2002-03. (Id.) In general, users type words ("search terms") into a search box on Google's search screen; the search engine returns a search results page with links to websites that contain the search terms. The search results page also contains a "Sponsored Links" section, which contains links to the websites of businesses who provide the services, or sell the products, described by the search terms that users input. "Sponsored Links" are advertisements of the customers who sign up for, and pay for, Google's AdWords program. (Id.)

Customers enroll in AdWords by signing up online. (May 14 Order at 3.) As part of the sign-up process, customers can set a maximum cost-per-click to spend when someone clicks on the ad. Customers can also set a "Daily Budget," which Google defines as "[t]he amount [the customer is] willing to spend on a specific AdWords campaign each day." (Id. at 3, 6.) The Daily Budget, however, is not necessarily the maximum charge that a customer will accrue in a given day. Google's AdWords "Agreement Glossary" highlights this practice:

> On any single day, the AdWords system may deliver up to 20% more ads than your daily budget calls for. This helps make up for other days in which your daily budget is not reached. However, you'll never be charged more than your average daily budget over the course of a month. For example: if your daily budget is $10 and the month has 30 days, you might be charged up to $12 on any single day but your monthly charges will never exceed $300.

(May 14 Order at 6.)

**B.     Procedural History**

On May 4, 2006, Plaintiffs filed their operative Second Amended Class Action Complaint ("Complaint"), which alleges five causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.;

2

1  (4) Violation of Cal. Bus. & Prof. Code § 17500, *et seq.*; and (5) Unjust Enrichment. In its August
2  21, 2007 Order, the Court granted Google's motion for summary judgment as to Plaintiffs' Second
3  and Fifth Causes of Action, and denied Google's motion as to Plaintiffs' First, Third, and Fourth
4  Causes of Action. (See August 21 Order.)

5  In its May 14, 2008 Order, the Court addressed Google's motion for summary judgment on
6  its practice of charging AdWords customers 120% of their Daily Budgets. (See May 14 Order.) The
7  Court found that Google's practice of charging customers up to 120% of their "Daily Budget" does
8  not, in and of itself, constitute a breach of the AdWords Agreement that governs the relationship
9  between Google and its AdWords customers. (Id. at 8.) The Court did find, however, that there
10 were triable issues of fact with respect to whether Google breached the AdWords Agreement with
11 respect to certain subgroups of Plaintiffs. (Id.) The Court also found that there were triable issues of
12 fact as to whether Google's use of the term "Daily Budget," while charging up to 120% of a
13 customer's Daily Budget, constitutes false advertising in violation of California Unfair Competition
14 Law. (Id. at 11.) Accordingly, the Court granted in part and denied in part Google's partial motion
15 for summary judgment on its practice of charging customers 120% of their Daily Budgets.

16 Presently before the Court is Google's Motion for Partial Summary Judgment on Plaintiffs'
17 "120% Rule" and "Partial Month" Claims.

### III. STANDARDS

19 Although motions for partial summary judgment are common, Rule 56 of the Federal Rules
20 of Civil Procedure, which governs summary judgment, does not contain an explicit procedure
21 entitled "partial summary judgment." As with a motion under Rule 56(c), partial summary judgment
22 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together
23 with the affidavits, if any, show that there is no genuine issue as to any material fact and that the
24 moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of
25 partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses."
26 Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial

3

responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv., 809 F.2d at 631. In such a case, partial summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## **IV. DISCUSSION**

Defendant moves for partial summary judgment with respect to Plaintiffs' unfair competition and false advertising claims, on the ground that Plaintiffs lack standing to bring those claims, having suffered no injury in fact and lost no money or property as a result of Defendant's allegedly deceptive practices. (Motion at 1.) Defendant also moves for partial summary judgment on Plaintiffs' "Partial Month" breach of contract claims. (Motion at 14.) The Court considers each contention in turn.

**A.      Plaintiffs' "120% Rule" Claims: Standing Under the UCL and FAL**

Defendant contends that Plaintiffs lack standing to bring claims based on the "120% Rule," because Plaintiffs have not put forth evidence of actual injury as a result of Defendant's use of the "120% Rule." (Motion at 9.)

