DAVID T. BIDERMAN, Bar No. 101577
TIMOTHY J. FRANKS, Bar No. 197645
M. CHRISTOPHER JHANG, Bar No. 211463
FARSCHAD FARZAN, Bar No. 215194
SANG (ALVIN) LEE, Bar No. 217635
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050
Email: DBiderman@perkinscoie.com
Email: TFranks@perkinscoie.com
Email: CJhang@perkinscoie.com
Email: FFarzan@perkinscoie.com
Email: ALee@perkinscoie.com

Attorneys for Defendant GOOGLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. C 05-03649 JW<br><br>**GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR AN ACCOUNTING OF PLAINTIFFS' APPARENT DESTRUCTION OF RELEVANT DOCUMENTS AND MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: January 27, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 5<br>Judge: Honorable Patricia V. Trumbull |

# Table of Contents

Notice of Motion and Motion ................................................................................................. 1

Memorandum of Points and Authorities ................................................................................. 1

Statement of Facts .................................................................................................................... 3

    A.    The AdWords Program ............................................................................... 3

    B.    Plaintiffs' Claims ......................................................................................... 4

Argument .................................................................................................................................. 5

I.    Plaintiffs Appear to Have Destroyed Relevant Materials ................................................ 5

    A.    Google's Document Requests and Plaintiffs' Responses ........................... 5

    B.    Plaintiffs Have Failed to Produce Numerous Documents That Undisputedly Existed (at Least at Some Point in Time) ............................ 6

    C.    The Only Apparent Explanation for Plaintiffs' Failure to Produce These Responsive Documents Is That They Destroyed Them .......................... 8

II.    Plaintiffs' Interrogatory Responses Are Also Deficient .................................................. 10

    A.    Plaintiffs Should Be Required to Quantify Their Alleged Damages .................... 10

    B.    Plaintiffs Refuse to State When They Became Aware of the "120% Rule" ......... 11

    C.    CLRB Hanson Should Be Required to Identify the AdWords Campaigns It Managed for Third Parties ....................................................... 11

Conclusion ............................................................................................................................. 12

## Notice of Motion and Motion

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 27, 2009, at 10:00 a.m., or soon thereafter as the matter may be heard, in Court Room 5 of the United States District Court for the Northern District of California, San Jose Division, defendant Google Inc. ("Google") will, and hereby does, move the Court for an order requiring Plaintiffs to account for their apparent destruction of relevant materials and for an order compelling them to provide further responses to certain interrogatories. This motion is made on the ground that Plaintiffs appear to have failed to preserve vast quantities of relevant documents and refuse to quantify their alleged damages and provide meaningful responses to other interrogatories.

Google's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and supporting Appendix, the supporting Declaration of Sang (Alvin) Lee, filed concurrently herewith, and the papers and records that are on file in this action, and such other matters and arguments as may be presented to the Court prior to or at the hearing on the motion.

## Memorandum of Points and Authorities

This is an action against Google by two participants in "AdWords," Google's online advertising program. The AdWords program allows advertisers to have ads displayed in response to particular search queries by internet users. Plaintiffs claim that they were misled about how Google charges its customers for participating in the AdWords program and seek to certify a class of advertiser plaintiffs.

Plaintiffs have imposed enormous discovery burdens on Google in this case. Google has produced several hundred thousand *documents* (not pages) thus far, including all communications with Plaintiffs, the data for their AdWords accounts, and communications between Google and members of the putative class relating to Plaintiffs' claims. At Plaintiffs' request, Google has produced these materials in their native electronic format, enabling Plaintiffs to conduct searches to hone in on documents that they believe may be most relevant. Google has further collected an additional 21,861,820 documents from 20 employees. Google has shared with Plaintiffs its

1 proposed search terms for finding potentially responsive documents out of that enormous
2 collection and invited Plaintiffs to suggest deletions or additions of search terms that they believe
3 appropriate. Google has made its document collection and production process completely
4 transparent.

5 In contrast to the extraordinary lengths Google has gone to provide discovery in the "right
6 way," there has been a wholesale failure by Plaintiffs to comply with their discovery obligations.
7 Of greatest concern is their apparent violation of their duty to preserve potentially relevant
8 materials. Plaintiffs claim that they have completed their productions and are not withholding
9 any documents on the basis of their stated objections, including their relevance objection.
10 However, one Plaintiff has produced only 33 pages, while the other has produced a grand total of
11 615 pages. By way of comparison, Google's production includes over a thousand
12 communications with Plaintiffs—not to mention the hundreds of thousands of other documents it
13 has produced.

