1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5     CLRB HANSON INDUSTRIES    )  C-05-03649-JW
      LLC, ET AL.,              )
6                               )  DECEMBER 1, 2008
               PLAINTIFFS,      )
7                               )
                    V.          )
8                               )  PAGES 1 - 30
      GOGGLE, INC.,             )
9                               )
               DEFENDANT.       )
10    _____  )

11

12           THE PROCEEDINGS WERE HELD BEFORE

13        THE HONORABLE UNITED STATES DISTRICT

14                   JUDGE JAMES WARE

15    A P P E A R A N C E S:

16

17    FOR THE PLAINTIFFS: SUSMAN GODFREY
                          BY:  STEPHEN D. SUSMAN
18                        5TH FLOOR
                          654 MADISON AVENUE
19                        NEW YORK, NEW YORK 10065

20

      FOR THE DEFENDANT:  PERKINS COIE
21                        BY:  DAVID T. BIDERMAN
                               FARSCHAD FARZAN
22                             TIMOTHY J. FRANKS
                          FOUR EMBARCADERO CENTER
23                        SUITE 2400
                          SAN FRANCISCO, CALIFORNIA 94111

24

25    OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                               CERTIFICATE NUMBER 8074

                                                        1

Dockets.Justia.c

1

2                    P R O C E E D I N G S

3                (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5                THE CLERK:  CALLING CASE NUMBER 05-3649,

6    CLRB HANSON INDUSTRIES LLC, ET AL., VERSUS GOOGLE,

7    INC.

8                ON FOR DEFENDANT'S MOTION FOR PARTIAL

9    SUMMARY JUDGMENT.  TEN MINUTES EACH SIDE.

10               COUNSEL, COME FORWARD AND STATE YOUR

11   APPEARANCES.

12               THE COURT:  DON'T BE SHY.  TELL ME WHO

13   YOU ARE.

14               MR. SUSMAN:  YOUR HONOR, I'M STEVE SUSMAN

15   OF SUSAN GODFREY ON BEHALF OF THE PLAINTIFF CLASS.

16               THE COURT:  MR. SUSMAN.

17               MR. BIDERMAN:  GOOD MORNING, YOUR HONOR.

18   DAVID BIDERMAN ON BEHALF OF GOOGLE.

19               THE COURT:  MR. BIDERMAN.  VERY WELL.

20   AND SO THIS IS YOUR MOTION, MR. BIDERMAN?

21               MR. BIDERMAN:  IT IS, YOUR HONOR.

22               THE COURT:  ALL RIGHT.  DO YOU WANT TO

23   SPEAK FURTHER TO IT?

24               MR. BIDERMAN:  I WOULD, AND I WOULD LIKE

25   TO RESERVE SOME TIME FOR REBUTTAL.

                                                        2

1          THE COURT:  ALL RIGHT.  WE'VE ALLOWED TEN

2    MINUTES FOR EACH SIDE FOR THIS.  SO HOW MUCH TIME

3    DO YOU WANT FOR YOUR REBUTTAL?

4          MR. BIDERMAN:  THREE MINUTES IS FINE,

5    YOUR HONOR.

6          THE COURT:  GO AHEAD.

7          MR. BIDERMAN:  YOUR HONOR, BASICALLY THE

8    PLAINTIFFS HAVE TRIED, I THINK, TO SORT OF CLOUD

9    THE ISSUE.  BUT THIS CASE, THIS MOTION CAN COME TO

10   THREE VERY SIMPLE POINTS, AND I'M ADDRESSING THE

11   120 PERCENT RULE ISSUE.

12         THE COURT:  RIGHT.

13         MR. BIDERMAN:  BASICALLY THE COURT HAS

14   RULED ON MAY 14TH, 2008 THAT PLAINTIFFS AND GOOGLE

15   ENTERED INTO A CONTRACT WHICH SPECIFICALLY ALLOWED

16   GOOGLE TO CHARGE UP TO 120 PERCENT OF A DAILY

17   BUDGET.  THAT'S POINT NUMBER ONE.  SO THERE'S A

18   CONTRACT CLAIM.

19         THE ONLY CLAIM THAT IS LEFT IS A 17200

20   CLAIM FOR WHICH THERE NEEDS TO BE SOME TYPE OF

21   INJURY AFTER PROP 64.  THAT'S POINT NUMBER ONE.

22         POINT NUMBER TWO IS WE SUBMITTED EVIDENCE

23   THAT, A, WE NEVER CHARGED THE PLAINTIFFS MORE THAN

24   120 PERCENT OF THEIR DAILY BUDGET; AND, B, THAT WE

25   NEVER CHARGED THE PLAINTIFFS MORE THAN THEIR DAILY

BUDGET TIMES EITHER THE NUMBER OF DAYS IN A MONTH
OR THE NUMBER OF DAYS IN A BILLING PERIOD, IF THE
BILLING PERIOD WERE SHORTER THAN A MONTH.  THAT'S
THE SECOND POINT.  SO WE HAVE SET FORTH OUR
EVIDENCE.

THE THIRD POINT IS THAT IN RESPONSE TO
THAT EVIDENCE, YOUR HONOR, WE HAVE SEEN NOTHING
FROM THE PLAINTIFFS, NOTHING, NO NEW DECLARATIONS,
NO NEW DEPOSITION TESTIMONY, NO EXCERPTS AT ALL
THAT HAVE SHOWN THAT THEY HAVE SUSTAINED ANY
COGNIZABLE INDEPENDENT INJURY AS REQUIRED UNDER
17204 PROPOSITION 64 THAT WOULD SHOW THAT THEY WERE
SOMEHOW DAMAGED BY OUR DELIVERY OF CLICKS WHICH ARE
ESSENTIALLY VISITORS TO THEIR SITE OVER THEIR DAILY
BUDGET ON ONE DAY VERSUS ANOTHER DAY.

AND, YOUR HONOR, I HAVE GIVEN THIS TO
COUNSEL.  I JUST USE THIS AS AN ILLUSTRATION.

HERE'S -- THIS WOULD BE AN EXAMPLE OF A
$10 DAILY BUDGET WITH A SEVEN DAY BILLING PERIOD,
JUST TO KEEP THINGS SIMPLE.

