LESTER L. LEVY (Admitted *Pro Hac Vice*)
MICHELE FRIED RAPHAEL (Admitted *Pro Hac Vice*)
WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Telephone:  (212) 759-4600
Facsimile:  (212) 486-2093
E-Mail:  llevy@wolfpopper.com
E-Mail:  mraphael@wolfpopper.com

MARC M. SELTZER (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
E-Mail:  mseltzer@susmangodfrey.com

Attorneys for Plaintiffs
(See Signature Page for Additional
Representative Plaintiffs' Counsel)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>GOOGLE, INC.,<br><br>                    Defendant. | Case No. C 05-03649 JW PVT<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION CERTIFICATION AND SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 14, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 8 |

i
**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

Dockets.Justia.com

**TABLE OF CONTENTS**

I.     SUMMARY OF ARGUMENT ............................................................. 1

II.    BACKGROUND ......................................................................... 2

       A.     Procedural and Factual Background of the Litigation ................... 2

       B.     The Settlement Agreement ................................................ 5

       C.     Release ....................................................................... 6

       D.     Notice to the Class ........................................................ 6

       E.     Exclusion from the Class ................................................. 7

       F.     Class Member Objections ................................................ 8

       G.     Claims Administration ................................................... 8

       H.     Continued Jurisdiction ................................................... 8

III.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
       WARRANTED ......................................................................... 9

       A.     Numerosity ............................................................... 10

       B.     Commonality ............................................................. 10

       C.     Typicality ................................................................. 11

       D.     Fair and Adequate Representation ..................................... 12

       E.     The Requirements of Rule 23(b)(3) Are Satisfied .................. 13

              1.     Common Questions of Law and Fact Predominate over Individual
                     Questions ......................................................... 13

              2.     A Class Action Will Provide A Superior Method For Adjudicating
                     This Case ......................................................... 14

IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
       WARRANTS FINAL APPROVAL ................................................ 15

       A.     The Standard for Judicial Approval of Class Action Settlements Is Met ...... 15

       B.     The Benefits to the Class of Settling Outweigh the Possibility of
              Achieving a Larger Recovery If Litigation Were to Continue .................. 17

ii

PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND
SETTLEMENT AND MEM. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965174v1/010480

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    Plaintiffs' Extensive Investigation and the Developed Stage of
Proceedings Thoroughly Familiarized Counsel with the Strengths and
Weaknesses of the Case ................................................................................. 21

D.    Experienced Counsel's Endorsement of the Agreement, Reached Through
Arm's-Length Negotiations, Favors Approval of the Settlement ................................. 21

E.    The Reaction of the Class Supports Settlement ........................................................ 22

V.    THE OBJECTIONS TO THE PROPOSED SETTLEMENT SHOULD BE
OVERRULED ............................................................................................................. 22

VI.   CONCLUSION ................................................................................................................ 23

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND**
**SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

## TABLE OF AUTHORITIES

**Cases**

*Browder v. Fleetwood Enters., Inc.*, No. ED CV 07-01180 SGL, 2008 WL 4384245
(C.D. Cal. Sept. 4, 2008)...............................................................................11

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) ........................................10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).....................................19

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..............................................21

*Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992) .....................................12

*Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 WL 1875444 (E.D.
Cal. June 30, 2006)..........................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)............................10

*Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627 (N.D. Cal. 2007) ...............................10

*Ellis v. Navel Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)..................................21

*Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979)............................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... passim

*In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999) ................................................10

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) .......................................10

*In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727 (N.D. Ill. 1977) .............................15

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ...........13

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)..........12, 13, 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ........21

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008) ...................9

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ...........................19

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007)...............................12

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..............................................................9

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.* 221 F.R.D. 523 (C.D. Cal. 2004) .........19, 22

iv
**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482 (C.D. Cal. 2006) ....................................................12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................... 15, 16, 17, 18

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) ...............................................14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)....................................................................11

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000) ...........................................13

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992)........................................14

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005) ...........................................11

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003) ...........................................13

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .....................................................16

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)......................................................16

## Rules

FED. R. CIV. P. 23 ................................................................................................................... passim

## Treatises

1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed. 1985).....................................................................10

5 MOORE'S FEDERAL PRACTICE § 23.164 ....................................................................................16

5 MOORE'S FEDERAL PRACTICE § 23.22 .....................................................................................10

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on September 14, 2009, at 9:00 a.m., or soon thereafter as the matter may be heard, in Courtroom 8 of the United States District Court for the Northern District of California, San Jose Division, Plaintiffs will, and hereby do, move the Court for an order providing final approval of class certification and settlement.

This motion is based on the attached Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement; the declarations of Rachel S. Black and Lester L. Levy in support thereof, filed concurrently herewith; the declaration of Markham Sherwood of Gilardi & Co. LLC, filed concurrently herewith; Plaintiffs' Response to Class Member Objections, filed concurrently herewith; the Settlement Agreement and Release ("Settlement Agreement") entered into between Google and the Representative Plaintiffs on March 17, 2009 (Docket Item No. 315-2, also attached hereto as Exhibit 1); all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing.

<u>**Memorandum of Points and Authorities**</u>

**I.    <u>SUMMARY OF ARGUMENT</u>**

Plaintiffs respectfully submit this memorandum in support of their motion for final approval of class certification and settlement, which this Court preliminarily approved on May 12, 2009. Representative Plaintiffs' Counsel firmly believe that the Settlement, which has been approved by the Representative Plaintiffs, is fair and reasonable.

