1  LESTER L. LEVY (Admitted *Pro Hac Vice*)
2  MICHELE FRIED RAPHAEL (Admitted *Pro Hac Vice*)
   WOLF POPPER LLP
3  845 Third Avenue
   New York, NY  10022
4  Telephone:  (212) 759-4600
   Facsimile:  (212) 486-2093
5  E-Mail:  llevy@wolfpopper.com
6  E-Mail:  mraphael@wolfpopper.com

7  MARC M. SELTZER (54534)
   SUSMAN GODFREY L.L.P.
8  1901 Avenue of the Stars, Suite 950
9  Los Angeles, CA  90067-6029
   Telephone:  (310) 789-3100
10 Facsimile:  (310) 789-3150
   E-Mail:  mseltzer@susmangodfrey.com
11

12 Attorneys for Plaintiffs
   (See Signature Page for Additional
13 Representative Plaintiffs' Counsel)

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17

18 CLRB HANSON INDUSTRIES, LLC d/b/a      Case No. C 05-03649 JW PVT
19 INDUSTRIAL PRINTING, and HOWARD
   STERN, on behalf of themselves and all others   **NOTICE OF MOTION AND PLAINTIFFS'**
20 similarly situated,                             **MOTION FOR AWARD OF ATTORNEYS'**
                                                   **FEES AND EXPENSES AND CLASS**
21                 Plaintiffs,                     **REPRESENTATIVE INCENTIVE**
                                                   **COMPENSATION AWARDS, AND**
22          vs.                                    **MEMORANDUM OF POINTS AND**
                                                   **AUTHORITIES IN SUPPORT THEREOF**
23 GOOGLE, INC.,

24                 Defendant.                      Date: September 14, 2009
                                                   Time: 9:00 a.m.
25                                                 Place: Courtroom 8

26

27

28

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND
CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

# TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ........................................................................... 1

II.  BACKGROUND ............................................................................................... 2

     A.   Procedural and Factual Background of the Litigation............................... 2

     B.   The Settlement Agreement ....................................................................... 5

     C.   Release ..................................................................................................... 6

     D.   Notice to the Class.................................................................................... 6

     E.   Exclusion from the Class .......................................................................... 7

     F.   Class Member Objections ......................................................................... 8

     G.   Claims Administration............................................................................... 8

     H.   Continued Jurisdiction .............................................................................. 8

III. THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES
     IS FAIR AND REASONABLE......................................................................... 9

     A.   The Preferred Method of Awarding Fees Is Based on a Reasonable
          Percentage of the Common Fund............................................................. 9

     B.   An Attorneys' Fee of Twenty-Five Percent Is on Par with, or Even Below,
          the Percentage Awarded in Comparable Cases........................................ 12

     C.   The Benchmark Fee of Twenty-Five Percent Is Justified in This Case ....... 13

          1.   The Quality of Work of Representative Plaintiffs' Counsel, and the
               Result They Achieved, Support the Requested Fee............................ 13

          2.   The Risks that Representative Plaintiffs' Counsel Undertook in
               Pursuing This Litigation Further Supports the Requested Fee............ 14

          3.   The Reaction of the Class Supports Approving the Attorneys' Fees
               Requested. ....................................................................................... 15

          4.   The Lodestar/Multiplier Method Supports the Reasonableness of
               the Requested Fee............................................................................ 15

     D.   Representative Plaintiffs' Counsel's Expenses Are Reasonable and Were
          Necessarily Incurred to Achieve the Benefit Obtained. ............................. 16

IV.  THE REQUESTED INCENTIVE COMPENSATION AWARDS FOR THE
     REPRESENTATIVE PLAINTIFFS ARE FAIR AND REASONABLE. ........... 17

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND
CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF
Case No. C 05-03649 JW

965182v1/010480

**V.    CONCLUSION** .................................................................................................... **18**

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND
CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

# TABLE OF AUTHORITIES

**Cases**

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ................................ 14

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................... 10, 12

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ...................................... 9

*Cumden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ................................ 10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ................................................................................. 17

*Genden v. Merrill Lynch, Pierce, Fenner & Smith*, 700 F. Supp. 208 (S.D.N.Y. 1988) ............ 17

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ............................................... 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................... 13

*In re Dunn & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ................................................................................. 17

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) .................... 13

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ..................................................................... 13

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ................ 12

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) ............................. 14

*In re M.D.C. Holdings Sec. Litig.*, No. 39-cv-90, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ....................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................... 15

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394 (E.D. La. May 18, 1994) ............................................................................. 14

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ................................. 15

*In re S. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ................................. 17

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .............................. 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .............. 9, 10, 14