To have standing under California's Unfair Competition Law ("UCL") or False Advertising Law ("FAL"), a private plaintiff must have "suffered injury in fact and [have] lost money or property as a result" of a defendant's unfair competition.[1] Cal. Bus. & Prof. Code § 17204. As such, a private plaintiff "must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition." Peterson v. Cellco Partnership, 164 Cal. App. 4th 1583, 1590 (2008). Injury in fact has been described both as a "distinct and palpable injury suffered as a result of the defendant's actions," and as " an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Id. (citing Buckland, 155 Cal. App. 4th at 814).

In this case, Defendant contends that Plaintiffs did not suffer an injury in fact, because they merely received the "benefit of their bargain" under the AdWords Agreement, in that their "average daily charges in each billing period never exceeded the budget that was in effect for that billing period."[2] The essence of this contention is that, assuming Plaintiffs agreed to a pay a certain amount during a monthly billing period, Plaintiffs could not have been injured by having been charged the agreed upon amount, regardless of how daily charges were allocated. According to Defendant, Plaintiffs must, therefore, demonstrate injury beyond the extra daily charges associated with the 120% Rule. (Motion at 9.)

First, Defendant ignores the Court's May 14 Order, in which the Court found that "there are triable issues of fact as to whether a customer . . . would suffer actual injury from relying on disclosures that 'Daily Budget' means a maximum amount charged per day." (May 14 Order at 11 n.10.) The Court stated that, "[f]or instance, the system could result in 'overexposure' on certain days, which could create difficulties in meeting demand and maintaining customer satisfaction."

---

[1] The standing requirement of § 17204 applies to UCL claims under § 17200, *et seq.*, as well as to FAL claims under § 17500, *et seq.* See Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 813 n.6 (2007). Both UCL and FAL claims are asserted by Plaintiffs in this case.

[2] (Motion at 9; Defendant's Reply in Support of Its Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims at 6, hereafter, "Reply," Docket Item No. 276.)

(Id.) Accordingly, the Court has already found triable issues of fact on the issue of standing, and has specifically noted that these are injuries that could go beyond the overcharges resulting from operation of Defendant's 120% Rule.[3] To the extent Defendant contends that "Plaintiffs have presented no evidence of any adverse consequences from higher deliveries and charges on particular days," Defendant appears to be attempting to re-litigate an issue decided in the May 14 Order. (Reply at 6.)

Second, even if the Court had not already found triable issues of fact with respect to actual injury, the Court now finds that any daily overcharges themselves qualify as injury in fact, and provide a basis for standing. In this regard, Defendant's present contention appears to gloss over a critical assumption: that there is evidence Plaintiffs agreed to pay a certain amount per month. Defendant does not, however, offer any evidence to suggest that Plaintiffs agreed to pay a specified *monthly* charge.[4] Rather, the dispute is over the term "*Daily* Budget." Assuming, for the moment, that there is an ultimate finding that the Daily Budget procedure constitutes unfair competition, in that Plaintiffs were misled into believing that the Daily Budget was a per day maximum charge, unconnected to a monthly billing cycle, the excess charges Plaintiffs incurred per day would constitute injury in fact sufficient to provide standing under the UCL.

Given that Google's AdWord's program permits customers to change their Daily Budgets up to ten times per day, customers are able to make their Daily Budgets reflect immediate and volitional

---

[3] In support of this conclusion, the Court cited the Declaration of Marc M. Seltzer, Exs. C, G. (hereafter, "Seltzer Decl.," Docket Item No. 206.)

[4] Defendant cannot rely on the Court's May 14 Order with respect to the Court's finding that Defendant was not in breach of the AdWords Agreement, to suggest that Plaintiffs agreed to whatever terms were contained in the AdWords Agreement, and are thus barred from establishing injury based on the ordinary operation of the AdWords Agreement. The major remaining issue in this case is whether the terminology and operation of the AdWords Agreement violate the UCL and FAL. Accordingly, even if the terms of the contract reflect an "agreement" to charges based on per month billing, injury could result from operation of that agreement, to the extent the agreement was the product of unfair competition.