14 Plaintiffs have not produced a number of categories of documents, including: (i)
15 numerous communications they have had with Google; (ii) financial statements and sales reports;
16 (iii) documents regarding their dealings with other online advertising services; (iv) website logs;
17 and (v) documents relating to hosting of their websites. The inescapable conclusion appears to be
18 that Plaintiffs have destroyed and/or failed to preserve relevant materials.

19 Even more troubling is that many of the presumably destroyed documents were created
20 *after* Plaintiffs had filed this lawsuit. Plaintiffs must have been aware of their retention
21 obligations when they apparently destroyed the materials. Plaintiffs cannot claim that they are
22 unsophisticated consumers who do not understand the legal process. They are essentially
23 professional litigants, having been involved in literally dozens of lawsuits over the years.

24 In an effort to determine whether such documents no longer exist or whether Plaintiffs
25 simply have failed to conduct a reasonable search, Google has asked their counsel to explain the
26 parameters of their searches. Plaintiffs, however, have stonewalled. Their counsel has refused to
27 describe what efforts they undertook to search for documents, other than to say that they searched
28 "everywhere they thought to look."

1    In contrast to Google's voluntary disclosure of precisely where it has searched, whom it has searched and what search terms it is using, Plaintiffs have asserted that Google will have to await their depositions to learn anything about their document collection efforts. That is unacceptable givent hat the Court recently set the close of discovery for February 2 and given Plaintiffs' position that they will sit for deposition only once.

The Court should order Plaintiffs to provide a verified accounting of the apparently destroyed documents: What searches have Plaintiffs done? How were they conducted? What responsive documents no longer exist? When were they destroyed? Who destroyed them? What document-preservation instructions were given? What protocols have they instituted to ensure that no further destruction will occur? Depending on the answers, Google reserves its right to seek further relief, including terminating sanctions.

In addition to their apparent failure to preserve and/or produce vast quantities of responsive materials, Plaintiffs have refused to provide proper responses to Google's interrogatories. For example, Plaintiffs will not quantify their alleged damages, notwithstanding the fact that they have all necessary information to do so—and not withstanding the fact that Plaintiff Stern is a damages expert who has a Ph.D. in economics from M.I.T. Additional deficiencies in Plaintiffs answers are discussed below in detail. Google respectfully requests that the Court order Plaintiffs to provide further responses.

## Statement of Facts

### A.  The AdWords Program

Under the AdWords program, Google posts "sponsored link" ads on its websites or its syndication partner websites. ECF # 193 at 2; ECF # 223 at 2; ECF Document No. 88 [Declaration of Michael Schulman in Support of Motion for Summary Judgment ("Schulman Decl.")], ¶3. An internet user who clicks on a sponsored link is sent to the website(s) designated by the advertiser that purchased the advertisement. ECF # 193 at 2; ECF # 223 at 2; Schulman Decl., ¶ 5. Google generally charges advertisers based on the number of times their ads are clicked on by users, using a methodology called cost-per-click ("CPC"). Schulman Decl., ¶5.

In creating their AdWords campaigns, advertisers set a Daily Budget. ECF # 193 at 2-3; ECF # 223 at 3; Schulman Decl., ¶ 9. Through their Daily Budget, advertisers can control the charges they incur over the course of a month. ECF # 193 at 2-3; ECF # 223 at 3; Schulman Decl., ¶ 9; ECF Document No. 90 [Declaration of M. Christopher Jhang in Support of First Motion for Summary Judgment ("Jhang Decl.")], Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489).

The number of clicks that an advertiser receives for a campaign can vary from day to day depending on the usage patterns of internet users. Schulman Decl., ¶ 7. To account for this fluctuation, and to make up for days when the number of clicks delivered is below the targeted amount and advertisers accordingly are charged less than their Daily Budget, the AdWords program may deliver more clicks and charge advertisers up to 120% of their Daily Budget on other days in the same month. If an advertiser's daily charges ever exceed 120% of its Daily Budget or its monthly charges exceed its Daily Budget times the number of days in that month, Google provides the advertiser an "overdelivery credit." ECF #193 at 3-4, 6-7; Jhang Decl., Ex. D (Excerpts of FAQs for AdWords program at 84 & 125 of 489); ECF # 206-12, Ex. F [Deposition of Heather Wilburn] at 67:22-68:20.