PLAINTIFFS ACKNOWLEDGE, AND THE COURT HAS
AGREED, THAT THEY WOULD AGREE THAT THEY WOULD TAKE
$10 OF CLICKS, $10 WORTH OF VISITORS TO THEIR SITE
ON ANY GIVEN DAY AND THEY WOULD AGREE THAT AS LONG
AS WE GOT TO $10 THEY WOULD PAY THAT AMOUNT.  THE

4

1   TOTAL IS $70 WORTH OF CLICKS.

2          WHAT WE DO AND WHAT WE TELL THE

3   PLAINTIFFS WE DO AND WHAT THE CONTRACT SAYS WE CAN

4   DO IS BECAUSE WE CAN'T GUARANTEE THAT YOU'RE GOING

5   TO GET VISITORS ON YOUR SITE THROUGH YOUR

6   ADVERTISEMENTS ON A SPECIFIC DAY, THAT WE WILL

7   AVERAGE OUT THAT AMOUNT SUCH THAT WE'LL TAKE YOU UP

8   TO ABOVE 120 PERCENT OF YOUR DAILY BUDGET ON A

9   GIVEN DAY.

10          SO, FOR EXAMPLE, HERE IF THEY GOT $8

11   WORTH OF CLICKS, WE TELL THEM THAT WE CAN TAKE THEM

12   UP TO $12 WORTH OF CLICKS THE NEXT DAY OR $8, $12,

13   ET CETERA.

14          AND, YOUR HONOR, WHAT THE PLAINTIFFS HAVE

15   NOT DONE, THEY HAVE NOT SHOWN, DESPITE THERE WAS AN

16   INVITATION IN FOOTNOTE 8 TO YOUR HONOR'S PRIOR

17   RULING ON MAY 14TH, 2008 WHERE YOU SAID IF THEY

18   HAVE OVERCAPACITY PROBLEMS OR IF SOMEHOW THEY CAN'T

19   MAKE USE OF THOSE CLICKS, THAT COULD BE A

20   COGNIZABLE INJURY.  THAT THEY HAVE NOT DONE THAT.

21          THEY HAVE NOT INTRODUCED ANY EVIDENCE

22   WHATSOEVER THAT GIVEN THESE EXTRA CLICKS ON A

23   TUESDAY SOMEHOW CAUSED THEM ANY DAMAGE INSTEAD OF

24   GETTING THOSE CLICKS ON A MONDAY.  NO EVIDENCE

25   WHATSOEVER.

```
 1          THEY HAVE PUT FORTH NOTHING THAT WOULD
 2   SUGGEST THAT THESE EXTRA CLICKS WERE SOMEHOW LESS
 3   VALUABLE THAN THE CLICKS THAT THEY RECEIVED ON AN
 4   EARLIER DAY.  THEY SUBMITTED NO EVIDENCE THAT THEY
 5   DIDN'T ACTUALLY RECEIVE VISITORS TO THE SITE.  NO
 6   EVIDENCE, YOUR HONOR, NONE WHATSOEVER THAT SUGGESTS
 7   THAT THEY DIDN'T ACTUALLY GET BENEFITS FROM THOSE
 8   CLICKS BECAUSE THEY GOT VISITORS TO THE SITE.
 9          SO THIS IS WHAT THEY HAVE DONE.  THEY
10   HAVE NOT ALLEGED THAT THERE HAS BEEN ANY DAMAGE.
11   AN EXAMPLE WOULD BE SUPPOSE IT'S 11:59 P.M. ON A
12   MONDAY, THEY GET $8 WORTH OF CLICKS.  TUESDAY,
13   12:01 THEY GET $2 WORTH OF CLICKS.  THEY HAVEN'T
14   SHOWN ANY DAMAGE FROM THAT BASICALLY SPREADING
15   THOSE CLICKS OVER TIME WHATSOEVER.
16          INSTEAD, YOUR HONOR, WHAT THE PLAINTIFFS
17   HAVE SAID IS THAT THEY BASICALLY SAID THIS IS WHAT
18   THEY WANT BECAUSE THEY WANT TO NEVER GO OVER THEIR
19   DAILY BUDGET.  BUT THE TRUTH IS, YOUR HONOR, IS
20   THAT THIS IS, IN FACT, WHAT PLAINTIFF STERN
21   TESTIFIED IS THAT WHAT PLAINTIFFS WANT IS THIS:
22   THEY WANT THE EXTRA CLICKS, THEY TAKE THE EXTRA
23   CLICKS, THEY BENEFIT FROM THE EXTRA CLICKS, BUT
24   WHAT THEY WANT TO DO IS ESSENTIALLY GET SOMETHING
25   FOR NOTHING AND THEY WANT TO PAY FOR THIS THE LOWER
```

6

AMOUNT.  AND THAT'S WHAT THEY'RE TRYING TO DO IN
THE LAWSUIT.

AND, YOUR HONOR, UNDER PROPOSITION 64
THEY HAVE TO HAVE SOME KIND OF AN INDEPENDENT
INJURY, AND THEY HAVE NOT ALLEGED ANY.

AGAIN, THE COURT INVITED THEM.

THE COURT:  LET ME SLOW YOU DOWN.

MR. BIDERMAN:  SURE.

THE COURT:  AS TO THE ORANGE HYPOTHETICAL
LET'S ASSUME THAT IT IS WHAT THE PLAINTIFFS WANT,
WHAT IS THE DIFFERENCE IN THE BILLING BETWEEN THE
WHAT LOOKS LIKE PURPLE, OR IS THAT BLACK?  I CAN'T
TELL.

MR. BIDERMAN:  IT'S BLUE, YOUR HONOR.

THE COURT:  WHAT IS THE DIFFERENCE
BETWEEN THE BLUE HYPOTHETICAL AND THE ORANGE
HYPOTHETICAL WITH RESPECT TO WHAT IS BILLED?

MR. BIDERMAN:  THIS IS A HYPOTHETICAL BUT
IN THIS EXAMPLE IT WOULD BE 65 BECAUSE IT WOULD
NEVER GO OVER THEIR DAILY BUDGET.

AND THE POINT IS, YOUR HONOR --

THE COURT:  WHY ARE THEY BILLED MORE IN
THE BLUE HYPOTHETICAL?

MR. BIDERMAN:  BECAUSE BLUE IS WHAT WE
ACTUALLY DO, YOUR HONOR.

```
 1              THE COURT:  I KNOW.  BUT WHY DO THEY BILL
 2      MORE?  WHY ARE THEY BILLED IN EXCESS OF THEIR DAILY
 3      BUDGET?
 4              MR. BIDERMAN:  BECAUSE AS THE COURT HAS
 5      RULED, WE'RE ALLOWED TO TAKE THEM UP TO 20 PERCENT
 6      ABOVE THEIR DAILY BUDGET ON A GIVEN DAY.  SO WE
 7      WILL LOOK AT THIS.  THEY HAVE AGREED THEY WILL PAY
 8      $70.  THEY HAVE $70 WORTH OF CLICKS HERE, AND THEY
 9      HAVE $70 WORTH OF CLICKS HERE.  THEY GOT THE $70
10      WORTH OF CLICKS.  THEY GOT THE BENEFIT.
11              THE ONLY BENEFIT IS THAT THE CLICKS WERE
12      NOT SPREAD OUT, BUT WE CAN'T SPREAD THEM OUT
13      BECAUSE WE CAN'T CONTROL WHETHER SOMEBODY IS GOING
14      TO VISIT THEIR SITE.
15              THE COURT:  BUT THE ORANGE HYPOTHETICAL
16      IS POSSIBLE.
17              MR. BIDERMAN:  YOUR HONOR, THE ORANGE
18      HYPOTHETICAL IS POSSIBLE TO DO, BUT THAT'S NOT THE
19      WAY WE DO IT.  IT'S NOT THE WAY WE ARRANGE TO DO
20      IT, AND IT'S NOT THE WAY THE AGREEMENT PROVIDES.
21              AND OUR POINT HERE, FOR PURPOSES OF THIS
22      MOTION, IS THAT IF THEY'RE TO SAY THAT THE ORANGE
23      HYPOTHETICAL IS WHAT THEY WANT, THEY HAVE TO SHOW
24      UNDER PROPOSITION 64 THAT THEY WERE SOMEHOW INJURED
25      BY RECEIVING THESE CLICKS ON A TUESDAY RATHER THAN
```