After conducting an extensive investigation into Plaintiffs' claims, analyzing thousands of pages of documents produced by Google, serving and responding to numerous discovery requests, interviewing potential witnesses, consulting with expert consultants, deposing Google employees, presenting Representative Plaintiffs for deposition, and opposing several motions to dismiss and for summary judgment, Representative Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate in light of the certainty of a recovery versus the risks of no recovery at trial, past experience in other class actions, and the serious disputes between the parties concerning whether there was a violation of the law or, if a violation occurred, whether there were any overcharges at all.

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

The Settlement, which will result in substantial benefit to the Class, is the result of extensive arm's-length negotiations, including an early mediation that failed to procure a settlement and renewed negotiations, that took place over a period of nearly three months in a case that was intensely litigated for three and one-half years. Thus, Representative Plaintiffs' Counsel recommend that the Settlement be approved by this Court.

Plaintiffs submit that the four objections should be overruled because, as set forth in Plaintiffs' Response to Class Member Objections, filed concurrently herewith, none of the objectors included the required proof demonstrating that each objector was an AdWords Advertiser and none raise a meaningful objection to the settlement terms.

## II. BACKGROUND

### A. Procedural and Factual Background of the Litigation

Plaintiffs filed their original Class Action Complaint on August 3, 2005, in the Superior Court of the State of California, County of Santa Clara, alleging causes of action against Google for unfair competition, breach of contract, negligent misrepresentation, unjust enrichment, constructive trust, breach of the implied covenant of good faith and fair dealing, fraud, and injunctive and declaratory relief. (*See* Docket Item No. 1, Ex. A.) In preparation for filing the complaint, Representative Plaintiffs' Counsel conducted an extensive factual investigation, including discussions with AdWords Advertisers, reviewing numerous AdWords account records, and reviewing AdWords account agreements, tutorials, and other public materials concerning the AdWords program. Declaration of Lester L. Levy in Support of Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement, Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Class Representative Incentive Compensation Award, and Plaintiffs' Response to Class Member Objections ("Levy Decl.") ¶¶ 4, 6 (filed concurrently herewith). Representative Plaintiffs' Counsel also conducted an extensive legal investigation into the causes of action most appropriate based on their factual investigation and the potential defenses that Google might assert. *Id.*

On September 12, 2005, Google removed the action from the Superior Court to this Court. (Docket Item No. 1.) After Google filed its first motion to dismiss (*see* Docket Item No. 14), Plaintiffs

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

filed a First Amended Class Action Complaint alleging claims for breach of contract; breach of implied covenant of good faith and fair dealing; unfair competition under the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*; false advertising under the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500, *et seq.*; and unjust enrichment. (Docket Item No. 18.) On January 3, 2006, Google filed a motion to dismiss Plaintiffs' unjust enrichment claim. (Docket Item No. 30.) Plaintiffs opposed the motion in briefs filed on February 2, 2006. (Docket Item Nos. 34, 35.) On April 12, 2006, the Court granted Google's motion to dismiss while granting Plaintiffs leave to amend. (Docket Item No. 46.)

On May 4, 2006, Plaintiffs filed their Second Amended Class Action Complaint ("SAC"), the operative complaint in this matter. (Docket Item No. 47.) The SAC alleges five causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) UCL; (4) FAL; and (5) unjust enrichment. (*Id.*) The SAC seeks damages, restitution, and injunctive relief to remedy Google's practices of (1) charging its AdWords advertisers up to 120% of their per day Daily Budget on any given day (the "120% claims") and (2) charging AdWords customers who paused their campaigns more than their per day Daily Budget times the number of days their campaigns were not paused during the billing period (the "pausing claims").

Google moved unsuccessfully to dismiss Plaintiffs' UCL claim as alleged in the SAC. (Docket Item No. 52.) Google subsequently filed three separate motions for partial summary judgment. (Docket Item Nos. 85, 202, 234). The Court dismissed with prejudice Plaintiffs' second and fifth causes of action for breach of the implied covenant of good faith and fair dealing and unjust enrichment. Google also successfully argued that its practice of charging AdWords Advertisers up to 120% of their Daily Budget on any given day does not, in and of itself, constitute breach of contract. The Court held that triable issues of fact existed as to whether Google's practice of charging up to

PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND
SETTLEMENT AND MEM. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965174v1/010480

120% of an AdWords Advertiser's per day Daily Budget violates the UCL and FAL and whether Google's pre-September 2006 pausing practices constitute a breach of contract.[1]

During the hearing on its most recent motion for summary judgment, Google represented to the Court that it would be filing yet another motion for summary judgment to dismiss Plaintiffs' 120% claims under the UCL and FAL.  (*See* Docket Item No. 295.)  Google indicated that it had newly discovered evidence proving that Google had disclosed to potential advertisers during the AdWords sign-up process that it may charge AdWords customers up to 120% of their per day Daily Budget on any day in order to make up for underdelivery of ads on any other day during that same billing period. Google provided Plaintiffs with copies of the purported AdWords sign-up screens, which contained disclosures that raised issues as to Plaintiffs' ability to prove their 120% claims under the UCL and FAL, particularly for members of the Class who signed up for AdWords prior to June 2005.

Based on this evidence, Plaintiffs intended to seek leave to file a Third Amended Complaint to, among other things, dismiss their 120% claims under the UCL and FAL for those Class Members who signed up for AdWords prior to June 2005, and to name a new class representative who had signed up for AdWords after June 2005.  Google indicated that it would oppose Plaintiffs' expected motion for leave to file the Third Amended Complaint.