*Keith v. Volpe*, 501 F. Supp. 403 (C.D. Cal. 1980) ............................................. 16

iv

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ................................................................ 10

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)................................ 9, 10, 13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................ 13

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997).................................................. 16

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)................................ 10

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ........................................ 10

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ........................................ 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................ 10, 12, 16

## Other Authorities

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There from Here*, 74 TUL. L. REV. 1809 (2000) .................... 11

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 COLUM. L. REV. 669 (1986) .................................................................. 11

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (Federal Judicial Center 1996)......................................................... 12

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on September 14, 2009, at 9:00 a.m., or soon thereafter as the matter may be heard, in Courtroom 8 of the United States District Court for the Northern District of California, San Jose Division, Plaintiffs will, and hereby do, move the Court for an award of attorneys' fees and expenses and approval of incentive compensation awards to the Representative Plaintiffs.

This motion is based on the attached Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Class Representative Incentive Compensation Award; the Declarations of Rachel S. Black and Lester L. Levy in support thereof, filed concurrently herewith; the declaration of Markham Sherwood of Gilardi & Co. LLC, filed concurrently herewith; Plaintiffs' Response to Class Member Objections, filed concurrently herewith; the Settlement Agreement and Release ("Settlement Agreement") entered into between Google and the Representative Plaintiffs on March 17, 2009 (Docket Item No. 315-2); all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing.

## I.     SUMMARY OF ARGUMENT

Plaintiffs respectfully submit this memorandum in support of their motion for an award of $5 million in attorney's fees (including accrued interest), plus actual expenses and an incentive compensation award of $20,000 to each of the two Representative Plaintiffs; and in response to the four objections thereto. Representative Plaintiffs' Counsel firmly believe that the attorneys' fee and expense application and the requested incentive compensation awards are fair and reasonable, and each has been approved by the Representative Plaintiffs.

Representative Plaintiffs' Counsel also request approval of their request for an attorneys' fee award of $5 million (plus accrued interest) plus actual expenses of $147,599.50. Such an award is fair and reasonable under the applicable legal standards and in light of the significant risks faced and the excellent result achieved. The fee requested is more than fair and reasonable when considered under the applicable standards and is well within the normal range of awards made in contingent fee matters

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

of this type, particularly in view of the outstanding result achieved, the quality of the work performed, and the considerable risks attendant in bringing and pursuing this litigation.

Representative Plaintiffs' Counsel also request that the Court award the Representative Plaintiffs an incentive compensation award of $20,000 each to compensate them for their efforts supporting this litigation since the inception of the case in 2005, which included producing numerous documents, responding to numerous interrogatories and requests for admission, and testifying at deposition, and for undertaking the risk that their efforts would not produce a successful result.

Plaintiffs submit that the four objections to their request for an award of attorneys' fees and costs and for an incentive compensation award of $20,000 to each of the Representative Plaintiffs should be overruled because, as set forth in Plaintiffs' Response to Class Member Objections, filed concurrently herewith, none of the objectors included the required proof demonstrating that each objector was an AdWords Advertiser and none raise a meaningful objection to Plaintiffs' requests.

## II.   BACKGROUND

For the Court's convenience, the Background from Plaintiffs' accompanying Motion for Final Approval of Class Action Certification and Settlement is copied in full below.

### A.   Procedural and Factual Background of the Litigation

Plaintiffs filed their original Class Action Complaint on August 3, 2005, in the Superior Court of the State of California, County of Santa Clara, alleging causes of action against Google for unfair competition, breach of contract, negligent misrepresentation, unjust enrichment, constructive trust, breach of the implied covenant of good faith and fair dealing, fraud, and injunctive and declaratory relief.  (*See* Docket Item No. 1, Ex. A.)  In preparation for filing the complaint, Representative Plaintiffs' Counsel conducted an extensive factual investigation, including discussions with AdWords Advertisers, reviewing numerous AdWords account records, and reviewing AdWords account agreements, tutorials, and other public materials concerning the AdWords program.  Declaration of Lester L. Levy in Support of Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement, Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Class Representative Incentive Compensation Award, and Plaintiffs' Response to Class Member Objections ("Levy Decl.")