6

business decisions.[5] This is evidence that a customer sets a Daily Budget solely with regard to the needs of a particular day. One can infer that, should a customer desire more clicks on a particular day, the customer can merely increase the Daily Budget. Again assuming a predicate finding of unfair competition with respect to this issue, Defendant would have no right to charge for any clicks conferred on the customer beyond those ordered by the customer through setting the Daily Budget.

Since there is evidence suggesting that customers set their Daily Budgets on a day-to-day basis, one need not automatically infer that an agreed-upon monthly budget arises from the sum of a customer's Daily Budgets. Nor must one infer that a customer, having made such day-to-day decisions, wishes to be billed for its daily maxima aggregated over a monthly period. Rather, this evidence suggests that, should a customer desire to compensate for days in which its Daily Budget was not met, the process gives the customer the option of increasing the Daily Budget on days where Internet traffic is higher. (See Black Decl., Ex. 8.) Indeed, there is evidence that Plaintiffs did not want the excess delivery on the days it was provided by Defendant.[6]

Thus, the Court finds that there are triable issues of fact with respect to whether Plaintiffs suffered injury in fact as a result of the alleged unfair competition. Given that the purported injuries involve monetary loss, Plaintiffs have sufficiently met both elements of standing under Cal. Bus. & Prof. Code § 17204.

Accordingly, the Court DENIES Defendant's Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" Claims.[7]

---

[5] (See Declaration of Rachel S. Black in Support of Plaintiffs' Opposition to Google, Inc.'s Motion for Partial Summary Judgment, Ex. 8, hereafter, "Black Decl.," Docket Item No. 261.)

[6] (See Plaintiffs' Opposition to Google, Inc.'s Motion for Partial Summary Judgment at 12, hereafter, "Opposition," Docket Item No. 260.)

[7] Defendant also contends that Plaintiffs "lack standing to seek restitution of any payments made pursuant to the 120% Rule after they admittedly learned of that rule." (Motion at 14.) In its Reply, however, Defendant emphasizes that Plaintiffs are simply not entitled to a recovery for the period after they learned about the 120% Rule, even if Plaintiffs have standing to bring claims under the UCL and FAL based on the 120% Rule. (Reply at 9.) Since the Court has found that Plaintiffs have standing under § 17204 to bring their UCL and FAL claims, the Court finds that the issue of when Plaintiffs had knowledge of the 120% Rule merely goes to the amount of recovery, and not to

### B. **<u>Plaintiffs' "Partial Month" Claims</u>**

Defendant contends that it is entitled to summary judgment on Plaintiffs' "Partial Month" breach of contract claims.[8] (Reply at 11.) Defendant seeks summary judgment on two of the three Plaintiff Partial Month subgroups identified by the Court as having viable breach of contract claims in its May 14 Order: (1) customers running short-term ad campaigns, for less than one month and (2) customers running longer ad campaigns, where the final month of their campaign is a partial month.[9] (Id.; May 14 Order at 8.) Defendant asserts that "Plaintiffs were never charged more than their daily budget times the number of days in which their ad campaigns ran in their final billing period." (Id.)

The Court finds that there are disputed issues of material fact with respect to how Defendant billed Partial Month customers. In large part, the parties dispute whether Defendant charged Partial Month customers more than their "average Daily Budgets," as required by the AdWords Agreement. (Motion at 15; Opposition at 18.) There is evidence that Defendant calculated its billing based on a customer's highest Daily Budgets, rather than on the overall average Daily Budget.[10] For example, there is evidence that if a customer lowered the Daily Budget mid-day, Google would permit charges based on 120% of the initial higher Daily Budget, even though the customer had later switched to a

---

standing. The amount of the available remedy will be determined when and if Plaintiffs meet their burden of establishing Defendant's liability under the FAL and UCL. Until then, the Court finds that the scope of Plaintiffs' potential recovery is a factual issue that is inappropriate to determine at this time.

[8] Based on the Court's reading of Defendant's papers, the Court assumes that Defendant's "Partial Month" motion only relates to Plaintiffs' contract claims, and not to Plaintiffs' UCL and FAL claims. (See Reply at 11.)