### B. Plaintiffs' Claims

Plaintiff CLRB Hanson Industries, LLC (d/b/a Industrial Printing) is an industrial printing business that began running campaigns with Google's AdWords program in July 2002. Plaintiff Howard Stern runs a homework-solving business called "homeworksolver.net" and began running AdWords campaigns in October 2003. ECF # 223 at 2; ECF # 235 (Declaration of David T. Biderman in Support of Google Inc.'s Motion for Partial Summary Judgment on Plaintiffs' "120% Rule" and "Partial Month" Claims ("Biderman Decl."), ¶2, ¶3, Ex. A [Deposition of CLRB Hanson representative Brett R. Hanson ("Hanson Dep.")] at 20:10-15), Ex. B [Deposition of Howard Stern ("Stern Dep.")] at 20:10-17).

Plaintiffs claim that, despite Google's disclosures of its billing policies, they were unaware that Google might charge them up to 120% of their Daily Budgets on particular days (even though their monthly charges never exceeded their Daily Budgets multiplied by the number

of days in each month). Both Plaintiffs sent emails to Google complaining about being charged more than their Daily Budget on certain days. Google responded to their emails by explaining the 120% Rule. Both Plaintiffs nevertheless continued to participate in the AdWords program for years after Google explained the 120% Rule to them—and after filing this suit. Biderman Decl., Ex. A (Hanson Dep. at 62:22-63:4, 81:20-83:5, 99:6-17, 121:7-13, 132:19-134:4, 135:20-137:15, 137:23-138:20, 169:16-170:15, 174:3-17, 177:19-178:9, 185:8-17), Ex. B (Stern Dep. at 99:17-100:15, 101:4-9, 104:2-105:24).

## Argument

### I. PLAINTIFFS APPEAR TO HAVE DESTROYED RELEVANT MATERIALS

#### A. Google's Document Requests and Plaintiffs' Responses

Google served requests for production of a number of categories of documents, including Plaintiffs' communications with Google, documents regarding their dealings with other online advertising services, financial statements and sales reports, website logs, and documents relating to hosting of their websites. Declaration of Sang (Alvin) Lee in Support of Google Inc.'s Motion for an Accounting of Plaintiffs' Apparent Destruction of Relevant Documents and Motion to Compel Further Responses to Interrogatories ("Lee Decl."), Exs. A and B (RFPs). Each category sought by Google is relevant to Plaintiffs' claims. For example, it appears that other online advertising services such as Yahoo! and MSN have billing practices similar to Google's. Plaintiffs' dealings with such entities are relevant to, among other things, their claimed ignorance of how Google's daily budget functioned. Meanwhile, financial statements and sales reports, website logs, and documents relating to hosting of their websites will be relevant to assessing Plaintiffs' overall claimed damages (which, as discussed below, they have refused to quantify thus far) and to Google's affirmative defenses such as set-off, failure to mitigate, waiver, and estoppel.

The relevance of Google's requests is not in dispute. Although Plaintiffs' responses interposed a number of objections, they say they are not keeping back any responsive materials (save one privileged document, Plaintiffs' tax returns and documents relating to other legal
GOOGLE'S MOTION FOR AN ACCOUNTING OF PLFS'
APPARENT DESTRUCTION OF RELEVANT    -5-    CASE NO. C 05-03649 JW
DOCUMENTS AND MOTION TO COMPEL

actions in which they have been involved). Lee Decl. ¶¶ 9, 12 and Exs. G, H, K, O (RFP responses and Levy emails). Plaintiffs have confirmed that they are not withholding anything on the basis of any of their objections, including relevance:

> I can confirm that Mr. Stern has produced all responsive documents he has with respect to the above requests and that no documents have been withheld on the basis of any objection. . . .
>
> I can confirm that Plaintiff CLRB has produced all responsive documents it has with respect to the above requests. We have located one document that we withheld on the grounds of privilege.

Lee Decl. ¶¶ 9, 12 and Ex. K (11/17/08 Levy email). Plaintiffs have further confirmed that they conducted an appropriate search for responsive documents:

> The Plaintiffs have diligently searched for responsive documents, consistent with their obligations under the Federal Rules.

*Id.*; *see also id.*, Ex. N (11/24/08 Levy email) ("We have confirmed [Mr. Stern] has no additional records relating to his business."), Ex. O (11/25/08 Levy email) ("I confirmed that we have not held back any documents based on our objections.").