8

A MONDAY.

IN OTHER WORDS, THEY HAVE GOT TO SAY,
IT'S -- PROPOSITION 64 SAYS, ONE, THEY HAVE TO SHOW
AN INJURY AND IN FACT; AND, TWO, THAT THEY LOST
MONEY OR PROPERTY.

AN INJURY IN FACT MEANS SOMETHING THAT IS
A COGNIZABLE INJURY. IT'S NOT JUST A CLAIM WHICH
THEY SET FORTH IS THAT WE DIDN'T WANT THOSE CLICKS.
THAT'S NOT ENOUGH. THAT COULD BE A CONTRACTUAL
REMEDY, BUT AS THE COURT SUGGESTED IN FOOTNOTE A,
THEY COULD COME FORTH AND TRY TO SAY, YOU KNOW,
GEE, WE COULDN'T ACCEPT THESE EXTRA CLICKS THAT
DAY. THE VISITORS WEREN'T AS GOOD. THEY HAVE
CAPACITY PROBLEMS. WE COULDN'T SHIP THAT DAY.
THEY HAVEN'T PUT FORTH ANY EVIDENCE OF THAT.

IN FACT, YOUR HONOR, THE EVIDENCE THAT
THEY PUT FORTH IS WHEN THEY DID HAVE CAPACITY
PROBLEMS, THEY WOULD PAUSE AND THEY WOULD JUST SHUT
DOWN THE SITE ENTIRELY AND PAUSING IS STILL PART OF
THE CASE BUT NOT PART OF THIS MOTION.

THE COURT: WELL, PART OF WHAT I HAVE TO
KEEP TRACK OF AS I LISTEN TO BOTH OF YOU TODAY, AND
I'LL GIVE YOU A MOMENT TO RESPOND, IS THAT THIS IS
A MOTION THAT CHALLENGES THE STANDING OF THE
CLAIMS.

```
1              MR. BIDERMAN:  EXACTLY.

2              THE COURT:  IT IS NOT A MOTION WHERE I'M

3    NOW ADJUDICATING WHETHER OR NOT THERE IS A REMEDY

4    THAT SHOULD BE AWARDED AT THE END OF THE EVIDENCE

5    IN THE CASE.

6              AND SO THE QUESTION OF STANDING IS, IS

7    THERE A COGNIZABLE CLAIM UNDER CALIFORNIA LAW WHICH

8    REQUIRES INJURY?

9              AS LONG AS IT APPEARS TO THE COURT THAT

10   WHAT GOOGLE CALLS A DAILY BUDGET IS REALLY A

11   PERIODIC BUDGET AND NOT A DAILY BUDGET, IT SEEMS TO

12   ME THAT I HAVE TO AT LEAST THEORETICALLY FIND THAT

13   THERE IS A CLAIM THAT CAN BE STATED, WHETHER OR NOT

14   THERE ARE PEOPLE OUT THERE WHO FIT THAT CATEGORY IS

15   A DIFFERENT MATTER, BUT A CLAIM CAN BE STATED

16   BECAUSE ONE WHO SIGNS UP FOR A DAILY BUDGET IS

17   DIFFERENT THAN ONE WHO SIGNS UP FOR A MONTHLY

18   BUDGET OR A PERIODIC BUDGET.

19             AND ALTHOUGH I AGREE WITH YOU THAT IN THE

20   WORLD OF ELECTRONIC ADVERTISING IT WOULD BE

21   SURPRISING THAT THERE ARE INDIVIDUALS WHO WOULD

22   COMPLAIN ABOUT RECEIVING MORE ADVERTISING THAN THEY

23   BUDGETED AS LONG AS THEY ARE BILLED THE SAME.

24             ON A DAILY BASIS, THEY ARE INDEED NOT

25   ONLY RECEIVING MORE THAN THEY BUDGETED BUT THEY ARE
```

10

BEING BILLED FOR MORE THAN THEY BUDGETED AND THAT

IS THE REASON THAT I HAVE LEFT THIS ONE ASPECT OF

IT.

IF YOU HAVE IT ON A CONTRACT BASIS, THERE

IS A LIMITED GROUP THAT I HAVE EVEN ALLOWED ON A

CONTRACT BASIS BUT UNDER 17200 THE PROBLEM IS THAT

GOOGLE MAINTAINS AND CONTINUES TO MAINTAIN THAT

IT'S PERMISSIBLE TO CHARACTERIZE THIS AS A DAILY

BUDGET.

BUT EVERY PRESENTATION I HAVE HEARD

PRESENTS IT'S A PERIODIC BUDGET.

MR. BIDERMAN:  CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.

MR. BIDERMAN:  BUT THE POINT HERE IS THAT

THE PLAINTIFFS UNDER 17200, IT IS A STANDING

MOTION, THEY REALLY HAVE TO PROVE SOME KIND OF AN

INJURY, AND UNDER RULE 56 THEY ARE SPECIFICALLY

REQUIRED TO COME FORTH WITH SOME EVIDENCE OF SOME

INJURY.

THE COURT HAS SUGGESTED WAYS THAT THEY

COULD BE INJURED.  THEY HAVE NOT COME FORTH WITH

THAT EVIDENCE.