The Settlement was achieved after years of intense litigation, extensive briefing and pre-trial discovery, one unsuccessful mediation, and arduous arm's-length negotiations.  For three and one-half years, Representative Plaintiffs' Counsel conducted an extensive investigation into Plaintiffs' claims. Levy Decl. ¶¶ 4, 6.  As part of this investigation, Plaintiffs propounded interrogatories and document requests to Google and obtained hundreds of thousands of pages of documents produced by Google. *Id.*; Declaration of Rachel S. Black in Support of Plaintiffs' Motion for Final Approval of Class Action

---

[1] Plaintiffs' pausing claims are segregated into pre- and post-September 2006 claims because, in September 2006, Google changed its practice of treating a paused campaign as underdelivered.  (*See* Docket Item No. 237 ¶ 6.)  When Plaintiffs initially filed this lawsuit, Google treated a paused day as an underdelivered (or shortfall) day for the month or budget period, and thus would use paused days to absorb overdelivery on other days in the billing period.  (*Id.*)

4

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

Certification and Settlement, Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Class Representative Incentive Compensation Award, and Plaintiffs' Response to Class Member Objections ("Black Decl.") ¶ 3 (filed concurrently herewith).  Representative Plaintiffs' Counsel also conducted depositions of key Google employees and defended Representative Plaintiffs in depositions conducted by Google.  *Id.*

On December 9, 2008, the Court set February 2, 2009, as the date for the close of all discovery. (Docket Item No. 295.)  The parties made diligent efforts to settle the action, including two face-to-face meetings in December and January.  (*See* Docket Item No. 306 ¶ 2.)  During the January meeting, the parties believed that the discussions had progressed to such a point that they agreed to request a 45-day moratorium for all litigation activities so they could focus on attempting to settle the action. (*Id.* ¶ 3.)  On January 8, 2009, the parties requested a 45-day continuance of, *inter alia*, the discovery deadline.  (Docket Item No. 305.)  On January 23, 2009, the Court granted the parties' request in part, setting March 2, 2009, as the close of all discovery.  (Docket Item No. 308.)  The parties negotiated a settlement shortly thereafter (*see* Docket Item No. 310), and after several weeks of negotiation, they agreed on the terms reflected in the Settlement Agreement in its current form on March 17, 2009.  (*See* Docket Item No. 315-2, also attached as Exhibit 1.)

## B.   The Settlement Agreement

Under the terms of the Settlement Agreement (Docket Item No. 315-2), Google has agreed to settle the Class Members' claims on the following terms:

- Google has agreed to pay $20,000,000, together with interest on said sum from March 27, 2009 (the "Settlement Proceeds"), in a combination of cash and AdWords Credits, as stated in the proposed Plan of Allocation, inclusive of any Fee and Expense Award.  Google has already deposited the $20 million into an escrow account, per the terms of the Settlement Agreement.

- In addition to the Settlement Proceeds, Google has agreed to pay for all administrative costs and expenses incurred in connection with providing notice to the Class and locating class members, and will pay all fees and costs incurred by the Claims Administrator for administering and distributing the Settlement Proceeds to the Class Members.

- Representative Plaintiffs' Counsel successfully negotiated a distribution procedure such that the Settlement Proceeds would be allocated to and delivered to Class Members without the need for them to file proofs of claim.

5

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

Under the terms of the Settlement Agreement, Class Members who have an AdWords balance due to Google that is <u>greater</u> than their settlement distribution will receive their distribution in the form of AdWords Credits, which will offset amounts that the Class Member already owes to Google. *See* Settlement Agreement ¶ 1.27. Class Members who have a balance due to Google that is <u>less</u> than the Class Member's settlement distribution may elect to receive cash in lieu of AdWords Credits for the amount that is in excess of the amount owed to Google. Class Members who have no balance due to Google on their AdWords account will automatically receive their settlement distribution in cash. Thus, under the terms of the Settlement, Class Members will either receive cash or the equivalent of cash, in the form of a reduction of the amount already owed to Google. This is, therefore, not a coupon settlement and Class Members are not required to submit a claim form to receive the benefits of the Settlement.

**C.    <u>Release</u>**

The Settlement Agreement contains a release, pursuant to which all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, employees, officers, directors, attorneys, representatives, affiliates, agents, and any persons or entities they represent, shall be deemed to release and forever discharge Google from all Released Claims (as defined in the Settlement Agreement), and shall forever be barred and enjoined from prosecuting, commencing, instituting, or asserting all or any of the Released Claims in any action or other proceeding in any court of law or equity, arbitrational tribunal, administrative or other forum, whether directly, representatively, derivatively, or in any other capacity against Google. *See* Settlement Agreement ¶ 4.1.

**D.    <u>Notice to the Class</u>**

Class notice was disseminated pursuant to this Court's Order Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement, issued May 12, 2009. (Docket Item No. 319.) On June 9, 2009, the Claims Administrator (Gilardi & Co., LLC) distributed via email to 1,129,685 members of the Class (as identified by Google) the Notice of Pendency and Proposed Settlement of Class Action and Settlement Hearing ("Notice"), substantially in the form attached as

6

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

Exhibit 1 to the Court's May 12, 2009, Order. Declaration of Markham Sherwood ("Sherwood Decl."), filed concurrently herewith, ¶ 3 & Ex. A (Notice). Members of the Class whose email address was no longer working or was unknown received the Notice via US mail. *Id.* ¶ 4. The Claims Administrator also posted the Notice, the Preliminary Approval Order, the Settlement Agreement, and a chart with the exclusion and objection deadlines on a website, www.adwordscustomersettlement.com; and published a summary notice in *The Wall Street Journal* and *USA Today*. *Id.* ¶¶ 5-6 & Ex. B (Summary Notice).