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

¶¶ 4, 6 (filed concurrently herewith). Representative Plaintiffs' Counsel also conducted an extensive legal investigation into the causes of action most appropriate based on their factual investigation and the potential defenses that Google might assert. *Id.*

On September 12, 2005, Google removed the action from the Superior Court to this Court. (Docket Item No. 1.) After Google filed its first motion to dismiss (*see* Docket Item No. 14), Plaintiffs filed a First Amended Class Action Complaint alleging claims for breach of contract; breach of implied covenant of good faith and fair dealing; unfair competition under the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*; false advertising under the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500, *et seq.*; and unjust enrichment. (Docket Item No. 18.) On January 3, 2006, Google filed a motion to dismiss Plaintiffs' unjust enrichment claim. (Docket Item No. 30.) Plaintiffs opposed the motion in briefs filed on February 2, 2006. (Docket Item Nos. 34, 35.) On April 12, 2006, the Court granted Google's motion to dismiss while granting Plaintiffs leave to amend. (Docket Item No. 46.)

On May 4, 2006, Plaintiffs filed their Second Amended Class Action Complaint ("SAC"), the operative complaint in this matter. (Docket Item No. 47.) The SAC alleges five causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) UCL; (4) FAL; and (5) unjust enrichment. (*Id.*) The SAC seeks damages, restitution, and injunctive relief to remedy Google's practices of (1) charging its AdWords advertisers up to 120% of their per day Daily Budget on any given day (the "120% claims") and (2) charging AdWords customers who paused their campaigns more than their per day Daily Budget times the number of days their campaigns were not paused during the billing period (the "pausing claims").

Google moved unsuccessfully to dismiss Plaintiffs' UCL claim as alleged in the SAC. (Docket Item No. 52.) Google subsequently filed three separate motions for partial summary judgment. (Docket Item Nos. 85, 202, 234). The Court dismissed with prejudice Plaintiffs' second and fifth causes of action for breach of the implied covenant of good faith and fair dealing and unjust enrichment. Google also successfully argued that its practice of charging AdWords Advertisers up to 120% of their Daily Budget on any given day does not, in and of itself, constitute breach of contract.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

The Court held that triable issues of fact existed as to whether Google's practice of charging up to 120% of an AdWords Advertiser's per day Daily Budget violates the UCL and FAL and whether Google's pre-September 2006 pausing practices constitute a breach of contract.[1]

During the hearing on its most recent motion for summary judgment, Google represented to the Court that it would be filing yet another motion for summary judgment to dismiss Plaintiffs' 120% claims under the UCL and FAL. (*See* Docket Item No. 295.) Google indicated that it had newly discovered evidence proving that Google had disclosed to potential advertisers during the AdWords sign-up process that it may charge AdWords customers up to 120% of their per day Daily Budget on any day in order to make up for underdelivery of ads on any other day during that same billing period. Google provided Plaintiffs with copies of the purported AdWords sign-up screens, which contained disclosures that raised issues as to Plaintiffs' ability to prove their 120% claims under the UCL and FAL, particularly for members of the Class who signed up for AdWords prior to June 2005.

Based on this evidence, Plaintiffs intended to seek leave to file a Third Amended Complaint to, among other things, dismiss their 120% claims under the UCL and FAL for those Class Members who signed up for AdWords prior to June 2005, and to name a new class representative who had signed up for AdWords after June 2005. Google indicated that it would oppose Plaintiffs' expected motion for leave to file the Third Amended Complaint.

The Settlement was achieved after years of intense litigation, extensive briefing and pre-trial discovery, one unsuccessful mediation, and arduous arm's-length negotiations. For three and one-half years, Representative Plaintiffs' Counsel conducted an extensive investigation into Plaintiffs' claims. Levy Decl. ¶¶ 4, 6. As part of this investigation, Plaintiffs propounded interrogatories and document requests to Google and obtained hundreds of thousands of pages of documents produced by Google.

---

[1] Plaintiffs' pausing claims are segregated into pre- and post-September 2006 claims because, in September 2006, Google changed its practice of treating a paused campaign as underdelivered. (*See* Docket Item No. 237 ¶ 6.) When Plaintiffs initially filed this lawsuit, Google treated a paused day as an underdelivered (or shortfall) day for the month or budget period, and thus would use paused days to absorb overdelivery on other days in the billing period. (*Id.*)

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

*Id.*; Declaration of Rachel S. Black in Support of Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement, Award of Attorneys' Fees and Expenses, and Class Representative Incentive Compensation Award ("Black Decl.") ¶ 3 (filed concurrently herewith).   Representative Plaintiffs' Counsel also conducted depositions of key Google employees and defended Representative Plaintiffs in depositions conducted by Google.  *Id.*