[9] Defendant does not, however, seek summary judgment with respect to the third Partial Month group identified by the Court: customers who pause their campaigns. (Reply at 11; May 14 Order at 8.) Accordingly, the Court does not address any pausing issue at this time.

[10] Since a customer may change the Daily Budget numerous times in a day, it is possible for Defendant to base its billing on the highest Daily Budget a customer sets each day, even if a customer lowers the Daily Budget at a later point on any given day. There can, therefore, be an average of Daily Budgets within a particular day.

8

lower Daily Budget.[11] (Black Decl., Ex. 1.) This means that, even if the higher budget lasted only for a single minute, whereas the lower budget was in effect the remainder of the day, Google could bill based on the higher of the two Daily Budgets. Plaintiffs also present evidence that Plaintiff Hanson was billed more than his average Daily Budget for a three-day Partial Month campaign.[12]

To the extent Defendant disputes the adequacy of Plaintiffs' calculations, the problem before the Court is underscored.[13] Ultimately, there appears to be a real extant dispute as to the manner in which "average" Daily Budgets were calculated and subsequently factored into billing. Thus, the Court is not persuaded that there is no evidence that some Partial Month customers were not charged more than their average Daily Budgets.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' "Partial Month" Claims.

---

[11] Evidence contained in the parties' briefs on the Partial Month issue is redacted. To the extent these redactions are based on any Order of the Court in which this evidence is subject to a protective order or an order to file under seal, the Court now finds that this evidence does not qualify for a filing under seal pursuant to Civil Local Rule 79. Accordingly, evidence relating to Plaintiffs' "Partial Month" claims need not be redacted in any future filing, except upon further motion to the Court.

[12] (Opposition at 19 n.20 (citing Declaration of Adam Samet in Support of Defendant's Motion for Partial Summary Judgment, Ex. 1, Docket Item No. 274).)

[13] Defendant contends that, according to Plaintiffs' theory about averaging in light of mid-day reductions in the Daily Budget, a customer could conceivably "game the system" by lowering the Daily Budget after Defendant had already delivered clicks in the amount of the Daily Budget. (Reply at 12-13.) According to this position, it would be illogical to include this lower budget in the "average," because Defendant would then be unable to bill for the full amount it had delivered to the customer. (Id.) This is because the overall number of clicks provided would be greater than the deliberately deflated "average" Daily Budget.
Defendant's contention relies on the assumption that a customer can reduce the Daily Budget after the Daily Budget has already been fulfilled on a particular day. It does not, however, seem that any reduction of the Daily Budget with respect to a particular day could be accomplished *after* the Budget has already been met, and it would thus be impossible for a customer to "game the system." Rather, there does seem to be a real dispute as to whether Defendant has "gamed the system" in the opposite way. That is, if a customer reduces its Daily Budget *before* the Daily Budget has been reached, Google may be billing the customer based on the higher of the two budgets, even though the customer deliberately reduced the amount it was willing to spend on a particular day.

## V. CONCLUSION

The Court DENIES Defendant's Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims.

Dated: December 16, 2008

　　　　　　　　　　　　　　　　　　JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adel A. Nadji anadji@audetlaw.com
Daniel Jeffrey Shih dshih@susmangodfrey.com
David T. Biderman dbiderman@perkinscoie.com
Judith B. Gitterman gittj@perkinscoie.com
Lester L Levy llevy@wolfpopper.com
M. Christopher Jhang cjhang@perkinscoie.com
Marc M. Seltzer mseltzer@susmangodfrey.com
Michele Fried Raphael mraphael@wolfpopper.com
Rachel S. Black rblack@susmangodfrey.com
Stephen D. Susman ssusman@susmangodfrey.com
William M. Audet waudet@audetlaw.com

**Dated: December 16, 2008**　　　　　　　　　　**Richard W. Wieking, Clerk**

　　　　　　　　　　　　　　　　　　　　　　　　　**By:　/s/ JW Chambers**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Elizabeth Garcia**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Courtroom Deputy**