Although Plaintiffs say they conducted a diligent search and have produced all responsive documents, their production consists of not much more than a handful of documents. Stern produced only ***33 pages*** of documents, consisting solely of a few emails, some of which are duplicative, and a handful of multi-page AdWords account reports. Lee Decl. ¶ 14. Meanwhile, CLRB Hanson's production was hardly any more fulsome. It produced a grand total of ***615 pages***, consisting of select emails (which are incomplete), bank statements (which are also incomplete), and multi-page AdWords account reports. Lee Decl. ¶ 15. In contrast, just copies of the communications with Plaintiffs constitute over one thousand documents (not pages) in Google's production. Lee Decl. ¶ 24.

**B.    Plaintiffs Have Failed to Produce Numerous Documents That Undisputedly Existed (at Least at Some Point in Time)**

The numerous deficiencies in Plaintiffs' document production are patent. For example, vast time periods are unaccounted for. Although CLRB Hanson and Stern opened their first

AdWords accounts in 2002 and 2003, respectively, only a few documents have been produced from those years. Meanwhile Plaintiffs together produced *only 8 pages dated after 2005* even though they maintained their AdWords accounts well into 2007. Lee Decl. ¶ 17. It is indisputable that at least at one time they were in possession of responsive documents (such as AdWords invoices and credit card statements) from 2006-2007. Moreover, such documents were created *after* Plaintiffs had filed suit and thus had an undeniable obligation to preserve relevant materials.

Not only have Plaintiffs failed to produce documents from various relevant time periods, they also have not produced entire categories of documents that undisputedly existed. For example, CLRB Hanson testified at its 30(b)(6) deposition that it maintains web logs of internet traffic on its websites. Lee Decl. Ex. Q (Hanson Dep. 51:14-52:2; 159:18-161:22). However, no such documents have been produced even though they are plainly responsive to Google's requests. Lee Decl. ¶ 18 and Ex. A (RFP Nos. 46, 47, 48, 49, 50, and 51).

Similarly, CLRB Hanson has not produced documents relating to payments it made for AdWords, despite having testified in deposition that it used multiple credit cards to pay for AdWords. Lee Decl. Ex. Q (Hanson Dep. 37:4-38:4). Although Google specifically asked for all "[a]ll bank and credit card statements, and other documents reflecting charges and credits from Google," CLRB Hanson has produced statements from only one account—and, based on the dates of those statements, even that collection appears to be incomplete. Lee Decl. ¶ 15 and Ex. A (RFP No. 33). Likewise, although Mr. Stern testified that he used credit cards to pay for AdWords, he has not produced any statements. Lee Decl. ¶ 14 and Ex. R (Stern Dep. 10:13-11:5).

Another example concerns Google's request for documents relating to CLRB Hanson's experience with other online advertisers, some of which appear to have daily budget tools similar to Google AdWords. CLRB Hanson testified that it uses other internet advertisers such as Yahoo/Overture, MSN, IndustryBrains.com, Yellowpages.com, and Mama.com to place online advertisements. But apart from scattered references in credit card statements, no documents were

produced. Lee Decl. ¶¶ 15, 18 and Exs. A (RFP Nos. 17, 18, 20, 21, 25, 40, 42) and Q (Hanson Dep. 51:14-52:10)

Plaintiffs also have failed to produce other categories of requested documents such as sales reports, invoices/orders for plaintiffs' services/products advertised, shipping/delivery records, documents relating to hosting of plaintiffs' websites, profit/loss statements, balance sheets, and financial summaries, among other categories of documents. Lee Decl. ¶ 18. It is inconceivable that such documents did not exist at some point in time.

### C. The Only Apparent Explanation for Plaintiffs' Failure to Produce These Responsive Documents Is That They Destroyed Them

The best that might have been said about Plaintiffs' failure to produce such a wide range of responsive documents is that they are unsophisticated litigants who did a poor job of searching for documents and did not understand the seriousness of their discovery obligations. Of course, represented as they are by experienced counsel, such an explanation would be neither an excuse nor a justification. But even that inadequate story is unavailable to Plaintiffs here.