I WOULD REFER THE COURT TO THE CASE AS

THAT WE CITED, THE CELLCO CASE WHERE ESSENTIALLY

A --

11

1          THE COURT:  BUT ISN'T THAT MORE

2     APPROPRIATELY A MOTION FOR SUMMARY JUDGMENT ON

3     SAYING THAT THERE IS LIABILITY BUT NO DAMAGES?

4          I MEAN, IF YOU BRING IT AS A STANDING

5     ISSUE, I TAKE A DIFFERENT LOOK AT IT THAN I DO IF

6     YOU'RE BRINGING IT AS A MOTION WHERE I'M TRYING TO

7     ADJUDICATE THE CASE.

8          MR. BIDERMAN:  WE'RE NOT ASKING YOU TO

9     ADJUDICATE THE CASE.  WE'RE JUST SAYING THAT THEY

10    HAVE TO ALLEGE AND PROVE AN INJURY TO HAVE STANDING

11    UNDER PROPOSITION 64.  THEY DON'T HAVE STANDING

12    UNDER PROPOSITION 64 BECAUSE THEY HAVE NOT SET

13    FORTH AS REQUIRED UNDER RULE 56(E)(2) SPECIFIC

14    FACTS SHOWING THAT, IN FACT, THEY WERE INJURED.

15         THE COURT:  BUT IF THEY BUDGET $10 AND I

16    KNOW THAT THIS COULD BE A THOUSAND DOLLARS.

17         MR. BIDERMAN:  SURE.  ABSOLUTELY.

18         THE COURT:  OR A HUNDRED THOUSAND

19    DOLLARS.  BUT IF THEY BUDGET $10 AND YOU ADMIT THAT

20    ON A GIVEN DAY THAT THEY BUDGET $10, THEY WILL BE

21    CHARGED MORE THAN $10, THEN THEY HAVE STATED AN

22    INJURY.

23         THE VERY FACT THAT YOU WILL CHARGE THEM

24    MORE -- IN OTHER WORDS, WHY SHOULD GOOGLE BE THE

25    ONE TO DETERMINE THAT ON THE SECOND DAY THEY REALLY

12

```
1    OUGHT TO EXCEED THEIR BUDGET?

2              MR. BIDERMAN:  YOUR HONOR, ONE, BECAUSE

3    YOUR HONOR HAS RULED THAT WE CAN AS A MATTER OF

4    CONTRACT.

5              THE COURT:  RIGHT, BUT I'M NOT TALKING

6    CONTRACT.

7              MR. BIDERMAN:  I UNDERSTAND.  I

8    UNDERSTAND.  BUT, TWO, I REALLY THINK THE LAW IS

9    FAIRLY CLEAR UNDER PROP 64.  THEY HAVE TO COME

10   FORWARD WITH SOMETHING THAT SAYS THAT I WAS HURT BY

11   THOSE EXTRA $2 ON TUESDAY, AND THEY HAVEN'T DONE

12   THAT, YOUR HONOR.  BUT WE REQUEST THAT THE COURT

13   CONSIDER THAT, LOOKING AT THE PROP 64 CASE THAT WE

14   CITED, CELLCO, CHAVEZ.

15             THE COURT:  LET ME TRY THIS ONE MORE

16   TIME.

17             MR. BIDERMAN:  SURE.

18             THE COURT:  WHY IS IT NECESSARY TO SAY

19   MORE THAN THE FACT THAT I HAVE BEEN CHARGED MORE

20   THAN I BUDGETED?  TO BE HURT MEANS TO BE -- I SET A

21   BUDGET AND THAT'S SOMETHING I WANT TO MAINTAIN AND

22   THE REPRESENTATION IS MADE THAT I CAN SET IT ON A

23   DAILY BASIS, INDEED I CAN CHANGE IT DURING THE

24   COURSE OF THE DAY.

25             MR. BIDERMAN:  SURE.
```

1          THE COURT:  BUT I CAN SET IT ON A DAILY

2     BASIS.

3          AND THE ADMISSION ON THE PART OF GOOGLE

4     IS THAT WE WILL NOT HONOR THAT BUDGET.  WE WILL

5     CHARGE YOU MORE THAN ON THE DAY.

6          MR. BIDERMAN:  AND WE TELL THEM.

7          THE COURT:  WHY ISN'T THAT PROOF OF HARM?

8          MR. BIDERMAN:  BECAUSE JUST SAYING THAT

9     YOU DIDN'T WANT THOSE CLICKS AND YOU DIDN'T WANT

10    THOSE VISITORS ISN'T PROOF OF HARM JUST AS IN

11    CHAVEZ THE PLAINTIFF SAID, "I THOUGHT THE SOFT

12    DRINKS WERE MADE IN SANTE FE.  I DIDN'T WANT THEM

13    BECAUSE THEY WERE MADE IN SANTE FE."  AND THE COURT

14    SAID, "YEAH, BUT THE SOFT DRINKS ARE JUST AS

15    VALUABLE EVEN THOUGH THEY'RE MADE IN CALIFORNIA."

16         HERE, WHAT IT SHOULD HAVE DONE AND WHAT

17    THEY COULD HAVE DONE AND SAID, LISTEN, ON THIS

18    SECOND DAY I JUST HAD TOO MANY VISITORS TO MY SITE.

19    I COULDN'T ACCEPT THOSE CLICKS.  THOSE CLICKS

20    WEREN'T VALUABLE TO ME.  I COULDN'T SHIP.

21    SOMETHING SPECIFIC THAT SAYS, OR THESE VISITORS

22    JUST WEREN'T AS VALUABLE.  SOMETHING THAT SAYS AND

23    THE COURT REFERRED TO THAT IN FOOTNOTE 8.

24    BASICALLY THE COURT SAID, IF THERE'S A PROBLEM WITH

25    CAPACITY, AND I CAN'T USE THOSE CLICKS, FINE.

BUT ONCE WE -- YOUR HONOR, THE BURDEN IS
ON THEM TO PROVE STANDING, AND THEY HAVE TO COME
FORTH WITH MORE THAN JUST A BALD STATEMENT THAT
THEY DIDN'T WANT THOSE CLICKS.

THE COURT:  LET ME TURN TO YOUR OPPONENT
AND SAVE THE REST OF YOUR TIME FOR REBUTTAL.

MR. BIDERMAN:  THANK YOU.

THE COURT:  DO YOU HAVE A SMALL VERSION
OF YOUR CHART THERE?

MR. BIDERMAN:  I DO.

THE COURT:  THANK YOU.

MR. BIDERMAN:  LET ME APPROACH, YOUR
HONOR.

THE COURT:  MR. SUSMAN.

MR. SUSMAN:  THANK YOU, YOUR HONOR.  YOUR
HONOR, GOOGLE'S THIRD IN AN APPARENTLY NEVER ENDING
SUCCESSFUL PARTIAL SUMMARY JUDGMENT MOTION SERIES
IS AN ATTEMPT TO MAKE IT IMPOSSIBLE TO CERTIFY ANY
CLASS OR TO SO LIMIT THE CLAIMS OF THE NAMED
PLAINTIFFS THAT GOOGLE WILL BE ABLE TO SET UP THE
ARGUMENT THAT THEY LACK THE ABILITY TO REPRESENT
THE CLASS EVEN THOUGH THEY HAVE SIMILAR CLAIMS,
THEY'RE NOT IDENTICAL CLAIMS.