The Court-approved Notice fully comports with the requirements of Rule 23(c)(2)(B) and (e)(1) and due process because it constitutes the best notice practicable under the circumstances. It fairly apprises members of the Class of the essential terms of the Settlement and advises members of the Class of their rights thereunder. It advises Class Members of the pendency of this action, the proposed settlement, and Representative Plaintiffs' Counsel's application for a fee and expense award and for an incentive compensation award to Representative Plaintiffs; describes the facts underlying this action; states who members of the Class are; provides information regarding attorneys' fees and how Class Members may object to the proposed settlement; and clearly indicates contact information for both Representative Plaintiffs' Counsel and defense counsel. This is more than adequate notice under the circumstances.

E. **Exclusion from the Class**

Class Members had the opportunity to request exclusion from the Class by submitting, by first-class mail so that it was actually received by the Claims Administrator no later than July 14, 2009, a written request for exclusion from the Class. A total of 75 members of the Class served requests for exclusion.[2] Sherwood Decl. ¶ 7 & Ex. C.

---

[2] The Claims Administrator received the requests of sex members of the class after the July 14, 2009 deadline. Sherwood Decl. ¶ 7 & Ex. 3.

PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND
SETTLEMENT AND MEM. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965174v1/010480

### F.   Class Member Objections

Class Members who chose to object to the proposed Settlement were required to file and serve Representative Plaintiffs' Counsel by hand or by first-class mail on or before July 14, 2009, written objections and copies of all briefs or other papers (including proof of the dates that the person was an AdWords Advertiser).  Four objections were served, none of which provides proof that the objector was an AdWords Advertiser; nor do they specify the dates that the objectors were AdWords Advertisers.

### G.   Claims Administration

Per the terms of the Settlement Agreement, after any Order granting final approval becomes final, Google is to provide the Claims Administrator with AdWords account records sufficient for the Claims Administrator to calculate the Settlement Distribution due to each Class Member under the Plan of Allocation.  Settlement Agreement ¶ 1.27.  Class Members are not required to submit claim forms to receive the benefits of the Settlement.  The Claims Administrator will issue checks to all Class Members who are not Active AdWords Advertisers and to those Active AdWords Advertisers who elect to receive cash in lieu of AdWords Credits per the terms of the Settlement Agreement.  Google is responsible for distributing AdWords Credits.  Within five business days of receiving evidence that Google has distributed and applied the AdWords Credits to Active AdWords Advertisers who did not elect to receive their distribution in cash per the Plan of Allocation, the Claims Administrator is to transfer from the Escrow Account to Google the dollar amount of such AdWords Credits.  A proportionate share of the interest earned on such funds shall be added to the Cash Settlement Proceeds to be distributed to the Class Members.

### H.   Continued Jurisdiction

The Settlement Agreement contemplates that the Court would retain continuing jurisdiction over the Settlement Proceeds and the Parties for the purposes of (a) implementing and effectuating the Agreement; and (b) construing, enforcing, and administering the Settlement Agreement, including the distribution of the Settlement Proceeds to Authorized Claimants.  *See* Settlement Agreement ¶ 4.2.

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

## III.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

In its May 12, 2009, Order granting preliminary approval (Docket Item No. 319), this Court determined that the requirements of Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure are satisfied as to the Class as defined in the Settlement Agreement.  Plaintiffs request the Court to re-affirm its Preliminary Approval Order and certify the proposed Settlement Class.  The Class continues to meet the requirements for certification for the purposes of settlement under Rule 23.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)).  For the purpose of conditionally certifying the class for settlement purposes, the Court evaluates the relevant factors under Rule 23:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *see also In re Wireless Facilities, Inc.*, 253 F.R.D. at 610.

In addition, Plaintiffs must establish that one of the factors under Rule 23(b) is met:  (1) there is a risk of inconsistent or unfair adjudication if parties proceed with separate actions; (2) the defendant acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate to the class as a whole; or (3) common questions of law or fact predominate and class resolution is superior to other available methods for fair and efficient adjudication of the controversy.  FED. R. CIV. P. 23(b).

Here, the Settlement Class satisfies the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation; and additionally satisfies Rule 23(b)(3)'s predominance and superiority requirement, as set forth in full below.

9

PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND
SETTLEMENT AND MEM. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965174v1/010480

## A.   Numerosity

To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999). Plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity requirement. *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal. 2007).

"As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement." *Id.* (citing 5 MOORE'S FEDERAL PRACTICE § 23.22[1][b] (3d ed. 2004)); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members") (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed. 1985)).

Here, the class size exceeds 1.1 million persons and entities. *See* Sherwood Decl. ¶ 3. This undeniably satisfies Rule 23(a)(1)'s numerosity requirement.

## B.   Commonality

Next, Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively," and does not require all questions of fact and law to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, a single common question of law is sufficient to satisfy the commonality requirement. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990–91 (9th Cir. 2006) (affirming class treatment in fraud case, notwithstanding non-identical misrepresentations, where sales agents used a "standardized protocol"). The existence of shared legal issues with divergent factual predicates is also sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon*, 150 F.3d at 1019. Any defense that might be asserted by Google does not destroy commonality. *See, e.g.*, *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (individual statute of limitations defenses did not defeat predominance of common issues).