On December 9, 2008, the Court set February 2, 2009, as the date for the close of all discovery. (Docket Item No. 295.)  The parties made diligent efforts to settle the action, including two face-to-face meetings in December and January.  (*See* Docket Item No. 306 ¶ 2.)  During the January meeting, the parties believed that the discussions had progressed to such a point that they agreed to request a 45-day moratorium for all litigation activities so they could focus on attempting to settle the action. (*Id.* ¶ 3.)  On January 8, 2009, the parties requested a 45-day continuance of, *inter alia*, the discovery deadline.  (Docket Item No. 305.)  On January 23, 2009, the Court granted the parties' request in part, setting March 2, 2009, as the close of all discovery.  (Docket Item No. 308.)  The parties negotiated a settlement shortly thereafter (*see* Docket Item No. 310), and after several weeks of negotiation, they agreed on the terms reflected in the Settlement Agreement in its current form on March 17, 2009.  (*See* Docket Item No. 315-2, also attached as Exhibit 1.)

### B.    The Settlement Agreement

Under the terms of the Settlement Agreement (Docket Item No. 315-2), Google has agreed to settle the Class Members' claims on the following terms:

- Google has agreed to pay $20,000,000, together with interest on said sum from March 27, 2009 (the "Settlement Proceeds"), in a combination of cash and AdWords Credits, as stated in the proposed Plan of Allocation, inclusive of any Fee and Expense Award.  Google has already deposited the $20 million into an escrow account, per the terms of the Settlement Agreement.

- In addition to the Settlement Proceeds, Google has agreed to pay for all administrative costs and expenses incurred in connection with providing notice to the Class and locating class members, and will pay all fees and costs incurred by the Claims Administrator for administering and distributing the Settlement Proceeds to the Class Members.

- Representative Plaintiffs' Counsel successfully negotiated a distribution procedure such that the Settlement Proceeds would be allocated to and delivered to Class Members without the need for them to file proofs of claim.

5

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

Under the terms of the Settlement Agreement, Class Members who have an AdWords balance due to Google that is greater than their settlement distribution will receive their distribution in the form of AdWords Credits, which will offset amounts that the Class Member already owes to Google. *See* Settlement Agreement ¶ 1.27. Class Members who have a balance due to Google that is less than the Class Member's settlement distribution may elect to receive cash in lieu of AdWords Credits for the amount that is in excess of the amount owed to Google. Class Members who have no balance due to Google on their AdWords account will automatically receive their settlement distribution in cash. Thus, under the terms of the Settlement, Class Members will either receive cash or the equivalent of cash, in the form of a reduction of the amount already owed to Google. This is, therefore, not a coupon settlement and Class Members are not required to submit a claim form to receive the benefits of the Settlement.

### C.   Release

The Settlement Agreement contains a release, pursuant to which all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, employees, officers, directors, attorneys, representatives, affiliates, agents, and any persons or entities they represent, shall be deemed to release and forever discharge Google from all Released Claims (as defined in the Settlement Agreement), and shall forever be barred and enjoined from prosecuting, commencing, instituting, or asserting all or any of the Released Claims in any action or other proceeding in any court of law or equity, arbitrational tribunal, administrative or other forum, whether directly, representatively, derivatively, or in any other capacity against Google. *See* Settlement Agreement ¶ 4.1.

### D.   Notice to the Class

Class notice was disseminated pursuant to this Court's Order Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement, issued May 12, 2009. (Docket Item No. 319.) On June 9, 2009, the Claims Administrator (Gilardi & Co., LLC) distributed via email to 1,129,685 members of the Class (as identified by Google) the Notice of Pendency and Proposed Settlement of Class Action and Settlement Hearing ("Notice"), substantially in the form attached as

6

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

Exhibit 1 to the Court's May 12, 2009, Order.   Declaration of Markham Sherwood ("Sherwood Decl."), filed concurrently herewith, ¶ 3 & Ex. A (Notice).  Members of the Class whose email address was no longer working or was unknown received the Notice via US mail.  *Id.* ¶ 4.  The Claims Administrator also posted the Notice, the Preliminary Approval Order, the Settlement Agreement, and a chart with the exclusion and objection deadlines on a website, www.adwordscustomersettlement.com; and published a summary notice in *The Wall Street Journal* and *USA Today*.  *Id.* ¶¶ 5-6 & Ex. B (Summary Notice).

The Court-approved Notice fully comports with the requirements of Rule 23(c)(2)(B) and (e)(1) and due process because it constitutes the best notice practicable under the circumstances.  It fairly apprises members of the Class of the essential terms of the Settlement and advises members of the Class of their rights thereunder.  It advises Class Members of the pendency of this action, the proposed settlement, and Representative Plaintiffs' Counsel's application for a fee and expense award and for an incentive compensation award to Representative Plaintiffs; describes the facts underlying this action; states who members of the Class are; provides information regarding attorneys' fees and how Class Members may object to the proposed settlement; and clearly indicates contact information for both Representative Plaintiffs' Counsel and defense counsel.  This is more than adequate notice under the circumstances.