First, Plaintiffs are no naifs when it comes to legal proceedings. Not only has Mr. Stern been a consultant at a litigation consulting company, but he appears to have been a party in nearly a dozen lawsuits, including as a named plaintiff in a putative class action. Lee Decl. ¶ 20. Meanwhile, Mr. Hanson (the owner of CLRB Hanson) and companies owned or controlled by him have been parties in more than 40 actions. Lee Decl. ¶ 21. Plaintiffs must be well aware of their discovery obligations.

Moreover, given the representations made by counsel for Plaintiffs, this appears not to be a situation where documents simply have not been produced. It is a case of destroyed documents. Google has repeatedly asked Plaintiffs' counsel about what is missing from the production, only to be told repeatedly that Plaintiffs have produced all relevant documents they possess. Lee Decl. ¶ 16 and Exs. K, N, O. Given that (1) documents that were plainly responsive have not been produced and (2) Plaintiffs have represented that they have produced all relevant materials they have, the only conclusion is that the unproduced documents were destroyed at some point.

On the eve of the original filing of this Motion, Plaintiffs suddenly came up with a new explanation: a fire in August 2004 "caused a total destruction of [CLRB Hanson's] premises, including business records" and CLRB Hanson "stopped doing business in November 2005." Lee Decl. Ex. N. Of course that late-breaking "explanation" about CLRB Hanson's supposed document woes leaves unanswered why *Mr. Stern* has only 33 pages of responsive documents.

Nor does the report by the Fire Department submitted by Plaintiffs support their claim that the fire "caused a total destruction of [CLRB Hanson's] premises, including business records." The incident apparently was a "kitchen fire" in a manufacturing plant that affected only a small portion of the "property" and its "contents." Lee Decl. Ex. N. The fire certainly cannot explain the dearth of post-August 2004 documents.

Meanwhile, the assertion that CLRB Hanson "stopped doing business in November 2005" is at odds with Plaintiffs' testimony and other statements made throughout this case. For example, CLRB Hanson submitted a sworn declaration in *September 2006* that "Since 2002, CLRB has been a Google AdWords Program Advertiser." ECF # 84 (9/29/06 Declaration of CLRB Hanson Industries, LLC). Its Second Amended Complaint, filed in *May 2006*, states that it "advertises on the Google network pursuant to AdWords." ECF # 47 (5/4/06 Second Amended Class Action Complaint ¶ 8). At its *August 2006* 30(b)(6) deposition, CLRB Hanson testified that it "is" a web fulfillment company and also does business under the name "Industrial Printing," which "is" engaged in printing services and does business with Google. Lee Decl. Ex. Q (Hanson Dep. at 10:4-12:14, 19:5-21:10). CLRB Hanson further testified in that *August 2006* deposition that it was currently advertising on Google, MSN and Yahoo and that it had just received a voicemail from Google "thanking us for our business." *Id.* at 51:14-52:2, 140:13-18. And just this November, Plaintiffs' filed a brief alleging that Google had overcharged CLRB Hanson for an AdWords Campaign it activated in *April 2007*. ECF # 260 (11/7/08 Plaintiffs' Opposition to Google Inc.'s Motion for Partial Summary Judgment at 19 n. 20).

Plaintiffs' "explanation" doesn't make sense and leaves many questions unanswered. Google (and the Court) is entitled to a full accounting of what happened to the responsive materials that they have not produced. What searches have Plaintiffs done? How were they

conducted? What responsive documents no longer exist? When were they destroyed? Who destroyed them? What document-preservation instructions were given? What protocols have they instituted to ensure that no further destruction will occur? If responsive documents still exist, why haven't they been produced yet? The Court should order Plaintiffs to provide answers to those questions verified both by Plaintiffs and by their counsel. In the alternative, the Court should order both Plaintiffs to produce immediately all documents relating to those issues and appear for deposition. Such depositions should not count against the limits the Court previously imposed on the parties.

Plaintiffs' almost total failure to produce relevant documents is severely prejudicing Google by hampering its efforts to defend itself both on the merits of Plaintiffs' claims and on their class allegations. As discussed above, the missing materials go to the heart of Plaintiffs' claims and Google's defenses. Once Plaintiffs have answered the numerous questions surrounding their document preservation and production, Google may seek further remedies, including terminating sanctions.