FOR THE PURPOSE OF THE UCL AND FAL
CLAIMS, PLAINTIFFS HAVE SUFFERED INJURY, IN FACT,

15

YOUR HONOR, BECAUSE THEY HAVE LOST MONEY. THEY WERE CHARGED AND PAID FOR CLICKS THAT THEY DID NOT SEEK, EXPECT, OR REQUEST.

GOOGLE'S CLAIM THAT THIS IS NOT ENOUGH IS BASED NOT ON FOOTNOTE 8 BUT FOOTNOTE 10 OF THE COURT'S OPINION IN DENYING GOOGLE'S SECOND MOTION FOR SUMMARY JUDGMENT.

THE COURT IN THAT SAID THREE THINGS:

FIRST WHETHER THERE WAS AN ACTUAL INJURY IS NOT DIRECTLY AT ISSUE IN THE PARTIES' BRIEFS;

SECOND, THE COURT SAID THAT THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER A CUSTOMER WOULD SUFFER ACTUAL INJURY;

THIRD, THE COURT SAID AN EXAMPLE OF ACTUAL INJURY MIGHT BE OVEREXPOSURE ON CERTAIN DAYS WHICH WOULD CREATE DIFFICULTIES IN MEETING DEMAND AND MAINTAINING CUSTOMER SATISFACTION.

GOOGLE RELIES ON THE NOT DIRECTLY AT ISSUE DISCLAIMER TO AVOID THE TRIABLE ISSUE OF FACT CONCLUSION. YET IT CEASES UPON THE EXAMPLE TO SUGGEST THAT WITHOUT EVIDENCE OF DIFFICULTIES CAUSED BY OVEREXPOSURE THE PLAINTIFFS HAVE NOT BEEN INJURED SIMPLY BY HAVING BEEN BILLED AND PAID FOR SOMETHING THAT THEY DID NOT REQUEST OR WANT.

NOW, THE PLAINTIFFS, WE ARE UPSET WITH

16

HAVING TO RESPOND TO SUCCESSIVE MOTIONS FOR SUMMARY
JUDGMENT ON ISSUES THAT COULD HAVE BEEN RAISED
PREVIOUSLY, BUT I WANT TO GO TO THE MERITS OF THEIR
LACK OF INJURY AND FACT ARGUMENT BECAUSE, FRANKLY,
I AGREE THAT IT HAD BEEN FULLY BRIEFED IN THE
PARTIES' BRIEF.  I DON'T THINK THE PARTIES INTENDED
ITS EXAMPLE IN FOOTNOTE 10 TO BE AN EXCLUSIVE TYPE
OF INJURY.

THROUGHOUT ITS BRIEF IN SUPPORT OF ITS
MOTION FOR THIRD SUMMARY JUDGMENT, GOOGLE CLAIMS
THAT IT IS SOMEHOW RELEVANT THAT, QUOTE,
"PLAINTIFFS PAID NO MORE THAN THEY AGREED TO PAY
AND THAT PLAINTIFFS RECEIVE," QUOTE, "THE BENEFIT
OF THEIR BARGAIN."

THIS IS A RED HERRING BECAUSE FOR
PURPOSES OF THE UCL AND FAL CLAIMS IS NOT WHETHER
PLAINTIFFS PAID MORE THAN THEY AGREED TO PAY BUT
RATHER WHETHER THEY PAID MORE THAN ORDINARY
ADVERTISERS WOULD HAVE REASONABLY EXPECTED TO PAY.

IF THE BENEFIT OF THE BARGAIN WAS NOT SO
PROMINENT THAT A REASONABLE CONSUMER WOULD
NECESSARILY SEE IT, IF IT WAS HIDDEN WITHIN AN
ADWORDS AGREEMENT OF OVER A HUNDRED PAGES IN
LENGTH, THEN, AS THIS COURT HAS PREVIOUSLY HELD,
PLAINTIFFS HAVE A UCL, FAL CLAIM, AND THOSE CLAIMS

17

ARE BASED ON GOOGLE'S STATEMENTS ABOUT CUSTOMERS

CONTROL OVER THEIR DAILY BUDGET.

AND I'M QUOTING THE COURT NOW, QUOTE,

"IMPLYING IF NOT OUTRIGHT AFFIRMING THAT THE DAILY

BUDGET IS THE MAXIMUM CHARGE CUSTOMERS WILL INCUR

ON ANY GIVEN DAY," CLOSED QUOTE.

TO ARGUE THAT ADVERTISERS SHOULD HAVE NO

RIGHT TO COMPLAIN ABOUT HAVING TO PAY FOR CLICKS

THAT THEY DID NOT SEEK, REQUEST, OR EXPECT IS LIKE

ARGUING, YOUR HONOR, IF YOU TAKE YOUR CAR TO A CAR

WASH AND THEY OFFER YOU ALL OF THESE SERVICES, THIS

MENU OF SERVICES, AND YOU SAY, "I JUST WANT THE

BASIC WASH."

AND THE CAR GOES THROUGH THE CAR WASH AND

INSTEAD OF WASHING YOUR CAR THEY ALSO APPLY WAX TO

IT.  AND THEY SUBMIT TO YOU A LARGER BILL THEN YOU

EXPECTED OR REQUESTED.  ARE YOU PROHIBITED -- DO

YOU NOT HAVE STANDING TO COMPLAIN THAT YOU ARE

BEING BILLED, IN FACT, IF YOU PAID THE BILL, NOT

REALIZING THAT YOU WERE BEING CHARGED, WOULDN'T YOU

HAVE STANDING TO COMPLAIN THAT YOU ARE GETTING --

YOU ARE HAVING TO PAY FOR SOMETHING THAT YOU DIDN'T

WANT, YOU DIDN'T REQUEST, AND YOU DIDN'T SEEK?

THEY -- THAT'S STANDING AND IT'S NOT AN

ANSWER FOR THEM TO SAY, WELL, THE WAX JOB DIDN'T

18

HURT YOUR CAR.

WELL, ACTUALLY THE WAX JOB WAS GOOD FOR YOUR CAR. SO WHY ARE YOU COMPLAINING?

I DON'T CARE WHETHER IT WAS GOOD FOR MY CAR OR NOT. I DON'T CARE WHETHER IT HELPED OR NOT. I DIDN'T WANT IT. I SHOULDN'T HAVE TO PAY FOR IT.

GOOGLE SAYS, AND WE AGREE, THAT A PLAINTIFF CANNOT ESTABLISH INJURY OR STANDING TO SUE UNDER THE UCL SIMPLY BY SHOWING THAT THE DEFENDANT COMMITTED A DECEPTIVE PRACTICE.

BUT THE NAMED PLAINTIFFS IN THIS CASE SHOW THAT THEY, IN ADDITION, WERE DECEIVED TO PAY EXTRA FOR SOMETHING THAT THEY DID NOT WANT.