Commonality exists here because Class Members' claims revolve around Google's online disclosures concerning an advertiser's Daily Budget and Google's practice of charging customers up

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

to 120% of their Daily Budget and treating paused days as underdelivered for determining maximum monthly charges. *See* SAC ¶ 71; *see also Browder v. Fleetwood Enters., Inc.*, No. ED CV 07-01180 SGL, 2008 WL 4384245, at *6 (C.D. Cal. 2008) (holding that commonality existed because defendant was alleged to have given the same defective instruction to all class members); *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 WL 1875444, at *3 (E.D. Cal. June 30, 2006) ("Common questions of fact and law are present where the defendants have engaged in standardized conduct towards members of the proposed class."). Issues common to every member of the class include:

- Whether Google's disclosures concerning Daily Budget were likely to deceive a reasonable consumer;

- Whether Google charged advertisers more than their per day Daily Budget on any given day;

- Whether Google charged Class Members who paused their AdWords campaign in excess of the product of the per day Daily Budget times the number of days that the campaign was not paused during the same billing period;

- Whether Class Members are entitled to restitution; and

- Whether Class Members are entitled to damages for Google's breach of contract, and if so, the proper measure of such damages.

Because this case challenges Google policies that were applied to all members of the Class, under the standard set forth above, this is sufficient to demonstrate commonality under Rule 23(a)(2).

## C.   <u>Typicality</u>

Like commonality, the test for typicality is not demanding and is interpreted under permissive standards. *See Hanlon*, 150 F.3d at 1020. In determining whether typicality is met, "the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

To establish typicality, the representatives' claims need not be identical or even substantially identical to those of the class members. *Hanlon*, 150 F.3d at 1020. Furthermore, it is "not necessary that all class members suffer the same injury as the class representative." *Lozano v. AT&T Wireless*

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

*Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Rather, the representatives' claims simply must be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020; *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 & n.8 (C.D. Cal. 2006) (holding that typicality existed where plaintiffs alleged that defendant committed a single overarching fraudulent scheme, while noting that variations among class member grievances does not defeat typicality).

Here, Plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the claims of the absent Class Members. The claims of Plaintiffs and the other Class Members all arise from the "same course of events"—that is, Google's disclosures concerning the Daily Budget and its billing practices—and each member of the Class would have been required to make the same legal arguments to prove Google's liability. *See* SAC ¶ 72. Plaintiffs' claims are undeniably typical of the claims of the members of the Class.

### D.   <u>Fair and Adequate Representation</u>

Rule 23(a)(4) requires the Court to ensure that "the representative parties will fairly and adequately protect the interests of the class." This inquiry largely duplicates and is subsumed by the inquiry into whether the named plaintiffs' claims are typical of those of the class members. *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 523 (M.D. Ala. 1992). This factor requires (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel who will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. A conflict or potential conflict alone will not, however, necessarily defeat class certification; the conflict must be "fundamental." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).

Under this standard, Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are fully aligned with the Class Members', and no conflict of interest exists. Additionally, Representative Plaintiffs' Counsel are qualified and competent. *See* http://www.susmangodfrey.com (biographies of Stephen D. Susman, Marc M. Seltzer, Rachel S. Black, and Daniel J. Shih); http://www.wolfpopper.com (biographies of Lester L. Levy and Michele Fried Raphael); *see also* SAC ¶ 73.

12

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

### E.      The Requirements of Rule 23(b)(3) Are Satisfied

Once the four prerequisites of Rule 23(a) are satisfied, as in this case, the potential class must also satisfy at least one subpart of Rule 23(b).  Certification under Rule 23(b)(3) is appropriate here. Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that the class action provides a superior method for adjudicating the controversy.  *See* FED. R. CIV. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.

#### 1.      Common Questions of Law and Fact Predominate over Individual Questions

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Visa Check*, 280 F.3d at 136 (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996); *see also Hanlon*, 150 F.3d at 1022. Any defense that might be asserted by Google does not destroy predominance.  *See, e.g.*, *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 39 (1st Cir. 2003) ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members. . . .  Instead, where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses.").

In this instance, Plaintiffs' claims are proven or disproven by evidence that is predominantly common to all members of the class and subject to generalized proof—namely, Google's disclosures concerning the Daily Budget and its billing practices—making these issues eminently appropriate for class treatment.  *See* SAC ¶ 75.

13

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

### 2.   A Class Action Will Provide A Superior Method For Adjudicating This Case

Plaintiffs have also fulfilled the superiority requirement of Rule 23(b)(3). The superiority requirement of Rule 23(b)(3) mandates that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Superiority exists where "the alternative methods of resolution are individual claims for a small amount of consequential damages" and "litigation costs would dwarf potential recovery." *Id.*

Here, a "fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure in this case," because (1) each class member has a relatively small amount of damages, making individual lawsuits impractical, and (2) the class size is so large that individual lawsuits would heavily burden the courts. *Id.*; *see also* SAC ¶ 73. Requiring each of the hundreds of thousands of individual Class Members to bring individual suits would be cost-prohibitive and would consume extraordinary judicial resources. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("What would be unmanageable is the institution of numerous individual lawsuits."); *Visa Check*, 280 F.3d at 146 ("While both the district court and this Court have acknowledged that difficulties in managing this large class action may arise, these problems pale in comparison to the burden on the courts that would result from trying the cases individually."). This is especially true in light of the relatively small amount of damages that each individual class member has suffered. Class members would have little interest in taking the cost-prohibitive route of bringing individual actions against Google. That no other lawsuits are currently pending concerning these same issues (to the parties' knowledge) supports this conclusion. *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 540 (W.D. Wash. 2009) (noting that lack of "any other litigation on this subject matter pursued by potential Class members since the instant class action was filed" supported finding of superiority).