E.    **Exclusion from the Class**

Class Members had the opportunity to request exclusion from the Class by submitting, by first-class mail so that it was actually received by the Claims Administrator no later than July 14, 2009, a written request for exclusion from the Class.  A total of 75 members of the Class served requests for exclusion.[2]  Sherwood Decl. ¶ 7 & Ex. C.

---

[2] The Claims Administrator received the requests of six members of the class after the July 14, 2009 deadline.  Sherwood Decl. ¶ 7 & Ex. 3.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

### F.   Class Member Objections

Class Members who chose to object to the proposed Settlement were required to file and serve Representative Plaintiffs' Counsel by hand or by first-class mail on or before July 14, 2009, written objections and copies of all briefs or other papers (including proof of the dates that the person was an AdWords Advertiser). Four objections were served, none of which provides proof that the objector was an AdWords Advertiser; nor do they specify the dates that the objectors were AdWords Advertisers. *See* Plaintiffs' Response to Class Member Objections, filed concurrently herewith.

### G.   Claims Administration

Per the terms of the Settlement Agreement, after any Order granting final approval becomes final, Google is to provide the Claims Administrator with AdWords account records sufficient for the Claims Administrator to calculate the Settlement Distribution due to each Class Member under the Plan of Allocation. Settlement Agreement ¶ 1.27. Class Members are <u>not</u> required to submit claim forms to receive the benefits of the Settlement. The Claims Administrator will issue checks to all Class Members who are not Active AdWords Advertisers and to those Active AdWords Advertisers who elect to receive cash in lieu of AdWords Credits per the terms of the Settlement Agreement. Google is responsible for distributing AdWords Credits. Within five business days of receiving evidence that Google has distributed and applied the AdWords Credits to Active AdWords Advertisers who did not elect to receive their distribution in cash per the Plan of Allocation, the Claims Administrator is to transfer from the Escrow Account to Google the dollar amount of such AdWords Credits. A proportionate share of the interest earned on such funds shall be added to the Cash Settlement Proceeds to be distributed to the Class Members.

### H.   Continued Jurisdiction

The Settlement Agreement contemplates that the Court would retain continuing jurisdiction over the Settlement Proceeds and the Parties for the purposes of (a) implementing and effectuating the Agreement; and (b) construing, enforcing, and administering the Settlement Agreement, including the distribution of the Settlement Proceeds to Authorized Claimants. *See* Settlement Agreement ¶ 4.2.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

III.   **THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE**

Representative Plaintiff's Counsel negotiated the Settlement of $20,000,000 (plus interest beginning March 27, 2009).   For their efforts in achieving this outstanding result, the Settlement Agreement permits, and Representative Plaintiffs' Counsel seeks, an attorneys' fee award of twenty-five percent of the Settlement Proceeds ($5,000,000 plus a proportionate share of the interest earned on the Settlement Proceeds) and $147,599.50 in reimbursement of expenses.  The requested award is a reasonable percentage of the fund recovered and under Ninth Circuit authority constitutes a reasonable fee.

A.   **The Preferred Method of Awarding Fees Is Based on a Reasonable Percentage of the Common Fund**

For their efforts in creating a common fund for the benefit of the Class, Representative Plaintiffs' Counsel seek an award of attorneys' fees that is reasonable, whether judged under the percentage-of-the-fund method or the lodestar/multiplier method.  The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases in this Circuit and throughout the United States.

"The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  This reflects "the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (hereinafter *WPPSS Sec. Litig.*).

Courts in this Circuit and elsewhere also recognize that the appropriate fee award in common fund cases is not tied to the value of attorney hours actually worked.  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who

9

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

creates a common fund is allowed an <u>extra</u> reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted).  In this Circuit, a district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method.  *WPPSS Sec. Litig.*, 19 F.3d at 1296–98.  The Ninth Circuit has expressly approved the use of the percentage method in common fund cases in numerous cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 268.

Supporting authority for the percentage method in other circuits is overwhelming.  At least two circuits have held that the percentage method is mandatory in common fund cases.  *See, e.g.*, *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *Cumden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").  Moreover, the Supreme Court has stated in dicta that, in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class."  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum possible recovery in the shortest amount of time.  *See Kirchoff v. Flynn*, 786 F.2d 320, 325–26 (7th Cir. 1986).  Indeed, according to a leading scholar in the field of class actions and attorneys' fees, the percentage method of awarding fees is the only method that is consistent with class members' Due Process rights:

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

> The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad. It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> In view of this, it is clear as it possibly can be that judges should not apply the lodestar method in common fund class actions. The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There from Here*, 74 TUL. L. REV. 1809, 1819–20 (2000) (footnotes omitted). According to another prominent scholar, the percentage of the recovery is the most sensible and manageable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing. The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative to converting the courts into the equivalent of public utility commissions that oversee the plaintiff's attorney and elaborately fix the attorney's "fair" return.