## II. PLAINTIFFS' INTERROGATORY RESPONSES ARE ALSO DEFICIENT

### A. Plaintiffs Should Be Required to Quantify Their Alleged Damages

Google propounded two separate interrogatories on both Plaintiffs to elicit a quantification of their alleged damages. Lee Decl. Exs. E (Stern Interrogatory Nos. 2, 3) and F (CLRB Hanson Interrogatory Nos. 2, 3). Plaintiffs responses, however, did not quantify their damages but merely stated generically that their damages were "the amounts that Google charged [them] over [their] daily budget." Lee Decl. Exs. F (Stern Interrogatory Responses Nos. 2, 3) and H (CLRB Hanson Interrogatory Responses Nos. 2, 3).

When pressed for substantive responses during meet and confer, Plaintiffs claimed that Google had not yet produced certain information that they claim they needed. Google responded that it had produced the information, and even provided Plaintiffs with the production numbers. Lee Decl. Ex. M (11/19/08 Levy email).

Google is entitled to a quantification of Plaintiffs' alleged damages, and Plaintiffs have no excuse for failing to provide it. Indeed, they certainly are more than capable of doing so given

that Mr. Stern holds a Ph.D. in economics from M.I.T. and claims that "[d]amages and lost profits studies" are one of his "areas of expertise." Lee Decl. Ex. P. The Court should compel them to amend their responses to Interrogatory Nos. 2 and 3.

**B.    Plaintiffs Refuse to State When They Became Aware of the "120% Rule"**

As discussed above, to make up for days when an advertiser receives relative few clicks on its ads and is thus charged less than its Daily Budget, the AdWords program may deliver more clicks and charge the advertiser up to 120% of their Daily Budget on other days in the same month. If an advertiser's daily charges ever exceed 120% of its Daily Budget or its monthly charges exceed its Daily Budget times the number of days in that month, Google provides the advertiser an "overdelivery credit."

The gravamen of Plaintiffs' complaint is that they were unaware of this "120% Rule" when they signed up for AdWords. Google maintains that the 120% Rule was properly disclosed and that Plaintiffs were aware of it from the beginning. Nevertheless, it is undisputed that, at some point in time, Plaintiffs did in fact become aware of it—indeed, they have filed suit on the issue. The date on which Plaintiffs became aware of the 120% Rule is an important fact that could, among other things, provide an end date for any alleged damages they have suffered.

Accordingly, Google has asked Plaintiffs to state the date on which they first became aware of the 120% Rule. Lee Decl. Exs. F (Stern Interrogatory No. 5) and E (CLRB Hanson Interrogatory No. 5). Rather than provide a date, Plaintiffs gave non-responsive answers that referenced various communications they had with Google about billing issues. Lee Decl. Exs. H (Stern Interrogatory Response No. 5) and G (CLRB Hanson Interrogatory Response Nos. 5).

Google is entitled to a clear, specific statement of the date on which each Plaintiff first became aware of the 120% Rule. Plaintiffs should be compelled to amend their responses to Interrogatory No. 5.

**C.    CLRB Hanson Should Be Required to Identify the AdWords Campaigns It Managed for Third Parties**

Google asked CLRB Hanson to identify the specific AdWords campaigns it has managed for third parties. Lee Decl. Ex. E (CLRB Hanson Interrogatory No. 18). That interrogatory is

designed to lead to the discovery of admissible evidence that might show, among other things, that CLRB Hanson had knowledge of the 120% Rule. CLRB Hanson answered by saying that Brett Hanson had consulted for SECOA Inc. and Hanson Industries, but did not identify the specific ad campaigns. Lee Decl. Ex. G (CLRB Hanson Interrogatory Response No. 18). CLRB Hanson has given no valid reason for its refusal to provide that information. It should be ordered to identify the specific ad campaigns as requested.[1]

## **Conclusion**

Plaintiffs have not come close to complying with their discovery obligations. The Court should order Plaintiffs to provide a verified accounting of the responsive documents that they have apparently destroyed or have failed to produce thus far. In addition, the Court should compel CLRB Hanson to amend its responses to Interrogatory Nos. 2, 3, 5 and 18, and Mr. Stern to amend his responses to Interrogatory Nos. 2, 3 and 5.

DATED: December 22, 2008      **PERKINS COIE LLP**

By: _____/S/_____
David T. Biderman

Attorneys for Defendant Google Inc.

---

[1] Plaintiffs' responses to many other interrogatories and requests for admission are also deficient as of the time this Motion is being filed. Plaintiffs, however, have represented that they will be amending those responses. Google reserves its right to move to compel further responses to those requests in the event that the promised amended answers remain inadequate. Lee Decl. ¶ 9.