GOOGLE SAYS, AND WE AGREE, THAT PROPOSITION 64 WOULD BE MEANINGLESS IF MERE PROOF OF A VIOLATION WERE ENOUGH TO ESTABLISH INJURY AND FACT AND STANDING TO SUE. BUT THIS IS NOT THE SITUATION DESCRIBED IN THE LEGISLATIVE HISTORY OF PROPOSITION 64 WHERE, QUOTE, "PRIVATE ATTORNEYS ARE FILING LAWSUITS FOR COMPETITION, WHERE THEY HAVE NO CLIENT WHO HAS BEEN INJURED, IN FACT, UNDER THE STANDING REQUIREMENTS OF THE UNITED STATES CONSTITUTION," CLOSED QUOTE.

NOR IS THIS LIKE THE BUCKLAND CASE THAT THEY RELY ON IN THEIR BRIEFS, WHERE A PLAINTIFF, A

CONSUMER ADVOCATE SUSPECTED THE PLAINTIFFS'
MARKETING AND PACKAGING WAS MISLEADING AND BOUGHT
THEIR PRODUCT SOLELY TO PURSUE -- TO FILE A LAWSUIT
COMPLAINING ABOUT IT.

CLRB HANSON INDUSTRIES AND HOWARD STERN
MEET THE DUAL REQUIREMENTS OF PROPOSITION 64.  THEY
ARE TWO.

FIRST, THEY HAVE STANDING UNDER THE
UNITED STATES CONSTITUTION BECAUSE THEY SUFFERED.
THE BUCKLAND CASE AGAIN, AND MANY FEDERAL CASES,
QUOTE, "AN INVASION OF A LEGALLY PROTECTED INTEREST
WHICH IS, A, CONCRETE AND PARTICULARIZED; AND, B,
ACTUAL OR EMINENT OR NOT CONJECTURAL OR
HYPOTHETICAL.

SECOND, THEY MEET THE SECOND PRONG OF
PROPOSITION 14 BECAUSE THEY LOST MONEY AS A RESULT
OF HAVING BEEN BILLED AND HAVING PAID FOR SOMETHING
THAT THEY DID NOT ORDER.

GOOGLE SAYS THAT IT IS SOMEHOW MATERIAL
THAT PLAINTIFFS WERE HAPPY TO RECEIVE CLICKS IN
EXCESS OF THEIR DAILY BUDGET, BUT JUST BECAUSE
YOU'RE HAPPY TO RECEIVE SOMETHING YOU DIDN'T ORDER
LIKE A WAX JOB DOESN'T MEAN THAT YOU LOSE ANY
STANDING TO COMPLAIN ABOUT HAVING TO PAY FOR IT.

GOOGLE PROTESTS IT'S NOT FAIR THAT

PLAINTIFFS SHOULD GET A WINDFALL OF FREE CLICKS AND

TO RESPOND TO THAT WE CITED IN OUR BRIEF THE IDEA

THAT YOU CANNOT COMPLAIN ABOUT SOMEONE NOT PAYING

FOR SOMETHING THAT YOU GAVE THEM BUT THEY DIDN'T

REQUEST.

LET ME GO -- SO THAT'S OUR STANDING

POINT, YOUR HONOR, WE MEET PROPOSITION 64.  AND HE

CAN TALK ABOUT PROPOSITION 64 AND IS TALKING ABOUT

THE ATTORNEY GENERAL, MY BRINGING A CASE FOR

SOMEONE WHO HAS NO CLAIM AT ALL.  THAT'S NOT THIS

CASE AND IT'S NOT THE BUCKLAND CASE EITHER.

NOW, LET ME GO TO THEIR SECOND POINT

WHICH HE HAS NOT ADDRESSED WHICH IS IN HIS BRIEFS

BECAUSE I WANT TO DEAL WITH THAT.

GOOGLE CONCEDES THAT THE NAMED PLAINTIFFS

HAVE STANDING FOR OVERCHARGES THAT THEY WERE BILLED

AND PAID BEFORE THEY LEARNED ABOUT HOW THE 120

PERCENT RULE OPERATED.

SO GOOGLE BACKS OFF THE CLAIM IT MADE IN

ITS OPENING BRIEF THAT PLAINTIFFS LACK STANDING AND

NOW WANTS THE COURT TO ACCEPT THE DATES OF OCTOBER

21, 2003 FOR STERN AND THE SECOND QUARTER OF 2004

FOR HANSON AS BEING THE DATES WHEN THEY ACQUIRED

KNOWLEDGE AND WHEN THEIR CLAIM SHOULD BE CUT OFF.

BUT THE QUESTION IS, YOUR HONOR,

KNOWLEDGE OF WHAT? THAT GOOGLE HAD PERIODICALLY
CHARGED THEM 120 PERCENT OF THEIR DAILY BUDGET OR
THAT GOOGLE HAD A POLICY AND PRACTICE WHEREAS
GOOGLE CALLS IT A RULE, 120 PERCENT RULE OF
CHARGING EVERYONE 120 PERCENT OF THEIR DAILY
BUDGET?

TO BE SURE THE PLAINTIFFS COMPLAINED WHEN
THEY LEARNED THAT THEY THOUGHT THAT THEY HAD BEEN
OVERBILLED. THEY COMPLAINED AND ASKED FOR AN
EXPLANATION AND A REFUND. THAT EVIDENCE IN NO WAY
ESTABLISHES AS A MATTER OF LAW THAT THE PLAINTIFFS
WERE THEN AWARE THAT GOOGLE HAD 120 PERCENT RULE
THAT APPLIED TO EVERYONE OR THAT THEY HAD ANY IDEA
OF HOW THAT RULE OPERATED.

LET ME GO TO THEIR FINAL POINT, YOUR
HONOR. AND THIS IS I THINK IMPORTANT FOR CLEARING
UP THE CASE, AND I DO WANT TO MAKE SOME CONCESSIONS
HERE.