Additionally, certifying the proposed Class will "'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Fifth Moorings*

14

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

*Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (quoting FED. R. CIV. P. 23, Advisory Committee Notes). The words of Judges Will and Robeson in *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977), are instructive here:

> We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits. Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit. While such litigation presents some problems to counsel and the court, these burdens are not nearly as onerous to the judicial system as a series of extended suits against the defendants.
>
> The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions reinforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement.

*Id.* at 733 (citations and quotations omitted).

In sum, because the proposed Class meets both the requirements of Rule 23(a) and the requirements of Rule 23(b)(3), final certification of the Settlement Class should be granted.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Representative Plaintiffs and Google request that this Court grant final approval of the Settlement Agreement not only because public policy favors the settlement of complex class actions such as this one, but also, as demonstrated herein, because the Settlement Agreement has achieved excellent results for the Settlement Class. The settling parties respectfully submit that the proposed settlement is fair, reasonable and adequate and warrants approval by this Court.

### A. The Standard for Judicial Approval of Class Action Settlements Is Met

The Ninth Circuit has recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "This is especially true in complex class action litigation . . . ." *Id.* Class actions are particularly well suited for compromise because of difficulties of proof, uncertainties of the outcome, and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting

15

PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965174v1/010480

litigation," and "[t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In deciding whether to approve a proposed settlement, the Court must determine whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Hanlon,* 150 F.3d at 1026; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also* 5 MOORE'S FEDERAL PRACTICE § 23.164[1]. The Ninth Circuit has set forth the following list of factors that may be relevant in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted).

The district court must exercise sound discretion in approving a settlement. The district court's discretion, however, is to be exercised in light of the recognition that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* Thus, the Ninth Circuit limits the inquiry as follows:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be weighed against a hypothetical or speculative measure of what <u>might</u> have been achieved by the negotiators.

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

*Id.* Here, the factors identified by the Ninth Circuit support approval of the Settlement Agreement.

**B.    The Benefits to the Class of Settling Outweigh the Possibility of Achieving a Larger Recovery If Litigation Were to Continue**

Although Plaintiffs believe their claims have merit, they recognize that they faced significant legal, factual, and procedural obstacles that posed substantial risks to their likelihood of success on the merits.  In light of the strengths and weaknesses of the case, Representative Plaintiffs' Counsel believe that the Settlement is more than reasonable because it achieves a significant benefit for the Class where failure before or at trial was possible.  Moreover, were the case to be tried, any recovery would likely be years away, given the strong likelihood of an appeal of any verdict or decision in Plaintiffs' favor, and such continued litigation would be expensive.

The significance of the benefit of the Settlement is of particular importance here, given Google's recently discovered purported sign-up screen shots affecting the strength of Plaintiffs' and the Class's 120% claims.  As set forth in Part II.A, *supra*, in December 2008, Google informed the Court that it would be moving for summary judgment on Plaintiffs' 120% claims in light of the disclosures it claimed to have made to AdWords customers during the sign-up process concerning Google's practice of charging AdWords customers up to 120% of their per day Daily Budget on any day in order to make up for underdelivery of ads on any other day during that same billing period.  Indeed, based on evidence provided by Google, Plaintiffs were prepared to dismiss their 120% claims under the UCL and FAL for those Class Members who signed up for AdWords at any time prior to June 2005.  Google argued that the disclosures supported the dismissal of Plaintiffs' UCL and FAL claims for the <u>entire</u> Class period, and that the remaining pausing claims had little value in damages.

Google's vigorous defense of this action also highlights the significance of the benefit of the Settlement to the Class.  Throughout this litigation and during settlement discussions, Google argued vigorously that it has no liability whatsoever to the Class and that, even if liability could be established, the total amount of the restitution that could be claimed by the members of the Class was small, was limited to the first billing cycle, and was required to be offset by any benefits obtained as a result of the overdelivered ads.  Other highly contested issues included, among many others, questions of contract creation and interpretation, whether Class Members had seen various allegedly false or

17

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

potentially confusing statements by Google, whether those statements were false or confusing, whether reasonable reliance was required for each Class Member, and if so, whether Class Members reasonably relied on those statements, whether or when Class Members became aware of Google's actual practices, whether such awareness affected a Class Member's claim to recover for alleged ongoing overcharges, and whether offsets for value received were required and how such offsets should be calculated. Moreover, substantial portions of Plaintiffs' case at trial, and Google's defenses, were expected to rely upon the testimony of expert witnesses. The parties' respective experts were expected to offer sharply conflicting testimony and opinions on the very complex liability and recovery issues presented by this case if it were to be tried, and would be extremely expensive. Additionally, during the pendency of this litigation, Google eliminated its practice of treating fully paused days as underdelivered days and greatly enhanced its disclosures concerning its practice of charging AdWords Customers up to 120% of their per day Daily Budget on any given day, which also affected the amount of recovery and provides additional benefit to the Class outside of the Settlement.

In light of the aforementioned issues and Google's vigorous defense, and with the discovery deadline rapidly approaching, the limitation of the 120% claims, and the limited damages of Plaintiffs' pausing claims, Plaintiffs were well aware that the likelihood of success at trial and on appeal would be uncertain. Moreover, even if Plaintiffs ultimately prevailed on the merits at trial, Google would certainly appeal, posing further risk to the Class, and the cost of litigating the dispute would sharply increase.