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 COLUM. L. REV. 669, 724–25 (1986). At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

**B.      An Attorneys' Fee of Twenty-Five Percent Is on Par with, or Even Below, the Percentage Awarded in Comparable Cases**

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 & n.4. Here, such a comparison also supports the twenty-five percent attorneys' fee request.

If this were a non-representative litigation, the customary fee arrangement would have been contingent, on a percentage basis, and in the range of thirty to forty percent of the recovery. *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. 39-cv-90, 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."). Thus, the customary contingent fee in the private marketplace—thirty to forty percent of the recovery—is substantially higher than the percentage fee requested in this case.

Looking at other complex class action cases, a twenty-five percent fee award is on par with, or below, the average fee awarded in such litigation. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (affirming 28% fee); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (affirming 25% fee). According to one court's review of prior cases, "[p]ercentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent. The median in class actions is approximately twenty-five percent . . . ." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). A Federal Judiciary Center study of class actions in four selected federal district courts with a high number of class actions found that median fee awards "ranged from 27% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* 69 (Federal Judicial Center 1996).[3]

---

[3] Available at: http://www.fjc.gov/public/pdf.nsf/lookup/rule23.pdf/$File/rule23.pdf.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

## C.   The Benchmark Fee of Twenty-Five Percent Is Justified in This Case

In *Paul, Johnson*, the Ninth Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  886 F.2d at 273 ("[T]he district court should take note that 25 percent has been a proper benchmark figure . . . .").  Although after taking note of this amount the district court "can then adjust upward or downward to fit the individual circumstances of this case," any such adjustment "must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances."  *Id.*; *see also Torrisi*, 8 F.3d at 1376; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (reaffirming 25% benchmark).  In this case, which was litigated for three and one-half years with no assurances of payment and resulted in a substantial benefit to the Class, there is clearly no justification for adjusting the fee downwards.

### 1.   The Quality of Work of Representative Plaintiffs' Counsel, and the Result They Achieved, Support the Requested Fee

The skill demonstrated by Representative Plaintiffs' Counsel supports the requested fee.  *See In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *38 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award.").  Representative Plaintiffs' Counsel's thorough and diligent investigation and discovery efforts uncovered evidence that largely defeated Google's repeated motions for dismissal and summary judgment.  As a result of surviving such attacks, Representative Plaintiffs' Counsel were able to negotiate a Settlement they believe is fair under all the circumstances.

The quality of opposing counsel is also important in evaluating the quality of the work done by Representative Plaintiffs' Counsel.  *See In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("Moreover, plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").  Plaintiffs were opposed in this litigation by counsel with a nationwide reputation for vigorous advocacy of their clients' interests—and this case was indeed litigated vigorously for three and one-half years.

In addition, the excellent result achieved is an important factor to be considered in making a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547–48 (S.D. Fla.

13

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

1988), *aff'd*, 899 F.2d 21 (1lth Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").  Here, the Settlement of $20 million plus interest is an excellent result, obtained through the efforts of Representative Plaintiffs' Counsel without the necessity and risk of further motions for summary judgment, trial and appeals.  Actual provable damages after offsets could have been a small fraction of this amount, or even zero, had the case moved forward through expert discovery, another motion for summary judgment, and trial.  Representative Plaintiffs' Counsel's hard-fought pursuit of Plaintiffs' claims, which resulted in a very substantial and certain recovery for the Class, also supports a twenty-five percent attorneys' fee award.

> ### 2.    The Risks that Representative Plaintiffs' Counsel Undertook in Pursuing This Litigation Further Supports the Requested Fee

A determination of a fair fee must include consideration of the risk Representative Plaintiffs' Counsel undertook given the contingent nature of the fee.  As the Ninth Circuit stated:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS Sec. Litig.*, 19 F.3d at 1300.  Courts have consistently recognized that the risk of plaintiff's attorneys receiving little or no recovery should be a major factor in considering an award of attorneys' fees.  As one court has noted:

> Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

---

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

Here, the fee was entirely contingent. The only certainty Representative Plaintiffs' Counsel faced was that there would be no fee without a successful result and that such a result could only be realized after expending significant amounts of time, effort, and expense. Representative Plaintiffs' Counsel received no compensation for their efforts during the course of this litigation and advanced all expenses. Black Decl. ¶ 11; Levy Decl. ¶116. In addition to the thousands of hours of uncompensated attorney time, Representative Plaintiffs' Counsel risked non-recovery of $147,599.50 in expenses on this matter, knowing that if their efforts would be for naught if the result was not a success for the Class. Black Decl. ¶ 11; Levy Decl. ¶ 116 & Ex. F. This risk of non-payment, despite extensive efforts and time, supports the requested twenty-five percent fee award.