WITH GOOGLE'S CLARIFICATION THAT IT DOES
NOT SEEK SUMMARY JUDGMENT AS TO CUSTOMERS WHO PAUSE
AND THE CHANGES IN DAILY BUDGETS WITHIN A DAY HAVE
NOTHING TO DO WITH THE TWO PARTIAL MONTH SCENARIOS
IDENTIFIED BY THE COURT AS GIVING RISE TO A BREACH
OF CONTRACT CLAIM, WE CONCEDE THAT IN NO PERIOD OF
TIME THAT A PARTICULAR DAILY BUDGET WAS IN EFFECT

22

1    AND A CAMPAIGN NOT PAUSED WERE THE NAMED PLAINTIFFS

2    CHARGED MORE THAN THEIR PARTICULAR DAILY BUDGET

3    MULTIPLIED BY THE NUMBER OF DAYS IN THAT PERIOD.

4            IN ITS OPINION DENYING GOOGLE'S FIRST

5    MOTION FOR SUMMARY JUDGMENT, THE COURT IDENTIFIED

6    THREE GROUPS OF ADVERTISERS WHO HAVE VIABLE BREACH

7    OF CONTRACT CLAIMS.

8            HOWEVER, AT HIS DEPOSITION, MR. SAMMET, A

9    GOOGLE REPRESENTATIVE, TESTIFIED THAT GOOGLE NEVER

10   CHARGED ANYONE IN THE FIRST TWO GROUPS WHERE THE

11   CAMPAIGNS INVOLVE NEITHER PAUSING NOR MIDDAY

12   CHANGES IN THE DAILY BUDGET, MORE THAN THE DAILY

13   BUDGET TIMES THE NUMBER OF DAYS WHEN THE DAILY

14   BUDGET WAS IN EFFECT.

15           IN THE RELIANCE OF THAT TESTIMONY WE HAVE

16   TENDERED YESTERDAY TO GOOGLE A THIRD AMENDED

17   COMPLAINT THAT REMOVES THE PARTIAL MONTH SCENARIOS

18   AS BREACH OF CONTRACT CLAIMS.  THIS CONCESSION OF

19   REMOVING THEM DOES NOT AFFECT OUR UCL OR FAL

20   CLAIMS, AND WE STILL ASSERT THAT THE EXCESS CHARGES

21   IN THE DAILY BUDGET WERE DECEPTIVE AND UNFAIR.

22           THE CONCESSION ALSO DOES NOT AFFECT THE

23   NAMED PLAINTIFFS' BREACH OF CONTRACT CLAIMS FOR

24   EITHER BEING PART OF A GROUP OF CUSTOMERS WHO

25   PAUSED THEIR ADVERTISING CLAIMS OR BEING PART OF A

23

FOURTH GROUP THAT THE COURT IDENTIFIED IN A
FOOTNOTE IN ITS LAST OPINION, THAT IS, THOSE WHOM
DURING A CAMPAIGN GOOGLE OVERSERVED OR AS THE COURT
SAID FRONTLOADED AND THEN OVERCHARGED BEFORE THERE
WAS ANY DEFICIT TO MAKE UP.

GOOGLE STATES IN ITS BRIEF THAT ITS
PARTIAL MOTION HAS NOTHING TO DO WITH EITHER THE
EXPECTATIONS OR CONTRACTUAL RIGHTS OF THE
ADVERTISERS WHO CHANGED THEIR DAILY BUDGETS DURING
THE COURSE OF A SINGLE DAY.

DURING SAMMET'S DEPOSITION TESTIMONY WE
LEARNED, YOUR HONOR, THAT WHAT THEY DO, WHEN YOU
CHANGE YOUR BUDGET DURING THE COURSE OF THE DAY,
THEY TAKE THE HIGHEST BUDGET IT WAS DURING THE
COURSE OF THE DAY.

SO, FOR EXAMPLE, IN THE FIRST FEW HOURS
OF THE DAY IT WAS $100. AND THE ADVERTISER REDUCES
IT, AS HE CAN, TEN TIMES DURING THE DAY HE CAN
REDUCE USE AMOUNT OF HIS BUDGET. THEY STILL CAN'T
APPLY THE 120 PERCENT RULE TO THE HIGHEST THE DAILY
BUDGET EVER WAS.

WE CLAIM THAT THAT WAS ITSELF A DIFFERENT
BREACH OF CONTRACT THAN WE HAVE ALLEGED. IT'S
INCLUDED IN OUR THIRD AMENDED COMPLAINT AND, THAT
IS, YOU CAN'T TELL ADVERTISERS YOU CAN CONTROL HOW

24

MUCH YOU SPEND IN A DAY, NOT IN A SEGMENT OF A DAY
BUT YOU CAN CONTROL HOW MUCH YOU SPEND IN A DAY BY
LOWERING YOUR BUDGET THROUGH THE DAY AT LEAST TEN
TIMES.

AND WE CLAIM THAT WHERE THEY CONTINUED TO
USE THE HIGHEST SEGMENT OF THE DAY, THE FIRST
SEGMENT WHERE THE BUDGET WAS LOWERED DURING THE
DAY, THAT IS A CLEAR BREACH OF CONTRACT.

THE COURT:  LET ME UNDERSTAND -- I
UNDERSTAND YOUR ARGUMENT AND MUCH OF WHAT YOU'RE
NOW TELLING ME I UNDERSTAND FROM THE PLAINTIFFS'
POSITION, THIS THIRD AMENDED COMPLAINT, IS THAT
SOMETHING THAT YOU'RE DOING BY STIPULATION?

MR. SUSMAN:  I HAVE GIVEN -- YOUR HONOR,
IT WAS IN THE COURSE OF GETTING READY FOR THIS THAT
I TRIED TO CLEAN IT UP.  I SENT IT TO THEM
YESTERDAY.  THEY HAVE A RED LINED COPY.  THEY HAVE
NOT HAD AN OPPORTUNITY TO LOOK AT IT.  THEY WILL --
I'LL ASK THEM WHETHER THEY WILL CONSENT AND IF THEY
WILL NOT, WE WILL HAVE TO FILE A MOTION.

MR. BIDERMAN:  YOUR HONOR, WE GOT IT LATE
IN THE EVENING LAST NIGHT.  WE HAVEN'T REVIEWED IT.

THE COURT:  WELL, I WON'T CONSIDER
ANYTHING ABOUT THAT UNTIL I HAVE IT BEFORE ME.

MR. BIDERMAN:  THAT'S FAIR.