In determining whether to accept the terms of the negotiated Settlement, Representative Plaintiffs' Counsel assessed the chances of ultimate success on the merits in light of the substantial benefits that the Settlement Agreement will provide to Class Members. Given the complexities of this litigation and the continued risk and expense if the parties were to proceed to trial and through likely appeals, Plaintiffs determined that the Settlement presented a reasonable resolution of this action and eliminates the risk that the Class might otherwise recover nothing. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had

18

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

they proceeded with litigation." (internal quotation marks omitted)).  Litigating this case through trial would be a long, arduous process requiring great expenditures of time and resources by both the Court and the parties.  The Settlement confers immediate and substantial benefits on Class Members while eliminating a substantial risk of continued litigation under circumstances where a favorable outcome is uncertain.

Moreover, the $20 million Settlement represents approximately more than 10% of what Representative Plaintiffs' Counsel estimated would be the <u>maximum</u> possible recovery on the 120% UCL claim, and is likely a much higher percentage of the alleged overcharges.  This is well within the range of reasonableness.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*  221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Prior to negotiating the Settlement, Representative Plaintiffs' Counsel estimated the range of potential recovery for the 120% claim based on publicly available information and concluded that the absolute maximum was $197 million, and that it was highly likely that overcharges were much lower. Black Decl. ¶ 4.  In an SEC filing in December 2008, Google reported total advertisers for 2003 to be 89,000, for 2004 to be 201,000, for 2005 to be 360,000, for 2006 to be 600,000, and for 2007 to be 1 million.  *See*  http://bits.blogs.nytimes.com/2009/01/08/google-1-million-advertisers-in-2007-more-now/ (last visited August 17, 2009).  Of that number, not all would be members of the Class, because the class definition excludes resellers and includes only those who signed up for AdWords after June 1, 2005.  Thus, Representative Plaintiffs' Counsel estimated that there were approximately 900,000 members of the Class.  Black Decl. ¶ 5.

Publicly available documents reported that each AdWords Advertiser spends approximately $16,000 per year on Google advertising.  *See*  http://bits.blogs.nytimes.com/2009/01/08/google-1-

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

million-advertisers-in-2007-more-now/ (last visited August 17, 2009).  This translates to an average Daily Budget of $43.83, a maximum monthly charge (for a thirty-day period) of $1,314.90, and a maximum daily charge of $52.59 (120% of $43.83).  If an AdWords Advertiser has a per day Daily Budget of $43.83 during a thirty-day month, the maximum number of days that Google can charge the advertiser 120% of the Daily Budget is 25 ($52.59 x 25 = $1314.75), provided that only $0.15 in advertising charges are incurred over the remaining five days (for a maximum monthly charge of $1,314.90, or 30 times the Daily Budget of $43.83).  Thus, the maximum overcharges over a thirty-day period are $219 ($8.76 overcharge times 25 days).  Assuming that 900,000 Class Members have 120% claims, that would translate to <u>maximum</u> overcharges totaling $197 million.[3]  Black Decl. ¶ 6.

Representative Plaintiffs' Counsel believe that $197 million significantly overestimates the total overcharge given that (1) Plaintiffs' UCL and FAL claims were strongest during the period of time when the disclosures were inadequate—from June 2005 through October 2006—which would significantly limit the recovery; (2) a small number of advertisers would actually achieve maximum overcharges during the first month of advertising, because it would likely require two fully paused days followed by maximum overcharges, and Google ceased treating fully paused days as underdelivered in September 2006; and (3) Representative Plaintiffs' actual overcharges were proportionately lower in comparison.  Indeed, Plaintiff CLRB Hanson LLC was overcharged by $48.77 during its first month advertising on AdWords, although it spent an average of over $113,000 per year on AdWords—significantly more than the $16,000 annual average of the typical AdWords advertiser.  *Id.* at ¶ 8.

Finally, Plaintiffs also estimated their pausing claims to be in the single millions.  As detailed above, Google changed its practice in September 2006 and no longer treated fully paused days as

---

[3] For the purpose of this analysis, Representative Plaintiffs' Counsel assumed that Class Members would be entitled to restitution for overcharges that occurred before they were aware of Google's policy, and that it was likely that they would only be entitled to recover their first month of overcharges.  Arguably, after receiving their first AdWords bill showing charges of up to 120% of their per day daily budget, they would have become aware of Google's 120% policy.  Black Decl. ¶ 7.

20

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

underdelivered.  Counsel for Google informed Representative Plaintiffs that overcharges due to paused days was less than $5 million for a world-wide class.  *Id*. ¶ 4.

Based on this analysis, their investigation of the claims, and the significant legal, factual, and procedural obstacles that posed substantial risks affecting Plaintiffs' likelihood of success on the merits, Representative Plaintiffs' Counsel believe that the Settlement is more than reasonable because it achieves a significant benefit for the Class.

### C.   Plaintiffs' Extensive Investigation and the Developed Stage of Proceedings Thoroughly Familiarized Counsel with the Strengths and Weaknesses of the Case

As detailed above, the Settlement is the result of thorough investigation and litigation by Representative Plaintiffs' Counsel.  For three and one-half years, Representative Plaintiffs' Counsel devoted thousands of hours to investigating and litigating this case.  Black Decl. ¶ 3.  Throughout this process, they acquired sufficient information to assess the strengths and weaknesses of their case.  On the eve of the discovery deadline, Representative Plaintiffs' Counsel were extremely familiar with the legal and factual issues and were able to thoroughly assess the adequacy of the Settlement to provide meaningful relief to the Class.  This favors approval of the Settlement.