### 3. The Reaction of the Class Supports Approving the Attorneys' Fees Requested

As discussed above, only a small number of persons—less than a fraction of one percent—have opted out of the Class or have raised objections relating to the requested amount of attorneys' fees and expenses, which speaks loudly in support of the excellent result achieved. "[S]uch a low level of objection is a rare phenomenon." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (internal quotation marks omitted) (referring to two objections where 300,000 notices were mailed). Moreover, cases in this Circuit make clear that a small number of objections do not stand in the way of approval of a reasonable fee. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting that objectors' attorney "represented only a handful of objectors at the fairness hearing").

### 4. The Lodestar/Multiplier Method Supports the Reasonableness of the Requested Fee

Applying the lodestar/multiplier method also demonstrates that the fee that Representative Plaintiffs' Counsel requests is reasonable. Based on the lodestar figure, determined by multiplying the number of hours worked by the hourly rate of counsel, a court can ascertain the implied multiplier that may be assessed for reasonableness, taking into account the contingent nature and risks of the litigation, the results obtained and the nature of and quality of the services rendered.

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

The cumulative hours expended by co-lead Representative Plaintiffs' Counsel in this litigation exceed 7,000, and the resulting lodestar for the services performed exceeds $3,966,694. Thus, the requested fee represents a modest multiplier of only 1.25 on Representative Plaintiffs' Counsel's lodestar.

In other complex litigation, it is common for courts to enhance the lodestar by multipliers between 3.0 and 4.5, and many courts have awarded higher multipliers to compensate, among other things, for the risk of litigation undertaken by counsel whose compensation is entirely contingent on the outcome, as it was here. *Vizcaino*, 290 F.3d at 1051 (surveying 34 common fund cases and finding that multipliers in most were between 1.0 and 4.0 but ranged as high as 19.6, and approving multiplier of 3.65); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases.") (internal quotation marks omitted); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (approving multiplier of 5.5 in civil rights case); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (approving multiplier of 3.5 in civil rights case). Consequently, the attorneys' fees sought are reasonable using the lodestar/multiplier method.

### D.   Representative Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Representative Plaintiffs' Counsel have incurred expenses in an aggregate amount of $147,599.50 in prosecuting this litigation. Black Decl. ¶¶ 11-12 & Ex. B; Levy Decl. ¶ 116 & Ex. F. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular out-of-pocket expenses are of the type "that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

The categories of expenses for which Representative Plaintiffs' Counsel seek reimbursement, which are detailed in the Black and Levy declarations, are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. Black Decl. ¶ 12; Levy Decl. ¶ 116 & Ex. F. Expenses include the costs of computerized research using services such as Lexis and Westlaw, travel to attend hearings and depositions and mediation, court reporter fees,

16

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

videographer fees, transcript fees, mediation fees, photocopying and printing costs, and telephone charges.  Black Decl. ¶ 12; Levy Decl ¶ 116 & Ex. F.  These are categories normally charged by Representative Plaintiffs' Counsel to fee-paying clients.  Black Decl. ¶ 12; Levy Decl. ¶ 116 & Ex. F.  Accordingly, these expenses should be reimbursed from the common fund.

## IV.   THE REQUESTED INCENTIVE COMPENSATION AWARDS FOR THE REPRESENTATIVE PLAINTIFFS ARE FAIR AND REASONABLE

Representative Plaintiffs Counsel request that the Court award $20,000 to each of the Representative Plaintiffs to compensate them for the time they have invested in this case and the risk they undertook of non-recovery.  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (citing cases approving incentive awards ranging from $35,000 to $55,000 per class representative from a common fund).  The amount requested is well within the range of court-approved incentive awards.  *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (providing $50,000 incentive awards where estimated settlement value was $56.6 million); *In re Dunn & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (providing incentive awards of $35,000 to $55,000 in estimated $18 million settlement); *Genden v. Merrill Lynch, Pierce, Fenner & Smith*, 700 F. Supp. 208, 210 (S.D.N.Y. 1988) (providing incentive award of $20,085 instead of requested $40,170 in estimated $4 million settlement).