1          THE COURT:  YOU RESERVED SOME TIME FOR

2    REBUTTAL.

3          MR. BIDERMAN:  I DID, YOUR HONOR.  JUST

4    ON THE -- THE PLAINTIFFS' CAR WASH EXAMPLE ISN'T,

5    IN FACT, EXACTLY CORRECT BECAUSE YOU HAVE TO

6    REMEMBER THAT THESE PLAINTIFFS DON'T ADVERTISE FOR

7    MORE THAN ONE DAY.

8          THE CAR WASH EXAMPLE WOULD BE IF YOU GO

9    THROUGH THE CAR WASH ON DAY ONE AND YOU DON'T GET

10   YOUR DEODORIZER AND YOU GO THROUGH THE CAR WASH ON

11   DAY TWO AND YOU PAY -- I'M SORRY.  YOU GO THROUGH

12   THE CAR WASH ON DAY ONE AND YOU SAY I AGREE I'LL

13   TAKE THE CAR WASH AND THE DEODORIZER.  YOU GO

14   THROUGH THE CAR WASH ON DAY ONE, YOU DON'T GET THE

15   DEODORIZER.  YOU GO THROUGH THE CAR WASH ON DAY

16   TWO, WE GIVE THE DEODORIZER ON DAY TWO.

17          THE COURT:  AND I WANTED THE DEODORIZER

18   ON DAY ONE.  WHAT IF I HAD A HOT DATE?  IT DOESN'T

19   DO ME ANY GOOD ON DAY TWO.

20          MR. BIDERMAN:  AND IF THEY WANT, THAT'S

21   THE KIND OF EVIDENCE WE WERE LOOKING AT.  THEY

22   DIDN'T HAVE THE HOT DATE EVIDENCE, JUDGE.

23          THE COURT:  I UNDERSTAND THE PROBLEM.  I

24   UNDERSTAND THE PROBLEM.  I THOUGHT YOU ALL WERE

25   GOING TO RESOLVE THIS CASE AFTER MY LAST ORDER.

1      I HAD PROMISES FROM YOU ALL THAT YOU WERE

2   CLOSE TO RESOLVING THE CASE, AND YOU GAVE US ONE

3   MORE CLARIFICATION AND I WILL GIVE YOU

4   CLARIFICATION ON THIS.

5          AND I DO BELIEVE THAT THERE IS STANDING

6   ALLEGED, AND I'LL PUT IT IN WRITING SO THAT YOU

7   HAVE IT BECAUSE I CONTINUE TO REGARD THE

8   REPRESENTATION OF A DAILY BUDGET AS A MATTER OF

9   SUBSTANCE.  AND ALTHOUGH OUT OF THE REALITIES OF

10  THE WORLD BILLINGS ARE DONE ON PERIODS OTHER THAN

11  DAYS, TECHNICALLY A PERSON CAN SAY, I ONLY WANT TO

12  ADVERTISE ON A SINGLE DAY AND EACH DAY THEN BECOMES

13  A MATTER OF A NEW CONTRACT, A NEW BUDGET, A NEW

14  PERIOD FOR BILLING PURPOSES AND IT SEEMS TO ME THAT

15  AS LONG AS IT'S CALLED DAILY BUDGET, YOU HAVE TO

16  LIVE UP TO THAT WITH RESPECT TO CONSUMER

17  EXPECTATIONS.

18          IT WOULD BE EASY TO CHANGE IT TO A

19  PERIODIC BUDGET BY SIMPLY CALLING IT A PERIODIC

20  BUDGET AND BECAUSE I THINK ON A CONTRACTUAL BASIS

21  IT IS EXPLAINED TO BE A PERIODIC BUDGET BUT THAT

22  DOESN'T END THE STATUTORY OBLIGATION TO CONSUMERS

23  TO TREAT IT AS YOU CALL IT WHICH IS AS A DAILY

24  BUDGET.

25          SO I AM INTENDING TO DENY THE MOTION FOR

27

PARTIAL SUMMARY JUDGMENT AS IT'S PHRASED ON THIS
BASIS.

THERE ARE SOME OTHER THINGS IN HERE THAT
WE HAVEN'T TALKED ABOUT HERE TODAY THAT THE COURT
HAS CONSIDERED, BUT IT SEEMS TO ME THAT THIS CASE
HAS LANGUISHED A LITTLE BIT BASED UPON THIS.

I'M HEARING THAT WE'RE NOT AT A POINT --
ARE YOU HERE TODAY FOR CASE MANAGEMENT?

MR. SUSMAN:  YES, WE ARE, YOUR HONOR.

MR. BIDERMAN:  WE HAVE ONE AT 10:00, YOUR
HONOR.

THE COURT:  LET ME HAVE YOU STAND BY,
TOO.  I HAVE ONE MORE MOTION I THINK.

MR. BIDERMAN:  SURE.

THE COURT:  AND THEN WE CAN TALK ABOUT A
SCHEDULE OF WHAT YOU NEED TO DO NEXT ANTICIPATING
THE ORDER THAT I INDICATED.

MR. SUSMAN:  THANK YOU, YOUR HONOR.

MR. BIDERMAN:  AND I WOULD JUST ASK THE
COURT TO CONSIDER, BECAUSE IT WILL HELP IN
ASSESSING THE CLAIMS AND RESOLUTION ENTERING THE
ORDER, WHICH IS ESSENTIALLY OUR FALLBACK POSITION
WHICH IS BECAUSE THERE IS A CAUSATION ELEMENT IN
17204, THAT IS, THE DAMAGES HAVE TO BE, QUOTE, "AS
A RESULT OF THE VIOLATION" WITHOUT SAYING WHEN THEY

28

LEARNED OR WHAT IS SUFFICIENT TO CAUSE THEM TO
LEARN.  ONCE THEY LEARNED OF THE WAY THAT THEY DID
CHARGE FOR OUR BILLING, I DO NOT BELIEVE THAT THEY
CAN SAY THAT THE QUOTE-UNQUOTE, "FALSE
ADVERTISING," SOMEHOW CAUSED THEIR INJURY AND THAT
WILL HELP US IN TERMS OF ASSESSING THE CASE.

          MR. SUSMAN:  I'M NOT REALLY GOING TO HELP
VERY MUCH, YOUR HONOR, BECAUSE I NEVER CONTESTED
THAT.  I MEAN, I'M NOT GOING TO SAY -- THE QUESTION
IS WHEN WE LEARNED WE WERE BEING OVERBILLED VERSUS
WHEN WE LEARNED THEY HAD A POLICY OF OVERBILLING
PEOPLE AND COMPLAINING THAT IT WASN'T GOING TO DO
ANY GOOD.

          AT THE LATER POINT IN TIME, WE CAN'T
CONTINUE TO BE DECEIVED AND RECOVER FOR IT.  I
READILY ADMIT THAT.  IT'S NOT EVEN AN ISSUE HERE.
SO YOU DON'T HAVE TO ENTER SOME DECLARATORY
JUDGMENT ON SOMETHING THAT IS NOT EVEN AN ISSUE.

          THEIR PAPERS WANTED YOU TO PICK TWO DATES
WHICH WERE THE DATES ESTABLISHED BY SOME DISCOVERY
THUS FAR OF WHEN THEY FIRST COMPLAINED ABOUT BEING
OVERBILLED.  THAT'S NOT THE SAME AS KNOWLEDGE OF
THE 120 PERCENT RULE.

          AND SO THAT WOULD BE APPROPRIATE.  AND
THAT'S NOT GOING TO INTERFERE WITH OUR SETTLEMENT

1    OF THE CASE.

2              THE COURT:  LET'S TALK AT THE CASE

3    MANAGEMENT CONFERENCE MORE ABOUT THIS.

4              MR. SUSMAN:  THANK YOU.

5              MR. BIDERMAN:  THANK YOU, YOUR HONOR.

6              (WHEREUPON, THE PROCEEDINGS IN THIS MATTER

7    WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25