### D.   Experienced Counsel's Endorsement of the Agreement, Reached Through Arm's-Length Negotiations, Favors Approval of the Settlement

Representative Plaintiffs' Counsel support the Settlement Agreement as fair, adequate, and reasonable, and in the best interests of the Class as a whole, and believe the Settlement is an excellent result for the Class.   Black Decl. ¶ 9.   That qualified and well-informed counsel endorse the Settlement, achieved through arm's-length negotiations, as fair, reasonable, and adequate, is entitled to significant weight.

 "Counsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).  "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."  *Ellis v. Navel Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

Here, the parties' protracted arm's-length negotiation of the Settlement and Representative Plaintiffs' Counsel's support for it weigh strongly in favor of approving the Settlement. Representative Plaintiffs Counsel are highly experienced class action attorneys who have, over the course of decades, handled numerous class action, unfair competition, and complex commercial lawsuits. Black Decl. ¶ 10; Levy Decl. ¶ 114. Representative Plaintiffs' Counsel have significant experience in class action litigation and have negotiated substantial class action settlements in courts throughout the country. Black Decl. ¶ 10. Both firms have served as lead or co-lead counsel in many class action cases, resulting in aggregate recoveries exceeding nine figures. *See id.* ¶ 10; Levy Decl. ¶ 114 & Ex. D.

### E.    The Reaction of the Class Supports Settlement

The small number of requests for exclusion from the Class and Class Member objections raises a "strong presumption" that the terms of the Settlement are favorable to the Class Members. *See Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Although over 1.1 million notices were disseminated to members of the Class, only 75 members of the Class requested exclusion (six of which were untimely), and only four Class Members served objections. As detailed in Part II.D, *supra*, the Notice provided the Class with the necessary information to make an informed decision regarding the Settlement, including the essential terms of the Settlement, details regarding the procedure and deadline for opting out of the Class and for filing objections, and Representative Plaintiffs' Counsel's intent to request an award for fees (including accrued interest) and expenses and to apply for incentive awards to the Representative Plaintiffs. Given the large size of the Class and the detail of the Court-approved Notice, the small number of opt-outs and objections speaks loudly in support of the Settlement and its achievements for the Class.

### V.    THE OBJECTIONS TO THE PROPOSED SETTLEMENT SHOULD BE OVERRULED

Pursuant to the Court's Order dated May 12, 2009, Class members who chose to object to the proposed Settlement were required to file and serve Representative Plaintiffs' Counsel by hand or by first-class mail on or before July 14, 2009, written objections and copies of all briefs or other papers. (*See* Docket Item No. 319.) The Court required objections to include proof of the dates that the person

22

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

was an AdWords Advertiser. (*Id.*) Four objections were served. None of the objections provide proof of the dates that the objector was an AdWords Advertiser, and none raise a legitimate reason for disapproving the Settlement. For the reasons set forth in Plaintiffs' Response to Class Member Objections, filed concurrently herewith, each objection should be overruled and Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement should be granted.

## VI.   CONCLUSION

For the reasons set forth herein and the facts set forth in the accompanying declarations, Plaintiffs respectfully submit that the Settlement, which was achieved via extensive arm's-length negotiations, represents an excellent result for the Class. Plaintiffs respectfully request that the Court certify the Settlement Class and approve the Settlement together with the Plan of Allocation as fair, reasonable, and adequate.

Dated:  August 24, 2009                    Respectfully submitted,

LESTER L. LEVY (Admitted *Pro Hac Vice*)
MICHELE FRIED RAPHAEL (Admitted *Pro Hac Vice*)
WOLF POPPER LLP

MARC M. SELTZER
SUSMAN GODFREY L.L.P.

STEPHEN D. SUSMAN (Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
E-Mail:  ssusman@susmangodfrey.com

RACHEL S. BLACK (Admitted *Pro Hac Vice*)
DANIEL J. SHIH (Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
E-Mail:  rblack@susmangodfrey.com
E-Mail:  dshih@susmangodfrey.com

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By  */s/ Rachel S. Black*
Rachel S. Black
Attorneys for Plaintiffs

24

965174v1/010480

CERTIFICATE OF SERVICE

I hereby certify that on the date written above, that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants.

I further certify that a true and correct copy of this document was sent via U.S. first-class mail, postage pre-paid, to all non-CM/ECF participants, as follows:

Alan J. Sherwood
LAW OFFICE OF ALAN J.
SHERWOOD
1300 Clay Street, Suite 600
Oakland, CA 93612
*Attorney for Objector Matthew Weiss*

Aaron R. Bakken
Emalfarb Swan & Bain
440 Central Avenue
Highland Park, IL 60035
*Attorneys for National Lien & Bond*

Harry Virgil Tootle
140 West 1st Street
Tustin, CA 92780

Sharon Mostyn
Ecommerce Manager
MEDEX Global Group, Inc.
8501 LaSalle Road, Suite 200
Baltimore, MD 21286

Sylvie D. Robinson
The Portrait Liquidating Trust
1855 Lakeland Drive, Suite D-20
Jackson, MS 39216

Forrest Jenkins
5404 Braeburn Drive
Bellaire, TX 77041

*s/ Rachel S. Black*

1

**PLAINTIFFS' NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION CERT. AND SETTLEMENT AND MEM. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965174v1/010480