The Representative Plaintiffs spent substantial amounts of time participating in this litigation.  Both consulted with Representative Plaintiffs' Counsel at key points in this litigation, including an evaluation of the proposed Settlement Agreement.  Levy Decl. ¶ 109.  They responded to Google's voluminous and burdensome interrogatories, requests for admission, and requests for production, and they testified at deposition.  *Id.* ¶¶ 109–11.  Specifically, Representative Plaintiff CLRB Hanson Industries, LLC ("CLRB Hanson") responded to 26 interrogatories and 83 separate document requests, produced thousands of pages of documents, testified at deposition, had its vendors and banks subpoenaed by Google for records dealing with CLRB Hanson activities, participated in numerous telephone conversations and emails with counsel, and reviewed pleadings and briefs in this action.  *Id.*

17

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

¶ 110.   Representative Plaintiff Howard Stern responded to 22 interrogatories and 76 document requests, exchanged over 300 emails with Representative Plaintiffs' Counsel, and participated in dozens of telephone conversations and meetings with counsel.  *Id.* ¶ 111.  He searched for relevant documents, generated usage reports, reviewed credit card statements, created spreadsheets with respect to damages, reviewed Court filings, and testified at deposition.  *Id.*

In light of their dedication, time, and effort in the prosecution of this case, an award of $20,000 to each Representative Plaintiff is fair and reasonable.  From the beginning, Representative Plaintiffs were faced with determined adversaries represented by experienced counsel.  Representative Plaintiffs believed they and others similarly situated had been wronged and took up the fight against a well-financed Google.  Without any assurance of success, they pursued this litigation to a successful conclusion.  Representative Plaintiffs' Counsel respectfully request that the Court compensate them for their efforts and risks by granting a $20,000 incentive compensation award to each Representative Plaintiff.

## V.   **CONCLUSION**

For the reasons set forth herein, in Plaintiffs' Response to Class Member Objections, filed concurrently herewith, and in the accompanying declarations, Plaintiffs respectfully request that the Court overrule the objections and grant the requested attorneys' fees and expenses award and Representative Plaintiffs' incentive compensation awards.

Dated:  August 24, 2009                  Respectfully submitted,

                                         LESTER L. LEVY (Admitted *Pro Hac Vice*)
                                         MICHELE FRIED RAPHAEL (Admitted *Pro Hac Vice*)
                                         WOLF POPPER LLP

                                         MARC M. SELTZER
                                         SUSMAN GODFREY L.L.P.

                                         STEPHEN D. SUSMAN (Admitted *Pro Hac Vice)*
                                         SUSMAN GODFREY L.L.P.
                                         1000 Louisiana Street, Suite 5100
                                         Houston, TX  77002
                                         Telephone:  (713) 651-9366
                                         Facsimile:  (713) 654-6666

18

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

E-Mail:  ssusman@susmangodfrey.com

RACHEL S. BLACK (Admitted *Pro Hac Vice*)
DANIEL J. SHIH (Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
E-Mail:  rblack@susmangodfrey.com
E-Mail:  dshih@susmangodfrey.com


By  */s/ Rachel S. Black*
Rachel S. Black

Attorneys for Plaintiffs

19

**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480

CERTIFICATE OF SERVICE

I hereby certify that on the date written above, that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants.

I further certify that a true and correct copy of this document was sent via U.S. first-class mail, postage pre-paid, to all non-CM/ECF participants, as follows:

Alan J. Sherwood
LAW OFFICE OF ALAN J.
SHERWOOD
1300 Clay Street, Suite 600
Oakland, CA 93612
*Attorney for Objector Matthew Weiss*

Aaron R. Bakken
Emalfarb Swan & Bain
440 Central Avenue
Highland Park, IL 60035
*Attorneys for National Lien & Bond*

Harry Virgil Tootle
140 West 1st Street
Tustin, CA 92780

Sharon Mostyn
Ecommerce Manager
MEDEX Global Group, Inc.
8501 LaSalle Road, Suite 200
Baltimore, MD 21286

Sylvie D. Robinson
The Portrait Liquidating Trust
1855 Lakeland Drive, Suite D-20
Jackson, MS 39216

Forrest Jenkins
5404 Braeburn Drive
Bellaire, TX 77041

*s/ Rachel S. Black*

1
**PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR AWARD OF ATTORNEY FEES AND COSTS AND CLASS REP. COMPENSATION AWARDS, AND MEMO. IN SUPPORT THEREOF**
Case No. C 05-03649 JW

965182v1/010480